UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE IPE CLIP FASTENER COMPANY, LLC

    Plaintiff

v.                                        CASE NO: 8:16-cv-02862-SDM-TGW

SIMPSON STRONG-TIE COMPANY, INC.

    Defendant.

_____/

## SIMPSON STRONG-TIE COMPANY, INC.'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS, AND DEMAND FOR JURY TRIAL

Defendant and Counter-Claimant Simpson Strong-Tie Company, Inc. ("Simpson") hereby files the following Amended Answer, Affirmative Defenses, and Counterclaims.

## ANSWER

Simpson hereby answers the Complaint of Plaintiff and Counter-Defendant The Ipe Clip Fastener Company, LLC ("Plaintiff" or "ICFC") in the above captioned matter. The following paragraphs correspond to the paragraphs in Plaintiff's Complaint:

1. Simpson lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Complaint and therefore denies the same.

2. Simpson lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 of the Complaint and therefore denies the same.

-1-

3. Admitted.

4. Paragraph 4 of the Complaint contains legal conclusions to which no response is required. Simpson admits that it sells products in this judicial district and solicits business in this judicial district.

5. Paragraph 5 of the Complaint contains legal conclusions to which no response is required. Simpson admits that it is engaged in activity in Florida.

6. Paragraph 6 of the Complaint contains legal conclusions to which no response is required. Simpson admits that Plaintiff contends that venue is proper pursuant to 28 U.S.C. § 1391.

7. Paragraph 7 of the Complaint contains legal conclusions to which no response is required. Simpson admits that Plaintiff contends that this Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338.

8. Admitted.

9. Admitted that Simpson acquired Blue Heron in or about 2015. Otherwise, denied.

10. Admitted.

### First Cause of Action

### (Declaratory Judgment That The Relevant Ipe Clip Products Are Not Covered By Certain Licensed Patents)

11. Simpson reasserts its answers to paragraphs 1 – 10 from above as if restated here in their entirety.

12. Admitted that Plaintiff contends the Complaint purportedly states a claim under the Declaratory Judgment Act, otherwise denied.

13. Admitted that Plaintiff contends that the amount in controversy, exclusive of interest and costs, exceeds 75,000. Admitted that there is complete diversity of citizenship between Simpson and Plaintiff.

14. Admitted.

15. Admitted that the '113 Patent was issued in 2011, was assigned to Blue Heron in 2011, and was later assigned to Simpson. Otherwise, denied.

16. Admitted that the '702 Patent was issued in 2012, was assigned to Blue Heron, and was later assigned to Simpson. Otherwise, denied.

17. Admitted that Plaintiff denies that its Extreme4 and ExtremeKD fasteners are covered by the claims of the '113 Patent or '702 Patent or that royalties are owed to Simpson for the Extreme4 and ExtremeKD. Otherwise, denied.

18. Admitted.

19. Denied.

20. Denied

21. Admitted.

22. Paragraph 22 of the Complaint contains legal conclusions to which no response is required. To the extent any response is required, Simpson admits that Simpson and Plaintiffs have adverse legal interests, and denies the remaining allegations of Paragraph 22.

23. Denied.

24. Denied.

**Prayer for Relief**

Simpson denies that Plaintiff is entitled to any of the relief requested in the Prayer for Relief.

**AFFIRMATIVE DEFENSES**

**First Affirmative Defense**

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**Second Affirmative Defense**

Simpson reserves the right to assert additional affirmative defenses which have not otherwise been asserted by Simpson in this Answer.

**COUNTERCLAIMS**

Simpson, by and through its undersigned attorneys, brings these Counterclaims for breach of a license agreement and, in the alternative, patent infringement against ICFC as follows:

**Parties**

1.  Simpson is a California corporation with its principal place of business at 5956 W. Las Positas Blvd., Pleasanton, California 94588. Simpson is qualified to do business with the Florida Department of State, and in fact does business in the State of Florida.

2.  On information and belief, ICFC is a limited liability company duly organized under the laws of the State of Florida, with its principal place of business in Bradenton, Florida.

