# Exhibit D

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

THE IPE CLIP FASTENER COMPANY, LLC,

Plaintiff,

v.

Case No.: 8:16-cv-02862-SDM-TGW

SIMPSON STRONG-TIE COMPANY, INC.,

Defendant.

## PLAINTIFF'S NON-INFRINGEMENT AND INVALIDITY CONTENTIONS

Plaintiff The Ipe Clip Fastener Company, LLC ("Ipe Clip") hereby submits its Non-Infringement and Invalidity Contentions with respect to United States Patent Number 7,874,113 (the "'113 Patent") and United States Patent Number 8,161,702 (the "'702 Patent")(collectively "Simpson Patents"). Ipe Clip's investigation is ongoing and discovery is in its early stages. Consequently, these disclosures are based on information available to Ipe Clip at this time.

Given that the parties have not yet specifically identified proposed terms for construction or provided their proposed constructions, and that the Court has not yet made any claim construction ruling in this action, Ipe Clip's contentions are made in a variety of alternatives, and are not intended to necessarily be consistent with each other and should not be otherwise construed. Ipe Clip's contentions herein are not, and should in no way be seen as, admissions or adoptions as to any particular claim scope or construction, or as any admission that any particular element is met in any particular way. Ipe Clip objects to any attempt to imply claim constructions from any identification of potential prior art or any characterization of such prior art.

Ipe Clip reserves the right to supplement this disclosure after further discovery from Defendant Simpson Strong-Tie Company, Inc. ("Simpson"). Ipe Clip reserves the right to assert additional non-infringement and invalidity claims.

## NON-INFRINGEMENT CONTENTIONS

Ipe Clip's Non-Infringement Contentions in chart form are attached hereto as Exhibit A. Ipe Clip denies that either Accused Product is covered by any claim of the '113 Patent or the '702 Patent literally or under the doctrine of equivalents. Since Simpson did not include any analysis of the doctrine of equivalents in its Infringement Contentions, there are no contentions to which Ipe Clip can specifically respond regarding same. Simpson has asserted that the Accused Products are covered by claims 1-8, 10, 12-15, 21 and 38 of the '113 Patent and by claims 1-5, 8-15 and 18-20 of the '702 Patent ("Asserted Claims"). Pursuant to the Case Management Report, Ipe Clip has asserted non-infringement to all Asserted Claims and has not included non-infringement to claims not asserted by Simpson to be infringed. Ipe Clip's Non-Infringement Contentions chart is attached hereto as Exhibit A.

## INVALIDITY CONTENTIONS

### A. *Each item of prior art that allegedly anticipates each asserted claim or renders it obvious.*

Simpson has asserted that the Accused Products are covered by claims 1-8, 10, 12-15, 21 and 38 of the '113 Patent and by claims 1-5, 8-15 and 18-20 of the '702 Patent ("Asserted Claims"). Although Ipe Clip contends that all claims of the Simpson Patents are invalid, Ipe Clip's invalidity contentions are restricted to the claims asserted by Simpson in its Non-Infringement Contentions.

Ipe Clip hereby identifies the following prior art that anticipates or renders obvious the Asserted Claims of the Simpson Patents:

<u>For U.S. Patent No. 7,874,113 and U.S. Patent No. 8,161,702</u>

1. United States Patent No. 6,810,633 ("the '633 Patent" or "Harris") issued November 2, 2004.

2. United States Patent No. 1,723,306 ("the '306 Patent" or "Sipe") issued August 6, 1929.

3. United States Patent No. 3,205,629 ("the '629 Patent" or "Rumley") issued September 14, 1965.

4. United States Patent No. D470,039 ("the '039 Patent" or "Pelc") issued February 11, 2003.

Ipe Clip reserves the right to amend this listing of prior art, as well as other information contained in this document and the exhibits hereto, to incorporate new information learned during the course of discovery.

***B. Whether each item of prior art anticipates each asserted claim or renders it obvious.***

<u>The '113 Patent</u>

The '633 Patent anticipates claims 1-4, 6-8, 14, 21 and 38.

The '633 Patent renders claims 1-4, 6-8, 14, 21 and 38 obvious.

The '633 Patent in combination with the '306 Patent renders claims 1-4, 6-8, 10, 12-15, 21 and 38 obvious.

The '633 Patent in combination with the '629 Patent renders claims 1-4, 6-8, 14, 21 and 38 obvious.

The '633 Patent in combination with the '306 Patent and '629 Patent renders claims 1-4, 6-8, 10, 12-15, 21 and 38 obvious.

The '633 Patent in combination with the '039 Patent renders claim 5 obvious.

The '633 Patent in combination with the '306 Patent and the '039 Patent renders claim 5 obvious.

The '633 Patent in combination with the '629 Patent and the '039 Patent renders claim 5 obvious.

The '633 Patent in combination with '629 Patent, the '306 Patent and the '039 Patent renders claim 5 obvious.

The '702 Patent

The '633 Patent anticipates claims 1-4, 8-9, 11-14 and 18-19.

The '633 Patent renders claims 1-4, 8-9, 11-14 and 18-19 obvious.