**Jurisdiction And Venue**

3.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a), because this is an action for breach of a license agreement

relating to patents and, in the alternative, an action for patent infringement under the patent laws of the United States, Title 35 of the United States Code. Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

4. ICFC is organized under the laws of Florida, has its principal place of business in Florida, and has conducted and does conduct business within Florida, directly or through intermediaries or agents. In particular, ICFC conducts business subject to the license agreement at issue in Florida and makes, sells, offers for sale, advertises, uses, and induces others to use the accused products in Florida.

5. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c), because, among other reasons, ICFC is subject to personal jurisdiction in this judicial district, has conducted business subject to the license agreement at issue in this judicial district, and has committed acts of infringement in this judicial district.

## Background Allegations

6. Simpson is a global leader in the research, design, and development of structural building products. As a result of its research and development efforts, Simpson leads the industry in the design and marketing of structural connectors and fasteners. Among other products, Simpson markets and sells products used in the construction of wood and composite decks, including but not limited to a variety of deck fasteners.

7. ICFC markets and sells a number of products used in the construction of wood and composite decks, including but not limited to deck fasteners.

**The License Agreement**

8. On or about June 11, 2002, ICFC's predecessor-in-interest, R&B Marketing Corporation ("R&B"), and Simpson's predecessor-in-interest, Blue Heron Enterprises, LLC ("BHE"), entered into a license agreement related to certain R&B deck fastener products. (The original license agreement, as well as the amendment thereto, were deemed confidential by the parties. Copies of these agreements (collectively, the "License Agreement") will be provided under seal as Exhibits A and B, respectively.)

-5-
01435\189\7977001.v2

9. The License Agreement granted R&B a worldwide, non-exclusive right and license under certain BHE patents, namely U.S. Patent No. 6,402, 415 (the "'415 Patent") and any improvement patents thereof (collectively the "Patent Assets"), to make, have made, use, and sell Licensed Product (i.e., hidden deck fasteners) and to practice any methods or processes covered under the valid claims of the Patent Assets. Section 3.01(b) and 3.02(b), in turn, required R&B to pay BHE royalties in exchange for the license, including a minimum annual royalty.

10. On or about November 1, 2003, BHE and R&B amended the License Agreement. Among other things, the parties agreed to a new royalty structure, including adjusting the minimum royalty amount.

11. In the amendment, BHE & R&B also agreed to categories of deck fastener products for which the license would be exclusive or non-exclusive.

12. In the amendment, BHE and R&B also agreed to a means of addressing potential disputes regarding future R&B products that might infringe BHE's patents, by giving R&B the ability to obtain licenses under BHE's patents similar to the terms of the License Agreement.

**The Patents**

13. BHE was the owner of a number of patents relating to deck fasteners. In particular, BHE was the owner of the '415 Patent for an "Anchoring Biscuit Device." The '415 Patent is the original patent identified in the License Agreement. Subsequent to the execution of the License Agreement, BHE applied for and ultimately received two additional patents, among others: U.S. Pat. No. 7,874,113 B2 (the "'113 Patent") and U.S. Pat. No. 8,161,702 B2 (the "'702 Patent") both for "Expansion-compensating Deck Fasteners." (The '113 Patent and the '702 Patent are collectively referred to as the "Patents." A true and correct copy of the '113 Patent and the '702 Patent are attached as Exhibits C and D, respectively.)

14.     The United States Patent and Trademark Office ("PTO") duly and legally issued the '113 Patent on January 25, 2011, after a full and fair examination. The '113 Patent is valid and enforceable.

15.     The PTO duly and legally issued the '702 Patent on April 24, 2012, after a full and fair examination. The '702 Patent is valid and enforceable.

16.     The Patents are improvement patents of the '415 Patent and were owned by BHE. They are thus Patent Assets subject to the License Agreement.

**The Accused Products**

17.     As described above, ICFC markets and sells a number of products used in the construction of wood and composite decks, including but not limited to a number of deck fasteners. Among the deck fasteners marketed and sold by ICFC are (a) the original, round "Standard" (b) the "Extreme4," and (c) the "ExtremeKD."