The '633 Patent in combination with the '306 Patent renders claims 1-5, 8-9, 11-15 and 18-19 obvious.

The '633 Patent in combination with the '629 Patent renders claims 1-4, 8-9, 11-14 and 18-19 obvious.

The '633 Patent in combination with the '306 Patent and '629 Patent renders claims 1-5, 8-9, 11-15 and 18-19 obvious.

The '633 Patent in combination with the '039 Patent renders claim 10 and 20 obvious.

The '633 Patent in combination with the '306 Patent and the '039 Patent renders claims 10 and 20 obvious.

The '633 Patent in combination with the '629 Patent and the '039 Patent claims 10 and 20 obvious.

The '633 Patent in combination with '629 Patent, the '306 Patent and the '039 Patent claims 10 and 20 obvious.

The '633 Patent generally relates to a fastening device for securing adjacent, parallel boards to a transverse structure. The '306 Patent generally relates to a strip for attaching two or

more rigid bodies together. The '629 Patent generally relates to a sealing device for securing wall panels. The '039 Patent generally relates to an ornamental design for a fastening biscuit.

Since these four patents relate to fastening devices for securing boards or panels to each other, a person of ordinary skill in the art would have been motivated to combine these references in any combination and have a reasonable expectation of success by doing so. Since Harris, Sipe and Rumley have an objective to compensate for a degree of expansion and contraction of the parts coupled together, a person of ordinary skill in the art would have been motivated to combine these references in any combination and have a reasonable expectation of success by doing so. The inventor of Simpson Patents was trying to solve the problem of joining two boards together as well as accommodate swelling and expansion of the boards after installation.

Elements that allowed for the expansion of deck boards were well known by persons of ordinary skill in the art prior to the priority date for the Simpson Patents. It was well-known to persons of skill in the art that wood expands and contracts. A known, solved need in the art was that a fastener should contain portions that allow for the swelling of deck boards. This was observed in existing clip fastening of plastic boards which move on their length. It is obvious to a person of ordinary skill in the art at the time of the invention to allow for board movement by various methods including but not limited to turning portions of the fastener sideways, adding protuberances to the fastener, using a softer plastic, and/or widening portions of the fastener to allow for the movement of wood which expands on its width. For example, immediately after the original Ipe Clip® fastener was put on the market in 2001, customers began to request fasteners with wider gap spacing. The issue of wider gap spacing appeared to be more of an issue initially with West Coast locations, where pine needles are more prevalent. A common

concern was the desire to have wide enough spacing to allow pine needles to drop between the boards rather than always remaining on top of the deck. Another common issue was that hardwoods were frequently kiln dried or improperly kiln dried and tended to expand to a greater extent than other non-hardwood decking boards. In the early 2000s, customers requested clip fasteners that would allow for bigger gap spacing for visual purposes and for a wider gap to allow for more expansion than the original 2001 Ipe Clip® fastener provided. As a result of these and other issues, in 2001 and 2002, Robert Pelc developed a series of fastener designs to allow for wider gap spacing. The designs included: upwardly and/or downwardly extending (from the top plate of the fastener) pin-like members in various areas of the fastener including set apart from the center line at the desired width, side extending protuberances and/or pin-like members extending out from either side of the downward member of the original Ipe Clip® fastener, a hollow cylindrical downward member that would accept the mounting screw and provide wider spacing, and a wider downwardly extending member of an even more flexible material than the original Ipe Clip® fastener.

Pelc discussed these fastener designs with various customers and distributors in 2002 and 2003, including but not limited to a California Eb-Ty distributor in December 2002. While at lunch in Southern California with a Eb-Ty distributor in December 2002, Pelc drew the design for a deck fastener with a wider gap spacing on a napkin to show how easy and obvious the design was. During lunch, Pelc not only discussed these alternatives but also drew diagrams of potential compressible or collapsible gap spacing elements. The California Eb-Ty distributor took the napkin with him when he left the lunch. Pelc informed the California Eb-Ty distributor and other customers and distributors that Plaintiff would make the molds for those designs if a large enough purchase order was placed.

Pelc's fastener designs containing a wider gap spacing were discussed with numerous potential customers and distributors in 2002 and later, including the Deck Expo trade show held in Atlanta from March 13-15, 2003, where the Eberle representatives had to be escorted away from The Ipe Clip® tradeshow booth for disrupting these discussions with potential customers.

Further proof of obviousness is shown by Plaintiff's 2001 marketing material and Plaintiff's verbal and written interactions with the United States Patent and Trademark Office. These show that it was known the original round Ipe Clip™ fastener had demonstrated a level of resiliency such that it allowed for the expansion of wood decking boards and that a gap spacing element of a fastener needed to allow for the expansion of deck boards.

It is well-known in the art that beyond certain widths hollow members are the simplest and most economical design to produce, because as known in the plastic injection industry as a long standing basic principle, hollow parts use less material and cool faster, thus speeding production time and reducing cost.