18.     On information and belief, the only deck fastener that R&B marketed and sold when R&B and BHE entered into the License Agreement was the round Standard fastener. On information and belief, R&B began marketing and selling the Extreme4 and ExtremeKD sometime after June 2005.

19.     Each of the Extreme4 and ExtremeKD is covered by at least one valid claim of the Patents and are thus "Licensed Products" subject to the License Agreement.

**ICFC's Breach of the License Agreement**

20.     On information and belief, R&B transferred all of its assets, including its rights and obligations under the License Agreement, to ICFC in and around October 2011. Since October 2011, ICFC has been the party making the royalty payment under the License Agreement.

21.     ICFC – and R&B before it – has made only the mandatory minimum royalty payment at all times since the execution of the License Agreement. At no time has ICFC or R&B ever paid more than the mandatory minimum royalty.

22. On information and belief, according to the reports that ICFC and R&B have provided pursuant to the License Agreement, ICFC has calculated its royalty obligation under the License Agreement based solely on the Standard fastener. ICFC and R&B have never included the Extreme4 and ExtremeKD fasteners in their royalty calculation, as required by the License Agreement.

23. On information and belief, ICFC's net sales of the Accused Products are substantial and would in all likelihood have caused ICFC to pay a royalty beyond the mandatory minimum in each year of the License Agreement.

24. In and around December 2015, Simpson acquired all of BHE's assets, including all right, title, and interest in all of BHE's patents, including the Patents, and BHE's rights and obligations under the License Agreement. Simpson possesses all rights of recovery under the Patents, including the exclusive right to recover for infringement.

25. On or about May 3, 2016, Simpson sent ICFC written notice of (a) the assignment of the License Agreement to Simpson and (b) ICFC's failure to include the Accused Products in its calculation of the royalty payment under the License Agreement. ICFC has refused to acknowledge that the Accused Products are subject to the License Agreement and has refused to include either the Extreme4 and ExtremeKD in its calculation of the royalty payment.

### First Cause of Action
### (Breach of Written Agreement)

26. Simpson refers to and incorporates by reference Paragraphs 1 through 25 above as if fully set forth herein.

27. As set forth above, Simpson and ICFC are successors-in-interest to the License Agreement, which is a valid and enforceable contract.

28. Simpson has performed all conditions, covenants, and obligations under the License Agreement, other than those that have been excused.

29. ICFC has materially breached the License Agreement by failing to include the Accused Products in its calculation of the royalty payment as required by the License Agreement. ICFC's actions constitute breach of the License Agreement.

30. As a direct and proximate result of ICFC's breach of the License Agreement Simpson has suffered damages in an amount according to proof.

WHEREFORE, Simpson respectfully requests that this Court enter judgment granting the following relief.

**Second Cause of Action**
**(Patent Infringement)**

31. Simpson refers to and incorporates by reference Paragraphs 1 through 25 above as if fully set forth herein.

32. In the alternative to Simpson's breach of contract claim, Simpson asserts that ICFC has infringed and is currently infringing the Patents in violation of 35 U.S.C. § 271 by making, using, selling, and/or offering for sale, within the United States, Florida, and this judicial district, products embodying the inventions claimed in the Patents, including without limitation the Accused Products identified above.

33. ICFC has infringed and is currently infringing the Patents by actively inducing others to make, use, sell, and/or offer for sale, within the United States, Florida, and this judicial district, products embodying the inventions claimed in the Patents, including without limitation the Accused Products identified above.

34. ICFC has infringed and is currently infringing the Patents by contributing to the infringement by others, including without limitation by providing the Accused Products identified above.

35. Each of ICFC's Accused Products infringe one or more claims of each Patent. For instance, ICFC infringes at least Claim 1 of the '113 Patent, which claims:

A decking system, comprising: two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends; a support board; and an

anchoring biscuit device for joinder of said decking boards and said support board with a fastener, and wherein:

    (a)    said anchoring biscuit device comprises:

        (i)    an at least partially flax horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on each side of said center line, said side portions being adapted to be received in said biscuit slots;

        (ii)    a plurality of substantially vertical support members attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and

        (iii)    at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support members, and said at least one compressive element being adapted to at least partially collapse under a predetermined compressive force; and

    (b)    said two decking boards are situated adjacent to each other and atop said support board;

    (c)    said side portions of said anchoring biscuit device are inserted in said biscuit slots of said adjacent decking boards; and

    (d)    said anchoring biscuit device is attached by said fastener driven through it to engage said support board, thereby securing and anchoring said adjacent boards and said support board to one another.