Making a hollow or reduced thickness member would have been an obvious design choice for a person having ordinary skill in the art. For example, it is conventional in injection molding to re-form a relatively wider element into multiple thinner spaced legs or a cored element (hollowed out) for purposes of manufacture. This is required because structural integrity and/or dimensional tolerances may be compromised if an extending element is wider than a main body. In fact, it is conventional that a maximum width of a protruding rib should be no more than 2/3 the width of the main body. It was basic knowledge in the art that as the desired width of a projection surpassed the thickness of a main portion from which it projected it becomes necessary to core out the projection to properly manufacture the object, e.g., to achieve dimensional accuracy and part stability. This is necessary because thicker appendage elements

cool slower than the main body and deform, thus both increasing manufacturing time and leading to an imperfect product.

Generally, motivations to modify or combine these references are provided by discussions in the references, the state of the art discussed in the references, and the knowledge of one of ordinary skill in the art. One of skill in the art would have been motivated to combine these references, because these references relate to common objectives and subject matter. The references share commonalities in terms of their general subject matter as well as the types of equipment, products, and/or approaches used. These references are within the field of the asserted patents and are directed to similar subject matter within the field. Additionally, the references, and any products, devices, or processes described in the references, existed and/or were invented in the same time period providing further motivation for combination. Ipe Clip provides these disclosures without prejudice to any arguments or objections concerning the relevance of motivation to combine in connection with any invalidity contentions.

### *C. A chart identifying where specifically in each alleged item of prior art each limitation of each element of the claim is found.*

Claim charts identifying a location of every element of every claim of the Simpson Patents within the prior art are attached hereto as Exhibits B and C. Ipe Clip further reserves the right to amend these claim charts, as well as other information contained in this document and the exhibits attached hereto.

While Ipe Clip has identified at least one citation per element or limitation for each reference identified in the charts contained in Exhibits B and C, each and every disclosure of the same element or limitation in the same reference is not necessarily identified. In an effort to focus the issues, Ipe Clip cites exemplary relevant portions of identified references, even where a reference may contain additional disclosure for a particular claim element or limitation, and

reserves all rights to rely on other portions of the identified references to support their claims and/or defenses. Persons of ordinary skill in the art generally read a prior art reference as a whole and in the context of other publications and literature. Ipe Clip may rely on uncited portions of the prior art references and on other publications and expert testimony to provide context and as aids to understanding and interpreting the portions of the prior art references that are cited.

Disclosures relating to initial elements of dependent claims are disclosed in connection with the independent claims from which they depend.

Ipe Clip may also rely on uncited portions of the prior art references, other publications, and the testimony of experts to establish that a person of ordinary skill in the art would have been motivated to modify or combine certain of the cited references so as to render the claims obvious. Where Ipe Clip cites to a particular figure in a prior art reference, the citation should be understood to encompass the caption and description of the figure and any text relating to the figure in addition to the figure itself. Conversely, where a cited portion of text refers to a figure, the citation should be understood to include the figure as well.

### D. Grounds of invalidity based on 35 U.S.C. 101, indefiniteness under 35 U.S.C. 112 ¶2, or enablement or written description under 35 U.S.C. 112 ¶ 1 of any of the asserted claims.

Claims 1 and 38 of the '113 Patent recite the phrase "said at least one compressive element being adapted to at least partially collapse under a predetermined compressive force". Claims 1 and 38 of the '113 Patent, read in light of the specification delineating the patent and the file history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. Thus, claims 1 and 38 of the '113 Patent and any claims dependent thereon are invalid for indefiniteness under 35 U.S.C. Section 112.

Claims 1 and 38 of the '113 Patent recite the phrase "top view footprint shape". Claims 1 and 38 of the '113 Patent, read in light of the specification delineating the patent and the file history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. Thus, claims 1 and 38 of the '113 Patent and any claims dependent thereon are invalid for indefiniteness under 35 U.S.C. Section 112.

Claims 1 and 11 of the '702 Patent recite the phrase "at least partially collapsible". Claims 1 and 11 of the '702 Patent, read in light of the specification delineating the patent and the file history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. Thus, claims 1 and 11 of the '702 Patent and any claims dependent thereon are invalid for indefiniteness under 35 U.S.C. Section 112.

Claims 9 and 19 of the '702 Patent recite the phrase "monolithic structure". Claims 9 and 19 of the '702 Patent, read in light of the specification delineating the patent and the file history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. Thus, claims 9 and 19 of the '702 Patent and any claims dependent thereon are invalid for indefiniteness under 35 U.S.C. Section 112.

DATED: April 3, 2017

/s/ Jennifer L. Friedman
Jennifer L. Friedman, Esq.
Schröder, Joseph & Associates, LLP
392 Pearl Street, Suite 301
Buffalo, New York 14202
Telephone No.: (716) 881-4900
Facsimile No.: (716) 881-4909
jfriedman@sjalegal.com

*Attorneys for Plaintiff, The Ipe Clip Fastener Company, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 3, 2017, I caused the foregoing Plaintiff's Non-Infringement and Invalidity Contentions to be served electronically by e-mailing the foregoing to all counsel of record.

/s/ Crystal L. Hunt
Paralegal