36.    ICFC infringes at least Claim 1 of the '702 Patent, which claims:

An anchoring device comprising:

a horizontally-extending top element having a center line and side portions extending from the center line in opposite lateral directions transverse to the center line;

a support member extending downwardly from the top element adjacent the center line, the side portions of the top element projecting in the lateral directions beyond the support member; and

one or more at least partially collapsible compression members projecting from the top element, the compression members defining engagement surfaces remote from the center line, the engagement surfaces being constructed and arranged to confront vertically-extensive surfaces of slotted boards engaged with the top element so that the top element extends into slots in the boards;

the anchoring device having an opening adapted to receive a fastener so that the fastener extends downwardly toward a joist.

37. ICFC directly competes with Simpson in the marketplace.

38. On information and belief, ICFC has had actual knowledge of the Patents, prior to manufacturing, marketing, offering for sale, and selling products that infringe on the Patents.

39. ICFC's infringement of the Patents has been and continues to be willful and deliberate.

40. Simpson has no adequate remedy at law against ICFC's acts of infringement and ICFC's infringement will continue unless enjoined by this Court.

41. Simpson has suffered, and will continue to suffer, irreparable injury as a result of ICFC's infringement.

42. Simpson has been damaged by ICFC's infringement, and will continue to be damaged until enjoined by this Court.

WHEREFORE, Simpson respectfully requests that this Court enter judgment granting the following relief.

### **Prayer For Relief**

WHEREFORE, Simpson prays for the following relief on its counterclaims:

1. That ICFC be adjudged to have materially breached the License Agreement and holding ICFC liable for breach of contract;

2. That ICFC be directed to provide an accounting and to pay to Simpson compensatory damages in an amount according to proof;

3. In the alternative to the breach of contract claim, that ICFC be adjudged to

have infringed the Patents, directly and indirectly, literally and/or under the doctrine of equivalents;

4. In the alternative to the breach of contract claim, that ICFC, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly and/or indirectly infringing the Patents;

5. In the alternative to the breach of contract claim, an award of damages pursuant to 35 U.S.C. § 284 sufficient to compensate Simpson for ICFC's past infringement and any continuing or future infringement up until the date ICFC is finally and permanently enjoined from further infringement;

6. Adjudging that the Patents are valid and enforceable;

7. An assessment of pre-judgment and post-judgment interest and costs against ICFC, together with an award of such interest and costs;

8. That ICFC be directed to pay enhanced damages, including Simpson's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285; and

9. That Simpson be granted such other and further relief as this Court may deem just and proper.

### Demand For Jury Trial

Simpson demands a jury trial on all claims and issues so triable.

Dated May 16, 2017.                             Respectfully submitted,

*/s/ Michael J. Colitz, III*
Michael J. Colitz, III
**TRIAL COUNSEL**
Florida Bar No. 164348
Cole Y. Carlson
Florida Bar No. 112863
GRAYROBINSON, P.A.
401 E. Jackson Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 273-5000


Facsimile: (813) 273-5145
michael.colitz@gray-robinson.com
cole.carlson@gray-robinson.com

Joseph V. Mauch
Erick C. Howard
Arthur J. Shartsis
*Admitted Pro Hac Vice*
Shartsis Friese LLP
One Maritime Plaza
Eighteen Floor
San Francisco, CA 94111
Telephone: (415) 421-6500
jmauch@sflaw.com
ehoward@sflaw.com
ashartsis@sflaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2017, I filed the foregoing with the Court's CM/ECF system which will send a Notice of Electronic Filing to all counsel of Record.

*/s/ Michael J. Colitz, III*
Michael J. Colitz, III

# 1903862 v2