# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

_____

**THE IPE CLIP FASTENER
COMPANY, LLC,**

                              **Plaintiff,**          **Case No.: 8:16-cv-02862-SDM-TGW**

**v.**

**SIMPSON STRONG-TIE COMPANY,
INC.,**

                              **Defendant.**

_____

 

 

**THE IPE CLIP FASTENER COMPANY, LLC'S**

**APPENDIX TO**

**AMENDED CLAIM CONSTRUCTION BRIEF**

Plaintiff, The Ipe Clip Fastener Company, LLC submits the following in support of its

Amended Claim Construction Brief:

A. United States Patent No. 7,874,113 ................................................................IC-App-0001

B. United States Patent No. 8,161,702 ............................................................. IC-App-0016

C. '113 Patent File History ............................................................................... IC-App-0035

D. '702 Patent File History................................................................................ IC-App-0273

E. United States Patent No. 6,363,677 (Chen) ................................................. IC-App-0479

F. Project Lead the Way Wood Fasteners, Joinery, and Adhesives .................. IC-App-0498

G. Webpage from http://www.woodmagazine.com/woodworking-
tips/techniques/joinery/biscuits-marking-guide (last accessed 9/18/17) ....... IC-App-0507

H. Webpage from http://edeck.com/accessories/ebty-hidden-deck-
fasteners/ (last accessed 9/18/17)................................................................. IC-App-0509

I. Webpage from http://www.diynetwork.com/how-to/skills-and-know-
how/carpentry-and-woodworking/how-to-use-a-biscuit-joiner (last
accessed 9/18/17) ........................................................................................ IC-App-0511

J. Webpage from
https://www.canadianwoodworking.com/tipstechniques/use-your-
router-biscuit-joiner posted from the October/November 2002 issue ........... IC-App-0518

K. Webpage from https://www.nrha.org/How-
To/shelving/woodjoint/woodjoints.htm (last accessed 9/18/17)
posted on Feb. 1, 2001 ................................................................................IC-App-0523

L. Webpage from https://quizlet.com/3894414/woodworking-terms-
flash-cards/ (last accessed 9/18/17)  posted on Feb. 1, 2001 ......................... IC-App-0530

M. Webpage from https://www.merriam-
webster.com/dictionary/compress (last accessed 9/18/17) ............................ IC-App-0547

N. Webpage from https://www.merriam-
webster.com/dictionary/collapse (last accessed 9/18/17) .............................. IC-App-0559

O. Webpage from https://www.merriam-
webster.com/dictionary/support (last accessed 9/18/17) ............................... IC-App-0573

P. Webpage from https://www.merriam-
webster.com/dictionary/centerline (last accessed 9/18/17)............................IC-App-0590

Q. Webpage from https://www.merriam-webster.com/dictionary/along (last accessed 9/18/17) ...................................................................IC-App-0597

R. Webpage from `https://www.merriam-webster.com/dictionary/adjacent (last accessed 9/18/17) ...............................IC-App-0608

S. Webpage from https://www.merriam-webster.com/dictionary/remote (last accessed 9/18/17) ...................................................................IC-App-0617

T. https://www.merriam-webster.com/dictionary/bevel (last accessed 9/18/17) ...............................................................................IC-App-0629

U. Webpage from http://www.ebty.com/installation_hidden_deck_fasteners.php (last accessed 9/18/17) .........................................................................IC-App-0640

V. United States Patent No. 6,402,415 .................................................IC-App-0645

W. Reexamination of United States Patent No. 6,402,415 ...................IC-App-0656

Dated: May 24, 2019

Respectfully submitted,

/s/ Jennifer L. Friedman
Jennifer L. Friedman, Esq.
Schröder, Joseph & Associates, LLP
392 Pearl Street, Suite 301
Buffalo, New York 14202
Telephone No.: (716) 881-4900
Facsimile No.: (716) 881-4909
jfriedman@sjalegal.com

J. Todd Timmerman
Florida Bar No. 0956058
ttimmerman@slk-law.com
Mindi M. Richter
Florida Bar No. 0044827
mrichter@slk-law.com
Jeffrey B. Fabian
Florida Bar No. 0085868
jfabian@sIk-law.com
Shumaker, Loop & Kendrick, LLP
101 East Kennedy Boulevard, Suite 2800
Tampa, Florida 33602
Telephone No.: (813) 229-7600
Facsimile No.: (813) 229-1660

*Attorneys for Plaintiff The Ipe Clip Fastener Company, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 24, 2019, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send electronic filing to all counsel of

record.

/s Jennifer L. Friedman
Attorney

# Exhibit A



US007874113B2

(12) **United States Patent** (10) Patent No.: **US 7,874,113 B2**
Eberle, III (45) Date of Patent: **Jan. 25, 2011**

(54) **EXPANSION-COMPENSATING DECK FASTENER**

(76) Inventor: **Harry W. Eberle, III**, 219 W. Valley Brook Rd., Califon, NJ (US) 07830

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **12/583,702**

(22) Filed: **Aug. 24, 2009**

(65) **Prior Publication Data**

US 2010/0139198 A1 Jun. 10, 2010

**Related U.S. Application Data**

(63) Continuation of application No. 10/446,514, filed on May 28, 2003, now Pat. No. 7,578,105, which is a continuation-in-part of application No. 10/393,100, filed on Mar. 20, 2003, now Pat. No. 6,851,884.

(51) **Int. Cl.**
*E04F 15/22* (2006.01)
*E04B 2/00* (2006.01)
*F16B 9/00* (2006.01)
(52) **U.S. Cl.** .................. **52/403.1**; 52/586.1; 52/586.2; 52/483.1; 52/480; 52/650.3
(58) **Field of Classification Search** ............... 52/586.1, 52/586.2, 483.1, 480, 650.3, 403.1; 403/231, 403/232.1, 408.1
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 186,463 | A | 1/1877 | Dickenson | .................. 52/512 |
| 466,995 | A | 1/1892 | Abramson | ................. 52/385 |
| 695,722 | A | 3/1902 | Heilmann | |
| 1,184,080 | A | 4/1916 | D'Arcy | ..................... 403/231 |

| | | | | |
|---|---|---|---|---|
| 1,241,885 | A | 2/1917 | Roede | ......................... 52/714 |
| 1,714,738 | A | 5/1929 | Smith | ......................... 52/512 |

(Continued)

FOREIGN PATENT DOCUMENTS

CA          2287104          1/1901

(Continued)

OTHER PUBLICATIONS

Invoice for the sale of certain Eb-Ty Fasteners dated Aug. 26, 1997.

(Continued)

*Primary Examiner*—Richard E Chilcot, Jr.
*Assistant Examiner*—Mark R Wendell
(74) *Attorney, Agent, or Firm*—Lerner, David, Littenberg, Krumholz & Mentlik, LLP

(57) **ABSTRACT**

The present invention is an anchoring biscuit device for joining three boards. It includes, (a) an at least partially flat horizontal top element having an imaginary center line, having opposite side walls, and having a top view footprint adapted to be inserted into grooves of adjacent boards; (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which contain said grooves for receiving portions of said top into said grooves; and, (c) at least one compressive element located on aid device, with at least a portion of said at least one compressive element, from a top view footprint, being located away from said imaginary center line and way from said vertical support member, wherein said compressive element is adapted to at least partially collapse under predetermined compressive force.

**41 Claims, 6 Drawing Sheets**



## U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 1,723,306 A | * | 8/1929 | Sipe | 52/396.04 |
| 1,990,001 A | | 2/1935 | Rutten | 52/250 |
| 2,201,129 A | | 5/1940 | Weiland | 52/509 |
| 2,332,081 A | | 10/1943 | Hunt et al. | 52/586.1 |
| 2,337,156 A | | 12/1943 | Elmendorf | 52/391 |
| 2,362,252 A | * | 11/1944 | Ellinwood | 52/288.1 |
| 2,398,603 A | | 4/1946 | Soderberg | 411/457 |
| 2,406,387 A | | 8/1946 | Lank | 144/347 |
| 2,526,116 A | | 10/1950 | Browne | 105/423 |
| 3,045,294 A | | 7/1962 | Livezey, Jr. | 52/403.1 |
| 3,319,983 A | | 5/1967 | Zibell | 403/400 |
| 3,619,963 A | | 11/1971 | Omholt | 52/481.1 |
| 3,705,002 A | | 12/1972 | Varlonga | 512/213 |
| 3,890,753 A | | 6/1975 | Johansen | 52/766 |
| 4,154,172 A | | 5/1979 | Curtis, Jr. | 105/422 |
| 4,449,346 A | | 5/1984 | Tremblay | 52/509 |
| 4,454,699 A | * | 6/1984 | Strobl | 52/585.1 |
| 4,599,841 A | * | 7/1986 | Haid | 52/396.04 |
| 4,641,988 A | | 2/1987 | Ganner | 403/245 |
| 4,682,458 A | | 7/1987 | Sparrow | 52/309.8 |
| 4,716,704 A | | 1/1988 | Murr | 52/778 |
| 5,004,027 A | | 4/1991 | Legler et al. | 144/136.9 |
| 5,056,286 A | | 10/1991 | Bokor | 52/483.1 |
| 5,071,280 A | | 12/1991 | Turner | 403/232.1 |
| 5,160,211 A | | 11/1992 | Gilb | 403/231 |
| D331,470 S | | 12/1992 | Mitchell et al. | D25/156 |
| 5,182,891 A | | 2/1993 | Slocum | 52/480 |
| 5,243,804 A | | 9/1993 | Therrien et al. | 52/664 |
| 5,245,808 A | | 9/1993 | Grunewald et al. | 52/235 |
| 5,251,996 A | | 10/1993 | Hiller et al. | 403/331 |
| 5,359,954 A | * | 11/1994 | Kordelin | 114/85 |
| 5,377,732 A | | 1/1995 | Fujii et al. | 144/37 |
| 5,419,649 A | | 5/1995 | Gilb | 403/249 |
| 5,458,433 A | | 10/1995 | Stastny | 403/408.1 |
| 5,480,117 A | | 1/1996 | Fleming, III | 248/231.9 |
| 5,529,428 A | | 6/1996 | Bischof | 403/408.1 |
| 5,564,248 A | | 10/1996 | Callies | 52/702 |
| 5,603,580 A | | 2/1997 | Leek et al. | 403/232.1 |
| 5,619,834 A | | 4/1997 | Chen | 52/509 |
| 5,660,016 A | * | 8/1997 | Erwin et al. | 52/483.1 |
| 5,704,181 A | | 1/1998 | Fisher et al. | 52/438 |
| 5,743,672 A | | 4/1998 | Cline | |
| 6,012,256 A | | 1/2000 | Aschheim | 52/167.1 |
| 6,032,431 A | * | 3/2000 | Sugiyama | 52/656.9 |
| 6,363,677 B1 | * | 4/2002 | Chen et al. | 52/586.1 |
| 6,402,415 B1 | * | 6/2002 | Eberle, III | 403/231 |
| 6,442,908 B1 | | 9/2002 | Naccarato et al. | 52/236.8 |
| 6,449,918 B1 | | 9/2002 | Nelson | 52/582.1 |
| 6,460,306 B1 | | 10/2002 | Nelson | 52/582.1 |
| 6,470,641 B1 | | 10/2002 | Faure | |
| 6,471,434 B2 | | 10/2002 | Chin et al. | |
| D470,039 S | | 2/2003 | Pelc | D8/382 |
| 6,651,400 B1 | * | 11/2003 | Murphy | 52/586.2 |
| 6,711,864 B2 | * | 3/2004 | Erwin | 52/582.1 |
| D488,373 S | | 4/2004 | Eberle, III | D8/382 |
| 6,871,467 B2 | * | 3/2005 | Hafner | 52/586.1 |
| 7,052,200 B2 | | 5/2006 | Harris | 403/231 |
| 2002/0059766 A1 | * | 5/2002 | Gregori | 52/489.1 |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CH | 278212 | 10/1951 |
| DE | 372483 | 3/1923 |
| DE | 4036338 | 6/1991 |
| EP | 863317 | 9/1998 |
| FR | 1217468 | 5/1960 |
| FR | 1556252 | 2/1969 |
| FR | 2647837 | 12/1990 |
| GB | 1350754 | 4/1974 |
| GB | 1567008 A | 5/1980 |
| GB | 2124672 A | 2/1984 |
| JP | 404371657 A | 12/1992 |

## OTHER PUBLICATIONS

Engineering Drawing depicting an Eb-Ty Fastener dated Jun. 15, 1997.

*Harry W. Eberle, III et al. v. KK manufacturing Co., et al.*, Civil Action No. 03-5809 (FLW-TJB), Invalidity Contentions related to U.S. Patent No. 6,402,415 and U.S. Patent No. 6,851,884, Received Aug. 25, 2010.

* cited by examiner



Fig. 3

Fig. 4A

Fig. 1

Fig. 2



Fig. 5

Fig. 6



Fig. 4B



Fig. 9A

Fig. 9B

Fig. 7

Fig. 8

IC-App-0005



Fig. 12

Fig. 13

Fig. 10

Fig. 11



Fig. 16



Fig. 17



Fig. 14



Fig. 15

IC-App-0007



Fig. 21

Fig. 20

Fig. 18

Fig. 19

IC-App-0008

# EXPANSION-COMPENSATING DECK FASTENER

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 10/446,514, filed May 28, 2003, now U.S. Pat. No. 7,578,105, which, in turn, is a continuation-in-part of U.S. patent application Ser. No. 10/393,100, filed on Mar. 20, 2003, now U.S. Pat. No. 6,851,884. Each of these applications is hereby incorporated herein in its entirety by reference thereto.

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention is directed to an improved biscuit for joining adjacent boards. More specifically, the invention is an anchoring biscuit device that has the ability for pre-setting distances between adjacent boards and attaching to at least one board by means in addition to the biscuit itself. The anchoring biscuit device physically joins two adjacent boards in the same plane to a third, supporting board. The anchoring half-biscuit device joins two adjacent boards at right angles to one another. Further, the present invention anchoring biscuit includes compressive elements to accommodate swelling and expansion of boards after installation.

U.S. Pat. No. 6,402,415, issued to the present inventor herein covers such biscuit devices having opposite side walls in the shape of arcs. These would include side walls with arcs and flat ends, side walls with arcs and arc ends, e.g. circles, ellipses, etc. The present invention covers biscuit-shaped devices with side walls that may have the same top view footprint as the Eberle U.S. Pat. No. 6,402,415 devices, and covers anchoring devices that may not have opposite arcs, and may or may not have biscuit shapes. However, all of the present invention devices do include at least one compressive element, namely, a portion of the device that will collapse or move under compression (from opposing expansion or swelling of wood).

2. Information Disclosure Statement

The following patents are representative of the state of the art for wood joining devices, equipment and methods:

U.S. Pat. No. 1,184,080 to D'Arcy describes a structure of the class described, the combination of frame pieces disposed at an angle to each other and flat-like corner irons having angularly disposed flanges, said corner irons being arranged in opposed pairs on the sides of and secured to the ends of meeting frame pieces with their flanges engaging the inner edges thereof in overlapping telescoping relation to each other, the inner flanges having vertical nail slots therein and brads on their edges driven into the frame pieces, the outer flanges having nail perforations opposite the nail slots, there being nails disposed through the said perforations and slots and driven into the frame.

U.S. Pat. No. 2,332,081 to G. M. Hunt et al. is directed to a wooden panel. It is described as a panel comprising wooden strips joined along their edges with glue, each strip having at least one groove in its edge matching groove in the edge of the adjoining strip, an asbestos millboard spline fitted in the matching grooves and bridging the joint between the strips, crossbands covering the strips on both sides of the panel, and veneers covering the crossbands.

U.S. Pat. No. 2,362,252 to Ellinwood describes a wall structure of the character described comprising a pair of adjacent wallboard panels having meeting edges, each of said

panels being formed with a groove opening into its meeting edge, the groove in each panel providing an outer lip and an inner lip, said outer lips being in abutting relation, a joining strip permanently secured to the under surface of said outer lips, said inner lips being spaced, a T-shaped connecting member movably positioned in said groove and having a base in spaced relation to said inner lips, and means for anchoring said connecting member to a structural element.

U.S. Pat. No. 2,398,603 to Soderberg describes a joining staple, comprising a metal body having at least two portions extending at right angles to each other and at least two teeth carried upon each of said portions, each of said teeth consisting of a flat substantially rectangular body having a cutting edge extending substantially parallel to its body portion, the cutting edges of all of said teeth being located in one plane, each of said portions having another cutting edge extending between the teeth of that portion, the second mentioned cutting edges being also located in one plane.

U.S. Pat. No. 2,406,387 to Lank describes the method of constructing a plurality of wooden posts each of which has a connector element incorporated therein adjacent each end thereof which method comprises forming a plurality of longitudinally extending grooves in one side of each of a pair of wooden blanks from which the posts are to be formed, forming a transverse groove adjacent each end of said side of each of said blanks with the transverse grooves intersecting the longitudinal grooves, providing a pair of connector retaining members with a plurality of seats for receiving connector elements, the number and spacing of said seats in each of said connector retaining members conforming to the number and spacing of the longitudinal grooves in each of said blanks, placing connector elements in each of said seats, positioning said blanks with their grooved sides together and with said connector retaining members in said transverse grooves, bonding said blanks together, and severing the thus bonded assembly along longitudinal lines intermediate said longitudinal grooves.

U.S. Pat. No. 4,641,988 to Ganner is directed to a fitting for releasably joining two structural components. It is illustrated for releasably joining two structural components particularly plate-shaped structural components which extend at a right angle relative to one another, a fitting has a preferably cylindrical locking element which can be inserted either directly in a bore in the first structural component or it can be inserted indirectly in a housing, and a holding piece with a holding projection anchored in the second structural component. In the assembled position, the holding projection & abuts against one or two gripping surfaces of the locking element which gripping surfaces are of, for example, eccentric shape, and the holding projection is pulled toward the locking element when the locking element is turned. The holding piece is constructed plate-shaped and is insertable in a slot in the second structural component.

U.S. Pat. No. 4,682,45 to Sparrow describes a floor composed of parallel spaced beams having flanges and blocks of polystyrene foam which are laid on the flanges to bridge the gaps between the beams. Boards are laid on the polystyrene blocks, and are supported by the blocks, which form load-bearing members of the floor. The blocks may have flanged portions extending over the beams, so as to provide heat insulation.

U.S. Pat. No. 5,004,027 to Legler et al. illustrates a biscuit joiner. It is described as a biscuit joiner for cutting semi-elliptical slots in opposing edges of workpieces which are to be joined along those edges includes a housing adapted to be mounted upon the quill of a multipurpose woodworking tool, which housing encloses a rotary saw blade adapted to be

3

attached to a spindle projecting from the quill on which the housing is mounted. A spring loaded guide projects from the front face of the housing and has a slot therethrough, so that when the front face of the guide is engaged by an edge of a workpiece to be slotted the guide can be pushed inwardly against spring pressure, allowing the rotary saw blade to be exposed and form a slot in the edge of the workpiece. Adjustable stops are provided on the guide so that a desired depth of cut will automatically be made after adjustment. An alternative construction of this biscuit joiner is especially adapted for use in conjunction with a conventional drill press, with the arbor which carries the saw blade being clamped in the chuck on the drive spindle of the drill motor.

U.S. Pat. No. 5,182,891 to Slocum describes a flooring construction which is provided having a unitary construction with a top layer providing a finished flooring surface and an insulation layer adjacent the top layer. The flooring panel includes an upper portion and a lower portion. The upper portion has a larger dimension than the lower portion and extends outwardly beyond the lower portion. A recessed portion between the upper portion and the lower portion defines a channel. A plurality of interlock support elements having a vertical web and an upper horizontal flange are arranged so that the horizontal flange extends into the channel. The vertical web extends below the lower portion to raise the flooring.

U.S. Pat. No. 5,251,996 to Hiller et al. describes a connecting element for connecting two parts generally in a connection plane has a first portion for connecting the element relative to a first of the parts and second portion for connecting the element relative to the second part. The second portion includes actuation members which on relative movement of the parts substantially along the connection plane urge the parts forcefully towards each other.

U.S. Pat. No. 5,377,732 to Fujii et al. illustrates a wood joining structure and method thereof. It is described as a technique is provided for joining wood members. A plurality of slits are formed on the end portions of wood pieces desired to be joined, and the end portions are abutted with corresponding slits in alignment to form a common surface. Each of the abutted wood end portions is fixed by temporary fixing means to a desired joining state. Thereafter, an adhesive agent is applied into the interior surfaces of the slits. Connecting plates, e.g., made of a reinforced plastic material coated with the adhesive agent, are inserted into the aligned slits. The adhesive agent is then hardened.

U.S. Pat. No. 5,458,433 to Stastny explicates a biscuit and joint made using same. It is described as a biscuit having octagonal outer periphery is used to form a joint between first and second workpieces. The biscuit fits within arcuate slots formed in the workpieces, with glue placed in the slots and/or on the biscuit before the joint is put together. The biscuit is made of an anhydrous compressed wood.

U.S. Pat. No. 5,480,117 to Fleming, III describes a bracket for mounting a rotary lock member in the frame of a panel which is provided. The bracket is a preferably U-shaped body having a base and two legs extending therefrom. The inner dimension of the bracket is chosen to allow insertion of a rotary lock member therein. Panel engaging steps and protrusions are located on the outside surface of each leg for engaging the frame material. The legs of the bracket are biased inwardly towards one another, such that when a locking member is inserted therein, the legs are pressed outwardly, driving the protrusions into the frame material. A number of bores are located in the bracket to allow supplemental locking members to lock the bracket to the frame.

4

U.S. Pat. No. 5,529,428 to Bischof is directed to a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic. It is described as a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic, consisting of a lamellar part, which provides the non-positive connection with the first workpiece provided with a groove and a transverse hole, and a bolt-like part which, through screwing or pinning, realizes the non-positive connection with the second workpiece provided with a longitudinal hole. The lamellar part has, in the center, a hole which is at right angles to the plane of the lamella and is intended for fixing in the groove of the workpiece. Variants having a wing-like long or rectangular short lamellar part and a bolt-like part in the form of a conical wood screw, cylindrical screw, screw having a metal thread, threaded sleeve or pin. Accessories: screwing tool and drilling template.

U.S. Pat. No. 5,660,016 to Erwin et al. describes an extruded plastic decking plank for mounting to an underlying support structure, the plank having a rigid foam core, a resilient outer plastic shell, and a clamping portion for securing the plank to the support structure. The top surface of the plank can be provided with a non-slip surface. The invention also includes an attachment system for securing such decking planks to a support structure by engaging the clamping portions of the decking planks onto clamps or hold down blocks which are secured onto the support structure, and which permit relative motion between the planks and the structure in the planks' lengthwise direction to prevent stress and buckling caused by uneven expansion.

U.S. Pat. No. 6,402,415, to Eberle, the same inventor herein, describes an anchoring biscuit device for joining three boards. It includes, (a) a first substantially flat horizontal top element having a generally biscuit-shaped configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and (c) an attachment orifice located at least on the top element for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated.

U.S. Design Pat. No. 470,039 to Robert Pelc shows two anchoring biscuit devices of the U.S. Pat. No. 6,402,415 Eberle type, one having a circular footprint and the other having an elliptical footprint.

Notwithstanding the prior art, the present invention is neither taught nor rendered obvious thereby.

## SUMMARY OF THE INVENTION

The present invention is an anchoring biscuit device for joining three boards. It includes, (a) an at least partially flat horizontal top element having opposite side walls, and, from a top view, having a footprint adapted to be inserted into grooves, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which contain grooves for receiving portions of said top into said grooves, and, (c) at least one compressive element located on said device with at least a portion located away from said imaginary centerline, said

compressive element being adapted to at least partially collapse upon compressive force. In some embodiments, there is also an attachment orifice located at least on the top element for attachment of the anchoring biscuit-device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated. In other embodiments, there is no preformed orifice, and the device may be attached by a screw or other fastener being driven through the device, or attached by adhesive or other means, or combinations thereof.

BRIEF DESCRIPTION OF THE DRAWINGS

The present invention should be more fully understood when the specification herein is taken in conjunction with the drawings appended hereto wherein:

FIG. 1 illustrates a top view of one preferred embodiment of the present invention anchoring device,

FIG. 2 illustrates a side view, and

FIG. 3 illustrates an end view thereof;

FIG. 4A shows an end view of the present invention device shown in FIGS. 1 through 3 but being attached to a joist and a first deck board and about to be attached to a second deck board where both deck boards are supported by that joist;

FIG. 4B shows an end view of the same present invention device as above, but fully installed and after the adjacent beams have swollen and collapsed the compressive elements;

FIGS. 5 and 6 show a side view and a bottom view, respectively, of an alternative embodiment present invention anchoring biscuit device;

FIGS. 7 and 8 show top and side views of another alternative present invention anchoring biscuit device;

FIGS. 9A and 9B show top views of the FIG. 7 and FIG. 8 present invention device, installed with beams, before and after beam expansion;

FIGS. 10 and 11 illustrate top and side views of another present invention device;

FIG. 12 and FIG. 13 show top views of two different embodiment present invention anchoring biscuit devices having compressive elements located below the substantially flat top element;

FIGS. 14 and 15 show additional alternative embodiment present invention anchoring devices, in their side views; and,

FIGS. 16 and 17 show more present invention alternatives in their side views; and,

FIGS. 18, 19, 20, and 21 show top, side, end and embossed top views of another preferred embodiment present invention anchoring device.

DETAILED DESCRIPTION OF THE PRESENT INVENTION

In FIG. 1, there is shown a top view of present invention anchor biscuit device 1. Device 1 includes a top element 3 having a flat top surface as shown, and a top view shape of a biscuit. It also includes a first wall with segments 5, 7, 9 and 10, with wall segments 5 and 7 in the shape of arcs having predetermined radii and predetermined arc lengths, and wall segments 7 and 9 having flat edges (straight surfaces). There is a second, opposite wall having segments 33, 35 and 37, with 33 and 37 being arcs, and 35 being a straight flat surface.

They are not parallel to their segments directly opposite, i.e., opposite as determined at a 90° angle to imaginary center line 20.

Top element 3 also includes an attachment means, in this case, screw hole 13 located on center. This enables the user to nail or screw device 1 into a joist, as more fully described in conjunction with FIG. 4 below. Alternatively, device 1 could simply have an area where a screw could be forced through, without a pre-formed orifice.

Top element 3 includes four upwardly projecting compressive elements 6, 8, 16 and 18. These are located opposite one another, as shown, are located away from imaginary center line 20. Also, they are located away from the vertical support members 15 and 17 (from top view) and are further away from the vertical support members at their outermost portions, from the centerline, than the outermost portions of the vertical support elements. This concept applies to the other present invention devices described below, as well.

FIGS. 2 and 3 show side and end views, respectively of device 1 shown in FIG. 1. Thus, device 1 includes vertical support members 15 and 17 with a space 18 there between to permit a screw or nail to pass through screw hole 13 into a joist or support board. Vertical support members 15 and 17 have a predetermined height so as to rest on a joist in such a way as to establish biscuit top element 3 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots. The device such as device 1 are not set for full nesting (i.e., do not have total footprint identity) with the biscuit cut, and need only have sufficient overhang on each side of the centerline 20 to catch and anchor a board by at least partially fitting into a cut out of a deck or other board. The compressive elements 6, 8, 16 and 18 act as initial spacers for the two adjacent boards.

FIG. 4A shows present invention device 1 from the prior Figures, with identical parts identically numbered. Top element rear biscuit wall 35 is partially inserted into pre-cut biscuit slot 27 of horizontal beam 21, as shown. Compressive elements 16 (and 18, not shown) place beam 21. Screw 31 is inserted into screw hole 13 and into joist beam 25. This anchors device 1 to joist beam 25 and establishes the elevation of top element 3 so as to match with biscuit slot 27. Beam 23 will be placed atop joist beam 25 and adjacent to beam 21 by being slid into position with wall segments 5, 7, 9 and 10 at least partially fitting into slot 29, and the bottom of beam 23 resting on joist 25. By this method, device 1 attaches all three boards to one another as the side wall aspects are sufficiently tight-fitting to anchor the boards. Thus, for example, decking boards may be attached without the need for nails or screws entering the beams from the top, creating a hidden fastening system.

Compressive elements 8 (and 6, not shown in FIG. 4) place beam 23. In other words, the compressive elements 6, 8, 16, 18 space the beams 21 and 23 further apart than the vertical support members 15 and 17 would in their absence. These beams 21 and 23 might expand due to damp weather, rain, capture of moisture, high humidity, seasonal changes, shifts, etc. When this occurs, compressive elements will be pushed toward one another and collapse, e.g. in excess of 10 foot pounds psi, or some other preset parameter. The collapse of compressive elements permits the beams to close in on one another to the sides of the vertical support members. This is clearly illustrated for the FIG. 4A embodiment, in FIG. 4B. Here, compressive elements have been forced to collapse inwardly by expanding beams 21 and 23, as exemplified by collapsed compressive elements 8 and 16. All parts are identically numbered as shown in the foregoing Figures.

FIG. **5** shows an alternative embodiment present invention device **51** which has multiple screw holes **43**, **53** and **55** located in a straight line on center of top element **47**. It includes front and back ends **41** and **49**, and it has a plurality of vertical support members **45**, **47**, **57** and **59**, on top underside **36** with spaces therebetween for screw or nail insertions. Vertical support members **45** and **57** include compressive elements **34** and **32**, as shown. FIG. **6** shows a bottom view with identical numbering. Note that compressive elements **32** and **34** are essentially hollow cylinders in this embodiment. The side walls have a footprint of sawteeth on both sides. On the side out of the drawing, segments **52**, **53**, **54**, **43**, **46**, **47**, **55**, **56** and **44** form the sawteeth. Segments directly opposite one another are mostly non-parallel. Device **51** is used in the same manner as device **1** described above with respect to FIGS. **4**A and B, except that the compressive elements **32** and **34** collapse on the underside of the device, inwardly between portions of a single vertical support member.

FIGS. **7** and **8** show top and side views of an alternative embodiment present invention anchoring device **71**. In FIG. **7**, there is shown a top view of present invention anchor biscuit device **71**. Device **71** includes a top element **73** having a substantially flat top surface as shown, and a top view shape of a biscuit. Thus, it includes wall segment (an arc), on one side and wall segments **77** (an opposing arc), and on the opposite side. Segment **62**, for example, is non-parallel to segment **66**. There are flat ends **79** and **81**, as shown.

Top element **71** of device **71** in FIG. **7** also includes an attachment means, in this case, screw hole **83** located on center. It also includes fount chevron-shaped compressive elements **91**, **93**, **95**, and **97**. These compress if adjacent boards expand and enable extra spacing to be achieved during installation to accommodate any future wood expansion that may occur.

In FIG. **8**, there is shown a side view of the present invention anchor biscuit device **71**. Device **71** includes a top element **73**, showing the height and depth of compressive elements **91**, **93**, **95**, and **97**.

FIG. **9**A shows a top view of device **71** with installed beams **101** and **103**, and these are not swollen. In FIG. **9**B, the same beam **101** and **103** have swollen, and the compressive elements **91**, **93**, **95**, and **97** have collapsed, as shown.

FIG. **10** shows a top view and FIG. **11** shows a side view of present invention device **120**. It includes a substantially flat top element **121**, that has a top view footprint of a circle, and two vertical support members **125** and **127**, that project downwardly on each side of beveled attachment orifice **129**. The sides of device **20**'s top **121** are vertical and basically are made up of a plurality of connected (continuous) arcs to form a circle. On the top side of device **120** are eight compressive elements **131**, **133**, **135**, **137**, **139**, **141**, **143**, **145**, and **147**. These are thin cylindrical protrusions that will collapse under compression, e.g. from expanding boards. As shown in FIG. **10**, they are further apart than the thickness of the vertical support members to create space between beams for expansion.

FIGS. **12** and **13** show top views of alternative embodiment present invention anchoring devices **161** and **190** respectively. In FIG. **12**, there is shown a top view of present invention anchor biscuit device **163** having a flat top surface as shown, and a top view shape of an elongated octagon biscuit. Thus, it includes wall segments **164**, **165**, and **166** on one side wall and wall segments **162**, **167**, and **163** on the opposite side. Segments **162**, for example, is non-parallel to segment **166**. There are flat ends **169** and **177**, as shown.

Top element **163** of device **161** in FIG. **12** also includes an attachment means, in this case, screw hole **173** located on

center. Screw hole **173** has a bevel cut **175** at its top. This enables the user to nail or screw device **161** into a joist with the screw or nail being installed vertically, or, more preferably, at an angle.

Vertical support members **177** and **179** also include outwardly extending, angled tails **181**, **183**, **185**, and **187** and these are the collapsible compressive elements.

In FIG. **13**, there is shown a top view of present invention anchor biscuit device **190**, in the shape of an octagon biscuit. Device **190** includes a top element **198** having a flat top surface as shown, and a top view shape with eight equal segments; a first side with wall segments **193**, **197**, and **195**, and an opposite side with wall segments **207**, **209**, and **211**. In this case, they are perfectly symmetrical and have flat endwalls **199** and **201**. Top element **198** also includes an attachment means, screw hole **203** located on center. Note that screw hole **203** is elongated and has a beveled top **205**. Underside of top element **198** are two curved collapsible compressive elements **221** and **223**. These function similarly to those described above.

FIG. **14** shows a front view of present invention device **240**. Thus, device **240** includes a single vertical support member **245** with a space cut out **243** to permit a screw or nail to pass through beveled screw hole **253** and through vertical support member **245** into a joist or support board. There are two collapsible fins on each side of the vertical support member **245**, two shown as fins **249** and **251**. These are about ³⁄₆₄ inch away from member **245** and act as collapsible compressive elements in a manner similar to those shown above. Vertical support member **245** has a predetermined height so as to rest on the side of a beam into which device **240** may be inserted and, optionally, so as to rest on a joist in such a way as to establish biscuit top element **247** at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots corresponding thereto. Side walls may be irregular or regular, and may have any top view, workable footprint similar to that shown in the segments that will fit into beam grooves or continuous straight grooves, e.g. biscuit cuts, half circle or arc cuts, square or rectangular cuts.

FIG. **15** shows a front view present invention of device **261**, which includes a single off-center vertical support member **265** with a space underneath beveled screw hole **263** to permit a screw or nail to pass through screw hole **263** into a beam and/or joist or support board. Top **267** has opposite ends **269** and **271** as shown, with support member **265** biased to the left toward end **269**, as shown. On the right underside of top **267** are two fins **281** and **283**, that have lengths (into the page, at right angle to vertical support member **265**), that is greater than the thickness of member **265**. They are collapsible and act as compressive elements with respect to adjourning boards. Top **263** has a topography with flat sides, such as side **273**, and is in the shape of a rectangle, e.g. a square.

FIG. **16** shows device **300** with top **301** having a generally barbell-shaped footprint. There is a first side having wall segments **303** and **305** that are arcs and are connected by flat segment **307**. The opposite wall includes arcs **309** and **311** and are separated by flat segment **313**. Wall segments **303** and **309** are opposite one another and are non-parallel. There is a beveled orifice **315** which is attaching device **300** in a manner described above as well as vertical segments **317** and **319** extending downwardly from top **301** on opposite sides of orifice **315**. There are two collapsible compressive element ovals **321** and **322** extending upwardly. These space beams further apart than would members **317** and **319**, in their absence, and thus accommodate wood expansion.

FIG. **17** shows a triangular shaped present invention anchoring device **400**. It has a top **401**, an orifice **409** for

attachment and a vertical support **411**. One wall has flat segments **403** and **405** and the opposite wall has a single flat segment **407**. There is a collapsible compressive element **415** on top to function in a manner similar to those previously described.

FIGS. **18**, **19** and **20** illustrate preferred embodiment present invention anchoring device **500**, in its top, side and end views respectively. Device **500** includes top **501** with beveled screw orifice **503** on center. Opposing sides **505** and **507** are arcuate and ends **509** and **511** are flat. Extending downwardly are vertical support members **513** and **515**, located on-center and on opposite sides of orifice **503**. The vertical support member **513** and **515** each have one thin walled tubular compressive element, shown as compressive elements **517** and **519**, respectively. Further, FIG. **21** shows top view of the same device as in FIGS. **18**, **19**, and **20**, except that the top is embossed or stamped. Here, device **500**a includes top **501**a with embossments such as word **531**, that can be production information, size, model number, installation instructions or other useful information. These are preferably indented and may be established in a forming mold for the device.

All of these devices may be installed in accordance with the descriptions for previous present invention devices described above. However, device **260** shown in FIG. **14** should have the arrowed wall inserted first so that the biased beveled orifice **296** is utilized maximally and receiving an attachment screw.

Obviously, numerous modifications and variations of the present invention are possible in light of the above teachings. It is therefore understood that within the scope of the appended claims, the invention may be practiced otherwise than as specifically described herein.

What is claimed is:

**1**. A decking system, comprising: two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends; a support board; and an anchoring biscuit device for joinder of said decking boards and said support board with a fastener, and wherein:

  (a) said anchoring biscuit device comprises:
    (i) an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on each side of said center line, said side portions being adapted to be received in said biscuit slots;
    (ii) a plurality of substantially vertical support members attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and
    (iii) at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support members, and said at least one compressive element being adapted to at least partially collapse under a predetermined compressive force; and
  (b) said two decking boards are situated adjacent to each other and atop said support board;
  (c) said side portions of said anchoring biscuit device are inserted in said biscuit slots of said adjacent decking boards; and
  (d) said anchoring biscuit device is attached by said fastener driven through it to engage said support board, thereby securing and anchoring said adjacent boards and said support board to one another.

**2**. A decking system as recited by claim **1**, wherein said top view footprint shape is selected from the group consisting of square, rectangular, circular, and oval.

**3**. A decking system as recited by claim **1**, wherein said anchoring biscuit device further comprises (iv) a pre-formed attachment orifice through which said fastener is driven.

**4**. A decking system as recited by claim **3**, wherein said attachment orifice has a beveled top.

**5**. A decking system as recited by claim **3**, wherein said attachment orifice is elongated.

**6**. A decking system as recited by claim **3**, wherein said pre-formed attachment orifice is located substantially in the center of said top element.

**7**. A decking system as recited by claim **6**, wherein said anchoring biscuit device comprises two vertical support members attached to the underside of said top element along said center line, said two vertical support members being in the same plane and located on opposite sides of said pre-formed attachment orifice.

**8**. A decking system as recited by claim **1**, wherein said anchoring biscuit device comprises a plurality of said compressive elements.

**9**. A decking system as recited by claim **1**, wherein said at least one compressive element is located on the top side of said top element.

**10**. A decking system as recited by claim **1**, wherein said at least one compressive element is located on the underside of said top element.

**11**. A decking system as recited by claim **10**, wherein said at least one compressive element is separate from said substantially vertical support members.

**12**. A decking system as recited by claim **10**, wherein said anchoring biscuit device comprises a plurality of said compressive elements, each being integrally attached to one of said substantially vertical support members.

**13**. A decking system as recited by claim **1**, wherein said anchoring biscuit device comprises a plurality of said compressive elements, at least one of which is integrally attached to each of said substantially vertical support members.

**14**. A decking system as recited by claim **1**, wherein said anchoring biscuit device comprises exactly two said substantially vertical support members.

**15**. A decking system as recited by claim **14**, wherein one said compressive element is attached to each of said substantially vertical support members.

**16**. A decking system as recited by claim **1**, wherein said at least one compressive element is a hollow cylinder.

**17**. A decking system as recited by claim **9**, wherein said compressive elements are hollow cylinders.

**18**. A decking system as recited by claim **10**, wherein said compressive elements are hollow cylinders.

**19**. A decking system as recited by claim **12**, wherein said compressive elements are hollow cylinders.

**20**. A decking system as recited by claim **15**, wherein said compressive elements are hollow cylinders.

**21**. A decking system as recited by claim **1**, wherein said fastener is a nail or screw.

**22**. A decking system comprising: two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends; a support board; and an anchoring biscuit device for joinder of said decking boards and said support board with a fastener, and wherein:

  (a) said anchoring biscuit device comprises:
    (i) an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion

on each side of said center line, said side portions being adapted to be received in said biscuit slots;

(ii) at least one substantially vertical support member attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and

(iii) at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support member, and said at least one compressive element comprises fins are attached to, and projecting from, said at least one vertical support member and is adapted to at least partially collapse under a predetermined compressive force;

(b) said two decking boards are situated adjacent to each other and atop said support board;

(c) said side portions of said anchoring biscuit device are inserted in said biscuit slots of said adjacent decking boards; and

(d) said anchoring biscuit device is attached by said fastener driven through it to engage said support board, thereby securing and anchoring said adjacent boards and said support board to one another.

**23**. A decking system as recited by claim **22**, wherein said fins are in the form of chevrons.

**24**. A decking system as recited by claim **22**, wherein said fins are curved in form.

**25**. A decking system as recited by claim **22**, wherein said fins project from the underside of said top element.

**26**. A decking system as recited by claim **22**, comprising fins at each end of said device that extend outwardly and are angled away from said center line.

**27**. A decking system as recited by claim **26**, wherein said anchoring biscuit device comprises exactly two said vertical support members and two said compressive elements, each said compressive element comprising fins extending outwardly and angled away from said center line at one said end of said device.

**28**. A decking system as recited by claim **22**, wherein said anchoring biscuit device further comprises (iv) a pre-formed attachment orifice through which said fastener is driven.

**29**. A decking system as recited by claim **22**, wherein said anchoring biscuit device comprises a plurality of said substantially vertical support members.

**30**. An anchoring biscuit device for joining two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends, a support board for supporting said decking boards, the device comprising:

(a) an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on each side of said center line, said side portions being adapted to be received in said biscuit slots;

(b) at least one substantially vertical support member attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and,

(c) at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center

line and away from said vertical support member, and said compressive element being a hollow cylinder adapted to at least partially collapse under predetermined compressive force.

**31**. The anchoring biscuit device of claim **30**, which further comprises (d) a pre-formed attachment orifice, adapted to receive a fastener driven through said orifice for attaching said device to said support board.

**32**. The anchoring biscuit device of claim **30**, comprising a plurality of said compressive elements, with at least a portion of each of said compressive elements, from a top view footprint, being located away from said center line and away from said vertical support member.

**33**. An anchoring biscuit device for joining two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends, and a support board for supporting said decking boards, the device comprising:

(a) an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on each side of said center line, said side portions being adapted to be received in said biscuit slots;

(b) at least one substantially vertical support member attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and,

(c) at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support member, and said at least one compressive element comprises fins attached to, and projecting from, said at least one vertical support member and is adapted to at least partially collapse under predetermined compressive force.

**34**. The anchoring biscuit device of claim **33**, comprising fins at each end of said device that extend outwardly and are angled away from said center line.

**35**. The anchoring biscuit device of claim **34**, comprising exactly two said vertical support members and two said compressive elements, each said compressive element comprising fins extending outwardly and angled away from said center line at one said end of said device.

**36**. The anchoring biscuit device as recited by claim **33**, which further comprises (d) a pre-formed attachment orifice, adapted to receive a fastener driven through said orifice for attaching said device to said support board.

**37**. The anchoring biscuit device of claim **33**, comprising a plurality of said compressive elements, with at least a portion of each of said compressive elements, from a top view footprint, being located away from said center line and away from said vertical support member.

**38**. A method for constructing a decking system comprising two decking boards, and a support board, the method comprising the steps of:

(a) providing said two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends;

(b) providing an anchoring biscuit device comprising:

(i) an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on each side of said center line, said side portions being adapted to be received in said biscuit slots;

(ii) a plurality of substantially vertical support members attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and

(iii) at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support member, wherein said compressive element is adapted to at least partially collapse under predetermined compressive force;

(c) situating said two decking boards adjacent and atop said support board;

(d) locating said anchoring biscuit device between said adjacent decking boards, one of said side portions being inserted in said biscuit slot of each of said adjacent decking boards; and

(e) driving a fastener through said anchoring biscuit device into said support board, whereby said adjacent boards and said support board are secured and anchored to one another.

**39**. A decking system as recited by claim **28**, wherein said at least one vertical support member includes a cutout and said fastener passes through said cutout into said support board.

**40**. The anchoring biscuit device as recited by claim **36**, wherein said attachment orifice has a beveled top.

**41**. The anchoring biscuit device as recited by claim **36**, wherein said attachment orifice is elongated.

\* \* \* \* \*

# Exhibit B



US008161702B2

(12) **United States Patent**
Eberle, III

(10) **Patent No.: US 8,161,702 B2**
(45) **Date of Patent: Apr. 24, 2012**

(54) **EXPANSION-COMPENSATING DECK FASTENER**

(75) Inventor: **Harry W. Eberle, III**, Califon, NJ (US)

(73) Assignee: **Blue Heron Enterprises LLC**, North Branch, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **12/952,876**

(22) Filed: **Nov. 23, 2010**

(65) **Prior Publication Data**

US 2011/0126486 A1     Jun. 2, 2011

**Related U.S. Application Data**

(63) Continuation of application No. 12/583,702, filed on Aug. 24, 2009, now Pat. No. 7,874,113, which is a continuation of application No. 10/446,514, filed on May 28, 2003, now Pat. No. 7,578,105, which is a continuation-in-part of application No. 10/393,100, filed on Mar. 20, 2003, now Pat. No. 6,851,884.

(51) **Int. Cl.**
*E04F 15/22* (2006.01)
*E04B 2/00* (2006.01)
*F16B 9/00* (2006.01)

(52) **U.S. Cl.** ..................... **52/403.1**; 52/586.1; 52/586.2; 403/231

(58) **Field of Classification Search** ................. 52/586.1, 52/586.2, 483.1, 480, 650.3, 403.1; 403/231, 403/232.1, 408.1
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,186,463 | A | 1/1877 | Dickinson |
| 2,466,995 | A | 1/1892 | Abramson |
| 695,722 | A | 3/1902 | Heilmann |
| 1,184,080 | A | 5/1916 | D'arcy |
| 1,241,885 | A | 10/1917 | Roeder |
| 1,714,738 | A | 5/1929 | Smith |
| 1,723,306 | A | 8/1929 | Sipe |
| 1,990,001 | A | 2/1935 | Rutten |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CA | 2287104 A1 | 1/2001 |

(Continued)

OTHER PUBLICATIONS

Office Action in commonly owned U.S. Appl. No. 09/186,741 (now US patent 6402415) to Eberle, III dated Aug. 19, 1999.*

(Continued)

*Primary Examiner* — Mark Wendell
(74) *Attorney, Agent, or Firm* — Lerner, David, Littenberg, Krumholz & Mentlik, LLP

(57) **ABSTRACT**

The present invention is an anchoring biscuit device for joining three boards. It includes, (a) an at least partially flat horizontal top element having an imaginary center line, having opposite side walls, and having a top view footprint adapted to be inserted into grooves of adjacent boards; (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which contain the grooves for receiving portions of the top into the grooves; and (c) at least one compressive element located on the device, with at least one portion of the at least one compressive element, from a top view footprint, being located away from the imaginary center line and away from the vertical support member, wherein the compressive element is adapted to at least partially collapse under a predetermined compressive force.

**25 Claims, 11 Drawing Sheets**





## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,201,129 | A | 5/1940 | Weiland |
| 2,332,081 | A | 10/1943 | Hunt et al. |
| 2,337,156 | A | 12/1943 | Elmendorf |
| 2,362,252 | A | 11/1944 | Ellinwood |
| 2,398,603 | A | 4/1946 | Soderberg |
| 2,406,387 | A | 8/1946 | Lank |
| 2,526,116 | A | 10/1950 | Browne |
| 3,045,294 | A | 7/1962 | Livezey |
| 3,319,983 | A | 5/1967 | Zibell |
| 3,619,963 | A | 11/1971 | Omholt |
| 3,705,002 | A | 12/1972 | Varlonga |
| 3,890,753 | A | 6/1975 | Johansen |
| 4,154,172 | A | 5/1979 | Curtis, Jr. |
| 4,449,346 | A | 5/1984 | Tremblay |
| 4,454,699 | A | 6/1984 | Strobl |
| 4,599,841 | A | 7/1986 | Haid |
| 4,641,988 | A | 2/1987 | Ganner |
| 4,682,458 | A | 7/1987 | Sparrow |
| 4,716,704 | A | 1/1988 | Murr |
| 5,004,027 | A | 4/1991 | Legler et al. |
| 5,056,286 | A | 10/1991 | Bokor |
| 5,071,280 | A | 12/1991 | Turner |
| 5,160,211 | A | 11/1992 | Gilb |
| D331,470 | S | 12/1992 | Mitchell et al. |
| 5,182,891 | A | 2/1993 | Slocum |
| 5,243,804 | A | 9/1993 | Therrien et al. |
| 5,245,808 | A | 9/1993 | Grunewald et al. |
| 5,251,996 | A | 10/1993 | Hiller et al. |
| 5,359,954 | A | 11/1994 | Kordelin |
| 5,377,732 | A | 1/1995 | Fujii et al. |
| 5,419,649 | A | 5/1995 | Gilb |
| 5,458,433 | A | 10/1995 | Stastny |
| 5,480,117 | A | 1/1996 | Fleming, III |
| 5,529,428 | A | 6/1996 | Bischof |
| 5,564,248 | A | 10/1996 | Callies |
| 5,603,580 | A | 2/1997 | Leek et al. |
| 5,619,834 | A | 4/1997 | Chen |
| 5,660,016 | A | 8/1997 | Erwin et al. |
| 5,704,181 | A | 1/1998 | Fisher et al. |
| 5,730,544 | A | * | 3/1998 | Dils et al. ..................... 403/292 |
| 5,743,672 | A | 4/1998 | Cline |

| | | | |
|---|---|---|---|
| 6,012,256 | A | 1/2000 | Aschheim |
| 6,032,431 | A | 3/2000 | Sugiyama |
| 6,363,677 | B1 | 4/2002 | Chen et al. |
| 6,402,415 | B1 | 6/2002 | Eberle, III |
| 6,442,908 | B1 | 9/2002 | Naccarato et al. |
| 6,449,918 | B1 | 9/2002 | Nelson |
| 6,460,306 | B1 | 10/2002 | Nelson |
| 6,470,641 | B1 | 10/2002 | Faure |
| 6,471,434 | B2 | 10/2002 | Chin et al. |
| D470,039 | S | 2/2003 | Pelc |
| 6,651,400 | B1 | 11/2003 | Murphy |
| 6,711,864 | B2 | 3/2004 | Erwin |
| D488,373 | S | 4/2004 | Eberle |
| 6,810,633 | B2 * | 11/2004 | Harris, Sr. ..................... 52/489.2 |
| 6,851,884 | B2 * | 2/2005 | Eberle ............................ 403/231 |
| 6,871,467 | B2 | 3/2005 | Hafner |
| 7,052,200 | B2 | 5/2006 | Harris |
| 2002/0059766 | A1 | 5/2002 | Gregori |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CH | 278212 A | 10/1951 |
| DE | 372483 C | 3/1923 |
| DE | 4036338 A1 | 6/1991 |
| EP | 863317 A2 | 9/1998 |
| FR | 1217468 A | 5/1960 |
| FR | 1556252 A | 2/1969 |
| FR | 2647837 A1 | 12/1990 |
| GB | 1350754 A | 4/1974 |
| GB | 1567008 A | 5/1980 |
| GB | 2124672 A | 2/1984 |
| JP | 4371657 A | 12/1992 |
| JP | 07189451 A | 7/1995 |

## OTHER PUBLICATIONS

Invoice for the sale of certain Eb-Ty Fasteners dated Aug. 26, 1997.
Engineering Drawing depicting an Eb-Ty Fastener dated Jun. 15, 1997.
*Harry W. Eberle, III* et al. v. *KK manufacturing Co.*, et al., Civil Action No. 03-5809 (FLW-TJB), Invalidity Contention applied to U.S. Patent No. 6,402,415 and U.S. Patent No. 6,851,884.

* cited by examiner

FIG. 1



FIG. 2



FIG. 3



IC-App-0018

FIG. 4A



FIG. 4B



IC-App-0019

FIG. 5



FIG. 6



FIG. 7



FIG. 8



*FIG. 9A*



*FIG. 9B*



## FIG. 10



## FIG. 11



*FIG. 12*



*FIG. 13*



*FIG. 14*



*FIG. 15*



FIG. 16

FIG. 17



*FIG. 18*

*FIG. 19*



## FIG. 20



## FIG. 21



IC-App-0028

# EXPANSION-COMPENSATING DECK FASTENER

## CROSS-REFERENCE TO RELATED APPLICATIONS

The present disclosure is a continuation of co-pending U.S. patent application Ser. No. 12/583,702, filed on Aug. 24, 2009, which, in turn, is a continuation of U.S. patent application Ser. No. 10/446,514, filed on May 28, 2003, now U.S. Pat. No. 7,578,105, which, in turn, is a continuation-in-part of U.S. patent application Ser. No. 10/393,100, filed on Mar. 20, 2003, now U.S. Pat. No. 6,851,884. Each of these applications is hereby incorporated herein in its entirety by reference thereto.

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention is directed to an improved biscuit for joining adjacent boards. More specifically, the invention is an anchoring biscuit device that has the ability for pre-setting distances between adjacent boards and attaching to at least one board by means in addition to the biscuit itself. The anchoring biscuit device physically joins two adjacent boards in the same plane to a third, supporting board. The anchoring half-biscuit device joins two adjacent boards at right angles to one another. Further, the present invention anchoring biscuit includes compressive elements to accommodate swelling and expansion of boards after installation.

U.S. Pat. No. 6,402,415, issued to the present inventor herein covers such biscuit devices having opposite side walls in the shape of arcs. These would include side walls with arcs and flat ends, side walls with arcs and arc ends, e.g. circles, ellipses, etc. The present invention covers biscuit-shaped devices with side walls that may have the same top view footprint as the Eberle U.S. Pat. No. 6,402,415 devices, and covers anchoring devices that may not have opposite arcs, and may or may not have biscuit shapes. However, all of the present invention devices do include at least one compressive element, namely, a portion of the device that will collapse or move under compression (from opposing expansion or swelling of wood).

2. Information Disclosure Statement

The following patents are representative of the state of the art for wood joining devices, equipment and methods:

U.S. Pat. No. 1,184,080 to D'Arcy describes a structure of the class described, the combination of frame pieces disposed at an angle to each other and plate-like corner irons having angularly disposed flanges, said corner irons being arranged in opposed pairs on the sides of each of the meeting frame pieces with their flanges engaging the inner edges thereof in overlapping telescoping relation to each other, the inner flanges having vertical nail slots therein and brads on their edges driven into the frame pieces, the outer flanges having nail perforations opposite the nail slots, there being nails disposed through the said perforations and slots and driven into the frame.

U.S. Pat. No. 2,332,081 to G. M. Hunt et al. is directed to a wooden panel. It is described as a panel comprising wooden strips joined along their edges with glue, each strip having at least one groove in its edge matching groove in the edge of the adjoining strip, an asbestos millboard spline fitted in the matching grooves and bridging the joint between the strips, crossbands covering the strips on both sides of the panel, and veneers covering the crossbands.

U.S. Pat. No. 2,362,252 to Ellinwood describes a wall structure of the character described comprising a pair of adjacent wallboard panels having meeting edges, each of said panels being formed with a groove opening into its meeting edge, the groove in each panel providing an outer lip and an inner lip, said outer lips being in abutting relation, a joining strip permanently secured to the under surface of said outer lips, said inner lips being spaced, a T-shaped connecting member movably positioned in said groove and having a base in spaced relation to said inner lips, and means for anchoring said connecting member to a structural element.

U.S. Pat. No. 2,398,603 to Soderberg describes a joining staple, comprising a metal body having at least two portions extending at right angles to each other and at least two teeth carried upon each of said portions, each of said teeth consisting of a flat substantially rectangular body having a cutting edge extending substantially parallel to its body portion, the cutting edges of all of said teeth being located in one plane, each of said portions having another cutting edge extending between the teeth of that portion, the second mentioned cutting edges being also located in one plane.

U.S. Pat. No. 2,406,387 to Lank describes the method of constructing a plurality of wooden posts each of which has a connector element incorporated therein adjacent each end thereof which method comprises forming a plurality of longitudinally extending grooves in one side of each of a pair of wooden blanks from which the posts are to be formed, forming a transverse groove adjacent each end of said side of each of said blanks with the transverse grooves intersecting the longitudinal grooves, providing a pair of connector retaining members with a plurality of seats for receiving connector elements, the number and spacing of said seats in each of said connector retaining members conforming to the number and spacing of the longitudinal grooves in each of said blanks, placing connector elements in each of said seats, positioning said blanks with their grooved sides together and with said connector retaining members in said transverse grooves, bonding said blanks together, and severing the thus bonded assembly along longitudinal lines intermediate said longitudinal grooves.

U.S. Pat. No. 4,641,988 to Ganner is directed to a fitting for releasably joining two structural components. It is illustrated for releasably joining two structural components particularly plate-shaped structural components which extend at a right angle relative to one another, a fitting has a preferably cylindrical locking element which can be inserted either directly in a bore in the first structural component or it can be inserted indirectly in a housing, and a holding piece with a holding projection anchored in the second structural component. In the assembled position, the holding projection & abuts against one or two gripping surfaces of the locking element which gripping surfaces are of, for example, eccentric shape, and the holding projection is pulled toward the locking element when the locking element is turned. The holding piece is constructed plate-shaped and is insertable in a slot in the second structural component.

U.S. Pat. No. 4,682,458 to Sparrow describes a floor composed of parallel spaced beams having flanges and blocks of polystyrene foam which are laid on the flanges to bridge the gaps between the beams. Boards are laid on the polystyrene blocks, and are supported by the blocks, which form load-bearing members of the floor. The blocks may have flanged portions extending over the beams, so as to provide heat insulation.

U.S. Pat. No. 5,004,027 to Legler et al. illustrates a biscuit joiner. It is described as a biscuit joiner for cutting semi-elliptical slots in opposing edges of workpieces which are to

be joined along those edges includes a housing adapted to be mounted upon the quill of a multipurpose woodworking tool, which housing encloses a rotary saw blade adapted to be attached to a spindle projecting from the quill on which the housing is mounted. A spring loaded guide projects from the front face of the housing and has a slot therethrough, so that when the front face of the guide is engaged by an edge of a workpiece to be slotted the guide can be pushed inwardly against spring pressure, allowing the rotary saw blade to be exposed and form a slot in the edge of the workpiece. Adjustable stops are provided on the guide so that a desired depth of cut will automatically be made after adjustment. An alternative construction of this biscuit joiner is especially adapted for use in conjunction with a conventional drill press, with the arbor which carries the saw blade being clamped in the chuck on the drive spindle of the drill motor.

U.S. Pat. No. 5,182,891 to Slocum describes a flooring construction which is provided having a unitary construction with a top layer providing a finished flooring surface and an insulation layer adjacent the top layer. The flooring panel includes an upper portion and a lower portion. The upper portion has a larger dimension than the lower portion and extends outwardly beyond the lower portion. A recessed portion between the upper portion and the lower portion defines a channel. A plurality of interlock support elements having a vertical web and an upper horizontal flange are arranged so that the horizontal flange extends into the channel. The vertical web extends below the lower portion to raise the flooring.

U.S. Pat. No. 5,251,996 to Hiller et al. describes a connecting element for connecting two parts generally in a connection plane has a first portion for connecting the element relative to a first of the parts and second portion for connecting the element relative to the second part. The second portion includes actuation members which on relative movement of the parts substantially along the connection plane urge the parts forcefully towards each other.

U.S. Pat. No. 5,377,732 to Fujii et al. illustrates a wood joining structure and method thereof. It is described as a technique is provided for joining wood members. A plurality of slits are formed on the end portions of wood pieces desired to be joined, and the end portions are abutted with corresponding slits in alignment to form a common surface. Each of the abutted wood end portions is fixed by temporary fixing means to a desired joining state. Thereafter, an adhesive agent is applied into the interior surfaces of the slits. Connecting plates, e.g., made of a reinforced plastic material coated with the adhesive agent, are inserted into the aligned slits. The adhesive agent is then hardened.

U.S. Pat. No. 5,458,433 to Stastny explicates a biscuit and joint made using same. It is described as a biscuit having octagonal outer periphery is used to form a joint between first and second workpieces. The biscuit fits within arcuate slots formed in the workpieces, with glue placed in the slots and/or on the biscuit before the joint is put together. The biscuit is made of an anhydrous compressed wood.

U.S. Pat. No. 5,480,117 to Fleming, III describes a bracket for mounting a rotary lock member in the frame of a panel which is provided. The bracket is a preferably U-shaped body having a base and two legs extending therefrom. The inner dimension of the bracket is chosen to allow insertion of a rotary lock member therein. Panel engaging steps and protrusions are located on the outside surface of each leg for engaging the frame material. The legs of the bracket are biased inwardly towards one another, such that when a locking member is inserted therein, the legs are pressed outwardly, driving the protrusions into the frame material. A number of bores are

located in the bracket to allow supplemental locking members to lock the bracket to the frame.

U.S. Pat. No. 5,529,428 to Bischof is directed to a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic. It is described as a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic, consisting of a lamellar part, which provides the non-positive connection with the first workpiece provided with a groove and a transverse hole, and a bolt-like part, which, through screwing or pinning, realizes the non-positive connection with the second workpiece provided with a longitudinal hole. The lamellar part has, in the center, a hole which is at right angles to the plane of the lamella and is intended for fixing in the groove of the workpiece. Variants having a wing-like long or rectangular short lamellar part and a bolt-like part in the form of a conical wood screw, cylindrical screw, screw having a metal thread, threaded sleeve or pin. Accessories: screwing tool and drilling template.

U.S. Pat. No. 5,660,016 to Erwin et al. describes an extruded plastic decking plank for mounting to an underlying support structure, the plank having a rigid foam core, a resilient outer plastic shell, and a clamping portion for securing the plank to the support structure. The top surface of the plank can be provided with a non-slip surface. The invention also includes an attachment system for securing such decking planks to a support structure by engaging the clamping portions of the decking planks onto clamps or hold down blocks which are secured onto the support structure, and which permit relative motion between the planks and the structure in the planks' lengthwise direction to prevent stress and buckling caused by uneven expansion.

U.S. Pat. No. 6,402,415, to Eberle, the same inventor herein, describes an anchoring biscuit device for joining three boards. It includes, (a) a first substantially flat horizontal top element having a generally biscuit-shaped configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and (c) an attachment orifice located at least on the top element for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated.

U.S. Design Pat. No. 470,039 to Robert Pelc shows two anchoring biscuit devices of the U.S. Pat. No. 6,402,415 Eberle type, one having a circular footprint and the other having an elliptical footprint.

Notwithstanding the prior art, the present invention is neither taught nor rendered obvious thereby.

## SUMMARY OF THE INVENTION

The present invention is an anchoring biscuit device for joining three boards. It includes, (a) an at least partially flat horizontal top element having opposite side walls, and, from a top view, having a footprint adapted to be inserted into grooves, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which contain grooves for receiving portions of said top into said grooves, and, (c) at least one

5

6

compressive element located on said device with at least a portion located away from said imaginary centerline, said compressive element being adapted to at least partially collapse upon compressive force. In some embodiments, there is also an attachment orifice located at least on the top element for attachment of the anchoring biscuit-device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated. In other embodiments, there is no preformed orifice, and the device may be attached by a screw or other fastener being driven through the device, or attached by adhesive or other means, or combinations thereof.

BRIEF DESCRIPTION OF THE DRAWINGS

The present invention should be more fully understood when the specification herein is taken in conjunction with the drawings appended hereto wherein:

FIG. 1 illustrates a top view of one preferred embodiment of the present invention anchoring device;

FIG. 2 illustrates a side view, and

FIG. 3 illustrates an end view thereof;

FIG. 4A shows an end view of the present invention device shown in FIGS. 1 through 3 but being attached to a joist and a first deck board and about to be attached to a second deck board where both deck boards are supported by that joist;

FIG. 4B shows an end view of the same present invention device as above, but fully installed and after the adjacent beams have swollen and collapsed the compressive elements;

FIGS. 5 and 6 show a side view and a bottom view, respectively, of an alternative embodiment present invention anchoring biscuit device;

FIGS. 7 and 8 show top and side views of another alternative present invention anchoring biscuit device;

FIGS. 9A and 9B show top views of the FIG. 7 and FIG. 8 present invention device, installed with beams, before and after beam expansion;

FIGS. 10 and 11 illustrate top and side views of another present invention device;

FIG. 12 and 13 show top views of two different embodiment present invention anchoring biscuit devices having compressive elements located below the substantially flat top element;

FIGS. 14 and 15 show additional alternative embodiment present invention anchoring devices, in their side views; and,

FIGS. 16 and 17 show more present invention alternatives in their side views; and,

FIGS. 18, 19, 20, and 21 show top, side, end and embossed top views of another preferred embodiment present invention anchoring device.

DETAILED DESCRIPTION OF THE PRESENT INVENTION

In FIG. 1, there is shown a top view of present invention anchor biscuit device 1. Device 1 includes a top element 3 having a flat top surface as shown, and a top view shape of a biscuit. It also includes a first wall with segments 5, 7, 9 and 10, with wall segments 5 and 7 in the shape of arcs having predetermined radii and predetermined arc lengths, and wall segments 7 and 9 having flat edges (straight surfaces). There is a second, opposite wall having segments 33, 35 and 37,

with 33 and 37 being arcs, and 35 being a straight flat surface. They are not parallel to their segments directly opposite, i.e., opposite as determined at a 90° angle to imaginary center line 20.

Top element 3 also includes an attachment means, in this case, screw hole 13 located on center. This enables the user to nail or screw device 1 into a joist, as more fully described in conjunction with FIG. 4 below. Alternatively, device 1 could simply have an area where a screw could be forced through, without a pre-formed orifice.

Top element 3 includes four upwardly projecting compressive elements 6, 8, 16 and 18. These are located opposite one another, as shown, are located away from imaginary center line 20. Also, they are located away from the vertical support members 15 and 17 (from top view) and are further away from the vertical support members at their outermost portions, from the centerline, than the outermost portions of the vertical support elements. This concept applies to the other present invention devices described below, as well.

FIGS. 2 and 3 show side and end views, respectively of device 1 shown in FIG. 1. Thus, device 1 includes vertical support members 15 and 17 with a space 18 there between to permit a screw or nail to pass through screw hole 13 into a joist or support board. Vertical support members 15 and 17 have a predetermined height so as to rest on a joist in such a way as to establish biscuit top element 3 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots. The device such as device 1 are not set for full nesting (i.e., do not have total footprint identity) with the biscuit cut, and need only have sufficient overhang on each side of the centerline 20 to catch and anchor a board by at least partially fitting into a cut out of a deck or other board. The compressive elements 6, 8, 16 and 18 act as initial spacers for the two adjacent boards.

FIG. 4A shows present invention device 1 from the prior Figures, with identical parts identically numbered. Top element rear biscuit wall 35 is partially inserted into pre-cut biscuit slot 27 of horizontal beam 21, as shown. Compressive elements 16 (and 18, not shown) place beam 21. Screw 31 is inserted into screw hole 13 and into joist beam 25. This anchors device 1 to joist beam 25 and establishes the elevation of top element 3 so as to match with biscuit slot 27. Beam 23 will be placed atop joist beam 25 and adjacent to beam 21 by being slid into position with wall segments 5, 7, 9 and 10 at least partially fitting into slot 29, and the bottom of beam 23 resting on joist 25. By this method, device 1 attaches all three boards to one another as the side wall aspects are sufficiently tight-fitting to anchor the boards. Thus, for example, decking boards may be attached without the need for nails or screws entering the beams from the top, creating a hidden fastening system.

Compressive elements 8 (and 6, not shown in FIG. 4) place beam 23. In other words, the compressive elements 6, 8, 16, 18 space the beams 21 and 23 further apart than the vertical support members 15 and 17 would in their absence. These beams 21 and 23 might expand due to damp weather, rain, capture of moisture, high humidity, seasonal changes, shifts, etc. When this occurs, compressive elements will be pushed toward one another and collapse, e.g. in excess of 10 foot pounds psi, or some other preset parameter. The collapse of compressive elements permits the beams to close in on one another to the sides of the vertical support members. This is clearly illustrated for the FIG. 4A embodiment, in FIG. 4B. Here, compressive elements have been forced to collapse inwardly by expanding beams 21 and 23, as exemplified by collapsed compressive elements 8 and 16. All parts are identically numbered as shown in the foregoing Figures.

FIG. **5** shows an alternative embodiment present invention device **51** which has multiple screw holes **43**, **53** and **55** located in a straight line on center of top element **47**. It includes front and back ends **41** and **49**, and it has a plurality of vertical support members **45**, **47**, **57** and **59**, on top underside **36** with spaces therebetween for screw or nail insertions. Vertical support members **45** and **57** include compressive elements **34** and **32**, as shown. FIG. **6** shows a bottom view with identical numbering. Note that compressive elements **32** and **34** are essentially hollow cylinders in this embodiment. The side walls have a footprint of sawteeth on both sides. On the side out of the drawing, segments **52**, **53**, **54**, **43**, **46**, **47**, **55**, **56** and **44** form the sawteeth. Segments directly opposite one another are mostly non-parallel. Device **51** is used in the same manner as device **1** described above with respect to FIGS. **4**A and B, except that the compressive elements **32** and **34** collapse on the underside of the device, inwardly between portions of a single vertical support member.

FIGS. **7** and **8** show top and side views of an alternative embodiment present invention anchoring device **71**. In FIG. **7**, there is shown a top view of present invention anchor biscuit device **71**. Device **71** includes a top element **73** having a substantially flat top surface as shown, and a top view shape of a biscuit. Thus, it includes wall segment (an arc), on one side and wall segments **77** (an opposing arc), and on the opposite side. Segment **62**, for example, is non-parallel to segment **66**. There are flat ends **79** and **81**, as shown.

Top element **71** of device **71** in FIG. **7** also includes an attachment means, in this case, screw hole **83** located on center. It also includes fount chevron-shaped compressive elements **91**, **93**, **95**, and **97**. These compress if adjacent boards expand and enable extra spacing to be achieved during installation to accommodate any future wood expansion that may occur.

In FIG. **8**, there is shown a side view of the present invention anchor biscuit device **71**. Device **71** includes a top element **73**, showing the height and depth of compressive elements **91**, **93**, **95**, and **97**.

FIG. **9**A shows a top view of device **71** with installed beams **101** and **103**, and these are not swollen. In FIG. **9**B, the same beam **101** and **103** have swollen, and the compressive elements **91**, **93**, **95**, and **97** have collapsed, as shown.

FIG. **10** shows a top view and FIG. **11** shows a side view of present invention device **120**. It includes a substantially flat top element **121**, that has a top view footprint of a circle, and two vertical support members **125** and **127**, that project downwardly on each side of beveled attachment orifice **129**. The sides of device **20**'s top **121** are vertical and basically are made up of a plurality of connected (continuous) arcs to form a circle. On the top side of device **120** are eight compressive elements **131**, **133**, **135**, **137**, **139**, **141**, **143**, **145**, and **147**. These are thin cylindrical protrusions that will collapse under compression, e.g. from expanding boards. As shown in FIG. **10**, they are further apart than the thickness of the vertical support members to create space between beams for expansion.

FIGS. **12** and **13** show top views of alternative embodiment present invention anchoring devices **161** and **190** respectively. In FIG. **12**, there is shown a top view of present invention anchor biscuit device **163** having a flat top surface as shown, and a top view shape of an elongated octagon biscuit. Thus, it includes wall segments **164**, **165**, and **166** on one side wall and wall segments **162**, **167**, and **163** on the opposite side. Segments **162**, for example, is non-parallel to segment **166**. There are flat ends **169** and **177**, as shown.

Top element **163** of device **161** in FIG. **12** also includes an attachment means, in this case, screw hole **173** located on

center. Screw hole **173** has a bevel cut **175** at its top. This enables the user to nail or screw device **161** into a joist with the screw or nail being installed vertically, or, more preferably, at an angle.

Vertical support members **177** and **179** also include outwardly extending, angled tails **181**, **183**, **185**, and **187** and these are the collapsible compressive elements.

In FIG. **13**, there is shown a top view of present invention anchor biscuit device **190**, in the shape of an octagon biscuit. Device **190** includes a top element **198** having a flat top surface as shown, and a top view shape with eight equal segments; a first side with wall segments **193**, **197**, and **195**, and an opposite side with wall segments **207**, **209**, and **211**. In this case, they are perfectly symmetrical and have flat endwalls **199** and **201**. Top element **198** also includes an attachment means, screw hole **203** located on center. Note that screw hole **203** is elongated and has a beveled top **205**. Underside of top element **198** are two curved collapsible compressive elements **221** and **223**. These function similarly to those described above.

FIG. **14** shows a front view of present invention device **240**. Thus, device **240** includes a single vertical support member **245** with a space cut out **243** to permit a screw or nail to pass through beveled screw hole **253** and through vertical support member **245** into a joist or support board. There are two collapsible fins on each side of the vertical support member **245**, two shown as fins **249** and **251**. These are about ³⁄₆₄ inch away from member **245** and act as collapsible compressive elements in a manner similar to those shown above. Vertical support member **245** has a predetermined height so as to rest on the side of a beam into which device **240** may be inserted and, optionally, so as to rest on a joist in such a way as to establish biscuit top element **247** at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots corresponding thereto. Side walls may be irregular or regular, and may have any top view, workable footprint similar to that shown in the segments that will fit into beam grooves or continuous straight grooves, e.g. biscuit cuts, half circle or arc cuts, square or rectangular cuts.

FIG. **15** shows a front view present invention of device **261**, which includes a single off-center vertical support member **265** with a space underneath beveled screw hole **263** to permit a screw or nail to pass through screw hole **263** into a beam and/or joist or support board. Top **267** has opposite ends **269** and **271** as shown, with support member **265** biased to the left toward end **269**, as shown. On the right underside of top **267** are two fins **281** and **283**, that have lengths (into the page, at right angle to vertical support member **265**), that is greater than the thickness of member **265**. They are collapsible and act as compressive elements with respect to adjourning boards. Top **263** has a topography with flat sides, such as side **273**, and is in the shape of a rectangle, e.g. a square.

FIG. **16** shows device **300** with top **301** having a generally barbell-shaped footprint. There is a first side having wall segments **303** and **305** that are arcs and are connected by flat segment **307**. The opposite wall includes arcs **309** and **311** and are separated by flat segment **313**. Wall segments **303** and **309** are opposite one another and are non-parallel. There is a beveled orifice **315** which is attaching device **300** in a manner described above as well as vertical segments **317** and **319** extending downwardly from top **301** on opposite sides of orifice **315**. There are two collapsible compressive element ovals **321** and **322** extending upwardly. These space beams further apart than would members **317** and **319**, in their absence, and thus accommodate wood expansion.

FIG. **17** shows a triangular shaped present invention anchoring device **400**. It has a top **401**, an orifice **409** for

attachment and a vertical support **411**. One wall has flat segments **403** and **405** and the opposite wall has a single flat segment **407**. There is a collapsible compressive element **415** on top to function in a manner similar to those previously described.

FIGS. **18**, **19** and **20** illustrate preferred embodiment present invention anchoring device **500**, in its top, side and end views respectively. Device **500** includes top **501** with beveled screw orifice **503** on center. Opposing sides **505** and **507** are arcuate and ends **509** and **511** are flat. Extending downwardly are vertical support members **513** and **515**, located on-center and on opposite sides of orifice **503**. The vertical support member **513** and **515** each have one thin walled tubular compressive element, shown as compressive elements **517** and **519**, respectively. Further, FIG. **21** shows top view of the same device as in FIGS. **18**, **19**, and **20**, except that the top is embossed or stamped. Here, device **500**a includes top **501**a with embossments such as word **531**, that can be production information, size, model number, installation instructions or other useful information. These are preferably indented and may be established in a forming mold for the device.

All of these devices may be installed in accordance with the descriptions for previous present invention devices described above. However, device **260** shown in FIG. **14** should have the arrowed wall inserted first so that the biased beveled orifice **296** is utilized maximally and receiving an attachment screw.

Obviously, numerous modifications and variations of the present invention are possible in light of the above teachings. It is therefore understood that within the scope of the appended claims, the invention may be practiced otherwise than as specifically described herein.

The invention claimed is:

**1**. An anchoring device comprising:
- a horizontally-extending top element having a center line and side portions extending from the center line in opposite lateral directions transverse to the center line;
- a support member extending downwardly from the top element adjacent the center line, the side portions of the top element projecting in the lateral directions beyond the support member; and
- one or more at least partially collapsible compression members projecting from the top element, the compression members defining engagement surfaces remote from the center line, the engagement surfaces being constructed and arranged to confront vertically-extensive surfaces of slotted boards engaged with the top element so that the top element extends into slots in the boards;
- the anchoring device having an opening adapted to receive a fastener so that the fastener extends downwardly toward a joist.

**2**. The anchoring device according to claim **1**, wherein the horizontally-extending top element has a shape selected from the group consisting of square, rectangular, circular, and oval.

**3**. The anchoring device according to claim **1**, wherein the opening extends through the horizontally top element.

**4**. The anchoring device according to claim **1**, wherein the opening is located adjacent the center line of the horizontally-extending top element.

**5**. The anchoring device according to claim **1**, wherein the one or more compression members are attached to the support members.

**6**. The anchoring device according to claim **1**, wherein the one or more compression members includes one or more hollow cylinders.

**7**. The anchoring device according to claim **1**, wherein the one or more compression members include one or more fins projecting from the top element.

**8**. The anchoring device according to claim **1**, wherein the support member includes at least two planar structures spaced from each other, the at least two planar structures being positioned substantially along a single plane.

**9**. The anchoring device according to claim **1**, wherein the support member is a monolithic structure.

**10**. The anchoring device according to claim **1**, wherein the opening has an elongated shape.

**11**. An decking system comprising:
- at least two slotted boards adjacent to each other, each slotted board including a slot and at least one vertically-extensive surface and at least one horizontally-extensive surface; and
- an anchoring device having an opening adapted to receive a fastener so that the fastener extends downwardly toward a joist, the anchoring device comprising:
  - a horizontally-extending top element having a center line and side portions extending from the center line in opposite lateral directions transverse to the center line;
  - a support member extending downwardly from the top element adjacent the center line, the side portions of the top element projecting in the lateral directions beyond the support member; and
  - one or more at least partially collapsible compression members projecting from the top element, the compression members defining engagement surfaces remote from the center line, the engagement surfaces being constructed and arranged to confront the at least one vertically extensive surface of each slotted board engaged with the top element so that the top element extends into the slots in the boards.

**12**. The decking system according to claim **11**, wherein the horizontally-extending top element has a shape selected from the group consisting of square, rectangular, circular, and oval.

**13**. The decking system according to claim **11**, wherein the opening extends through the horizontally top element.

**14**. The decking system according to claim **11**, wherein the opening is located adjacent the center line of the horizontally-extending top element.

**15**. The decking system according to claim **11**, wherein the one or more compression members are attached to the support members.

**16**. The decking system according to claim **11**, wherein the one or more compression members includes one or more hollow cylinders.

**17**. The decking system according to claim **11**, wherein the one or more compression members include one or more fins projecting from the top element.

**18**. The decking system according to claim **11**, wherein the support member includes at least two planar structures spaced from each other, the at least two planar structures being positioned substantially along a single plane.

**19**. The decking system according to claim **11**, wherein the support member is a monolithic structure.

**20**. The decking system according to claim **11**, wherein the opening has an elongated shape.

**21**. An anchoring device comprising:
- a horizontally-extending top element having a center line, side portions extending from the center line in opposite lateral directions transverse to the center line, opposite sidewalls and opposite end walls, the center line extending between the opposite end walls, at least a portion of

one of the end walls being non-parallel relative to a corresponding portion of the other end wall directly opposite thereto;

a support member extending downwardly from the top element adjacent the center line, the side portions of the top element projecting in the lateral directions beyond the support member, the support member being constructed and arranged to be positioned between vertically-extensive surfaces of slotted boards engaged with the top element so that the top element extends into slots in the boards; and

the anchoring device having an opening adapted to receive a fastener so that the fastener extends downwardly toward a joist.

**22**. The anchoring device according to claim **21**, wherein at least one of the opposite end walls has an arc-shape.

**23**. The anchoring device according to claim **21**, further comprising one or more compression members projecting from the horizontally-extending top element.

**24**. The anchoring device according to claim **23**, wherein the one or more compression members have an oval cross-section.

**25**. The anchoring device according to claim **21**, wherein the opening has a beveled top.

\* \* \* \* \*

# Exhibit C

"Express Mail" mailing label No.  EH 976 067 055 US

Check Box if Applicable

☐ DUPLICATE

| CONTINUING APPLICATION TRANSMITTAL FORM 37 CFR 1.53(b) | ATTORNEY'S DOCKET NO. 0247-2 CIP CON |

Address to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450

This is a request for filing a  ☑ continuation  ☐ divisional  ☐ continuation-in-part of prior application
No.  10 / 446,514 filed on  May 28, 2003  of
Inventor:  Harry W. Eberle III
Title:  **EXPANSION-COMPENSATIONG DECK FASTENER**

1. ☑ A Declaration and Power of Attorney is enclosed. The enclosed Declaration and Power of Attorney is:

☑ a. A copy of the Declaration and Power of Attorney from the parent application. (Used with the same
Or fewer inventors and (a) a copy of the prior application or (b) a revised, reformatted or edited
Version of the prior application that does not contain new matter.)

☐ b. A new Declaration and Power of Attorney. (Used with the same, fewer or additional inventors
And (a) a copy of the prior application, (b) a revised, reformatted or edited version of the prior
Application that does not contain new matter, or (c) a new specification.)

2. ☐ Cancel in this application claims _____ of the prior application
before calculating the filing fee. (At least one original independent claim must be retained for filing
purposes.)

3. ☑ The filing fee is calculated below.

|  | NUMBER FILED | NUMBER EXTRA | RATE | FEE |
|---|---|---|---|---|
|  |  |  | $545.00 | $545.00 |
| TOTAL CLAIMS | 43-20= | 23 | $ 26.00 | 598.00 |
| INDEPENDENT CLAIMS | 3-3= | 0 | $ 110.00 | 0 |
| MULTIPLE DEPENDENT CLAIM PRESENT |  |  | $ 195.00 | 0 |
|  |  |  | **TOTAL** | **$1,143** |

4. ☑ Enclosed is a check in the amount of $ 1143.

5. ☑ Amend the specification by inserting before the first line the sentence: This application is a
☑ continuation  ☐ divisional  ☐ Continuation-in-part of application Serial No.
10/446, 514  Filed  May 28, 2003*

The entire disclosure of the prior application(s) is hereby incorporated by reference in its entirety.

6. ☐ a. Transfer the drawings from the pending prior application to this application.

☑ b. New informal drawings are enclosed.

*Which in turn is a Continuation-In-Part of USSN 10/393,100, filed March 20, 2003, now US Patent No. 6,851,884.

7. [ ] Priority of U.S. Provisional Application No. _____ filed _____

is claimed under 35 U.S.C. 119(e).

8. [ ] a. Priority of foreign application no. _____ filed on _____ in

_____ is claimed under 35 U.S.C. 119.
(country)

[ ] b. The certified copy has been filed in prior application serial no. _____

9. [ ] The prior application is assigned of record to _____

10. [✓] A Preliminary Amendment is enclosed.

11. [ ] Information Disclosure Statement, PTO 1449 and Copies of Citations are enclosed.

12. [✓] The power of attorney in the prior application is to     Ernest D. Buff , Esq., Reg. No.: 25,833

_____

_____

a. [ ] The power appears in the attached Declaration.

b. [✓] Since the power does not appear in the attached Declaration, a copy of the substitute Power of Attorney is enclosed.

13. [✓] Address all future communications:
Ernest D. Buff , Esq.

Ernest D. Buff & Associates, 231 Somerville Road, Bedminster, NJ  07921

_____

14. [ ] Also enclosed: _____
15. [✓] Applicant          claims Small Entity status

August 24, 2009
(Date)

(Signature)

Ernest D. Buff   (Reg. No. 25,833)
(Name & Registration Number)

Correspondence Address:                     908-901-0220        908-901-0330
Ernest D. Buff                                       (Phone)                   (Fax)
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ  07921

IC-App-0036

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Application of: | Harry W. Eberle, III | Group Art Unit: | N/A |
| | | Examiner: | N/A |
| Continuation of Serial No.: | 10/446,514 | | |
| Filed: | May 28, 2003 | | |
| For: | **EXPANSION-COMPENSATING DECK FASTENER** | | |
| Docket No.: | 0247-2 CIP CON | | |

Bedminster, NJ 07921
August 24, 2009

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

S i r :

## PRELIMINARY AMENDMENT UNDER 37 CFR 1.115

Contemporaneously with the filing of the above-identified continuation application, the following remarks are respectfully submitted:

**Remarks/Arguments** begin on page 2 of this paper.

## REMARKS

The present application is filed as a continuation of US Application Serial No. 10/446,514. A Notice of Allowance of said application was issued on May 11, 2009, and the issue fee was submitted on July 17, 2009. New claims 1-43 are now presented to provide adequate coverage for applicant's contribution to the art.

It is noted that the section entitled "Cross-Reference to Related Applications" in the specification as now filed has been amended to recite US Patent No. 6,851,884, which issued from US Patent Application Serial No. 10/393,100, the parent of US Application Serial No. 10/446,514, and the grand-parent of the present continuation application.

During prosecution of parent US Application Serial No. 10/446,514, an Office Action dated March 2, 2009 rejected then-pending claims 21-28, 30-39, and 41, but indicated that dependent claims 29 and 40 recited allowable subject matter. In response, applicant submitted an amendment under 37 CFR 1.111 dated March 13, 2009, wherein: (i) base claims 21 and 33 were amended to incorporate the limitations of dependent claims 29 and 40, respectively; (ii) claims 28-29 and 39-41 were cancelled; and (iii) new claims 42 and 43, dependent from base claim 33, were added. On May 11, 2009, a Notice of Allowance was issued, allowing claims 21-27, 30-38, 42, and 43, as amended, and further incorporating an Examiner's Amendment correcting a missing period in claim 43.

The present continuation application is filed with newly presented claims 1-43 to provide adequate coverage for applicant's contribution to the art. Each of these claims is supported by the original specification, including its drawing figures.

3

Applicant respectfully submits that claims 1-43 patentably define over the art of record in parent US Application Serial No. 10/446,514.

In view of the foregoing remarks, it is respectfully submitted that the present continuation application is in allowable condition. Early allowance of the application, as delineated by new claims 1-43, is, therefore, earnestly solicited.

Respectfully submitted,

Harry W. Eberle, III

By

Ernest D. Buff
(His Attorney)
Reg. No. 25,833
(908) 901-0220

IC-App-0039



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 10/446,514 | 05/28/2003 | Harry W. Eberle III | 0247-2 CIP |

**CONFIRMATION NO. 2658**

000025901
ERNEST D. BUFF
ERNEST D. BUFF AND ASSOCIATES, LLC.
231 SOMERVILLE ROAD
BEDMINSTER, NJ 07921

*OC000000020324320*

Date Mailed: 09/06/2006

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 08/18/2006.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

RECEIVED

SEP 1 1 2006

ERNEST D. BUFF & ASSOC. LLC

HAIMANOT CHRISTIAN
PTOSS (703) 305-0677 EXT 146

ATTORNEY/APPLICANT COPY

IC-App-0040



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 10/446,514 | 05/28/2003 | Harry W. Eberle III | HWE-110C |

CONFIRMATION NO. 2658

Kenneth P. Glynn, Esq.
Glynn & Associates, P.C.
24 Mine Street
Flemington, NJ 08822

*OC000000020324295*

Date Mailed: 09/06/2006

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 08/18/2006.

• The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

HAIMANOT CHRISTIAN
PTOSS (703) 305-0677 EXT 146

NEW ATTORNEY/AGENT COPY

RECEIVED

SEP 1 1 2006

ERNEST D. BUFF & ASSOC. LLC

IC-App-0041

COMBINED DECLARATION AND POWER OF ATTORNEY    Attorney Docket
FOR CONTINUATION-IN-PART APPLICATION    No.: HWE-110C

As a below named inventor, I hereby declare: that my
citizenship and current address are as shown below; that I
have read and understand the attached specification,
including the claims; that I believe I am the original,
first, and sole inventor (if only my name is listed below)
or a joint inventor (if other inventors are named below) of
the invention entitled:

Expansion-Compensating Deck Fastener

the specification of which is attached hereto; that I have
reviewed and understand the contents of the attached
specification, including the claims; that this application
in part discloses and claims subject matter disclosed in my
or our earlier filed pending application,
U.S. Patent Application No. 10/393,100 ,

filed on March 20, 2003 , and entitled

Decking Anchor Device

that, as to the subject matter of this application which is
common to said earlier application, I do not know and do not
believe the same was ever known or used in the United States
of America before my or our invention thereof, or patented
or described in any printed publication in any country
before my or our invention thereof or more than one year
prior to the filing date of said earlier application, that
the same was not in public use or on sale in the United
States of America more than one year prior to the filing
date of said earlier of said earlier application, that said
common subject matter has not been patented or made the
subject of an inventor's certificate issued before the
filing date of said earlier application in any country
foreign to the United States of America on an application
filed by me or my legal representatives or assigns more than
twelve months prior to the filing date of said earlier
application; that I acknowledge my duty to disclose
information which is material to the examination of said
common subject matter in this application in accordance with
Title 37, Code of Federal Regulations 1.56(a); and that no
application for patent or inventor's certificate on said
common subject matter has been filed in any country foreign
to the United States of America prior to this application by
me or my legal representatives or assigns, except as
follows:

FOREIGN APPLICATIONS FILED WITHIN 12 MONTHS PRIOR TO THE
FILING OF THIS APPLICATION:

NONE

-1-

ATTORNEY DOCKET NO. HWE-110C

FOREIGN APPLICATIONS FILED MORE THAN 12 MONTHS PRIOR TO THE
FILING OF THIS APPLICATION:

NONE

I hereby appoint the following attorney and/or agent to
prosecute this application and to transact all business in
the Patent and Trademark Office connected therewith:

Kenneth P. Glynn, Esq., Reg. No. 26,893

Address all telephone calls to: KENNETH P. GLYNN at
telephone no. (908) 788-0077; fax no. (908) 788-3999.

Address all correspondence to KENNETH P. GLYNN, ESQ., Suite
201 (Plaza One), One Rte. 12 West, Flemington, New Jersey
08822

I hereby declare that all statements made herein of my own
knowledge are true and that all statements made on
information and belief are believed to be true; and further
that these statements were made with the knowledge that
willful false statements and the like so made are punishable
by fine or imprisonment, or both, under Section 1001 of
Title 18 of the United States Code and that such willful
false statements may jeopardize the validity of the
application or any patent issued thereon.

| FULL NAME OF SOLE OR FIRST INVENTOR | INVENTOR'S SIGNATURE | DATE |
|---|---|---|
| Harry W. Eberle, III | | May 15, 2003 |
| RESIDENCE | | CITIZENSHIP |
| 357 Vernoy Road Township of Lebanon County of Hunterdon | | USA |

POST OFFICE ADDRESS

357 Vernoy Road
Califon, NJ 07830

-2-

IC-App-0043

# EXPANSION-COMPENSATING DECK FASTENER

5 ## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of co-pending US Patent Application Serial No. 10/446,514, filed May 28, 2003, which, in turn, is a continuation-in-part of US Patent Application Serial No. 10/393,100, filed on Mar. 20, 2003, now US Patent No.

10 6,851,884. Each of these applications is hereby incorporated herein in its entirety by reference thereto.

## BACKGROUND OF THE INVENTION

### 1. Field Of The Invention

15 The present invention is directed to an improved biscuit for joining adjacent boards. More specifically, the invention is an anchoring biscuit device that has the ability for pre-setting distances between adjacent boards and attaching to at least one board by means in addition to the biscuit itself. The anchoring biscuit device physically joins two adjacent boards in the same plane to a third, supporting board. The anchoring

20 half-biscuit device joins two adjacent boards at right angles to one another. Further, the present invention anchoring biscuit includes compressive elements to accommodate swelling and expansion of boards after installation.

U.S. Pat. No. 6,402,415, issued to the present inventor herein covers such biscuit

25 devices having opposite side walls in the shape of arcs. These would include side walls

with arcs and flat ends, side walls with arcs and arc ends, e.g. circles, ellipses, etc. The present invention covers biscuit-shaped devices with side walls that may have the same top view footprint as the Eberle U.S. Pat. No. 6,402,415 devices, and covers anchoring devices that may not have opposite arcs, and may or may not have biscuit shapes.

5      However, all of the present invention devices do include at least one compressive element, namely, a portion of the device that will collapse or move under compression (from opposing expansion or swelling of wood).

### 2.    Information Disclosure Statement

10      The following patents are representative of the state of the art for wood joining devices, equipment and methods:

U.S. Pat. No. 1,184,080 to D'Arcy describes a structure of the class described, the combination of frame pieces disposed at an angle to each other and plate-like corner irons having angularly disposed flanges, said corner irons being arranged in opposed

15    pairs on the sides of and secured to the ends of meeting frame pieces with their flanges engaging the inner edges thereof in overlapping telescoping relation to each other, the inner flanges having vertical nail slots therein and brads on their edges driven into the frame pieces, the outer flanges having nail perforations opposite the nail slots, there being nails disposed through the said perforations and slots and driven into the frame.

20      U.S. Pat. No. 2,332,081 to G. M. Hunt et al. is directed to a wooden panel. It is described as a panel comprising wooden strips joined along their edges with glue, each strip having at least one groove in its edge matching groove in the edge of the adjoining strip, an asbestos millboard spline fitted in the matching grooves and bridging the joint

IC-App-0045

between the strips, crossbands covering the strips on both sides of the panel, and veneers covering the crossbands.

U.S. Pat. No. 2,362,252 to Ellinwood describes a wall structure of the character described comprising a pair of adjacent wallboard panels having meeting edges, each of

5 said panels being formed with a groove opening into its meeting edge, the groove in each panel providing an outer lip and an inner lip, said outer lips being in abutting relation, a joining strip permanently secured to the under surface of said outer lips, said inner lips being spaced, a T-shaped connecting member movably positioned in said groove and having a base in spaced relation to said inner lips, and means for anchoring

10 said connecting member to a structural element.

U.S. Pat. No. 2,398,603 to Soderberg describes a joining staple, comprising a metal body having at least two portions extending at right angles to each other and at least two teeth carried upon each of said portions, each of said teeth consisting of a flat substantially rectangular body having a cutting edge extending substantially parallel to

15 its body portion, the cutting edges of all of said teeth being located in one plane, each of said portions having another cutting edge extending between the teeth of that portion, the second mentioned cutting edges being also located in one plane.

U.S. Pat. No. 2,406,387 to Lank describes the method of constructing a plurality of wooden posts each of which has a connector element incorporated therein adjacent

20 each end thereof which method comprises forming a plurality of longitudinally extending grooves in one side of each of a pair of wooden blanks from which the posts are to be formed, forming a transverse groove adjacent each end of said side of each of said blanks with the transverse grooves intersecting the longitudinal grooves, providing

- 3 -

a pair of connector retaining members with a plurality of seats for receiving connector elements, the number and spacing of said seats in each of said connector retaining members conforming to the number and spacing of the longitudinal grooves in each of said blanks, placing connector elements in each of said seats, positioning said blanks

5    with their grooved sides together and with said connector retaining members in said transverse grooves, bonding said blanks together, and severing the thus bonded assembly along longitudinal lines intermediate said longitudinal grooves.

U.S. Pat. No. 4,641,988 to Ganner is directed to a fitting for releasably joining two structural components. It is illustrated for releasably joining two structural

10    components particularly plate-shaped structural components which extend at a right angle relative to one another, a fitting has a preferably cylindrical locking element which can be inserted either directly in a bore in the first structural component or it can be inserted indirectly in a housing, and a holding piece with a holding projection anchored in the second structural component. In the assembled position, the holding

15    projection & abuts against one or two gripping surfaces of the locking element which gripping surfaces are of, for example, eccentric shape, and the holding projection is pulled toward the locking element when the locking element is turned. The holding piece is constructed plate-shaped and is insertable in a slot in the second structural component.

20    U.S. Pat. No. 4,682,458 to Sparrow describes a floor composed of parallel spaced beams having flanges and blocks of polystyrene foam which are laid on the flanges to bridge the gaps between the beams. Boards are laid on the polystyrene blocks, and are

supported by the blocks, which form load-bearing members of the floor. The blocks may have flanged portions extending over the beams, so as to provide heat insulation.

U.S. Pat. No. 5,004,027 to Legler et al. illustrates a biscuit joiner. It is described as a biscuit joiner for cutting semi-elliptical slots in opposing edges of workpieces
5    which are to be joined along those edges includes a housing adapted to be mounted upon the quill of a multipurpose woodworking tool, which housing encloses a rotary saw blade adapted to be attached to a spindle projecting from the quill on which the housing is mounted. A spring loaded guide projects from the front face of the housing and has a slot therethrough, so that when the front face of the guide is engaged by an
10   edge of a workpiece to be slotted the guide can be pushed inwardly against spring pressure, allowing the rotary saw blade to be exposed and form a slot in the edge of the workpiece. Adjustable stops are provided on the guide so that a desired depth of cut will automatically be made after adjustment. An alternative construction of this biscuit joiner is especially adapted for use in conjunction with a conventional drill press, with
15   the arbor which carries the saw blade being clamped in the chuck on the drive spindle of the drill motor.

U.S. Pat. No. 5,182,891 to Slocum describes a flooring construction which is provided having a unitary construction with a top layer providing a finished flooring surface and an insulation layer adjacent the top layer. The flooring panel includes an
20   upper portion and a lower portion. The upper portion has a larger dimension than the lower portion and extends outwardly beyond the lower portion. A recessed portion between the upper portion and the lower portion defines a channel. A plurality of interlock support elements having a vertical web and an upper horizontal flange are

arranged so that the horizontal flange extends into the channel. The vertical web extends below the lower portion to raise the flooring.

U.S. Pat. No. 5,251,996 to Hiller et al. describes a connecting element for connecting two parts generally in a connection plane has a first portion for connecting the element relative to a first of the parts and second portion for connecting the element relative to the second part. The second portion includes actuation members which on relative movement of the parts substantially along the connection plane urge the parts forcefully towards each other.

U.S. Pat. No. 5,377,732 to Fujii et al. illustrates a wood joining structure and method thereof. It is described as a technique is provided for joining wood members. A plurality of slits are formed on the end portions of wood pieces desired to be joined, and the end portions are abutted with corresponding slits in alignment to form a common surface. Each of the abutted wood end portions is fixed by temporary fixing means to a desired joining state. Thereafter, an adhesive agent is applied into the interior surfaces of the slits. Connecting plates, e.g., made of a reinforced plastic material coated with the adhesive agent, are inserted into the aligned slits. The adhesive agent is then hardened.

U.S. Pat. No. 5,458,433 to Stastny explicates a biscuit and joint made using same. It is described as a biscuit having octagonal outer periphery is used to form a joint between first and second workpieces. The biscuit fits within arcuate slots formed in the workpieces, with glue placed in the slots and/or on the biscuit before the joint is put together. The biscuit is made of an anhydrous compressed wood.

U.S. Pat. No. 5,480,117 to Fleming, III describes a bracket for mounting a rotary lock member in the frame of a panel which is provided. The bracket is a preferably U-shaped body having a base and two legs extending therefrom. The inner dimension of the bracket is chosen to allow insertion of a rotary lock member therein. Panel engaging

5    steps and protrusions are located on the outside surface of each leg for engaging the frame material. The legs of the bracket are biased inwardly towards one another, such that when a locking member is inserted therein, the legs are pressed outwardly, driving the protrusions into the frame material. A number of bores are located in the bracket to allow supplemental locking members to lock the bracket to the frame.

10   U.S. Pat. No. 5,529,428 to Bischof is directed to a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic. It is described as a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic, consisting of a lamellar part, which provides the non-positive connection with the first workpiece provided with a groove and a

15   transverse hole, and a bolt-like part which, through screwing or pinning, realizes the non-positive connection with the second workpiece provided with a longitudinal hole. The lamellar part has, in the center, a hole which is at right angles to the plane of the lamella and is intended for fixing in the groove of the workpiece. Variants having a wing-like long or rectangular short lamellar part and a bolt-like part in the form of a

20   conical wood screw, cylindrical screw, screw having a metal thread, threaded sleeve or pin. Accessories: screwing tool and drilling template.

U.S. Pat. No. 5,660,016 to Erwin et al. describes an extruded plastic decking plank for mounting to an underlying support structure, the plank having a rigid foam

core, a resilient outer plastic shell, and a clamping portion for securing the plank to the support structure. The top surface of the plank can be provided with a non-slip surface. The invention also includes an attachment system for securing such decking planks to a support structure by engaging the clamping portions of the decking planks onto clamps

5    or hold down blocks which are secured onto the support structure, and which permit relative motion between the planks and the structure in the planks' lengthwise direction to prevent stress and buckling caused by uneven expansion.

U.S. Pat. No. 6,402,415, to Eberle, the same inventor herein, describes an anchoring biscuit device for joining three boards. It includes, (a) a first substantially

10   flat horizontal top element having a generally biscuit-shaped configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and (c) an attachment orifice located at least on the top element for attachment of the anchoring

15   biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and

20   elongated.

U.S. Design Pat. No. 470,039 to Robert Pelc shows two anchoring biscuit devices of the U.S. Pat. No. 6,402,415 Eberle type, one having a circular footprint and the other having an elliptical footprint.

- 8 -

Notwithstanding the prior art, the present invention is neither taught nor rendered obvious thereby.

## SUMMARY OF THE INVENTION

5

The present invention is an anchoring biscuit device for joining three boards. It includes, (a) an at least partially flat horizontal top element having opposite side walls, and, from a top view, having a footprint adapted to be inserted into grooves, (b) at least one substantially vertical support member attached to the underside of the top element

10 and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which contain grooves for receiving portions of said top into said grooves, and, (c) at least one compressive element located on said device with at least a portion located away from said imaginary centerline, said compressive element being adapted to at least partially collapse upon compressive force. In some embodiments,

15 there is also an attachment orifice located at least on the top element for attachment of the anchoring biscuit-device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at

20 angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated. In other embodiments, there is no preformed orifice, and the device may be attached by a screw or other fastener being driven through the device, or attached by adhesive or other means, or combinations thereof.

IC-App-0052

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention should be more fully understood when the specification herein is taken in conjunction with the drawings appended hereto wherein:

5      **FIG. 1** illustrates a top view of one preferred embodiment of the present invention anchoring device,

**FIG. 2** illustrates a side view, and

**FIG. 3** illustrates an end view thereof;

**FIG. 4A** shows an end view of the present invention device shown in **FIGS. 1** 10    through **3** but being attached to a joist and a first deck board and about to be attached to a second deck board where both deck boards are supported by that joist;

**FIG. 4B** shows an end view of the same present invention device as above, but fully installed and after the adjacent beams have swollen and collapsed the compressive elements;

15      **FIGS. 5** and **6** show a side view and a bottom view, respectively, of an alternative embodiment present invention anchoring biscuit device;

**FIGS. 7** and **8** show top and side views of another alternative present invention anchoring biscuit device;

**FIGS. 9A** and **9B** show top views of the **FIG. 7** and **FIG. 8** present invention 20    device, installed with beams, before and after beam expansion;

**FIGS. 10** and **11** illustrate top and side views of another present invention device;

FIG. 12 and FIG. 13 show top views of two different embodiment present invention anchoring biscuit devices having compressive elements located below the substantially flat top element;

FIGS. 14 and 15 show additional alternative embodiment present invention anchoring devices, in their side views; and,

FIGS. 16 and 17 show more present invention alternatives in their side views; and,

FIGS. 18, 19, 20, and 21 show top, side, end and embossed top views of another preferred embodiment present invention anchoring device.

## DETAILED DESCRIPTION OF THE PRESENT INVENTION

In FIG. 1, there is shown a top view of present invention anchor biscuit device 1. Device 1 includes a top element 3 having a flat top surface as shown, and a top view shape of a biscuit. It also includes a first wall with segments 5, 7, 9 and 10, with wall segments 5 and 7 in the shape of arcs having predetermined radii and predetermined arc lengths, and wall segments 7 and 9 having flat edges (straight surfaces). There is a second, opposite wall having segments 33, 35 and 37, with 33 and 37 being arcs, and 35 being a straight flat surface. They are not parallel to their segments directly opposite, i.e., opposite as determined at a 90° angle to imaginary center line 20.

Top element 3 also includes an attachment means, in this case, screw hole 13 located on center. This enables the user to nail or screw device 1 into a joist, as more fully described in conjunction with FIG. 4 below. Alternatively, device 1 could simply have an area where a screw could be forced through, without a pre-formed orifice.

IC-App-0054

Top element 3 includes four upwardly projecting compressive elements 6, 8, 16 and 18. These are located opposite one another, as shown, are located away from imaginary center line 20. Also, they are located away from the vertical support members 15 and 17 (from top view) and are further away from the vertical support

5    members at their outermost portions, from the centerline, than the outermost portions of the vertical support elements. This concept applies to the other present invention devices described below, as well.

FIGS. 2 and 3 show side and end views, respectively of device 1 shown in FIG. 1. Thus, device 1 includes vertical support members 15 and 17 with a space 18 there

10   between to permit a screw or nail to pass through screw hole 13 into a joist or support board. Vertical support members 15 and 17 have a predetermined height so as to rest on a joist in such a way as to establish biscuit top element 3 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots. The device such as device 1 are not set for full nesting (i.e., do not have total footprint

15   identity) with the biscuit cut, and need only have sufficient overhang on each side of the centerline 20 to catch and anchor a board by at least partially fitting into a cut out of a deck or other board. The compressive elements 6, 8, 16 and 18 act as initial spacers for the two adjacent boards.

FIG. 4A shows present invention device 1 from the prior Figures, with identical

20   parts identically numbered. Top element rear biscuit wall 35 is partially inserted into pre-cut biscuit slot 27 of horizontal beam 21, as shown. Compressive elements 16 (and 18, not shown) place beam 21. Screw 31 is inserted into screw hole 13 and into joist beam 25. This anchors device 1 to joist beam 25 and establishes the elevation of top

- 12 -

element 3 so as to match with biscuit slot 27. Beam 23 will be placed atop joist beam 25 and adjacent to beam 21 by being slid into position with wall segments 5, 7, 9 and 10 at least partially fitting into slot 29, and the bottom of beam 23 resting on joist 25. By this method, device 1 attaches all three boards to one another as the side wall aspects are

5    sufficiently tight-fitting to anchor the boards. Thus, for example, decking boards may be attached without the need for nails or screws entering the beams from the top, creating a hidden fastening system.

Compressive elements 8 (and 6, not shown in **FIG. 4**) place beam 23. In other words, the compressive elements 6, 8, 16, 18 space the beams 21 and 23 further apart

10   than the vertical support members 15 and 17 would in their absence. These beams 21 and 23 might expand due to damp weather, rain, capture of moisture, high humidity, seasonal changes, shifts, etc. When this occurs, compressive elements will be pushed toward one another and collapse, e.g. in excess of 10 foot pounds psi, or some other preset parameter. The collapse of compressive elements permits the beams to close in

15   on one another to the sides of the vertical support members. This is clearly illustrated for the **FIG. 4A** embodiment, in **FIG. 4B**. Here, compressive elements have been forced to collapse inwardly by expanding beams 21 and 23, as exemplified by collapsed compressive elements 8 and 16. All parts are identically numbered as shown in the foregoing Figures.

20   **FIG. 5** shows an alternative embodiment present invention device 51 which has multiple screw holes 43, 53 and 55 located in a straight line on center of top element 47. It includes front and back ends 41 and 49, and it has a plurality of vertical support members 45, 47, 57 and 59, on top underside 36 with spaces therebetween for screw or

nail insertions. Vertical support members 45 and 57 include compressive elements 34 and 32, as shown. **FIG. 6** shows a bottom view with identical numbering. Note that compressive elements 32 and 34 are essentially hollow cylinders in this embodiment. The side walls have a footprint of sawteeth on both sides. On the side out of the

5    drawing, segments 52, 53, 54, 43, 46, 47, 55, 56 and 44 form the sawteeth. Segments directly opposite one another are mostly non-parallel. Device 51 is used in the same manner as device 1 described above with respect to **FIGS. 4A** and **B**, except that the compressive elements 32 and 34 collapse on the underside of the device, inwardly between portions of a single vertical support member.

10    **FIGS. 7** and **8** show top and side views of an alternative embodiment present invention anchoring device 71. In **FIG. 7**, there is shown a top view of present invention anchor biscuit device 71. Device 71 includes a top element 73 having a substantially flat top surface as shown, and a top view shape of a biscuit. Thus, it includes wall segment (an arc), on one side and wall segments 77 (an opposing arc), and on the

15    opposite side. Segment 62, for example, is non-parallel to segment 66. There are flat ends 79 and 81, as shown.

Top element 71 of device 71 in **FIG. 7** also includes an attachment means, in this case, screw hole 83 located on center. It also includes fount chevron-shaped compressive elements 91, 93, 95, and 97. These compress if adjacent boards expand and

20    enable extra spacing to be achieved during installation to accommodate any future wood expansion that may occur.

In **FIG. 8**, there is shown a side view of the present invention anchor biscuit device 71. Device 71 includes a top element 73, showing the height and depth of compressive elements 91, 93, 95, and 97.

**FIG. 9A** shows a top view of device 71 with installed beams 101 and 103, and these are not swollen. In **FIG. 9B**, the same beam 101 and 103 have swollen, and the compressive elements 91, 93, 95, and 97 have collapsed, as shown.

**FIG. 10** shows a top view and **FIG. 11** shows a side view of present invention device 120. It includes a substantially flat top element 121, that has a top view footprint of a circle, and two vertical support members 125 and 127, that project downwardly on each side of beveled attachment orifice 129. The sides of device 20's top 121 are vertical and basically are made up of a plurality of connected (continuous) arcs to form a circle. On the top side of device 120 are eight compressive elements 131, 133, 135, 137, 139, 141, 143, 145, and 147. These are thin cylindrical protrusions that will collapse under compression, e.g. from expanding boards. As shown in **FIG. 10**, they are further apart than the thickness of the vertical support members to create space between beams for expansion.

**FIGS. 12** and **13** show top views of alternative embodiment present invention anchoring devices 161 and 190 respectively. In **FIG. 12**, there is shown a top view of present invention anchor biscuit device 163 having a flat top surface as shown, and a top view shape of an elongated octagon biscuit. Thus, it includes wall segments 164, 165, and 166 on one side wall and wall segments 162, 167, and 163 on the opposite side. Segments 162, for example, is non-parallel to segment 166. There are flat ends 169 and 177, as shown.

Top element 163 of device 161 in **FIG. 12** also includes an attachment means, in this case, screw hole 173 located on center. Screw hole 173 has a bevel cut 175 at its top. This enables the user to nail or screw device 161 into a joist with the screw or nail being installed vertically, or, more preferably, at an angle.

5    Vertical support members 177 and 179 also include outwardly extending, angled tails 181, 183, 185, and 187 and these are the collapsible compressive elements.

In **FIG. 13**, there is shown a top view of present invention anchor biscuit device 190, in the shape of an octagon biscuit. Device 190 includes a top element 198 having a flat top surface as shown, and a top view shape with eight equal segments; a first side
10   with wall segments 193, 197, and 195, and an opposite side with wall segments 207, 209, and 211. In this case, they are perfectly symmetrical and have flat endwalls 199 and 201. Top element 198 also includes an attachment means, screw hole 203 located on center. Note that screw hole 203 is elongated and has a beveled top 205. Underside of top element 198 are two curved collapsible compressive elements 221 and 223. These
15   function similarly to those described above.

**FIG. 14** shows a front view of present invention device 240. Thus, device 240 includes a single vertical support member 245 with a space cut out 243 to permit a screw or nail to pass through beveled screw hole 253 and through vertical support member 245 into a joist or support board. There are two collapsible fins on each side of
20   the vertical support member 245, two shown as fins 249 and 251. These are about 3/64 inch away from member 245 and act as collapsible compressive elements in a manner similar to those shown above. Vertical support member 245 has a predetermined height so as to rest on the side of a beam into which device 240 may be inserted and,

IC-App-0059

optionally, so as to rest on a joist in such a way as to establish biscuit top element 247 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots corresponding thereto. Side walls may be irregular or regular, and may have any top view, workable footprint similar to that shown in the
5  segments that will fit into beam grooves or continuous straight grooves, e.g. biscuit cuts, half circle or arc cuts, square or rectangular cuts.

**FIG. 15** shows a front view present invention of device 261, which includes a single off-center vertical support member 265 with a space underneath beveled screw hole 263 to permit a screw or nail to pass through screw hole 263 into a beam and/or
10  joist or support board. Top 267 has opposite ends 269 and 271 as shown, with support member 265 biased to the left toward end 269, as shown. On the right underside of top 267 are two fins 281 and 283, that have lengths (into the page, at right angle to vertical support member 265), that is greater than the thickness of member 265. They are collapsible and act as compressive elements with respect to adjourning boards. Top 263
15  has a topography with flat sides, such as side 273, and is in the shape of a rectangle, e.g. a square.

**FIG. 16** shows device 300 with top 301 having a generally barbell-shaped footprint. There is a first side having wall segments 303 and 305 that are arcs and are connected by flat segment 307. The opposite wall includes arcs 309 and 311 and are
20  separated by flat segment 313. Wall segments 303 and 309 are opposite one another and are non-parallel. There is a beveled orifice 315 which is attaching device 300 in a manner described above as well as vertical segments 317 and 319 extending downwardly from top 301 on opposite sides of orifice 315. There are two collapsible

compressive element ovals 321 and 322 extending upwardly. These space beams further apart than would members 317 and 319, in their absence, and thus accommodate wood expansion.

**FIG. 17** shows a triangular shaped present invention anchoring device 400. It has
5   a top 401, an orifice 409 for attachment and a vertical support 411. One wall has flat segments 403 and 405 and the opposite wall has a single flat segment 407. There is a collapsible compressive element 415 on top to function in a manner similar to those previously described.

**FIGS. 18**, **19** and **20** illustrate preferred embodiment present invention anchoring
10  device 500, in its top, side and end views respectively. Device 500 includes top 501 with beveled screw orifice 503 on center. Opposing sides 505 and 507 are arcuate and ends 509 and 511 are flat. Extending downwardly are vertical support members 513 and 515, located on-center and on opposite sides of orifice 503. The vertical support member 513 and 515 each have one thin walled tubular compressive element, shown as
15  compressive elements 517 and 519, respectively. Further, **FIG. 21** shows top view of the same device as in **FIGS. 18**, **19**, and **20**, except that the top is embossed or stamped. Here, device 500a includes top 501a with embossments such as word 531, that can be production information, size, model number, installation instructions or other useful information. These are preferably indented and may be established in a forming mold
20  for the device.

All of these devices may be installed in accordance with the descriptions for previous present invention devices described above. However, device 260 shown in

**FIG. 14** should have the arrowed wall inserted first so that the biased beveled orifice 296 is utilized maximally and receiving an attachment screw.

Obviously, numerous modifications and variations of the present invention are possible in light of the above teachings. It is therefore understood that within the scope of the appended claims, the invention may be practiced otherwise than as specifically described herein.

IC-App-0062

## CLAIMS

What is claimed is:

1.    A decking system, comprising: two decking boards, each having a top, a
bottom, two sides each having a pre-cut biscuit slot, and two ends; a support board; and an
anchoring biscuit device for joinder of said decking boards and said support board with
a fastener, and wherein:

    (a)    said anchoring biscuit device comprises:

        (i)    an at least partially flat horizontal top element having a center line, opposite
side walls, and opposite ends, and a top view footprint shape having a side
portion on each side of said center line, said side portions being adapted to be
received in said biscuit slots;

        (ii)    at least one substantially vertical support member attached to the
underside of said top element along said center line of said top element
and extending downwardly therefrom for a predetermined length to
maintain said top element in a predetermined position during use for
joinder of said two adjacent boards and said support board; and

        (iii)    at least one compressive element located on said device, with at least a
portion of said compressive element, from a top view footprint, being
located away from said center line and away from said vertical support
member, and said at least one compressive element being adapted to at
least partially collapse under a predetermined compressive force; and

IC-App-0063

(b)   said two decking boards are situated adjacent to each other and atop said support board;

(c)   said side portions of said anchoring biscuit device are inserted in said biscuit slots of said adjacent decking boards; and

5   (d)   said anchoring biscuit device is attached by said fastener driven through it to engage said support board, thereby securing and anchoring said adjacent boards and said support board to one another.

2.   A decking system as recited by claim 1, wherein said top view footprint shape is selected from the group consisting of square, rectangular, circular, and oval.

10   3.   A decking system as recited by claim 1, wherein said anchoring biscuit device comprises a plurality of said substantially vertical support members.

4.   A decking system as recited by claim 1, wherein said anchoring biscuit device further comprises (iv) a pre-formed attachment orifice through which said fastener is driven.

15   5.   A decking system as recited by claim 4, wherein said attachment orifice has a beveled top.

6.   A decking system as recited by claim 4, wherein said attachment orifice is elongated.

7.   A decking system as recited by claim 4, wherein said pre-formed attachment
20   orifice is located substantially in the center of said top element

8.   A decking system as recited by claim 7, wherein said anchoring biscuit device comprises two vertical support members attached to the underside of said top element

- 21 -

along said center line, said two vertical support members being in the same plane and located on opposite sides of said pre-formed attachment orifice.

9.    A decking system as recited by claim 4, wherein said at least one vertical support member includes a cutout located under said attachment orifice and said fastener passes through said cutout into said support board.

10.    A decking system as recited by claim 1, wherein said at least one vertical support member includes a cutout.

11.    A decking system as recited by claim 1, wherein said anchoring biscuit device comprises a plurality of said compressive elements.

12.    A decking system as recited by claim 1, wherein said at least one compressive element is located on the top side of said top element.

13.    A decking system as recited by claim 1, wherein said at least one compressive element is located on the underside of said top element.

14.    A decking system as recited by claim 13, wherein said at least one compressive element is separate from said at least one substantially vertical support.

15.    A decking system as recited by claim 13, wherein said at least one compressive element is integrally attached to said at least one substantially vertical support.

16.    A decking system as recited by claim 13, wherein said anchoring biscuit device comprises a plurality of said compressive elements, each being integrally attached to said at least one substantially vertical support member.

17.    A decking system as recited by claim 16, wherein said anchoring biscuit device comprises a plurality of said substantially vertical support members.

- 22 -

18.  A decking system as recited by claim 17, wherein at least one of said compressive elements is integrally attached to each of said substantially vertical support members.

19.  A decking system as recited by claim 17, wherein said anchoring biscuit device comprises exactly two said substantially vertical support members.

20.  A decking system as recited by claim 19, wherein one said compressive element is attached to each of said substantially vertical support members.

21.  A decking system as recited by claim 1, wherein said at least one compressive element comprises fins attached to, and projecting from, said top element.

22.  A decking system as recited by claim 21, wherein said fins are in the form of chevrons.

23.  A decking system as recited by claim 21, wherein said fins are curved in form.

24.  A decking system as recited by claim 21, wherein said fins project from the underside of said top element.

25.  A decking system as recited by claim 1, wherein said at least one compressive element comprises fins are attached to, and projecting from, said at least one vertical support member.

26.  A decking system as recited by claim 25, comprising fins at each end of said device that extend outwardly and are angled away from said center line.

27.  A decking system as recited by claim 26, wherein said anchoring biscuit device comprises exactly two said vertical support members and two said compressive

- 23 -

elements, each said compressive element comprising fins extending outwardly and angled away from said center line at one said end of said device.

28. A decking system as recited by claim 1, wherein said at least one compressive element is a hollow cylinder.

5    29. A decking system as recited by claim 12, wherein said compressive elements are hollow cylinders.

30. A decking system as recited by claim 13, wherein said compressive elements are hollow cylinders.

31. A decking system as recited by claim 16, wherein said compressive elements 10   are hollow cylinders.

32. A decking system as recited by claim 20, wherein said compressive elements are hollow cylinders.

33. A decking system as recited by claim 1, wherein said fastener is a nail or screw.

15    34. An anchoring biscuit device for joining two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends, and a support board for supporting said decking boards, the device comprising:

(a) an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on each 20   side of said center line, said side portions being adapted to be received in said biscuit slots;

(b) at least one substantially vertical support member attached to the underside of said top element along said center line of said top element and extending downwardly

IC-App-0067

therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and,

(c)   at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support member, and said compressive element being adapted to at least partially collapse under predetermined compressive force.

35.   The anchoring biscuit device of claim 34, which further comprises (d) a pre-formed attachment orifice, adapted to receive a fastener driven through said orifice for attaching said device to said support board.

36.   The anchoring biscuit device of claim 34, comprising a plurality of said compressive elements, with at least a portion of each of said compressive elements, from a top view footprint, being located away from said center line and away from said vertical support member.

37.   The anchoring biscuit device of claim 34, wherein said at least one compressive element is a hollow cylinder.

38.   The anchoring biscuit device of claim 36, wherein said compressive elements are hollow cylinders.

39.   The anchoring biscuit device of claim 34, wherein said at least one compressive element comprises fins attached to, and projecting from, said top element.

IC-App-0068

40. The anchoring biscuit device of claim 41, wherein said at least one compressive element comprises fins attached to, and projecting from, said at least one vertical support member.

41. The anchoring biscuit device of claim 40, comprising fins at each end of said device that extend outwardly and are angled away from said center line.

42. The anchoring biscuit device of claim 41, comprising exactly two said vertical support members and two said compressive elements, each said compressive element comprising fins extending outwardly and angled away from said center line at one said end of said device.

43. A method for constructing a decking system comprising two decking boards, and a support board, the method comprising the steps of:

(a) providing said two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends;

(b) providing an anchoring biscuit device comprising:

(i) an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on each side of said center line, said side portions being adapted to be received in said biscuit slots;

(ii) at least one substantially vertical support member attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and

(iii)   at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support member, wherein said compressive element is adapted to at least partially collapse under predetermined compressive force;

(c)   situating said two decking boards adjacent and atop said support board;

(d)   locating said anchoring biscuit device between said adjacent decking boards, one of said side portions being inserted in said biscuit slot of each of said adjacent decking boards; and

(e)   driving a fastener through said anchoring biscuit device into said support board, whereby said adjacent boards and said support board are secured and anchored to one another.

IC-App-0070

.    **ABSTRACT**

The present invention is an anchoring biscuit device for joining three boards. It

5   includes, (a) an at least partially flat horizontal top element having an imaginary center
line, having opposite side walls, and having a top view footprint adapted to be inserted
into grooves of adjacent boards; (b) at least one substantially vertical support member
attached to the underside of the top element and extending downwardly therefrom for a
predetermined length for joinder of two adjacent boards which contain said grooves for

10  receiving portions of said top into said grooves; and, (c) at least one compressive
element located on aid device, with at least a portion of said at least one compressive
element, from a top view footprint, being located away from said imaginary center line
and way from said vertical support member, wherein said compressive element is
adapted to at least partially collapse under predetermined compressive force.

15

0247-2 CIP-CON-roz.doc

IC-App-0071



Fig. 3

Fig. 4 A

Fig. 1

Fig. 2



Fig. 5

Fig. 6

Fig. 4 B



Fig. 9A

Fig. 9B

Fig. 7

Fig. 8



Fig. 12

Fig. 13

Fig. 10

Fig. 11



Fig. 16



Fig. 17



Fig. 14



Fig. 15



Fig. 21

Fig. 20

Fig. 18

Fig. 19

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| In re Application of: | Eberle, Harry W. III | Group Art Unit: | Not Yet Assigned |
| Serial No.: | N/A; CIP of 10/446,514 | Examiner: | Not Yet Assigned |
| For: | **EXPANSION-COMPENSATING DECK FASTENER** | | |
| Attorney Docket No.: | 0247-2 CIP CON | | |

Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921
(908) 901-0220
August 24, 2009

Commissioner For Patents
P.O. Box 1450
Alexandria, VA 22313-1450

S i r :

### Certificate of Mailing by Express Mail

I hereby certify that this correspondence is being deposited with the United States Postal Service as Express Mail in an envelope bearing Express Mail Label No. EH 976 067 055 US addressed to the Commissioner for Patents, P.O. Box 1450 Alexandria, VA 22313-1450 on   August 24, 2009   .

*Signature*

**Ernest D. Buff**

*Attorney of Record*

*August 24, 20097*

*(Date)*

IC-App-0078

**PATENT APPLICATION SERIAL NO.** _____

**U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
<u>FEE RECORD SHEET</u>**

```
08/26/2009 RMEBRAHT 00000025 12583702

01 FC:2011              165.00 OP
02 FC:2111              270.00 OP
03 FC:2311              110.00 OP
04 FC:2202              598.00 OP
```

PTO-1556
(5/87)

*U.S. Government Printing Office: 2002- 489-267/69033

IC-App-0079

PTO/SB/06 (12-04)
Approved for use through 7/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**Filing Date:** 082409

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

## 12/583,702

### APPLICATION AS FILED – PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE ($) | SMALL ENTITY FEE ($) | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY FEE ($) |
|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | | | | 165 | | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | | | | 270 | | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | | | | 110 | | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 43 | minus 20 = 23 | X 26 = | 598 | OR X 52 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 | minus 3 = | X 110 = | | OR X 220 = | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $270 ($135 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | N/A | | N/A | |
| | | | TOTAL | 1143 | TOTAL | |

* If the difference in column 1 is less than zero, enter "0" in column 2.

### APPLICATION AS AMENDED – PART II

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE ($) | SMALL ENTITY ADDI-TIONAL FEE ($) | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY ADDI-TIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus ** | = | X = | | OR X = | |
| Independent (37 CFR 1.16(h)) | * | Minus *** | = | X = | | OR X = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | N/A | | N/A | |
| | | | | TOTAL ADD'T FEE | | OR TOTAL ADD'T FEE | |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE ($) | SMALL ENTITY ADDI-TIONAL FEE ($) | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY ADDI-TIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus ** | = | X = | | OR X = | |
| Independent (37 CFR 1.16(h)) | * | Minus *** | = | X = | | OR X = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | N/A | | N/A | |
| | | | | TOTAL ADD'T FEE | | OR TOTAL ADD'T FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | 0247-2 CIP CON |

**CONFIRMATION NO. 2151**

Ernest D. Buff
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921

**FORMALITIES LETTER**

*OC000000037730645*

Date Mailed: 09/11/2009

# NOTICE TO FILE CORRECTED APPLICATION PAPERS

### *Filing Date Granted*

An application number and filing date have been accorded to this application. The application is informal since it does not comply with the regulations for the reason(s) indicated below. Applicant is given TWO MONTHS from the date of this Notice within which to correct the informalities indicated below. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

The required item(s) identified below must be timely submitted to avoid abandonment:

- Replacement drawings in compliance with 37 CFR 1.84 and 37 CFR 1.121(d) are required. The drawings submitted are not acceptable because:
  - The drawings must be reasonably free from erasures and must be free from alterations, overwriting, interlineations, folds, and copy marks. See Figure(s) 2,4,4A,4B,5-9B,12,13,18,19.

Applicant is cautioned that correction of the above items may cause the specification and drawings page count to exceed 100 pages. If the specification and drawings exceed 100 pages, applicant will need to submit the required application size fee.

## Items Required To Avoid Processing Delays:

The item(s) indicated below are also required and should be submitted with any reply to this notice to avoid further processing delays.

- A new oath or declaration, identifying this application number is required. The oath or declaration does not comply with 37 CFR 1.63 in that it:
- does not identify the residence (e.g., city and either state or foreign country) of each inventor.

IC-App-0081

Replies should be mailed to:

Mail Stop Missing Parts
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web.
https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at **1-866-217-9197** or visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

/ttran/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

IC-App-0082



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | 3635 | 1143 | 0247-2 CIP CON | 43 | 3 |

**CONFIRMATION NO. 2151**

Ernest D. Buff
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921

**FILING RECEIPT**

*OC000000037730644*

Date Mailed: 09/11/2009

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Applicant(s)**

Harry W. Eberle III, Califon, NJ;

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**

This application is a CON of 10/446,514 05/28/2003 PAT 7,578,105
which is a CIP of 10/393,100 03/20/2003 PAT 6,851,884

**Foreign Applications**

**If Required, Foreign Filing License Granted:** 09/09/2009

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 12/583,702**

**Projected Publication Date:** To Be Determined - pending completion of Corrected Papers

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***

IC-App-0083

**Title**

Expansion-compensating deck fastener

**Preliminary Class**

052

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

## GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

IC-App-0084

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

## NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

IC-App-0085



FEB 1 6 2010

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | 0247-2 CIP CON |

**CONFIRMATION NO. 2151**

Ernest D. Buff
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921

RECEIVED

SEP 1 4 2009

ERNEST D. BUFF & ASSOC. LLC

**FORMALITIES LETTER**

*OC000000037730645*

Date Mailed: 09/11/2009

## NOTICE TO FILE CORRECTED APPLICATION PAPERS

### *Filing Date Granted*

An application number and filing date have been accorded to this application. The application is informal since it does not comply with the regulations for the reason(s) indicated below. Applicant is given TWO MONTHS from the date of this Notice within which to correct the informalities indicated below. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

The required item(s) identified below must be timely submitted to avoid abandonment:

- Replacement drawings in compliance with 37 CFR 1.84 and 37 CFR 1.121(d) are required. The drawings submitted are not acceptable because:
  - The drawings must be reasonably free from erasures and must be free from alterations, overwriting, interlineations, folds, and copy marks. See Figure(s) 2,4,4A,4B,5-9B,12,13,18,19.

Applicant is cautioned that correction of the above items may cause the specification and drawings page count to exceed 100 pages. If the specification and drawings exceed 100 pages, applicant will need to submit the required application size fee.

### Items Required To Avoid Processing Delays:

The item(s) indicated below are also required and should be submitted with any reply to this notice to avoid further processing delays.

- A new oath or declaration, identifying this application number is required. The oath or declaration does not comply with 37 CFR 1.63 in that it:
- does not identify the residence (e.g., city and either state or foreign country) of each inventor.

IC-App-0086

Replies should be mailed to:

Mail Stop Missing Parts
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web.
https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at **1-866-217-9197** or
visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

/ttran/

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

IC-App-0087

PATENTS

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | |
|---|---|---|---|
| In re application of: | Harry W. Eberle III | Group Art Unit: | 3635 |
| Serial No.: | 12/583,702 | Examiner: | N/A |
| Filed: | August 24, 2009 | | |
| For: | **EXPANSION-COMPENSATION DECK FASTENER** | | |
| Matter No.: | 0247-2 CIP CON | | |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450
Attn.: Mail Stop Missing Parts

February 11, 2010

### RESPONSE TO NOTICE TO FILE
### CORRECTED APPLICATION PAPERS
### FOR NONPROVISIONAL APPLICATION

*Filing Date Granted*

Sir:

In response to the Notice to File Corrected Application Papers dated September 11, 2009, enclosed herewith are replacement Figures 2,4, 4A,4B,5-9B,12,13,18 and 19 to replace those originally submitted with the Application. Also enclosed are the following: (i) a certificate of mailing via First Class Mail; (ii) a copy of the Notice to File Corrected Application Papers; (iii) a new Declaration executed by the inventor; (iv) a check made payable to the Director of Patents and Trademarks in the amount of $555 to cover the fee for a three-month extension; and (v) a return-address postcard for confirming receipt of the document package by the Office. Applicant respectfully petitions for said three-month extension.

The enclosed replacement Figures 2,4,4A,4B,5-9B, 12,13,18,and 19 are free from erasures, alterations, overwriting, interlineations, folds and copy marks and as such, it is believed that are compliant with 37 CFR 1.84 and 37 CFR 1.21 (d).

In view of the replacement drawings and new declaration enclosed herewith and the remarks set forth above, it is respectfully submitted that the corrections required in

the Notice to File Corrected Application Papers has been provided and that the application is now in condition for further processing.

Respectfully submitted,

Harry W. Eberle III

Ernest D. Buff
His Attorney
Reg. No. 25,833

Enclosures

Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, New Jersey 07921
(908) 901-0220

Dated: February 11, 2010

## Certificate of Mailing by First Class Mail

| |
|---|
| I hereby certify that this correspondence is being deposited with the United States Postal Service as First Class Mail in an envelope addressed to Mailstop Missing Parts, Commissioner for Patents, P.O. Box 1450 Alexandria, VA 22313-1450 on February 11, 2010. |
| *Signature* |
| **Ernest D. Buff** |
| *Attorney of Record* |
| *February 11, 2010* |
| *(Date)* |

IC-App-0089

# DECLARATION FOR PATENT APPLICATION
## SOLE OR JOINT

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention titled:

### EXPANSION-COMPENSATING DECK FASTENER

the specification of which is attached hereto.

I HEREBY STATE THAT I HAVE REVIEWED AND UNDERSTAND THE CONTENTS OF THE ABOVE-IDENTIFIED SPECIFICATION, INCLUDING THE CLAIMS.

I ACKNOWLEDGE THE DUTY TO DISCLOSE INFORMATION WHICH IS MATERIAL TO THE PATENTABILITY OF THIS APPLICATION IN ACCORDANCE WITH TITLE 37, CODE OF FEDERAL REGULATIONS, §1.56.

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

**Prior Foreign Application(s)**

Priority Claimed

| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |
|---|---|---|---|---|
| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |
| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |

I hereby claim the benefit under Title 35, United States Code, §120 of any United States applications listed below and, INSOFAR AS THE SUBJECT MATTER OF EACH OF THE CLAIMS OF THIS APPLICATION IS NOT DISCLOSED IN THE PRIOR UNITED STATES APPLICATION IN THE MANNER PROVIDED BY THE FIRST PARAGRAPH OF TITLE 35, UNITED STATES CODE, §112, I ACKNOWLEDGE THE DUTY TO DISCLOSE MATERIAL INFOMATION AS DEFINED IN TITLE 37, CODE OF FEDERAL REGULATIONS, §1.56(a) WHICH OCCURRED BETWEEN THE FILING DATE OF THE PRIOR APPLICATION AND THE NATIONAL OR PCT INTERNATIONAL FILING DATE OF THIS APPLICATION:

| 10/446,514 | May 28, 2003 | Patented |
|---|---|---|
| (Application Serial Number) | (Filing Date) | (STATUS: Patented, Pending, Abandoned) |
| 10/393,100 | March 20, 2003 | Patented |
| (Application Serial Number) | (Filing Date) | (STATUS: Patented, Pending, Abandoned) |

**POWER OF ATTORNEY:** As a named inventor, I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected herewith (List name and registration number).

(LIST SENIOR PATENT COUNSEL AND ATTORNEY HANDLING CASE WITH PATENT OFFICE REGISTRATION NUMBERS.)

| Ernest D. Buff | | |
|---|---|---|
| Name | Name | Name |
| 25,833 | | |
| Registration Number | Registration Number | Registration Number |

SEND CORRESPONDENCE TO:      Ernest D. Buff, Esq.

Ernest D. Buff & Associates, LLC

231 Somerville Road
Bedminster, NJ 07921

DIRECT TELEPHONE CALLS TO:      Ernest D. Buff
(908) 901-0220

IC-App-0090

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

FULL NAME OF SOLE OR FIRST INVENTOR     Harry W. Eberle, III

INVENTOR'S SIGNATURE     *(signature)*     Date  1/27/10

RESIDENCE     Califon, Hunterdon County, New Jersey

CITIZENSHIP     USA

POST OFFICE ADDRESS     219 West Valley Brook Road

Califon, NJ 07830

FULL NAME OF SECOND JOINT INVENTOR

INVENTOR'S SIGNATURE     Date

RESIDENCE

CITIZENSHIP

POST OFFICE ADDRESS

FULL NAME OF THIRD JOINT INVENTOR

INVENTOR'S SIGNATURE

RESIDENCE

CITIZENSHIP

POST OFFICE ADDRESS

FULL NAME OF FOURTH JOINT INVENTOR

INVENTOR'S SIGNATURE

RESIDENCE

CITIZENSHIP

POST OFFICE ADDRESS

FULL NAME OF FIFTH JOINT INVENTOR

INVENTOR'S SIGNATURE

RESIDENCE

CITIZENSHIP

POST OFFICE ADDRESS



Fig. 3

Fig. 4A

Fig. 1

Fig. 2

Attorney Docket No.: 0247-2 CIP CON



Fig. 5

Fig. 6



Fig. 4B

Attorney Docket No.: 0247-2 CIP CON



Fig. 9A

Fig. 9B

Fig. 7

Fig. 8



Fig. 12

Fig. 13

Fig. 10

Fig. 11



Fig. 21

Fig. 20

Fig. 18

Fig. 19



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | 3635 | 1143 | 0247-2 CIP CON | 43 | 3 |

**CONFIRMATION NO. 2151**

Ernest D. Buff, Esq.
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921

**UPDATED FILING RECEIPT**



*OC000000040405600*

Date Mailed: 03/04/2010

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Applicant(s)**

Harry W. Eberle III, Califon, NJ;

**Power of Attorney:**
Ernest Buff--25833

**Domestic Priority data as claimed by applicant**

This application is a CON of 10/446,514 05/28/2003 PAT 7,578,105
which is a CIP of 10/393,100 03/20/2003 PAT 6,851,884

**Foreign Applications**

**If Required, Foreign Filing License Granted:** 09/09/2009

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 12/583,702**

**Projected Publication Date:** 06/10/2010

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***

IC-App-0097

**Title**

Expansion-compensating deck fastener

**Preliminary Class**

052

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

IC-App-0098

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

## NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

IC-App-0099



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | 0247-2 CIP CON | 2151 |

7590        05/06/2010

Ernest D. Buff, Esq.
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921

| EXAMINER |
|---|
| WENDELL, MARK R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/06/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

IC-App-0100

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>24 August 2009</u>.

2a)☐ This action is **FINAL**.     2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-43</u> is/are pending in the application.

   4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1,2,4-7,9-16,21-24,33-36,39 and 43</u> is/are rejected.

7)☒ Claim(s) <u>3, 8, 17-20, 25-32, 37,38 and 40-42</u> is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☒ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>16 February 2010</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All   b)☐ Some * c)☐ None of:

   1.☐ Certified copies of the priority documents have been received.

   2.☐ Certified copies of the priority documents have been received in Application No. _____.

   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

## DETAILED ACTION

### *Information Disclosure Statement*

The listing of references in the specification is not a proper information disclosure

statement.  37 CFR 1.98(b) requires a list of all patents, publications, or other

information submitted for consideration by the Office, and MPEP § 609.04(a) states,

"the list may not be incorporated into the specification but must be submitted in a

separate paper."  Therefore, unless the references have been cited by the examiner on

form PTO-892, they have not been considered.

### *Claim Objections*

Claims 40-42 are objected to because of the following informalities:  The claims do not

have the correct dependency.  Claim 40 depends from claim 41 and claim 41 depends

from claim 40.  Also, claim 42 depends from claim 41 which depends from claim 40

which defaults back to claim 41.  The dependency issues need to be clarified.

Appropriate correction is required.

### *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created doctrine

grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees.   A nonstatutory

obviousness-type double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent either is shown to be commonly owned with this application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement.

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).


Claims 34-36 and 39 are rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 1-12 of U.S. Patent No. 6402415 in view of Haid (US 4599841).  Eberle claims an anchoring biscuit device for

joining three boards (to have three boards, one must have two boards; therefore this limitation in met) comprising:

- o A substantially flat horizontal top element having a center line or area with side walls (claims 1 and 10) – the examiner notes that claim 1 states that the object is "biscuit-shaped" however one can see that this shape is extremely similar to the "footprint" shape of the instant application;

- o At least one (claim 10) or at least two (claim 1) substantially vertical support member attached to the underside of the top element and extending downwardly;

- o An attachment orifice which can be beveled attaching a support board (claims 2 and 3),

- o The vertical support member is located off-center from the orifice (claim 10).

The examiner notes that the Figures of Eberle illustrate the top element having an oval shaped footprint and a vertical extended member (25). The reference does not distinctly disclose the compressive elements located on the device. However, Haid illustrates in Figures 2, 3 and 6 an attachment device for floor boards having a horizontal top member, a vertical support member and compressive ribs or fins located on the top and underside of the top element that are not parallel to the vertical support member. It would have been obvious to one having ordinary skill in the art at the time of invention to establish the ribs of Haid onto the elements of Eberle to create a stronger

connection between the attachment means and the boards.  It is well known in the art

that ribbed elements make a stronger connection to an object.


## *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.


Claim 1-2, 4-7, 9-16, 21-24, 33-36, 39 and 43 are rejected under 35 U.S.C. 103(a) as

being unpatentable over Haid (US 4599841) in view of Erwin et al. (US 5660016).

Regarding claims 1, 4, 9-13, 21-24, 33-36, 39 and 43, Haid illustrates in Figures 2, 3

and 6 a decking system (see Figure 6) comprising: two decking boards (21a and 21b),

each having a top, a bottom, two sides each having a pre-cut biscuit slot (see Figure 4),

two ends and an anchoring biscuit device (Figure 2) for joining two boards (21a and

21b), which comprises:

- o  An at least partially flat horizontal top element (7) having a center line, having

   opposite side walls and ends, and having a top view footprint adapted to be

   inserted into grooves of adjacent boards (see Figure 6);

- o  At least one substantially vertical support member (6) attached to the underside

   of said top element along said center line of said top element and extending

   downwardly therefrom for a predetermined length (see Figure 6); and

o   At least one (the reference has multiple) compressive element (8 – which are in
    the form of fins in Figure 2 and curved fins in Figure 3) located on said device
    (top and bottom), with at least a portion of said at least one compressive
    element, from a top view footprint, being located away from said center line and
    away from said vertical support member, wherein said compressive element is
    adapted to at least partially collapse under predetermined compressive force,
    and wherein said at least one compressive element is located on top of said top
    element.

However the reference does not distinctly disclose an attachment orifice or a support
board.  Erwin illustrates in Figure 1 an attachment orifice and a screw (92) occupying
the orifice in which the screw attaches deck planks (similar to those of Haid) to a
support joist board (100).  It would have been obvious to one having ordinary skill in the
art at the time of invention to include the orifice and attachment means of Erwin within
the anchoring device of Haid in order to further secure the structures to the support
board or floor (since decking planks like those of Haid) generally are attached to support
joists.

Regarding claim 2, the reference does not distinctly illustrate a footprint of the top of the
anchoring device.  Figure 1 illustrates the device being elongated and stretching a
significant distance along the grooves of the panels and it can be inferred from this view
and the views of Figures 2 and 3 that the footprint shape would closely resemble a
rectangle.

Regarding claims 5 and 6, Haid in view of Erwin shows the basic claimed structure. The

references do not show the attachment orifice having a beveled top and being

elongated. It would have been an obvious design choice to have a beveled, elongated

top to receive a beveled screw.  This is common practice with anchoring devices.  See

US patents 5359954 and 20020059766.


Regarding claim 7, Haid illustrates in Figure 1 the attachment orifice being located

substantially in the center of the top portion.


Regarding claims 14-16, Haid illustrates in Figures 2 and 3 the compressive elements

(8) not appearing on the vertical support member (6); however the entire biscuit is

integrally made (one-piece) and therefore each element on the biscuit is attached to one

another.


### *Allowable Subject Matter*

Claims 3, 8, 17-20, 25-32, 37-38, 40-42 are objected to as being dependent upon a

rejected base claim, but would be allowable if rewritten in independent form including all

of the limitations of the base claim and any intervening claims.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to MARK R. WENDELL whose telephone number is (571)270-3245.  The examiner can normally be reached on Mon-Thur.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Richard Chilcot can be reached on (571) 272-6777.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Richard E. Chilcot, Jr./                                    Mark R. Wendell
Supervisory Patent Examiner, Art Unit 3635        Examiner
                                                             Art Unit 3635

/M. R. W./
Examiner, Art Unit 3635
April 26, 2010

# Notice of References Cited

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| **Notice of References Cited** | 12/583,702 | EBERLE, HARRY W. |
| | Examiner | Art Unit | |
| | MARK R. WENDELL | 3635 | Page 1 of 1 |

## U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2002/0059766 | 05-2002 | Gregori, Karl H. W. | 52/489.1 |
| * | B | US-6,871,467 | 03-2005 | Hafner, Robert | 52/586.1 |
| * | C | US-1,723,306 | 08-1929 | SIPE HARRY E | 52/396.04 |
| * | D | US-6,363,677 | 04-2002 | Chen et al. | 52/586.1 |
| * | E | US-5,359,954 | 11-1994 | Kordelin, Tapio | 114/85 |
| * | F | US-6,651,400 | 11-2003 | Murphy, Terry J. | 52/586.2 |
| * | G | US-4,454,699 | 06-1984 | Strobl, Fred | 52/585.1 |
| * | H | US-4,599,841 | 07-1986 | Haid, Peter | 52/396.04 |
| * | I | US-2,362,252 | 11-1944 | ELLINWOOD GEORGE G | 52/288.1 |
| * | J | US-6,032,431 | 03-2000 | Sugiyama, Kazuo | 52/656.9 |
| * | K | US-5,660,016 | 08-1997 | Erwin et al. | 52/483.1 |
| * | L | US-6,711,864 | 03-2004 | Erwin, Ronald D. | 52/582.1 |
| * | M | US-6,402,415 | 06-2002 | Eberle, III, Harry W. | 403/231 |

## FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

## NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| | Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| | | 12583702 | EBERLE, HARRY W. |
| | | Examiner | Art Unit |
| | | MARK R WENDELL | 3635 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/26/2010 | | | | | | | |
| | 1 | ✓ | | | | | | | |
| | 2 | ✓ | | | | | | | |
| | 3 | O | | | | | | | |
| | 4 | ✓ | | | | | | | |
| | 5 | ✓ | | | | | | | |
| | 6 | ✓ | | | | | | | |
| | 7 | ✓ | | | | | | | |
| | 8 | O | | | | | | | |
| | 9 | ✓ | | | | | | | |
| | 10 | ✓ | | | | | | | |
| | 11 | ✓ | | | | | | | |
| | 12 | ✓ | | | | | | | |
| | 13 | ✓ | | | | | | | |
| | 14 | ✓ | | | | | | | |
| | 15 | ✓ | | | | | | | |
| | 16 | ✓ | | | | | | | |
| | 17 | O | | | | | | | |
| | 18 | O | | | | | | | |
| | 19 | O | | | | | | | |
| | 20 | O | | | | | | | |
| | 21 | ✓ | | | | | | | |
| | 22 | ✓ | | | | | | | |
| | 23 | ✓ | | | | | | | |
| | 24 | ✓ | | | | | | | |
| | 25 | O | | | | | | | |
| | 26 | O | | | | | | | |
| | 27 | O | | | | | | | |
| | 28 | O | | | | | | | |
| | 29 | O | | | | | | | |
| | 30 | O | | | | | | | |
| | 31 | O | | | | | | | |
| | 32 | O | | | | | | | |
| | 33 | ✓ | | | | | | | |
| | 34 | ✓ | | | | | | | |
| | 35 | ✓ | | | | | | | |
| | 36 | ✓ | | | | | | | |

| **Index of Claims** | **Application/Control No.** 12583702 | **Applicant(s)/Patent Under Reexamination** EBERLE, HARRY W. |
|---|---|---|
| | **Examiner** MARK R WENDELL | **Art Unit** 3635 |

| ✓ | **Rejected** | - | **Cancelled** | **N** | **Non-Elected** | **A** | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | **I** | **Interference** | **O** | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant**   ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/26/2010 | | | | | | | |
| | 37 | O | | | | | | | |
| | 38 | O | | | | | | | |
| | 39 | ✓ | | | | | | | |
| | 40 | O | | | | | | | |
| | 41 | O | | | | | | | |
| | 42 | O | | | | | | | |
| | 43 | ✓ | | | | | | | |

| **Search Notes** | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 12583702 | EBERLE, HARRY W. |
| | **Examiner** | **Art Unit** |
| | MARK R WENDELL | 3635 |

| SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| 52 | 586.1, 586.2, 483.1, 480, 650.3, 403.1 | 4/26/10 | MRW |
| 403 | 231, 232.1, 408.1 | 4/26/10 | MRW |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Consulted Previous Search history in the patent family | 4/26/10 | MRW |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

OPAP
MAY 2 4 2010
PATENT & TRADEMARK OFFICE

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Application of: | Harry W. Eberle, III | Group Art Unit: | 3635 |
| Serial No.: | 12/583,702 | Examiner: | Mark R. Wendell |
| Filed: | August 24, 2009 | | |
| For: | **EXPANSION-COMPENSATING DECK FASTENER** | | |
| Docket No.: | 0247-2 CIP CON | | |

Bedminster, NJ 07921
May 21, 2010

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

S i r :

### AMENDMENT UNDER 37 CFR 1.111

In response to the Office Action dated May 6, 2010, kindly amend the above-

identified application as follows:

An **Amendment to the Specification** is set forth on page 2 of this paper.

**Amendments to the Claims** are set forth in the listing of claims which begins on

page 3 of this paper.

**Remarks/Arguments** begin on page 14 of this paper.

05/25/2010 SDENBOB3 00000025 503832   12583702
01 FC:2201        20.00 DA      200.00 OP

## IN THE SPECIFICATION

Please amend the specification by rewriting the section entitled "CROSS-REFERENCE TO RELATED APPLICATIONS," which begins at page 1, line 6, as follows:

This application is a continuation of co-pending US Patent Application Serial No. 10/446,514, filed May 28, 2003, now US Patent No. 7,578,105, which, in turn, is a continuation-in-part of US Patent Application Serial No. 10/393,100, filed on Mar. 20, 2003, now US Patent No. 6,851,884. Each of these applications is hereby incorporated herein in its entirety by reference thereto.

## IN THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1.    (currently amended)  A decking system, comprising: two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends; a support board; and an anchoring biscuit device for joinder of said decking boards and said support board with a fastener, and wherein:

(a)    said anchoring biscuit device comprises:

(i)    an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on each side of said center line, said side portions being adapted to be received in said biscuit slots;

(ii)    ~~at least one~~a plurality of substantially vertical support members attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and

(iii)  at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support

members, and said at least one compressive element being adapted to at least partially collapse under a predetermined compressive force; and

(b)    said two decking boards are situated adjacent to each other and atop said support board;

(c)    said side portions of said anchoring biscuit device are inserted in said biscuit slots of said adjacent decking boards; and

(d)    said anchoring biscuit device is attached by said fastener driven through it to engage said support board, thereby securing and anchoring said adjacent boards and said support board to one another.

2.    (original)  A decking system as recited by claim 1, wherein said top view footprint shape is selected from the group consisting of square, rectangular, circular, and oval.

3.    (cancelled)

4.    (original)  A decking system as recited by claim 1, wherein said anchoring biscuit device further comprises (iv) a pre-formed attachment orifice through which said fastener is driven.

5.    (original)  A decking system as recited by claim 4, wherein said attachment orifice has a beveled top.

6.    (original)  A decking system as recited by claim 4, wherein said attachment orifice is elongated.

7.    (currently amended)  A decking system as recited by claim 4, wherein said pre-formed attachment orifice is located substantially in the center of said top element.

8.     (original)   A decking system as recited by claim 7, wherein said anchoring biscuit device comprises two vertical support members attached to the underside of said top element along said center line, said two vertical support members being in the same plane and located on opposite sides of said pre-formed attachment orifice.

9.     (cancelled)

10.   (cancelled)

11.   (original)  A decking system as recited by claim 1, wherein said anchoring biscuit device comprises a plurality of said compressive elements.

12.   (original)   A decking system as recited by claim 1, wherein said at least one compressive element is located on the top side of said top element.

13.   (original)   A decking system as recited by claim 1, wherein said at least one compressive element is located on the underside of said top element.

14.   (currently amended)  A decking system as recited by claim 13, wherein said at least one compressive element is separate from said ~~at least one~~ substantially vertical support members.

15.   (cancelled)

16.   (currently amended)   A decking system as recited by claim 13, wherein said anchoring biscuit device comprises a plurality of said compressive elements, each being integrally attached to <u>one of</u> said ~~at least one~~ substantially vertical support member<u>s</u>.

17.   (cancelled)

18. (currently amended)   A decking system as recited by claim ~~17~~1, wherein <u>said anchoring biscuit device comprises a plurality of</u> ~~at least one of~~ said compressive elements<u>, at least one of which</u> is integrally attached to each of said substantially vertical support members.

19. (currently amended)   A decking system as recited by claim ~~17~~1, wherein said anchoring biscuit device comprises exactly two said substantially vertical support members.

20. (original)   A decking system as recited by claim 19, wherein one said compressive element is attached to each of said substantially vertical support members.

21. (cancelled)

22. (currently amended)   A decking system as recited by claim ~~21~~25, wherein said fins are in the form of chevrons.

23. (currently amended)   A decking system as recited by claim ~~21~~25, wherein said fins are curved in form.

24. (currently amended)   A decking system as recited by claim ~~21~~25, wherein said fins project from the underside of said top element.

25. (currently amended)   A decking system ~~as recited by claim 1,~~ <u>comprising: two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends; a support board; and an anchoring biscuit device for joinder of said decking boards and said support board with a fastener, and wherein:</u>

<u>(a)    said anchoring biscuit device comprises:</u>

<u>(i)    an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on</u>

each side of said center line, said side portions being adapted to be received in said biscuit slots;

(ii) at least one substantially vertical support member attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and

(iii) at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support member, and ~~wherein~~ said at least one compressive element comprises fins are attached to, and projecting from, said at least one vertical support member and is adapted to at least partially collapse under a predetermined compressive force;

(b) said two decking boards are situated adjacent to each other and atop said support board;

(c) said side portions of said anchoring biscuit device are inserted in said biscuit slots of said adjacent decking boards; and

(d) said anchoring biscuit device is attached by said fastener driven through it to engage said support board, thereby securing and anchoring said adjacent boards and said support board to one another.

26. (original)  A decking system as recited by claim 25, comprising fins at each end of said device that extend outwardly and are angled away from said center line.

27. (original)  A decking system as recited by claim 26, wherein said anchoring biscuit device comprises exactly two said vertical support members and two said compressive elements, each said compressive element comprising fins extending outwardly and angled away from said center line at one said end of said device.

28. A decking system as recited by claim 1, wherein said at least one compressive element is a hollow cylinder.

29. (original)  A decking system as recited by claim 12, wherein said compressive elements are hollow cylinders.

30. (original)  A decking system as recited by claim 13, wherein said compressive elements are hollow cylinders.

31. (original)  A decking system as recited by claim 16, wherein said compressive elements are hollow cylinders.

32. (original)  A decking system as recited by claim 20, wherein said compressive elements are hollow cylinders.

33. (original)  A decking system as recited by claim 1, wherein said fastener is a nail or screw.

34. (currently amended)  An anchoring biscuit device for joining two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends, and a support board for supporting said decking boards, the device comprising:

(a)  an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on each side of said center line,  said side portions being adapted to be received in said biscuit slots;

(b)  at least one substantially vertical support member attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and,

(c)  at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support member, and said compressive element being a hollow cylinder adapted to at least partially collapse under predetermined compressive force.

35.  (original)  The anchoring biscuit device of claim 34, which further comprises (d) a pre-formed attachment orifice, adapted to receive a fastener driven through said orifice for attaching said device to said support board.

36.  (original)  The anchoring biscuit device of claim 34, comprising a plurality of said compressive elements, with at least a portion of each of said compressive elements, from a top view footprint, being located away from said center line and away from said vertical support member.

37.  (cancelled)

38.  (cancelled)

10

39.  (cancelled)

40.  (currently amended)  ~~The~~ An anchoring biscuit device ~~of claim 41,~~ for joining two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends, and a support board for supporting said decking boards, the device comprising:

(a)   an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on each side of said center line,  said side portions being adapted to be received in said biscuit slots;

(b)   at least one substantially vertical support member attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and,

(c)   at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support member, and ~~wherein~~ said at least one compressive element comprises fins attached to, and projecting from, said at least one vertical support member and is adapted to at least partially collapse under predetermined compressive force.

41.  (original)  The anchoring biscuit device of claim 40, comprising fins at each end of said device that extend outwardly and are angled away from said center line.

42.  (original)  The anchoring biscuit device of claim 41, comprising exactly two said vertical support members and two said compressive elements, each said compressive

element comprising fins extending outwardly and angled away from said center line at one said end of said device.

43. (currently amended)  A method for constructing a decking system comprising two decking boards, and a support board, the method comprising the steps of:

(a)  providing said two decking boards, each having a top, a bottom, two sides each having a pre-cut biscuit slot, and two ends;

(b)  providing an anchoring biscuit device comprising:

    (i)  an at least partially flat horizontal top element having a center line, opposite side walls, and opposite ends, and a top view footprint shape having a side portion on each side of said center line, said side portions being adapted to be received in said biscuit slots;

    (ii)  ~~at least one~~a plurality of substantially vertical support member~~s~~ attached to the underside of said top element along said center line of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joinder of said two adjacent boards and said support board; and

    (iii)  at least one compressive element located on said device, with at least a portion of said compressive element, from a top view footprint, being located away from said center line and away from said vertical support member, wherein said compressive element is adapted to at least partially collapse under predetermined compressive force;

(c)  situating said two decking boards adjacent and atop said support board;

(d)    locating said anchoring biscuit device between said adjacent decking boards, one of said side portions being inserted in said biscuit slot of each of said adjacent decking boards; and

(e)    driving a fastener through said anchoring biscuit device into said support board, whereby said adjacent boards and said support board are secured and anchored to one another.

44.   (new)  A decking system as recited by claim 25, wherein said anchoring biscuit device further comprises (iv) a pre-formed attachment orifice through which said fastener is driven.

45.   (new)  A decking system as recited by claim 44, wherein said at least one vertical support member includes a cutout and said fastener passes through said cutout into said support board.

46.   (new) A decking system as recited by claim 25, wherein said anchoring biscuit device comprises a plurality of said substantially vertical support members

47.   (new) The anchoring biscuit device as recited by claim 40, which further comprises (d) a pre-formed attachment orifice, adapted to receive a fastener driven through said orifice for attaching said device to said support board.

48.   (new) The anchoring biscuit device as recited by claim 47, wherein said attachment orifice has a beveled top.

49.   (new) The anchoring biscuit device as recited by claim 47, wherein said attachment orifice is elongated.

50. (new) The anchoring biscuit device of claim 40, comprising a plurality of said compressive elements, with at least a portion of each of said compressive elements, from a top view footprint, being located away from said center line and away from said vertical support member.

## REMARKS

### Claim Amendments

Appreciation is expressed for the Examiner's indication that claims 3, 8, 17-20, 25-32, 37-38, and 40-42 recite allowable subject matter.

In accordance with this indication and to expedite prosecution, the claims in this application have been amended as follows.

Claim 1 has been amended to incorporate the feature of claim 3, so that section (a)(ii) of claim 1 now recites a _plurality_ of substantially vertical support members. For the sake of clarity and consistency with claim 1, claim 14 has been amended to call for the at least one compressive element to be separate from the vertical support members. Claim 18 has been amended to depend directly on claim 1 and to make it consistent with the inherited requirement of plural vertical support members.

Claim 25 has been amended to place it in independent form, incorporating the features of base claim 1 from which it formerly depended. As now amended, claim 25 requires that at least one compressive element be located on the anchoring biscuit device and comprising fins attached to, and projecting from, the at least one vertical support member. Claims 22-24 have been amended to depend from claim 25 instead of claim 21.

Independent claim 34 has been amended to incorporate the feature formerly delineated by claim 37, namely the requirement that the compressive element be a hollow cylinder,

Claim 40 has been rewritten in independent form, incorporating the features of original independent claim 34. Applicant expresses appreciation for the Examiner's

constructive attempt to advance prosecution with respect to the typographical errors and apparent inconsistency in the dependencies of claims 40-42. Claim 40 as filed should have depended from claim 34 instead of claim 41. It is respectfully submitted that the presentation of claim 40 in independent form, with claims 41 and 42 continuing to depend from claims 40 and 41, respectively, has mooted any informality of claims 40-42. Accordingly, reconsideration of the objection to claims 40-42 as informal is respectfully requested.

Independent method claim 43 has been amended to call for the use of an anchoring biscuit device that includes a _plurality_ of substantially vertical support members, instead of merely requiring at least one vertical support member. The device used in the method of claim 43 thus parallels the device used in the decking system of original claim 3 and now recited by base claim 1.

In order to provide adequate coverage for applicant's contribution to the art, new claims 44-50 have been added. Claims 44-46 are directed to a decking system and depend from base claim 25, while claims 47-50 are directed to an anchoring biscuit device and depend from base claim 40. Claims 44, 45, and 46 recite subject matter that generally parallels that of original claims 4, 9, and 3, respectively. Claims 47, 48, 49, and 50 respectively parallel original claims 4 (and 35), 5, 6, and 36.

Claim 7 has been amended to correct an obvious informality and typographical error, namely the omission of the final period ending the claim.

Each of the foregoing amendments is clearly supported by the original specification; particularly at page 9, lines 14-24; page 11, lines 21-22; page 12, lines 8-11;

page 13, lines 22-23; page 16, lines 5-6 and 13-19; page 18, lines 13-15; Figures 2, 3, 4, 5, 13, 14 of the drawings; and by original claims 1, 3, 4, 25, 34, 35-37, 40, and 48-50. Consequently, no new matter has been added.

Claims 3, 9, 10, 15, 17, 21, and 37-39 have been cancelled to expedite prosecution.

It is respectfully submitted that each of the claims now remaining in the case, namely amended claims 1-2, 4-8, 11-14, 16, 18-20, 21-36, and 40-50, recites subject matter that the Examiner has deemed to be allowable.

## Specification Amendment

For the sake of clarity and completeness, the specification has been amended to include US Patent No. 7,578,105 in the section, Cross-Reference to Related Applications. The '105 patent has recently issued from US Application Serial No. 10/446,514, of which the present application is a continuation.

## Claim Amendments

The Examiner has objected to claims 3, 8, 17-20, 25-32, 37-38, and 40-42 as being dependent from rejected base claims, but has indicated that said claims would be allowable if presented in independent form including all the limitations of the base claim and any intervening claims.

As set forth above, base claim 1 has been amended to incorporate the limitations of claim 3, which depended directly thereon. As amended, claims 2, 4-8, 11-

14, 16, 18-20, 25-33 all depend directly or indirectly from claim 1. Accordingly, it is submitted that each of these claims is patentable over the art of record for at least the same reasons as original claim 3.

Claim 25 is now presented in independent form, incorporating the features of base claim 1 from which it formerly depended. Amended claims 22-24 and new claims 44-46 depend from claim 25. Accordingly, it is submitted that each of claims 22-25 and 44-46 is patentable over the art of record for at least the same reasons as original claim 25.

Independent claim 34 has been amended to incorporate the feature of claim 37, which was deemed to recite allowable subject matter. Claims 35-36, being dependent from claim 34, are submitted to also be allowable for at least the same reasons.

Claim 40 has now been rewritten in independent form incorporating the features of independent claim 34, from which it was originally intended to depend. Claims 41-42 and new claims 47-50 depend from amended claim 40, and are submitted to be patentable for at least the same reasons as original claim 34.

In view of the amendment of claims 1, 14, 18, 19, 21, 34, and 40, the cancellation of claims 3, 17, and 37-38, and the foregoing remarks, it is submitted that the objection to claims 3, 8, 17-20, 25-32, 37-38, and 40-42 has been mooted.

Accordingly, reconsideration of the objection to claims 3, 8, 17-20, 25-32, 37-38, and 40-42 is respectfully requested.

## Rejections under 35 USC §103

Claims 1-2, 4-7, 9-16, 21-24, 33-36, 39, and 43 were rejected under 35 USC 103(a) as being unpatentable over US Patent 4,599,841 to Haid in view of US Patent 5,660,016 to Erwin.

As set forth above, claim 1 has been amended to incorporate the subject matter formerly recited by claim 3, which the Examiner has indicated recites allowable subject matter. Rejected claims 2, 4-7, 11-14, 16, and 33 all depend on amended claim 1, and thus are submitted to be patentable over Haid and Erwin for at least the same reasons.

Claim 25 has been amended to place it in independent form by addition of the features of base claim 1, from which it depended. Amended claim 25 thus recites subject matter the Examiner has deemed allowable. Amended claims 22-24 and new claims 44-46 depend from claim 25. As such, they too are submitted to be patentable over Haid and Erwin for at least the same reasons as claim 25.

Independent claim 34 has been amended to incorporate the feature of claim 37, which formerly depended from claim 34. Inasmuch as the Examiner has deemed old claim 37 to recite allowable subject matter, it is respectfully submitted that amended claim 34 and claims 35-36 dependent thereon are likewise allowable over Haid and Erwin. Claim 38 has been cancelled.

Claim 40, which the Examiner deemed to recite allowable subject matter, has been amended to be placed in independent form, incorporating the subject matter of base claim 34, from which it was originally intended to depend. Claims 41-42 and new claims

47-50, being dependent from claim 40, are submitted to be allowable over Haid and Erwin for at least the same reasons as claim 40.

Claim 43 was rejected along with claims 1-2, 4-7, 9-16, 21-24, 33-36, and 39, and without other supporting basis particular to that claim. Claim 43, directed to a method for constructing a decking system, has been amended so that the method employs an anchoring biscuit device of the type formerly recited for the decking system of claim 3, and now set forth in amended claim 1. Inasmuch as the decking system, as now delineated by amended claim 1, has been deemed allowable over Haid and Erwin, it is submitted that the method of amended claim 43 is also allowable for at least the same reasons.

In view of the amendment to claims 1, 7, 14, 16, 18, 19, 22-25, 34, 40, and 43; the cancellation of claims 3, 9-10, 15, 17, 21, and 37-39; and the foregoing remarks, it is respectfully submitted that amended claims 1-2, 4-7, 11-14, 16, 22-24, 33-36, and 43, as well as new dependent claims 44-50, are allowable over Haid and Erwin.

Consequently, reconsideration of the rejection of claims 1-2, 4-7, 9-16, 21-24, 33-36, 39, and 43 under 35 USC 103(a) as being unpatentable over Haid and Erwin is respectfully requested.

### Double Patenting Rejection

Claims 34-36 and 39 were rejected on the ground of nonstatutory, obviousness-type double patenting as being unpatentable over claims 1-12 of US Patent No. 6,402,415 to Eberle in view of Haid.

Inasmuch as claim 34 has been amended to incorporate the limitations of claim 37, which was deemed to recite allowable subject matter, it is respectfully submitted that amended claim 34, along with claims 35-36 dependent thereon, should not be subject to a double-patenting rejection. Claim 39 has been cancelled, mooting its double-patenting rejection.

Accordingly, reconsideration of the rejection of claims 34-36 and 39 on the ground of nonstatutory, obviousness-type double patenting as being unpatentable over claims 1-12 of US Patent No. 6,402,415 in view of Haid is respectfully requested.

## Conclusion

In view of the amendment of the specification; the amendment of claims 1, 7, 14, 16, 18, 19, 22-25, 34, 40, and 43; the cancellation of claims 3, 9-10, 15, 17, 21, and 37-39; and the foregoing remarks, it is respectfully submitted that the present application has been placed in allowable condition. Reconsideration of the art rejection of 1-2, 4-7, 9-16, 21-24, 33-36, 39, and 43; the obviousness-type double patenting rejection of claims 34-36 and 39;  and the objection to claims 40-42; and allowance of claims 21-27, 30-38, together with newly presented claims 44-50, are, therefore, earnestly solicited.

Respectfully submitted,

Harry W. Eberle, III

By

Ernest D. Buff
(His Attorney)
Reg. No. 25,833
(908) 901-0220

# AMENDMENT TRANSMITTAL LETTER

ATTORNEY'S DOCKET NO.:
0247-2 CIP CON

| SERIAL NUMBER: 12/583,702 | FILING DATE: August 24, 2009 | EXAMINER: Mark R. Wendell. | GROUP ART UNIT: 3635 |
|---|---|---|---|

INVENTION:

## EXPANSION COMPENSATING DECK FASTENER

INVENTOR(s):  Harry W. Eberle, III

TO THE ASSISTANT COMMISSIONER FOR PATENTS:
Transmitted herewith is an amendment in the above-identified application.  The fee has been calculated as shown below.

## CLAIMS AS AMENDED

| (1) | (2) CLAIMS REMAINING AFTER AMENDMENT | (3) | (4) HIGHEST NUMBER PREVIOUSLY PAID FOR | (5) NO. OF EXTRA CLAIMS PRESENT | (6) RATE | (7) ADDITIONAL FEE |
|---|---|---|---|---|---|---|
| TOTAL CLAIMS | 42 | MINUS | 43 | 0 | X $25 | $ 0.00 |
| INDEP. CLAIMS | 5 | MINUS | 3 | 2 | X $100 | $200.00 |
| | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT | | $ 200.00 |

\* If the entry in column 2 is less than the entry in column 4, write "0" in column 5.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, write "20" in this space.
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, write "3" in this space.

[ ] No additional fee is required.

[✓] A Check for $  200  is enclosed to cover the fee for the added claims. _____

[ ] The undersigned petitions for a one month time extension for filing this document under 37 C.F.R. 1.136
A Check for $ ___ Is enclosed to cover the fee for this time extension. _____.
A triplicate copy of this sheet is enclosed.

[✓] Charge any additional fees to Deposit Account No. 50-3832

| May 21, 2010 | _signature_ |
| Date | Signature |
| | Ernest D. Buff |
| | Attorney Name |
| (908) 901-0220 | 25,833 |
| Phone | Reg. Number |

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to:  Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on   May 21, 2010 .

(Signature)

Ernest D. Buff
Attorney of Record

May 21, 2010
(Date)

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>12/583,702 | Filing Date<br>08/24/2009 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | SMALL ENTITY ☒ | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) |  | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **05/24/2010** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 41 | Minus | ** 43 | = 0 | X $26 = | 0 | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 7 | Minus | *** 3 | = 4 | X $110 = | 440 | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | OR | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | |
| | | | | | | TOTAL ADD'L FEE | 440 | OR TOTAL ADD'L FEE | |

| | | (Column 1) | (Column 2) | (Column 3) | | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | *** | = | X $ = | | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | OR | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | |
| | | | | | | TOTAL ADD'L FEE | | OR TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/JOSEPHINE DOUGLAS/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

IC-App-0135



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | 0247-2 CIP CON |

**CONFIRMATION NO. 2151**

Ernest D. Buff, Esq.
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921

**PUBLICATION NOTICE**



*OC000000042025400*

Title:Expansion-compensating deck fastener

Publication No.US-2010-0139198-A1
Publication Date:06/10/2010

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

IC-App-0136

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 7590      06/11/2010 | EXAMINER | |
| Ernest D. Buff, Esq. | WENDELL, MARK R | |
| Ernest D. Buff & Associates, LLC | ART UNIT | PAPER NUMBER |
| 231 Somerville Road | 3635 | |
| Bedminster, NJ 07921 | DATE MAILED: 06/11/2010 | |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | 0247-2 CIP CON | 2151 |

TITLE OF INVENTION: EXPANSION-COMPENSATING DECK FASTENER

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 09/13/2010 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

IC-App-0137

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

# PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>

Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

**or** <u>Fax</u> **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

```
                    7590          06/11/2010
Ernest D. Buff, Esq.
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921
```

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | 0247-2  CIP CON | 2151 |

TITLE OF INVENTION: EXPANSION-COMPENSATING DECK FASTENER

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 09/13/2010 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| WENDELL, MARK R | 3635 | 052-403100 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

IC-App-0138

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.     OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | 0247-2 CIP CON | 2151 |

7590        06/11/2010

Ernest D. Buff, Esq.
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921

| EXAMINER |
|---|
| WENDELL, MARK R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3635 | |

DATE MAILED: 06/11/2010

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

IC-App-0139

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

| | Application No. | Applicant(s) | |
|---|---|---|---|
| ***Notice of Allowability*** | 12/583,702 | EBERLE, HARRY W. | |
| | Examiner | Art Unit | |
| | MARK R. WENDELL | 3635 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>5/24/10</u>.

2. ☒ The allowed claim(s) is/are <u>1-2, 4-8, 11-14, 16, 18-20, 22-36, 40-50</u>.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

7. ☐ Examiner's Amendment/Comment

8. ☐ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____.

| | |
|---|---|
| Mark R. Wendell<br>Examiner<br>Art Unit: 3635 | /Richard E. Chilcot, Jr./<br>Supervisory Patent Examiner, Art Unit 3635 |

| | Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| | | 12583702 | EBERLE, HARRY W. |
| | | Examiner | Art Unit |
| | | MARK R WENDELL | 3635 |

| ✓ | Rejected | | - | Cancelled | | N | Non-Elected | | A | Appeal |
|---|---|---|---|---|---|---|---|---|---|---|
| = | Allowed | | ÷ | Restricted | | I | Interference | | O | Objected |

□ Claims renumbered in the same order as presented by applicant    □ CPA    □ T.D.    □ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/26/2010 | 06/03/2010 | | | | | | | |
| 1 | 1 | ✓ | = | | | | | | | |
| 2 | 2 | ✓ | = | | | | | | | |
| | 3 | O | - | | | | | | | |
| 3 | 4 | ✓ | = | | | | | | | |
| 4 | 5 | ✓ | = | | | | | | | |
| 5 | 6 | ✓ | = | | | | | | | |
| 6 | 7 | ✓ | = | | | | | | | |
| 7 | 8 | O | = | | | | | | | |
| | 9 | ✓ | - | | | | | | | |
| | 10 | ✓ | - | | | | | | | |
| 8 | 11 | ✓ | = | | | | | | | |
| 9 | 12 | ✓ | = | | | | | | | |
| 10 | 13 | ✓ | = | | | | | | | |
| 11 | 14 | ✓ | = | | | | | | | |
| | 15 | ✓ | - | | | | | | | |
| 12 | 16 | ✓ | = | | | | | | | |
| | 17 | O | - | | | | | | | |
| 13 | 18 | O | = | | | | | | | |
| 14 | 19 | O | = | | | | | | | |
| 15 | 20 | O | = | | | | | | | |
| | 21 | ✓ | - | | | | | | | |
| 23 | 22 | ✓ | = | | | | | | | |
| 24 | 23 | ✓ | = | | | | | | | |
| 25 | 24 | ✓ | = | | | | | | | |
| 22 | 25 | O | = | | | | | | | |
| 26 | 26 | O | = | | | | | | | |
| 27 | 27 | O | = | | | | | | | |
| 16 | 28 | O | = | | | | | | | |
| 17 | 29 | O | = | | | | | | | |
| 18 | 30 | O | = | | | | | | | |
| 19 | 31 | O | = | | | | | | | |
| 20 | 32 | O | = | | | | | | | |
| 21 | 33 | ✓ | = | | | | | | | |
| 30 | 34 | ✓ | = | | | | | | | |
| 31 | 35 | ✓ | = | | | | | | | |
| 32 | 36 | ✓ | = | | | | | | | |

IC-App-0141

# Index of Claims

| | |
|---|---|
| **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
| 12583702 | EBERLE, HARRY W. |
| **Examiner** | **Art Unit** |
| MARK R WENDELL | 3635 |

| | | | |
|---|---|---|---|
| ✓ Rejected | - Cancelled | N Non-Elected | A Appeal |
| = Allowed | ÷ Restricted | I Interference | O Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/26/2010 | 06/03/2010 | | | | | | |
| | 37 | O | - | | | | | | |
| | 38 | O | - | | | | | | |
| | 39 | ✓ | - | | | | | | |
| 33 | 40 | O | = | | | | | | |
| 34 | 41 | O | = | | | | | | |
| 35 | 42 | O | = | | | | | | |
| 38 | 43 | ✓ | = | | | | | | |
| 28 | 44 | | = | | | | | | |
| 39 | 45 | | = | | | | | | |
| 29 | 46 | | = | | | | | | |
| 36 | 47 | | = | | | | | | |
| 40 | 48 | | = | | | | | | |
| 41 | 49 | | = | | | | | | |
| 37 | 50 | | = | | | | | | |


| | |
|---|---|
| **Application/Control No.**<br><br>12583702 | **Applicant(s)/Patent Under Reexamination**<br><br>EBERLE, HARRY W. |
| **Examiner**<br><br>MARK R WENDELL | **Art Unit**<br><br>3635 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | |
|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | **NON-CLAIMED** |

| ORIGINAL | | | |
|---|---|---|---|
| CLASS | | SUBCLASS | |
| 52 | | 403.1 | |

**CROSS REFERENCE(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | |
|---|---|---|---|---|---|
| 52 | 586.1 | 586.2 | 483.1 | 480 | 650.3 |

**CLAIMED:**

| E | 0 | 4 | F | 15 / 22 (2006.0) |
| E | 0 | 4 | B | 2 / 00 (2006.0) |
| F | 1 | 6 | B | 9 / 00 (2006.0) |

| ☐ | **Claims renumbered in the same order as presented by applicant** | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|---|

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | 17 | 21 | 33 | 41 | 49 | | | | | | | | |
| 2 | 2 | 13 | 18 | 30 | 34 | 37 | 50 | | | | | | | | |
| | 3 | 14 | 19 | 31 | 35 | | | | | | | | | | |
| 3 | 4 | 15 | 20 | 32 | 36 | | | | | | | | | | |
| 4 | 5 | | 21 | | 37 | | | | | | | | | | |
| 5 | 6 | 23 | 22 | | 38 | | | | | | | | | | |
| 6 | 7 | 24 | 23 | | 39 | | | | | | | | | | |
| 7 | 8 | 25 | 24 | 33 | 40 | | | | | | | | | | |
| | 9 | 22 | 25 | 34 | 41 | | | | | | | | | | |
| | 10 | 26 | 26 | 35 | 42 | | | | | | | | | | |
| 8 | 11 | 27 | 27 | 38 | 43 | | | | | | | | | | |
| 9 | 12 | 16 | 28 | 28 | 44 | | | | | | | | | | |
| 10 | 13 | 17 | 29 | 39 | 45 | | | | | | | | | | |
| 11 | 14 | 18 | 30 | 29 | 46 | | | | | | | | | | |
| | 15 | 19 | 31 | 36 | 47 | | | | | | | | | | |
| 12 | 16 | 20 | 32 | 40 | 48 | | | | | | | | | | |

| /MARK R WENDELL/<br>Examiner.Art Unit 3635<br><br>(Assistant Examiner) | 6/3/10<br><br><br>(Date) | **Total Claims Allowed:**<br><br>41 | |
|---|---|---|---|
| /Richard E Chilcot, Jr./<br>Supervisory Patent Examiner.Art Unit 3635<br><br>(Primary Examiner) | 06/04/2010<br><br><br>(Date) | O.G. Print Claim(s)<br><br>1 | O.G. Print Figure<br><br>4a |

| *Search Notes*  | Application/Control No.<br><br>12583702 | Applicant(s)/Patent Under Reexamination<br><br>EBERLE, HARRY W. |
|---|---|---|
| | Examiner<br><br>MARK R WENDELL | Art Unit<br><br>3635 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 52 | 586.1, 586.2, 483.1, 480, 650.3, 403.1 | 4/26/10 | MRW |
| 403 | 231, 232.1, 408.1 | 4/26/10 | MRW |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Consulted Previous Search history in the patent family | 4/26/10 | MRW |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | Consulted Family of Patents and applications | 6/3/10 | MRW |
| | Keyword Search of claims | 6/3/10 | MRW |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 2151**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 12/583,702 | 08/24/2009 **RULE** | 052 | 3635 | 0247-2 CIP CON |

**APPLICANTS**
   Harry W. Eberle III, Califon, NJ;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
   This application is a CON of 10/446,514 05/28/2003 PAT 7,578,105
      which is a CIP of 10/393,100 03/20/2003 PAT 6,851,884

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**\*\* IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\* \*\* SMALL ENTITY \*\***
   09/09/2009

| | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|
| Foreign Priority claimed ☐ Yes ☑ No<br>35 USC 119(a-d) conditions met ☐ Yes ☐ No<br>Verified and Acknowledged /MARK R WENDELL/ Examiner's Signature ☐ Met after Allowance ____ Initials | NJ | 6 | 43 | 3 |

**ADDRESS**

   Ernest D. Buff, Esq.
   Ernest D. Buff & Associates, LLC
   231 Somerville Road
   Bedminster, NJ 07921
   UNITED STATES

**TITLE**

   Expansion-compensating deck fastener

| FILING FEE RECEIVED | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | |
|---|---|---|
| 1363 | | ☐ All Fees |
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

IC-App-0145



# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Application of: | Harry W. Eberle, III | Group Art Unit: | 3635 |
| Serial No.: | 12/583,702 | Examiner: | Mark R. Wendell |
| Filed: | August 24, 2009 | | |
| For: | **EXPANSION-COMPENSATING DECK FASTENER** | | |
| Docket No.: | 0247-2 CIP CON | | |

Bedminster, NJ 07921
June 15, 2010

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

S i r :

## SUBMISSION UNDER 37 CFR 1.312

Subsequent to the issuance of a Notice of Allowance dated June 11, 2010 in the

above-identified application, the following remarks are respectfully submitted:

**Remarks** begin on page 2 of this paper.

This Submission is accompanied by an **Information Disclosure Statement**

enumerating certain patent references and other printed materials.

## REMARKS

Appreciation is expressed for the Notice of Allowance of the present application that was issued on June 11, 2010, wherein the Examiner allowed pending claims 1-2, 4-8, 11-14, 16, 18-20, 22-36, and 40-50.

The present submission is provided to place before the Examiner certain patent references and printed materials.

In particular, the Information Disclosure Statement (Form PTO 1449) that accompanies this submission delineates additional patent references that were cited or part of the record in other applications and proceedings of the present applicant, namely: (i) US Patent Application Serial No. 10/393,100 (Grandparent of the present application, and now US Patent 6,851,884); (ii) US Patent Reexamination Control No. 90/007,770 (reexamination of the Grandparent '884 patent); (iii) US Patent Application Serial No. 10/446,514 (Parent of the present application, and now US Patent 7,578,105); (iv) US Patent Application Serial No. 09/186,741 (now US Patent No. 6,402,415); (v) US Patent Reexamination Control No. 90/007,661 (reexamination of the '415 patent); (vi) US Patent Application Serial No. 08/811,898 (now abandoned, and Parent of the '415 patent); and (vii) US Patent Application Serial No. 10/037,325 (currently pending).

Also set forth on the present Information Disclosure Statement are an invoice for the sale of certain Eb-Ty Fasteners dated August 26, 1997 and an engineering drawing depicting an Eb-Ty Fastener dated June 15, 1997.

USSN: 12/583,702
Docket No.: 0247-2 CIP CON

Applicant respectfully maintains that the Eb-Ty Fasteners that were the subject of the foregoing invoice and the Eb-Ty fastener depicted in the foregoing drawing lack the compressive element delineated by present allowed base claims 1, 25, 34, 40, and 43 and all claims dependent thereon.

Applicant further submits that claims 1-2, 4-8, 11-14, 16, 18-20, 22-36, and 40-50 are all allowable over the references currently of record in the present application and the references contained in the Information Disclosure Statement submitted herewith, whether taken singly or in any combination.

## CONCLUSION

In view of the foregoing remarks, it is respectfully submitted that the present application, as delineated by claims 1-2, 4-8, 11-14, 16, 18-20, 22-36, and 40-50, remains in allowable condition. Entry of the present amendment under Rule 312 and the accompanying Information Disclosure Statement is respectfully requested, together with maintenance of the allowability of claims 1-2, 4-8, 11-14, 16, 18-20, 22-36, and 40-50, are, therefore, earnestly solicited.

Respectfully submitted,

Harry W. Eberle III

By
Ernest D. Buff
(His Attorney)
Reg. No. 25,833
(908) 901-0220

# BLUE HERON ENTERPRISES, L.L.C.　　　INVOICE

**EB-TY™**
P.O. BOX 414
CALIFON, NJ 07830
(908) 832-2075
FAX: (908) 832-5691

| INVOICE # | INVOICE DATE |
|---|---|
| 000010 | 8/26/97 |

SOLD TO:　　GREENHEART DURAWOODS INC.
　　　　　　P.O. BOX 279
　　　　　　665 RT. 9 NORTH
　　　　　　BAYVILLE, NJ 08721 ATT: KEN SPROGE

SHIP TO:　　GREENHEART DURAWOODS INC.　　　　　**TERMS**
　　　　　　665 RT. 9 NORTH　　　　　　　　　　10\NET 30
　　　　　　BAYVILLE, NJ 08721

| PURCHASE ORD. # | DATE ORDERED | PAYMENT DATE | SALESPERSON |
|---|---|---|---|
| ET01 | 8/25/97 | 9/26/97 | GE |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| 20,000 | EB-TY FASTENERS | | |
| | INITIAL INTRO. PRICE | .15 | 3000.00 |

CHECKS PAYABLE TO:　　　　　　SUB TOTAL
BLUE HERON ENTERPRISES, L.L.C.　　SALES TAX

　　　　　　　　　　　　　　　　SHIPPING
　　　　　　　　　　　　　　　　TOTAL　　$3000.00

IC-App-0149

Best Available Copy



LETTERS

2.400

1.000

1/4 LETTERS

R .002

.005 DEEP

120°

.310

1/32 R TYP.

.194-2JIS

.686±1°/SIDE

.102-2JIS

.218

.505

5° TYP.

| Company: EBERLES BUILDERS INC. | | |
|---|---|---|
| Title: | | Sect: |
| Job #10709 | Drawn By: J. | No: |
| Date: 6/15/97 | Scale: FULL | |

JC-App-0150

| FORM PTO-1449 (Rev 2-32) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO: 0247-2 CIP CON | SERIAL NO.: 12/583,702 |
|---|---|---|---|
| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT | APPLICANT: Harry W. Eberle, III | |
| | (Use several sheets if necessary) | FILING DATE: August 24, 2009 | GROUP: 3635 |

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | 186,463 | 1-23-1877 | Dickenson | 52 | 512 | 12/18/1876 |
| | | 466,995 | 1-12-1892 | Abramson | 52 | 385 | 08/07/1890 |
| | | 1,184,080 | 04-23-16 | D'Arcy | 403 | 231 | 12/17/15 |
| | | 1,241,885 | 02-02-17 | Roede | 52 | 714 | 02/24/16 |
| | | 1,714,738 | 05-28-29 | Smith | 52 | 512 | 06/11/26 |
| | | 1,990,001 | 02-05-35 | Rutten | 52 | 250 | 02/01/33 |
| | | 2,201,129 | 05-14-40 | Weiland | 52 | 509 | 08/26/38 |
| | | 2,332,081 | 10-19-43 | Hunt et al. | 52 | 586.1 | 08/06/42 |
| | | 2,337,156 | 12-21-43 | Elmendorf | 52 | 391 | 04/03/41 |
| | | 2,362,252 | 11-07-44 | Ellinwood | 52 | 288.1 | 08/24/42 |
| | | 2,398,603 | 04-16-46 | Soderberg | 411 | 457 | 04/18/45 |

## FOREIGN PATENTS

| | | DOCUMENT NUMBER | DATE | PATENTEE OR APPLICANT | CLASS | SUBCLASS | ABSTRACT |
|---|---|---|---|---|---|---|---|
| | | CA 2287104 | 011901 | Gregori | E04 | B5/02 | Yes |
| | | FR 1217468 | 050460 | Peynichou | E04 | B63/64 | Patent |
| | | EP 863317 | 090990 | Eberle, III | E04 | F15/04 | Yes |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|

Examiner: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

(Form PTO 1449 [6-4])

IC-App-0151

| FORM PTO-1449 (Rev. 2-32) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO: 0247-2 CIP CON | SERIAL NO.: 12/583,702 |
|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | APPLICANT: Harry W. Eberle, III | |
| (Use several sheets if necessary) | | FILING DATE: August 24, 2009 | GROUP: 3635 |

## U.S. PATENT APPLICATION PUBLICATION

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | 2,406,387 | 08-27-46 | Lank | 144 | 347 | 01/07/44 |
| | | 2,526116 | 10-17-50 | Browne | 105 | 423 | 11/11/47 |
| | | 3,045,294 | 07-24-62 | Livezey, Jr. | 52 | 403.1 | 03/22/56 |
| | | 3,319,983 | 05-16-67 | Zibell | 403 | 400 | 12/27/60 |
| | | 3,619,963 | 11-16-71 | Omholt | 52 | 481.1 | 07/31/69 |
| | | 3,705,002 | 12-05-72 | Varlonga | 512 | 213 | 08/06/69 |
| | | 3,890,753 | 06-24-75 | Johansen | 52 | 766 | 03/13/73 |
| | | 4,154,172 | 05-15-79 | Curtis, Jr. | 105 | 422 | 12/09/75 |
| | | 4,449,346 | 05-22-84 | Tremblay | 52 | 509 | 11/12/80 |
| | | 4,641,988 | 02-10-87 | Ganner | 403 | 245 | 09/29/83 |
| | | 4,682,458 | 07-28-87 | Sparrow | 52 | 309.8 | 01/29/86 |

## FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | PATENTEE OR APPLICANT | CLASS | SUBCLASS | ABSTRACT | |
|---|---|---|---|---|---|---|---|---|
| | | JP 404371657A | 12-23-92 | Hashisa | E04 | F13/14 | YES | |
| | | DE 372483 | 03-28-23 | Wothe | E04 | B1/40 | Translation | |
| | | GB 2124672A | 02-22-84 | Sant | E04 | D1/28 | Yes | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

Examiner: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

(Form PTO 1449 [6-4])

**U.S. DEPARTMENT OF COMMERCE**
**PATENT AND TRADEMARK OFFICE**

| ATTY. DOCKET NO:<br>0247-2 CIP CON | SERIAL NO.:<br>12/583,702 |
|---|---|

| INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT | APPLICANT:<br>Harry W. Eberle, III | |
|---|---|---|
| (Use several sheets if necessary) | FILING DATE:<br>August 24, 2009 | GROUP:<br>3635 |

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | 4,716,704 | 01-05-88 | Murr | 52 | 778 | 12/29/86 |
| | | 5,004,027 | 04-02-91 | Legler et al. | 144 | 136.9 | 05/18/90 |
| | | 5,056,286 | 10-15-91 | Bokor | 52 | 483.1 | 09/29/89 |
| | | 5,071,280 | 12-10-91 | Turner | 403 | 232.1 | 09/19/90 |
| | | 5,160,211 | 11-03-92 | Gilb | 403 | 231 | 11/13/90 |
| | | 5,182,891 | 02-02-93 | Slocum | 52 | 480 | 07/20/90 |
| | | 5,243,804 | 09-14-93 | Therrien et al. | 52 | 664 | 03/20/91 |
| | | 5,245,808 | 09-21-93 | Grunewald et al. | 52 | 235 | 02/11/91 |
| | | 5,251,996 | 10-12-93 | Hiller et al. | 403 | 331 | 04/20/92 |
| | | 5,377,732 | 01-03-95 | Fujii et al. | 144 | 37 | 09/23/93 |
| | | 5,419,649 | 05-30-95 | Gilb | 403 | 231 | 02/10/94 |

## FOREIGN PATENTS

| | | DOCUMENT NUMBER | DATE | PATENTEE OR APPLICANT | CLASS | SUBCLASS | ABSTRACT | |
|---|---|---|---|---|---|---|---|---|
| | | DE 4036338 | 060691 | Drischler | E04 | F15/14 | Yes | |
| | | GB 1350754 | 042474 | British Ceramic Res Ass | E04 | F15/02 | Yes | |
| | | JP 07189451 | | Nishida et al. | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|

Examiner: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

IC-App-0153

| FORM PTO-1449<br>(Rev. 2-32) | U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO:<br>0247-2 CIP CON | SERIAL NO.:<br>12/583,702 |
|---|---|---|---|
| INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT | | APPLICANT:<br>Harry W. Eberle, III | |
| (Use several sheets if necessary) | | FILING DATE:<br>August 24, 2009 | GROUP:<br>3635 |

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | 5,458,433 | 10-17-95 | Stastny | 403 | 408.1 | 12/09/94 |
| | | 5,480,117 | 01-02-96 | Fleming, III | 248 | 231.9 | 04/28/94 |
| | | 5,529,428 | 06-25-96 | Bischof | 403 | 408.1 | 06/08/94 |
| | | 5,564,248 | 101596 | Callies | 52 | 702 | 11/10/94 |
| | | 5,603,580 | 021897 | Leek et al. | 403 | 232.1 | 05/30/95 |
| | | 5,619,834 | 041597 | Chen | 52 | 509 | 12/05/95 |
| | | 5,660,016 | 08-26-97 | Erwin et al. | 52 | 483.1 | 07/03/95 |
| | | 5,704,181 | 010698 | Fisher et al. | 52 | 438 | 04/13/95 |
| | | 6,012,256 | 011100 | Aschheim | 52 | 167.1 | 09/06/97 |
| | | 6,402,415 | 06-11-02 | Eberle | 403 | 231 | 11/05/98 |
| | | 6,442,908 | 090302 | Naccarato et al | 52 | 236.8 | 04/26/00 |

## FOREIGN PATENTS

| | | DOCUMENT NUMBER | DATE | PATENTEE OR APPLICANT | CLASS | SUBCLASS | ABSTRACT | |
|---|---|---|---|---|---|---|---|---|
| | | CH 278212 | 101551 | Lowinger | E04 | B1/61 | Patent | |
| | | FR 2647837 | 120790 | Buchet | E04 | F15/04 | Yes | |
| | | FR 1556252 | 020769 | Bois | E04 | F15/04 | Patent | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

Examiner: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

(Form PTO 1449 [6-4])

| FORM PTO-1449<br>(Rev. 2-32) | U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE | | ATTY. DOCKET NO:<br>0247-2 CIP CON | SERIAL NO.:<br>12/583,702 |
|---|---|---|---|---|
| INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT | | | APPLICANT:<br>Harry W. Eberle, III | |
| (Use several sheets if necessary) | | | FILING DATE:<br>August 24, 2009 | GROUP:<br>3635 |

## U.S. PATENT DOCUMENTS

| EXAMINER<br>INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF<br>APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | 6,449,918 | 09-17-02 | Nelson | 52 | 582.1 | 09/14/00 |
| | | 6,460,306 | 10-08-02 | Nelson | 52 | 582.1 | 11/08/99 |
| | | 7,052,200 | 05-30-06 | Harris | 403 | 231 | 09/23/03 |
| | | D331,470 | 12-01-92 | Mitchell et al. | D25 | 156 | 11/16/90 |
| | | D470,039 | 02-11-03 | Pelc | D8 | 382 | 09/24/01 |
| | | D488,373 | 04-13-04 | Eberle, III | D8 | 382 | 05/24/01 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## FOREIGN PATENTS

| | | DOCUMENT NUMBER | DATE | PATENTEE OR APPLICANT | CLASS | SUBCLASS | ABSTRACT | |
|---|---|---|---|---|---|---|---|---|
| | | GB 1,567,008 A | 05-08-80 | Edwards | F16 | B5/00 | Full patent | |
| | | | | | | | | |
| | | | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

Examiner: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

(Form PTO 1449 [6-4])

# PATENT SPECIFICATION

(11) **1 567 008**

(21) Application No. 47415/75    (22) Filed 18 Nov. 1975

(23) Complete Specification Filed 18 Feb. 1977

(44) Complete Specification Published 8 May 1980

(51) INT. CL.³    F16B 5/00

((52) Index at Acceptance

     F2H 35

     E1W JCW

(72) Inventor: JOHN NORMAN EDWARDS



(19)

### (54) IMPROVEMENTS RELATING TO THE INTERCONNECTION OF PANEL STRUCTURES OR THE LIKE

(71) We, PRESCO INTERNATION-AL LIMITED, a British Company of New-town, Montgomeryshire, do hereby declare this invention to be described in the following statement:-

This invention is concerned with improvements relating to the interconnection of panel structures or the like.

In the building industry, that which is known as the Module Building System is widely becoming used. In this system, a wall is provided by a plurality of panel structures secured in side-to-side vertical relationship to upper and lower supporting beams to provide a wall, for example an exterior wall, of the building.

Such panel structures typically comprise a wood frame and a central core of insulating material such as a plastics foam, the frame and core being faced at the front and back with a thin metal skin (e.g. steel or aluminium) or a thin panel of plywood. Typically, such panel structures are nine foot in length and three foot wide.

Whereas by virtue of being secured to the upper and lower supporting beams (which may conveniently be secured to a building roof and floor, respectively) such as by screws passing through the frame and into the beams (if the beams are of wood) adjacent panel structures are restrained against relative vertical movement, it is advantageous to provide locking means to restrain adjoining panel structures, at adjacent side edges thereof, against relative movement in a horizontal direction normal to the plane of the panel structures.

It is desirable that such locking means be easy to remove, to enable one panel structure to be removed from an assembly of adjacent panel structures with minimal difficulty and with minimal interference with the adjacent panel structures. Furthermore, it is a requirement that such locking means should not extend wholly from an outside to an inside face of the panel structures, and should be capable of receiving a trim strip to bridge the gap between adjacent panel structures.

Heretofore such means has in general been satisfactorily achieved only with considerable complication, and/or expense of parts and equipment.

This invention provides a method of interconnecting adjacent panel structures which are secured at their upper and lower end portions to appropriate cross-beams with a gap between adjacent side edges of the panel structures, said method involving the use of a locking member having a stem from one end portion of which a pair of teeth extend generally radially outwardly in opposing directions, and including the steps

(a) inserting said one end portion of the stem between said adjacent side edges, and moving the member into a disposition in which the longitudinal axis of the stem extends generally at right angles to the plane of the panel structures,

(b) rotating the member about the longitudinal axis so that the teeth are driven through the side edges and into the two panel structures.

This invention also provides a locking member suitable for use in carrying out the method set out in the last preceding paragraph and comprising a stem from one end portion of which a pair of teeth extend generally radially outwardly in opposing directions, and which is provided, at an opposite end portion, with means co-operable with a tool to enable the stem to be rotated about its longitudinal axis.

Preferably said pair of teeth extend diametrically outwardly relative to the longitudinal axis of the stem, the distance between outer end portions of the teeth in a first direction at right angles to the longitudinal axis being greater than the width of the gap, and the thickness of the teeth in a

second direction extending at right angles to said first direction and to said longitudinal axis being less than the width of the gap to allow the teeth to be inserted into the gap between the side edges of adjacent panel structures.

If desired, the stem at least at a portion thereof adjacent to said pair of teeth may be of a circular cross-section, of a diameter equal to or marginally smaller than the width of a gap, to minimise rocking movement of the member when in its locking position, and thus to improve the stability of the assembly of panel structures: alternatively, the stem may comprise a portion of polygonal cross-section, the largest distance across said polygon being smaller than the width of the gap.

If desired, the member may comprise a plurality of such pairs of teeth at differing longitudinal positions, all such pairs lying in a longitudinal plane of the stem (that is, extending parallel) to allow all the pairs to be inserted into the gap between the side edges of the adjacent panel structures.

This will provide better resistance to dissimilar movement between adjacent panel structures, and also assists in maintaining the stem equidistant between the two side edges.

Said end portions of the stem remote from the teeth (i.e. that which will be outermost of the panel assembly) and which is provided with means to enable the locking member to be axially rotated by a tool, should allow sufficient force to be exerted to enable the teeth to be driven through the side edges of the two panel structures. If desired, said end portion may be provided by a polygonal formation such as a hexagonal nut portion whereby the member may be engaged by a spanner. Preferably, said end portion of the step opposite the teeth is also provided with means to enable a trim strip of a length sufficient to overlie the entire length of the gap to be clipped thereto (e.g. by a press-stud arrangement).

In use, a plurality (for example, four or five) locking members will be used to secure adjacent structures at spaced intervals along a typical nine foot length. Not only will this provide adequate improvement in the stability of the panel assembly, but also provides a sufficient number of points of attachment of the trim strip to ensure that it is securely retained in a desired position relative to the panel assembly.

Alternatively, said end portion of the stem is provided with a radially outwardly extending head, conveniently provided by diametrically-opposed arms extending parallel with the teeth such that when the membe has been rotated and the teeth have been driven through the side edges of the two panel structures, the arms of the head

extend across the gap. Preferably the arms are longer than the teeth: in this way, when the member has been rotated and the teeth brought into an initial engagement with the side edges of the panel structures, immediately prior to their being driven through the side edges, the arms will at that stage overlie the side faces of panel structures to a small extent, and may thereby define an optimum (e.g. central) position for the teeth in a direction extending through the gap. Thus, on rotation of the member, the head may be retained in engagement with the side faces of the panel structures, and thereby improve the stability of the panel assembly. Preferably the head itself provides means which allows the member to be readily axially rotated with the aid of a tool (such as a spanner or the like) by virtue of its shape, and advantageously itself provides means to enable a trim strip to be clipped thereto.

This invention also provides a locking member for use in the interconnection of adjacent panel structures, said member comprising a stem, a pair of teeth extending generally radially outwardly in opposing directions from the stem adjacent an operative end portion of the member, and a head adjacent an opposite end portion of the member, said head providing means whereby the member may be engaged by a tool and rotated about the longitudinal axis of the stem, and means whereby a trim strip may be clipped to the member. Conveniently the member has a uniform transverse cross-section, and is manufactured by a cropping operation from a continuous extrusion. In use, the operative end portion of the stem and the teeth are inserted into the gap between adjacent panel structures, and by the use of a tool applied to the head, the member is rotated to drive the teeth through the side edges of the panel structures. Preferably the head comprises two arms extending diametrically outwardly of the shank, each being preferably at least substantially parallel to one of the teeth, whereby, when the operative end portion of the member is inserted into the gap, engagement between the head and the outer faces of the panel structures adjacent the side edges thereof may determine the degree of axial extent of the member into the gap: on subsequent rotation of the member, and driving of the teeth through the side edges and into the two panel structures, engagement between the head and the outer faces of the panel structures add to the stability of the interconnection, and thus to the assembly of panel structures.

There will now be given a detailed description to be read with refrence to the drawings accompanying the provisional specification of a locking member which is a preferred embodiment of this invention,

and the use of the locking member in the interconnection of two panel structures. It is to be appreciated that the locking member itself, and the method, have both been selected to illustrate this invention by way of example.

In the drawings accompanying the provisional specification:

*Figure 1* is a perspective view of said locking member; and

*Figure 2* is a horizontal sectional view showing the member in a locking position, interconnecting two adjacent panel structures.

The locking member which is the preferred embodiment of this invention (Figure 1) is conveniently of mild steel, or an aluminium alloy, having been cropped from a continuous extrusion. The member comprises a central stem 2 of generally rectangular cross-section, from one end portion of which (herein referred to as the operative end portion) a pair of teeth 4,4 extend generally radially outwardly, that is in a direction extending at right angles to the longitudinal axis of the stem 2.

Provided at an opposite end portion of the stem 2 is a head 8, comprising two arms 10, 10 extending diametrically outwardly of the stem, each arm 10 being parallel to, and lying in the same radial plane as, one of the teeth 4.

Outer end faces 12, 12 of the two arms 10 are inwardly chamfered, and inside faces of the arms facing the teeth are recessed, as at 14, 14, said recesses extending from the outer faces a short distance towards the longitudinal axis of the stem 2. The arms 10 extend in directions radially of the longitudinal axis somewhat further that the extent of the teeth 4,4.

The locking member is particularly suited for use in the interconnection of two panel structures P1 and P2 (Figure 2), each panel structure comprising a wooden frame F, which bounds a central core C of foam insulating material, a skin S of aluminium sheet facing the front and back of each panel structure.

In the assembly of the panel structures, the two panel structures P1 and P2 are secured at upper and lower end portions thereof respectively to upper and lower cross-beams, in a manner such that a small gap G extends vertically between inside edge faces of the frames F1 and F2 of the panel structures. Upon one side of the panel structurs, a resilient seal R is provided between said side edges.

In the use of the locking member in the interconnection of the panels P1 and P2, said panels are set so that the width of the gap G is less than the distance between outer end portions of the teeth is a first direction $a'a'$ at right angles to the longitu-

dinal axis of the stem, but marginally greater than the thiqkness of the teeth in a second direction $b'b'$ extending at right angles to said first direction and to the longitudinal axis of the shank.

Thus, the operative end portion of the locking member may be inserted into the gap G, with the teeth 4,4 extending generally vertically.

By partial rotation of the member about its longitudinal axis, with said longitudinal axis extending generally horizontally, the teeth 4,4 may be moved into engagement with the side edges of the two panel structures, with the arms 10,10 engaging outside faces of the two panel structures: this allows the operative end portion of the locking member to be inserted into the gap to a controlled amount, to ensure that, for example, the teeth engage portions of the frames F1 and F2 at points generally midway through the thickness thereof.

By the use of an appropriately-shaped tool, the head 8 of the locking member may be engaged, and the locking member rotated about its longitudinal axis to bring the teeth 4,4 and arms 10,10 into generally horizontal positions, which movement involves the driving of the teeth 4,4 through the side edges and into the frames F1 and F2 of the two panel structures. Such interengagement between the frames and the teeth, together with abutment between the head 8 and side faces of the panel structures adjacent the gap, minimises tendency for relative movement to occur between said adjacent panel structures in a horizontal direction extending at right angles to the plane of the assembly of panel structures.

In the practice of said method, it is preferred to use some four or five such locking members for secure adjacent panel structures along a typical nine foot length thereof: if desired, each locking member may comprise several pairs of teeth, each pair being substantially co-planar with the pair 4,4 to improve rigidity of the assembly.

Subsequently a trim strip T, of a similar nine foot length, may be clipped onto the locking members, inwardly-facing lips of the trim strip being received within the recesses 14,14 of the side arms 10,10.

To release the adjacent panel structures, it will be appreciated that it is merely necessary to remove the trim strip T, and to turn each locking member about its longitudinal axis so that the teeth are withdrawn from the frames F1 and F2, allowing retraction of the locking members. When this is done on both sides of one panel structure (e.g. the panel structure P2) said panel structure may be withdrawn from an assembly of such panel structures with no interference with the remaining panel structures. Thus, replacement of any panel structure of

such an assembly may be effected simply and quickly, to allow easy replacement of a panel structure should one become damaged in use, or should it be required to replace one panel structure with a window or door.

WHAT WE CLAIM IS:-

1. A method of interconnecting adjacent panel structures which are secured at their upper and lower end portions to appropriate cross-beams with a gap between adjacent side edges of the panel structures, said method involving the use of a locking member having a stem from one end portion of which a pair of teeth extend generally radially outwardly in opposing directions, and including the steps

(a) inserting said one end portion of the stem between said adjacent side edges, and moving the member into a disposition in which the longitudinal axis of the stem extends generally at right angles to the plane of the panel structures;

(b) rotating the member about the longitudinal axis so that the teeth are driven through the side edges and into the two panel structures.

2. A method according to claim 1 wherein the locking member comprises, at an end portion opposite to said one end portion, means co-operable with the tool to enable the stem to be rotated about its longitudinal axis.

3. A method according to one of claims 1 and 2 wherein the said pair of teeth of said locking member extend diametrically outwardly relative to the longitudinal axis of the member.

4. A method according to any one of the preceding claims wherein the distance between outer end portions of the teeth of the locking member in a first direction at right angles to the longitudinal axis of the stem is greater than the width of the gap, and the thickness of the teeth in a second direction extending at right angles to said first direction and to said longitudinal axis is less than the width of the gap.

5. A method according to any one of the preceding claims where at least a portion of the stem of the locking member adjacent to said pair of teeth is of circular cross-section, of a diameter equal to or marginally smaller than the width of the gap.

6. A method according to any one of claims 1 to 4 wherein the stem of the locking member comprises a portion of polygonal cross-section, the largest distance across the said polygon being smaller than the width of the gap.

7. A method according to any one of claims 2 to 6 wherein said means of the locking member co-operable with the tool is provided by a formation of polygonal cross-section at said opposite end portion of the locking member.

8. A method according to claim 7 wherein said formation is hexagonal.

9. A method according to anyone of claims 2 to 6 wherein the said opposite end portion of the stem is provided with a radially outwardly extending head, said head providing said means co-operable with a tool to enable the stem to be rotated about its longitudinal axis.

10. A method according to claim 9 wherein the head comprises diametrically - opposed arms extending parallel with said pair of teeth.

11. A method according to claim 10 wherein the distance between outer end portions of said arms is greater than the distance between end portions of the teeth.

12. A locking member suitable for use in carrying out the method according to claim 1 and comprising a stem from one end portion of which a pair of teeth extend generally radially outwardly in opposing directions, and which is provided, at an opposite end portion, with means co-operable with a tool to enable the stem to be rotated about its longitudinal axis.

13. A locking member according to claim 12 wherein said pair of teeth extend diametrically outwardly relative to the longitudinal axis of the member.

14. A locking member according to one of claims 12 and 13 wherein the distance between outer end portions of the teeth in a first direction at right angles to the longitudinal axis of the stem is greater than a specific distance, and the thickness of the teeth in a second direction extending at right angles to said first direction and to said longitudinal axis is less than said specific distance.

15. A locking member according to any one of Claims 12, 13 and 14 wherein at least a portion of the stem adjacent to said pair of teeth is of circular cross-section, of a diameter equal to or marginally smaller than said specific distance.

16. A locking member according to any one of Claims 12 to 14 wherein the stem comprises a portion of polygonal cross-section, the largest distance across said polygon being smaller than said specific distance.

17. A locking member according to any one of claims 12 to 16 wherein said means co-operable with a tool is provided by a formation of polygonal cross-section at said opposite end portion.

18. A locking member according to Claim 17 wherein said formation is hexagonal.

19. A locking member according to any one of Claims 12 to 16 wherein said opposite end portion of the stem is provided with a radially outwardly extending head, said

IC-App-0159

head providing the means co-operable with the tool to enable the stem to be rotated about its longitudinal axis.

20.  A locking member according to Claim 19 as appendant to Claim 13 wherein the head comprises diametrically-opposed arms extending parallel with said pair of teeth.

21.  A locking member according to Claim 20 wherein the distance between outer end portions of said arms is greater than the distance between end portions of said teeth.

22.  A locking member according to any one of Claims 12 to 21 comprising a plurality of pairs of teeth at differing positions longitudinally of the stem, all such pairs lying in a longitudinal plane of the stem.

23.  A locking member according to any one of Claims 12 to 22 wherein there is provided at or adjacent said opposite end portion of the stem, means to enable a trimstrip to be clipped to said member.

24.  A locking member for use in the interconnection of adjacent panel structures, said member comprising a stem, a pair of teeth extending generally radially outwardly in opposing directions from the stem adjacent an operative end portion of the member, and a head adjacent an opposite end portion of the member, said head providing means whereby the member may be engaged by a tool and rotated about the longitudinal axis of the stem, and means whereby a trimstrip may be clipped to the member.

25.  A method of interconnecting adjacent panel structures when carried out substantially as hereinbefore described with reference to the drawings accompanying the provisional specification .

26.  A locking member for use in the interconnection of adjacent panel structures, constructed and arranged substantially as hereinbefore described with reference to the drawings accompanying the provisional specificaion.

FORRESTER, KETLEY & CO,
Chartered Patent Agents,
Rutland House,
148 Edmund Street,
Birmingham, B3 2LD.
- and also at -
Forrester House,
52 Bounds Green Road,
London, N11 2EY.
Agents for the Applicants.

Printed for Her Majesty's Stationery Office,
by Croydon Printing Company Limited, Croydon, Surrey, 1980.
Published by The Patent Office, 25 Southampton Buildings,
London, WC2A 1AY, from which copies may be obtained.

IC-App-0160



FIG. 2

FIG. 1

IC-App-0161

RÉPUBLIQUE FRANÇAISE

MINISTÈRE DE L'INDUSTRIE

SERVICE
de la PROPRIÉTÉ INDUSTRIELLE

# BREVET D'INVENTION

P. V. n° 129.047

N° 1.556.252

Classification internationale :

E 04 f

**Parquet bardage voligeage à libre rétractibilité.**

INSTITUT DE RECHERCHES APPLIQUÉES AU BOIS « I.R.A. BOIS » résidant en France (Paris).

Demandé le 21 novembre 1967, à 15ʰ 11ᵐ, à Paris.
Délivré par arrêté du 30 décembre 1968.
(*Bulletin officiel de la Propriété industrielle*, n° 6 du 7 février 1969.)

Ces parquets bardages et voligeages se composent essentiellement de lames de bois de diverses essences et de joints en matière élastique.

Les lames comportent des rainures sur les deux arêtes longitudinales, une rainure à l'une des extrémités et une languette à l'autre extrémité (fig. 1).

Les épaisseurs sont variables : 18 mm pour des voligeages ; 23 mm pour des parquets. La dimension de la rainure dans le cas des parquets de 23 mm d'épaisseur est de 6 mm en hauteur et de 7 mm en profondeur. Les lames ne sont pas dégraissées, c'est-à-dire que les faces des arêtes sont perpendiculaires aux faces apparentes des lames ; la longueur des lames est quelconque.

Les joints sont de section cruciforme et viennent s'emboîter dans les rainures des lames (fig. 2).

La matière qui les compose est : soit un caoutchouc naturel ou un caoutchouc de synthèse du type néoprène, soit une matière plastique du genre polychlorure de vinyle, soit encore du liège aggloméré expansé pur.

La pose de ces parquets bardages ou voligeages se fait sur des supports de bois ou d'autres matériaux, régulièrement espacés.

Les lames sont posées une à une et sont fixées par clouage sur l'ossature. Les clous sont plantés en biais, dans la lèvre inférieure de la rainure d'une seule arête de chaque lame. Les joints sont introduits au fur et à mesure dans les rainures de chaque lame. Le clouage peut être remplacé par un agrafage.

L'assemblage en bout de chaque lame se fait sans joint par bouvetage. La languette peut être remplacée par une fausse languette

de bois. Les lames comportent alors quatre rainures sur chaque arête.

Variante : les joints de section cruciforme peuvent être remplacés par des joints de section polygonale, comme il est indiqué sur la figure 4.

La figure 3 montre la forme de la lame de bois qui compose une rainure destinée à diriger le clou ou l'agrafe de fixation.

Les domaines d'emploi de cette invention sont énumérés ci-dessous, cette énumération n'étant pas limitative.

Parquets : parquet de grande surface et particulièrement parquet de gymnase ;

Bardage et voligeage : également pour de grandes surfaces.

Ces bardages et voligeages peuvent également être appliqués sur des surfaces gauches.

Les bardages peuvent rester apparents.

Les voligeages supportent un matériau de couverture ou une étanchéité.

RÉSUMÉ

Parquet bardage voligeage à libre rétractibilité.

L'invention consiste à interposer entre chaque lame de parquet ou de bardage ou entre chaque volige un joint en matière élastique de section cruciforme ou polygonale et destiné à absorber les variations dimensionnelles du bois au niveau de chaque lame ou volige.

Cette invention a pour objet la possibilité de réaliser de grandes surfaces de parquet, de bardage ou de voligeage, ainsi que la réalisation de bardage ou de voligeage de surfaces gauches.

INSTITUT DE RECHERCHES APPLIQUÉES
AU BOIS « I.R.A. BOIS »

9 210368 7

Pour la vente des fascicules, s'adresser à l'IMPRIMERIE NATIONALE, 27, rue de la Convention, Paris (15ᵉ).

IC-App-0162



Fig. 1.



Fig. 2.



Fig. 3.



Fig. 4.

Echelle

0 1 2 3 4 5 cm

IC-App-0163



Fig. 5.



Fig. 6.

  

Fig. 7.               Fig. 8.

Echelle

0  1  2  3  4  5 cm

IC-App-0164

(19)日本国特許庁（ＪＰ）　　(12) 公 開 特 許 公 報 （Ａ）　　(11)特許出願公開番号

# 特開平4－371657

(43)公開日　平成４年(1992)12月24日

| (51)Int.Cl.⁵ | 識別記号 | 庁内整理番号 | | | F I | 技術表示箇所 |
|---|---|---|---|---|---|---|
| E 0 4 F | 13/14 | 1 0 1 | | 7023－2E | | |
| | 13/08 | 1 0 1 | D | 7023－2E | | |

審査請求　未請求　請求項の数4（全 4 頁）

| (21)出願番号 | 特願平3－242925 | (71)出願人 | 591208799 |
|---|---|---|---|
| | | | 橘田　隆明 |
| (22)出願日 | 平成３年(1991)6月18日 | | 東京都江東区亀戸２－１－１　株式会社チ |
| | | | エンバース建築設計事務所内 |
| | | (72)発明者 | 橘田　隆明 |
| | | | 東京都江東区亀戸２－１－１　株式会社チ |
| | | | エンバース建築設計事務所内 |

(54)【発明の名称】　プレハブ式石張壁及び石板の張設方法

(57)【要約】　　　（修正有）

【目的】構造体に石板を固定すると共に石板相互を連結することができる石板張り用金具を用いて壁面の石張り工事を容易に行なうようにする。

【構成】構造体１１に、石板張り用金具２０を介して四角形の石板の縁面を上下、左右方向に天然又は人工の石板３１を並設して固定した石張壁３０であって、石板張り用金具２０は目地３２の幅に相当する高さと該石板の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて厚み方向に貫通孔を穿孔したスペーサ２２と、中間に貫通孔を穿孔した幅の狭い板状片２３と、スペーサに対して回動自在に板状片を軸支するためのビス２４とよりなり、石板はその縁面に上下及び／又は水平方向に回動する板状体２３がはまり込むことができる半円の溝３３を刻設したものよりなる。



IC-App-0165

（内容省略）

3

ンクリート外張りへのタイル張りは、軽量発泡コンクリートとタイル接着用モルタルとの接着が完全でないので、タイルが剥がれ、施工法の問題点が多く指摘されてきた。また、既設の軽量発泡コンクリート外壁に石板を張る場合には、軽量発泡コンクリートと接着用モルタルとの接着が完全でないし、軽量発泡コンクリートそのものに石板を支持するだけの耐入力がないので、既設の軽量発泡コンクリート壁面に石板を張ることは、困難であった。

【0002】
【発明が解決しょうとする課題】前記した従来の方法では、石張りの工事現場においては、上記のような大きな問題点があった。本発明はこのような問題点を解消するものであって、コンクリート壁又は既設の軽量発泡コンクリート壁に設置した縦筋、横筋、又は板状物などの構造体に石板を張ると共に石板相互を連結することができる石板張り用金具を用いた石板壁、及びこの金具を用いることによって新築の又は既設の壁面に石張り工事が容易に行なうことができ、工期も大幅に短縮できる工法を提供することにある。

【0003】
【課題を解決するための手段】第一の本発明は、軽量又は重量鉄骨製の枠柱と該杆柱の間に張設した枠材よりなる枠又はこの枠に固定した板状物よりなる構造体11に、石板張り用金具20を介して四角形の石板の裏面を上下、左右方向に天然又は人工の石板31を並設して固定した石張壁30であって、該石板張り用金具20は目地32の幅に相当する高さと該石板の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて厚み方向に貫通孔21を穿孔した幅の狭い板状片23と、スペーサに対して回動自在に板状片を軸支するための、多角形の頭部、又は−若しくは+の溝を刻設した頭部241と先端に中間つなぎ材への牡ねじのような固定手段242を有する軸とからなるビス24よりなり、該石板はその裏面に上下及び/又は水平方向に回動する板状体23がはまり込むことを特徴とする半円の溝33を刻設したものよりなりを特徴とする石張壁30である。第一の本発明において、既設の軽量発泡コンクリート外壁10に差し筋を掘り込みアンカーによって軽量又は重量鉄骨製の縦筋を設け、次いでこの縦筋の間に横筋又は中間つなぎ材を設け、形成された枠又はこの枠に厚みのある合板などの板状物を固定して構造体11を設置する。石板張り用金具20は目地32の幅に相当する高さと該石板の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて厚み方向に貫通孔21を穿孔したスペーサ22と、中間に貫通孔を穿孔した幅の狭い板状片23と、スペーサ22に対して回動自在に板状片23を軸支するための、多角形の頭部、又は−若しくは+の溝を刻設した頭部241と先端に中間つなぎ材への牡ねじのよ

4

うな固定手段242を有する軸とからなるビス24とよりなっている。石板31はグラインダーを用いてその裏面に目地の方向に対してほぼ90度だけ回動して石張り用金具の板状体23がはまり込むことができる半円の溝33を刻設したものである。第二の本発明は、軽量又は重量鉄骨製の枠柱と該杆柱の間に張設した中間つなぎ材よりなる枠又はこの枠に固定した板状物よりなる構造体11に、石板張り用金具20を介して四角形の天然又は人工の石板31を並設して固定したプレハブ式石張壁であって、該石板張り用金具20は目地32の幅に相当する高さと該石板31の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて厚み方向に貫通孔21を穿孔したスペーサ22と、中間に貫通孔を穿孔した幅の狭い板状片23と、スペーサ22に対して回動自在に板状片23を軸支するための、多角形の頭部、又は−若しくは+の溝を刻設した頭部241と先端に中間つなぎ材への牡ねじのような固定手段242を有する軸とからなるビス24よりなり、該石板はその裏面に上下及び/又は水平方向に回動する板状体23がはまり込むことができる半円の溝33を刻設したものよりなることを特徴とするプレハブ式石張壁部材である。第三の本発明は、軽量又は重量鉄骨製の枠柱と該杆柱の間に中間つなぎ材を張設し、形成された枠又はこの枠に板状体を固定した構造物11に石張り用金具20を介して四角形の天然又は人工の石板31の裏面を上下及び/又は左右方向に並設して天然又は人工の石板31を軽量又は重量鉄骨製の枠に張設する方法において、その裏面に上下及び/又は水平方向に回動する板状体23がはまり込むことができる半円の溝を刻設した石板31に、目地32の幅に相当する高さと該石板の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて水平方向に貫通孔21を穿孔したスペーサ22と、中間に貫通孔を穿孔した幅の狭い板状片23と、スペーサ22に対して回動自在に板状片23を軸支するための、多角形の頭部、又は−若しくは+の溝を刻設した頭部241と先端に中間つなぎ材への牡ねじのような固定手段242を有する軸とからなるビス24よりなる石板張り用金具20を介在させ、該ビス24を該枠、該中間つなぎ材、又は板状体23に係止し、ついで該石板の裏面に刻設した半円の溝に板状体23を回動させてはまり込ませて上下及び/又は水平方向に該石板を並設し、形成された該石板の目地32にコーキングシール34を施すことを特徴とする石板の張設方法である。

【0004】
【実施例】まず、既設の建造物の軽量発泡コンクリート製外壁10に差し筋を設け、これに縦筋を溶接などの手段によって固着し、更に溶型鋼を用いて横筋11を設ける。横筋の間には木製の中間つなぎ材を張設する。一方、所定の厚みと大きさの石板31を用意する。各々の

IC-App-0167

5

石板の縁の四方に所定の位置にグラインダーを用いて石
板張り用金具20の板状体23が90度だけ回動してはま
りこむことができる半円の溝33を設ける。次に、石
板の一段目の目地32に相当する水平線上とそれに対し
て垂直の線上に石板張り用金具20を石板31のそれぞ
れの溝に一致するところにビス24止めする。石板張り
用金具20の板状体23を90度だけ回しこれを石板
のそれぞれの溝に嵌め込み、この板状体を介して四角形
の天然又は人工の石板31の裏面を上下、及び／又は左
右方向に並設するとともに石板31を横筋11、中間つ
なぎ材に固定する。目地にはシーリング材を充填して既
設の軽量発泡コンクリート壁10への石板31の張設工
事を完了していく。同じ手順で2階部分、3階部分へと順
次、軽量発泡コンクリート外壁10への石板31の張設
工事を完了していく。

【0005】
【発明の効果】従来のようにだぼと引き金具を用いる場
合には、だぼと引き金具のための穴を石板の裏面に穿設
しなければならないが、本発明によれば、本発明の石張
り用金具を用いることによって、（1）石板の裏面に穿
設する穴の数を少なくすることができる、（2）コンク
リート壁又は既設の軽量発泡コンクリート壁に設置した

6

縦筋、横筋、又は板状物などの構造体に石板を固定する
と共に石板相互を連結することができ、かつ構造体と石
板の裏面の固定用の溝との間の間隔を自由にとることが
できる、（3）新築の又は既設の壁面に石張り工事を容
易に行なうことができ、工期も大幅に短縮できる、
（4）手間がかからずに石板壁又はプレハブ式石板壁部
材を製造できるなど、本発明は優れた効果を奏する。

【0006】
【図面の簡単な説明】
第1図は石張り用金具の斜視図、第2図は石板を壁面に
設けた構造体（横筋）に固定するとともに上下、左右に
並設する前め状態の説明図、第3図は石板を壁面に設け
た構造体（横筋）に固定するとともに上下、左右に並設
した状態の説明図である。
【図1】斜視図
【図2】断面図
【図3】断面図
【符号の説明】
10：軽量発泡コンクリート壁　11：構造体（横筋）
20：石板張り用金具　21：貫通孔　22：スペーサ
23：板状体　24：ビス　31：石板　32：目地
33：半円の溝　34：シーリング材

**【図1】**



**【図2】**



**【図3】**



IC-App-0168

PAT-NO:                   JP404371657A

DOCUMENT-IDENTIFIER:      JP 04371657 A

TITLE:                    PREFABRICATED STONE VENEER WALL AND METHOD FOR
ATTACHING

                          STONE BOARD

PUBN-DATE:                December 24, 1992


INVENTOR-INFORMATION:
NAME
HASHIDA, TAKAAKI


ASSIGNEE-INFORMATION:
NAME                                    COUNTRY
HASHIDA TAKAAKI                         N/A


APPL-NO:      JP03242925

APPL-DATE:    June 18, 1991


INT-CL (IPC):  E04F013/14, E04F013/08

ABSTRACT:

    PURPOSE: To perform an attachment work of stone boards of a wall
with ease
by fixing stone boards to a structural body and using a fitting for
attaching
stone boards which can connect stone boards to each other.

    CONSTITUTION: In a stone veneer wall 30 wherein natural or
artificial stone
**boards** 31 having square edge surfaces are parallely placed and fixed
on a
structural body 11 through a fitting 20 for attaching stone board in
the
vertical and left-right directions, the fitting 20 has a
configuration of a
cube or rectangular having a height corresponding to the width of a
joint 32
and a width narrower than two thrids of the thickness of the stone
board and

IC-App-0169

comprises a **spacer** 22 having a through hole bored in the thickness direction, a
plate-like piece 23 having a narrow width and a through hole provided in the
middle thereof, and a screw 24 for rotatably supporting the piece 23 with
respect to the **spacer**.  The stone board has a semicircular **groove** 33 on its
edge surface for engagement with the piece 23 which rotates in the vertical
and/or horizontal direction.

COPYRIGHT: (C)1992,JPO&Japio

# DECKING ASSEMBLY AND DECKING KIT WITH HOLD-DOWN CLIP

**Publication number:** CA2287104 (A1)

**Publication date:** 2001-01-19

**Inventor(s):** GREGORI KARL HERMANN WERNER [CA] +

**Applicant(s):** GREGORI KARL HERMANN WERNER [CA] +

**Classification:**

- **International:** *E04B5/02; E04B5/12; E04F15/10;* E04B5/02; E04B5/12; E04F15/10; (IPC1-7): E04B1/38; E04B5/12; E04B5/14; F16B1/00

- **European:** E04B5/02; E04B5/02P; E04B5/12; E04F15/10

**Application number:** CA19992287104 19991025

**Priority number(s):** US19990356749 19990719

**Also published as:**

US2002059766 (A1)

Abstract of **CA 2287104 (A1)**

A decking assembly and decking kit with hold-down clip are disclosed. The decking assembly includes a supporting substructure, first and second lengthwise extending boards with lips extending outwardly and upwardly away from a side thereof and at least one hold-down clip having two downwardly extending tabs which engage the lips of adjacent boards to fix the boards to the substructure. The decking kit includes at least two su ch boards and at least one such clip, and may additionally include a fastener, such as a scre w, and a screwdriver bit.



Data supplied from the *espacenet* database — Worldwide

RÉPUBLIQUE FRANÇAISE

MINISTÈRE DE L'INDUSTRIE

SERVICE
de la PROPRIÉTÉ INDUSTRIELLE

# BREVET D'INVENTION

P.V. n° 787.524

N° 1.217.468

Classif. internat. : B 63 *b* — B 64 *c* — E 04 *f*

## Dispositif de fixation et de raccordement d'éléments de revêtement.

M<sup>me</sup> PEYNICHOU, née GISÈLE-MARIE-FRANÇOISE GABAUD, résidant en France (Seine-et-Oise).

**Demandé le 24 février 1959, à 11ʰ 8ᵐ, à Paris.**
Délivré le 7 décembre 1959. — Publié le 4 mai 1960.

On connaît de nombreux procédés pour le revêtement des surfaces extérieures ou intérieures des bâtiments (en particulier des pièces destinées à l'habitation, des cabines de bateaux ou d'avions, etc...), mais ils sont généralement peu satisfaisants. Actuellement, ces revêtements sont fixés sur les parois à recouvrir par différents systèmes : lait de ciment, plâtre, colle plastique, adhésif à base de caoutchouc, etc... Ils ne permettent pas d'assurer une parfaite étanchéité entre la surface intérieure et la surface extérieure. Très souvent, ils sont d'une application délicate, et de plus, ils augmentent dans des proportions sensibles, le prix de revient au mètre carré du revêtement; enfin, ils donnent une garantie de solidité toute relative, du fait même que les opérations délicates qu'ils requièrent pour leur application doivent être confiées, par manque de personnel qualifié, à une main-d'œuvre non expérimentée. La présente invention a pour but de remédier à ces défauts en permettant la réalisation d'un ensemble assurant une étanchéité parfaite, une solidité absolue, une pose facile et rapide.

Cette invention a pour objet, un dispositif de fixation et de raccordement d'éléments de revêtement qui peut prendre différentes formes, simples ou complexes, ainsi que nous le verrons plus loin, mais le principe de fixation et de raccordement reste constant. L'ensemble de l'invention se compose, d'une part, d'éléments de revêtement qui se présentent sous la forme de panneaux (en bois, en contreplaqué, en plastiques, en métaux, etc.) dont la surface est plane ou courbe, mais dont les bords qui devront être assemblés ont subi un usinage spécial; d'autre part, d'éléments de raccordement se présentant sous la forme de profilés continus ou de pièces moulées de formes spéciales, s'emboîtant dans les tranches des panneaux à raccorder. Ces éléments de raccordement peuvent, en plus, être utilisés à d'autres fins, concourantes au but poursuivi, par exemple : décoration ou transport d'énergie, sans que pour cela on sorte du cadre de l'invention. Cet élément de raccordement est constitué de telle façon que l'on puisse le fixer rapidement et solidement sur n'importe quelle surface et quelle

qu'en soit la nature : bois, pierre, ciment, plâtre, aggloméré, métaux, etc...

L'idée de base de cette invention est la suivante : une pièce dite élément de raccordement, comportant une ou plusieurs séries de deux tenons, sert de joint entre deux pièces dites éléments de revêtement, comportant chacune une ou plusieurs mortaises sur leurs bords. Le nombre de tenons de chaque côté de l'axe de symétrie de la pièce de raccordement étant égal au nombre de mortaises de chaque élément de revêtement, leur section se correspondant. La forme de la pièce de raccordement est telle qu'elle permet, d'une part, le jointement des éléments de revêtement, d'autre part, leur fixation sur une paroi. Dans le cas le plus simple, la coupe de la pièce de raccordement a une section en forme de Té. L'examen des dessins en annexe, complète et facilite la compréhension de l'invention. Les fig. 1 à 8 donnent l'allure générale des formes utilisées pour le raccordement des éléments de revêtement, sans pour cela les limiter à ces profils exclusivement. L'adhérence du panneau 1 sur son support 2 est assurée par la présence d'un ou de plusieurs tenons 3 et 11 sur le profilé, s'emboîtant dans une ou plusieurs mortaises 4 et 12 sur les rives des panneaux à assembler. L'étanchéité obtenue est parfaite grâce à la forme spéciale des éléments en présence, néanmoins, lorsqu'il n'est pas nécessaire, on peut remplacer, pour des raisons de prix de revient, le profilé continu, soit par de petites longueurs de celui-ci, placées à distance convenable, soit encore par des pièces moulées placées dans les mêmes conditions. Un certain jeu, nécessaire au montage facile des pièces est prévu, sa valeur varie selon la nature des matériaux en présence.

La forme du profilé peut varier dans de grandes proportions suivant l'épaisseur et la nature des plaques à réunir. Il peut être réalisé en matière souple ou rigide, traditionnelle ou synthétique, il peut également être plein ou creux, suivant le procédé de fabrication et la résistance demandée. Le profilé utilisé pour le montage des panneaux peut être fixé directement sur la paroi à recouvrir, si

**Prix du fascicule : 1 NF**

IC-App-0172

— 2 —

elle est plane et en bon état, ou au contraire, sur une armature de chevrons, de demi-chevrons ou de lattes recouvrant la paroi, en particulier, si l'on veut réaliser une isolation thermique ou phonique.

La fig. 9 représente un ensemble d'éléments de revêtement 1, fixés à l'aide de l'élément de raccordement 2, maintenu par des clous 7, sur des tasseaux en bois 6. Les tasseaux seront posés à l'aide de vis dans des chevilles logées dans le mur 5;

La fig. 10 donne le détail de la fixation d'une longueur du profilé. En coupe, on peut voir deux éléments de revêtement 1 qui sont réunis par un élément de fixation 2, ce dernier étant traversé en oblique par une pointe 7 pénétrant dans la paroi 5. Suivant la nature du matériau constituant le profilé de fixation, les trous de passage des clous ou des vis seront réalisés soit par le clou ou la vis (cas du plastique) soit percés d'avance (cas du métal). La raison du pointage oblique est la suivante : la force de traction produite par le poids des éléments agissant normalement à la surface, ne peut chasser le clou de son logement. Le point de percement de la paroi par le clou se trouve sur l'axe de symétrie du profilé, de façon que les efforts résultant sur les deux côtés du profilé soient répartis également;

La fig. 11 montre en variante la fixation d'un élément de raccordement métallique dans lequel on a incorporé une baguette en bois pour éviter l'écrasement;

La fig. 12 montre qu'il est possible d'utiliser des cales de formes arrondies sur lesquelles vient se fixer le profilé, ce qui permet de réaliser des angles arrondis;

La fig. 13 représente une pièce de raccordement d'angle 9 permettant la fixation de trois panneaux situés dans trois plans, à angle droit les uns des autres. Sur le dessin, le plafond est supposé enlevé;

La fig. 14 représente une pièce permettant le raccordement de quatre panneaux situés dans le même plan. La fixation de la pièce de raccordement 10 se fait par des vis ou des clous 7 placés dans les trous obliques 8. Il est possible que cette pièce assure seule la fixation d'éléments de revêtement de petite taille (15 cm×15 cm), voir fig. 15. Combinée par le profilé décrit précédemment (fig. 1 à 8) elle permet la fixation de panneaux de grandes dimensions, dont la taille n'est limitée que par la difficulté de fabrication de ceux-ci, ou par la difficulté d'obtenir des panneaux qui ne fléchissent pas sous l'influence de leur propre poids;

Sur les fig. 16, 17, 18, 19, on verra un certain nombre de profilés permettant le raccordement d'angles. D'autres formes sont également possibles, toutes utilisant le principe de l'invention décrit plus haut;

La fig. 20 montre qu'il est possible, en utilisant des profilés de raccordement décrits plus haut, de créer un réseau de distribution d'énergie, de façon

très pratique. Il suffit pour cela d'incorporer dans le profilé 2 des conducteurs 13. La fixation s'opérant de la même façon, par l'intermédiaire des pointes ou des vis 7 passant dans les trous 8 du profilé. Les appareils électriques annexes peuvent être fixés sur les panneaux à l'aide des pièces inspirées de celles décrites plus haut;

La fig. 7 montre que l'on peut utiliser le profilé de raccordement à des fins décoratives, en lui donnant la forme indiquée sur cette figure, à titre d'exemple non limitatif. On peut ne pas tailler les mortaises, mais rapporter un profilé les remplaçant comme il est indiqué sur la fig. 7.

Le montage d'éléments de revêtement à l'aide du dispositif de raccordement et de fixation faisant l'objet de la présente invention est très simple. Il suffit de fixer dans l'angle de la pièce dont on désire recouvrir les murs, par exemple, un profilé d'angle (fig. 17 ou 19) à l'aide de clous ou de vis, on vient alors engager dans le tenon de ce profilé la mortaise correspondante, existant dans la rive du premier panneau de revêtement. Ce panneau étant, à son tour, fixé par l'intermédiaire d'un profilé de raccordement dont la section correspond à la section de la rive. Ce profilé servant à son tour de point de départ pour le panneau suivant. Il n'y a pas d'ordre à suivre pour le revêtement des murs, la surface ainsi recouverte ne laissant pas apparaître, à l'œil, de solution de continuité.

Les dispositifs de fixation précédemment énoncés, peuvent être réalisés à l'aide de moyens de fabrication connus, tels que : extrusion, moulage, profilage à froid, dans différents matériaux, tels que : bois, métaux (aluminium, alliage d'aluminium), acier normal ou inoxydable, laiton, bronze, etc...), matières plastiques (polystyrène, polychlorure de vinyle, polyamides, polyesters, polyacryliques, acétate de cellulose, etc...) et tout autre matériau pouvant apporter à la présente invention des caractéristiques mécaniques améliorées.

On a réalisé, à titre d'exemple, des profilés en aluminium destinés à la fixation de panneaux de polyester armé, existant dans le commerce, dont les bords avaient été usinés comme il a été indiqué plus haut. Les panneaux avaient une épaisseur de 6 mm et portaient une seule rainure et deux languettes de longueur différente. Par rapport à la languette la plus longue, la rainure avait une largeur de 2 mm et une profondeur de 8 mm. La languette la plus courte avait une largeur de 2 mm et une longueur de 4 mm par rapport au fond de la rainure. Le profilé destiné à la fixation avait une aile de chaque côté d'un plan de symétrie et présentait donc une section de la forme de deux rectangles superposés. Le rectangle supérieur avait une longueur de 15,5 mm et une largeur de 2 mm; les angles portaient un chanfrein de 0,2×0,2 mm. Le rectangle inférieur avait une largeur de 7,5 mm

et une épaisseur de 2 mm. La tolérance positive permettant une parfaite étanchéité des différents éléments. Le même profilé a été réalisé en polychlorure de vinyle ce qui lui donne un avantage sur le profilé de métal : l'élasticité, qui augmente encore l'étanchéité. Ces deux réalisations ont donné complète satisfaction.

## RÉSUMÉ

Un profilé de raccordement apporte une solution originale et rapide à tout problème de fixation d'éléments de revêtement : étanchéité absolue, décoration parfaite, confort et propreté, telles sont les garanties de ce nouveau dispositif de fixation et de raccordement d'éléments de revêtement.

Le principe fondamental de l'invention est le suivant. Une pièce dite élément de raccordement comportant une ou plusieurs séries de deux tenons sert de joint entre deux pièces dites éléments de revêtement, comportant chacune une ou plusieurs mortaises sur leurs bords destinés à être assemblés. Le nombre de tenons de chaque côté de l'axe de symétrie de la pièce de raccordement étant égal au nombre de mortaises de chaque élément de revêtement, leur section se correspondant. Dans le cas le plus simple, la coupe de la pièce de raccordement a une section en forme de Té, et les bords du panneau de revêtement sont creusés d'une mortaise qui délimite deux languettes de longueur différente. La plus longue, sur le recto du panneau de revêtement est jointive à la languette correspondante, se trouvant sur le bord du panneau à raccorder. La plus courte, sur le verso, est jointive au profilé de fixation. La forme de la pièce de raccordement est telle qu'elle permet d'une part, le jointement des éléments de revêtement, d'autre part, leur fixation sur une paroi.

M$^{me}$ PEYNICHOU,
née GISÈLE-MARIE-FRANÇOISE GABAUD.

rue du Réveillon, 35. Brunoy (Seine-et-Oise)

IC-App-0174



Fig. 15

Fig. 17

Fig. 19

Fig. 20

Fig. 14

Fig. 16

Fig. 18

Fig. 9

Fig. 11

Fig. 10

Fig. 13

Fig. 12

Fig. 2

Fig. 4

Fig. 6

Fig. 8

Fig. 1

Fig. 3

Fig. 5

Fig. 7

IC-App-0175



Fig. 1

Fig. 2

Fig. 9

Fig. 3

Fig. 4

Fig. 10

Fig. 5

Fig. 6

Fig. 7

Fig. 8

Fig. 12

IC-App-0176



Fig. 9

Fig. 14

Fig. 15

Fig. 11

Fig. 16

Fig. 17

Fig. 13

Fig. 18

Fig. 19

Fig. 20

Fig. 12

## Anchoring biscuit device for joining two adjacent boards

| | | | |
|---|---|---|---|
| **Publication number:** | EP0863317 (A2) | **Also published as:** | |
| **Publication date:** | 1998-09-09 |  EP0863317 (A3) | |
| **Inventor(s):** | EBERLE HARRY W III [US] + | | |
| **Applicant(s):** | EBERLE HARRY W III [US] + | | |
| **Classification:** | | | |
| - International: | E04F15/04; F16B12/02; F16B12/04; E04F15/04; F16B12/00; (IPC1-7): F16B12/02; F16B12/04 | | |
| - European: | | | |
| **Application number:** | EP19980301644 19980305 | | |
| **Priority number(s):** | US19970811898 19970305 | | |

Abstract of **EP 0863317 (A2)**

An anchoring biscuit device for joining boards, including a horizontal top element having a generally biscuit-shaped top view configuration, at least one vertical support member attached to the underside of the top element and extending downwardly for a predetermined length to place the top element at a predetermined height for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and, an attachment component attached to at least one of the top element and the vertical support member for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. The present invention is also an anchoring half-biscuit device for joining two boards located at right angles to one another. It includes a first substantially flat horizontal top element having a generally half-biscuit-shaped top view configuration, at least one substantially vertical support member, at least one horizontal extended member extending outwardly from the vertical support member and an attachment component.

Data supplied from the *espacenet* database — EP

IC-App-0178

(19)日本国特許庁（JP） (12) 公開特許公報（A） (11)特許出願公開番号

特開平4−371657

(43)公開日 平成4年(1992)12月24日

| (51)Int.Cl.⁵ | | 識別記号 | 庁内整理番号 | FI | 技術表示箇所 |
|---|---|---|---|---|---|
| E04F | 13/14 | 101 | 7023−2E | | |
| | 13/08 | 101 D | 7023−2E | | |

審査請求 未請求 請求項の数4（全 4 頁）

(21)出願番号 特願平3−242925

(22)出願日 平成3年(1991)6月18日

(71)出願人 591208799
橋田 隆明
東京都江東区亀戸2−1−1 株式会社チ
エンパース建築設計事務所内
(72)発明者 橋田 隆明
東京都江東区亀戸2−1−1 株式会社チ
エンパース建築設計事務所内

(54)【発明の名称】 プレハブ式石張壁及び石板の張設方法

(57)【要約】 （修正有）
【目的】構造体に石板を固定すると共に石板相互を連結
することができる石板張り用金具を用いて壁面の石張り
工事を容易に行なうようにする。
【構成】構造体11に、石板張り用金具20を介して四
角形の石板の繰面を上下、左右方向に天然又は人工の石
板31を並設して固定した石張壁30であって、石板張
り用金具20は目地32の幅に相当する高さと該石板の
厚さのほぼ三分の二より幅の狭い立方体又は直方体の形
状をしていて厚み方向に貫通孔を穿孔したスペーサ22
と、中間に貫通孔を穿孔した幅の狭い板状片23と、ス
ペーサに対して回動自在に板状片を軸支するためのビス
24とよりなり、石板はその繰面に上下及び／又は水平
方向に回動する板状体23がはまり込むことができる半
円の溝33を刻設したものよりなる。



IC-App-0179

PAT-NO:                    JP404371657A

DOCUMENT-IDENTIFIER:    JP 04371657 A

TITLE:              PREFABRICATED STONE VENEER WALL AND METHOD FOR ATTACHING

                    STONE BOARD

PUBN-DATE:              December 24, 1992

INVENTOR-INFORMATION:
NAME
HASHIDA, TAKAAKI

ASSIGNEE-INFORMATION:
NAME                                    COUNTRY
HASHIDA TAKAAKI                         N/A

APPL-NO:        JP03242925

APPL-DATE:      June 18, 1991

INT-CL (IPC):  E04F013/14, E04F013/08

ABSTRACT:

   PURPOSE: To perform an attachment work of stone boards of a wall with ease
by fixing stone boards to a structural body and using a fitting for attaching
stone boards which can connect stone boards to each other.

   CONSTITUTION: In a stone veneer wall 30 wherein natural or artificial stone
boards 31 having square edge surfaces are parallely placed and fixed on a
structural body 11 through a fitting 20 for attaching stone board in the
vertical and left-right directions, the fitting 20 has a configuration of a
cube or rectangular having a height corresponding to the width of a joint 32
and a width narrower than two thrids of the thickness of the stone board and

IC-App-0180

comprises a **spacer** 22 having a through hole bored in the thickness direction, a
plate-like piece 23 having a narrow width and a through hole provided in the
middle thereof, and a screw 24 for rotatably supporting the piece 23 with
respect to the **spacer**. The stone board has a semicircular **groove** 33 on its
edge surface for engagement with the piece 23 which rotates in the vertical
and/or horizontal direction.

COPYRIGHT: (C)1992,JPO&Japio

IC-App-0181

DEUTSCHES REICH



AUSGEGEBEN
AM 28. MÄRZ 1923

REICHSPATENTAMT

# PATENTSCHRIFT

— № 372483 —

KLASSE **37b** GRUPPE 5

(W 60710 V|37b)

Arnold Wothe in Markt-Oberdorf, Allg.

Schraubenunterlagsplatte für Holzverbindungen.

———

PTO 2001-1463

S.T.I.C. Translations Branch

BEST AVAILABLE COPY

IC-App-0182

BEST AVAILABLE COPY

GERMANY 24. der Patentschrift 37048
Kl 37b Gr 5



Abb. 1.

Abb. 2.

Abb. 3.

IC-App-0183

BEST AVAILABLE COPY

872483

## Arnold Wothe in Markt-Oberdorf, Allg.

### Schraubenunterlagsplatte für Holzverbindungen.

Patentiert im Deutschen Reiche vom 14. März 1922 ab.

In der Holzindustrie kommt es oft vor, daß auf breites nicht gesperrtes Querholz mittels Holzschrauben Langholz zu befestigen ist. Wenn nun das Querholz nicht reißen soll, wird gewöhnlich das Loch für die Schraube als Schlitz ausgebildet, damit die Schraube sich in diesem Loch bewegen kann. Dies ist aber meist nicht der Fall, da sich der Schraubenkopf in dem Langholz verbeißt. Die vorliegende Erfindung soll diesem Übelstand abhelfen. Dazu wird für die Schraube eine Unterlagscheibe vorgesehen, durch deren Schlitz die Schraube hindurchgeht, während der Kopf der Schraube auf der Platte gleitet, sich also in das Holz nicht verbeißen kann. Die Zeichnung veranschaulicht die Erfindung in einem Ausführungsbeispiel, und zwar zeigen die Abbildungen 1 und 2 im

Schnitt und im Grundriß, wie ein Querholz $a$ mit dem Langholz $b$ durch die Schraube $c$ verbunden ist. $e$ bedeutet das Schlitzloch, in dem sich die Schraube beim Arbeiten des Querholzes bewegen kann. Abb. 3 zeigt die Gleitplatte. Der Kopf der Schraube $c$ liegt auf der Platte $d$ auf und gleitet auf dem Metall. Ein Verbeißen des Schraubenkopfes ist ausgeschlossen.

### PATENT-ANSPRUCH:

Verbindung von Langholz mit Querholz durch Schrauben, welche in Langlochbohrungen der Hölzer eingelassen sind, gekennzeichnet durch eine mit Schlitz versehene, in die Bohrung versenkte Unterlagsplatte aus Metall für jede Schraube.

Hierzu 1 Blatt Zeichnungen.

BERLIN. GEDRUCKT IN DER REICHSDRUCKEREI.

IC-App-0184

USPTO 2001-1463        DE-AltPS 372483

Translated from the German

German Empire
Imperial Patent Office

# PATENT SPECIFICATION
- **No. 372483** -
**Class 37b, Group 5**
(W 60710 V 37b)
D a t e   o f   p u b l i c a t i o n : March 28, 1923
Arnold Wothe, [residing] in Markt-Oberdorf, Allgäu [Bavaria, Germany]
[Title in German of the Object of the Invention:]
**Schraubenunterlagsplatte für Holzverbindungen**
Patented in the German Empire from March 14, 1922

SCREW SUPPORTING PLATE FOR JOINING OF WOOD

In the timber industry, it often happens that a beam [long wood] is to be attached by means of screws on a wide, unlocked crossbar [transom; end-grained wood]. Now, if the crossbar is not to tear off, the hole for the screw is usually designed as slot so that the screw can move in this hole. However, this is often not the case, because the screwhead becomes embedded or sets on in the beam [long wood].

The proposed invention ought to redress this imperfection. To this end, a supporting or bolster plate is provided for the screw, through the slot of which bolster plate the screw passes, while the head of the screw slides on the plate, hence cannot set on or become embedded into the wood. The drawing illustrates the invention in the case of an exemplified embodiment, and, indeed,

1

IC-App-0185

Figs. 1 and 2 show in section and a top view how a crossbar [transom] *a*, is connected to the beam [long wood] *b* by means of the screw *c*. The slot-hole, in which the screw can move when the crossbar [transom or end grained wood] performs its function, is denoted by *e*. Fig. 3 shows the sliding-contact plate [slip plate]. The head of the screw *c* rests on the plate *d*, and slides on the metal. A setting on or embedding of the screw-head is precluded.


PATENT CLAIM


Connection of long wood [beam] to crossbar [end grained wood; transom] by means of screws, which are inserted into elongated boreholes [slots] of the woods, characterized by a supporting or bolster plate of metal for each screw, which bolster plate is provided with slot, and is countersunk into the borehole.

US DEPARTMENT OF COMMERCE/USPTO/STIC/Translations Branch
John M Koytcheff
February 12, 2001

IC-App-0186

## Roof tiles

**Publication number:** GB2124672 (A)

**Publication date:** 1984-02-22

**Inventor(s):** SANT PAUL TISLEY +

**Applicant(s):** SANT PAUL TISLEY +

**Classification:**

- **international:** *E04D1/28; E04D1/36;* E04D1/00; E04D1/28; (IPC1-7): E04D1/12; E04D1/36

- **European:** E04D1/28; E04D1/36

**Application number:** GB19820018450 19820625

**Priority number(s):** GB19820018450 19820625

**Cited documents:**

- GB2091776 (A)
- GB2048978 (A)
- GB1585904 (A)
- GB1353902 (A)

Abstract of **GB 2124672 (A)**

Joint strips 6 of I section have upper flanges 8 which are engaged in the grooves 3 of two adjoining roof tiles 4 and 9. Raised ribs 11 on the upper surfaces of the lower and upper flanges 7 and 8 of the strips 6 define run-off channels for rain-water entering the gap 12 between the tiles 4 and 9, which gap is sealed by the strip 6. The tiles may be secured by nailing to the roof battens, or by securing the strips 6 to the battens. In either case the bottom edges of the tiles may be held down by under clips which engage in the grooves 3 and hook over the top edges of a lower tile. The tiles may have an expanded plastics cover surrounded by a skin of glass-fibre reinforced cement/ sand mix.



*FIG.2.*

Data supplied from the *espacenet* database — Worldwide

# Guide rail for applying plaster to wall - has T=shaped cross=section with small U=section fitted to web

| | |
|---|---|
| **Publication number:** | DE4036338 (A1) |
| **Publication date:** | 1991-06-06 |
| **Inventor(s):** | DRISCHLER ROLAND STEPHAN [DE] + |
| **Applicant(s):** | DRISCHLER ROLAND STEPHAN [DE] + |
| **Classification:** | |
| **- International:** | *E04F15/14; E04F21/04;* E04F15/12; E04F21/02; (IPC1-7): E04B1/68; E04F13/02; E04F15/14; E04F21/04 |
| **- European:** | E04F15/14; E04F21/04 |
| **Application number:** | DE19904036338 19901115 |
| **Priority number(s):** | DE19904036338 19901115 |

Abstract of **DE 4036338 (A1)**

The guide rail (1) is used when applying plaster to a wall in order to achieve a flat finished surface. When the plaster has hardened, the guide rail is removed and the gap is then filled with plaster to achieve a flush surface with the surrounding plaster. In order to reduce the volume of plaster to fill the gap left by the guide rail, the invention proposes using a T-section guide rail which is fixed to the wall by its flange. A U-section rail is fitted over the web of the T-section. After the applied plaster has hardened only this U-section rail is removed, thus leaving only a small gap to be filled with plaster. This type of rail can also be used for laying concrete floors. USE - Applying plaster to walls in building.

Data supplied from the *espacenet* database — Worldwide

IC-App-0188

# TILE-FIXING

**Publication number:** GB1350754 (A)
**Publication date:** 1974-04-24
**Inventor(s):**
**Applicant(s):** BRITISH CERAMIC RES ASS +
**Classification:**
**- International:** *E04F15/02; E04F15/02;* (IPC1-7): E04F15/14; E04F19/02
**- European:** E04F15/02; E04F15/02A
**Application number:** GBD1350754 19700421
**Priority number(s):** GB19700018942 19700421

Abstract of **GB 1350754  (A)**

1350754 Facing tiles BRITISH CERAMIC RESEARCH ASSOCIATION 15 July 1971 [21 April 1970] 18942/70 Heading E1B Ceramic or cementitious facing tiles 17 are grouted and secured together by grouting strips 16 applied to the edges of the tiles before they are secured to a wall. The strips may be of a wide variety of rigid or flexible material and may be secured to the tiles by projections 16a engaging recesses 17b in the tiles or may be glued thereto, or both. The height of the strips may be less than or equal to the thickness of the tiles. The strips may be shorter than the edges of the tiles, in which case further grouting must be applied in situ. The strips may be T section with the stem forming the grouting between the tiles and the arms beneath the tile.



FIG. 6

---

Data supplied from the *espacenet* database — Worldwide

IC-App-0189

Nr. 278212                  Nr. 278212



SCHWEIZERISCHE EIDGENOSSENSCHAFT

## EIDGENÖSSISCHES AMT FÜR GEISTIGES EIGENTUM

# PATENTSCHRIFT

Veröffentlicht am 1. April 1952        Klasse **4 b**

Gesuch eingereicht: 25. Oktober 1949, 9³/₄ Uhr. — Patent eingetragen: 15. Oktober 1951.

## HAUPTPATENT

### Jean Zoltan Löwinger, Zürich (Schweiz).

### Verbindungseinrichtung für Bauelemente.

Gegenstand vorliegender Erfindung ist eine Verbindungseinrichtung für Bauelemente, um im allgemeinen auf einfache Weise ein rasches Zusammenfügen von Bauelementen zum Beispiel zu Möbeln oder andern Gebrauchsgegenständen und Einrichtungen oder für Gebäudebauten zu ermöglichen, ohne Verwendung weiterer Hilfsmittel, wie Nägel, Schrauben, Leim, Kitt, Zement oder dergleichen, und im besondern auch die Verwendung solcher Bauelemente zum Umbauen eines in beschriebener Weise erstellten Gegenstandes in einen andern Gegenstand zu gestatten.

Bekannte Verbindungseinrichtungen für Bauelemente sind nur für leichtes, rasches Zusammenfügen von aufeinander abgestimmten Bauelementen ausgebildet oder für die Zerlegbarkeit des erstellten Gegenstandes oder für Umbauzwecke.

Um alle drei Möglichkeiten zu haben, sind erfindungsgemäß die Bauelemente mit wahlweise benutzbaren Nuten versehen mit von innen nach außen sich verengendem Querschnitt, und es sind Federn mit der Form von zwei Nuten angepaßtem Querschnitt vorgesehen zwecks spielfreier Verbindung von zwei Bauelementen durch Eingriff in je eine Nut derselben.

Die Zeichnung dient zur beispielsweisen näheren Erläuterung des Erfindungsgegenstandes. Es zeigen:

Fig. 1—4 je im Querschnitt vier verschiedene Bauelemente in Stabform,

Fig. 5—8 dazugehörige Federn in Stirnansicht,

Fig. 9—12 vier verschiedene Klammern zur hilfsweisen Verbindung der Bauelemente beim Zusammenfügen,

Fig. 13—17 im Querschnitt fünf stabförmige Bauelemente in anderer Ausführung,

Fig. 18—21 im Längsschnitt vier andere Bauelemente,

Fig. 22 im Aufriß, Seitenriß und Grundriß ein anderes Bauelement in Stabform,

Fig. 23 schaubildlich je einen Teil von drei plattenförmigen Bauelementen,

Fig. 24 schaubildlich die drei Bauplatten gemäß Fig. 23 zusammengefügt,

Fig. 25 im Querschnitt zwei stabförmige zusammengefügte Bauelemente,

Fig. 26 schaubildlich eine nach Fig. 25 benutzte Klammer,

Fig. 27—31 im Querschnitt je eine Mehrzahl zusammengefügter Bauelemente,

Fig. 32 schaubildlich einen Würfel, welcher die den Bauelementen zugrunde gelegte Ausgangsnorm darstellt und

Fig. 33 und 34 je eine andere Ausführung der Federn in Stirnansicht.

Die in den Fig. 1—4 gezeichneten, zum Beispiel aus Holz oder Metall bestehenden vier stabförmigen Bauelemente 1—4 von quadratischem Querschnitt besitzen in der Mitte jeder Seite eine Längsnut 5 bzw. 6, 7, 8 zum Einsetzen von Federn je nach dem Verwendungszweck des einzelnen Bauelementes im Zusammenhang mit einer Konstruktion. Nach Fig. 1

IC-App-0190

haben die Nuten 5 schwalbenschwanzförmigen Querschnitt, von dem die Nuten 6—8 gemäß den Fig. 2—4 mehr oder weniger abweichen, jedoch sind auch diese Längsnuten 6—8 im Querschnitt an den Außenseiten der Bauelemente verengt gegenüber dem Nutengrund.

Auf die Form der Längsnuten 5—8 der Stäbe bzw. Pfosten oder Balken 1—4 ist je die in den Fig. 5—8 dargestellte Feder 5a bzw. 6a, 7a, 8a abgestimmt, und zwar besitzt jede Feder 5a—8a einen Querschnitt, welcher der Form von zwei mit den verengten Seiten aneinandergefügten Nuten 5 bis 8 entspricht. In Fig. 25 sind zwei Bauelemente 1 gezeichnet, die durch eine Feder 5a ohne Spiel miteinander vereinigt sind und außerdem durch eine Klammer 9 zusammengehalten werden.

Die in den Fig. 9—12 gezeichneten metallenen Klammern 9—12 besitzen mittels Zungen federnd ausgebildete Endteile 9' bzw. 10', 11', 12' für den Eingriff in die Nuten 5 bis 8, deren Querschnitt sie, soweit erforderlich, angepaßt sind. Diese Klammern 9—12 dienen bei der Montage vorübergehend zum Zusammenhalten der Bauelemente, können jedoch gegebenenfalls an diesen als Zierstücke belassen werden; Fig. 25 zeigt eine Klammer 9 im Gebrauch. Die Klammern können, wie aus Fig. 26 hervorgeht, Bügel darstellen oder auch Schienen sein, wie strichpunktiert angedeutet ist, ebenso wie sie auch als schienenförmige Bauelemente zum Verbinden von zwei und mehr parallelen Nuten winkelförmig gestaltet sein können.

Fig. 13 zeigt ein stabförmiges Bauelement 13, das im Querschnitt einem Trapez entspricht, dessen vier Seiten mit Nuten 5 versehen sind. Indem an die schräge Seite des Bauelementes 13 ein ähnliches, zweites Bauelement mit seiner schrägen Seite angefügt wird, können Eckstücke mit rechtwinklig zueinander stehenden Seiten gebildet werden. Es können aber auch zum Beispiel Verbindungen im Sinne der Fig. 27 hergestellt werden, gemäß welcher an die schräge Seite des Bauelementes 13 ein zum Beispiel Stützzwecken dienendes Bauelement 14 mittels Feder 5a angeschlossen ist; mit der gegenüberliegenden Seite des Bauelementes 13 ist mittels Feder 5a ein Bauelement 15 verbunden.

In Fig. 14 ist ein winkelförmiges Bauelement 16 gezeigt, das auf allen Seiten mit Nuten 5 versehen ist. Gemäß Fig. 28 sind an die beiden Schenkel dieses Winkelstückes 16 in der entsprechenden Flucht liegende Bauelemente 17 und 18 mittels Federn 5a angeschlossen. An das Bauelement 18 liegt der einen Seite ein Bauelement 19 an, welches mit ihm sowie mit der entsprechenden Seite des Winkelschenkels durch Federn 5a verbunden ist; durch das Bauelement 19 wird das Bauelement 18 versteift. Gemäß Fig. 29 ist das zum Beispiel aus Holz bestehende Winkelstück 16 durch ein winkliges Bauelement 20 aus Metall versteift. Dieses Bauelement 20 ist durch Federn 5a außer mit dem Winkelstück 16 auch mit den Bauelementen 17 und 18 vereinigt. An der gezeichneten Verbindung sind die zwei Klammern 9 belassen worden; in zwei außenseitige Nuten 5 des Winkelstückes 16 sind Füllstücke 21 eingesetzt.

Fig. 15 zeigt ein U-förmiges Bauelement 22. An die Außenseiten seiner beiden Schenkel sowie seines Steges sind gemäß Fig. 30 mittels in Nuten 5 eingesetzten Federn 5a die drei Bauelemente 23, 24 und 25 angeschlossen. Mit Hilfe der einander gegenüberliegenden zwei Bauelemente 23 und 24 kann ein Hohlraum eingeschlossen werden, welcher Isolationszwecken dienen kann. Gegebenenfalls kann zwischen den Bauelementen 23 und 24, wie strichpunktiert eingezeichnet, ein mittleres Bauelement 26 angeordnet werden, welches ebenfalls durch Federn mit dem Bauelement 22 verbunden wird.

In Fig. 16 ist ein T-förmiges Bauelement 27 dargestellt, dessen drei Schenkel Nuten 5 besitzen zur wahlweisen Aufnahme von Federn zur Verbindung mit anzuschließenden Bauelementen.

Fig. 17 zeigt ein winkliges Bauelement 28, welches hinsichtlich der Ausführung gemäß Fig. 14 zusätzliche Anschluß- bzw. Verbindungsstellen für genutete Bauelemente aufweist, wie ohne weiteres erkennbar ist.

In Fig. 18—21 sind Bauelemente 29 bzw.

2

30, 31, 32 veranschaulicht, die Bretter oder Platten darstellen, welche auf der einen Längsseite mit zueinander parallelen Quernuten 5 versehen sind, die wahlweise, je nach Verwendungsart, zur Aufnahme von Federn benutzt werden können; die Nutenteilung ist nach diesen vier Figuren verschieden groß getroffen, wie ersichtlich ist. An den in den Fig. 20 und 21 gezeichneten Enden besitzen die Bretter 31 und 32 ebenfalls querlaufende Nuten 5 für die Aufnahme von Federn.

Das in Fig. 22 in drei Darstellungen gezeichnete stabförmige Bauelement 33 von quadratischem Querschnitt besitzt auf jeder Umfangsseite eine Längsnut 5 und außerdem drei mit ihr sich kreuzende Quernuten 5; an beiden Enden sind zwei rechtwinklig zueinander stehende Stirnnuten 5 vorgesehen, welche sich in der Mitte bzw. in der Achse des Bauelementes 33 schneiden. Dieses Bauelement 33 kann somit durch entsprechendes Einsetzen von Federn auf allen seinen sechs Seiten mit genuteten Bauelementen verbunden werden.

Fig. 23 zeigt drei plattenförmige Bauelemente 34, 35 und 36, welche unter sich gleich ausgebildet sind. Auf der in der Darstellung der einzelnen Platte 34 bzw. 35, 36 ersichtlichen Seitenfläche ist nahe bei den rechtwinklig aneinanderstoßenden zwei Rändern je eine zu letzteren parallele Nut 5 vorgesehen, an welche eine dazu quergehende Nut 5 auf der betreffenden Umfangsfläche der Bauplatte 34 anschließt. Ferner ist an den gezeichneten zwei Umfangsflächen der Bauplatte 34 bis 36 je eine zu den betreffenden Seitenkanten parallele, mittlere Nut 5 angebracht. Die viereckigen Platten 34—36 sind auf ihrer zweiten Seitenfläche sowie an ihren übrigen zwei Umfangsseiten in ähnlicher Weise mit Nuten 5 versehen. Es ist ohne weiteres klar, wie diese Bauplatten 34 bis 36 mittels in deren Nuten 5 einzusetzenden Federn mit genuteten Bauelementen verbunden werden können.

In Fig. 24 sind die drei Bauplatten 34, 35 und 36 zwecks Abschließens eines Raumes zusammengefügt.

In Fig. 31 sind zwei mittels Feder 5a vereinigte Bauelemente 37 und 38 gezeichnet. An der Stoßseite sind die zum Beispiel Betonplatten darstellenden zwei Bauelemente 37, 38 mit einem metallenen Schutzbelag 39 und 40 versehen, welcher in einer Nut 5 den entsprechenden Profilteil der Feder 5a aufnimmt.

Der in Fig. 32 in größerem Maßstab und schaubildlich gezeigte Würfel 41 ist die den Bauelementen zugrunde gelegte Ausgangsnorm und besitzt in der Mitte jeder Seite eine Nut 5, wobei die auf jeder Seitenfläche vorhandenen zwei Nuten 5 sich im rechten Winkel kreuzen. Durch Vergrößerung des Seitenmaßes dieses Grundelementes in einer oder mehreren Richtungen kann ein Bauelement von anderer Form geschaffen werden, das in zweckdienlicher Weise mit Nuten versehen wird, welche dem Anschluß an andere, ebenfalls genutete Bauelemente mittels Federn dienen.

Wesensgleiche Ausgangsnorm ergibt sich auch, wenn von einem Würfel ausgegangen wird, welcher an Stelle der Nuten 5 mit Nuten 6 bis 8 gemäß den Fig. 2, 3 und 4 oder mit Nuten anderer Querschnittsform versehen ist.

In Fig. 33 und 34 sind zwei Federn 42 und 43 gezeichnet, deren Querschnitt durch Kombination von Profilteilen der Federn 5a und 6a (Fig. 1, 2) und 5a und 7a (Fig. 1, 3) entstanden ist.

Selbstverständlich sind zur Bildung des Federquerschnittes weitere Kombinationen möglich. Stets sind die Nuten der Bauelemente und die zugehörigen Federn zueinander im Querschnitt für spielfreie gegenseitige Verbindung der Bauelemente abgestimmt. Die Form der Bauelemente wird natürlich ihrer Zweckbestimmung angepaßt; außer Brettern, Platten, Stäben und Balken kommen alle sonstigen zur Herstellung von Flächen- und Raumgebilden geeigneten Elementenformen in Betracht. Durch entsprechende Normung der Bauelemente in ihren Dimensionen usw. soll zum Beispiel ermöglicht werden, durch Zerlegen eines mittels solcher Elemente gebauten großen Schrankes verschiedene kleinere

3

nere Möbel zusammenstellen zu können oder umgekehrt, und zwar ohne jede Nachbearbeitung. Zur Herstellung der Bauelemente kommt Werkstoff jeder praktisch geeigneten Art in Betracht, zum Beispiel außer Holz und dessen Ersatzstoffen Metalle (Stahl, Eisen, Leichtmetalle), Zement, Beton, Kunststoffe usw. Bauelemente und Federn können in bezug aufeinander aus verschiedenem Werkstoff bestehen, ebenso wie auch die Bauelemente selbst aus zwei oder mehr Werkstoffen hergestellt sein können. Bauelemente beschriebener Art eignen sich außer für den Bau von Möbeln für Wohn- und Bürozwecke auch zur Herstellung von ganzen Einrichtungen in Verkaufsläden, Werkstätten und dergleichen, ferner für Innenausstattungen, für Messe- bzw. allgemein für Ausstellungsbauten usw. und insbesondere für das gesamte Baugewerbe, für den Häuserbau jeder Art und Zweckbestimmung.

PATENTANSPRUCH:

Verbindungseinrichtung für Bauelemente, dadurch gekennzeichnet, daß die Bauelemente wahlweise benutzbare Nuten aufweisen mit von innen nach außen sich verengendem Querschnitt, und daß Federn mit der Form von zwei Nuten angepaßtem Querschnitt vorgesehen sind zwecks spielfreier Verbindung von zwei Bauelemente durch Eingriff in je eine Nute derselben.

UNTERANSPRÜCHE:

1. Verbindungseinrichtung nach Patentanspruch, dadurch gekennzeichnet, daß Bauelemente mit sich kreuzenden Nuten vorgesehen sind.

2. Verbindungseinrichtung nach Patentanspruch, gekennzeichnet durch stabförmige, eckigen Querschnitt besitzende Bauelemente, welche auf mehreren Längsseiten mit Nuten versehen sind.

3. Verbindungseinrichtung nach Patentanspruch und Unteranspruch 2, dadurch gekennzeichnet, daß die stabförmigen Bauelemente auch auf den Stirnseiten mit Nuten versehen sind.

4. Verbindungseinrichtung nach Patentanspruch, gekennzeichnet durch plattenförmige Bauelemente, welche wenigstens auf der einen Seitenfläche zueinander parallele Nuten aufweisen.

5. Verbindungseinrichtung nach Patentanspruch und Unteranspruch 4, dadurch gekennzeichnet, daß die plattenförmigen Bauelemente auch stirnseitig Nuten besitzen.

6. Verbindungseinrichtung nach Patentanspruch und Unteranspruch 4, dadurch gekennzeichnet, daß die plattenförmigen Bauelemente ferner an Umfangsflächen zumindest je eine zu den betreffenden Seitenkanten parallele Nut aufweisen.

7. Verbindungseinrichtung nach Patentanspruch und Unteransprüchen 4 und 6, dadurch gekennzeichnet, daß die plattenförmigen Bauelemente ferner an Umfangsflächen quergehende Nuten besitzen.

8. Verbindungseinrichtung nach Patentanspruch, dadurch gekennzeichnet, daß Bauelemente und Federn in bezug aufeinander aus verschiedenem Werkstoff bestehen.

9. Verbindungseinrichtung nach Patentanspruch, dadurch gekennzeichnet, daß aus mindestens zwei Werkstoffen hergestellte Bauelemente vorgesehen sind.

10. Verbindungseinrichtung nach Patentanspruch, dadurch gekennzeichnet, daß zur Verbindung von Bauelementen Klammern vorgesehen sind, deren Endteile für den Eingriff in Nuten der Bauelemente bestimmt sind.

Jean Zoltan Löwinger.
Vertreter: E. Blum & Co., Zürich.

4



FIG.1 FIG.2 FIG.3 FIG.4
FIG.5 FIG.6 FIG.7 FIG.8
FIG.9 FIG.10 FIG.11 FIG.12
FIG.13 FIG.14 FIG.15
FIG.16 FIG.17
FIG.18
FIG.19
FIG.20 FIG.21

IC-App-0194



FIG.22

FIG.23

FIG.24



FIG.32

FIG.25

FIG.26

FIG.27

FIG.28

FIG.29

FIG.30

FIG.31

FIG.33

FIG.34

# Floor, of the type consisting of wooden boards

**Publication number:** FR2647837 (A1)

**Publication date:** 1990-12-07

**Inventor(s):** BUCHET PIERRE +

**Applicant(s):** LAMELLUX BOURDARIE [FR]; BUCHET PIERRE [FR] +

**Classification:**

**- International:** *E04F15/04; E04F15/20;* E04F15/04; E04F15/20; (IPC1-7): E04F15/04

**- European:** E04F15/04; E04F15/20

**Application number:** FR19890007390 19890605

**Priority number(s):** FR19890007390 19890605

**Cited documents:**
- EP0121915 (A2)
- FR1524707 (A)
- GB419011 (A)
- FR2623544 (A1)
- FR2469520 (A1)

Abstract of FR 2647837 (A1)

Floor, of the type consisting of wooden boards 1, 2 which are juxtaposed alongside one another, characterised in that the said boards are systematically held spaced apart from one another in such a way as to obtain a specific clearance between them, this clearance being obtained by interposition of a joint 30, 31 whose thickness or width corresponds to the distance separating the two ducts, increased by the width of the clearance sought.

Data supplied from the *espacenet* database — Worldwide

IC-App-0197

RÉPUBLIQUE FRANÇAISE

MINISTÈRE DE L'INDUSTRIE

SERVICE
de la PROPRIÉTÉ INDUSTRIELLE

# BREVET D'INVENTION

P. V. n° 129.047

N° 1.556.252

Classification internationale :

E 04 f

## Parquet bardage voligeage à libre rétractibilité.

INSTITUT DE RECHERCHES APPLIQUÉES AU BOIS « I.R.A. BOIS » résidant en France (Paris).

Demandé le 21 novembre 1967, à 15ʰ 11ᵐ, à Paris.
Délivré par arrêté du 30 décembre 1968.
(*Bulletin officiel de la Propriété industrielle*, n° 6 du 7 février 1969.)

Ces parquets bardages et voligeages se composent essentiellement de lames de bois de diverses essences et de joints en matière élastique.

Les lames comportent des rainures sur les deux arêtes longitudinales, une rainure à l'une des extrémités et une languette à l'autre extrémité (fig. 1).

Les épaisseurs sont variables : 18 mm pour des voligeages ; 23 mm pour des parquets. La dimension de la rainure dans le cas des parquets de 23 mm d'épaisseur est de 6 mm en hauteur et de 7 mm en profondeur. Les lames ne sont pas dégraissées, c'est-à-dire que les faces des arêtes sont perpendiculaires aux faces apparentes des lames ; la longueur des lames est quelconque.

Les joints sont de section cruciforme et viennent s'emboîter dans les rainures des lames (fig. 2).

La matière qui les compose est : soit un caoutchouc naturel ou un caoutchouc de synthèse du type néoprène, soit une matière plastique du genre polychlorure de vinyle, soit encore du liège aggloméré expansé pur.

La pose de ces parquets bardages ou voligeages se fait sur des supports de bois ou d'autres matériaux, régulièrement espacés.

Les lames sont posées à sec et ne sont fixées par clouage sur l'ossature. Les clous sont plantés en biais, dans la lèvre inférieure de la rainure d'une seule arête de chaque lame. Les joints sont introduits au fur et à mesure dans les rainures de chaque lame. Le clouage peut être remplacé par un agrafage.

L'assemblage en bout de chaque lame se fait sans joint par bouvetage. La languette peut être remplacée par une fausse languette

de bois. Les lames comportent alors quatre rainures sur chaque arête.

Variante : les joints de section cruciforme peuvent être remplacés par des joints de section polygonale, comme il est indiqué sur la figure 4.

La figure 3 montre la forme de la lame de bois qui compose une rainure destinée à diriger le clou ou l'agrafe de fixation.

Les domaines d'emploi de cette invention sont énumérés ci-dessous, cette énumération n'étant pas limitative :

Parquets : parquet de grande surface et particulièrement parquet de gymnase ;

Bardage et voligeage : également pour de grandes surfaces.

Ces bardages et voligeages peuvent également être appliqués sur des surfaces gauches.

Les bardages peuvent rester apparents.

Les voligeages supportent un matériau de couverture ou une étanchéité.

### RÉSUMÉ

Parquet bardage voligeage à libre rétractibilité.

L'invention consiste à interposer entre chaque lame de parquet ou de bardage ou entre chaque volige un joint en matière élastique de section cruciforme ou polygonale et destiné à absorber les variations dimensionnelles du bois au niveau de chaque lame ou volige.

Cette invention a pour objet la possibilité de réaliser de grandes surfaces de parquet, de bardage ou de voligeage, ainsi que la réalisation de bardage ou de voligeage de surfaces gauches.

INSTITUT DE RECHERCHES APPLIQUÉES
AU BOIS « I.R.A. BOIS »

9 210368 7

Pour la vente des fascicules, s'adresser à l'IMPRIMERIE NATIONALE, 27, rue de la Convention, Paris (15e).



Fig. 1.



Fig. 2.



Fig. 3.



Fig. 4.

Echelle



0   1   2   3   4   5 cm

IC-App-0199




Fig. 5.    Fig. 6.




Fig. 7    Fig.8.

Echelle

0  1  2  3  4  5 cm

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:    Harry W. Eberle, III          Group Art Unit:    3635
Serial No.:              12/583,702                     Examiner:          N/A
Filed:                   August 24, 2009
For:                     **EXPANSION-COMPENSATING DECK FASTENER**

Matter No.:              0247-2 CIP CON

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

### INFORMATION DISCLOSURE STATEMENT
### UNDER 37 CFR §1.97(b)

In accordance with the duty of disclosure under 37 CFR §1.56, Applicant hereby notifies the U.S. Patent and Trademark Office of the following documents, which are listed on the attached PTO-1449 Form. The Examiner may deem these documents to be relevant to patentability of the claims of the above-identified application. Copies of the documents set forth below and listed on the attached Form PTO-1449 are provided herewith.

The submission of the listed documents is not intended as an admission that any of the documents constitutes prior art against the claims of the present application. Applicants do not waive any right to take any action that would be appropriate to antedate or otherwise remove any listed document as a competent reference against the claims of the present application.

Applicants respectfully request that the listed documents be considered by the Examiner and be made of record in the present application and that an initialed copy of Form PTO-1449 be returned in accordance with MPEP §609.

The present Information Disclosure Statement is being filed after either a final Office Action or a Notice of Allowance, but before payment of the Issue Fee,

06/17/2010 CCHAU1   00000002 12583702

01 FC:1806                180.00 OP

IC-App-0201

without a statement as specified under CRF §1.97(e) and therefore Applicant is submitting herewith a check for the petition fee of $180.00 under 37 CFR §1.17 (p).

For the reasons set forth above, it is submitted that no additional fee is required for this Information Disclosure Statement. However, in the event that the Commissioner deems that an additional fee is required, it is respectfully requested that such additional fee be charged to Deposit Account No. 50-3832.

Respectfully submitted,

Ernest D. Buff
Reg. No. 25,833

**Enclosures**

Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, New Jersey 07921
(908) 901-0220

Dated: June 15, 2010

**Certificate of Mailing by First Class Mail**

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria VA 22313-1450 on   June 15, 2010.

*Signature*

Ernest D. Buff
*Attorney of Record*

June 15, 2010
*(Date)*

0247-2 CIP CON-IDS

| AMENDMENT TRANSMITTAL LETTER | | ATTORNEY'S DOCKET NO.: 0247-2 CIP CON | |
|---|---|---|---|

| SERIAL NUMBER: 12/583,702 | FILING DATE: August 24, 2009 | EXAMINER: Mark R. Wendell. | GROUP ART UNIT: 3635 |
|---|---|---|---|

INVENTION:

# EXPANSION COMPENSATING DECK FASTENER

INVENTOR(S): Harry W. Eberle, III

**TO THE ASSISTANT COMMISSIONER FOR PATENTS:**
Transmitted herewith is an amendment in the above-identified application. The fee has been calculated as shown below.

### CLAIMS AS AMENDED

| (1) | (2) CLAIMS REMAINING AFTER AMENDMENT | (3) | (4) HIGHEST NUMBER PREVIOUSLY PAID FOR | (5) NO. OF EXTRA CLAIMS PRESENT | (6) RATE | (7) ADDITIONAL FEE |
|---|---|---|---|---|---|---|
| TOTAL CLAIMS | 43 | MINUS | 43 | 0 | X $25 | $ 0.00 |
| INDEP. CLAIMS | 5 | MINUS | 5 | 0 | X $100 | $0.00 |
| | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT | | $ 0.00 |

\* If the entry in column 2 is less than the entry in column 4, write "0" in column 5.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, write "20" in this space.
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, write "3" in this space.

[✓] No additional claim fee is required.

[✓] A Check for $ __180__ is enclosed to cover the fee for an Information Disclosure Statement. _____

[ ] The undersigned petitions for a one month time extension for filing this document under 37 C.F.R. 1.136
A Check for $ ___ Is enclosed to cover the fee for this time extension. _____
A triplicate copy of this sheet is enclosed.

[✓] Charge any additional fees to Deposit Account No. 50-3832

| June 15, 2010 | Signature |
|---|---|
| Date | |
| | Ernest D. Buff |
| | Attorney Name |
| (908) 901-0220 | 25,833 |
| Phone | Reg. Number |

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on __June 15, 2010__.

(Signature)

Ernest D. Buff
Attorney of Record

June 15, 2010
(Date)



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | 0247-2 CIP CON | 2151 |

7590 07/07/2010

Ernest D. Buff, Esq.
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921

| EXAMINER |
|---|
| WENDELL, MARK R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/07/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

IC-App-0204

| | Application No. | Applicant(s) |
|---|---|---|
| ***Supplemental Notice of Allowability*** | 12/583,702 | EBERLE, HARRY W. |
| | Examiner | Art Unit | |
| | MARK R. WENDELL | 3635 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>6/17/10</u>.

2. ☒ The allowed claim(s) is/are <u>1,2,4-8,11-14,16,18-20,22-36 and 40-50</u>.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

     a) ☐ All    b) ☐ Some*    c) ☐ None    of the:

         1. ☐ Certified copies of the priority documents have been received.

         2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

         3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

     * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

     (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

         1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

     (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

     **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date <u>20100617</u>

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

7. ☐ Examiner's Amendment/Comment

8. ☐ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

| | |
|---|---|
| Mark R. Wendell<br>Examiner<br>Art Unit: 3635 | /Richard E. Chilcot, Jr./<br>Supervisory Patent Examiner, Art Unit 3635 |

Sheet 1 of 5

| FORM PTO-1449 (Rev 2-32) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO: 0247-2 CIP CON | SERIAL NO.: 12/583,702 |
|---|---|---|---|
| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT | APPLICANT: Harry W. Eberle, III | |
| | (Use several sheets if necessary) | FILING DATE: August 24, 2009 | GROUP: 3635 |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | 186,463 | 1-23-1877 | Dickenson | 52 | 512 | 12/18/1876 |
| | | 466,995 | 1-12-1892 | Abramson | 52 | 385 | 08/07/1890 |
| | | 1,184,080 | 04-23-16 | D'Arcy | 403 | 231 | 12/17/15 |
| | | 1,241,885 | 02-02-17 | Roede | 52 | 714 | 02/24/16 |
| | | 1,714,738 | 05-28-29 | Smith | 52 | 512 | 06/11/26 |
| | | 1,990,001 | 02-05-35 | Rutten | 52 | 250 | 02/01/33 |
| | | 2,201,129 | 05-14-40 | Weiland | 52 | 509 | 08/26/38 |
| | | 2,332,081 | 10-19-43 | Hunt et al. | 52 | 586.1 | 08/06/42 |
| | | 2,337,156 | 12-21-43 | Elmendorf | 52 | 391 | 04/03/41 |
| | | 2,362,252 | 11-07-44 | Ellinwood | 52 | 288.1 | 08/24/42 |
| | | 2,398,603 | 04-16-46 | Soderberg | 411 | 457 | 04/18/45 |

### FOREIGN PATENTS

| | | DOCUMENT NUMBER | DATE | PATENTEE OR APPLICANT | CLASS | SUBCLASS | ABSTRACT | |
|---|---|---|---|---|---|---|---|---|
| | | CA 2287104 | 011901 | Gregori | E04 | B5/02 | Yes | |
| | | FR 1217468 | 050460 | Peynichou | E04 | B63/64 | Patent | |
| | | EP 863317 | 090990 | Eberle, III | E04 | F15/04 | Yes | |

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| EXAMINER /Mark Wendell/ | DATE CONSIDERED 06/28/2010 |
|---|---|

Examiner: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

(Form PTO 1449 [6-4])

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./

Sheet 2 of 5

| FORM PTO-1449<br>(Rev. 2-32) | U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO:<br>0247-2 CIP CON | SERIAL NO.:<br>12/583,702 |
|---|---|---|---|
| INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT | | APPLICANT:<br>Harry W. Eberle, III | |
| (Use several sheets if necessary) | | FILING DATE:<br>August 24, 2009 | GROUP:<br>3635 |

### U.S. PATENT APPLICATION PUBLICATION

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | 2,406,387 | 08-27-46 | Lank | 144 | 347 | 01/07/44 |
| | | 2,526116 | 10-17-50 | Browne | 105 | 423 | 11/11/47 |
| | | 3,045,294 | 07-24-62 | Livezey, Jr. | 52 | 403.1 | 03/22/56 |
| | | 3,319,983 | 05-16-67 | Zibell | 403 | 400 | 12/27/60 |
| | | 3,619,963 | 11-16-71 | Omholt | 52 | 481.1 | 07/31/69 |
| | | 3,705,002 | 12-05-72 | Varlonga | 512 | 213 | 08/06/69 |
| | | 3,890,753 | 06-24-75 | Johansen | 52 | 766 | 03/13/73 |
| | | 4,154,172 | 05-15-79 | Curtis, Jr. | 105 | 422 | 12/09/75 |
| | | 4,449,346 | 05-22-84 | Tremblay | 52 | 509 | 11/12/80 |
| | | 4,641,988 | 02-10-87 | Ganner | 403 | 245 | 09/29/83 |
| | | 4,682,458 | 07-28-87 | Sparrow | 52 | 309.8 | 01/29/86 |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | PATENTEE OR APPLICANT | CLASS | SUBCLASS | ABSTRACT | |
|---|---|---|---|---|---|---|---|---|
| | | JP 404371657A | 12-23-92 | Hashisa | E04 | F13/14 | YES | |
| | | DE 372483 | 03-28-23 | Wothe | E04 | B1/40 | Translation | |
| | | GB 2124672A | 02-22-84 | Sant | E04 | D1/28 | Yes | |

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| EXAMINER   /Mark Wendell/ | DATE CONSIDERED   06/28/2010 |
|---|---|

Examiner: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

(Form PTO 1449 [6-4])

Sheet 3 of 5

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.W./

| FORM PTO-1449 (Rev. 2-32) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO: 0247-2 CIP CON | SERIAL NO.: 12/583,702 |
|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | APPLICANT: Harry W. Eberle, III | |
| (Use several sheets if necessary) | | FILING DATE: August 24, 2009 | GROUP: 3635 |

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | 4,716,704 | 01-05-88 | Murr | 52 | 778 | 12/29/86 |
| | | 5,004,027 | 04-02-91 | Legler et al. | 144 | 136.9 | 05/18/90 |
| | | 5,056,286 | 10-15-91 | Bokor | 52 | 483.1 | 09/29/89 |
| | | 5,071,280 | 12-10-91 | Turner | 403 | 232.1 | 09/19/90 |
| | | 5,160,211 | 11-03-92 | Gilb | 403 | 231 | 11/13/90 |
| | | 5,182,891 | 02-02-93 | Slocum | 52 | 480 | 07/20/90 |
| | | 5,243,804 | 09-14-93 | Therrien et al. | 52 | 664 | 03/20/91 |
| | | 5,245,808 | 09-21-93 | Grunewald et al. | 52 | 235 | 02/11/91 |
| | | 5,251,996 | 10-12-93 | Hiller et al. | 403 | 331 | 04/20/92 |
| | | 5,377,732 | 01-03-95 | Fujii et al. | 144 | 37 | 09/23/93 |
| | | 5,419,649 | 05-30-95 | Gilb | 403 | 231 | 02/10/94 |

## FOREIGN PATENTS

| | | DOCUMENT NUMBER | DATE | PATENTEE OR APPLICANT | CLASS | SUBCLASS | ABSTRACT | |
|---|---|---|---|---|---|---|---|---|
| | | DE 4036338 | 060691 | Drischler | E04 | F15/14 | Yes | |
| | | GB 1350754 | 042474 | British Ceramic Res Ass | E04 | F15/02 | Yes | |
| | | JP 07189451 | | Nishide et al. | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| EXAMINER /Mark Wendell/ | DATE CONSIDERED | 06/28/2010 |
|---|---|---|

Examiner: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

(Form PTO 1449 [6-4])

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./

Sheet 4 of 5

| FORM PTO-1449 (Rev. 2-32) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO: 0247-2 CIP CON | SERIAL NO.: 12/583,702 |
|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | APPLICANT: Harry W. Eberle, III | |
| (Use several sheets if necessary) | | FILING DATE: August 24, 2009 | GROUP: 3635 |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | 5,458,433 | 10-17-95 | Stastny | 403 | 408.1 | 12/09/94 |
| | | 5,480,117 | 01-02-96 | Fleming, III | 248 | 231.9 | 04/28/94 |
| | | 5,529,428 | 06-25-96 | Bischof | 403 | 408.1 | 06/08/94 |
| | | 5,564,248 | 101596 | Callies | 52 | 702 | 11/10/94 |
| | | 5,603,580 | 021897 | Leek et al. | 403 | 232.1 | 05/30/95 |
| | | 5,619,834 | 041597 | Chen | 52 | 509 | 12/05/95 |
| | | 5,660,016 | 08-26-97 | Erwin et al. | 52 | 483.1 | 07/03/95 |
| | | 5,704,181 | 010698 | Fisher et al. | 52 | 438 | 04/13/95 |
| | | 6,012,256 | 011100 | Aschheim | 52 | 167.1 | 09/06/97 |
| | | 6,402,415 | 06-11-02 | Eberle | 403 | 231 | 11/05/98 |
| | | 6,442,908 | 090302 | Naccarato et al | 52 | 236.8 | 04/26/00 |

### FOREIGN PATENTS

| | | DOCUMENT NUMBER | DATE | PATENTEE OR APPLICANT | CLASS | SUBCLASS | ABSTRACT |
|---|---|---|---|---|---|---|---|
| | | CH 278212 | 101551 | Lowinger | E04 | B1/61 | Patent |
| | | FR 2647837 | 120790 | Buchet | E04 | F15/04 | Yes |
| | | FR 1556252 | 020769 | Bois | E04 | F15/04 | Patent |

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| EXAMINER /Mark Wendell/ | DATE CONSIDERED 06/28/2010 |
|---|---|

Examiner: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

(Form PTO 1449 [6-4])

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./

Sheet 5 of 5

| FORM PTO-1449 (Rev. 2-32) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO: 0247-2 CIP CON | SERIAL NO.: 12/583,702 |
|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | APPLICANT: Harry W. Eberle, III | |
| (Use several sheets if necessary) | | FILING DATE: August 24, 2009 | GROUP: 3635 |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | 6,449,918 | 09-17-02 | Nelson | 52 | 582.1 | 09/14/00 |
| | | 6,460,306 | 10-08-02 | Nelson | 52 | 582.1 | 11/08/99 |
| | | 7,052,200 | 05-30-06 | Harris | 403 | 231 | 09/23/03 |
| | | D331,470 | 12-01-92 | Mitchell et al. | D25 | 156 | 11/16/90 |
| | | D470,039 | 02-11-03 | Pelc | D8 | 382 | 09/24/01 |
| | | D488,373 | 04-13-04 | Eberle, III | D8 | 382 | 05/24/01 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### FOREIGN PATENTS

| | | DOCUMENT NUMBER | DATE | PATENTEE OR APPLICANT | CLASS | SUBCLASS | ABSTRACT |
|---|---|---|---|---|---|---|---|
| | | GB 1,567,008 A | 05-08-80 | Edwards | F16 | B5/00 | Full patent |
| | | | | | | | |
| | | | | | | | |

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| EXAMINER /Mark Wendell/ | DATE CONSIDERED 06/28/2010 |
|---|---|

Examiner: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

(Form PTO 1449 [6-4])

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./



| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 12583702 | EBERLE, HARRY W. |
| | **Examiner** | **Art Unit** |
| | MARK R WENDELL | 3635 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | **NON-CLAIMED** | |
| 52 | 403.1 | E | 0 | 4 | F | 15 / 22 (2006.0) | | |
| **CROSS REFERENCE(S)** | | E | 0 | 4 | B | 2 / 00 (2006.0) | | |
| | | F | 1 | 6 | B | 9 / 00 (2006.0) | | |

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | |
|---|---|---|---|---|---|
| 52 | 586.1 | 586.2 | 483.1 | 480 | 650.3 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| ☐ Claims renumbered in the same order as presented by applicant | | | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
| 1 | 1 | | 17 | 21 | 33 | 41 | 49 | | | | | | | | |
| 2 | 2 | 13 | 18 | 30 | 34 | 37 | 50 | | | | | | | | |
| | 3 | 14 | 19 | 31 | 35 | | | | | | | | | | |
| 3 | 4 | 15 | 20 | 32 | 36 | | | | | | | | | | |
| 4 | 5 | | 21 | | 37 | | | | | | | | | | |
| 5 | 6 | 23 | 22 | | 38 | | | | | | | | | | |
| 6 | 7 | 24 | 23 | | 39 | | | | | | | | | | |
| 7 | 8 | 25 | 24 | 33 | 40 | | | | | | | | | | |
| | 9 | 22 | 25 | 34 | 41 | | | | | | | | | | |
| | 10 | 26 | 26 | 35 | 42 | | | | | | | | | | |
| 8 | 11 | 27 | 27 | 38 | 43 | | | | | | | | | | |
| 9 | 12 | 16 | 28 | 28 | 44 | | | | | | | | | | |
| 10 | 13 | 17 | 29 | 39 | 45 | | | | | | | | | | |
| 11 | 14 | 18 | 30 | 29 | 46 | | | | | | | | | | |
| | 15 | 19 | 31 | 36 | 47 | | | | | | | | | | |
| 12 | 16 | 20 | 32 | 40 | 48 | | | | | | | | | | |

| /MARK R WENDELL/ Examiner.Art Unit 3635 | 6/3/10 | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 41 | |
| /Richard E Chilcot, Jr./ Supervisory Patent Examiner.Art Unit 3635 | 07/02/2010 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 4a |

U.S. Patent and Trademark Office

Part of Paper No. 20100628

IC-App-0211

# Index of Claims

| | |
|---|---|
| **Application/Control No.**<br>12583702 | **Applicant(s)/Patent Under Reexamination**<br>EBERLE, HARRY W. |
| **Examiner**<br>MARK R WENDELL | **Art Unit**<br>3635 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ✓ | **Rejected** | - | **Cancelled** | **N** | **Non-Elected** | **A** | **Appeal** |
| = | **Allowed** | ÷ | **Restricted** | **I** | **Interference** | **O** | **Objected** |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/26/2010 | 06/03/2010 | 06/28/2010 | | | | | |
| 1 | 1 | ✓ | = | = | | | | | |
| 2 | 2 | ✓ | = | = | | | | | |
| | 3 | O | - | - | | | | | |
| 3 | 4 | ✓ | = | = | | | | | |
| 4 | 5 | ✓ | = | = | | | | | |
| 5 | 6 | ✓ | = | = | | | | | |
| 6 | 7 | ✓ | = | = | | | | | |
| 7 | 8 | O | = | = | | | | | |
| | 9 | ✓ | - | - | | | | | |
| | 10 | ✓ | - | - | | | | | |
| 8 | 11 | ✓ | = | = | | | | | |
| 9 | 12 | ✓ | = | = | | | | | |
| 10 | 13 | ✓ | = | = | | | | | |
| 11 | 14 | ✓ | = | = | | | | | |
| | 15 | ✓ | - | - | | | | | |
| 12 | 16 | ✓ | = | = | | | | | |
| | 17 | O | - | - | | | | | |
| 13 | 18 | O | = | = | | | | | |
| 14 | 19 | O | = | = | | | | | |
| 15 | 20 | O | = | = | | | | | |
| | 21 | ✓ | - | - | | | | | |
| 23 | 22 | ✓ | = | = | | | | | |
| 24 | 23 | ✓ | = | = | | | | | |
| 25 | 24 | ✓ | = | = | | | | | |
| 22 | 25 | O | = | = | | | | | |
| 26 | 26 | O | = | = | | | | | |
| 27 | 27 | O | = | = | | | | | |
| 16 | 28 | O | = | = | | | | | |
| 17 | 29 | O | = | = | | | | | |
| 18 | 30 | O | = | = | | | | | |
| 19 | 31 | O | = | = | | | | | |
| 20 | 32 | O | = | = | | | | | |
| 21 | 33 | ✓ | = | = | | | | | |
| 30 | 34 | ✓ | = | = | | | | | |
| 31 | 35 | ✓ | = | = | | | | | |
| 32 | 36 | ✓ | = | = | | | | | |

# Index of Claims

| | |
|---|---|
| **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
| 12583702 | EBERLE, HARRY W. |
| **Examiner** | **Art Unit** |
| MARK R WENDELL | 3635 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/26/2010 | 06/03/2010 | 06/28/2010 | | | | | |
| | 37 | O | - | - | | | | | |
| | 38 | O | - | - | | | | | |
| | 39 | ✓ | - | - | | | | | |
| 33 | 40 | O | = | = | | | | | |
| 34 | 41 | O | = | = | | | | | |
| 35 | 42 | O | = | = | | | | | |
| 38 | 43 | ✓ | = | = | | | | | |
| 28 | 44 | | = | = | | | | | |
| 39 | 45 | | = | = | | | | | |
| 29 | 46 | | = | = | | | | | |
| 36 | 47 | | = | = | | | | | |
| 40 | 48 | | = | = | | | | | |
| 41 | 49 | | = | = | | | | | |
| 37 | 50 | | = | = | | | | | |

| *Search Notes*  | Application/Control No.<br><br>12583702 | Applicant(s)/Patent Under Reexamination<br><br>EBERLE, HARRY  W. |
|---|---|---|
| | Examiner<br><br>MARK R WENDELL | Art Unit<br><br>3635 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 52 | 586.1, 586.2, 483.1, 480, 650.3, 403.1 | 4/26/10 | MRW |
| 403 | 231, 232.1, 408.1 | 4/26/10 | MRW |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Consulted Previous Search history in the patent family | 4/26/10 | MRW |
| Considered New IDS | 6/28/10 | MRW |

### INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | Consulted Family of Patents and applications | 6/3/10 | MRW |
| | Keyword Search of claims | 6/3/10 | MRW |

| | |
|---|---|
| | |

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
## (Submitted Only via EFS-Web)

| Application Number | 12583702 | Filing Date | 2009-08-24 | Docket Number (if applicable) | BHERON 3.0-001 CIP CON | Art Unit | 3635 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Harry W. Eberle | | | Examiner Name | M. R. Wendell | | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. The Instruction Sheet for this form is located at WWW.USPTO.GOV

## SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

  ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

  ☐ Other _____

☒ Enclosed

  ☐ Amendment/Reply

  ☒ Information Disclosure Statement (IDS)

  ☐ Affidavit(s)/ Declaration(s)

  ☐ Other

## MISCELLANEOUS

☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of months (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required) _____

☐ Other _____

## FEES

**The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
☒ The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to Deposit Account No    12-1095

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

☒ Patent Practitioner Signature

☐ Applicant Signature

IC-App-0215

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | | |
|---|---|---|---|
| Signature | /Roberto Colón/ | Date (YYYY-MM-DD) | 2010-08-25 |
| Name | Roberto Colón | Registration Number | 58651 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

IC-App-0216

EFS - Web 2.1.15

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted via the Office electronic filing system in accordance with § 1.6(a)(4).

Dated: August 25, 2010
Electronic Signature for Roberto Colón:  /Roberto Colón/

Docket No.:
BHERON 3.0-001 CIP CON
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:        :
Harry W. Eberle                     :
                                    :
                                    :
Application No.: 12/583,702         : Group Art Unit: 3635
                                    :
Filed: August 24, 2009             : Examiner: M. R. Wendell
                                    :
For: EXPANSION-COMPENSATING DECK    :
     FASTENER                       :

MS RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

### INFORMATION DISCLOSURE STATEMENT

Dear Sir:

It is respectfully requested that the references listed on the enclosed form be made of record and considered with respect to the above-referenced U.S. patent application. A copy of each reference which is not a U.S. patent or patent application is enclosed. Submission of the present Information Disclosure Statement should not be taken as an admission that the cited references are legally available prior art or that the same are pertinent or material.

In particular, the U.S. patents listed on the enclosed form were cited or part of the record in at least one of the following applications and/or proceedings, namely: (i) US Patent Application Serial No. 10/446,514, now US Patent No. 7,578,105 (the present application is a continuation of the '105 Patent); (ii) US Patent Reexamination Control No. 90/007,770 (Reexamination of the '105 Patent); (iii) US Patent Application Serial No. 10/393,100, now US Patent No. 6,851,884 (the '105 Patent is continuation-in-part of the '884 Patent); (iv) US Patent Application Serial No. 09/186,741, now US Patent No. 6,402,415; (v) US Patent Reexamination Control No. 90/007,661 (Reexamination of the '415 Patent); (vi) US

Patent Application Serial No. 08/811,898, now abandoned (the '415 Patent is a continuation-in-part of the '898 Application); and (vii) US Patent Application Serial No. 10/037,325 (currently pending). The enclosed form also lists an invoice for the sale of certain EB-TY fasteners dated August 26, 1997 and an engineering drawing depicting an EB-TY fastener dated June 15, 1997. The invoice and the engineering drawing were previously submitted with the Information Disclosure Statement filed on June 15, 2010, but were not listed on the USPTO Form PTO/SB/08a. The present Information Disclosure Statement further includes Invalidity Contentions served on the Applicant on August 6, 2010 in connection with litigation involving US Patent Nos. 6,402,415 and 6,851,884. *See Harry W. Eberle, III v. KK Manufacturing Co. et al.*, (Civil Action No. 03-5809, D.N.J.) All the references cited in the applications and reexaminations listed above are now part of the record of the present application.

In the event that any fee is due in connection with the present Information Disclosure Statement, the Commissioner is hereby authorized to charge the same to our Deposit Account No. 12-1095.

Dated: August 25, 2010

Respectfully submitted,

Electronic signature:
/Roberto Colón/
Roberto Colón
Registration No.: 58,651
LERNER, DAVID, LITTENBERG, KRUMHOLZ
 & MENTLIK, LLP
600 South Avenue West
Westfield, New Jersey  07090
(908) 654-5000
Attorney for Applicant(s)

LD-458\
1240937_1.doc

IC-App-0219

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 12583702 |
| Filing Date | 2009-08-24 |
| First Named Inventor | Harry W. Eberle |
| Art Unit | 3635 |
| Examiner Name | M. R. Wendell |
| Attorney Docket Number | BHERON 3.0-001 CIP CON |

## U.S.PATENTS    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 5743672 | | 1998-04-28 | Cline | |
| | 2 | 6471434 | | 2002-10-29 | Chin et al. | |
| | 3 | 695722 | | 1902-03-01 | Heilmann | |
| | 4 | 6470641 | | 2002-10-29 | Faure | |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

## U.S.PATENT APPLICATION PUBLICATIONS    Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

## FOREIGN PATENT DOCUMENTS    Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 1 | | | | | | ☐ |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( **Not for submission under 37 CFR 1.99**)

| Application Number | 12583702 |
|---|---|
| Filing Date | 2009-08-24 |
| First Named Inventor | Harry W. Eberle |
| Art Unit | 3635 |
| Examiner Name | M. R. Wendell |
| Attorney Docket Number | BHERON 3.0-001 CIP CON |

If you wish to add additional Foreign Patent Document citation information please click the Add button   Add

Remove

## NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T⁵ |
|---|---|---|---|
| | 1 | Invoice for the sale of certain Eb-Ty Fasteners dated August 26, 1997. | ☐ |
| | 2 | Engineering Drawing depicting an Eb-Ty Fastener dated June 15, 1997. | ☐ |
| | 3 | Harry W. Eberle, III et al. v. KK manufacturing Co., et al., Civil Action No. 03-5809 (FLW-TJB), Invalidity Contentions related to U.S. Patent No. 6,402,415 and U.S. Patent No. 6,851,884. | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button   Add

## EXAMINER SIGNATURE

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

1 See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  2 Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  3 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 4 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  5 Applicant is to place a check mark here if English language translation is attached.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Not for submission under 37 CFR 1.99) | Application Number | 12583702 |
| | Filing Date | 2009-08-24 |
| | First Named Inventor | Harry W. Eberle |
| | Art Unit | 3635 |
| | Examiner Name | M. R. Wendell |
| | Attorney Docket Number | BHERON 3.0-001 CIP CON |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ None

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Roberto Colón/ | Date (YYYY-MM-DD) | 2010-08-25 |
| Name/Print | Roberto Colón | Registration Number | 58651 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

IC-App-0222

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 12583702 |
| **Filing Date:** | 24-Aug-2009 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Filer:** | Arnold H. Krumholz/Aisha Irvis |
| **Attorney Docket Number:** | 0247-2 CIP CON |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for continued examination | 2801 | 1 | 405 | 405 |
| **Total in USD ($)** | | | | **405** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 8290842 |
| **Application Number:** | 12583702 |
| **International Application Number:** | |
| **Confirmation Number:** | 2151 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Correspondence Address:** | Ernest D. Buff, Esq.<br>Ernest D. Buff & Associates, LLC<br>231 Somerville Road<br>-<br>Bedminster           NJ          07921<br>US      908-901-0220<br>- |
| **Filer:** | Arnold H. Krumholz/Aisha Irvis |
| **Filer Authorized By:** | Arnold H. Krumholz |
| **Attorney Docket Number:** | 0247-2 CIP CON |
| **Receipt Date:** | 25-AUG-2010 |
| **Filing Date:** | 24-AUG-2009 |
| **Time Stamp:** | 16:09:10 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $405 |

IC-App-0226

| RAM confirmation Number | 2588 |
|---|---|
| Deposit Account | 121095 |
| Authorized User | |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

　　Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

　　Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for Continued Examination (RCE) | BHERON6_-_Request_for_Continued_Examination_Fillable_PDF.pdf | 697428<br>6f7da006abf257720c3198cdb4dcbbc05f38b0b2 | no | 3 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | Miscellaneous Incoming Letter | BHERON6_-_IDS_-_Information_Disclosure_Statement_-_Reference_Enclosed_LD-458.pdf | 55491<br>dafeba67f38c67d434ac121c8e3033856e2920c2 | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| 3 | Information Disclosure Statement (IDS) Filed (SB/08) | BHERON6_-_Information_Disclosure_Statement_Fillable_PDF.pdf | 611945<br>6b2f47cc5d7b34faa8c05544dee127c2f944542c | no | 4 |
| Warnings: | | | | | |
| Information: | | | | | |
| 4 | NPL Documents | BHERON6_-_Invoice.pdf | 169127<br>579d4529a16eb8b7a6e7ca8ed5561cfd0ed5e693 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 5 | NPL Documents | BHERON6_-_BHERON6_Draw.pdf | 372561<br>909ee7112ddfd7eeee77c67b6d5f0ef4457804e0 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 6 | NPL Documents | BHERON6_INVALIDITY.pdf | 9609315<br>fe9bd3554afdf8d3553786ee3ae0859f0a655f6d | no | 106 |
| Warnings: | | | | | |
| Information: | | | | | |
| 7 | Fee Worksheet (PTO-875) | fee-info.pdf | 30525<br>7f32884a325062c0c5eaff66de02e8ae915d95b7 | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |

| Total Files Size (in bytes): | 11546392 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/81 (01-09)
Approved for use through 11/30/2011. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| POWER OF ATTORNEY OR REVOCATION OF POWER OF ATTORNEY WITH A NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Application Number | 12/583,702-Conf. #2151 |
|---|---|---|
| | Filing Date | August 24, 2009 |
| | First Named Inventor | Harry W. Eberle, III |
| | Title | EXPANSION-COMPENSATING DECK FASTENER |
| | Art Unit | 3635 |
| | Examiner Name | M. R. Wendell |
| | Attorney Docket No. | BHERON.6 |

I hereby revoke all previous powers of attorney given in the above-identified application.

[ ] A Power of Attorney is submitted herewith.

OR

[x] I hereby appoint Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

00530

OR

[ ] I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number | Practitioner(s) Name | Registration Number |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Please recognize or change the correspondence address for the above-identified application to:

[x] The address associated with the above-mentioned Customer Number:

OR

[ ] The address associated with Customer Number.

OR

| [ ] Firm or Individual Name | |
|---|---|
| Address | |

| City | | State | | Zip | |
| Country | | Telephone | | Email | |

I am the:

[x] Applicant/Inventor,

OR

[ ] Assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) (Form PTO/SB/96) submitted herewith or filed on _____

SIGNATURE of Applicant or Assignee of Record

| Signature | [signature] | Date | 8/21/10 |
|---|---|---|---|
| Name | Harry W. Eberle, III | Telephone | 400-488-3289 |
| Title and Company | Inventor and President of Blue Heron Enterprises, LLC | | |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

[ ] *Total of    1    forms are submitted

1

IC-App-0229

PTO/SB/21 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

| | |
|---|---|
| Application Number | 12/583,702-Conf. #2151 |
| Filing Date | August 24, 2009 |
| First Named Inventor | Harry W. Eberle, III |
| Art Unit | 3635 |
| Examiner Name | M. R. Wendell |

| Total Number of Pages in This Submission | 2 | Attorney Docket Number | BHERON 3.0-001 CIP CON |
|---|---|---|---|

## ENCLOSURES  (*Check all that apply*)

[ ] Fee Transmittal Form

    [ ] Fee Attached

[ ] Amendment/Reply

    [ ] After Final

    [ ] Affidavits/declaration(s)

[ ] Extension of Time Request

[ ] Express Abandonment Request

[ ] Information Disclosure Statement

[ ] Certified Copy of Priority Document(s)

[ ] Reply to Missing Parts/ Incomplete Application

    [ ] Reply to Missing Parts under 37 CFR 1.52 or 1.53

[ ] Drawing(s)

[ ] Licensing-related Papers

[ ] Petition

[ ] Petition to Convert to a Provisional Application

[x] Power of Attorney, Revocation Change of Correspondence Address

[ ] Terminal Disclaimer

[ ] Request for Refund

[ ] CD, Number of CD(s) _____

    [ ] Landscape Table on CD

Remarks

[ ] After Allowance Communication to TC

[ ] Appeal Communication to Board of Appeals and Interferences

[ ] Appeal Communication to TC (**Appeal Notice, Brief, Reply Brief**)

[ ] Proprietary Information

[ ] Status Letter

[ ] Other Enclosure(s) (please Identify below):

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| | |
|---|---|
| Firm Name | LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK, LLP |
| Signature | /Roberto Colón/ |
| Printed name | Roberto Colón |
| Date | September 1, 2010 |

Reg. No. 58,651

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted via the Office electronic filing system in accordance with § 1.6(a)(4).

Dated: September 1, 2010        Electronic Signature for Roberto Colón:  /Roberto Colón/

IC-App-0230

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 8334658 |
| **Application Number:** | 12583702 |
| **International Application Number:** | |
| **Confirmation Number:** | 2151 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Correspondence Address:** | Ernest D. Buff, Esq. <br> Ernest D. Buff & Associates, LLC <br> 231 Somerville Road <br> - <br> Bedminster NJ 07921 <br> US 908-901-0220 <br> - |
| **Filer:** | Arnold H. Krumholz/Aisha Irvis |
| **Filer Authorized By:** | Arnold H. Krumholz |
| **Attorney Docket Number:** | 0247-2 CIP CON |
| **Receipt Date:** | 01-SEP-2010 |
| **Filing Date:** | 24-AUG-2009 |
| **Time Stamp:** | 12:20:17 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

IC-App-0231

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Power of Attorney | Power_of_Attorney.pdf | 40024<br><br>e901398c78a5a2c403fa958zf3a7c24a04e80a57 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | Miscellaneous Incoming Letter | Transmittal_Form_9110.pdf | 37451<br><br>51061fdc434e6a915376452e850c9fa5adf3b7d7 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| | | Total Files Size (in bytes): | 77475 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



## United States Patent and Trademark Office

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | 0247-2 CIP CON |

**CONFIRMATION NO. 2151**

Ernest D. Buff, Esq.
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921

**POWER OF ATTORNEY NOTICE**



Date Mailed: 09/08/2010

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 09/01/2010.

- The Power of Attorney to you in this application has been revoked by the applicant. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

/atesfai/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

page 1 of 1

IC-App-0233

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | BHERON.6 |

**CONFIRMATION NO. 2151**

530
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

**POA ACCEPTANCE LETTER**


*OC000000043374979*

Date Mailed: 09/08/2010

# NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 09/01/2010.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

/atesfai/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

IC-App-0234

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

530        7590        09/21/2010

LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

| EXAMINER | |
|---|---|
| WENDELL, MARK R | |
| ART UNIT | PAPER NUMBER |
| 3635 | |

DATE MAILED: 09/21/2010

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | BHERON.6 | 2151 |

TITLE OF INVENTION: EXPANSION-COMPENSATING DECK FASTENER

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 12/21/2010 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

## HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.                    IC-App-0235

# PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>   **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or** <u>Fax</u>   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

530          7590          09/21/2010

LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | BHERON.6 | 2151 |

TITLE OF INVENTION: EXPANSION-COMPENSATING DECK FASTENER

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 12/21/2010 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| WENDELL, MARK R | 3635 | 052-403100 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.      ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

IC-App-0236

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | BHERON.6 | 2151 |

530        7590        09/21/2010

LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

| EXAMINER |
|---|
| WENDELL, MARK R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3635 | |

DATE MAILED: 09/21/2010

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.

IC-App-0237

| | Application No. | Applicant(s) | |
|---|---|---|---|
| **Notice of Allowability** | 12/583,702 | EBERLE, HARRY W. | |
| | **Examiner** | **Art Unit** | |
| | MARK R. WENDELL | 3635 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>RCE of 8/25/10</u>.

2. ☒ The allowed claim(s) is/are <u>1,2,4-8,11-14,16,18-20,22-36 and 40-50</u>.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

       1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date <u>8/25/10</u>

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____.

7. ☐ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____.

IC-App-0238

# DETAILED ACTION

### *Allowable Subject Matter*

The examiner has considered the IDS submitted 8/25/10 and the references submitted

with it and has found all previously allowed claims still allowable in view of these

references.


The following is an examiner's statement of reasons for allowance:  The examiner notes

that while the references submitted are closely related prior art, none of the references

teaches or fairly suggest motivation to include a compressive element on the anchoring

biscuit located away from the centerline and vertical members.

Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to MARK R. WENDELL whose telephone number is

(571)270-3245.  The examiner can normally be reached on Mon-Thur.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Richard Chilcot can be reached on (571) 272-6777. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Richard E. Chilcot, Jr./                                    Mark R. Wendell
Supervisory Patent Examiner, Art Unit 3635    Examiner
                                                             Art Unit 3635

/M. R. W./
Examiner, Art Unit 3635
August 30, 2010

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| | Application Number | 12583702 |
| | Filing Date | 2009-08-24 |
| | First Named Inventor | Harry W. Eberle |
| | Art Unit | 3635 |
| | Examiner Name | M. R. Wendell |
| | Attorney Docket Number | BHERON 3.0-001 CIP CON |

## U.S.PATENTS    [Remove]

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 5743672 | | 1998-04-28 | Cline | |
| | 2 | 6471434 | | 2002-10-29 | Chin et al. | |
| | 3 | 695722 | | 1902-03-01 | Heilmann | |
| | 4 | 6470641 | | 2002-10-29 | Faure | |

If you wish to add additional U.S. Patent citation information please click the Add button.    [Add]

## U.S.PATENT APPLICATION PUBLICATIONS    [Remove]

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    [Add]

## FOREIGN PATENT DOCUMENTS    [Remove]

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|

EFS Web 2.1.17        ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.W./    /CHRISTOPHER J BOSWELL/

Receipt date: 08/25/2010

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( **Not for submission under 37 CFR 1.99**)

| Application Number | 12583702 | 12583702 - GAU: 3635 |
|---|---|---|
| Filing Date | 2009-08-24 | |
| First Named Inventor | Harry W. Eberle | |
| Art Unit | 3635 | |
| Examiner Name | M. R. Wendell | |
| Attorney Docket Number | BHERON 3.0-001 CIP CON | |

| | 1 | | | | | | ☐ |
|---|---|---|---|---|---|---|---|

If you wish to add additional Foreign Patent Document citation information please click the Add button [Add]

[Remove]

## NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | Invoice for the sale of certain Eb-Ty Fasteners dated August 26, 1997. | ☐ |
| | 2 | Engineering Drawing depicting an Eb-Ty Fastener dated June 15, 1997. | ☐ |
| | 3 | Harry W. Eberle, III et al. v. KK manufacturing Co., et al., Civil Action No. 03-5809 (FLW-TJB), Invalidity Contentions related to U.S. Patent No. 6,402,415 and U.S. Patent No. 6,851,884. **Received 8/25/2010** | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button [Add]

## EXAMINER SIGNATURE

| Examiner Signature | /Mark Wendell/ | Date Considered | 08/30/2010 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.17

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./

# Index of Claims

| Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|
| 12583702 | EBERLE, HARRY W. |
| **Examiner** | **Art Unit** |
| MARK R WENDELL | 3635 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/26/2010 | 06/03/2010 | 06/28/2010 | | | | | |
| 1 | 1 | ✓ | = | = | | | | | |
| 2 | 2 | ✓ | = | = | | | | | |
|  | 3 | O | - | - | | | | | |
| 3 | 4 | ✓ | = | = | | | | | |
| 4 | 5 | ✓ | = | = | | | | | |
| 5 | 6 | ✓ | = | = | | | | | |
| 6 | 7 | ✓ | = | = | | | | | |
| 7 | 8 | O | = | = | | | | | |
|  | 9 | ✓ | - | - | | | | | |
|  | 10 | ✓ | - | - | | | | | |
| 8 | 11 | ✓ | = | = | | | | | |
| 9 | 12 | ✓ | = | = | | | | | |
| 10 | 13 | ✓ | = | = | | | | | |
| 11 | 14 | ✓ | = | = | | | | | |
|  | 15 | ✓ | - | - | | | | | |
| 12 | 16 | ✓ | = | = | | | | | |
|  | 17 | O | - | - | | | | | |
| 13 | 18 | O | = | = | | | | | |
| 14 | 19 | O | = | = | | | | | |
| 15 | 20 | O | = | = | | | | | |
|  | 21 | ✓ | - | - | | | | | |
| 23 | 22 | ✓ | = | = | | | | | |
| 24 | 23 | ✓ | = | = | | | | | |
| 25 | 24 | ✓ | = | = | | | | | |
| 22 | 25 | O | = | = | | | | | |
| 26 | 26 | O | = | = | | | | | |
| 27 | 27 | O | = | = | | | | | |
| 16 | 28 | O | = | = | | | | | |
| 17 | 29 | O | = | = | | | | | |
| 18 | 30 | O | = | = | | | | | |
| 19 | 31 | O | = | = | | | | | |
| 20 | 32 | O | = | = | | | | | |
| 21 | 33 | ✓ | = | = | | | | | |
| 30 | 34 | ✓ | = | = | | | | | |
| 31 | 35 | ✓ | = | = | | | | | |
| 32 | 36 | ✓ | = | = | | | | | |

# Index of Claims

| | |
|---|---|
| **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
| 12583702 | EBERLE, HARRY W. |
| **Examiner** | **Art Unit** |
| MARK R WENDELL | 3635 |

| | | | | | | |
|---|---|---|---|---|---|---|
| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/26/2010 | 06/03/2010 | 06/28/2010 | | | | | |
| | 37 | O | - | - | | | | | |
| | 38 | O | - | - | | | | | |
| | 39 | ✓ | - | - | | | | | |
| 33 | 40 | O | = | = | | | | | |
| 34 | 41 | O | = | = | | | | | |
| 35 | 42 | O | = | = | | | | | |
| 38 | 43 | ✓ | = | = | | | | | |
| 28 | 44 | | = | = | | | | | |
| 39 | 45 | | = | = | | | | | |
| 29 | 46 | | = | = | | | | | |
| 36 | 47 | | = | = | | | | | |
| 40 | 48 | | = | = | | | | | |
| 41 | 49 | | = | = | | | | | |
| 37 | 50 | | = | = | | | | | |

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 12583702 | EBERLE, HARRY W. |
| | **Examiner** | **Art Unit** |
| | MARK R WENDELL | 3635 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | | **NON-CLAIMED** | | | | |
| 52 | 403.1 | E | 0 | 4 | F | 15 / 22 (2006.0) | | | | | | |

**CROSS REFERENCE(S)**

| | | E | 0 | 4 | B | 2 / 00 (2006.0) | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | F | 1 | 6 | B | 9 / 00 (2006.0) | | | | |

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | |
|---|---|---|---|---|---|
| 52 | 586.1 | 586.2 | 483.1 | 480 | 650.3 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| ☐ Claims renumbered in the same order as presented by applicant | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** |
| 1 | 1 | | 17 | 21 | 33 | 41 | 49 | | | | | | |
| 2 | 2 | 13 | 18 | 30 | 34 | 37 | 50 | | | | | | |
| | 3 | 14 | 19 | 31 | 35 | | | | | | | | |
| 3 | 4 | 15 | 20 | 32 | 36 | | | | | | | | |
| 4 | 5 | | 21 | | 37 | | | | | | | | |
| 5 | 6 | 23 | 22 | | 38 | | | | | | | | |
| 6 | 7 | 24 | 23 | | 39 | | | | | | | | |
| 7 | 8 | 25 | 24 | 33 | 40 | | | | | | | | |
| | 9 | 22 | 25 | 34 | 41 | | | | | | | | |
| | 10 | 26 | 26 | 35 | 42 | | | | | | | | |
| 8 | 11 | 27 | 27 | 38 | 43 | | | | | | | | |
| 9 | 12 | 16 | 28 | 28 | 44 | | | | | | | | |
| 10 | 13 | 17 | 29 | 39 | 45 | | | | | | | | |
| 11 | 14 | 18 | 30 | 29 | 46 | | | | | | | | |
| | 15 | 19 | 31 | 36 | 47 | | | | | | | | |
| 12 | 16 | 20 | 32 | 40 | 48 | | | | | | | | |

| /MARK R WENDELL/ Examiner.Art Unit 3635 | 8/30/10 | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 41 | |
| /Richard E Chilcot, Jr./ Supervisory Patent Examiner.Art Unit 3635 | 09/10/2010 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 4a |

| *Search Notes*  | Application/Control No. 12583702 | Applicant(s)/Patent Under Reexamination EBERLE, HARRY W. |
|---|---|---|
| | Examiner MARK R WENDELL | Art Unit 3635 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 52 | 586.1, 586.2, 483.1, 480, 650.3, 403.1 | 4/26/10 | MRW |
| 403 | 231, 232.1, 408.1 | 4/26/10 | MRW |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Consulted Previous Search history in the patent family | 4/26/10 | MRW |
| Considered New IDS | 6/28/10 | MRW |
| Considered new IDS and submitted documents | 8/30/10 | MRW |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | Consulted Family of Patents and applications | 6/3/10 | MRW |
| | Keyword Search of claims | 6/3/10 | MRW |

| | |
|---|---|
| | |

## PART B -FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>  **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or <u>Fax</u>  (571) 273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, New Jersey 07090

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle, III | BHERON 3.0-001 CIP CON | 2151 |

TITLE OF INVENTION:     EXPANSION-COMPENSATING DECK FASTENER

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| Non-Provisional | yes | $755.00 | $300.00 | $1,055.00 | 12/21/2010 |

| EXAMINER | | ART UNIT | CLASS-SUBCLASS |
|---|---|---|---|
| M. R. Wendell | | 3635 | 052-403.100 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  Lerner, David, Littenberg, Krumholz & Mentlik, LLP

2  _____

3  _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are enclosed:**

☒ Issue Fee

☒ Publication Fee (No small entity discount permitted)

☐ Advance Order -# of Copies  _____

**4b. Payment of Fee(s):**

☐ A check in the amount of the fee(s) is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☒ The Director is hereby authorized by charge the required fee(s), or credit any overpayment, to Deposit Account Number   12-1095 .

**5. Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.   ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

The Director of the USPTO is requested to apply the Issue Fee and Publication Fee (if required) or to re-apply any previously paid issue fee to the application identified above.
NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

| Authorized Signature | /Roberto Colón/ | Date | December 15, 2010 |
|---|---|---|---|
| Typed or printed name | Roberto Colón | Registration No. | 58,651 |

PTOL-85 (Rev. 08/08) Approved for use through 08/31/2013. OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

IC-App-0247

# Certificate of Electronic Filing Under 37 CFR 1.8

I hereby certify that this correspondence is being transmitted via the Office electronic filing system in accordance with 37 CFR 1.6(a)(4):

> Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA  22313-1450

on     <u>December 15, 2010</u>
            Date

<u>/Roberto Colón/</u>
Signature

<u>Roberto Colón</u>
Typed or printed name of person signing Certificate

<u>58,651</u>                   <u>(908) 654-5000</u>
Registration Number, if applicable        Telephone Number

Note:  Each paper must have its own certificate of mailing.

Issue Fee Transmittal (1 page)
Charge $1,055.00 to deposit account 12-1095

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 12583702 |
| **Filing Date:** | 24-Aug-2009 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Filer:** | April M. Capati/Arleen Taylor |
| **Attorney Docket Number:** | BHERON 3.0-001 CIP CON |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 2501 | 1 | 755 | 755 |

IC-App-0249

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **1055** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 9038623 |
| **Application Number:** | 12583702 |
| **International Application Number:** | |
| **Confirmation Number:** | 2151 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Customer Number:** | 00530 |
| **Filer:** | April M. Capati/Arleen Taylor |
| **Filer Authorized By:** | April M. Capati |
| **Attorney Docket Number:** | BHERON 3.0-001 CIP CON |
| **Receipt Date:** | 15-DEC-2010 |
| **Filing Date:** | 24-AUG-2009 |
| **Time Stamp:** | 11:47:48 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $1055 |
| RAM confirmation Number | 9608 |
| Deposit Account | 121095 |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

IC-App-0251

| 1 | Issue Fee Payment (PTO-85B) | BHERON6_-_Fee_Transmittal_--_Part_B_PTOL-85.pdf | 66223<br><br>a348b0e945354ed8ff93272837d2e60cca8cd905 | no | 2 |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 31972<br><br>5faf2314b81899f00a1de1487689bba1cd6c3763 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 98195 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/583,702 | 01/25/2011 | 7874113 | BHERON 3.0-001 CIP CON | 2151 |

530          7590          01/05/2011

LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

## ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Harry W. Eberle III, Califon, NJ;

IR103 (Rev. 10/09)

IC-App-0253

PTO/AIA/80 (07-12)
Approved for use through 11/30/2014. OMB 0651-0035
U.S. Patent and Trademark Office; U.S DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## POWER OF ATTORNEY TO PROSECUTE APPLICATIONS BEFORE THE USPTO

I hereby revoke all previous powers of attorney given in the application identified in the attached statement under 37 CFR 3.73(c).

I hereby appoint:

☒ Practitioners associated with Customer Number:

| 122085 |
|---|

**OR**

☐ Practitioner(s) named below (if more than ten patent practitioners are to be named, then a customer number must be used):

| Name | Registration Number | | Name | Registration Number |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

As attorney(s) or agent(s) to represent the undersigned before the United States Patent and Trademark Office (USPTO) in connection with any and all patent applications assigned <u>only</u> to the undersigned according to the USPTO assignment records or assignments documents attached to this form in accordance with 37 CFR 3.73(c).

Please change the correspondence address for the application identified in the attached statement under 37 CFR 3.73(c) to:

☒ The address associated with Customer Number:

| 122085 |
|---|

**OR**

| Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

Assignee Name and Address: SIMPSON STRONG-TIE COMPANY INC.
5956 West Las Positas Blvd.
Pleasanton, California 94588

A copy of this form, together with a statement under 37 CFR 3.73(c) (Form PTO/AIA/96 or equivalent) is required to be Filed in each application in which this form is used. The statement under 37 CFR 3.73(c) may be completed by one of The practitioners appointed in this form, and must identify the application in which this Power of Attorney is to be filed.

### SIGNATURE of Assignee of Record
The individual whose signature and title is supplied below is authorized to act on behalf of the assignee

| Signature | _[signature]_ | Date | 6.25.15 |
|---|---|---|---|
| Name | Stephen A. Protzin | Telephone | 925.560.9082 |
| Title | Legal Manager | | |

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

IC-App-0254

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

Applicant/Patent Owner: SIMPSON STRONG-TIE COMPANY INC.

Application No./Patent No.: 12/583,702 _____ Filed/Issue Date: August 24, 2009

Titled: EXPANSION-COMPENSATING DECK FASTENER

SIMPSON STRONG-TIE COMPANY INC. , a corporation

(Name of Assignee)      (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that, for the patent application/patent identified above, it is (choose **one** of options 1, 2, 3 or 4 below):

1. [✓] The assignee of the entire right, title, and interest.

2. [ ] An assignee of less than the entire right, title, and interest (check applicable box):

      [ ] The extent (by percentage) of its ownership interest is _____%. Additional Statement(s) by the owners holding the balance of the interest must be submitted to account for 100% of the ownership interest.

      [ ] There are unspecified percentages of ownership. The other parties, including inventors, who together own the entire right, title and interest are:

      Additional Statement(s) by the owner(s) holding the balance of the interest must be submitted to account for the entire right, title, and interest.

3. [ ] The assignee of an undivided interest in the entirety (a complete assignment from one of the joint inventors was made). The other parties, including inventors, who together own the entire right, title, and interest are:

      Additional Statement(s) by the owner(s) holding the balance of the interest must be submitted to account for the entire right, title, and interest.

4. [ ] The recipient, via a court proceeding or the like (*e.g.*, bankruptcy, probate), of an undivided interest in the entirety (a complete transfer of ownership interest was made). The certified document(s) showing the transfer is attached.

The interest identified in option 1, 2 or 3 above (not option 4) is evidenced by either (choose **one** of options A or B below):

A. [ ] An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____, Frame _____, or for which a copy thereof is attached.

B. [✓] A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

      1. From: inventor _____ To: Blue Heron Enterprises, LLC

         The document was recorded in the United States Patent and Trademark Office at
         Reel 037213 , Frame 0737 , or for which a copy thereof is attached.

      2. From: Blue Heron Enterprises, LLC _____ To: SIMPSON STRONG-TIE COMPANY INC.

         The document was recorded in the United States Patent and Trademark Office at
         Reel 037413 , Frame 0698 , or for which a copy thereof is attached.

[Page 1 of 2]

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*   IC-App-0255

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# STATEMENT UNDER 37 CFR 3.73(c)

3. From: _____  To: _____

      The document was recorded in the United States Patent and Trademark Office at

      Reel _____, Frame _____, or for which a copy thereof is attached.

4. From: _____  To: _____

      The document was recorded in the United States Patent and Trademark Office at

      Reel _____, Frame _____, or for which a copy thereof is attached.

5. From: _____  To: _____

      The document was recorded in the United States Patent and Trademark Office at

      Reel _____, Frame _____, or for which a copy thereof is attached.

6. From: _____  To: _____

      The document was recorded in the United States Patent and Trademark Office at

      Reel _____, Frame _____, or for which a copy thereof is attached.

☐   Additional documents in the chain of title are listed on a supplemental sheet(s).

☐   As required by 37 CFR 3.73(c)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

      [NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

| | |
|---|---|
| /Cecily Anne O'Regan/ | January 7, 2016 |
| Signature | Date |
| Cecily Anne O'Regan | 37448 |
| Printed or Typed Name | Title or Registration Number |

[Page 2 of 2]

IC-App-0256

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 24563697 |
| **Application Number:** | 12583702 |
| **International Application Number:** | |
| **Confirmation Number:** | 2151 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Customer Number:** | 530 |
| **Filer:** | Cecily Anne O'Regan/Ruth Der |
| **Filer Authorized By:** | Cecily Anne O'Regan |
| **Attorney Docket Number:** | BHERON 3.0-001 CIP CON |
| **Receipt Date:** | 07-JAN-2016 |
| **Filing Date:** | 24-AUG-2009 |
| **Time Stamp:** | 19:14:48 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Power of Attorney | powerofattorney.pdf | 1413636 <br> 7d3adb7195857f2880bb82e0de986cca07f19f95 | no | 1 |

| |
|---|
| Warnings: |
| Information: |

IC-App-0257

| 2 | Assignee showing of ownership per 37 CFR 3.73 | assigneestatement.pdf | 75495<br><br>bbb2e8c04b9607ae63e7c75d1407e873cccb2a93c | no | 2 |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 1489131 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | BHERON 3.0-001 CIP CON |

**CONFIRMATION NO. 2151**

122085
Shartsis Friese LLP
One Maritime Plaza
18th floor
San Francisco, CA 94111

**POA ACCEPTANCE LETTER**


*OC000000080000072*

Date Mailed: 01/20/2016

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 01/07/2016.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/fstephanos/

_____

IC-App-0259



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | BHERON 3.0-001 CIP CON |

**CONFIRMATION NO. 2151**

530
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

**POWER OF ATTORNEY NOTICE**



*OC000000080000057*

Date Mailed: 01/20/2016

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 01/07/2016.

- The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/fstephanos/

_____

IC-App-0260


UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY.DOCKET NO./TITLE | REQUEST ID |
|---|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle | 1435.10602 | 10847 |

## Acknowledgement of Loss of Entitlement to Entity Status Discount

The entity status change request below filed through Private PAIR on 01/22/2016 has been accepted.

## CERTIFICATIONS:

| Change of Entity Status: |
|---|
| ✕ Applicant changing to regular undiscounted fee status. |
| NOTE: Checking this box will be taken to be notification of loss of entitlement to small or micro entity status, as applicable. |

**This portion must be completed by the signatory or signatories making the entity status change in accordance with 37 CFR 1.4(d)(4).**

| | |
|---|---|
| **Signature:** | /Cecily Anne O'Regan/ |
| **Name:** | Cecily Anne O'Regan |
| **Registration Number:** | 37448 |

AO 120 (Rev. 08/10)

| TO: Mail Stop 8<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court ___Middle District of Florida___ on the following

☐ Trademarks or   ✖ Patents.   ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>8:16-cv-2862-T-23TGW | DATE FILED<br>October 7, 2016 | U.S. DISTRICT COURT<br>Middle District of Florida |
|---|---|---|
| PLAINTIFF<br><br>IPE CLIP FASTENER COMPANY, LLC | | DEFENDANT<br><br>SIMPSON STRONG-TIE COMPANY, INC. |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | US 7,874,1 13 B2 | January 25, 2011 | |
| 2 | US 8,161,702 B2 | April 24, 2012 | |

In the above—entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
|---|
| |

| CLERK<br>SHERYL L. LOESCH | (BY) DEPUTY CLERK<br>Gabrielle Spell | DATE<br>October 11, 2016 |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy**

IC-App-0262

AO 120 (Rev. 08/10)

| TO: Mail Stop 8<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court ___Middle District of Florida___ on the following

☐ Trademarks or   ✖ Patents.   (   ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>8:16-cv-3295-T-30TBM | DATE FILED<br>November 30, 2016 | U.S. DISTRICT COURT<br>Middle District of Florida | |
|---|---|---|---|
| PLAINTIFF<br><br>SIMPSON STRONG-TIE COMPANY, INC. | | DEFENDANT<br><br>THE IPE CLIP FASTENER COMPANY, LLC | |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 6,402,415 | | BHE |
| 2 | 7,874,113 B2 | January 25, 2011 | BHE |
| 3 | 8,161,702 B2 | April 24, 2012 | BHE |

In the above—entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
|---|
| |

| CLERK<br>SHERYL L. LOESCH | (BY) DEPUTY CLERK<br>Gabrielle Spell | DATE<br>November 30, 2016 |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy**

IC-App-0263

PTO/AIA/81A (02-15)
Approved for use through 01/31/2018. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT - POWER OF ATTORNEY OR REVOCATION OF POWER OF ATTORNEY WITH A NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Patent Number | 7,874,113 |
|---|---|---|
| | Issue Date | 01-25-2011 |
| | First Named Inventor | Harry W. Eberle, III |
| | Title | Expansion-Compensating Deck Fastener |
| | Attorney Docket No. | SST-2359 |

I hereby revoke all previous powers of attorney given in the above-identified patent.

☐ A Power of Attorney is submitted herewith.

OR

☒ I hereby appoint Practitioner(s) associated with the Customer Number identified in the box at right as my/our attorney(s) or agent(s) with respect to the patent identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

498

OR

☐ I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) with respect to the patent identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number |
|---|---|
| | |
| | |
| | |

Please recognize or change the correspondence address for the above-identified patent to:

☒ The address associated with the above-identified Customer Number.

OR

☐ The address associated with the Customer Number identified in the box at right:

OR

| Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

I am the:

☐ Applicant.

OR

☒ Patent owner.
  *Statement under 37 CFR 3.73(c) (Form PTO/AIA/96) submitted herewith or filed on* _____.

### SIGNATURE of Applicant or Patent Owner

| Signature | [signature] | Date | 3.17.17 |
|---|---|---|---|
| Name | Brian Megguish | Telephone | (510) 632-4111 |
| Title and Company | CFO, Simpson Strong-Tie Company, Inc. | | |

NOTE: Signatures of all the applicants or patent owners of the entire interest or their representative(s) are required. If more than one signature is required, submit multiple forms, check the box below, and identify the total number of forms submitted in the blank below.

☐ A total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public, which is to update (and by the USPTO to process) the file of a patent or reexamination proceeding. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Copied from 90013900 on 03/27/2017

IC-App-0264

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 28723076 |
| **Application Number:** | 90013900 |
| **International Application Number:** | |
| **Confirmation Number:** | 1014 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | 7874113 |
| **Customer Number:** | 122085 |
| **Filer:** | Charles Russell Cypher/Rachel Granberg |
| **Filer Authorized By:** | Charles Russell Cypher |
| **Attorney Docket Number:** | I055-0005RE |
| **Receipt Date:** | 23-MAR-2017 |
| **Filing Date:** | 02-FEB-2017 |
| **Time Stamp:** | 17:37:57 |
| **Application Type:** | Reexam (Third Party) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal Letter | SST-2359_Certificate-of-Mailing.pdf | 14732<br>a49d9fc0d228e1e5cf057edd567fea9c03a6d885 | no | 1 |

**Warnings:**

IC-App-0265

Copied from 90013900 on 03/27/2017

| | | Information: | | | | |
|---|---|---|---|---|---|---|

| 2 | | SST-2359_Signed-Statement-and-Signed-PoA_2.pdf | 788453 | yes | 3 |
| | | | f6b1bc4976e079ecd2cb9ae4200a22f9b77b380d | | |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Assignee showing of ownership per 37 CFR 3.73 | 1 | 2 |
| Power of Attorney | 3 | 3 |

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 803185 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Copied from 90013900 on 03/27/2017

IC-App-0266

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*In re* application of: Re-Examination of US Patent No. 7,874,113

Application No.: 90/013,900        Examiner: Fetsuga, Robert M.

Re-Exam Filing Date: 02-02-2017

For: Expansion-Compensating Deck
     Fastener


Commissioner for
P.O. Box 145
Alexandria, VA 22313-145

## CERTIFICATE OF TRANSMISSION UNDER 37 CFR 1.8

Sir/Madam:

CERTIFICATE OF TRANSMISSION 37 CFR 1.8(a)(1)(C)

I hereby certify that this correspondence, including listed enclosures, is being transmitted to the United States Patent Office via the Patent Office's Electronic Filing System (EFS) on March 23, 2017.

Enclosures:

    1. Statement Under 37 CFR 3.73(c) (Form PTO/AIA/96, 2 pages)

    2. Patent – Power of Attorney Or Revocation of Power of Attorney with a New Power of Attorney and Change of Correspondence Address (Form PTO/AIA/81A, 1 page)


Signed: /s Charles R. Cypher/
     Charles R.Cypher

IC-App-0267
Copied from 90013900 on 03/27/2017

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# STATEMENT UNDER 37 CFR 3.73(c)

Applicant/Patent Owner: SIMPSON STRONG-TIE COMPANY INC.

Application No./Patent No.: 12/583,702    Filed/Issue Date: August 24, 2009

Titled: EXPANSION-COMPENSATING DECK FASTENER

SIMPSON STRONG-TIE COMPANY INC. , a corporation

(Name of Assignee)    (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that, for the patent application/patent identified above, it is (choose **one** of options 1, 2, 3 or 4 below):

1. [✓] The assignee of the entire right, title, and interest.

2. [ ] An assignee of less than the entire right, title, and interest (check applicable box):

    [ ] The extent (by percentage) of its ownership interest is _____ %. Additional Statement(s) by the owners holding the balance of the interest <u>must be submitted</u> to account for 100% of the ownership interest.

    [ ] There are unspecified percentages of ownership. The other parties, including inventors, who together own the entire right, title and interest are:

    Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

3. [ ] The assignee of an undivided interest in the entirety (a complete assignment from one of the joint inventors was made). The other parties, including inventors, who together own the entire right, title, and interest are:

    Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

4. [ ] The recipient, via a court proceeding or the like (*e.g.*, bankruptcy, probate), of an undivided interest in the entirety (a complete transfer of ownership interest was made). The certified document(s) showing the transfer is attached.

The interest identified in option 1, 2 or 3 above (not option 4) is evidenced by either (choose **one** of options A or B below):

A. [ ] An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____, Frame _____, or for which a copy thereof is attached.

B. [✓] A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

   1. From: inventor    To: Blue Heron Enterprises, LLC

    The document was recorded in the United States Patent and Trademark Office at
    Reel 037213 , Frame 0737 , or for which a copy thereof is attached.

   2. From: Blue Heron Enterprises, LLC    To: SIMPSON STRONG-TIE COMPANY INC.

    The document was recorded in the United States Patent and Trademark Office at
    Reel 037413 , Frame 0698 , or for which a copy thereof is attached.

[Page 1 of 2]

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*   IC-App-0268

Copied from 90013900 on 03/27/2017

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

3. From: _____  To: _____

    The document was recorded in the United States Patent and Trademark Office at

    Reel _____, Frame _____, or for which a copy thereof is attached.

4. From: _____  To: _____

    The document was recorded in the United States Patent and Trademark Office at

    Reel _____, Frame _____, or for which a copy thereof is attached.

5. From: _____  To: _____

    The document was recorded in the United States Patent and Trademark Office at

    Reel _____, Frame _____, or for which a copy thereof is attached.

6. From: _____  To: _____

    The document was recorded in the United States Patent and Trademark Office at

    Reel _____, Frame _____, or for which a copy thereof is attached.

☐   Additional documents in the chain of title are listed on a supplemental sheet(s).

☐   As required by 37 CFR 3.73(c)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

    [NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

| | |
|---|---|
| /Cecily Anne O'Regan/ | January 7, 2016 |
| Signature | Date |
| Cecily Anne O'Regan | 37448 |
| Printed or Typed Name | Title or Registration Number |

[Page 2 of 2]

Copied from 90013900 on 03/27/2017

IC-App-0269

 United States Patent and Trademark Office

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

Bib Data Sheet

**CONFIRMATION NO. 2151**

| SERIAL NUMBER 12/583,702 | FILING OR 371(c) DATE 08/24/2009 RULE | CLASS 052 | GROUP ART UNIT 3635 | ATTORNEY DOCKET NO. 1435.10602 |
|---|---|---|---|---|

| AIA (First Inventor to File): NO |
|---|

**INVENTORS**
  Harry W. Eberle III, Califon, NJ;

**APPLICANTS**
  Harry W. Eberle III, Califon, NJ;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
  This application is a CON of 10/446,514 05/28/2003 PAT 7578105
  which is a CIP of 10/393,100 03/20/2003 PAT 6851884

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\***
00/00/2000

| Foreign Priority claimed ☐ yes ☐ no 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance Verified and Acknowledged _____ Examiner's Signature          Initials | STATE OR COUNTRY NJ | SHEETS DRAWING 6 | TOTAL CLAIMS 43 | INDEPENDENT CLAIMS 3 |
|---|---|---|---|---|

| ADDRESS 498 |
|---|

| TITLE EXPANSION-COMPENSATING DECK FASTENER |
|---|

| FILING FEE RECEIVED 1663 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | 1435.10602 |

**CONFIRMATION NO. 2151**

498
Cypher Law Offices
409 13th Street, 11th Floor
OAKLAND, CA 94612

**POA ACCEPTANCE LETTER**



*OC000000090191807*

Date Mailed: 05/24/2017

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 03/23/2017.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/rbell/

_____

page 1 of 1

IC-App-0271



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/583,702 | 08/24/2009 | Harry W. Eberle III | 1435.10602 |

**CONFIRMATION NO. 2151**

122085
Shartsis Friese LLP
One Maritime Plaza
18th floor
San Francisco, CA 94111

**POWER OF ATTORNEY NOTICE**


*OC000000090191739*

Date Mailed: 05/24/2017

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 03/23/2017.

• The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/rbell/

IC-App-0272

# Exhibit D

PTO/SB/05 (08-08)
Approved for use through 09/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| UTILITY PATENT APPLICATION TRANSMITTAL | Attorney Docket No. | BHERON 3.0-001 CIP CON CON |
| | First Inventor | Harry W. Eberle, III |
| | Title | EXPANSION-COMPENSATING DECK FASTENER |
| (ONLY FOR NEW NONPROVISIONAL APPLICATIONS UNDER 37 CFR 1.53(B)) | Express Mail Label No. | |

## APPLICATION ELEMENTS
*See MPEP chapter 600 concerning utility patent application contents.*

ADDRESS TO: **Commissioner for Patents**
P.O. Box 1450
Alexandria, VA 22313-1450

1. [ ] **Fee Transmittal Form** (e.g., PTO/SB/17)

2. [X] **Applicant claims small entity status.** See 37 CFR 1.27.

3. [X] **Specification** [Total Pages **22**]
Both the claims and abstract must start on a new page
(For information on the preferred arrangement, see MPEP 608.01(a))

4. [X] **Drawing(s)** (35 U.S.C. 113) [Total Sheets **6**]

5. **Oath or Declaration** [Total Sheets **1**]
   a. [ ] Newly executed (original or copy)
   b. [X] A copy from a prior application (37 CFR 1.63(d))
   (for continuation/divisional with Box 18 completed)
      i. [ ] DELETION OF INVENTOR(S)
      Signed statement attached deleting inventor(s) name in the prior application, see 37 CFR 1.63(d)(2) and 1.33(b).

6. [X] **Application Data Sheet.** See 37 CFR 1.76

7. [ ] **CD-ROM or CD-R** in duplicate, large table or Computer Program (Appendix)
[ ] Landscape Table on CD

8. **Nucleotide and/or Amino Acid Sequence Submission**
(if applicable, items a. – c. are required)
   a. [ ] Computer Readable Form (CRF)
   b. [ ] Specification Sequence Listing on:
      i. [ ] CD-ROM or CD-R (2 copies); or ii. [ ] Paper
   c. [ ] Statements verifying identity of above copies

### ACCOMPANYING APPLICATION PARTS

9. [ ] **Assignment Papers** (cover sheet & document(s))
   Name of Assignee

10. [ ] **37 CFR 3.73(b) Statement** (when there is an assignee) [X] **Power of Attorney**

11. [ ] **English Translation Document** (if applicable)

12. [ ] **Information Disclosure Statement** (PTO/SB/08 or PTO-1449)
   [ ] Copies of citations attached

13. [ ] **Preliminary Amendment**

14. [ ] **Return Receipt Postcard** (MPEP 503)
   (Should be specifically itemized)

15. [ ] **Certified Copy of Priority Document(s)**
   (if foreign priority is claimed)

16. [ ] **Nonpublication Request** under 35 U.S.C.122 (b)(2)(B)(i).
   Applicant must attach form PTO/SB/35 or equivalent.

17. [ ] Other:

18. If a CONTINUING APPLICATION, check appropriate box, and supply the requisite information below and in the first sentence of the specification following the title, or in an Application Data Sheet under 37 CFR 1.76:
   [X] Continuation [ ] Divisional [ ] Continuation-in-part (CIP) of prior application No.: **12/583,702**
   Prior application information: Examiner **Not Yet Assigned** Art Unit: **N/A**

### 19. CORRESPONDENCE ADDRESS

[X] The address associated with Customer Number: **00530** **OR** [ ] Correspondence address below

| Name | |
| Address | |
| City | | State | | Zip Code | |
| Country | | Telephone | | Email | |

| Signature | /Roberto Colón/ | Date | November 23, 2010 |
| Name (Print/Type) | Roberto Colón | Registration No. (Attorney/Agent) | 58,651 |

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted via the Office electronic filing system in accordance with § 1.6(a)(4).

Dated: November 23, 2010     Electronic Signature for Roberto Colón:  /Roberto Colón/

1298543

IC-App-0273

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle, III |
| **Filer:** | Arnold H. Krumholz/Aisha Irvis |
| **Attorney Docket Number:** | BHERON 3.0-001 CIPCONCON |
| Filed as Small Entity | |

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility filing Fee (Electronic filing) | 4011 | 1 | 82 | 82 |
| Utility Search Fee | 2111 | 1 | 270 | 270 |
| Utility Examination Fee | 2311 | 1 | 110 | 110 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 2202 | 5 | 26 | 130 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **592** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 8902056 |
| **Application Number:** | 12952876 |
| **International Application Number:** | |
| **Confirmation Number:** | 2504 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle, III |
| **Customer Number:** | 00530 |
| **Filer:** | Arnold H. Krumholz/Aisha Irvis |
| **Filer Authorized By:** | Arnold H. Krumholz |
| **Attorney Docket Number:** | BHERON 3.0-001 CIPCONCON |
| **Receipt Date:** | 23-NOV-2010 |
| **Filing Date:** | |
| **Time Stamp:** | 16:18:16 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $ 592 |
| RAM confirmation Number | 3486 |
| Deposit Account | 121095 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

IC-App-0276

# File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Application Data Sheet | BHERON5_-_Application_Data_Sheet_Fillable_PDF.pdf | 1031462<br>fbfa00d4a3db83047fc61e03070388b03dd1ee5d | no | 4 |

**Warnings:**

**Information:**

| 2 | Drawings-only black and white line drawings | BHERON5_-_Drawings.pdf | 317786<br>f2d0be4ef333555e00a04edc01d44da42b426409 | no | 6 |

**Warnings:**

**Information:**

| 3 | Specification | BHERON_3_0_001_CIP_CON_CON-_US_Appln_12583702.pdf | 122475<br>fbf62cd7ae10b34a1ea7bc8d619e40f1db0efb7d | no | 22 |

**Warnings:**

**Information:**

| 4 | Oath or Declaration filed | BHERON5_-_Declaration.pdf | 97869<br>9c166e67676faf9a0a53ad95fffb2e06d2a3283f | no | 2 |

**Warnings:**

**Information:**

| 5 | Power of Attorney | Power_of_AttorneyExp-Comp_Fastener.pdf | 40024<br>e90139fc78a5a2e403fa9582f3a7c24a04e80a57 | no | 1 |

**Warnings:**

**Information:**

| 6 | Transmittal of New Application | BHERON5_-_Transmittal_--_Utility_Patent_Application_PTO_SB-05.pdf | 50084<br>7b1e6d6b33cdb04883a80c3ec38c2f8c6de1665c | no | 1 |

**Warnings:**

**Information:**

| 7 | Fee Worksheet (PTO-875) | fee-info.pdf | 36999<br>60e7dc84ad2ec0af7fe903ce3a15bce8f2ec05a1 | no | 2 |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 1696699 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 8902056 |
| **Application Number:** | 12952876 |
| **International Application Number:** | |
| **Confirmation Number:** | 2504 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle, III |
| **Customer Number:** | 00530 |
| **Filer:** | Arnold H. Krumholz/Aisha Irvis |
| **Filer Authorized By:** | Arnold H. Krumholz |
| **Attorney Docket Number:** | BHERON 3.0-001 CIPCONCON |
| **Receipt Date:** | 23-NOV-2010 |
| **Filing Date:** | |
| **Time Stamp:** | 16:18:16 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $592 |
| RAM confirmation Number | 3486 |
| Deposit Account | 121095 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)        IC-App-0279

# File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Application Data Sheet | BHERON5_-_Application_Data_Sheet_Fillable_PDF.pdf | 1031462 <br> fbfa00d4a3db83047fc61e03070388b03dd1ee5d | no | 4 |

**Warnings:**

**Information:**

| 2 | Drawings-only black and white line drawings | BHERON5_-_Drawings.pdf | 317786 <br> f2d0be4ef333555e00a04edc01d44da42b426409 | no | 6 |

**Warnings:**

**Information:**

| 3 | Specification | BHERON_3_0_001_CIP_CON_CON-_US_Appln_12583702.pdf | 122475 <br> fbf62cd7ae10b34a1ea7bc8d619e40f1db0efb7d | no | 22 |

**Warnings:**

**Information:**

| 4 | Oath or Declaration filed | BHERON5_-_Declaration.pdf | 97869 <br> 9c166e67676faf9a0a53ad95fffb2e06d2a3283f | no | 2 |

**Warnings:**

**Information:**

| 5 | Power of Attorney | Power_of_AttorneyExp-Comp_Fastener.pdf | 40024 <br> e90139&c78a5a2c403fa9582f3a7c24a04e80a57 | no | 1 |

**Warnings:**

**Information:**

| 6 | Transmittal of New Application | BHERON5_-_Transmittal_--_Utility_Patent_Application_PTO_SB-05.pdf | 50084 <br> 7b1e6d6b33cdb04883a80c3ec38c2f8c6de1665c | no | 1 |

**Warnings:**

**Information:**

| 7 | Fee Worksheet (PTO-875) | fee-info.pdf | 36999 <br> 60e7dc84ad2ec0af7fe903ce3a15bce8f2ec05a1 | no | 2 |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 1696699 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/14 (11-08)
Approved for use through 09/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |
|---|---|---|
| | Application Number | |

| Title of Invention | EXPANSION-COMPENSATING DECK FASTENER |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

# Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

# Applicant Information:

| Applicant 1 | | | | Remove |
|---|---|---|---|---|
| Applicant Authority ⦿Inventor  ◯Legal Representative under 35 U.S.C. 117  ◯Party of Interest under 35 U.S.C. 118 | | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| Mr. | Harry | W. | Eberle | III |

| Residence Information (Select One)  ⦿ US Residency   ◯ Non US Residency   ◯ Active US Military Service | | | | |
|---|---|---|---|---|
| City | Califon | State/Province | NJ | Country of Residence i | US |

| Citizenship under 37 CFR 1.41(b) i | |
|---|---|

| Mailing Address of Applicant: | |
|---|---|
| Address 1 | 357 Vernoy Road |
| Address 2 | |

| City | Califon | | State/Province | NJ |
|---|---|---|---|---|
| Postal Code | 07830 | Country i | US | |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.    [Add]

# Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

☐ An Address is being provided for the correspondence Information of this application.

| Customer Number | 00530 | | |
|---|---|---|---|
| Email Address | | [Add Email] | [Remove Email] |

# Application Information:

| Title of the Invention | EXPANSION-COMPENSATING DECK FASTENER | |
|---|---|---|
| Attorney Docket Number | BHERON 3.0-001 CIP CON CO | Small Entity Status Claimed  ☒ |
| Application Type | Nonprovisional | |
| Subject Matter | Utility | |
| Suggested Class (if any) | | Sub Class (if any) |
| Suggested Technology Center (if any) | N/A | |
| Total Number of Drawing Sheets (if any) | 6 | Suggested Figure for Publication (if any)  16 |

IC-App-0282

PTO/SB/14 (11-08)
Approved for use through 09/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |
|---|---|---|
| | Application Number | |
| Title of Invention | EXPANSION-COMPENSATING DECK FASTENER | |

## Publication Information:

☐ Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐ **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S. C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Enter either Customer Number or complete the Representative Name section below. If both sections are completed the Customer Number will be used for the Representative Information during processing.

| Please Select One: | ⦿ Customer Number | ◯ US Patent Practitioner | ◯ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 00530 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application. Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78(a)(2) or CFR 1.78(a)(4), and need not otherwise be made part of the specification.

| Prior Application Status | Pending | | | Remove |
|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | |
| | Continuation of | 12583702 | 2009-08-24 | |

| Prior Application Status | Patented | | | | Remove |
|---|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
| 12583702 | Continuation of | 10446514 | 2003-05-28 | 7578105 | 2009-08-25 |

| Prior Application Status | Patented | | | | Remove |
|---|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
| 10446514 | Continuation in part of | 10393100 | 2003-03-20 | 6851884 | 2005-02-08 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button. [Add]

## Foreign Priority Information:

This section allows for the applicant to claim benefit of foreign priority and to identify any prior foreign application for which priority is not claimed. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(a).

IC-App-0283

PTO/SB/14 (11-08)
Approved for use through 09/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |
| | Application Number | |

| Title of Invention | EXPANSION-COMPENSATING DECK FASTENER |

Remove

| Application Number | Country ⁱ | Parent Filing Date (YYYY-MM-DD) | Priority Claimed |
| | | | ○ Yes ○ No |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

Add

## Assignee Information:

Providing this information in the application data sheet does not substitute for compliance with any requirement of part 3 of Title 37 of the CFR to have an assignment recorded in the Office.

**Assignee 1**

Remove

If the Assignee is an Organization check here. ☐

| Prefix | Given Name | Middle Name | Family Name | Suffix |
| | | | | |

**Mailing Address Information:**

| Address 1 | |
| Address 2 | |

| City | | State/Province | |
| Country ⁱ | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee Data may be generated within this form by selecting the **Add** button.

Add

## Signature:

A signature of the applicant or representative is required in accordance with 37 CFR 1.33 and 10.18. Please see 37 CFR 1.4(d) for the form of the signature.

| Signature | /Roberto Colón/ | | | Date (YYYY-MM-DD) | 2010-11-23 |
| First Name | Roberto | Last Name | Colón | Registration Number | 58651 |

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

IC-App-0284

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

IC-App-0285



Fig. 3

Fig. 1

Fig. 2

Fig. 4A



Fig. 5

Fig. 6

Fig. 4B



Fig. 9A

Fig. 9B

Fig. 7

Fig. 8



**Fig. 12**

**Fig. 13**

**Fig. 10**

**Fig. 11**

IC-App-0289



Fig. 16



Fig. 17



Fig. 14

Fig. 15



Fig. 21

Fig. 20

Fig. 18

Fig. 19

## EXPANSION-COMPENSATING DECK FASTENER

### CROSS-REFERENCE TO RELATED APPLICATIONS

[0001]     The present disclosure is a continuation of co-pending US Patent Application No. 12/583,702, filed on August 24, 2009, which, in turn, is a continuation of co-pending US Patent Application Serial No. 10/446,514, filed on May 28, 2003, now US Patent No. 7,578,105, which, in turn, is a continuation-in-part of US Patent Application Serial No. 10/393,100, filed on Mar. 20, 2003, now US Patent No. 6,851,884.  Each of these applications is hereby incorporated herein in its entirety by reference thereto.

### BACKGROUND OF THE INVENTION

#### 1.     Field Of The Invention

[0002]     The present invention is directed to an improved biscuit for joining adjacent boards. More specifically, the invention is an anchoring biscuit device that has the ability for pre-setting distances between adjacent boards and attaching to at least one board by means in addition to the biscuit itself. The anchoring biscuit device physically joins two adjacent boards in the same plane to a third, supporting board. The anchoring half-biscuit device joins two adjacent boards at right angles to one another. Further, the present invention anchoring biscuit includes compressive elements to accommodate swelling and expansion of boards after installation.

[0003]     U.S. Pat. No. 6,402,415, issued to the present inventor herein covers such biscuit devices having opposite side walls in the shape of arcs. These would include side walls with arcs and flat ends, side walls with arcs and arc ends, e.g. circles, ellipses, etc. The present invention covers biscuit-shaped devices with side walls that may have

1

the same top view footprint as the Eberle U.S. Pat. No. 6,402,415 devices, and covers anchoring devices that may not have opposite arcs, and may or may not have biscuit shapes. However, all of the present invention devices do include at least one compressive element, namely, a portion of the device that will collapse or move under compression (from opposing expansion or swelling of wood).

## 2.    Information Disclosure Statement

[0004]    The following patents are representative of the state of the art for wood joining devices, equipment and methods:

[0005]    U.S. Pat. No. 1,184,080 to D'Arcy describes a structure of the class described, the combination of frame pieces disposed at an angle to each other and plate-like corner irons having angularly disposed flanges, said corner irons being arranged in opposed pairs on the sides of and secured to the ends of meeting frame pieces with their flanges engaging the inner edges thereof in overlapping telescoping relation to each other, the inner flanges having vertical nail slots therein and brads on their edges driven into the frame pieces, the outer flanges having nail perforations opposite the nail slots, there being nails disposed through the said perforations and slots and driven into the frame.

[0006]    U.S. Pat. No. 2,332,081 to G. M. Hunt et al. is directed to a wooden panel. It is described as a panel comprising wooden strips joined along their edges with glue, each strip having at least one groove in its edge matching groove in the edge of the adjoining strip, an asbestos millboard spline fitted in the matching grooves and bridging the joint between the strips, crossbands covering the strips on both sides of the panel, and veneers covering the crossbands.

[0007]   U.S. Pat. No. 2,362,252 to Ellinwood describes a wall structure of the character described comprising a pair of adjacent wallboard panels having meeting edges, each of said panels being formed with a groove opening into its meeting edge, the groove in each panel providing an outer lip and an inner lip, said outer lips being in abutting relation, a joining strip permanently secured to the under surface of said outer lips, said inner lips being spaced, a T-shaped connecting member movably positioned in said groove and having a base in spaced relation to said inner lips, and means for anchoring said connecting member to a structural element.

[0008]   U.S. Pat. No. 2,398,603 to Soderberg describes a joining staple, comprising a metal body having at least two portions extending at right angles to each other and at least two teeth carried upon each of said portions, each of said teeth consisting of a flat substantially rectangular body having a cutting edge extending substantially parallel to its body portion, the cutting edges of all of said teeth being located in one plane, each of said portions having another cutting edge extending between the teeth of that portion, the second mentioned cutting edges being also located in one plane.

[0009]   U.S. Pat. No. 2,406,387 to Lank describes the method of constructing a plurality of wooden posts each of which has a connector element incorporated therein adjacent each end thereof which method comprises forming a plurality of longitudinally extending grooves in one side of each of a pair of wooden blanks from which the posts are to be formed, forming a transverse groove adjacent each end of said side of each of said blanks with the transverse grooves intersecting the longitudinal grooves, providing a pair of connector retaining members with a plurality of seats for receiving connector elements, the number and spacing of said seats in each of said connector retaining members

3

conforming to the number and spacing of the longitudinal grooves in each of said blanks, placing connector elements in each of said seats, positioning said blanks with their grooved sides together and with said connector retaining members in said transverse grooves, bonding said blanks together, and severing the thus bonded assembly along longitudinal lines intermediate said longitudinal grooves.

[0010]    U.S. Pat. No. 4,641,988 to Ganner is directed to a fitting for releasably joining two structural components. It is illustrated for releasably joining two structural components particularly plate-shaped structural components which extend at a right angle relative to one another, a fitting has a preferably cylindrical locking element which can be inserted either directly in a bore in the first structural component or it can be inserted indirectly in a housing, and a holding piece with a holding projection anchored in the second structural component. In the assembled position, the holding projection & abuts against one or two gripping surfaces of the locking element which gripping surfaces are of, for example, eccentric shape, and the holding projection is pulled toward the locking element when the locking element is turned. The holding piece is constructed plate-shaped and is insertable in a slot in the second structural component.

[0011]    U.S. Pat. No. 4,682,458 to Sparrow describes a floor composed of parallel spaced beams having flanges and blocks of polystyrene foam which are laid on the flanges to bridge the gaps between the beams. Boards are laid on the polystyrene blocks, and are supported by the blocks, which form load-bearing members of the floor. The blocks may have flanged portions extending over the beams, so as to provide heat insulation.

[0012]    U.S. Pat. No. 5,004,027 to Legler et al. illustrates a biscuit joiner. It is described as a biscuit joiner for cutting semi-elliptical slots in opposing edges of workpieces which are to be joined along those edges includes a housing adapted to be mounted upon the quill of a multipurpose woodworking tool, which housing encloses a rotary saw blade adapted to be attached to a spindle projecting from the quill on which the housing is mounted. A spring loaded guide projects from the front face of the housing and has a slot therethrough, so that when the front face of the guide is engaged by an edge of a workpiece to be slotted the guide can be pushed inwardly against spring pressure, allowing the rotary saw blade to be exposed and form a slot in the edge of the workpiece. Adjustable stops are provided on the guide so that a desired depth of cut will automatically be made after adjustment. An alternative construction of this biscuit joiner is especially adapted for use in conjunction with a conventional drill press, with the arbor which carries the saw blade being clamped in the chuck on the drive spindle of the drill motor.

[0013]    U.S. Pat. No. 5,182,891 to Slocum describes a flooring construction which is provided having a unitary construction with a top layer providing a finished flooring surface and an insulation layer adjacent the top layer. The flooring panel includes an upper portion and a lower portion. The upper portion has a larger dimension than the lower portion and extends outwardly beyond the lower portion. A recessed portion between the upper portion and the lower portion defines a channel. A plurality of interlock support elements having a vertical web and an upper horizontal flange are arranged so that the horizontal flange extends into the channel. The vertical web extends below the lower portion to

raise the flooring.

[0014]     U.S. Pat. No. 5,251,996 to Hiller et al. describes a connecting element for connecting two parts generally in a connection plane has a first portion for connecting the element relative to a first of the parts and second portion for connecting the element relative to the second part. The second portion includes actuation members which on relative movement of the parts substantially along the connection plane urge the parts forcefully towards each other.

[0015]     U.S. Pat. No. 5,377,732 to Fujii et al. illustrates a wood joining structure and method thereof. It is described as a technique is provided for joining wood members. A plurality of slits are formed on the end portions of wood pieces desired to be joined, and the end portions are abutted with corresponding slits in alignment to form a common surface. Each of the abutted wood end portions is fixed by temporary fixing means to a desired joining state. Thereafter, an adhesive agent is applied into the interior surfaces of the slits. Connecting plates, e.g., made of a reinforced plastic material coated with the adhesive agent, are inserted into the aligned slits. The adhesive agent is then hardened.

[0016]     U.S. Pat. No. 5,458,433 to Stastny explicates a biscuit and joint made using same. It is described as a biscuit having octagonal outer periphery is used to form a joint between first and second workpieces. The biscuit fits within arcuate slots formed in the workpieces, with glue placed in the slots and/or on the biscuit before the joint is put together. The biscuit is made of an anhydrous compressed wood.

[0017]     U.S. Pat. No. 5,480,117 to Fleming, III describes a bracket for mounting a rotary lock member in the frame of a panel which is provided. The bracket is a preferably U- shaped body

having a base and two legs extending therefrom. The inner dimension of the bracket is chosen to allow insertion of a rotary lock member therein. Panel engaging steps and protrusions are located on the outside surface of each leg for engaging the frame material. The legs of the bracket are biased inwardly towards one another, such that when a locking member is inserted therein, the legs are pressed outwardly, driving the protrusions into the frame material. A number of bores are located in the bracket to allow supplemental locking members to lock the bracket to the frame.

[0018]    U.S. Pat. No. 5,529,428 to Bischof is directed to a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic. It is described as a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic, consisting of a lamellar part, which provides the non-positive connection with the first workpiece provided with a groove and a transverse hole, and a bolt-like part which, through screwing or pinning, realizes the non-positive connection with the second workpiece provided with a longitudinal hole. The lamellar part has, in the center, a hole which is at right angles to the plane of the lamella and is intended for fixing in the groove of the workpiece. Variants having a wing-like long or rectangular short lamellar part and a bolt-like part in the form of a conical wood screw, cylindrical screw, screw having a metal thread, threaded sleeve or pin. Accessories: screwing tool and drilling template.

[0019]    U.S. Pat. No. 5,660,016 to Erwin et al. describes an extruded plastic decking plank for mounting to an underlying support structure, the plank having a rigid foam core, a resilient outer plastic shell, and a clamping portion for securing the plank to the support structure. The top surface of the plank can be provided with a non-slip surface. The

7

invention also includes an attachment system for securing such decking planks to a support structure by engaging the clamping portions of the decking planks onto clamps or hold down blocks which are secured onto the support structure, and which permit relative motion between the planks and the structure in the planks' lengthwise direction to prevent stress and buckling caused by uneven expansion.

[0020]    U.S. Pat. No. 6,402,415, to Eberle, the same inventor herein, describes an anchoring biscuit device for joining three boards. It includes, (a) a first substantially flat horizontal top element having a generally biscuit-shaped configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and (c) an attachment orifice located at least on the top element for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated.

[0021]    U.S. Design Pat. No. 470,039 to Robert Pelc shows two anchoring biscuit devices of the U.S. Pat. No. 6,402,415 Eberle type, one having a circular footprint and the other having an elliptical footprint.

[0022]    Notwithstanding the prior art, the present invention is neither taught nor rendered obvious thereby.

## SUMMARY OF THE INVENTION

[0023]     The present invention is an anchoring biscuit device for joining three boards. It includes, (a) an at least partially flat horizontal top element having opposite side walls, and, from a top view, having a footprint adapted to be inserted into grooves, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which contain grooves for receiving portions of said top into said grooves, and, (c) at least one compressive element located on said device with at least a portion located away from said imaginary centerline, said compressive element being adapted to at least partially collapse upon compressive force. In some embodiments, there is also an attachment orifice located at least on the top element for attachment of the anchoring biscuit-device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated. In other embodiments, there is no preformed orifice, and the device may be attached by a screw or other fastener being driven through the device, or attached by adhesive or other means, or combinations thereof.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0024]     The present invention should be more fully understood when the specification herein is taken in conjunction with the drawings appended hereto wherein:

[0025]     **FIG. 1** illustarates a top view of one preferred embodiment of the present invention

9

anchoring device,

[0026]     **FIG. 2** illustrates a side view, and

[0027]     **FIG. 3** illustrates an end view thereof;

[0028]     **FIG. 4A** shows an end view of the present invention device shown in **FIGS. 1** through **3** but being attached to a joist and a first deck board and about to be attached to a second deck board where both deck boards are supported by that joist;

[0029]     **FIG. 4B** shows an end view of the same present invention device as above, but fully installed and after the adjacent beams have swollen and collapsed the compressive elements;

[0030]     **FIGS. 5** and **6** show a side view and a bottom view, respectively, of an alternative embodiment present invention anchoring biscuit device;

[0031]     **FIGS. 7** and **8** show top and side views of another alternative present invention anchoring biscuit device;

[0032]     **FIGS. 9A** and **9B** show top views of the **FIG. 7** and **FIG. 8** present invention device, installed with beams, before and after beam expansion;

[0033]     **FIGS. 10** and **11** illustrate top and side views of another present invention device;

[0034]     **FIG. 12** and **FIG. 13** show top views of two different embodiment present invention anchoring biscuit devices having compressive elements located below the substantially flat top element;

[0035]     **FIGS. 14** and **15** show additional alternative embodiment present invention anchoring devices, in their side views; and,

[0036]     **FIGS. 16 and 17** show more present invention alternatives in their side views; and,

[0037]     **FIGS. 18, 19, 20,** and **21** show top, side, end and embossed top views of another

10

preferred embodiment present invention anchoring device.

## DETAILED DESCRIPTION OF THE PRESENT INVENTION

[0038]    In **FIG. 1,** there is shown a top view of present invention anchor biscuit device 1. Device 1 includes a top element 3 having a flat top surface as shown, and a top view shape of a biscuit. It also includes a first wall with segments 5, 7, 9 and 10, with wall segments 5 and 7 in the shape of arcs having predetermined radii and predetermined arc lengths, and wall segments 7 and 9 having flat edges (straight surfaces). There is a second, opposite wall having segments 33, 35 and 37, with 33 and 37 being arcs, and 35 being a straight flat surface. They are not parallel to their segments directly opposite, i.e., opposite as determined at a 90° angle to imaginary center line 20.

[0039]    Top element 3 also includes an attachment means, in this case, screw hole 13 located on center. This enables the user to nail or screw device 1 into a joist, as more fully described in conjunction with **FIG**. 4 below. Alternatively, device 1 could simply have an area where a screw could be forced through, without a pre-formed orifice.

[0040]    Top element 3 includes four upwardly projecting compressive elements 6, 8, 16 and 18. These are located opposite one another, as shown, are located away from imaginary center line 20. Also, they are located away from the vertical support members 15 and 17 (from top view) and are further away from the vertical support members at their outermost portions, from the centerline, than the outermost portions of the vertical support elements. This concept applies to the other present invention devices described below, as well.

[0041]    **FIGS. 2** and **3** show side and end views, respectively of device 1 shown in **FIG. 1**.

11

Thus, device 1 includes vertical support members 15 and 17 with a space 18 there between to permit a screw or nail to pass through screw hole 13 into a joist or support board. Vertical support members 15 and 17 have a predetermined height so as to rest on a joist in such a way as to establish biscuit top element 3 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots. The device such as device 1 are not set for full nesting (i.e., do not have total footprint identity) with the biscuit cut, and need only have sufficient overhang on each side of the centerline 20 to catch and anchor a board by at least partially fitting into a cut out of a deck or other board. The compressive elements 6, 8, 16 and 18 act as initial spacers for the two adjacent boards.

[0042]    **FIG. 4A** shows present invention device 1 from the prior Figures, with identical parts identically numbered. Top element rear biscuit wall 35 is partially inserted into pre-cut biscuit slot 27 of horizontal beam 21, as shown. Compressive elements 16 (and 18, not shown) place beam 21. Screw 31 is inserted into screw hole 13 and into joist beam 25. This anchors device 1 to joist beam 25 and establishes the elevation of top element 3 so as to match with biscuit slot 27. Beam 23 will be placed atop joist beam 25 and adjacent to beam 21 by being slid into position with wall segments 5, 7, 9 and 10 at least partially fitting into slot 29, and the bottom of beam 23 resting on joist 25. By this method, device 1 attaches all three boards to one another as the side wall aspects are sufficiently tight-fitting to anchor the boards. Thus, for example, decking boards may be attached without the need for nails or screws entering the beams from the top, creating a hidden fastening system.

[0043]    Compressive elements 8 (and 6, not shown in **FIG. 4**) place beam 23. In other words,

IC-App-0303

the compressive elements 6, 8, 16, 18 space the beams 21 and 23 further apart than the vertical support members 15 and 17 would in their absence. These beams 21 and 23 might expand due to damp weather, rain, capture of moisture, high humidity, seasonal changes, shifts, etc. When this occurs, compressive elements will be pushed toward one another and collapse, e.g. in excess of 10 foot pounds psi, or some other preset parameter. The collapse of compressive elements permits the beams to close in on one another to the sides of the vertical support members. This is clearly illustrated for the **FIG. 4A** embodiment, in **FIG. 4B.** Here, compressive elements have been forced to collapse inwardly by expanding beams 21 and 23, as exemplified by collapsed compressive elements 8 and 16. All parts are identically numbered as shown in the foregoing Figures.

[0044]    **FIG. 5** shows an alternative embodiment present invention device 51 which has multiple screw holes 43, 53 and 55 located in a straight line on center of top element 47. It includes front and back ends 41 and 49, and it has a plurality of vertical support members 45, 47, 57 and 59, on top underside 36 with spaces therebetween for screw or nail insertions. Vertical support members 45 and 57 include compressive elements 34 and 32, as shown. FIG. 6 shows a bottom view with identical numbering. Note that compressive elements 32 and 34 are essentially hollow cylinders in this embodiment. The side walls have a footprint of sawteeth on both sides. On the side out of the drawing, segments 52, 53, 54, 43, 46, 47, 55, 56 and 44 form the sawteeth. Segments directly opposite one another are mostly non-parallel. Device 51 is used in the same manner as device 1 described above with respect to FIGS. 4A and B, except that the compressive elements 32 and 34 collapse on the underside of the device, inwardly

13

between portions of a single vertical support member.

[0045]    FIGS. 7 and 8 show top and side views of an alternative embodiment present invention anchoring device 71. In FIG. 7, there is shown a top view of present invention anchor biscuit device 71. Device 71 includes a top element 73 having a substantially flat top surface as shown, and a top view shape of a biscuit. Thus, it includes wall segment (an arc), on one side and wall segments 77 (an opposing arc), and on the opposite side. Segment 62, for example, is non-parallel to segment 66. There are flat ends 79 and 81, as shown.

[0046]    Top element 71 of device 71 in FIG. 7 also includes an attachment means, in this case, screw hole 83 located on center. It also includes fount chevron-shaped compressive elements 91, 93, 95, and 97. These compress if adjacent boards expand and enable extra spacing to be achieved during installation to accommodate any future wood expansion that may occur.

[0047]    In FIG. 8, there is shown a side view of the present invention anchor biscuit device 71. Device 71 includes a top element 73, showing the height and depth of compressive elements 91, 93, 95, and 97.

[0048]    FIG. 9A shows a top view of device 71 with installed beams 101 and 103, and these are not swollen. In FIG. 9B, the same beam 101 and 103 have swollen, and the compressive elements 91, 93, 95, and 97 have collapsed, as shown.

[0049]    FIG. 10 shows a top view and FIG. 11 shows a side view of present invention device 120. It includes a substantially flat top element 121, that has a top view footprint of a circle, and two vertical support members 125 and 127, that project downwardly on each side of beveled attachment orifice 129. The sides of device

20's top 121 are vertical and basically are made up of a plurality of connected (continuous) arcs to form a circle. On the top side of device 120 are eight compressive elements 131, 133, 135, 137, 139, 141, 143, 145, and 147. These are thin cylindrical protrusions that will collapse under compression, e.g. from expanding boards. As shown in FIG. 10, they are further apart than the thickness of the vertical support members to create space between beams for expansion.

[0050]    **FIGS. 12** and **13** show top views of alternative embodiment present invention anchoring devices 161 and 190 respectively. In FIG. 12, there is shown a top view of present invention anchor biscuit device 163 having a flat top surface as shown, and a top view shape of an elongated octagon biscuit. Thus, it includes wall segments 164, 165, and 166 on one side wall and wall segments 162, 167, and 163 on the opposite side. Segments 162, for example, is non-parallel to segment 166. There are flat ends 169 and 177, as shown.

[0051]    Top element 163 of device 161 in **FIG. 12** also includes an attachment means, in this case, screw hole 173 located on center. Screw hole 173 has a bevel cut 175 at its top. This enables the user to nail or screw device 161 into a joist with the screw or nail being installed vertically, or, more preferably, at an angle.

[0052]    Vertical support members 177 and 179 also include outwardly extending, angled tails 181, 183, 185, and 187 and these are the collapsible compressive elements.

[0053]    In **FIG. 13,** there is shown a top view of present invention anchor biscuit device 190, in the shape of an octagon biscuit. Device 190 includes a top element 198 having a flat top surface as shown, and a top view shape with eight equal segments; a

IC-App-0306

first side with wall segments 193, 197, and 195, and an opposite side with wall segments 207, 209, and 211. In this case, they are perfectly symmetrical and have flat endwalls 199 and 201. Top element 198 also includes an attachment means, screw hole 203 located on center. Note that screw hole 203 is elongated and has a beveled top 205. Underside of top element 198 are two curved collapsible compressive elements 221 and 223. These function similarly to those described above.

[0054]    **FIG. 14** shows a front view of present invention device 240. Thus, device 240 includes a single vertical support member 245 with a space cut out 243 to permit a screw or nail to pass through beveled screw hole 253 and through vertical support member 245 into a joist or support board. There are two collapsible fins on each side of the vertical support member 245, two shown as fins 249 and 251. These are about 3/64 inch away from member 245 and act as collapsible compressive elements in a manner similar to those shown above. Vertical support member 245 has a predetermined height so as to rest on the side of a beam into which device 240 may be inserted and, optionally, so as to rest on a joist in such a way as to establish biscuit top element 247 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots corresponding thereto. Side walls may be irregular or regular, and may have any top view, workable footprint similar to that shown in the segments that will fit into beam grooves or continuous straight grooves, e.g. biscuit cuts, half circle or arc cuts, square or rectangular cuts.

[0055]    **FIG. 15** shows a front view present invention of device 261, which includes a single off-center vertical support member 265 with a space underneath beveled screw hole 263 to permit a screw or nail to pass through screw hole 263 into a beam and/or joist or support

board. Top 267 has opposite ends 269 and 271 as shown, with support member 265 biased to the left toward end 269, as shown. On the right underside of top 267 are two fins 281 and 283, that have lengths (into the page, at right angle to vertical support member 265), that is greater than the thickness of member 265. They are collapsible and act as compressive elements with respect to adjourning boards. Top 263

has a topography with flat sides, such as side 273, and is in the shape of a rectangle, e.g. a square.

[0056]    **FIG. 16** shows device 300 with top 301 having a generally barbell-shaped footprint. There is a first side having wall segments 303 and 305 that are arcs and are connected by flat segment 307. The opposite wall includes arcs 309 and 311 and are separated by flat segment 313. Wall segments 303 and 309 are opposite one another and are non-parallel. There is a beveled orifice 315 which is attaching device 300 in a manner described above as well as vertical segments 317 and 319 extending downwardly from top 301 on opposite sides of orifice 315. There are two collapsible compressive element ovals 321 and 322 extending upwardly. These space beams further apart than would members 317 and 319, in their absence, and thus accommodate wood expansion.

[0057]    **FIG. 17** shows a triangular shaped present invention anchoring device 400. It has a top 401, an orifice 409 for attachment and a vertical support 411. One wall has flat segments 403 and 405 and the opposite wall has a single flat segment 407. There is a collapsible compressive element 415 on top to function in a manner similar to those previously described.

[0058]    **FIGS. 18, 19** and **20** illustrate preferred embodiment present invention

anchoringdevice 500, in its top, side and end views respectively. Device 500 includes top 501 with beveled screw orifice 503 on center. Opposing sides 505 and 507 are arcuate and ends 509 and 511 are flat. Extending downwardly are vertical support members 513 and 515, located on-center and on opposite sides of orifice 503. The vertical support member 513 and 515 each have one thin walled tubular compressive element, shown as compressive elements 517 and 519, respectively. Further, **FIG. 21** shows top view of the same device as in **FIGS. 18, 19,** and **20,** except that the top is embossed or stamped. Here, device 500a includes top 501a with embossments such as word 531, that can be production information, size, model number, installation instructions or other useful information. These are preferably indented and may be established in a forming mold for the device.

[0059]     All of these devices may be installed in accordance with the descriptions for previous present invention devices described above. However, device 260 shown in **FIG. 14** should have the arrowed wall inserted first so that the biased beveled orifice 296 is utilized maximally and receiving an attachment screw.

[0060]     Obviously, numerous modifications and variations of the present invention are possible in light of the above teachings. It is therefore understood that within the scope of the appended claims, the invention may be practiced otherwise than as specifically described herein.

## CLAIMS

1. An anchoring device comprising:

a horizontally-extending top element having a center line and side portions extending from the center line in opposite lateral directions transverse to the center line;

a support member extending downwardly from the top element adjacent the center line, the side portions of the top element projecting in the lateral directions beyond the support member; and

one or more compression members projecting from the top element, the compression members defining engagement surfaces remote from the center line, the engagement surfaces being constructed and arranged to confront vertically-extensive surfaces of slotted boards engaged with top element so that the top element extends into slots in the boards;

the anchoring device having an opening adapted to receive a fastener so that the fastener extends downwardly toward a joist.

2. The anchoring device according to claim 1, wherein the horizontally-extending top element has a shape selected from the group consisting of square, rectangular, circular, and oval.

3. The anchoring device according to claim 1, wherein the opening extends through the horizontally-extending top element.

4. The anchoring device according to claim 1, wherein the opening is located adjacent the center line of the horizontally-extending top element.

5. The anchoring device according to claim 1, wherein the one or more compression members are attached to the support member.

6. The anchoring device according to claim 1, wherein the one or more compression members includes one or more hollow cylinders.

7. The anchoring device according to claim 1, wherein the one or more compression members include one or more fins projecting from the horizontally-extending top element.

8. The anchoring device according to claim 1, wherein the support member includes at least two planar structures spaced from each other, the at least two planar structures being positioned substantially along a single plane.

9. The anchoring device according to claim 1, wherein the support member is a monolithic

IC-App-0310

structure.

10.     The anchoring device according to claim 1, wherein the opening has an elongated shape.

11.     An decking system comprising:

        at least two slotted boards adjacent to each other, each slotted board including a slot and at least one vertically-extensive surface and at least one horizontally-extensive surface; and

        an anchoring device having an opening adapted to receive a fastener so that the fastener extends downwardly toward a joist, the anchoring device comprising:

                a horizontally-extending top element having a center line and side portions extending from the center line in opposite lateral directions transverse to the center line;

                a support member extending downwardly from the top element adjacent the center line, the side portions of the top element projecting in the lateral directions beyond the support member; and

                one or more compression members projecting from the top element, the compression members defining engagement surfaces remote from the center line, the engagement surfaces being constructed and arranged to confront the at least one vertically-extensive surface of each slotted board engaged with top element so that the top element extends into the slots in the boards.

12.     The anchoring device according to claim 11, wherein the horizontally-extending top element has a shape selected from the group consisting of square, rectangular, circular, and oval.

13.     The anchoring device according to claim 11, wherein the opening extends through the horizontally-extending top element.

14.     The anchoring device according to claim 11, wherein the opening is located adjacent the center line of the horizontally-extending top element.

15.     The anchoring device according to claim 11, wherein the one or more compression members are attached to the support member.

16.     The anchoring device according to claim 11, wherein the one or more compression members includes one or more hollow cylinders.

17.     The anchoring device according to claim 11, wherein the one or more compression members include one or more fins projecting from the horizontally-extending top element.

18.     The anchoring device according to claim 11, wherein the support member includes at least

two planar structures spaced from each other, the at least two planar structures being positioned substantially along a single plane.

19. The anchoring device according to claim 11, wherein the support member is a monolithic structure.

20. The anchoring device according to claim 1, wherein the opening has an elongated shape.

21. An anchoring device comprising:

a horizontally-extending top element having a center line, side portions extending from the center line in opposite lateral directions transverse to the center line, opposite sidewalls and opposite end walls, the center line extending between the opposite end walls, at least a portion of one of the end walls being non-parallel relative to a portion of the other end wall opposite thereto; and

a support member extending downwardly from the top element adjacent the center line, the side portions of the top element projecting in the lateral directions beyond the support member, the support member being constructed and arranged to be positioned between vertically-extensive surfaces of slotted boards engaged with top element so that the top element extends into slots in the boards;

the anchoring device having an opening adapted to receive a fastener so that the fastener extends downwardly toward a joist.

22. The anchoring device according to claim 21, wherein at least one of the opposite end walls has an arc-shape.

23. The anchoring device according to claim 21, further comprising one or more compression members projecting from the horizontally-extending top element.

24. The anchoring device according to claim 23, wherein the one or more compression members have an oval cross-section.

25. The anchoring device according to claim 21, wherein the opening has a beveled top.

## ABSTRACT

The present invention is an anchoring biscuit device for joining three boards. It includes, (a) an at least partially flat horizontal top element having an imaginary center line, having opposite side walls, and having a top view footprint adapted to be inserted into grooves of adjacent boards; (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which contain said grooves for receiving portions of said top into said grooves; and, (c) at least one compressive element located on aid device, with at least a portion of said at least one compressive element, from a top view footprint, being located away from said imaginary center line and way from said vertical support member, wherein said compressive element is adapted to at least partially collapse under predetermined compressive force.

IC-App-0313

# DECLARATION FOR PATENT APPLICATION
## SOLE OR JOINT

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention titled:

## EXPANSION-COMPENSATING DECK FASTENER

the specification of which is attached hereto.

I HEREBY STATE THAT I HAVE REVIEWED AND UNDERSTAND THE CONTENTS OF THE ABOVE-IDENTIFIED SPECIFICATION, INCLUDING THE CLAIMS.

I ACKNOWLEDGE THE DUTY TO DISCLOSE INFORMATION WHICH IS MATERIAL TO THE PATENTABILITY OF THIS APPLICATION IN ACCORDANCE WITH TITLE 37, CODE OF FEDERAL REGULATIONS, §1.56.

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

**Prior Foreign Application(s)**

Priority Claimed

| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |
|---|---|---|---|---|
| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |
| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |

I hereby claim the benefit under Title 35, United States Code, §120 of any United States applications listed below and, INSOFAR AS THE SUBJECT MATTER OF EACH OF THE CLAIMS OF THIS APPLICATION IS NOT DISCLOSED IN THE PRIOR UNITED STATES APPLICATION IN THE MANNER PROVIDED BY THE FIRST PARAGRAPH OF TITLE 35, UNITED STATES CODE, §112, I ACKNOWLEDGE THE DUTY TO DISCLOSE MATERIAL INFOMATION AS DEFINED IN TITLE 37, CODE OF FEDERAL REGULATIONS, §1.56(a) WHICH OCCURRED BETWEEN THE FILING DATE OF THE PRIOR APPLICATION AND THE NATIONAL OR PCT INTERNATIONAL FILING DATE OF THIS APPLICATION:

| 10/446,514 | May 28, 2003 | Patented |
|---|---|---|
| (Application Serial Number) | (Filing Date) | (STATUS: Patented, Pending, Abandoned) |
| 10/393,100 | March 20, 2003 | Patented |
| (Application Serial Number) | (Filing Date) | (STATUS: Patented, Pending, Abandoned) |

**POWER OF ATTORNEY:** As a named inventor, I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected herewith (List name and registration number).

(LIST SENIOR PATENT COUNSEL AND ATTORNEY HANDLING CASE WITH PATENT OFFICE REGISTRATION NUMBERS.)

| Ernest D. Buff | | |
|---|---|---|
| Name | Name | Name |
| 25,833 | | |
| Registration Number | Registration Number | Registration Number |

SEND CORRESPONDENCE TO:     Ernest D. Buff, Esq.

Ernest D. Buff & Associates, LLC

231 Somerville Road
Bedminster, NJ 07921

DIRECT TELEPHONE CALLS TO:     Ernest D. Buff
(908) 901-0220

JC-App-0314

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

FULL NAME OF SOLE OR FIRST INVENTOR        Harry W. Eberle, III

INVENTOR'S SIGNATURE _____        Date 1/27/10

RESIDENCE    Califon, Hunterdon County, New Jersey

CITIZENSHIP    USA

POST OFFICE ADDRESS    219 West Valley Brook Road

Califon, NJ 07830

FULL NAME OF SECOND JOINT INVENTOR _____

INVENTOR'S SIGNATURE _____        Date _____

RESIDENCE _____

CITIZENSHIP _____

POST OFFICE ADDRESS _____

FULL NAME OF THIRD JOINT INVENTOR _____

INVENTOR'S SIGNATURE _____        _____

RESIDENCE _____

CITIZENSHIP _____

POST OFFICE ADDRESS _____

FULL NAME OF FOURTH JOINT INVENTOR _____

INVENTOR'S SIGNATURE _____        _____

RESIDENCE _____

CITIZENSHIP _____

POST OFFICE ADDRESS _____

FULL NAME OF FIFTH JOINT INVENTOR _____

INVENTOR'S SIGNATURE _____        _____

RESIDENCE _____

CITIZENSHIP _____

POST OFFICE ADDRESS _____

IC-App-0315

PTO/SB/81 (01-09)
Approved for use through 11/30/2011. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| POWER OF ATTORNEY OR REVOCATION OF POWER OF ATTORNEY WITH A NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Application Number | 12/583,702-Conf. #2151 |
|---|---|---|
| | Filing Date | August 24, 2009 |
| | First Named Inventor | Harry W. Eberle, III |
| | Title | EXPANSION-COMPENSATING DECK FASTENER |
| | Art Unit | 3635 |
| | Examiner Name | M. R. Wendell |
| | Attorney Docket No. | BHERON.6 |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

OR

☒ I hereby appoint Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

00530

OR

☐ I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number | Practitioner(s) Name | Registration Number |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Please recognize or change the correspondence address for the above-identified application to:

☒ The address associated with the above-mentioned Customer Number:

OR

☐ The address associated with Customer Number.

OR

| ☐ Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | Telephone | Email |

I am the:

☒ Applicant/Inventor.

OR

☐ Assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) (Form PTO/SB/96) submitted herewith or filed on _____

SIGNATURE of Applicant or Assignee of Record

| Signature | | Date | 8/21/10 |
|---|---|---|---|
| Name | Harry W. Eberle, III | Telephone | 800-488-3289 |
| Title and Company | Inventor and President of Blue Heron Enterprises, LLC | | |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☐ *Total of ___1___ forms are submitted

1

IC-App-0316

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>12/952,876 | Filing Date<br>11/23/2010 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

| | | | SMALL ENTITY ☒ | OR | OTHER THAN<br>SMALL ENTITY |
|---|---|---|---|---|---|

| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|
| ☒ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 82 | N/A | |
| ☒ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 270 | N/A | |
| ☒ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 110 | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | 25 minus 20 = | * 5 | X $26 = | 130 | OR X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | 3 minus 3 = | * 0 | X $110 = | 0 | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 592 | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | | | | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY |
|---|---|---|---|---|---|---|---|

| | | (Column 1)<br>CLAIMS<br>REMAINING<br>AFTER<br>AMENDMENT | (Column 2)<br>HIGHEST<br>NUMBER<br>PREVIOUSLY<br>PAID FOR | (Column 3)<br>PRESENT<br>EXTRA | RATE ($) | ADDITIONAL<br>FEE ($) | RATE ($) | ADDITIONAL<br>FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | OR X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | |
| | | | | | TOTAL<br>ADD'L<br>FEE | | OR TOTAL<br>ADD'L<br>FEE | |

| | | (Column 1)<br>CLAIMS<br>REMAINING<br>AFTER<br>AMENDMENT | (Column 2)<br>HIGHEST<br>NUMBER<br>PREVIOUSLY<br>PAID FOR | (Column 3)<br>PRESENT<br>EXTRA | RATE ($) | ADDITIONAL<br>FEE ($) | RATE ($) | ADDITIONAL<br>FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | OR X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | |
| | | | | | TOTAL<br>ADD'L<br>FEE | | OR TOTAL<br>ADD'L<br>FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/EVA GILLIS/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

IC-App-0317

# PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 12/952,876 |

## APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 82 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 270 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 110 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 25 minus 20 = | * 5 | x 26 = | 130 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 minus 3 = | * | x 110 = | 0.00 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $270 ($135 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 592 | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT A | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT B | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
  The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | BHERON 3.0-001<br>CIP CON CO |

**CONFIRMATION NO. 2504**

530
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

**FORMALITIES LETTER**

*OC000000044886992*

Date Mailed: 12/13/2010

# NOTICE TO FILE CORRECTED APPLICATION PAPERS

## *Filing Date Granted*

An application number and filing date have been accorded to this application. The application is informal since it does not comply with the regulations for the reason(s) indicated below. Applicant is given TWO MONTHS from the date of this Notice within which to correct the informalities indicated below. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

The required item(s) identified below must be timely submitted to avoid abandonment:

- Replacement drawings in compliance with 37 CFR 1.84 and 37 CFR 1.121(d) are required. The drawings submitted are not acceptable because:
  - The drawings must be reasonably free from erasures and must be free from alterations, overwriting, interlineations, folds, and copy marks. See Figure(s) 1-3, 4A, 14-17.

Applicant is cautioned that correction of the above items may cause the specification and drawings page count to exceed 100 pages. If the specification and drawings exceed 100 pages, applicant will need to submit the required application size fee.

IC-App-0319

Replies should be mailed to:

Mail Stop Missing Parts
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web.
https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at **1-866-217-9197** or
visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

/lchau/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

IC-App-0320



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 12/952,876 | 11/23/2010 | 1781 | 592 | BHERON 3.0-001 CIP CON CO | 25 | 3 |

**CONFIRMATION NO. 2504**

530
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

**FILING RECEIPT**

*OC000000044886991*

Date Mailed: 12/13/2010

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Applicant(s)**
      Harry W. Eberle III, Califon, NJ;
**Power of Attorney:** The patent practitioners associated with Customer Number 00530

**Domestic Priority data as claimed by applicant**
      This application is a CON of 12/583,702 08/24/2009
      which is a CON of 10/446,514 05/28/2003 PAT 7,578,105
      which is a CIP of 10/393,100 03/20/2003 PAT 6,851,884

**Foreign Applications**

**If Required, Foreign Filing License Granted:** 12/08/2010

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 12/952,876**

**Projected Publication Date:** To Be Determined - pending completion of Corrected Papers

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***

page 1 of 3

IC-App-0321

**Title**

      EXPANSION-COMPENSATING DECK FASTENER

**Preliminary Class**

      426

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**<u>GRANTED</u>**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

## NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | BHERON 3.0-001 CIP CON CO |

530
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

**CONFIRMATION NO. 2504**
**POA ACCEPTANCE LETTER**


*OC000000044867840*

Date Mailed: 12/13/2010

# NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 11/23/2010.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

/khoang/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

IC-App-0324

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | |

| | |
|---|---|
| Application Number | 12952876 |
| Filing Date | 2010-11-23 |
| First Named Inventor | Harry W. Eberle, III |
| Art Unit | 1781 |
| Examiner Name | Not Yet Assigned |
| Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

| U.S.PATENTS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 186463 | | 1877-01-23 | Dickinson | |
| | 2 | 466995 | | 1892-01-12 | Abramson | |
| | 3 | 1184080 | | 1916-05-23 | D'arcy | |
| | 4 | 1241885 | | 1917-10-02 | Roeder | |
| | 5 | 1714738 | | 1929-05-28 | Smith | |
| | 6 | 1990001 | | 1935-02-05 | Rutten | |
| | 7 | 2201129 | | 1940-05-14 | Weiland | |
| | 8 | 2332081 | | 1943-10-19 | Hunt et al. | |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99)** | | |
|---|---|---|
| Application Number | 12952876 | |
| Filing Date | 2010-11-23 | |
| First Named Inventor | Harry W. Eberle, III | |
| Art Unit | 1781 | |
| Examiner Name | Not Yet Assigned | |
| Attorney Docket Number | BHERON 3.0-001 CIP CON CO | |

| | | | | | |
|---|---|---|---|---|---|
| 9 | 2337156 | | 1943-12-21 | Elmendorf | |
| 10 | 2362252 | | 1944-11-07 | Ellinwood | |
| 11 | 2398603 | | 1946-04-16 | Soderberg | |
| 12 | 2406387 | | 1946-08-27 | Lank | |
| 13 | 2526116 | | 1950-10-17 | Browne | |
| 14 | 3045294 | | 1962-07-24 | Livezey | |
| 15 | 3319983 | | 1967-05-16 | Zibell | |
| 16 | 3619963 | | 1971-11-16 | Omholt | |
| 17 | 3705002 | | 1972-12-05 | Varlonga | |
| 18 | 3890753 | | 1975-06-24 | Johansen | |
| 19 | 4154172 | | 1979-05-15 | Curtis, Jr. | |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 12952876 |
| | Filing Date | 2010-11-23 |
| | First Named Inventor | Harry W. Eberle, III |
| | Art Unit | 1781 |
| | Examiner Name | Not Yet Assigned |
| | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

| | | | | | |
|---|---|---|---|---|---|
| 20 | 4449346 | | 1984-05-22 | Tremblay | |
| 21 | 4641988 | | 1987-02-10 | Ganner | |
| 22 | 4682458 | | 1987-07-28 | Sparrow | |
| 23 | 4716704 | | 1988-01-05 | Murr | |
| 24 | 5004027 | | 1991-04-02 | Legler et al. | |
| 25 | 5056286 | | 1991-10-15 | Bokor | |
| 26 | 5071280 | | 1991-12-10 | Turner | |
| 27 | 5160211 | | 1992-11-03 | Gilb | |
| 28 | 5182891 | | 1993-02-02 | Slocum | |
| 29 | 5243804 | | 1993-09-14 | Therrien et al. | |
| 30 | 5245808 | | 1993-09-21 | Grunewald et al. | |

| | | | | |
|---|---|---|---|---|
| | Application Number | | 12952876 | |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Filing Date | | 2010-11-23 | |
| | First Named Inventor | | Harry W. Eberle, III | |
| | Art Unit | | 1781 | |
| | Examiner Name | Not Yet Assigned | | |
| | Attorney Docket Number | | BHERON 3.0-001 CIP CON CO | |

| | | | | | |
|---|---|---|---|---|---|
| | 31 | 5251996 | | 1993-10-12 | Hiller et al. | |
| | 32 | 5377732 | | 1995-01-03 | Fujii et al. | |
| | 33 | 5419649 | | 1995-05-30 | Gilb | |
| | 34 | 5458433 | | 1995-10-17 | Stastny | |
| | 35 | 5480117 | | 1996-01-02 | Fleming, III | |
| | 36 | 5529428 | | 1996-06-25 | Bischof | |
| | 37 | 5564248 | | 1996-10-15 | Callies | |
| | 38 | 5603580 | | 1997-02-18 | Leek et al. | |
| | 39 | 5619834 | | 1997-04-15 | Chen | |
| | 40 | 5660016 | | 1997-08-26 | Erwin et al. | |
| | 41 | 5704181 | | 1998-01-06 | Fisher et al. | |

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 12952876 |
|---|---|---|---|
| | | Filing Date | 2010-11-23 |
| | | First Named Inventor | Harry W. Eberle, III |
| | | Art Unit | 1781 |
| | | Examiner Name | Not Yet Assigned |
| | | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

| 42 | 6012256 | | 2000-01-11 | Aschheim | |
| 43 | 6402415 | | 2002-06-11 | Eberle, III | |
| 44 | 6442908 | | 2002-09-03 | Naccarato et al. | |
| 45 | 6449918 | | 2002-09-17 | Nelson | |
| 46 | 6460306 | | 2002-10-08 | Nelson | |
| 47 | 7052200 | | 2006-05-30 | Harris | |
| 48 | D331470 | | 1992-12-01 | Mitchell et al. | |
| 49 | D470039 | | 2003-02-11 | Pelc | |
| 50 | D488373 | | 2004-04-13 | Eberle | |
| 51 | 6871467 | | 2005-03-29 | Hafner | |
| 52 | 1723306 | | 1929-08-06 | Sipe | |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 12952876 |
| --- | --- | --- |
| | Filing Date | 2010-11-23 |
| | First Named Inventor | Harry W. Eberle, III |
| | Art Unit | 1781 |
| | Examiner Name | Not Yet Assigned |
| | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

| 53 | 6363677 | | 2002-04-02 | Chen et al. | |
| --- | --- | --- | --- | --- | --- |
| 54 | 5359954 | | 1994-11-01 | Kordelin | |
| 55 | 6651400 | | 2003-11-25 | Murphy | |
| 56 | 4454699 | | 1984-06-19 | Strobl | |
| 57 | 4599841 | | 1986-07-15 | Haid | |
| 58 | 6032431 | | 2000-03-07 | Sugiyama | |
| 59 | 6711864 | | 2004-03-30 | Erwin | |
| 60 | 5743672 | | 1998-04-28 | Cline | |
| 61 | 6471434 | | 2002-10-29 | Chin et al. | |
| 62 | 695722 | | 1902-03-01 | Heilmann | |
| 63 | 6470641 | | 2002-10-29 | Faure | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Application Number | 12952876 | | | | |
| | Filing Date | 2010-11-23 | | | | |
| | First Named Inventor | Harry W. Eberle, III | | | | |
| | Art Unit | 1781 | | | | |
| | Examiner Name | Not Yet Assigned | | | | |
| | Attorney Docket Number | BHERON 3.0-001 CIP CON CO | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button. | Add |

### U.S.PATENT APPLICATION PUBLICATIONS | Remove |

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20020059766 | A1 | 2002-05-23 | Gregori | |

If you wish to add additional U.S. Published Application citation information please click the Add button. | Add |

### FOREIGN PATENT DOCUMENTS | Remove |

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2287104 | CA | A1 | 2001-01-19 | Gregori, Karl Hermann Werner | | ☐ |
| | 2 | 1217468 | FR | A | 1960-05-04 | | | ☐ |
| | 3 | 863317 | EP | A2 | 1998-09-09 | Eberle, Harry W Iii | | ☐ |
| | 4 | 4371657 | JP | A | 1992-12-24 | Hashida, Takaaki | | ☐ |
| | 5 | 372483 | DE | C | 1923-03-28 | Arnold, Wothe | | ☐ |
| | 6 | 2124672 | GB | A | 1984-02-22 | Sant, Paul Tisley | | ☐ |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 12952876 |
| --- | --- | --- |
| | Filing Date | 2010-11-23 |
| | First Named Inventor | Harry W. Eberle, III |
| | Art Unit | 1781 |
| | Examiner Name | Not Yet Assigned |
| | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 7 | 4036338 | DE | A1 | 1991-06-06 | Drischler, Roland Stephan | | ☐ |
| 8 | 1350754 | GB | A | 1974-04-24 | British, Ceramic Res Ass | | ☐ |
| 9 | 07189451 | JP | A | 1995-07-28 | Eidai, Co Ltd | | ☐ |
| 10 | 278212 | CH | A | 1951-10-15 | Loewinger, Jean Zoltan | | ☐ |
| 11 | 2647837 | FR | A1 | 1990-12-07 | Lamellux Bourdarie et al. | | ☐ |
| 12 | 1556252 | FR | A | 1969-02-07 | | | ☐ |
| 13 | 1,567,008 | GB | A | 1980-05-08 | Presco, International Ltd | | ☐ |

| If you wish to add additional Foreign Patent Document citation information please click the Add button | Add |
| --- | --- |
| | Remove |

## NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
| --- | --- | --- | --- |
| | 1 | Invoice for the sale of certain Eb-Ty Fasteners dated August 26, 1997. | ☐ |
| | 2 | Engineering Drawing depicting an Eb-Ty Fastener dated June 15, 1997. | ☐ |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| | Application Number | 12952876 |
| | Filing Date | 2010-11-23 |
| | First Named Inventor | Harry W. Eberle, III |
| | Art Unit | 1781 |
| | Examiner Name | Not Yet Assigned |
| | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

| | 3 | Harry W. Eberle, III et al. v. KK manufacturing Co., et al., Civil Action No. 03-5809 (FLW-TJB), Invalidity Contention applied to U.S. Patent No. 6,402,415 and U.S. Patent No. 6,851,884. | ☐ |
|---|---|---|---|

If you wish to add additional non-patent literature document citation information please click the Add button   Add

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

IC-App-0333

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Application Number | 12952876 |
| | Filing Date | 2010-11-23 |
| | First Named Inventor | Harry W. Eberle, III |
| | Art Unit | 1781 |
| | Examiner Name | Not Yet Assigned |
| | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Roberto Colón/ | Date (YYYY-MM-DD) | 2011-01-04 |
|---|---|---|---|
| Name/Print | Roberto Colón | Registration Number | 58651 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

IC-App-0334

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted via the Office electronic filing system in accordance with § 1.6(a)(4).

Dated: January 4, 2011
Electronic Signature for Roberto Colón:   /Roberto Colón/

Docket No.:
BHERON 3.0-001 CIP CON CON
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Harry W. Eberle, III

Application No.: 12/952,876                    Group Art Unit: 1781

Filed: November 23, 2010                    Examiner: Not Yet Assigned

For: EXPANSION-COMPENSATING DECK
     FASTENER

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## INFORMATION DISCLOSURE STATEMENT

Dear Sir:

It is respectfully requested that the references listed on the enclosed form be made of record and considered with respect to the above-referenced U.S. patent application. A copy of each reference was of record in Application No. 12/583,702, the benefit of which is claimed under §120. Submission of the present Information Disclosure Statement should not be taken as an admission that the cited references are legally available prior art or that the same are pertinent or material.

In the event that any fee is due in connection with the present Information Disclosure Statement, the Commissioner is hereby authorized to charge the same to our Deposit Account No. 12-1095.

Dated:  January 4, 2011            Respectfully submitted,
                                   Electronic signature:
                                   /Roberto Colón/
                                   Roberto Colón
                                   Registration No.: 58,651
                                   LERNER, DAVID, LITTENBERG,
                                     KRUMHOLZ & MENTLIK, LLP
                                   600 South Avenue West
                                   Westfield, New Jersey  07090
                                   (908) 654-5000
LD-459\                             Attorney for Applicant

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 9161827 |
| **Application Number:** | 12952876 |
| **International Application Number:** | |
| **Confirmation Number:** | 2504 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Customer Number:** | 00530 |
| **Filer:** | Arnold H. Krumholz/Aisha Irvis |
| **Filer Authorized By:** | Arnold H. Krumholz |
| **Attorney Docket Number:** | BHERON 3.0-001 CIP CON CO |
| **Receipt Date:** | 04-JAN-2011 |
| **Filing Date:** | 23-NOV-2010 |
| **Time Stamp:** | 16:26:54 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Information Disclosure Statement (IDS) Filed (SB/08) | BHERON5_-_Information_Disclosure_Statement_Fillable_PDF.pdf | 614309 <br> 50ea6406760e71d3ef6029cac917f8dfebbd8b31 | no | 11 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | IC-App-0337 |

| 2 | Transmittal Letter | BHERON5_-_IDS_-_Information_Disclosure_Statement_-_Reference_in_Previous_Application_LD-459.pdf | 47363 | no | 1 |
| | | | 54a26eb809ea30ca22d494713a05dbb41491bf15 | | |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 661672 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

IC-App-0338

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted via the Office electronic filing system in accordance with § 1.6(a)(4).

Dated: February 10, 2011
Electronic Signature for Roberto Colón:  /Roberto Colón/

Docket No.: BHERON 3.0-001 CIP CON CON
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Harry W. Eberle, III

Application No.: 12/952,876          Group Art Unit: 1781

Filed: November 23, 2010            Examiner: Not Yet
                                    Assigned

For: EXPANSION-COMPENSATING DECK
      FASTENER

### RESPONSE TO NOTICE TO FILE CORRECTED APPLICATION PAPERS

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

This is in response to the Notice to File Corrected Application Papers ("Notice") mailed December 13, 2010 in the above-identified application.

In response to the Notice, Applicants submit herewith replacement drawings, which are believed to be in compliance with 37 C.F.R. § 1.84 and 37 C.F.R. § 1.121(d).  The replacement drawings are free from erasures, alterations, overwriting, interlineations, folds and copy marks.

It is respectfully submitted that the present replacement drawings do not contain any new matter.

Application No.: 12/952,876          Docket No.: BHERON 3.0-001 CIP
CON CON


          If the Examiner has any questions concerning this
application, he or she is requested to call applicant's attorney at
(908) 654-5000.  If any additional fees are required by the present
Communication, the Examiner is hereby authorized to charge them to
our Deposit Account No. 12-1095.


Dated:  February 10, 2011          Respectfully submitted,

                                   Electronic signature:
                                   /Roberto Colón/
                                   Roberto Colón
                                   Registration No.: 58,651
                                   LERNER, DAVID, LITTENBERG,
                                     KRUMHOLZ & MENTLIK, LLP
                                   600 South Avenue West
                                   Westfield, New Jersey  07090
                                   (908) 654-5000
                                   Attorney for Applicant

IC-App-0340

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 9415417 |
| **Application Number:** | 12952876 |
| **International Application Number:** | |
| **Confirmation Number:** | 2504 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Customer Number:** | 00530 |
| **Filer:** | Arnold H. Krumholz/Aisha Irvis |
| **Filer Authorized By:** | Arnold H. Krumholz |
| **Attorney Docket Number:** | BHERON 3.0-001 CIP CON CO |
| **Receipt Date:** | 10-FEB-2011 |
| **Filing Date:** | 23-NOV-2010 |
| **Time Stamp:** | 11:30:07 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Drawings-only black and white line drawings | BHERON5_-_REPLACEMENT_DRAWINGS.pdf | 91935 b909359302dd8dce989012bb6786e7defda96a0e | no | 11 |

Warnings:

Information:

| 2 | Miscellaneous Incoming Letter | BHERON5_-_Response_to_Notice_to_File_Corrected_Application_Papers.pdf | 49732<br>6ea73f9c6e320f8c5168c1ea7d4e4beb35aad67e | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 141667 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

## FIG. 1



## FIG. 2



## FIG. 3

FIG. 4A



FIG. 4B



FIG. 5



FIG. 6



FIG. 7



FIG. 8



*FIG. 9A*



*FIG. 9B*



FIG. 10



FIG. 11



FIG. 12

FIG. 13



FIG. 14



240

241    243    253    247

245    249    251

FIG. 15



260

273    263    267    279

269                              271

265

283    281

FIG. 16



FIG. 17



FIG. 18



FIG. 19



FIG. 20



FIG. 21



 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 12/952,876 | 11/23/2010 | 1781 | 592 | BHERON 3.0-001 CIP CON CO | 25 | 3 |

**CONFIRMATION NO. 2504**

530
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

**UPDATED FILING RECEIPT**


*OC000000046031224*

Date Mailed: 02/18/2011

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Applicant(s)**
          Harry W. Eberle III, Califon, NJ;
**Power of Attorney:** The patent practitioners associated with Customer Number 00530

**Domestic Priority data as claimed by applicant**
          This application is a CON of 12/583,702 08/24/2009 PAT 7,874,113
          which is a CON of 10/446,514 05/28/2003 PAT 7,578,105
          which is a CIP of 10/393,100 03/20/2003 PAT 6,851,884

**Foreign Applications** (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)

**If Required, Foreign Filing License Granted:** 12/08/2010

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 12/952,876**

**Projected Publication Date:** 06/02/2011

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***

IC-App-0354

**Title**

EXPANSION-COMPENSATING DECK FASTENER

**Preliminary Class**

426

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

## NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

IC-App-0356

# PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 12/952,876 |

## APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 82 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 270 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 110 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 25 minus 20 = | * 5 | x 26 = | 130 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 minus 3 = | | x 110 = | 0.00 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $270 ($135 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 592 | | TOTAL | |

## APPLICATION AS AMENDED - PART II

### AMENDMENT A

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

### AMENDMENT B

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

IC-App-0357

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | BHERON 3.0-001 CIP CON CO | 2504 |

530          7590          03/08/2011
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

| EXAMINER |
|---|
| WENDELL, MARK R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/08/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| **Office Action Summary** | **Application No.** | **Applicant(s)** |
| | 12/952,876 | EBERLE, HARRY W. |
| | **Examiner** | **Art Unit** |
| | MARK R. WENDELL | 3635 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>23 November 2010</u>.

2a) ☐ This action is **FINAL**.  2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1-25</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) <u>1-25</u> is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☒ The specification is objected to by the Examiner.

10) ☒ The drawing(s) filed on <u>23 November 2010</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date <u>20110104</u>.

4) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____ .

# DETAILED ACTION

## *Specification*

Applicant is reminded of the proper language and format for an abstract of the disclosure.

The abstract should be in narrative form and generally limited to a single paragraph on a separate sheet within the range of 50 to 150 words.  It is important that the abstract not exceed 150 words in length since the space provided for the abstract on the computer tape used by the printer is limited.  **The form and legal phraseology often used in patent claims, such as "means" and "said," should be avoided**.  The abstract should describe the disclosure sufficiently to assist readers in deciding whether there is a need for consulting the full patent text for details.

The language should be clear and concise and should not repeat information given in the title.  It should avoid using phrases which can be implied, such as, "The disclosure concerns," "The disclosure defined by this invention," "The disclosure describes," etc.

The abstract of the disclosure is objected to because the content of the abstract contains legal phraseology.  Also, line 8, the word "aid" should be "said" which should then be changed to "the"; Line 10, the word "way" should be "away."  Correction is required.  See MPEP § 608.01(b).

## *Claim Rejections - 35 USC § 112*

Claim 20 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.  The examiner notes that claim 20 is a duplicate claim to claim 10 of the instant application.  Appropriate correction is necessary.

## *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 1-21 and 23-24 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Erwin (US 2002/0121064) in view of Chen et al. (US 6363677).  Regarding claim 1,

Erwin teaches an anchoring device (24) comprising:

- A horizontally-extending top element (horizontal top surface housing hole 28) having a center line (line extending from front to back in Figure 2 running through the center hole 28 diameter) and side portions (26) extending from the center line in opposite lateral directions transverse to the center line;

- A support member (portion extending downwardly from 26 in Figure 2) extending downwardly from the top element (horizontal top surface housing hole 28) adjacent the center line, the side portions (26) of the top element projecting in the lateral directions (left and right in Figure 2) beyond the support member; and

- The anchoring device (24) having an opening (28) *adapted to receive a fastener so that the fastener extends downwardly toward a joist* (the examiner notes that the prior art is capable of performing the italicized function – see paragraph [0022]).

However, Erwin does not distinctly disclose one or more compression members projecting from the top element, the compression members defining engagement surfaces remote from the center line, the engagement surfaces being constructed and arranged to confront vertically-extensive surfaces of slotted boards engaged with top element so that the top element extends into slots in the boards.  Erwin states in paragraph [0026]: "those skilled in the art will additionally recognize that the within disclosures are exemplary only, and that various other alternatives, adaptations, and modifications may be made within the spirit and scope of the present invention."

Chen illustrates in Figures 10 and 11 a similar anchoring device for use connecting adjacent flooring members.  Chen illustrates one or more compression members (see Figure below) projecting from the top element, the compression members defining engagement surfaces remote from the center line, the engagement surfaces being constructed and arranged to confront vertically-extensive surfaces of slotted boards engaged with top element so that the top element extends into slots in the boards (see Figure below).



It would have been obvious to one having ordinary skill in the art at the time of invention to modify the top surface of Erwin to include the compression member of Chen in order to create a connection in which the boards cannot migrate or separate from one another.

Regarding claim 2, Erwin in view of Chen teaches the anchoring device according to claim 1 (see above), wherein the horizontally-extending top element has a shape of a rectangle (see Figure 2 of Erwin).

Regarding claim 3, Erwin in view of Chen teaches the anchoring device according to claim 1 (see above), wherein the opening (28) extends through the horizontally-extending top element (see Figure 1 of Erwin where the dotted lines of 28 illustrate a through-hole).

Regarding claim 4, Erwin in view of Chen teaches the anchoring device according to claim 1 (see above), wherein the opening (28) is located adjacent the center line of the horizontally-extending top element (see Figure 2 of Erwin).

Regarding claim 5, Erwin in view of Chen teaches the anchoring device according to claim 1 (see above), wherein the one or more compression members (see Figure of Chen above) are attached to the support member (portion extending downwardly from 26 in Figure 2) – connected via horizontal top member.

Regarding claim 6, it is described above what is disclosed by Erwin in view of Chen;

however the references do not distinctly disclose the compression members having a

hollow cylinder shape.  The examiner notes that the applicant's originally filed

specification fails to distinguish criticality for the specified hollow cylinder shape (see

paragraph [0044] where the shape is only mentioned and no unexpected results are

discerned for the specific shape; various shapes are also disclosed throughout the

specification all performing the same function).  It would have been obvious to one

having ordinary skill in the art at the time of invention to modify the compression

members of Erwin in view of Chen to be hollow cylinders since the applicant has not

disclosed that having a particular shape solves any stated problem or produces any

unexpected results and it appears that the anchoring mechanism would perform equally

well with any shaped compression members.


Regarding claim 7, Erwin in view of Chen teaches the anchoring device according to

claim 1 (see above), wherein the one or more compression members (see Figure of

Chen above) include one or more fins projecting from the horizontally-extending top

element (see Figure of Chen above).


Regarding claim 8, Erwin in view of Chen teaches the anchoring device according to

claim 1 (see above), wherein the support member (portion extending downwardly from

26 in Figure 2) includes at least two planar structures (adjacent items 20, planks)

spaced from each other (see Figure 1 of Erwin), the at least two planar structures

(adjacent items 20) being positioned substantially along a single plane (see Figure 1 of Erwin).

Regarding claim 9, Erwin in view of Chen teaches the anchoring device according to claim 1 (see above), wherein the support member (portion extending downwardly from 26 in Figure 2) is a monolithic structure (see Figure 2 of Erwin).

Regarding claims 10 and 20, Erwin in view of Chen teaches the anchoring device according to claim 1 (see above), wherein the opening (28) has an elongated shape (elongated in the vertical direction as it extends a depth through item 24).

Regarding claim 11, Erwin in view of Chen further teaches at least two slotted boards (20 with slots 22) adjacent to each other (see Figure 1 of Erwin), each slotted board including a slot (22) and at least one vertically-extensive surface (surface above item 24 extending in a vertical direction) and at least one horizontally-extensive surface (top surface of 20 or top surface of groove 22).

Regarding claim 12, Erwin in view of Chen teaches the anchoring device according to claim 11 (see above), wherein the horizontally-extending top element has a shape of a rectangle (see Figure 2 of Erwin).

Regarding claim 13, Erwin in view of Chen teaches the anchoring device according to claim 11 (see above), wherein the opening (28) extends through the horizontally-extending top element (see Figure 1 of Erwin where the dotted lines of 28 illustrate a through-hole).

Regarding claim 14, Erwin in view of Chen teaches the anchoring device according to claim 11 (see above), wherein the opening (28) is located adjacent the center line of the horizontally-extending top element (see Figure 2 of Erwin).

Regarding claim 15, Erwin in view of Chen teaches the anchoring device according to claim 11 (see above), wherein the one or more compression members (see Figure of Chen above) are attached to the support member (portion extending downwardly from 26 in Figure 2) – connected via horizontal top member.

Regarding claim 16, it is described above what is disclosed by Erwin in view of Chen; however the references do not distinctly disclose the compression members having a hollow cylinder shape.  The examiner notes that the applicant's originally filed specification fails to distinguish criticality for the specified hollow cylinder shape (see paragraph [0044] where the shape is only mentioned and no unexpected results are discerned for the specific shape; various shapes are also disclosed throughout the specification all performing the same function).  It would have been obvious to one having ordinary skill in the art at the time of invention to modify the compression

members of Erwin in view of Chen to be hollow cylinders since the applicant has not disclosed that having a particular shape solves any stated problem or produces any unexpected results and it appears that the anchoring mechanism would perform equally well with any shaped compression members.

Regarding claim 17, Erwin in view of Chen teaches the anchoring device according to claim 11 (see above), wherein the one or more compression members (see Figure of Chen above) include one or more fins projecting from the horizontally-extending top element (see Figure of Chen above).

Regarding claim 18, Erwin in view of Chen teaches the anchoring device according to claim 11 (see above), wherein the support member (portion extending downwardly from 26 in Figure 2) includes at least two planar structures (adjacent items 20, planks) spaced from each other (see Figure 1 of Erwin), the at least two planar structures (adjacent items 20) being positioned substantially along a single plane (see Figure 1 of Erwin).

Regarding claim 19, Erwin in view of Chen teaches the anchoring device according to claim 11 (see above), wherein the support member (portion extending downwardly from 26 in Figure 2) is a monolithic structure (see Figure 2 of Erwin).

Regarding claim 21, Erwin in view of Chen further teaches an anchoring device

comprising:

- A horizontally-extending top element (horizontal top surface housing hole 28)

    having a center line (line extending from front to back in Figure 2 running through

    the center hole 28 diameter), side portions (26) extending from the center line in

    opposite lateral directions transverse to the center line, opposite sidewalls (see

    Figure below of Erwin) and opposite end walls (see Figure below of Erwin), the

    center line extending between the opposite end walls, at least a portion of one of

    the end walls being non-parallel relative to a portion of the other end wall

    opposite thereto (bottom, sloped, left side of front endwall is not parallel to the

    bottom, sloped, right side of the back endwall).



Regarding claim 23, Erwin in view of Chen teaches the anchoring device according to

claim 21 (see above), further comprising one or more compression members (see

Figure above of Chen) projecting from the horizontally-extending top element (horizontal

top surface housing hole 28 of Erwin).

Regarding claim 24, it is described above what is disclosed by Erwin in view of Chen; however the references do not distinctly disclose the compression members having an oval cross-section.  The examiner notes that the applicant's originally filed specification fails to distinguish criticality for the specified oval shape (see paragraph [0056] where the shape is only mentioned and no unexpected results are discerned for the specific shape).  It would have been obvious to one having ordinary skill in the art at the time of invention to modify the compression member of Erwin in view of Chen to be oval in shape since the applicant has not disclosed that having a particular shape solves any stated problem or produces any unexpected results and it appears that the anchoring mechanism would perform equally well with any shaped compression member.

Claims 22 and 25 are rejected under 35 U.S.C. 103(a) as being unpatentable over Erwin (US 2002/0121064) in view of Chen et al. (US 6363677), as applied to claim 21 above and in further view of Eberle, III (US 6402415).  Regarding claim 22, it is described above what is disclosed by Erwin in view of Chen; however the references do not distinctly disclose the opposite endwalls having an arc shape.  Eberle teaches a similar anchoring mechanism that fits within grooves of adjacent flooring panels.  Eberle illustrates in Figure 1 the endwalls (5 and 7) being arc-shaped.  It would have been obvious to one having ordinary skill in the art at the time of invention to modify the endwalls of Erwin in view of Chen to be arc-shaped, like those of Eberle, for a tighter fit within grooves of the board and a more universal connection.

Regarding claim 25, it is described above what is disclosed by Erwin in view of Chen; however the references do not distinctly disclose the opening having a beveled top. Eberle teaches within the abstract an opening in the top, horizontal surface of the anchoring mechanism which has a beveled top. It would have been obvious to one having ordinary skill in the art at the time of invention to modify the opening of Erwin in view of Chen to include a bevel to permit angled screwing of the anchor to a joist.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to MARK R. WENDELL whose telephone number is (571)270-3245. The examiner can normally be reached on Mon-Thur.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Eileen Lillis can be reached on (571) 272-6928. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


                                        Mark R. Wendell
                                        Examiner
                                        Art Unit 3635

/Mark R. Wendell/
Examiner, Art Unit 3635
March 2, 2011

| | Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| | | 12952876 | EBERLE, HARRY W. |
| | | Examiner | Art Unit |
| | | MARK R WENDELL | 3635 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/02/2011 | | | | | | | |
| | 1 | ✓ | | | | | | | |
| | 2 | ✓ | | | | | | | |
| | 3 | ✓ | | | | | | | |
| | 4 | ✓ | | | | | | | |
| | 5 | ✓ | | | | | | | |
| | 6 | ✓ | | | | | | | |
| | 7 | ✓ | | | | | | | |
| | 8 | ✓ | | | | | | | |
| | 9 | ✓ | | | | | | | |
| | 10 | ✓ | | | | | | | |
| | 11 | ✓ | | | | | | | |
| | 12 | ✓ | | | | | | | |
| | 13 | ✓ | | | | | | | |
| | 14 | ✓ | | | | | | | |
| | 15 | ✓ | | | | | | | |
| | 16 | ✓ | | | | | | | |
| | 17 | ✓ | | | | | | | |
| | 18 | ✓ | | | | | | | |
| | 19 | ✓ | | | | | | | |
| | 20 | ✓ | | | | | | | |
| | 21 | ✓ | | | | | | | |
| | 22 | ✓ | | | | | | | |
| | 23 | ✓ | | | | | | | |
| | 24 | ✓ | | | | | | | |
| | 25 | ✓ | | | | | | | |

Receipt date: 01/04/2011

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

12952876 - GAU: 3635

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | 12952876 |
| | Filing Date | 2010-11-23 |
| | First Named Inventor | Harry W. Eberle, III |
| | Art Unit | 1781 |
| | Examiner Name | Not Yet Assigned |
| | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

**U.S.PATENTS** | Remove |

| Examiner Initial* | Cite No | Patent Number | Kind Code¹ | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 186463 | | 1877-01-23 | Dickinson | |
| | 2 | 466995 | | 1892-01-12 | Abramson | |
| | 3 | 1184080 | | 1916-05-23 | D'arcy | |
| | 4 | 1241885 | | 1917-10-02 | Roeder | |
| | 5 | 1714738 | | 1929-05-28 | Smith | |
| | 6 | 1990001 | | 1935-02-05 | Rutten | |
| | 7 | 2201129 | | 1940-05-14 | Weiland | |
| | 8 | 2332081 | | 1943-10-19 | Hunt et al. | |

| | | | | |
|---|---|---|---|---|
| Application Number | 12952876 | | | |
| Filing Date | 2010-11-23 | | | |
| First Named Inventor | Harry W. Eberle, III | | | |
| Art Unit | 1781 | | | |
| Examiner Name | Not Yet Assigned | | | |
| Attorney Docket Number | BHERON 3.0-001 CIP CON CO | | | |

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( **Not for submission under 37 CFR 1.99** )

| | | | | | |
|---|---|---|---|---|---|
| 9 | 2337156 | | 1943-12-21 | Elmendorf | |
| 10 | 2362252 | | 1944-11-07 | Ellinwood | |
| 11 | 2398603 | | 1946-04-16 | Soderberg | |
| 12 | 2406387 | | 1946-08-27 | Lank | |
| 13 | 2526116 | | 1950-10-17 | Browne | |
| 14 | 3045294 | | 1962-07-24 | Livezey | |
| 15 | 3319983 | | 1967-05-16 | Zibell | |
| 16 | 3619963 | | 1971-11-16 | Omholt | |
| 17 | 3705002 | | 1972-12-05 | Varlonga | |
| 18 | 3890753 | | 1975-06-24 | Johansen | |
| 19 | 4154172 | | 1979-05-15 | Curtis, Jr. | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( **Not for submission under 37 CFR 1.99** )

| Application Number | 12952876 |
| Filing Date | 2010-11-23 |
| First Named Inventor | Harry W. Eberle, III |
| Art Unit | 1781 |
| Examiner Name | Not Yet Assigned |
| Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

| | 20 | 4449346 | | 1984-05-22 | Tremblay | |
| | 21 | 4641988 | | 1987-02-10 | Ganner | |
| | 22 | 4682458 | | 1987-07-28 | Sparrow | |
| | 23 | 4716704 | | 1988-01-05 | Murr | |
| | 24 | 5004027 | | 1991-04-02 | Legler et al. | |
| | 25 | 5056286 | | 1991-10-15 | Bokor | |
| | 26 | 5071280 | | 1991-12-10 | Turner | |
| | 27 | 5160211 | | 1992-11-03 | Gilb | |
| | 28 | 5182891 | | 1993-02-02 | Slocum | |
| | 29 | 5243804 | | 1993-09-14 | Therrien et al. | |
| | 30 | 5245808 | | 1993-09-21 | Grunewald et al. | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./

| | | | | | |
|---|---|---|---|---|---|

| Application Number | 12952876 | 12952876 - GAU: 3635 |
|---|---|---|
| Filing Date | 2010-11-23 | |
| First Named Inventor | Harry W. Eberle, III | |
| Art Unit | 1781 | |
| Examiner Name | Not Yet Assigned | |
| Attorney Docket Number | BHERON 3.0-001 CIP CON CO | |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( **Not for submission under 37 CFR 1.99**)

| | 31 | 5251996 | | 1993-10-12 | Hiller et al. | |
|---|---|---|---|---|---|---|
| | 32 | 5377732 | | 1995-01-03 | Fujii et al. | |
| | 33 | 5419649 | | 1995-05-30 | Gilb | |
| | 34 | 5458433 | | 1995-10-17 | Stastny | |
| | 35 | 5480117 | | 1996-01-02 | Fleming, III | |
| | 36 | 5529428 | | 1996-06-25 | Bischof | |
| | 37 | 5564248 | | 1996-10-15 | Callies | |
| | 38 | 5603580 | | 1997-02-18 | Leek et al. | |
| | 39 | 5619834 | | 1997-04-15 | Chen | |
| | 40 | 5660016 | | 1997-08-26 | Erwin et al. | |
| | 41 | 5704181 | | 1998-01-06 | Fisher et al. | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./

| | | | | | |
|---|---|---|---|---|---|
| Application Number | | 12952876 | | 12952876 - GAU: 3635 | |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( **Not for submission under 37 CFR 1.99** )

| | |
|---|---|
| Application Number | 12952876 |
| Filing Date | 2010-11-23 |
| First Named Inventor | Harry W. Eberle, III |
| Art Unit | 1781 |
| Examiner Name | Not Yet Assigned |
| Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

| | | | | | |
|---|---|---|---|---|---|
| | 42 | 6012256 | | 2000-01-11 | Aschheim |
| | 43 | 6402415 | | 2002-06-11 | Eberle, III |
| | 44 | 6442908 | | 2002-09-03 | Naccarato et al. |
| | 45 | 6449918 | | 2002-09-17 | Nelson |
| | 46 | 6460306 | | 2002-10-08 | Nelson |
| | 47 | 7052200 | | 2006-05-30 | Harris |
| | 48 | D331470 | | 1992-12-01 | Mitchell et al. |
| | 49 | D470039 | | 2003-02-11 | Pelc |
| | 50 | D488373 | | 2004-04-13 | Eberle |
| | 51 | 6871467 | | 2005-03-29 | Hafner |
| | 52 | 1723306 | | 1929-08-06 | Sipe |

EFS Web 2.1.17        ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.W./

| | | | | | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Application Number | | 12952876 | 12952876 - GAU: 3635 | |
| | Filing Date | | 2010-11-23 | | |
| | First Named Inventor | | Harry W. Eberle, III | | |
| | Art Unit | | 1781 | | |
| | Examiner Name | | Not Yet Assigned | | |
| | Attorney Docket Number | | BHERON 3.0-001 CIP CON CO | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 53 | 6363677 | | 2002-04-02 | Chen et al. | |
| | 54 | 5359954 | | 1994-11-01 | Kordelin | |
| | 55 | 6651400 | | 2003-11-25 | Murphy | |
| | 56 | 4454699 | | 1984-06-19 | Strobl | |
| | 57 | 4599841 | | 1986-07-15 | Haid | |
| | 58 | 6032431 | | 2000-03-07 | Sugiyama | |
| | 59 | 6711864 | | 2004-03-30 | Erwin | |
| | 60 | 5743672 | | 1998-04-28 | Cline | |
| | 61 | 6471434 | | 2002-10-29 | Chin et al. | |
| | 62 | 695722 | | 1902-03-01 | Heilmann | |
| | 63 | 6470641 | | 2002-10-29 | Faure | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./

| | |
|---|---|
| | Application Number | 12952876 | 12952876 - GAU: 3635 |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 12952876 |
| Filing Date | 2010-11-23 |
| First Named Inventor | Harry W. Eberle, III |
| Art Unit | 1781 |
| Examiner Name | Not Yet Assigned |
| Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

If you wish to add additional U.S. Patent citation information please click the Add button. **Add**

**U.S.PATENT APPLICATION PUBLICATIONS** **Remove**

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20020059766 | A1 | 2002-05-23 | Gregori | |

If you wish to add additional U.S. Published Application citation information please click the Add button. **Add**

**FOREIGN PATENT DOCUMENTS** **Remove**

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2287104 | CA | A1 | 2001-01-19 | Gregori, Karl Hermann Werner | | ☐ |
| | 2 | 1217468 | FR | A | 1960-05-04 | | | ☐ |
| | 3 | 863317 | EP | A2 | 1998-09-09 | Eberle, Harry W Iii | | ☐ |
| | 4 | 4371657 | JP | A | 1992-12-24 | Hashida, Takaaki | | ☐ |
| | 5 | 372483 | DE | C | 1923-03-28 | Arnold, Wothe | | ☐ |
| | 6 | 2124672 | GB | A | 1984-02-22 | Sant, Paul Tisley | | ☐ |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 12952876 |
|---|---|---|
| | Filing Date | 2010-11-23 |
| | First Named Inventor | Harry W. Eberle, III |
| | Art Unit | 1781 |
| | Examiner Name | Not Yet Assigned |
| | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7 | 4036338 | DE | A1 | 1991-06-06 | Drischler, Roland Stephan | | ☐ |
| 8 | 1350754 | GB | A | 1974-04-24 | British, Ceramic Res Ass | | ☐ |
| 9 | 07189451 | JP | A | 1995-07-28 | Eidai, Co Ltd | | ☐ |
| 10 | 278212 | CH | A | 1951-10-15 | Loewinger, Jean Zoltan | | ☐ |
| 11 | 2647837 | FR | A1 | 1990-12-07 | Lamellux Bourdarie et al. | | ☐ |
| 12 | 1556252 | FR | A | 1969-02-07 | | | ☐ |
| 13 | 1,567,008 | GB | A | 1980-05-08 | Presco, International Ltd | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button [Add]

**NON-PATENT LITERATURE DOCUMENTS** [Remove]

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | Invoice for the sale of certain Eb-Ty Fasteners dated August 26, 1997. | ☐ |
| | 2 | Engineering Drawing depicting an Eb-Ty Fastener dated June 15, 1997. | ☐ |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./

| | | |
|---|---|---|
| | Application Number | 12952876 |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Filing Date | 2010-11-23 |
| | First Named Inventor | Harry W. Eberle, III |
| | Art Unit | 1781 |
| | Examiner Name | Not Yet Assigned |
| | Attorney Docket Number | BHERON 3.0-001 CIP CON CO |

12952876 - GAU: 3635

| | 3 | Harry W. Eberle, III et al. v. KK manufacturing Co., et al., Civil Action No. 03-5809 (FLW-TJB), Invalidity Contention applied to U.S. Patent No. 6,402,415 and U.S. Patent No. 6,851,884. | ☐ |
|---|---|---|---|

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

**EXAMINER SIGNATURE**

| Examiner Signature | /Mark Wendell/ | Date Considered | 03/02/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.W./

| Search Notes<br> | Application/Control No.<br><br>12952876 | Applicant(s)/Patent Under Reexamination<br><br>EBERLE, HARRY  W. |
|---|---|---|
| | Examiner<br><br>MARK R WENDELL | Art Unit<br><br>3635 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 52 | 586.1, 586.2, 483.1, 480, 650.3, 403.1 | 3/2/11 | MRW |
| 403 | 231, 232.1, 408.1 | 3/2/11 | MRW |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor Name Search | 3/2/11 | MRW |
| Consulted Searches of Patent Family patents and apps. | 3/2/11 | MRW |
| Class Search in 52 and 403 | 3/2/11 | MRW |
| Searched EAST | 3/2/11 | MRW |
| Forward / Back Search rel. patents | 3/2/11 | MRW |
| Consulted IDS | 3/2/11 | MRW |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | Keyword Search of Claims | 3/2/11 | MRW |
| | Consulted Patent Family apps and patents | 3/2/11 | MRW |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | BHERON 3.0-001 CIP CON CO |

**CONFIRMATION NO. 2504**

530
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

**PUBLICATION NOTICE**


*OC000000047997925*

Title: EXPANSION-COMPENSATING DECK FASTENER

**Publication No.** US-2011-0126486-A1
**Publication Date:** 06/02/2011

# NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

IC-App-0383

| AMENDMENT TRANSMITTAL LETTER | | | Docket No.<br>BHERON 3.0-001 CIP CON | |
|---|---|---|---|---|
| Application No.<br>12/952,876-Conf. #2504 | Filing Date<br>November 23, 2010 | | Examiner<br>M. R. Wendell | Art Unit<br>3635 |

Applicant(s):  Harry W. Eberle, III

Invention:  EXPANSION-COMPENSATING DECK FASTENER

### TO THE COMMISSIONER FOR PATENTS

Transmitted herewith is an amendment in the above-identified application.

The fee has been calculated and is transmitted as shown below.

| CLAIMS AS AMENDED | | | | | |
|---|---|---|---|---|---|
| | Claims Remaining After Amendment | Highest Number Previously Paid | Number Extra Claims Present | Rate | |
| **Total Claims** | 25 - | 25 = | 0 | x  26.00 | 0.00 |
| **Independent Claims** | 3 - | 3 = | 0 | x  110.00 | 0.00 |
| **Multiple Dependent Claims (check if applicable)** | | | ☐ | | |
| **Other fee (please specify):** | | | | | |
| **TOTAL ADDITIONAL FEE FOR THIS AMENDMENT:** | | | | | 0.00 |

☐ Large Entity                                    ☒ Small Entity

☒ No additional fee is required for this amendment.

☐ Please charge Deposit Account No. _____ in the amount of $ _____ .

☐ A check in the amount of $ _____ to cover the filing fee is enclosed.

☐ Payment by credit card.  Form PTO-2038 is attached.

☒ The Director is hereby authorized to charge and credit Deposit Account No. ___12-1095___
as described below.  A duplicate copy of this sheet is enclosed.

  ☒ Credit any overpayment.

  ☒ Charge any additional filing or application processing fees required under 37 CFR 1.16 and 1.17.

/Dustin J. Friedland/                              Dated: ___September 8, 2011___
Dustin J. Friedland
Attorney/Agent Reg. No.: 64,815

LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, New Jersey  07090
(908) 654-5000

1486862_1.DOC

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the U.S. Postal Service on the date shown below with sufficient postage as First Class Mail, in an envelope addressed to: MS Amendment, Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313-1450.

Dated: September 8, 2011                    Signature: __/Dustin J. Friedland/__          (Dustin J. Friedland)

IC-App-0384

PTO/SB/22 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless if displays a valid OMB control number.

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a) FY 2009 *(Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).)* | Docket Number (Optional) BHERON 3.0-001 CIP CON CON |
|---|---|
| Application Number  12/952,876-Conf. #2504 | Filed  November 23, 2010 |

| For  EXPANSION-COMPENSATING DECK FASTENER |

| Art Unit  3635 | Examiner  M. R. Wendell |

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

|   |   | Fee | Small Entity Fee |   |
|---|---|---|---|---|
| ☐ | One month (37 CFR 1.17(a)(1)) | $130 | $65 | $ |
| ☐ | Two months (37 CFR 1.17(a)(2)) | $490 | $245 | $ |
| ☒ | Three months (37 CFR 1.17(a)(3)) | $1110 | $555 | $  555.00 |
| ☐ | Four months (37 CFR 1.17(a)(4)) | $1730 | $865 | $ |
| ☐ | Five months (37 CFR 1.17(a)(5)) | $2350 | $1175 | $ |

☒ Applicant claims small entity status. See 37 CFR 1.27.

☐ A check in the amount of the fee is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☒ The Director has already been authorized to charge fees in this application to a Deposit Account.

☒ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account Number    12-1095    .

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant/inventor.

☐ assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) is enclosed. (Form PTO/SB/96).

☒ attorney or agent of record. Registration Number    64,815

☐ attorney or agent under 37 CFR 1.34.
Registration number if acting under 37 CFR 1.34

| /Dustin J. Friedland/ | September 8, 2011 |
|---|---|
| Signature | Date |
| Dustin J. Friedland | (908) 654-5000 |
| Typed or printed name | Telephone Number |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

☐ Total of    1    forms are submitted.

---

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted via the Office electronic filing system in accordance with 37 CFR § 1.6(a)(4).

Dated:  September 8, 2011          Electronic Signature for Dustin J. Friedland:  /Dustin J. Friedland/

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 12952876 |
| **Filing Date:** | 23-Nov-2010 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Filer:** | Robert B. Cohen/Sharon Mcgee |
| **Attorney Docket Number:** | BHERON 3.0-001 CIP CON CO |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| Extension - 3 months with $0 paid | 2253 | 1 | 555 | 555 |

IC-App-0366

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **555** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 10901180 |
| **Application Number:** | 12952876 |
| **International Application Number:** | |
| **Confirmation Number:** | 2504 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Customer Number:** | 00530 |
| **Filer:** | Robert B. Cohen/Sharon Mcgee |
| **Filer Authorized By:** | Robert B. Cohen |
| **Attorney Docket Number:** | BHERON 3.0-001 CIP CON CO |
| **Receipt Date:** | 08-SEP-2011 |
| **Filing Date:** | 23-NOV-2010 |
| **Time Stamp:** | 11:35:22 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $ 555 |
| RAM confirmation Number | 11866 |
| Deposit Account | 121095 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

IC-App-0388

# File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Applicant Arguments/Remarks Made in an Amendment | BHERON5_Amendment_In_Response_to_OA_Dated_3811_1.pdf | 52619 / 4117bbdceac2e2047a1f962cf391d618bedc7a9 | no | 12 |

**Warnings:**

**Information:**

| 2 | Abstract | BHERON5_REVISED_ABSTRACT_-_Track_Changes_2.pdf | 12743 / 4d273a734ea74f0773a373f2db7c6560a884601e | no | 1 |

**Warnings:**

**Information:**

| 3 | Miscellaneous Incoming Letter | AMENDMENT_TRANSMITTAL_LETTER_3.pdf | 27679 / 87de6358aafbb67c45f39519dee2783891098324 | no | 1 |

**Warnings:**

**Information:**

| 4 | Extension of Time | BHERON5_-_Petition_for_Extension_of_Time_Under_37_CFR_1136a_PTO_SB-22_4.pdf | 32327 / 88ac3fd40eaf67524dc38d68dd366fe3a797c9e4 | no | 1 |

**Warnings:**

**Information:**

| 5 | Fee Worksheet (SB06) | fee-info.pdf | 30606 / c70eed30fc81e013ee4b1e1f769df7ab94b3772d | no | 2 |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 155974 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted via the Office electronic filing system in accordance with 37 CFR § 1.6(a)(4).

Dated: September 8, 2011
Electronic Signature for Dustin J. Friedland: /Dustin J. Friedland/

Docket No.: BHERON 3.0-001 CIP CON CON
(PATENT)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

---

| | |
|---|---|
| In re Patent Application of: | : |
| Harry W. Eberle, III | : |
| | : |
| Application No.: 12/952,876 | : Group Art Unit: 3635 |
| | : |
| Filed: November 23, 2010 | : Examiner: M. R. Wendell |
| | : |
| For: EXPANSION-COMPENSATING DECK | : |
|     FASTENER | : |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**<u>AMENDMENT</u>**

Dear Sir:

    In response to the Official Action mailed March 8, 2011, Applicant submits the following amendments and remarks.

IC-App-0390

**IN THE ABSTRACT**

Please delete the Abstract as originally filed and substitute therefor the attached revised Abstract.

**IN THE CLAIMS**

1.    (currently amended) An anchoring device comprising:

a horizontally-extending top element having a center line and side portions extending from the center line in opposite lateral directions transverse to the center line;

a support member extending downwardly from the top element adjacent the center line, the side portions of the top element projecting in the lateral directions beyond the support member; and

one or more at least partially collapsible compression members projecting from the top element, the compression members defining engagement surfaces remote from the center line, the engagement surfaces being constructed and arranged to confront vertically-extensive surfaces of slotted boards engaged with the top element so that the top element extends into slots in the boards;

the anchoring device having an opening adapted to receive a fastener so that the fastener extends downwardly toward a joist.

2.    (original)    The anchoring device according to claim 1, wherein the horizontally-extending top element has a shape selected from the group consisting of square, rectangular, circular, and oval.

3.    (original)    The anchoring device according to claim 1, wherein the opening extends through the horizontally top element.

4.    (original)    The anchoring device according to claim 1, wherein the opening is located adjacent the center line of the horizontally-extending top element.

5.    (original)    The anchoring device according to claim 1, wherein the one or more compression members are attached to the support members.

IC-App-0392

6.    (original)    The anchoring device according to claim 1, wherein the one or more compression members includes one or more hollow cylinders.

7.    (original)    The anchoring device according to claim 1, wherein the one or more compression members include one or more fins projecting from the top element.

8.    (original)    The anchoring device according to claim 1, wherein the support member includes at least two planar structures spaced from each other, the at least two planar structures being positioned substantially along a single plane.

9.    (original)    The anchoring device according to claim 1, wherein the support member is a monolithic structure.

10.   (original)    The anchoring device according to claim 1, wherein the opening has an elongated shape.

11.   (currently amended) An decking system comprising:

at least two slotted boards adjacent to each other, each slotted board including a slot and at least one vertically-extensive surface and at least one horizontally-extensive surface; and

an anchoring device having an opening adapted to receive a fastener so that the fastener extends downwardly toward a joist, the anchoring device comprising:

a horizontally-extending top element having a center line and side portions extending from the center line in opposite lateral directions transverse to the center line;

a support member extending downwardly from the top element adjacent the center line, the side portions of the top element projecting in the lateral directions beyond the support member; and

4

one or more at least partially collapsible compression members projecting from the top element, the compression members defining engagement surfaces remote from the center line, the engagement surfaces being constructed and arranged to confront the at least one vertically extensive surface of each slotted board engaged with the top element so that the top element extends into the slots in the boards.

12. (currently amended) The decking system ~~anchoring device~~ according to claim 11, wherein the horizontally-extending top element has a shape selected from the group consisting of square, rectangular, circular, and oval.

13. (currently amended) The decking system ~~anchoring device~~ according to claim 11, wherein the opening extends through the horizontally top element.

14. (currently amended) The decking system ~~anchoring device~~ according to claim 11, wherein the opening is located adjacent the center line of the horizontally-extending top element.

15. (currently amended) The decking system ~~anchoring device~~ according to claim 11, wherein the one or more compression members are attached to the support members.

16. (currently amended) The decking system ~~anchoring device~~ according to claim 11, wherein the one or more compression members includes one or more hollow cylinders.

17. (currently amended) The decking system ~~anchoring device~~ according to claim 11, wherein the one or more compression members include one or more fins projecting from the top element.

18. (currently amended) The decking system ~~anchoring device~~ according to claim 11, wherein the support member includes at least two planar structures spaced from each other, the at least two

IC-App-0394

planar structures being positioned substantially along a single plane.

19. (currently amended) The decking system ~~anchoring device~~ according to claim 11, wherein the support member is a monolithic structure.

20. (currently amended) The decking system ~~anchoring device~~ according to claim 11, wherein the opening has an elongated shape.

21. (currently amended) An anchoring device comprising:

a horizontally-extending top element having a center line, side portions extending from the center line in opposite lateral directions transverse to the center line, opposite sidewalls and opposite end walls, the center line extending between the opposite end walls, at least a portion of one of the end walls being non-parallel relative to a portion of the other end wall directly opposite thereto;

a support member extending downwardly from the top element adjacent the center line, the side portions of the top element projecting in the lateral directions beyond the support member, the support member being constructed and arranged to be positioned between vertically-extensive surfaces of slotted boards engaged with the top element so that the top element extends into slots in the boards; and

the anchoring device having an opening adapted to receive a fastener so that the fastener extends downwardly toward a joist.

22. (original) The anchoring device according to claim 21, wherein at least one of the opposite end walls has an arc-shape.

23. (original) The anchoring device according to claim 21, further comprising one or more compression members projecting from the horizontally-extending top element.

6

24. (original) The anchoring device according to claim 23, wherein the one or more compression members have an oval cross-section.

25. (original) The anchoring device according to claim 21, wherein the opening has a beveled top.

## **REMARKS**

The present Amendment is responsive to the Official Action mailed on March 8, 2011, and is accompanied by a petition for a two-month extension of time, resetting the deadline for filing a response to August 8, 2011. In view of the amendments and remarks made herein, reconsideration of the Examiner's rejections and Notice of Allowance of all pending claims are respectfully requested.

At the time of the Action, claims 1-25 were pending. Of such claims, only claims 1, 11, and 21 are independent. By amendment herein, claims 1, 11-20, and 21 are amended. Claims 1-25 remain pending. No new matter is added by way of the present amendments.

Objection To Abstract

As an initial matter, the Examiner objected to the Abstract under M.P.E.P. § 608.01(b), asserting that the Abstract included legal phraseology and two typographical errors. In order to ensure compliance with M.P.E.P. § 608.01(b), the Abstract is herein amended to remove each instance of the word "said" and to correct the typographical errors identified by the Examiner.

For at least these reasons, the Examiner's objection to the Abstract is believed to be rendered moot.

Claim Rejection Under 35 U.S.C. 112

The Examiner rejected claim 20 under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which Applicant regards as the invention. Specifically, the Examiner contended that claim 20 is a duplicate of claim 10.

In order to ensure compliance with 35 U.S.C. 112, second paragraph, claim 20 is herein amended to depend from claim 11,

IC-App-0397

which is believed to render the Examiner's rejection under 35 U.S.C. 112, second paragraph, moot.

Claim Rejections Under 35 U.S.C. 103

In the substance of the Action, the Examiner rejected claims 1-21 and 23-24 under 35 U.S.C. 103(a) as being unpatentable over U.S. Publication No. 2002/0121064 to Erwin ("Erwin") in view of U.S. Patent No. 6,363,677 to Chen, *et al* ("Chen"); claims 22 and 25 under 35 U.S.C. 103(a) as being unpatentable over Erwin in view of Chen and U.S. Patent No. 6,402,415 to Eberle, III ("Eberle").

In the Examiner's rejection of claim 1 under 35 U.S.C. 103(a), the Examiner asserted that the combination of Erwin and Chen renders claim 1 obvious. However, Applicant respectfully submits that the cited combination of references does not disclose or render obvious all of the features of amended claim 1. For example, amended claim 1 recites, among other features, "one or more at least partially collapsible compression members projecting from the top element," which is absent from the cited art. The Examiner acknowledged on page 4 of the Action that "Erwin does not distinctly disclose one or more compression members projecting from the top element." Rather, the Examiner cited Chen, which is directed to a surface covering system, as curing this deficiency. In particular, the Examiner asserted that an upper portion of a first spline section 54 of the surface covering system (*see, e.g.*, Chen Fig.5(a), col.3 l.66-col.4 l.2) discloses the "one or more compression members" recited in claim 1. However, the first spline section 54 of Chen is neither a "compression member," nor is "at least partially compressible," unlike the one or more compression members recited in claim 1. In this regard, the first spline section 54 of Chen is designed to maintain a gap between two or

9

more tiles, such that a second spline section 56 can be inserted into the gap between the tiles. (*See, e.g.*, Chen Fig.5(a), col.2 ll.50-60, col.6 ll.49-56.) Incorporating a partially or fully compressible compression member would render the surface covering system of Chen ineffective, as it would make the system incapable of maintaining such a gap between the tiles. Accordingly, Erwin in view of Chen does not disclose all of the features of amended claim 1.

For at least these reasons, amended claim 1 is believed to be patentable with respect to the cited art.

The Examiner also rejected claim 11 under 35 U.S.C. 103(a) as being obvious over Erwin in view of Chen. Without acquiescing to the Examiner's position, claim 11 is herein amended to recite a decking system including, among other features, "an anchoring device" with, among other features, "one or more at least partially collapsible compression members projecting from the top element." As discussed in detail above with respect to amended claim 1, Erwin in view of Chen fails to disclose or render obvious "one or more at least partially collapsible compression members projecting from the top element." Therefore, the cited combination of references does not disclose all of the features of amended claim 11.

For at least this reason, amended claim 11 is believed to be patentable over the cited art.

In rejecting claim 21, the Examiner asserted that the combination of Erwin and Chen discloses all of the claimed features. However, amended claim 21 is believed to be patentable over this combination of references.

Claim 21 is directed to an anchoring device including, among other features, "a horizontally-extending top element having . . .opposite sidewalls and opposite end walls."

10

In the Action, the Examiner cited opposite ends of the clip 24 disclosed in Erwin as opposite end walls and, referring to Figure 2 of Erwin, further asserted that a "bottom, sloped, left side of [the] front endwall is not parallel to the bottom, sloped, right side of the back endwall" (Action 10), as recited in claim 21. Without acquiescing to this position, claim 21 is herein amended to recite, among other features, "at least a portion of one of the end walls being non-parallel relative to a portion of the other end wall directly opposite thereto." In this regard, the "bottom, sloped, left side of [the] front endwall" and the "bottom, sloped, right side of the back endwall" of Erwin are not "directly opposite" one another, as recited in amended claim 21. Moreover, Chen fails to cure this deficiency. Thus, the combination of Erwin and Chen does not disclose all of the features of amended claim 21.

For at least this reason, amended claim 21 is considered to be patentable with respect to the cited references.

Claims 2-10, 12-20, and 22-25 each ultimately depend from one of claims 1, 11, or 21, and are therefore believed to be patentable at least by virtue of their dependence from an allowable claim. Applicants' failure to argue specifically in support of any dependent claim should not be taken as an admission that such claims are not inclusive of their own patentable subject matter beyond that found solely in their respective independent claims.

<u>Additional Remarks</u>

Claims 12-20, each of which ultimately depend from claim 11, are herein amended to more clearly and appropriately define the scope of the claims. No new matter is added.

IC-App-0400

Application No.: 12/952,876

Conclusion

As it is believed that all of the rejections set forth in the Official Action have been fully met, favorable reconsideration and allowance are earnestly solicited.

If, however, for any reason the Examiner does not believe that such action can be taken at this time, it is respectfully requested that he telephone Applicant's attorney at (908) 654-5000 in order to overcome any additional objections which he might have.

If there are any additional charges in connection with this requested amendment, the Examiner is authorized to charge Deposit Account No. 12-1095 therefor.

Dated: September 8, 2011      Respectfully submitted,
Electronic signature:
 /Dustin J. Friedland/
Dustin J. Friedland
Registration No.: 64,815
LERNER, DAVID, LITTENBERG,
 KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, New Jersey  07090
(908) 654-5000
Attorney for Applicant

1464317_1.doc

IC-App-0401

**ABSTRACT**

The present invention is an anchoring biscuit device for joining three boards. It includes, (a) an at least partially flat horizontal top element having an imaginary center line, having opposite side walls, and having a top view footprint adapted to be inserted into grooves of adjacent boards; (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which contain ~~said~~the grooves for receiving portions of ~~said~~the top into ~~said~~the grooves; and~~,~~ (c) at least one compressive element located on ~~aid~~ the device, with at least one portion of ~~said~~the at least one compressive element, from a top view footprint, being located away from ~~said~~the imaginary center line and away from ~~said~~the vertical support member, wherein ~~said~~the compressive element is adapted to at least partially collapse under a predetermined compressive force.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 12/952,876 | 11/23/2010 | ☐ To be Mailed |

## APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) | SMALL ENTITY ☒ | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☒ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 82 | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | OR |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 82 | TOTAL | |

## APPLICATION AS AMENDED – PART II

OTHER THAN

| | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | OR | SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| | 09/08/2011 | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |

**AMENDMENT**

| | (Column 1) Claims remaining | (Column 2) Highest number | (Column 3) Present extra | Rate | Additional Fee | OR | Rate | Additional Fee |
|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * 25 Minus | ** 25 | = 0 | X $26 = | 0 | OR | X $ = | |
| Independent (37 CFR 1.16(h)) | * 3 Minus | *** 3 | = 0 | X $110 = | 0 | OR | X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | | |
| | | | | TOTAL ADD'L FEE | 0 | OR | TOTAL ADD'L FEE | |

**AMENDMENT**

| | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | OR | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | | |
| Total (37 CFR 1.16(i)) | * Minus | ** | = | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(h)) | * Minus | *** | = | X $ = | | OR | X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | | |
| | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/TAMMY MCBETH BROWN/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

IC-App-0403

## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | BHERON 3.0-001 CIP CON CO | 2504 |

| | |
|---|---|
| 530      7590      10/20/2011 | EXAMINER |
| LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK | WENDELL, MARK R |

| | |
|---|---|
| 600 SOUTH AVENUE WEST | ART UNIT      PAPER NUMBER |
| WESTFIELD, NJ 07090 | 3635 |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/20/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| | **Application No.** | **Applicant(s)** |
|---|---|---|
| **Office Action Summary** | 12/952,876 | EBERLE, HARRY W. |
| | **Examiner** | **Art Unit** | |
| | MARK WENDELL | 3635 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>08 September 2011</u>.

2a)☒ This action is **FINAL**.      2b)☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

5)☒ Claim(s) <u>1-25</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>1-25</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

    1.☐ Certified copies of the priority documents have been received.

    2.☐ Certified copies of the priority documents have been received in Application No. _____.

    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 03-11)                     **Office Action Summary**                     Part of Paper No./Mail Date 20111018
IC-App-0405

## DETAILED ACTION

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

Claims 1-21 and 23-24 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Erwin (US 2002/0121064) in view of Harris (US 7052200).  Regarding claim 1, Erwin

teaches an anchoring device (24) comprising:

- A horizontally-extending top element (horizontal top surface housing hole 28)

  having a center line (line extending from front to back in Figure 2 running through

  the center hole 28 diameter) and side portions (26) extending from the center line

  in opposite lateral directions transverse to the center line;

- A support member (portion extending downwardly from 26 in Figure 2) extending

  downwardly from the top element (horizontal top surface housing hole 28)

  adjacent the center line, the side portions (26) of the top element projecting in the

  lateral directions (left and right in Figure 2) beyond the support member; and

- The anchoring device (24) having an opening (28) *adapted to receive a fastener*

  *so that the fastener extends downwardly toward a joist* (the examiner notes that

the prior art is capable of performing the italicized function – see paragraph

[0022]).

However, Erwin does not distinctly disclose one or more compression members

projecting from the top element, being at least partially collapsible, the compression

members defining engagement surfaces remote from the center line, the engagement

surfaces being constructed and arranged to confront vertically-extensive surfaces of

slotted boards engaged with top element so that the top element extends into slots in

the boards.  Erwin states in paragraph [0026]: "those skilled in the art will additionally

recognize that the within disclosures are exemplary only, and that various other

alternatives, adaptations, and modifications may be made within the spirit and scope of

the present invention."

Harris illustrates in Figures 16 and 19 a similar anchoring device for use

connecting adjacent flooring members.  Harris illustrates one or more, at least partially

collapsible (given there material and width), compression members (510 and 512)

projecting from the top element, the compression members defining engagement

surfaces remote from the center line (the examiner notes that the engagement surfaces

are remote from the center line in that they straddle the centerline as shown in Figures

16 and 19 - therefore leaving a space between adjacent boards), the engagement

surfaces being constructed and arranged to confront vertically-extensive surfaces of

slotted boards engaged with top element so that the top element extends into slots in

the boards (see Figures 6 and 7).

It would have been obvious to one having ordinary skill in the art at the time of invention to modify the top surface of Erwin to include the compression members of Harris on the top surface of the horizontal member of Erwin in order to create a connection in which the boards cannot migrate or separate from one another.

Regarding claim 2, Erwin in view of Harris teaches the anchoring device according to claim 1 (see above), wherein the horizontally-extending top element has a shape of a rectangle (see Figure 2 of Erwin).

Regarding claim 3, Erwin in view of Harris teaches the anchoring device according to claim 1 (see above), wherein the opening (28) extends through the horizontally-extending top element (see Figure 1 of Erwin where the dotted lines of 28 illustrate a through-hole).

Regarding claim 4, Erwin in view of Harris teaches the anchoring device according to claim 1 (see above), wherein the opening (28) is located adjacent the center line of the horizontally-extending top element (see Figure 2 of Erwin).

Regarding claim 5, Erwin in view of Harris teaches the anchoring device according to claim 1 (see above), wherein the one or more compression members (see Figures 16 and 19 of Harris) are attached to the support member (portion extending downwardly from 26 in Figure 2) – connected via horizontal top member.

Regarding claim 6, it is described above what is disclosed by Erwin in view of Harris; however the references do not distinctly disclose the compression members having a hollow cylinder shape.  The examiner notes that the applicant's originally filed specification fails to distinguish criticality for the specified hollow cylinder shape (see paragraph [0044] where the shape is only mentioned and no unexpected results are discerned for the specific shape; various shapes are also disclosed throughout the specification all performing the same function).  It would have been obvious to one having ordinary skill in the art at the time of invention to modify the compression members of Erwin in view of Harris to be hollow cylinders since the applicant has not disclosed that having a particular shape solves any stated problem or produces any unexpected results and it appears that the anchoring mechanism would perform equally well with any shaped compression members.

Regarding claim 7, Erwin in view of Harris teaches the anchoring device according to claim 1 (see above), wherein the one or more compression members (510 and 512 of Harris) include one or more fins projecting from the horizontally-extending top element (see Figures 16 and 19 of Harris where there are two fins on each side of the member - one on the far side of the centerline and one on the near side of the centerline).

Regarding claim 8, Erwin in view of Harris teaches the anchoring device according to claim 1 (see above), wherein the support member (portion extending downwardly from

26 in Figure 2) includes at least two planar structures (adjacent items 20, planks) spaced from each other (see Figure 1 of Erwin), the at least two planar structures (adjacent items 20) being positioned substantially along a single plane (see Figure 1 of Erwin).

Regarding claim 9, Erwin in view of Harris teaches the anchoring device according to claim 1 (see above), wherein the support member (portion extending downwardly from 26 in Figure 2) is a monolithic structure (see Figure 2 of Erwin).

Regarding claims 10 and 20, Erwin in view of Harris teaches the anchoring device according to claim 1 (see above), wherein the opening (28) has an elongated shape (elongated in the vertical direction as it extends a depth through item 24).

Regarding claim 11, Erwin in view of Harris further teaches at least two slotted boards (20 with slots 22) adjacent to each other (see Figure 1 of Erwin), each slotted board including a slot (22) and at least one vertically-extensive surface (surface above item 24 extending in a vertical direction) and at least one horizontally-extensive surface (top surface of 20 or top surface of groove 22).

Regarding claim 12, Erwin in view of Harris teaches the anchoring device according to claim 11 (see above), wherein the horizontally-extending top element has a shape of a rectangle (see Figure 2 of Erwin).

Regarding claim 13, Erwin in view of Harris teaches the anchoring device according to claim 11 (see above), wherein the opening (28) extends through the horizontally-extending top element (see Figure 1 of Erwin where the dotted lines of 28 illustrate a through-hole).

Regarding claim 14, Erwin in view of Harris teaches the anchoring device according to claim 11 (see above), wherein the opening (28) is located adjacent the center line of the horizontally-extending top element (see Figure 2 of Erwin).

Regarding claim 15, Erwin in view of Harris teaches the anchoring device according to claim 11 (see above), wherein the one or more compression members (510 and 512 of Harris) are attached to the support member (portion extending downwardly from 26 in Figure 2) – connected via horizontal top member.

Regarding claim 16, it is described above what is disclosed by Erwin in view of Harris; however the references do not distinctly disclose the compression members having a hollow cylinder shape.  The examiner notes that the applicant's originally filed specification fails to distinguish criticality for the specified hollow cylinder shape (see paragraph [0044] where the shape is only mentioned and no unexpected results are discerned for the specific shape; various shapes are also disclosed throughout the specification all performing the same function).  It would have been obvious to one

having ordinary skill in the art at the time of invention to modify the compression members of Erwin in view of Harris to be hollow cylinders since the applicant has not disclosed that having a particular shape solves any stated problem or produces any unexpected results and it appears that the anchoring mechanism would perform equally well with any shaped compression members.

Regarding claim 17, Erwin in view of Harris teaches the anchoring device according to claim 11 (see above), wherein the one or more compression members (510 and 512 of Harris) include one or more fins projecting from the horizontally-extending top element (see Figures 16 and 19 of Harris where there are two fins on each side of the member - one on the far side of the centerline and one on the near side of the centerline).

Regarding claim 18, Erwin in view of Harris teaches the anchoring device according to claim 11 (see above), wherein the support member (portion extending downwardly from 26 in Figure 2) includes at least two planar structures (adjacent items 20, planks) spaced from each other (see Figure 1 of Erwin), the at least two planar structures (adjacent items 20) being positioned substantially along a single plane (see Figure 1 of Erwin).

Regarding claim 19, Erwin in view of Harris teaches the anchoring device according to claim 11 (see above), wherein the support member (portion extending downwardly from 26 in Figure 2) is a monolithic structure (see Figure 2 of Erwin).

Regarding claim 21, Erwin in view of Harris further teaches an anchoring device

comprising:

- A horizontally-extending top element (horizontal top surface housing hole 28)

  having a center line (line extending from front to back in Figure 2 running through

  the center hole 28 diameter), side portions (26) extending from the center line in

  opposite lateral directions transverse to the center line, opposite sidewalls (see

  Figure below of Erwin) and opposite end walls (see Figure below of Erwin), the

  center line extending between the opposite end walls, at least a portion of one of

  the end walls (front end wall, left side, sloping upward can be considered "a

  portion" of one of the end walls) being non-parallel relative to a portion of the

  other end (back end wall, right side, sloping downward can be considered "a

  portion" of the other end wall directly opposite the first) wall directly opposite

  thereto.



Regarding claim 23, Erwin in view of Harris teaches the anchoring device according to

claim 21 (see above), further comprising one or more compression members (510 and

512 of Harris) projecting from the horizontally-extending top element (horizontal top

surface housing hole 28 of Erwin).

Regarding claim 24, it is described above what is disclosed by Erwin in view of Harris;

however the references do not distinctly disclose the compression members having an

oval cross-section.  The examiner notes that the applicant's originally filed specification

fails to distinguish criticality for the specified oval shape (see paragraph [0056] where

the shape is only mentioned and no unexpected results are discerned for the specific

shape).  It would have been obvious to one having ordinary skill in the art at the time of

invention to modify the compression member of Erwin in view of Harris to be oval in

shape since the applicant has not disclosed that having a particular shape solves any

stated problem or produces any unexpected results and it appears that the anchoring

mechanism would perform equally well with any shaped compression member.

Claims 22 and 25 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Erwin (US 2002/0121064) in view of Harris (US 7052200), as applied to claim 21 above

and in further view of Eberle, III (US 6402415).  Regarding claim 22, it is described

above what is disclosed by Erwin in view of Harris; however the references do not

distinctly disclose the opposite endwalls having an arc shape.  Eberle teaches a similar

anchoring mechanism that fits within grooves of adjacent flooring panels.  Eberle

illustrates in Figure 1 the endwalls (5 and 7) being arc-shaped. It would have been obvious to one having ordinary skill in the art at the time of invention to modify the endwalls of Erwin in view of Harris to be arc-shaped, like those of Eberle, for a tighter fit within grooves of the board and a more universal connection.

Regarding claim 25, it is described above what is disclosed by Erwin in view of Harris; however the references do not distinctly disclose the opening having a beveled top. Eberle teaches within the abstract an opening in the top, horizontal surface of the anchoring mechanism which has a beveled top. It would have been obvious to one having ordinary skill in the art at the time of invention to modify the opening of Erwin in view of Harris to include a bevel to permit angled screwing of the anchor to a joist.

### *Response to Arguments*

Applicant's arguments with respect to claims 1-25 have been considered but are moot in view of the new ground(s) of rejection, as necessitated by amendment. The only arguments that were present within the submission by the applicant on 9/8/11 were that the compression member of Chen was not a compression member that was at least partially compressible. The examiner notes that given the materials listed in columns 7 and 8 of Chen, the compression member is compressible. However, the examiner believes this argument is in error as the claims, as amended, add the limitation of the compression member being partially collapsible, of which Chen cannot be given its geometry. Therefore, Erwin has been modified by Harris as outlined above. Erwin

states in paragraph [0026]: "those skilled in the art will additionally recognize that the within disclosures are exemplary only, and that various other alternatives, adaptations, and modifications may be made within the spirit and scope of the present invention."

Harris illustrates in Figures 16 and 19 a similar anchoring device for use connecting adjacent flooring members. Harris illustrates one or more, at least partially collapsible (given there material and width), compression members (510 and 512) projecting from the top element, the compression members defining engagement surfaces remote from the center line (the examiner notes that the engagement surfaces are remote from the center line in that they straddle the centerline as shown in Figures 16 and 19 - therefore leaving a space between adjacent boards), the engagement surfaces being constructed and arranged to confront vertically-extensive surfaces of slotted boards engaged with top element so that the top element extends into slots in the boards (see Figures 6 and 7).

The examiner believes it would have been obvious to one having ordinary skill in the art at the time of invention to modify the top surface of Erwin to include the compression members of Harris on the top surface of the horizontal member of Erwin in order to create a connection in which the boards cannot migrate or separate from one another.

The only other arguments that were present within the submission by the applicant on 9/8/11 were that the non-parallel end walls of Erwin were not directly opposite one another. The examiner disagrees. It is unclear within the claim language what "directly opposite" means. The portions defined within the Non-Final Rejection

(and defined on Page 11 of the Applicant's arguments) were directly opposite from one another across item 24. The applicant suggests that "directly opposite" mean the front and back end, or longitudinally across the entire structure.  The claim language clearly states "at least **a portion** of one of the end walls being non-parallel relative to **a portion** of the other end wall directly opposite thereto." Erwin clearly illustrates and teaches, as explained above, at least a portion of one of the end walls (front end wall, left side, sloping upward can be considered "a portion" of one of the end walls) being non-parallel relative to a portion of the other end (back end wall, right side, sloping downward can be considered "a portion" of the other end wall directly opposite the first) wall directly opposite thereto.


*Conclusion*

Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP § 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to MARK WENDELL whose telephone number is (571)270-3245.  The examiner can normally be reached on Mon-Thur.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Eileen Lillis can be reached on (571) 272-6928.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Mark R. Wendell
Primary Examiner
Art Unit 3635

/Mark R. Wendell/
Primary Examiner, Art Unit 3635
October 18, 2011

| | Index of Claims | Application/Control No.<br>12952876 | Applicant(s)/Patent Under Reexamination<br>EBERLE, HARRY W. |
|---|---|---|---|
| | | Examiner<br>MARK R WENDELL | Art Unit<br>3635 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/02/2011 | 10/18/2011 | | | | | | |
| | 1 | ✓ | ✓ | | | | | | |
| | 2 | ✓ | ✓ | | | | | | |
| | 3 | ✓ | ✓ | | | | | | |
| | 4 | ✓ | ✓ | | | | | | |
| | 5 | ✓ | ✓ | | | | | | |
| | 6 | ✓ | ✓ | | | | | | |
| | 7 | ✓ | ✓ | | | | | | |
| | 8 | ✓ | ✓ | | | | | | |
| | 9 | ✓ | ✓ | | | | | | |
| | 10 | ✓ | ✓ | | | | | | |
| | 11 | ✓ | ✓ | | | | | | |
| | 12 | ✓ | ✓ | | | | | | |
| | 13 | ✓ | ✓ | | | | | | |
| | 14 | ✓ | ✓ | | | | | | |
| | 15 | ✓ | ✓ | | | | | | |
| | 16 | ✓ | ✓ | | | | | | |
| | 17 | ✓ | ✓ | | | | | | |
| | 18 | ✓ | ✓ | | | | | | |
| | 19 | ✓ | ✓ | | | | | | |
| | 20 | ✓ | ✓ | | | | | | |
| | 21 | ✓ | ✓ | | | | | | |
| | 22 | ✓ | ✓ | | | | | | |
| | 23 | ✓ | ✓ | | | | | | |
| | 24 | ✓ | ✓ | | | | | | |
| | 25 | ✓ | ✓ | | | | | | |

| Search Notes  | Application/Control No. 12952876 | Applicant(s)/Patent Under Reexamination EBERLE, HARRY  W. |
|---|---|---|
| | Examiner MARK R WENDELL | Art Unit 3635 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 52 | 586.1, 586.2, 483.1, 480, 650.3, 403.1 | 3/2/11 | MRW |
| 403 | 231, 232.1, 408.1 | 3/2/11 | MRW |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor Name Search | 3/2/11 | MRW |
| Consulted Searches of Patent Family patents and apps. | 3/2/11 | MRW |
| Class Search in 52 and 403 | 3/2/11 | MRW |
| Searched EAST | 3/2/11 | MRW |
| Forward / Back Search rel. patents | 3/2/11 | MRW |
| Consulted IDS | 3/2/11 | MRW |
| Updated Search / consulted previously cited art | 10/18/11 | MRW |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | Keyword Search of Claims | 3/2/11 | MRW |
| | Consulted Patent Family apps and patents | 3/2/11 | MRW |

| | |
|---|---|
| | |

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted via the Office electronic filing system in accordance with 37 CFR § 1.6(a)(4).

Dated: December 19, 2011
Electronic Signature for Dustin J. Friedland:  /Dustin J. Friedland/

**EXPEDITED PROCEDURE**
Group Art Unit: 3635
Docket No.: BHERON 3.0-001 CIP CON CON

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

_____

In re Patent Application of:       :
                                   :
Harry W. Eberle, III               :
                                   :
Application No.: 12/952,876        : Group Art Unit: 3635
                                   :
Filed: November 23, 2010           : Examiner: M. R. Wendell
                                   :
For: EXPANSION-COMPENSATING DECK   :
     FASTENER                      :
_____

**COMMUNICATION UNDER 37 CFR § 1.116**

MS AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

In response to the Office Action dated October 20, 2011, finally rejecting claims 1-25, please consider the following remarks:

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted via the Office electronic filing system in accordance with 37 CFR § 1.6(a)(4).

Dated: December 19, 2011
Electronic Signature for Dustin J. Friedland:  /Dustin J. Friedland/

**EXPEDITED PROCEDURE**
Group Art Unit: 3635
Docket No.: BHERON 3.0-001 CIP CON CON

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

---

In re Patent Application of:    :
                                :
Harry W. Eberle, III            :
                                :
Application No.: 12/952,876     : Group Art Unit: 3635
                                :
Filed: November 23, 2010        : Examiner: M. R. Wendell
                                :
For: EXPANSION-COMPENSATING DECK :
    FASTENER                    :

---

### COMMUNICATION UNDER 37 CFR § 1.116

MS AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

In response to the Office Action dated October 20, 2011, finally rejecting claims 1-25, please consider the following remarks:

## REMARKS

The present Communication is responsive to the Final Official Action mailed on October 20, 2011, and is timely filed within two months of the date of the Final Official Action. The present Communication is enterable after final under at least 37 C.F.R. § 1.116(b)(3), as the remarks presented herein touch the merits of the application and were not presented earlier because they only address art that is cited for the first time in the outstanding Action with respect to claimed subject matter that was presented previously. In view of the remarks presented herein, reconsideration of the Examiner's rejections and allowance of all pending claims are respectfully requested.

In the Action, the Examiner rejected claims 1-21 and 23-24 under 35 U.S.C. § 103(a) as being unpatentable over U.S. Pub. No. 2002/0121064 to Erwin ("Erwin") in view of U.S. Patent No. 7,052,200 to Harris ("Harris") and rejected claims 22 and 25 under 35 U.S.C. § 103(a) as being unpatentable over Erwin in combination with Harris and U.S. Patent No. 6,402,415 to Eberle, III ("Eberle"). Thus, each of the Examiner's rejections relies at least partially on Harris. However, Harris is not legally available prior art to the present application under any section of 35 U.S.C. § 102, and therefore is ineligible to support the Examiner's rejections. The present application is a continuation of U.S. Patent Appln. Ser. No. 12/583,702, which is a continuation of U.S. Patent Appln. Ser. No. 10/446,514, which was filed on May 28, 2003. Accordingly, the present application is entitled to a priority date at least as early as May 28, 2003. The earliest priority date listed on Harris is subsequent to that date, on September 23, 2003. Therefore, Harris is not legally available prior art to the present application and cannot support a rejection of the present claims under 35 U.S.C. § 103(a). As acknowledged by the Examiner, the other art cited in the Action, either alone or in combination,

2

does not disclose or render obvious all of the features of the present claims. For at least these reasons, claims 1-25 are each patentable over the cited art.

In view of the above, each of the presently pending claims in this application is believed to be in immediate condition for allowance. Accordingly, the Examiner is respectfully requested to withdraw the outstanding rejection of the claims and to pass this application to issue.

If, however, for any reason the Examiner does not believe that such action can be taken at this time, it is respectfully requested that he telephone Applicant's attorney at (908) 654-5000 in order to overcome any additional objections which he might have.

If there are any additional charges in connection with this requested amendment, the Examiner is authorized to charge Deposit Account No. 12-1095 therefor.


Dated: December 19, 2011      Respectfully submitted,
                             Electronic signature: /Dustin J.
                             Friedland/
                             Dustin J. Friedland
                               Registration No.: 64,815
                             LERNER, DAVID, LITTENBERG,
                               KRUMHOLZ & MENTLIK, LLP
                             600 South Avenue West
                             Westfield, New Jersey  07090
                             (908) 654-5000
                             Attorney for Applicant

1542738_1.doc

IC-App-0424

**REMARKS**

The present Communication is responsive to the Final Official Action mailed on October 20, 2011, and is timely filed within two months of the date of the Final Official Action. The present Communication is enterable after final under at least 37 C.F.R. § 1.116(b)(3), as the remarks presented herein touch the merits of the application and were not presented earlier because they only address art that is cited for the first time in the outstanding Action with respect to claimed subject matter that was presented previously. In view of the remarks presented herein, reconsideration of the Examiner's rejections and allowance of all pending claims are respectfully requested.

In the Action, the Examiner rejected claims 1-21 and 23-24 under 35 U.S.C. § 103(a) as being unpatentable over U.S. Pub. No. 2002/0121064 to Erwin ("Erwin") in view of U.S. Patent No. 7,052,200 to Harris ("Harris") and rejected claims 22 and 25 under 35 U.S.C. § 103(a) as being unpatentable over Erwin in combination with Harris and U.S. Patent No. 6,402,415 to Eberle, III ("Eberle"). Thus, each of the Examiner's rejections relies at least partially on Harris. However, Harris is not legally available prior art to the present application under any section of 35 U.S.C. § 102, and therefore is ineligible to support the Examiner's rejections. The present application is a continuation of U.S. Patent Appln. Ser. No. 12/583,702, which is a continuation of U.S. Patent Appln. Ser. No. 10/446,514, which was filed on May 28, 2003. Accordingly, the present application is entitled to a priority date at least as early as May 28, 2003. The earliest priority date listed on Harris is subsequent to that date, on September 23, 2003. Therefore, Harris is not legally available prior art to the present application and cannot support a rejection of the present claims under 35 U.S.C. § 103(a). As acknowledged by the Examiner, the other art cited in the Action, either alone or in combination,

2

does not disclose or render obvious all of the features of the present claims. For at least these reasons, claims 1-25 are each patentable over the cited art.

In view of the above, each of the presently pending claims in this application is believed to be in immediate condition for allowance. Accordingly, the Examiner is respectfully requested to withdraw the outstanding rejection of the claims and to pass this application to issue.

If, however, for any reason the Examiner does not believe that such action can be taken at this time, it is respectfully requested that he telephone Applicant's attorney at (908) 654-5000 in order to overcome any additional objections which he might have.

If there are any additional charges in connection with this requested amendment, the Examiner is authorized to charge Deposit Account No. 12-1095 therefor.


Dated: December 19, 2011      Respectfully submitted,
                             Electronic signature: /Dustin J. Friedland/
                             Dustin J. Friedland
                               Registration No.: 64,815
                             LERNER, DAVID, LITTENBERG,
                               KRUMHOLZ & MENTLIK, LLP
                             600 South Avenue West
                             Westfield, New Jersey 07090
                             (908) 654-5000
                             Attorney for Applicant

1542738_1.doc

IC-App-0426

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11649038 |
| **Application Number:** | 12952876 |
| **International Application Number:** | |
| **Confirmation Number:** | 2504 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Customer Number:** | 530 |
| **Filer:** | Arnold H. Krumholz/Sophia Buchan |
| **Filer Authorized By:** | Arnold H. Krumholz |
| **Attorney Docket Number:** | BHERON 3.0-001 CIP CON CO |
| **Receipt Date:** | 19-DEC-2011 |
| **Filing Date:** | 23-NOV-2010 |
| **Time Stamp:** | 12:12:54 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment After Final | BHERON5__Communication_Under_37_CFR_1116_LD-446_1.pdf | 30340 <br> 67b8155503a00006ffe5ccbec04ae0cd3239fc16 | no | 3 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | IC-App-0427 |

| Total Files Size (in bytes): | 30340 |
| --- | --- |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## NOTICE OF ALLOWANCE AND FEE(S) DUE

530    7590    12/30/2011
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

| EXAMINER |
| --- |
| WENDELL, MARK R |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 3635 | |

DATE MAILED: 12/30/2011

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | BHERON 3.0-001 CIP CON CO | 2504 |

TITLE OF INVENTION: EXPANSION-COMPENSATING DECK FASTENER

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 03/30/2012 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

## HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

IC-App-0429

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** **Mail**    Mail Stop ISSUE FEE
                                                                                Commissioner for Patents
                                                                                P.O. Box 1450
                                                                                Alexandria, Virginia 22313-1450
                                                                    **or Fax**  (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

530          7590          12/30/2011

LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | BHERON 3.0-001 CIP CON CO | 2504 |

TITLE OF INVENTION: EXPANSION-COMPENSATING DECK FASTENER

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 03/30/2012 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| WENDELL, MARK R | 3635 | 052-403100 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                         (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.        ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____                 Date _____

Typed or printed name _____                 Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

IC-App-0430

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | BHERON 3.0-001 CIP CON CO | 2504 |

530          7590          12/30/2011

LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

| EXAMINER |
|---|
| WENDELL, MARK R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3635 | |

DATE MAILED: 12/30/2011

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)                                                                                   IC-App-0431

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 12/952,876 | EBERLE, HARRY W. | |
| | **Examiner** | **Art Unit** | |
| | MARK WENDELL | 3635 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>conversation with Dustin Friedland on 12/22/11</u>.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are <u>1-25</u>.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

      a) ☐ All    b) ☐ Some*    c) ☐ None    of the:

          1. ☐ Certified copies of the priority documents have been received.

          2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

          3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

      * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

6. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of

        Paper No./Mail Date _____.

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

7. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____.

7. ☒ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____.

/Mark R. Wendell/
Primary Examiner, Art Unit 3635

U.S. Patent and Trademark Office
PTOL-37 (Rev. 03-11)                 **Notice of Allowability**            Part of Paper No./Mail Date 20111222

IC-App-0433

## DETAILED ACTION

In view of applicant's remarks of 12/19/2011 regarding the priority date of the

application, the previous rejection made on 10/20/11 has been vacated.

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below. Should the changes and/or

additions be unacceptable to applicant, an amendment may be filed as provided by 37

CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no

later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview

with Dustin Friedland on 12/22/11.

The application has been amended as follows:

- Claim 21, line 7, the word "corresponding" has been inserted between "a"
  and "portion."

### *Allowable Subject Matter*

Claims 1-25 are allowed in view of the above Examiner's Amendment.

The following is an examiner's statement of reasons for allowance:  The examiner notes

that a thorough search has been performed and the closest prior art of record is Erwin

(US 2002/0121064), Eberle, III (US 6402415) and Chen et al. (US 6363677).

Regarding independent claims 1 and 11, none of these references (alone or in combination) distinctly disclose or fairly suggest one or more at least partially collapsible compression members projecting from the top element, the compression members defining engagement surfaces remote from the center line, the engagement surfaces being constructed and arranged to confront vertically-extensive surfaces of slotted boards engaged with the top element so that the top element extends into slots in the boards.

Regarding independent claim 21, none of these references (alone or in combination) distinctly disclose or fairly suggest at least a portion of one of the end walls being non-parallel relative to a corresponding portion of the other end wall directly opposite thereto. Erwin teaches one of the end walls being non-parallel relative to a portion of the other end wall directly opposite thereto; however not a side corresponding (or on the same side of the center line) portion of the other end wall directly opposite thereto.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to MARK WENDELL whose telephone number is (571)270-3245. The examiner can normally be reached on Mon-Thur.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Eileen Lillis can be reached on (571) 272-6928. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Mark R. Wendell
Primary Examiner
Art Unit 3635

/Mark R. Wendell/
Primary Examiner, Art Unit 3635
December 22, 2011

| *Search Notes*  | Application/Control No.<br><br>12952876 | Applicant(s)/Patent Under Reexamination<br><br>EBERLE, HARRY  W. |
|---|---|---|
| | Examiner<br><br>MARK R WENDELL | Art Unit<br><br>3635 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 52 | 586.1, 586.2, 483.1, 480, 650.3, 403.1 | 3/2/11 | MRW |
| 403 | 231, 232.1, 408.1 | 3/2/11 | MRW |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor Name Search | 3/2/11 | MRW |
| Consulted Searches of Patent Family patents and apps. | 3/2/11 | MRW |
| Class Search in 52 and 403 | 3/2/11 | MRW |
| Searched EAST | 3/2/11 | MRW |
| Forward / Back Search rel. patents | 3/2/11 | MRW |
| Consulted IDS | 3/2/11 | MRW |
| Updated Search / consulted previously cited art | 10/18/11 | MRW |
| Updated Search / consulted previously cited art | 12/22/11 | MRW |

### INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | Keyword Search of Claims | 3/2/11 | MRW |
| | Consulted Patent Family apps and patents | 3/2/11 | MRW |

|  |  |
|---|---|
|  |  |

<table>
<tr><td rowspan="3"><strong><em>Issue Classification</em></strong><br></td><td><strong>Application/Control No.</strong><br><br>12952876</td><td><strong>Applicant(s)/Patent Under Reexamination</strong><br><br>EBERLE, HARRY W.</td></tr>
<tr><td><strong>Examiner</strong><br><br>MARK R WENDELL</td><td><strong>Art Unit</strong><br><br>3635</td></tr>
</table>

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | **NON-CLAIMED** | |
| 52 | 403.1 | E | 0 | 4 | F | 15 / 22 (2006.01.01) | | |

**CROSS REFERENCE(S)**

| | | E | 0 | 4 | B | 2 / 00 (2006.01.01) | | |
|---|---|---|---|---|---|---|---|---|
| | | F | 1 | 6 | B | 9 / 00 (2006.01.01) | | |

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | |
|---|---|---|---|---|---|---|
| 52 | 586.1 | 586.2 | | | | |
| 403 | 231 | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| ☒ | Claims renumbered in the same order as presented by applicant | ☐ | CPA | ☐ | T.D. | ☐ | R.1.47 |
|---|---|---|---|---|---|---|---|

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

| | | **Total Claims Allowed:** | |
|---|---|---|---|
| | | 25 | |
| (Assistant Examiner) | (Date) | | |
| /MARK WENDELL/<br>Primary Examiner.Art Unit 3635 | 12/22/2011 | **O.G. Print Claim(s)** | **O.G. Print Figure** |
| (Primary Examiner) | (Date) | 1 | 1 and 4a |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# BIB DATA SHEET

**CONFIRMATION NO. 2504**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 12/952,876 | 11/23/2010<br>**RULE** | 052 | 3635 | BHERON 3.0-001 CIP CON CO |

**APPLICANTS**
Harry W. Eberle III, Califon, NJ;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
This application is a CON of 12/583,702 08/24/2009 PAT 7,874,113
     which is a CON of 10/446,514 05/28/2003 PAT 7,578,105
     which is a CIP of 10/393,100 03/20/2003 PAT 6,851,884

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**\*\* IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\* \*\* SMALL ENTITY \*\***
   12/08/2010

| | | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|---|
| Foreign Priority claimed ☐ Yes ☑ No | | ☐ Met after Allowance | NJ | 6 | 25 | 3 |
| 35 USC 119(a-d) conditions met ☐ Yes ☐ No | | | | | | |
| Verified and Acknowledged /MARK R WENDELL/<br>Examiner's Signature | | Initials | | | | |

**ADDRESS**

LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090
UNITED STATES

**TITLE**

EXPANSION-COMPENSATING DECK FASTENER

| | | |
|---|---|---|
| **FILING FEE RECEIVED**<br>592 | FEES: Authority has been given in Paper<br>No._____ to charge/credit DEPOSIT ACCOUNT<br>No._____ for following: | ☐ All Fees<br>☐ 1.16 Fees (Filing)<br>☐ 1.17 Fees (Processing Ext. of time)<br>☐ 1.18 Fees (Issue)<br>☐ Other _____<br>☐ Credit |

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 12952876 | EBERLE, HARRY W. |
| | Examiner | Art Unit |
| | MARK R WENDELL | 3635 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☒ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/02/2011 | 10/18/2011 | 12/22/2011 | | | | | |
| | 1 | ✓ | ✓ | = | | | | | |
| | 2 | ✓ | ✓ | = | | | | | |
| | 3 | ✓ | ✓ | = | | | | | |
| | 4 | ✓ | ✓ | = | | | | | |
| | 5 | ✓ | ✓ | = | | | | | |
| | 6 | ✓ | ✓ | = | | | | | |
| | 7 | ✓ | ✓ | = | | | | | |
| | 8 | ✓ | ✓ | = | | | | | |
| | 9 | ✓ | ✓ | = | | | | | |
| | 10 | ✓ | ✓ | = | | | | | |
| | 11 | ✓ | ✓ | = | | | | | |
| | 12 | ✓ | ✓ | = | | | | | |
| | 13 | ✓ | ✓ | = | | | | | |
| | 14 | ✓ | ✓ | = | | | | | |
| | 15 | ✓ | ✓ | = | | | | | |
| | 16 | ✓ | ✓ | = | | | | | |
| | 17 | ✓ | ✓ | = | | | | | |
| | 18 | ✓ | ✓ | = | | | | | |
| | 19 | ✓ | ✓ | = | | | | | |
| | 20 | ✓ | ✓ | = | | | | | |
| | 21 | ✓ | ✓ | = | | | | | |
| | 22 | ✓ | ✓ | = | | | | | |
| | 23 | ✓ | ✓ | = | | | | | |
| | 24 | ✓ | ✓ | = | | | | | |
| | 25 | ✓ | ✓ | = | | | | | |

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | BHERON 3.0-001 CIP CON CO | 2504 |

530        7590        03/20/2012
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

| EXAMINER |
|---|
| WENDELL, MARK R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/20/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

IC-App-0441

| ***Supplemental Notice of Allowability*** | Application No. | Applicant(s) | |
|---|---|---|---|
| | 12/952,876 | EBERLE, HARRY W. | |
| | Examiner | Art Unit | |
| | MARK WENDELL | 3635 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *Phone Conversation with Dustin Freedland on 3/14/12*.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *1-25*.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

6. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

       1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of

       Paper No./Mail Date _____ .

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

7. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☒ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

7. ☐ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

/Mark R. Wendell/
Primary Examiner, Art Unit 3635

### *Allowable Subject Matter*

Claims 1-25 are allowed.

The following is an examiner's statement of reasons for allowance: The examiner notes that a thorough search has been performed and the closest prior art of record is Erwin (US 2002/0121064), Eberle, III (US 6402415) and Chen et al. (US 6363677). Regarding independent claims 1 and 11, none of these references (alone or in combination) distinctly disclose or fairly suggest an anchoring device comprising: a horizontally-extending top element having a center line and side portions extending from the center line in opposite lateral directions transverse to the center line; a support member extending downwardly from the top element adjacent the center line, the side portions of the top element projecting in the lateral directions beyond the support member; and **one or more at least partially collapsible compression members projecting from the top element**, the compression members defining engagement surfaces remote from the center line, the engagement surfaces being constructed and arranged to confront vertically-extensive surfaces of slotted boards engaged with the top element so that the top element extends into slots in the boards; the anchoring device having an opening adapted to receive a fastener so that the fastener extends downwardly toward a joist.

Regarding independent claim 21, none of these references (alone or in combination) distinctly disclose or fairly suggest at least a portion of one of the end walls being "non-parallel relative to a corresponding portion of the other end wall directly

opposite thereto". Erwin teaches one of the end walls being non-parallel relative to a portion of the other end wall directly opposite thereto; however not a side corresponding (or on the same side of the center line) portion of the other end wall directly opposite thereto..

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to MARK WENDELL whose telephone number is (571)270-3245. The examiner can normally be reached on Mon-Thur.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Brian Glessner can be reached on (571) 272-6754. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


                                        Mark R. Wendell
                                        Primary Examiner
                                        Art Unit 3635

/Mark R. Wendell/
Primary Examiner, Art Unit 3635
March 19, 2012

### Notice of References Cited

| | |
|---|---|
| Application/Control No.<br>12/952,876 | Applicant(s)/Patent Under Reexamination<br>EBERLE, HARRY W. |
| Examiner<br>MARK WENDELL | Art Unit<br>3635 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,730,544 | 03-1998 | Dils et al. | 403/292 |
| * | B | US-6,810,633 | 11-2004 | Harris, Sr., G. Steven | 52/489.2 |
| * | C | US-6,851,884 | 02-2005 | Eberle, Harry W. | 403/231 |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | Office Action in commonly owned US Appln 09/186741 (now US patent 6402415) to Eberle, III dated 8/19/1999. |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

# Index of Claims

| Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|
| 12952876 | EBERLE, HARRY W. |
| **Examiner** | **Art Unit** |
| MARK R WENDELL | 3635 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☒ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/02/2011 | 10/18/2011 | 12/22/2011 | | | | | |
| | 1 | ✓ | ✓ | = | | | | | |
| | 2 | ✓ | ✓ | = | | | | | |
| | 3 | ✓ | ✓ | = | | | | | |
| | 4 | ✓ | ✓ | = | | | | | |
| | 5 | ✓ | ✓ | = | | | | | |
| | 6 | ✓ | ✓ | = | | | | | |
| | 7 | ✓ | ✓ | = | | | | | |
| | 8 | ✓ | ✓ | = | | | | | |
| | 9 | ✓ | ✓ | = | | | | | |
| | 10 | ✓ | ✓ | = | | | | | |
| | 11 | ✓ | ✓ | = | | | | | |
| | 12 | ✓ | ✓ | = | | | | | |
| | 13 | ✓ | ✓ | = | | | | | |
| | 14 | ✓ | ✓ | = | | | | | |
| | 15 | ✓ | ✓ | = | | | | | |
| | 16 | ✓ | ✓ | = | | | | | |
| | 17 | ✓ | ✓ | = | | | | | |
| | 18 | ✓ | ✓ | = | | | | | |
| | 19 | ✓ | ✓ | = | | | | | |
| | 20 | ✓ | ✓ | = | | | | | |
| | 21 | ✓ | ✓ | = | | | | | |
| | 22 | ✓ | ✓ | = | | | | | |
| | 23 | ✓ | ✓ | = | | | | | |
| | 24 | ✓ | ✓ | = | | | | | |
| | 25 | ✓ | ✓ | = | | | | | |



| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 12952876 | EBERLE, HARRY W. |
| | **Examiner** | **Art Unit** |
| | MARK R WENDELL | 3635 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | | **NON-CLAIMED** | | | |
| 52 | 403.1 | E | 0 | 4 | F | 15 / 22 (2006.01.01) | | | | | |

| CROSS REFERENCE(S) | | | | | |
|---|---|---|---|---|---|

(Additional CLAIMED rows:)

| | | | | | |
|---|---|---|---|---|---|
| E | 0 | 4 | B | 2 / 00 (2006.01.01) | |
| F | 1 | 6 | B | 9 / 00 (2006.01.01) | |

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | |
|---|---|---|---|---|---|
| 52 | 586.1 | 586.2 | | | |
| 403 | 231 | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

☒ Claims renumbered in the same order as presented by applicant  ☐ CPA  ☐ T.D.  ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |

| (Assistant Examiner) | (Date) | **Total Claims Allowed:** | |
|---|---|---|---|
| | | 25 | |
| /MARK WENDELL/ Primary Examiner.Art Unit 3635 | 03/19/2012 | **O.G. Print Claim(s)** | **O.G. Print Figure** |
| (Primary Examiner) | (Date) | 1 | 1 and 4a |

U.S. Patent and Trademark Office

Part of Paper No. 20120319

IC-App-0448

| *Search Notes*  | Application/Control No. 12952876 | Applicant(s)/Patent Under Reexamination EBERLE, HARRY W. |
|---|---|---|
| | Examiner MARK R WENDELL | Art Unit 3635 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 52 | 586.1, 586.2, 483.1, 480, 650.3, 403.1 | 3/2/11 | MRW |
| 403 | 231, 232.1, 408.1 | 3/2/11 | MRW |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor Name Search | 3/2/11 | MRW |
| Consulted Searches of Patent Family patents and apps. | 3/2/11 | MRW |
| Class Search in 52 and 403 | 3/2/11 | MRW |
| Searched EAST | 3/2/11 | MRW |
| Forward / Back Search rel. patents | 3/2/11 | MRW |
| Consulted IDS | 3/2/11 | MRW |
| Updated Search / consulted previously cited art | 10/18/11 | MRW |
| Updated Search / consulted previously cited art | 12/22/11 | MRW |
| Consulted new references which are cited | | |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | Keyword Search of Claims | 3/2/11 | MRW |
| | Consulted Patent Family apps and patents | 3/2/11 | MRW |

| | |
|---|---|
| | |

# PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>  Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or <u>Fax</u> (571) 273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, New Jersey 07090

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle, III | BHERON 3.0-001 CIP CON CON | 2504 |

TITLE OF INVENTION:    EXPANSION-COMPENSATING DECK FASTENER

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | yes | $870.00 | $300.00 | | $1,170.00 | 03/30/2012 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| M. R. Wendell | 3635 | 052-403100 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 Lerner, David, Littenberg, Krumholz & Mentlik, LLP

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

Blue Heron Enterprises LLC

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

North Branch, New Jersey

Please check the appropriate assignee category or categories (will not be printed on the patent) :    ☐ Individual    ☒ Corporation or other private group entity    ☐ Government

**4a. The following fee(s) are enclosed:**

☒ Issue Fee

☒ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number  12-1095  (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

| | | | |
|---|---|---|---|
| Authorized Signature | /Arnold H. Krumholz/ | Date | March 22, 2012 |
| Typed or printed name | Arnold H. Krumholz | Registration No. | 25,428 |

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

IC-App-0450

# Certificate of Electronic Filing Under 37 C.F.R. § 1.8

I hereby certify that this correspondence is being transmitted via the Office electronic filing system in accordance with 37 C.F.R. § 1.6(a)(4):

>      Commissioner for Patents
>      P.O. Box 1450
>      Alexandria, VA  22313-1450

on      <u>March 22, 2012</u>
              Date

<u>/Arnold H. Krumholz/</u>
              Signature

<u>Arnold H. Krumholz</u>
Typed or printed name of person signing Certificate

<u>25,428</u>                              <u>(908) 518-6304</u>
Registration Number, if applicable              Telephone Number

Note:    Each paper must have its own certificate of mailing.

> Issue Fee Transmittal (1 page)
> Charge $1,170.00 to deposit account 12-1095

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 12952876 |
| **Filing Date:** | 23-Nov-2010 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Filer:** | April M. Capati/Arleen Taylor |
| **Attorney Docket Number:** | BHERON 3.0-001 CIP CON CO |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 2501 | 1 | 870 | 870 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension-of-Time: | | | | |
| Miscellaneous: | | | | |
| | | | **Total in USD ($)** | **1170** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 12364552 |
| **Application Number:** | 12952876 |
| **International Application Number:** | |
| **Confirmation Number:** | 2504 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Customer Number:** | 530 |
| **Filer:** | April M. Capati/Arleen Taylor |
| **Filer Authorized By:** | April M. Capati |
| **Attorney Docket Number:** | BHERON 3.0-001 CIP CON CO |
| **Receipt Date:** | 22-MAR-2012 |
| **Filing Date:** | 23-NOV-2010 |
| **Time Stamp:** | 09:31:38 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $1170 |
| RAM confirmation Number | 8549 |
| Deposit Account | 121095 |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

IC-App-0454

| 1 | Issue Fee Payment (PTO-85B) | BHERON5_-_Fee_Transmittal_--_Part_B_PTOL_85_1.pdf | 44049 | no | 2 |
| | | | 3015b8904857ea4bbe576dd63351f435c419e72d | | |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 31986 | no | 2 |
| | | | 6d96ac91cf6ee08dbff9ff20d035389edd687d2a | | |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 76035 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/952,876 | 04/24/2012 | 8161702 | BHERON 3.0-001 CIP CON CO | 2504 |

530        7590        04/04/2012

LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Harry W. Eberle III, Califon, NJ;

IR103 (Rev. 10/09)

IC-App-0456

PTO/AIA/80 (07-12)
Approved for use through 11/30/2014. OMB 0651-0035
U.S. Patent and Trademark Office; U.S DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## POWER OF ATTORNEY TO PROSECUTE APPLICATIONS BEFORE THE USPTO

I hereby revoke all previous powers of attorney given in the application identified in the attached statement under 37 CFR 3.73(c).

I hereby appoint:

[X] Practitioners associated with Customer Number:

| 122085 |
|---|

**OR**

[ ] Practitioner(s) named below (if more than ten patent practitioners are to be named, then a customer number must be used):

| Name | Registration Number | | Name | Registration Number |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

As attorney(s) or agent(s) to represent the undersigned before the United States Patent and Trademark Office (USPTO) in connection with any and all patent applications assigned only to the undersigned according to the USPTO assignment records or assignments documents attached to this form in accordance with 37 CFR 3.73(c).

Please change the correspondence address for the application identified in the attached statement under 37 CFR 3.73(c) to:

[X] The address associated with Customer Number:

| 122085 |
|---|

**OR**

| Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

Assignee Name and Address: SIMPSON STRONG-TIE COMPANY INC.
5956 West Las Positas Blvd.
Pleasanton, California 94588

A copy of this form, together with a statement under 37 CFR 3.73(c) (Form PTO/AIA/96 or equivalent) is required to be Filed in each application in which this form is used. The statement under 37 CFR 3.73(c) may be completed by one of The practitioners appointed in this form, and must identify the application in which this Power of Attorney is to be filed.

### SIGNATURE of Assignee of Record
The individual whose signature and title is supplied below is authorized to act on behalf of the assignee

| Signature | | Date | 6.25.15 |
|---|---|---|---|
| Name | StePhen A. Rotzin | Telephone | 925.560-9082 |
| Title | Legal Manager | | |

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

IC-App-0457

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# STATEMENT UNDER 37 CFR 3.73(c)

Applicant/Patent Owner: SIMPSON STRONG-TIE COMPANY INC.

Application No./Patent No.: 12/952,876    Filed/Issue Date: November 23, 2010

Titled: EXPANSION-COMPENSATING DECK FASTENER

SIMPSON STRONG-TIE COMPANY INC. , a corporation

(Name of Assignee)          (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that, for the patent application/patent identified above, it is (choose **one** of options 1, 2, 3 or 4 below):

1. [✓] The assignee of the entire right, title, and interest.

2. [ ] An assignee of less than the entire right, title, and interest (check applicable box):

   [ ] The extent (by percentage) of its ownership interest is _____%. Additional Statement(s) by the owners holding the balance of the interest <u>must be submitted</u> to account for 100% of the ownership interest.

   [ ] There are unspecified percentages of ownership. The other parties, including inventors, who together own the entire right, title and interest are:

   Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

3. [ ] The assignee of an undivided interest in the entirety (a complete assignment from one of the joint inventors was made). The other parties, including inventors, who together own the entire right, title, and interest are:

   Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

4. [ ] The recipient, via a court proceeding or the like (*e.g.*, bankruptcy, probate), of an undivided interest in the entirety (a complete transfer of ownership interest was made). The certified document(s) showing the transfer is attached.

The interest identified in option 1, 2 or 3 above (not option 4) is evidenced by either (choose **one** of options A or B below):

A. [ ] An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____, Frame _____, or for which a copy thereof is attached.

B. [✓] A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

   1. From: inventor    To: Blue Heron Enterprises, LLC

      The document was recorded in the United States Patent and Trademark Office at
      Reel 025613 , Frame 0965 , or for which a copy thereof is attached.

   2. From: Blue Heron Enterprises, LLC    To: SIMPSON STRONG-TIE COMPANY INC.

      The document was recorded in the United States Patent and Trademark Office at
      Reel 037413 , Frame 0721 , or for which a copy thereof is attached.

[Page 1 of 2]

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*    IC-App-0458

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

3. From: _____     To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

4. From: _____     To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

5. From: _____     To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

6. From: _____     To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

☐   Additional documents in the chain of title are listed on a supplemental sheet(s).

☐   As required by 37 CFR 3.73(c)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

    [NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

| /Cecily Anne O'Regan/ | January 7, 2016 |
|---|---|
| Signature | Date |
| Cecily Anne O'Regan | 37448 |
| Printed or Typed Name | Title or Registration Number |

[Page 2 of 2]

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 24563764 |
| **Application Number:** | 12952876 |
| **International Application Number:** | |
| **Confirmation Number:** | 2504 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | Harry W. Eberle |
| **Customer Number:** | 530 |
| **Filer:** | Cecily Anne O'Regan/Ruth Der |
| **Filer Authorized By:** | Cecily Anne O'Regan |
| **Attorney Docket Number:** | BHERON 3.0-001 CIP CON CO |
| **Receipt Date:** | 07-JAN-2016 |
| **Filing Date:** | 23-NOV-2010 |
| **Time Stamp:** | 19:21:06 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Power of Attorney | powerofattorney.pdf | 1413636<br>7d3adb7195857f2880bb82e0de986cca07f19f95 | no | 1 |

| | |
|---|---|
| Warnings: | |
| Information: | IC-App-0460 |

| 2 | Assignee showing of ownership per 37 CFR 3.73 | assigneestatement.pdf | 76150 | no | 2 |
| | | | 3b69ec87c30a5242926208603d1c6ced01224dab | | |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 1489786 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | BHERON 3.0-001 CIP CON CO |

**CONFIRMATION NO. 2504**

530
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

**POWER OF ATTORNEY NOTICE**


*OC000000080000083*

Date Mailed: 01/20/2016

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 01/07/2016.

• The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/cnguyen/

IC-App-0462

 United States Patent and Trademark Office

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | BHERON 3.0-001 CIP CON CO |

**CONFIRMATION NO. 2504**

122085
Shartsis Friese LLP
One Maritime Plaza
18th floor
San Francisco, CA 94111

**POA ACCEPTANCE LETTER**


*OC000000080000093*

Date Mailed: 01/20/2016

# NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 01/07/2016.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/cnguyen/

IC-App-0463



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY.DOCKET NO./TITLE | REQUEST ID |
|---|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle | 1435.10603 | 10848 |

## Acknowledgement of Loss of Entitlement to Entity Status Discount

The entity status change request below filed through Private PAIR on 01/22/2016 has been accepted.

## CERTIFICATIONS:

| **Change of Entity Status:** |
|---|
| ✕ Applicant changing to regular undiscounted fee status. |
| NOTE: Checking this box will be taken to be notification of loss of entitlement to small or micro entity status, as applicable. |

**This portion must be completed by the signatory or signatories making the entity status change in accordance with 37 CFR 1.4(d)(4).**

| **Signature:** | /Cecily Anne O'Regan/ |
|---|---|
| **Name:** | Cecily Anne O'Regan/ |
| **Registration Number:** | 37448 |

AO 120 (Rev. 08/10)

| TO: Mail Stop 8<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court        Middle District of Florida        on the following

☐ Trademarks or   ✖ Patents.   (   ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>8:16-cv-2862-T-23TGW | DATE FILED<br>October 7, 2016 | U.S. DISTRICT COURT<br>Middle District of Florida | |
|---|---|---|---|
| PLAINTIFF<br><br>IPE CLIP FASTENER COMPANY, LLC | | DEFENDANT<br><br>SIMPSON STRONG-TIE COMPANY, INC. | |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | US 7,874,1 13 B2 | January 25, 2011 | |
| 2 | US 8,161,702 B2 | April 24, 2012 | |

In the above—entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
|---|
| |

| CLERK<br><br>SHERYL L. LOESCH | (BY) DEPUTY CLERK<br><br>Gabrielle Spell | DATE<br><br>October 11, 2016 |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy**

IC-App-0465

AO 120 (Rev. 08/10)

| TO: | **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court ___Middle District of Florida___ on the following

☐ Trademarks or  ✖ Patents.  (  ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>8:16-cv-3295-T-30TBM | DATE FILED<br>November 30, 2016 | U.S. DISTRICT COURT<br>Middle District of Florida |
| --- | --- | --- |
| PLAINTIFF<br><br>SIMPSON STRONG-TIE COMPANY, INC. | | DEFENDANT<br><br>THE IPE CLIP FASTENER COMPANY, LLC |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| --- | --- | --- | --- |
| 1 | 6,402,415 | | BHE |
| 2 | 7,874,113 B2 | January 25, 2011 | BHE |
| 3 | 8,161,702 B2 | April 24, 2012 | BHE |

In the above—entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
| --- |
| |

| CLERK<br><br>SHERYL L. LOESCH | (BY) DEPUTY CLERK<br><br>Gabrielle Spell | DATE<br><br>November 30, 2016 |
| --- | --- | --- |

**Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy**

IC-App-0466

PTO/AIA/81A (02-15)
Approved for use through 01/31/2018. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

| PATENT - POWER OF ATTORNEY<br>OR<br>REVOCATION OF POWER OF ATTORNEY<br>WITH A NEW POWER OF ATTORNEY<br>AND<br>CHANGE OF CORRESPONDENCE ADDRESS | Patent Number | 8,161,702 |
|---|---|---|
| | Issue Date | April 24, 2012 |
| | First Named Inventor | Harry W. Eberle, III |
| | Title | Expansion-Compensating Deck Fastener |
| | Attorney Docket No. | SST-2385 |

I hereby revoke all previous powers of attorney given in the above-identified patent.

☐ A Power of Attorney is submitted herewith.

OR

☒ I hereby appoint Practitioner(s) associated with the Customer Number identified in the box at right as my/our attorney(s) or agent(s) with respect to the patent identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

498

OR

☐ I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) with respect to the patent identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number |
|---|---|
| | |
| | |
| | |
| | |

Please recognize or change the correspondence address for the above-identified patent to:

☒ The address associated with the above-identified Customer Number.

OR

☐ The address associated with the Customer Number identified in the box at right:

OR

| Firm or Individual Name | |
|---|---|
| Address | |

| City | | State | | Zip | |
|---|---|---|---|---|---|
| Country | | | | | |
| Telephone | | Email | | | |

I am the:

☐ Applicant.

OR

☒ Patent owner.

Statement under 37 CFR 3.73(c) [Form PTO/AIA/96] submitted herewith or filed on _____

**SIGNATURE of Applicant or Patent Owner**

| Signature | | Date | 5/25/17 |
|---|---|---|---|
| Name | Brian Magstadt | Telephone | (810) 832-4111 |
| Title and Company | CFO, Simpson Strong-Tie Company Inc. | | |

NOTE: Signatures of all the applicants or patent owners of the entire interest or their representative(s) are required. If more than one signature is required, submit multiple forms, check the box below, and identify the total number of forms submitted in the blank below.

☐ A total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public, which is to update (and by the USPTO to process) the file of a patent or reexamination proceeding. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Copied from 90013927 on 07/07/2017

IC-App-0467

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29710585 |
| **Application Number:** | 90013927 |
| **International Application Number:** | |
| **Confirmation Number:** | 3427 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | 8161702 |
| **Customer Number:** | 122085 |
| **Filer:** | Charles Russell Cypher/Rachel Granberg |
| **Filer Authorized By:** | Charles Russell Cypher |
| **Attorney Docket Number:** | I055-0006RE |
| **Receipt Date:** | 06-JUL-2017 |
| **Filing Date:** | 03-APR-2017 |
| **Time Stamp:** | 20:49:18 |
| **Application Type:** | Reexam (Third Party) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal Letter | SST-2385_Certificate-of-Mailing.pdf | 14795<br>1b3a3a41028ab07576e9debaefdcdfbe0f44dfd4 | no | 1 |

**Warnings:**

IC-App-0468

Copied from 90013927 on 07/07/2017

| | Information: | | | | | |
|---|---|---|---|---|---|---|
| 2 | Assignee showing of ownership per 37 CFR 3.73 | Statement-Under-37-CFR.pdf | 97961<br>a98504c34659473a4e36adad8eddf811077d909c | no | 2 |

**Warnings:**

| | Information: | | | | | |
|---|---|---|---|---|---|---|
| 3 | Power of Attorney | SST-2385_POA_Signed.pdf | 33193<br>fb88277a9a5a74ebb6af2a56f09b257581bccacc | no | 1 |

**Warnings:**

The page size in the PDF is too large. The pages should be 8.5 x 11 or A4. If this PDF is submitted, the pages will be resized upon entry into the Image File Wrapper and may affect subsequent processing

**Information:**

| **Total Files Size (in bytes):** | 145949 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

IC-App-0469

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*In re* application of: Re-Examination of US Patent No. 8,161,702

Application No.: 90/013,927          Examiner: Fetsuga, Robert M.

Re-Exam Filing Date: 04-03-2017

For: Expansion-Compensating Deck
    Fastener

Commissioner for Patents
P.O. Box 145
Alexandria, VA 22313-145

### CERTIFICATE OF TRANSMISSION UNDER 37 CFR 1.8

CERTIFICATE OF TRANSMISSION 37 CFR 1.8(a)(1)(C)

I hereby certify that this correspondence, including listed enclosures, is being transmitted to the United States Patent Office via the Patent Office's Electronic Filing System (EFS) on July 6, 2017.

Enclosures:

1. Statement Under 37 CFR 3.73(c) (Form PTO/AIA/96, 2 pages)

2. Patent – Power of Attorney Or Revocation of Power of Attorney with a New Power of Attorney and Change of Correspondence Address (Form PTO/AIA/81A, 1 page)

Signed: /s Charles R. Cypher/
        Charles R. Cypher

IC-App-0470

Copied from 90013927 on 07/07/2017

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

Applicant/Patent Owner: SIMPSON STRONG-TIE COMPANY INC.

Application No./Patent No.: 12/952,876     Filed/Issue Date: November 23, 2010

Titled: EXPANSION-COMPENSATING DECK FASTENER

SIMPSON STRONG-TIE COMPANY INC.   , a corporation

(Name of Assignee)      (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that, for the patent application/patent identified above, it is (choose **one** of options 1, 2, 3 or 4 below):

1. [✓] The assignee of the entire right, title, and interest.

2. [ ] An assignee of less than the entire right, title, and interest (check applicable box):

    [ ] The extent (by percentage) of its ownership interest is _____%. Additional Statement(s) by the owners holding the balance of the interest <u>must be submitted</u> to account for 100% of the ownership interest.

    [ ] There are unspecified percentages of ownership. The other parties, including inventors, who together own the entire right, title and interest are:

    Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

3. [ ] The assignee of an undivided interest in the entirety (a complete assignment from one of the joint inventors was made). The other parties, including inventors, who together own the entire right, title, and interest are:

    Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

4. [ ] The recipient, via a court proceeding or the like (*e.g.*, bankruptcy, probate), of an undivided interest in the entirety (a complete transfer of ownership interest was made). The certified document(s) showing the transfer is attached.

The interest identified in option 1, 2 or 3 above (not option 4) is evidenced by either (choose **one** of options A or B below):

A. [ ] An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____ , Frame _____ , or for which a copy thereof is attached.

B. [✓] A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

    1. From: inventor     To: Blue Heron Enterprises, LLC

        The document was recorded in the United States Patent and Trademark Office at
        Reel 025613 , Frame 0965 , or for which a copy thereof is attached.

    2. From: Blue Heron Enterprises, LLC     To: SIMPSON STRONG-TIE COMPANY INC.

        The document was recorded in the United States Patent and Trademark Office at
        Reel 037413 , Frame 0721 , or for which a copy thereof is attached.

[Page 1 of 2]

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*    IC-App-0471

Copied from 90013927 on 07/07/2017

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

3. From: _____  To: _____

      The document was recorded in the United States Patent and Trademark Office at

      Reel _____, Frame _____, or for which a copy thereof is attached.

4. From: _____  To: _____

      The document was recorded in the United States Patent and Trademark Office at

      Reel _____, Frame _____, or for which a copy thereof is attached.

5. From: _____  To: _____

      The document was recorded in the United States Patent and Trademark Office at

      Reel _____, Frame _____, or for which a copy thereof is attached.

6. From: _____  To: _____

      The document was recorded in the United States Patent and Trademark Office at

      Reel _____, Frame _____, or for which a copy thereof is attached.

☐   Additional documents in the chain of title are listed on a supplemental sheet(s).

☐   As required by 37 CFR 3.73(c)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

   [NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

| | |
|---|---|
| /Cecily Anne O'Regan/ | January 7, 2016 |
| Signature | Date |
| Cecily Anne O'Regan | 37448 |
| Printed or Typed Name | Title or Registration Number |

[Page 2 of 2]

Copied from 90013927 on 07/07/2017

IC-App-0472

PTO/AIA/81A (02-15)
Approved for use through 01/31/2018. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

# PATENT - POWER OF ATTORNEY
## OR
## REVOCATION OF POWER OF ATTORNEY
## WITH A NEW POWER OF ATTORNEY
## AND
## CHANGE OF CORRESPONDENCE ADDRESS

| | |
|---|---|
| Patent Number | 8,161,702 |
| Issue Date | April 24, 2012 |
| First Named Inventor | Harry W. Eberle, III |
| Title | Expansion-Compensating Deck Fastener |
| Attorney Docket No. | SST-2385 |

I hereby revoke all previous powers of attorney given in the above-identified patent.

[ ] A Power of Attorney is submitted herewith.

**OR**

[X] I hereby appoint Practitioner(s) associated with the Customer Number identified in the box at right as my/our attorney(s) or agent(s) with respect to the patent identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

**498**

**OR**

[ ] I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) with respect to the patent identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number |
|---|---|
| | |
| | |
| | |
| | |

Please recognize or change the correspondence address for the above-identified patent to:

[X] The address associated with the above-identified Customer Number.

**OR**

[ ] The address associated with the Customer Number identified in the box at right:

**OR**

| [ ] Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

I am the:

[ ] Applicant.

**OR**

[X] Patent owner.
*Statement under 37 CFR 3.73(c) (Form PTO/AIA/96) submitted herewith or filed on _____.*

### SIGNATURE of Applicant or Patent Owner

| Signature | | Date | |
|---|---|---|---|
| Name | Brian Magstadt | Telephone | (510) 832-4111 |
| Title and Company | CFO, Simpson Strong-Tie Company Inc. | | |

NOTE: Signatures of all the applicants or patent owners of the entire interest or their representative(s) are required. If more than one signature is required, submit multiple forms, check the box below, and identify the total number of forms submitted in the blank below.

[ ] A total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public, which is to update (and by the USPTO to process) the file of a patent or reexamination proceeding. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Copied from 90013927 on 07/07/2017

IC-App-0473

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29710602 |
| **Application Number:** | 90013927 |
| **International Application Number:** | |
| **Confirmation Number:** | 3427 |
| **Title of Invention:** | EXPANSION-COMPENSATING DECK FASTENER |
| **First Named Inventor/Applicant Name:** | 8161702 |
| **Customer Number:** | 122085 |
| **Filer:** | Charles Russell Cypher/Rachel Granberg |
| **Filer Authorized By:** | Charles Russell Cypher |
| **Attorney Docket Number:** | I055-0006RE |
| **Receipt Date:** | 06-JUL-2017 |
| **Filing Date:** | 03-APR-2017 |
| **Time Stamp:** | 20:53:54 |
| **Application Type:** | Reexam (Third Party) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Power of Attorney | Power-of-Attorney_Filled.pdf | 585925<br>5b9a455b5e3d1db491672b633d2e1f7234b48e2f | no | 1 |

| | |
|---|---|
| **Warnings:** | |

IC-App-0474

Copied from 90013927 on 07/07/2017

| Information: | | |
|---|---|---|
| **Total Files Size (in bytes):** | | 585925 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Copied from 90013927 on 07/07/2017

IC-App-0475



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

Bib Data Sheet

**CONFIRMATION NO. 2504**

| SERIAL NUMBER 12/952,876 | FILING OR 371(c) DATE 11/23/2010 RULE | CLASS 052 | GROUP ART UNIT 3635 | ATTORNEY DOCKET NO. 1435.10603 |
|---|---|---|---|---|

**AIA (First Inventor to File): NO**

**INVENTORS**

    Harry W. Eberle III, Califon, NJ;

**APPLICANTS**

    Harry W. Eberle III, Califon, NJ;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
    This application is a CON of 12/583,702 08/24/2009 PAT 7874113
    which is a CON of 10/446,514 05/28/2003 PAT 7578105
    which is a CIP of 10/393,100 03/20/2003 PAT 6851884

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\***
12/08/2010

| Foreign Priority claimed ☐ yes ☐ no 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance Verified and Acknowledged    Examiner's Signature    Initials | STATE OR COUNTRY NJ | SHEETS DRAWING 6 | TOTAL CLAIMS 25 | INDEPENDENT CLAIMS 3 |
|---|---|---|---|---|

**ADDRESS**
498

**TITLE**
EXPANSION-COMPENSATING DECK FASTENER

| FILING FEE RECEIVED 892 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |


UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | 1435.10603 |

**CONFIRMATION NO. 2504**

122085
Shartsis Friese LLP
One Maritime Plaza
18th floor
San Francisco, CA 94111

**POWER OF ATTORNEY NOTICE**

*OC000000092629984*

Date Mailed: 07/10/2017

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 07/06/2017.

• The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/rbell/

IC-App-0477



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 12/952,876 | 11/23/2010 | Harry W. Eberle III | 1435.10603 |

**CONFIRMATION NO. 2504**

498
Cypher Law Offices
409 13th Street, 11th Floor
OAKLAND, CA 94612

**POA ACCEPTANCE LETTER**


*OC000000092629992*

Date Mailed: 07/10/2017

# NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 07/06/2017.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/rbell/

_____

IC-App-0478

# Exhibit E



(12) **United States Patent**

Chen et al.

(10) Patent No.: **US 6,363,677 B1**

(45) Date of Patent: **Apr. 2, 2002**

(54) **SURFACE COVERING SYSTEM AND METHODS OF INSTALLING SAME**

(75) Inventors: **Hao A. Chen**, Chadds Ford, PA (US); **John M. Whispell**, Sicklerville, NJ (US)

(73) Assignee: **Mannington Mills, Inc.**, Salem, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/546,255**

(22) Filed: **Apr. 10, 2000**

(51) Int. Cl.$^7$ ................................................. **E04F 15/02**

(52) U.S. Cl. ........................... **52/586.1**; 52/384; 52/471; 52/586.2; 52/589.1; 52/747.11

(58) Field of Search ........................... 52/384, 385, 390, 52/391, 392, 471, 586.1, 586.2, 589.1, 591.4, 747.11, 591.1, 592.1

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 579,348 A | * | 3/1897 | McPherson .................. 52/385 |
| 1,018,987 A | * | 2/1912 | Philpot et al. ............... 52/177 |
| 1,361,501 A | | 12/1920 | Schepmoes |
| 1,840,974 A | * | 1/1932 | Rockwell .................. 52/391 X |
| 1,946,646 A | * | 2/1934 | Storm .......................... 52/393 |
| 1,946,690 A | | 2/1934 | Haines |
| 2,027,292 A | * | 1/1936 | Rockwell .................. 52/391 X |
| 2,142,305 A | | 1/1939 | Davis |
| 2,196,807 A | * | 4/1940 | Eckert ...................... 52/471 X |
| 2,204,675 A | | 6/1940 | Grunert |
| 2,231,780 A | * | 2/1941 | Swenson ...................... 52/390 |
| 2,269,926 A | * | 1/1942 | Crooks ......................... 52/390 |
| 2,569,902 A | * | 10/1951 | Rienau et al. ............... 52/385 |
| 2,740,167 A | | 4/1956 | Rowley |
| 3,310,919 A | | 3/1967 | Bue et al. |
| 3,397,496 A | | 8/1968 | Sohns |
| 3,619,963 A | | 11/1971 | Omholt |
| 3,657,852 A | | 4/1972 | Worthington et al. |

| | | | |
|---|---|---|---|
| 3,694,983 A | | 10/1972 | Couquet |
| 3,946,529 A | | 3/1976 | Chevaux |
| 4,023,596 A | | 5/1977 | Tate |
| 4,226,064 A | | 10/1980 | Kraayenhof |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| CH | 276058 | * | 9/1951 | .................. 52/471 |
| DE | 69234 | * | 6/1915 | .................. 52/390 |
| DE | 127266 | * | 3/1932 | .................. 52/390 |
| DE | 568170 | * | 1/1933 | .................. 52/392 |
| DE | 33 43 601 A1 | | 12/1983 | |
| DE | 42 42 530 A1 | | 12/1992 | |
| DE | 299 11 462 U1 | | 12/1999 | |
| FR | 688530 | * | 8/1930 | .................. 52/390 |
| GB | 812671 | * | 4/1959 | .................. 52/392 |
| GB | 1 430 423 | | 3/1976 | |
| JP | 3-169967 | | 7/1982 | |
| JP | 57-119056 | | 7/1982 | |
| WO | WO 94/26999 | | 11/1994 | |
| WO | WO 97/21011 | | 6/1997 | |
| GB | 19 | * | 1/1896 | ............... 52/591.4 |

*Primary Examiner*—Laura A. Callo
(74) *Attorney, Agent, or Firm*—Kilyk & Bowersox, PLLC

(57) **ABSTRACT**

A surface covering system is described which involves a series of interconnected tiles having a spline system located between the tiles to simulate the appearance of grout. Each tile has on its sides, at least one tongue section and at least two groove sections wherein the tongue section of one tile interconnects with the groove section of a second tile and further forms a gap at least at the upper surface between the two tiles. A first spline, having two tongue sections for interconnecting with the groove section(s) of at least one tile, is inserted between a series of tiles. A second spline capable of fitting into the gap formed between two or more tiles, which are interconnected at a tongue of a first tile and a groove of a second tile is further used. Methods of installing the surface covering system of the invention are further described.

**28 Claims, 11 Drawing Sheets**





### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,426,820 A | | 1/1984 | Terbrack et al. |
| 4,599,841 A | * | 7/1986 | Haid .................... 52/586.2 X |
| 4,644,720 A | * | 2/1987 | Schneider ................ 52/392 X |
| 4,759,164 A | | 7/1988 | Abendroth et al. |
| 4,769,963 A | | 9/1988 | Meyerson |
| 5,052,158 A | | 10/1991 | D'Luzansky |
| 5,295,341 A | | 3/1994 | Kajiwara |
| 5,349,796 A | | 9/1994 | Meyerson |
| 5,694,730 A | * | 12/1997 | Del Rincon et al. ....... 52/586.1 |
| 5,797,237 A | | 8/1998 | Finkell, Jr. |
| 5,833,386 A | | 11/1998 | Rosan et al. |
| D406,360 S | | 3/1999 | Finkell, Jr. |
| 6,006,486 A | | 12/1999 | Moriau et al. |
| 6,023,907 A | | 2/2000 | Pervan |



*Fig. 3(a)*

*Fig. 3(b)*

*Fig. 3(c)*

*Fig. 2(a)*

*Fig. 2(b)*

*Fig. 2(c)*

*Fig. 1(a)*

*Fig. 1(b)*

*Fig. 1(c)*



*Fig. 6(a)*

52
54
56
50



*Fig. 6(b)*

56



*Fig. 5(a)*

52
54
56
50



*Fig. 5(b)*

56



*Fig. 4(a)*

52
54
56
50



*Fig. 4(b)*

56



*Fig. 9(a)*

*Fig. 9(b)*



*Fig. 8(a)*



*Fig. 8(b)*



*Fig. 7(a)*



*Fig. 7(b)*

## Fig. 10



## Fig. 11



## Fig. 12



*Fig. 13*



*Fig. 14*



*Fig. 15*






*Fig. 18*



*Fig. 17*



*Fig. 16*



*Fig. 20*



*Fig. 19*



*Fig.23*



*Fig.22*



*Fig.21*

*Fig. 24*



*Fig. 25*



IC-App-0488



*Fig. 27*



*Fig. 26*



Fig. 28



*Fig.29*

1

# SURFACE COVERING SYSTEM AND METHODS OF INSTALLING SAME

## BACKGROUND OF THE INVENTION

The present invention relates to surface coverings and more particularly to surface covering systems which include surface tiles and systems for joining the tiles together to form an overall surface covering.

Laminate flooring continues to grow in popularity as a flooring product due to its ease of installment as well as its performance. Furthermore, the various designs which arc available for laminate flooring also enhance its popularity with consumers since designs include wood-grain patterns, slate, marble, mosaic, granite, and the like. The use of such laminate flooring generally involves not only emulating the appearance of the slate, marble, and the like, but further requires emulating the joints which exist between the various tiles.

Conventional ways of making simulated grout tiles include using printed grout that becomes part of the overall tile product. In other words, the simulated grout is printed onto a tile along with the simulated design of the marble, slate, and the like. Another method of simulating grout tiles is to apply hot melt or liquid grout materials to fill the gap between two tiles. However, these conventional methods of simulating grout have many disadvantages. For instance, the printed grout has a fake appearance and therefore does not simulate grout very well. In particular, the printed grout is on the same plane as the tiles, and even though the grout may be embossed with a different texture, there is still no differentiation with the plane of the grout and the printed pattern such as marble or slate. In addition, printing grout along with a design of slate or marble, for instance, leads to low manufacture efficiency and yield because to cut the square tiles from a big laminate board requires expensive sensors to register the printed board to the cutting saw. Furthermore, there is little tolerance allowed with aligning the board for proper cutting and the dimensional growth of the printed paper in both longitudinal and latitudinal direction during the impregnation process makes the registration cutting even tougher.

Furthermore, with a liquid grout system, the material consists of polymers and carriers wherein the material becomes solid after the carrier is evaporated. Needless to say, there are many problems associated with liquid systems. Further, they are very labor intensive and pose a problem with clean-up since a person must manually apply this material to the gap between the material. Furthermore, there have been concerns that the liquid material can be too soft after curing and therefore may not withstand performance requirements. In addition, the intersection between four floor tiles ("+" intersection), can be a problem and messy since there is distortion in the liquid grout being applied. Also, some liquid fillers can cause staining of the top surface of the tiles. For instance, conventional cement base ceramic tile grout, an example of a liquid type grout material, is difficult to apply and to clean up, and the application of the grout is very labor intensive and time consuming.

With hot melt type heat weld systems, such as thermoplastics, hot melt grout is a solid material at room temperature and thus needs to be liquefied by heating. Also, there can be slight distortion at the "+" joints and some pin holes in the finished grout which can be unacceptable both from a visual and maintenance perspective. The pin holes are caused by the evaporation of entrapped moisture and/or gas from the extrusion process of making the hot melt rod.

2

Accordingly, there is a need to provide a grout system for all types of surface coverings using tiles that can overcome one or more of the difficulties described above.

## SUMMARY OF THE INVENTION

A feature of the present invention is to provide a surface covering system that is inexpensive to apply and is not labor intensive.

Another feature of the present invention is to provide a surface covering system that is more realistic with respect to the grout areas, and provides a three-dimensional look.

Another feature of the present invention is to provide joints for grout which are capable of being sealed by various means, such as heat welding, solvents, adhesives, or other techniques, such as ultrasonic or electromagnetic systems.

Another feature of the present invention is to provide a system which overcomes the difficulty of applying a simulated grout look to the gap between tiles.

Additional features and advantages of the present invention will be set forth in the following description, and in part will be apparent from the description, or may be learned by practice of the present invention. The objectives and other advantages of the present invention will be realized and obtained by means of the elements and combinations particularly pointed out in the written description and appended claims.

To achieve these and other advantages and in accordance with the purposes of the present invention, as embodied and broadly described herein, the present invention relates to a surface covering system. The surface covering system includes a series of tiles wherein each tile has at least one tongue section and at least two groove sections, for example, one tongue section and three groove sections. The tongue section of one tile interconnects with a groove section of a second tile wherein when the two tiles are interconnected a gap is formed at least on the upper surface between the two tiles. The surface covering system further includes a first spline having two tongue sections for interconnecting with the groove sections of at least two tiles. Also, the surface covering system includes a second spline capable of fitting into the gap formed by two or more tiles. This second spline is located between two or more tiles which are interconnected at a tongue of a first tile and a groove of a second tile.

The present invention further relates to a method for installing a surface covering system such as the one described above. This method of installing a surface covering system of the present invention involves connecting a series of tiles together to form a line, wherein the tiles are connected together at the tongue of one tile and the groove of another tile and so on. A tongue section of a first spline is then inserted into the grooves of two or more tiles in this series of tiles. The groove of a second series of tiles is then connected into the other tongue section of the first spline. The second series of tiles is further connected to each other to form a line by connecting the tongue of one tile to the groove of another tile and so on. The second spline is inserted into each of the gaps formed between the tiles wherein this second spline may be arranged in a perpendicular direction to the first spline when a system of square or rectangular tiles are used for the system. When other shapes of tiles are used, such as diamond-shaped tiles, the first and second splines are not necessarily perpendicular to each other. Once inserted, the second spline can be bonded, melt-bonded, adhered, or cured in order to be permanently located between the tiles.

It is to be understood that both the foregoing general description and the following detailed description are exem-

plary and explanatory only and are intended to provide further explanation of the present invention, as claimed.

The accompanying drawings, which are incorporated in and constitute a part of this application, illustrate several embodiments of the present invention and together with the description, serve to explain the principles of the present invention.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIGS. 1(a), (b), and (c) through FIGS. 3(a), (b), and (c) are partial side views of various tiles of the present invention and show the groove and/or tongue portion of the tiles of the present invention.

FIGS. 4(a) and (b) through FIGS. 6(a) and (b) are partial side views of various tiles of the present invention showing the tongue and/or groove sections of the tiles along with the first spline sections (FIGS. 4a, 5a, and 6a) and the second spline sections (FIGS. 4b, 5b, and 6b) which can be inserted between two or more tiles.

FIGS. 7(a) and (b) through FIGS. 9(a) and (b) are side views of the first and second spline sections, which can have a variety of designs.

FIG. 10 is a two dimensional view of an assembly having a first spline inserted into the grooves of a square tile.

FIG. 11 is a perspective view of the assembly of FIG. 10.

FIG. 12 is a two dimensional view showing a partial side view of a tongue portion of a tile.

FIG. 13 is a perspective view of the same portion of the tile as shown in FIG. 12.

FIG. 14 is a two dimensional view showing a second spline design.

FIG. 15 is a perspective view of the spline of FIG. 14.

FIGS. 16 through 18 represent cross-sectional views of various designs of the first spline.

FIG. 19 is a two dimensional view showing a partial side view of two tiles and opposing groove portions of each.

FIG. 20 is a perspective view of a tile shown in FIG. 19.

FIGS. 21 through 23 are partial side views of various designs of grooves that can be present in the tiles of the present invention.

FIG. 24 is a perspective view of a tile having three sides with grooves and one side with a tongue section.

FIG. 25 is a perspective view of a tile further showing the tongue section of the tile, as well as the groove sections.

FIG. 26 is a side view of an assembly having a second spline lying in a gap formed between two tiles.

FIG. 27 is a perspective view of the assembly shown in of FIG. 26.

FIG. 28 is a perspective view of three designs of the first spline section.

FIG. 29 is a perspective view of a long first spline having a notch formed therein for receiving the second spline.

## DETAILED DESCRIPTION OF THE PRESENT INVENTION

The present invention relates to a surface covering system, preferably involving a series of tiles with spline joints located between the tiles. The spline joints preferably simulate grout or mortar. The present invention further involves a method of installing the surface coverings.

In more detail, the surface covering system, as shown in FIGS. 4a and 4b, has a series of tiles 50, 52, a first spline

section 54 and a second spline section 56, which are all interconnected. The tiles that are used are such that each tile preferably has four sides, a top surface and a bottom surface. Three of the sides have groove sections and the other side has a tongue section. The tongue section of one tile interconnects with a groove section of a second tile. Furthermore, the tongue and groove sections are designed such that when they interconnect with each other, a gap is formed in the upper surface between the two tiles in order to receive a spline section as will be described in more detail below.

The tiles preferably have four sides and are preferably rectangular in shape, for example, square. Tiles of other shapes, including triangles, hexagons, octagons, pentagons and other polygons can be used. Combinations of tiles of different shapes can also be used in the flooring system of the present invention, such as a combination of octagon shapes and square shapes. Preferably, the tiles are of such shape or shapes that when a row or line of tiles are connected together, a continuous row or line of groove sections is provided and adjacent tiles of the row or line can share the same first spline.

The tiles can be made of any material that can be used for surface coverings. For instance, the tile can be a laminate tile, which is a particle board having various layers located on top including a print layer having a design to simulate granite, wood, brick, and the like. Any design can be used on the print layer. The tile can also be made of a polymeric material such as a thermoplastic material. Generally, any thermoplastic material, combinations thereof, alloys thereof, or mixtures of two or more thermoplastics can be used to form the tile. Generally, such thermoplastic materials include, but are not limited to, vinyl containing thermoplastics such as polyvinyl chloride, polyvinyl acetate, polyvinyl alcohol, and other vinyl and vinylidene resins and copolymers thereof; polyethylenes such as low density polyethylenes and high density polyethylenes and copolymers thereof; styrenes such as ABS, SAN, and polystyrenes and copolymers thereof; polypropylene and copolymers thereof; saturated and unsaturated polyesters; acrylics; polyamides such as nylon containing types; engineering plastics such as acetyl, polycarbonate, polyimide, polysulfone, and polyphenylene oxide and sulfide resins and the like. One or more conductive polymers can be used to form the tile, which has applications in conductive flooring and the like. The thermoplastic polymers set forth in Kirk Othmer (3rd Edition, 1981) at pp. 328 to 848 of Vol. 18 and pp. 385–498 of Vol. 16, (incorporated in their entirety by reference herein) can also be used as long as the resulting tile has sufficient strength for its intended purpose.

The surface covering system of the present invention can be used as floor coverings, wall coverings, ceiling coverings, kitchen countertops, and the like.

The tiles used in the present invention can be of any size including conventional sizes. For instance, the tiles can range in size of from about 2"×2" (50.8 mm×50.8 mm) to about 48"×48" (1219.2 mm×1219.2 mm), and more preferably from about 6"×6" (152 mm×152 mm) to about 24"×24" (609.2 mm×609.2 mm), and most preferably from about 12"×12" (304.8 mm×304.8 mm) to about 16"×16" (406.4 mm×406.4 mm). The thickness of the tile can be any conventional thickness such as from about 0.158" (4 mm) to about 0.472" (12 mm) and more preferably from about 0.276" (7 mm) to about 0.355" (9 mm.).

With respect to the groove section that is preferably on three sides of the tile, these groove sections can be of any dimensions as long as the receiving tongue section can either

5

be inserted into the groove section of a second tile in order to connect two or more tiles, or inserted into a spline section to be discussed below. The groove sections on three sides of the tiles generally are located in the middle portion of the side of the tile and the height of the recessed portion forming the groove section is from about 0.095" to about 0.255", and more preferably from about 0.098" to about 0.102". The depth of the recessed portion, that is, how far the groove is recessed into the side of the tile, is from about 0.1500" to about 0.210", and more preferably from about 0.1800" to about 0.1900". Preferably, the groove section runs along the entire length of each of three sides of each tile. The recessed portion can have a variety of designs to interface with the receiving tongue section. For instance, as shown in FIGS. 19 and 20, the groove section can be in the form of a sideways letter "U" and can have various angular cuts as represented in FIGS. 19 and 20. Other designs of the groove are further set forth in FIGS. 21 through 23 where FIG. 21 also shows a smooth groove in the shape of a sideways letter "U". FIG. 22 shows a tooth-like groove and FIG. 23 shows a recessed groove also having teeth. FIG. 24 further depicts the sides of a preferred tile wherein it can be seen that the grooves run the entire length of three sides of the tile and the fourth side has a tongue section as more clearly shown in FIG. 25. FIGS. 26 and 27 depict how the tongue portion of one tile connects with the groove section of a second tile.

As shown in FIGS. 1 through 3, the groove section of the tile can have various angular cuts. For instance, as shown in FIG. 2(a), the tile near, the upper surface of the sides, has a tapered cut on each side in order to form a more defined trapezoidal gap between two tiles when they are interconnected as shown in FIG. 2(b). FIG. 3(a), likewise, shows a tapered upper side section wherein the length of the tapered cut is shorter.

With respect to the tongue section of each tile, as stated above, the tongue section is designed such that it will interconnect with a groove section of a second tile. FIGS. 12 and 13 provide a preferred design of the tongue section where it can be seen that preferably the upper surface of the tongue is more recessed than the lower portion as shown in FIG. 12. Generally, the upper surface will be twice as exposed as the lower surface in forming the tongue portion. The thickness of the actual tongue portion which inserts into the groove will preferably be of a size to snugly and tightly fit into the groove in order to interconnect the two tiles together. Accordingly, the tongue portion will have very similar thicknesses to the height of the recessed portion and can be as long as the depth of the recessed portion. The tongue and groove are designed such that when the two interconnect, a gap is formed as shown in FIGS. 1(a), 2(a), and 3(a).

The surface covering system of the present invention is preferably designed such that a series of tiles are interconnected to form a straight line of tiles. The tiles are connected with each other by fitting the tongue of one tile into the groove of another tile and so on. This line of tiles then has a groove section on each side of the series of tiles forming the line. A first spline is then designed to have two tongue sections on each side. Each of these tongue sections is designed to interconnect with one or more groove sections of tiles. Preferably, the first spline is designed to have a length such that it interconnects with the groove sections of at least two tiles and more preferably with at least three tiles. The spline section can be designed to have a length such that it can interconnect a line of tiles from two tiles to twelve tiles or more. The first spline section as depicted, for instance, in FIG. 29, is designed such that there are one or more

6

intermittent notches present on the upper surface of the first spline. This notch is of sufficient width and depth to receive a second spline on top such that when the second spline is placed in the notch, the upper surfaces of the first and second splines are even with one another. These notches are intermittently present in design to address the gaps which form a "+" intersection between multiple tiles, such as four tiles. Thus, the notches are preferably spaced apart according to the length of each tile.

The designs of the tongue sections of the first spline can be of the same design, essentially, as the tongue section of the tiles. Various designs are set forth in FIGS. 4(a) through 6(a). As can be seen in these figures, the groove sections of two tiles are interconnected by means of the first spline which preferably is of a design such that the bottom surface of the first spline rests between the bottom surfaces of the first tile and second tile being interconnected. Preferably, the upper and lower surfaces of the tongue sections of the first spline comprise a soft polymer in order to ensure a tight fit between the groove sections of the tile. The tongue sections of each first spline are designed so as to have a thickness and depth that will generally match the height and depth of the groove sections of the tiles. Furthermore, the upper surface of the first spline preferably has a concave surface in order to simulate the concave surface of grout. This can be seen in FIGS. 4(a) through 6(a). The interaction of the first spline with two tiles is further set forth in FIGS. 10 and 11. Generally, the first spline can simply be connected with the groove sections of two or more tiles. However, adhesives or other bonding material can further be applied to the tongue sections of the first spline, as well as to the tongue and/or groove sections of any of the materials in order to ensure a more permanent connection.

As indicated earlier, a second spline is used in this surface covering system to simulate the same grout or mortar simulated by the first spline. The second spline fills in gaps between tiles that run perpendicular or at an angle to the first spline, as can be seen in FIG. 29. This second spline fits over the gap created by the interconnection of the tongue section of one tile and the groove section of a second tile as shown in FIGS. 1(b) through 3(b). The second spline does not have any tongue or groove sections, but instead is a piece of material that simply fits between the gap created by two connecting tiles. One preferred design having a type of trapezoidal shape is set forth in FIGS. 14 and 15. This spline can be placed over the gap running perpendicular to the first spline and, as indicated earlier, can be of such a length that it fits over notches located on the first spline at every intersection of four tiles. This second spline is simply inserted or placed into the gap and then can be permanently affixed by various techniques. For instance, insertion of the second spline can be made permanent by application of adhesive material such as glues; by hot welding; or methyl ethyl ketone, methyl amyl ketone, dipropyl ketone, methyl isobutyl ketone, n-methyl pyrrolidone, dimethyl formamide, cyclohexanone, nitrobenzene, and the like.

The second spline can be of any length and preferably has a length equal to at least one tile or tile and half, and more preferably at least two tiles, but can be the length of one tile to twelve tiles or more. The material used to make the second spline is generally the same type of polymeric material used to make the first spline. The upper surface of the second spline can also be concave as shown in FIGS. 4(b) through 6(b). Again, this is done to simulate the appearance of grout or mortar.

Generally, any sequence of steps can be used to insert the tiles, and the first and second splines. One way of installing

7

8

the surface covering system, which can be done in any order, involves connecting a series of tiles to essentially form a line, wherein the tiles are connected together at the tongue of one tile and the groove of another tile opposite its tongue, and so on, to form a row or line of tiles. The tongue section of a first spline can then be inserted into the series of grooves formed on one side of the line of tiles. A second series of tiles can then be formed and inserted, by way of one series of grooves, into the other tongue section of the first spline. Again, the second series of tiles are also connected to each other by connecting the tongue of one tile to the groove of another tile to form a straight or essentially straight line or series of interconnected tiles. These steps can be repeated in any order to connect any number of tiles together. The second spline can then be inserted into each of the gaps formed between the various tiles wherein these gaps, as indicated earlier, would be running perpendicular to the first spline in the case of rectangular tiles, or otherwise running at an angle to the first spline as with diamond-shaped tiles.

As an option, adhesive or other supplemental bonding material or means can be used during any of these above-described steps to more permanently attach the tiles together and to the spline system. The second spline can then be permanently affixed to the tiles by adhesive material, hot welding devices, melt-bonding, solvents, ultrasonic or electromagnetic techniques, and the like.

Preferably, to join two tiles with a first spline having the length of two tiles, the first spline is inserted with one half of the length of the spline in the groove of one tile and the other half in the groove of an adjacent tile in a series of tiles.

For rectangular tiles, the longitudinal ends of the tiles are preferably grooved, and one of the latitudinal ends is grooved, and the other latitudinal end has the tongue portion. The groove configuration of the latitudinal end is the same as the groove configurations of the longitudinal ends. The length of the upper tongue on the tile is equivalent to the size of the groove width plus the typical size of a tongue portion inserted in the groove.

Preferably the length of the first spline is equivalent to the length of two tiles plus the widths of the grouts between the two tiles. One benefit of the present invention is that the spline does not have to be precisely dimensioned in length prior to installation and can be cut to the exact size during installation. In the tile assembly, the first spline is preferably designed such that when it is the length of two tiles plus grout width, it will be aligned to the first tile thus ensuring a perfect alignment for the latitudinal grout material to lie across in the traverse or perpendicular direction. Since both ends of the first spline are cut or centered to the middle of the notch, great flexibility is provided to cover any possible variation of tile dimension. For instance, if the first spline is shorter than the tile size at the end, a small gap may exist from one spline to the next spline. However, the simulated grout top portion of the second spline, which is laid on top, can disguise any possible gaps.

The splines can be made of any thermoplastic material like vinyl containing thermoplastic such as polyvinylchloride, polyvinylacetate, polyvinylalcohol, and other vinyl and vinylidene resins and copolymers thereof. Other examples of suitable thermoplastic materials include, but are not limited to, polyethylene, such as low density polyethylenes and high density polyethylenes and copolymers thereof; styrenes such as ABS, SAN, and polystyrenes and copolymers thereof; polypropylene and copolymers thereof; saturated and unsaturated polyesters; acrylics and polyamides, such as nylon; engineering plastics such as

acetyl, polycarbonate, polyimide, polysulfone; polyphenylene oxide; sulfide resins; and the like.

The first spline can preferably comprise a substantially rigid bottom portion and a top portion which is more flexible and/or of lower melting material than the bottom section. Cross-sectional profiles of two-portion first splines are shown in FIGS. 16–18. Likewise, the second spline may comprise a bottom portion and a top portion. The top portion of the second spline may be more flexible and/or of lower melting material than the bottom portion thereof. Preferably, the top portion of the first spline and the top portion of the second spline are of the same material.

The first spline may be provided with a connecting device at an end thereof so that the first spline can be connected to another first spline to form a substantially continuous length of first spline. Likewise, the second spline may be provided with a connecting device at ends thereof to enable connecting two or more second splines together. The connecting device for connecting like splines together may be of tongue and groove design, of toothed tongue and notched groove design, or of a like design.

As a further embodiment, the first spline may be a two piece system, wherein the top portion of the first spline is separate from the bottom portion having the two tongue sections. The top portion of the first spline can be installed just like the second spline is installed. This type of embodiment permits any defects between splines to be masked by the top portion of the first spline when placed on top of the lower portion of the first spline. Further, in this embodiment, the length of the upper portion of the first spline can be different from the length of the bottom portion of the first spline.

The present invention will be further clarified by the following examples, which are intended to be purely exemplary of the present invention.

## EXAMPLES

### Example 1

#### Solvent Welding Method

JOWAPUR 13 687 00 was sprayed onto the entire surface of the tongue and grooves of the laminate flooring as shown in FIGS. 24 and 26. JOWAPUR 13 687 00, from Jowat Adhesives, is a hydrophobic material, a foam free polyurethane pre-polymer without residual tack. The viscosity of this material is approximately 40 cps. The sealer preferably penetrates into the HDF and also totally seals the entire surface of the tongue and groove. The spray rate was approximately 0.3 grams to 0.5 grams per tile that has one tongue on one side of three grooves on the rest of three sides of the square tile format. The dimensions of the square tile were 15.71"×15.71" (399 mm×399 mm). The sealer that was sprayed on all four edges of each square tile was allowed to cure for 24 hours.

Lengthwise spline material (composed of rigid and semi-rigid PVC) was then inserted into the grooves of two tiles to interconnect them together. The tongue section of these tiles was also inserted into the groove section of the second tiles to form a larger square tile assembly that consisted of four tiles interconnecting them together by using both spline and tongue & groove locking system.

The widthwise spline was then snapped into the recessed areas created by the tongue and groove connection of the tiles.

Solvent sealer, THF, was then applied by using an applicator with conical shape or syringe that had a tip of 1/32" in

9
10

diameter on the top of a 4 oz. bottle. The application rate of THF seam sealer along all joints between tiles in lengthwise and widthwise was about 0.20 grams to 0.70 grams per board.

The tiles were allowed to sit for 8 hours to develop bond strength between the square tiles and spline system. The bond strength for separating the tiles from the joint was about 131 psi.

Example II

Heat Welding Method

The laminate was the same as Example 1 and was pre-treated with pre-polymer and cured in the same manner as in Example 1.

The lengthwise spline material, based on Exxon's Escorene LD 723 (composed of low density polyethylene/vinyl acetate copolymer), was then inserted into the groove section of the second tiles to form a larger square tile assembly that consisted of four tiles interconnecting them together by using both spline and tongue & groove locking grooves of two tiles to interconnect them together. The tongue section of these tiles was also inserted into system.

The widthwise spline that was also made out of Exxon's Escorene LD 723 (composed of low-density polyethylene/vinyl acetate copolymer) was snapped into the recessed areas created by the tongue and groove connection of the tiles.

A heat gun was then used to soften and subsequently melt the edges of the spline material and thus initiate bonding between the spline and tile board surface. The surface temperature of the spline reached about a minimum of 185° F. (85° C.). Bond strength was then achieved between the square tile and spline system.

The joint was allowed to be completely cooled down for the full strength of the bond to be developed between the square tile and spline system. The bond strength for separating the tiles from the joint was about 37 psi.

Other embodiments of the present invention will be apparent to those skilled in the art from consideration of the specification and practice of the present invention disclosed herein. It is intended that the specification and examples be considered as exemplary only, with the true scope and spirit of the present invention being indicated by the following claims.

What is claimed is:

1. A surface covering system comprising a series of tiles, each tile having an upper surface, a lower surface, and a plurality of sides, wherein at least two of the sides each have a groove section and at least one of the sides has a tongue section; wherein when the tongue section of one tile interconnects with the groove section of a second tile, a gap is formed on the upper surface between the two tiles;

at least one first spline having two tongue sections for interconnecting with the groove sections of at least two tiles;

at least one second spline capable of fitting into said gap formed between two or more tiles which are interconnected at the tongue section of one tile and the groove section of another tile.

2. The surface covering system of claim 1, wherein the top edges of each tile are tapered.

3. The surface covering system of claim 1, wherein the top edges and bottom edges of each tile are tapered.

4. The surface covering system of claim 1, wherein said first spline and said second spline simulate grout in appearance.

5. The surface covering system of claim 1, wherein said first spline and said second spline comprise thermoplastic material.

6. The surface covering system of claim 1, wherein the upper top surfaces of said first spline and said second spline are concave.

7. The surface covering system of claim 1, wherein the tongue section of said first spline has a tooth-like design.

8. The surface covering system of claim 1, wherein the tongue section of each tile has a tooth-like design.

9. The surface covering system of claim 1, wherein said first spline has a design such that the bottom of said first spline rests between the bottom surfaces of the first tile and said second tile.

10. The surface covering system of claim 1, wherein said groove sections of each tile have a tooth-like design.

11. The surface covering system of claim 1, comprising two or more first splines connected together.

12. The surface covering system of claim 1, wherein the sides having a groove section is longer at the bottom portion than the top surface portion of the same groove.

13. The surface covering system of claim 1, wherein the tongue sections of said first spline have soft polymer located at top and bottom surfaces of the tongue to be inserted into the groove section of said tiles.

14. The surface covering system of claim 1, wherein said first spline has a notch located on the top surface to receive said second spline.

15. The surface covering system of claim 1, wherein a series of notches are spaced apart on the top surface of said first spline by lengths equivalent to about one tile length.

16. The surface covering system of claim 1, wherein said surface is a floor.

17. The surface covering system of claim 1, wherein said surface is a wall, ceiling, or countertop.

18. The surface covering system of claim 1, wherein said tile has a printed design on the top surface thereof.

19. The surface covering system of claim 1, wherein said tile has a printed layer on top of each tile and has the design of brick, granite, slate, marble, mosaic, or wood-grain patterns.

20. The surface covering system of claim 1, wherein each tile has four sides, three of the sides have groove sections, and one side has a tongue section.

21. The surface covering system of claim 1, wherein said series of tiles includes at least two tiles of different shapes.

22. The surface covering system of claim 1, wherein said series of tiles includes rectangular or square tiles.

23. The surface covering system of claim 1, wherein said first spline comprises a separate top portion and a separate bottom portion, wherein said top portion is affixed to said bottom portion.

24. A method of installing the surface covering system of claim 1, comprising:

connecting two or more of said tiles together to form a row of tiles, wherein the tiles are connected together by

connecting the tongue section of one tile and the groove section of another tile;

inserting a tongue section of said first spline into a groove section of one or more tiles in said row of tiles;

connecting a groove of at least a third tile into the other tongue section of said first spline;

connecting a tongue section or a remaining groove section of said third tile to a groove section or a tongue section of a fourth tile to form a second row of tiles;

inserting at least one of said second spline into each of said gaps formed between said tiles that are not otherwise occupied by said first spline; and

affixing the inserted second splines.

**25**. The method of claim **24,** wherein said second row of tiles is formed before said third tile is connected to said first spline.

**26**. The method of claim **24,** wherein said third tile is connected to said first spline and then said second row of tiles is formed.

**27**. The method of claim **24,** wherein said affixing comprises melt-bonding.

**28**. The method of claim **24,** wherein the steps are repeated one or more times.

\* \* \* \* \*

# Exhibit F



# Wood Fasteners, Joinery, and Adhesives

## Joinery

- The process of *connecting or joining two pieces of wood together* through the use of various forms of wood joints.
- In basic materials processing, common forms of joinery include dovetail joints, mortise-and-tenon joints, biscuit joints, lap joints, and spline joints.

 

## Butt Joint

- An easy but often weak technique for joining two boards together simply by gluing and pressing two flat surfaces together.
- Typically made by gluing an end to an adjoining flat surface.



## Biscuit Joint



- **A butt joint that is reinforced with football- or lozenge-shaped wooden "biscuits."**
- **Biscuits are usually made from compressed wood, frequently birch wood.**
- **When the biscuit comes into contact with glue in the biscuit slot, it swells thus creating a tighter joint.**
- **Sometimes called a plate joint.**

## Dado Joint



- **A joint where one piece is grooved to receive the piece which forms the other part of the joint.**

- *Dado (definition)*
  - *A groove which is cut across the grain to receive the butt end or edge of a second piece.*

## Dovetail Joint



- **Joining two boards in which alternating slots (or tails) and protrusions (or pins), each resembling in shape the v-shaped outline of a bird's tail, are snugly fitted together, thus increasing the gluing area.**
- **Produces a joint that, even without glue, can be difficult to pull apart.**
- **Regarded as one of the strongest and most reliable forms of wood joinery.**

## Lap Joint



- **A joint where one piece of wood is crossed over another.**

## Miter Joint

- The woodworking joint created when two boards are cut at an angle to one another.

- The most common miter joint is the 45-degree miter such as the cuts used to build square or rectangular picture frames.



34-39. Flat miter. This may be held together by nails, screws, or other metal fastener.

34-60. Edge miter.

## Mortise-and-Tenon Joint

- A joinery technique where the cut end (tenon) from one board fits into the matching opening (mortise) of another.

- *Mortise (definition)*
    - *An opening chiseled, drilled or routed into a board to receive the end of an intersecting board.*
    - *The opening or socket that receives the tenon in the classic woodworker's mortise-and-tenon joint.*
    - *The female part of a mortise-and-tenon joint.*

- *Tenon (definition)*
    - *The end of a board, cut to a specific size and shape, that is inserted into the mortise, or opening, in a second board.*
    - *The male part of a mortise-and-tenon joint.*



## Rabbet Joint

- A joinery technique where an "L" groove across the end of the edge of one piece of wood fits into a edge or end of another board with an "L" groove.

- *Rabbet (definition)*
    - *A rectangular, stepped recess cut along the edge of a section of wood. (May be used as a verb or noun.)*



34-52. Rabbet edge. This is the called ship lap when used in siding.

## Scarf Joint

- A joinery technique where two wedge-shaped pieces have been cut to correspond to one another.



34-15. Scarf joint. This is sometimes strengthened with dowels or by nailing a strip on either side.

Project Lead The Way®
Copyright 2006

## Finger Joint

• A joinery technique used mostly in industry where small "fingers" are cut into corresponding pieces that will be joined together.

• Finger joints are used to making wide boards, in extending the length of dimensional lumber, and in laminated construction.


14-10. The finger joint is considered the most important industrial joint.

## Joinery Reinforcements

• **Key (or Biscuit)**
  – A small, flat lozenge-shaped dowel for edge or corner-jointing. Wood biscuits are fitted into slots that are created with a biscuit jointer.

• **Dowel pin**
  – Pegs of wood that fit into two matching holes to strengthen a joint.

• **Spline**
  – A thin piece of wood that fits in the mating grooves cut into two pieces of wood.



# Wood Fasteners

• What fastener is best to use?

• There are a few questions you need ask to determine which type of fastener you need to use.
  – What materials need to be joined? *Wood, metal and masonry all require different fasteners.*
  – What is the thickness of the material to be joined? *For a secure connection, the fastener must be the correct length.*
  – What weight or strength requirements are there? *From framing a house to hanging a picture, there's a fastener for the job.*
  – How permanent will the connection be? *If the work will be disassembled at some point, use a screw.*
  – Will the work be indoors or outdoors? *There are specific fasteners for both types of applications.*

# Nails

• The nail has been around for thousands of years.

• The first versions were heat-forged. When machinery entered the picture, they were cut from sheets of metal.

• Today, most nails are drawn and cut from rolls of wire.



Project Lead The Way®
Copyright 2006

IC-App-0501

**4**

## Nail Size



- Nails are sold by weight or length.

- Wood nails are measured, or sized, according to length.
  - This is expressed by the letter "d" (called penny). The symbol is English, signifying a pound in weight, related to the weight in pounds of 1000 nails.
  - Sizes run from 2d (2-penny/1" long) to 60d.

- Nails generally are 1" to 6" in length, usually getting thicker as they get longer.

- Nails larger than 6" are sometimes called spikes.

## Nail Styles

- Nail points vary, but the four-sided diamond point is the standard point found on most nails.

- Nail heads also vary.
  - Smaller heads can be driven in and painted over.
  - Large framing nails have corrugated heads to reduce the danger of a hammer slipping and causing injury or damage.

- Regular wood nails are often referred to as wire nails.

## Common Nail

- Thick, heavy-duty, general-purpose nail.

- Large, flat head for performing rough work such as construction framing.



## Box Nail

- Short, thin shaped nail with a blunt tip.

- Used to fasten smaller stock when common nails are too large.



IC-App-0502

## Finishing Nail

– **Small nail with cupped head for fastening trim when nail heads should not show.**

– **Can be countersunk with a nailset, then filled over.**



## Brad

– **Smaller version of the finishing nail up to about 1" long.**

– **Used for detail work such as attaching molding or trim.**



## Casing Nail

– **Similar to finishing nail, but thicker and heavier.**

– **Used to attach case molding or rough trim where strength and concealment are required.**



## Tack

– **Very short nail with relatively large head and very sharp point.**

– **Used to fasten upholstery or carpet or to perform other light fastening jobs.**



IC-App-0503

## Upholstery Tacks

- – **Short nails with ornamental or colored heads.**

- – **Used for attaching upholstery where fasteners will show.**



## Screws

- • **For fastening, screws are stronger than nails.**

- • **They can be removed with less damage to the material (especially wood) than nails.**

- • **When using with wood, best practice is to pre-drill a "pilot" hole to guide the screw into position.**



## Screw Slot Types

- • **Slotted**
  - – **Conventional single-groove screwhead.**
  - – **Applied with a flathead screwdriver.**
- • **Phillips**
  - – **Cross-slotted screwheads with U or V-Shaped slots of uniform width.**
  - – **Driven with a Phillips screwdriver.**
- • **Torx™**
  - – **Require special drivers with six point heads.**
  - – **Commonly used in electronics, metal or automotive applications.**



## Screw Head & Thread Types

- • **Head Types**
  - – **Oval**
    - • **Lower portion is countersunk and top is rounded.**
    - • **Easier to remove & better looking than flathead screws.**
  - – **Round**
    - • **Used where the fastened piece is too thin to permit countersinking.**
    - • **Also used on parts that may require a washer.**
  - – **Flat**
    - • **Used in applications where the head needs to be flush with the surface.**
    - • **Slotted and Phillips type are available.**
- • **Thread Styles**
  - – **Fine-thread**
    - • **Work best for hardwoods.**
  - – **Coarse-thread**
    - • **Intended for soft woods.**



IC-App-0504

# Wood Glues & Adhesives



- By definition, *glue* is made from animal byproducts such as skins and bones.
- An *adhesive* is any product that joins materials together.
- Today, the words "glue" and "adhesive" have become interchangeable.
  - *Natural Glues* are made from animal byproducts (hide glue and casein) or plant sources (paste, cellulose and rubber).
  - *Synthetic Adhesives* include polyvinyl acetate (PVA), aliphatic resin, contact cement, hot melt, and polyurethane.
- *Whether natural or synthetic, the bond is formed as the liquid dries and hardens.*
- *Adhesives are often used in conjunction with fasteners to strengthen wood joints.*

# Animal Glues

- Used mostly for furniture making and woodworking.

- They are easy to work with, but less resistant to heat or cold.
  - Hide glue
    - » Made from bones, hoofs and skin from animals and fish.
    - » Dry form is mixed and heated (in a glue pot) into a gelatinous mixture that is applied with brush.
  - Casein
    - » Made from milk, powdered and reformulated with water.
    - » Creates a waterproof bond.

# White Glue
## *(polyvinyl acetate)*



- For wood, engineered wood, paper, crafts and simple projects.
- Most commonly available in plastic squeeze bottles.
- Begins to set within one hour, dries clear.
- Has easy clean up, doesn't stain, nontoxic, nonflammable.
- Is not waterproof.
- Requires work to be clamped for best results.

# Yellow or Carpenter's Glue
## *(aliphatic resin)*



- For woodworking.
- "Refined" version of PVA.
- Packaged in squeeze bottles.
- Varieties typically come in yellow or brown.
- Begins to set within 15 minutes.
- Water-resistant nontoxic, nonflammable.
- More resistant to temperature and water than white glue.
- Work needs to be clamped for best results.
- Used for indoor and outdoor applications.

IC-App-0505

## Contact Cement

– **For bonding wood veneer and plastic laminates to countertops.**
– **Water-resistant.**
– **Applied to both surfaces needing to be bonded.**
– **After a designated curing time, the two work pieces are put together.**
– **Forms an instant bond, leaving no margin for error.**
– **Water-based versions are nonflammable.**



## Hot Melt

– **For crafts, general projects and repair.**

– **Requires an electric glue gun.**

– **Adhesive is a 2-4" glue stick that is inserted into the gun. Heat converts solid to liquid for application.**

– **Begins to set in about a minute as it cools and solidifies.**

– **Fills gaps for good adhesion.**

## Polyurethane

– **For woodworking.**

– **Synthetic plastic-based material.**

– **Requires moistening of one or both sides of the materials to be joined.**

– **Creates a strong bond.**

– **Can be difficult to clean up.**





# Exhibit G

Home ‣ Joinery ‣ Biscuit Joinery

# Marking Guide Puts Biscuits in Right Place



*Eliminate the guesswork when it comes to figuring out where the biscuit slot should go. Follow these simple steps and you'll avoid making careless mistakes.*

used to guess where a biscuit slot should go, but now I make sure. With my biscuit joiner, I cut slots for #0, #10, and #20 biscuits into a piece of scrapwood. Then, I mark the centerline on some matching biscuits and glue them into the slots. Now I have a handy guide that shows me where to cut when there's no room for guesswork.

*- David Whitting, Townsend, Mass.*

 By WOOD Magazine Staff

IC-App-0508

# Exhibit H

1-866-381-4072       sales@edeck.com

The Builder's Source for Hardwood Decking



1-866-381-4072

**Products**     **Hardware**     **Deck Care**     **Installation**     **Resources**     **Projects**

**Get a Quote**     **Free Samples**     **Blog**

EB-TY® Hidden Deck Fasteners™           Home  /  Accessories  /  EB-TY® Hidden Deck Fasteners™



Simpson Strong-Tie's EB-TY® Hidden Deck Fasteners™ are one of the most reliable, long-lasting hidden fasteners on the market. Made in the USA, the dark, ultra-violet resistant polypropylene hidden deck fasteners will not rust or shrink. Even at temperatures over 200 degrees Fahrenheit, EB-TY® will neither crack nor soften. Given its approximated life span of 100 years, the fastener saves the homeowner money on deck repair.

The EB-TY® Hidden Deck-Fastening System™ consists of black biscuits that are inserted into slots or kerfs cut by a biscuit joiner, or router bit, at each joist. One stainless steel #7 2-1/4" screw holds each biscuit tight. After applying beads of exterior construction glue to each joist, the next deck board slips over the exposed EB-TY® fasteners.

You work from the top surface when using EB-TY® fasteners, so you can build decks as close to the ground as you want, or even float them over flat roofs. Installation takes only one EB-TY® hidden deck fastener and one screw wherever a deck board intersects with a joist.

## Which EB-TY size is right for your deck?

**Air-dried (AD) decking such as Ipe Massaranduba:** Original EBE004 hidden deck fastener with 3/32″ spacing is recommended for 4/4″ and 5/4″ deck boards.

**Kiln-dried (KD) decking such as Garapa, or spaces where you have limited air flow:** EBE005LC hidden deck fastener with a 1/4″ spacing is recommended for 4/4″ and 5/4″ deck boards.

Installing an IPE deck with EBTY Hidden Composite Deck Fasteners

We are the most cost effective, helpful, and quickest Hardwood Decking Dealer. Contact us so we can help you complete your project today!



Ipe Decking, Garapa Decking, and More     About Us

Hardwood Decking Special Offers     FAQ     Privacy Policy

IC-App-0510

# Exhibit I

How To → Skills and Know-How → Carpentry and Woodworking

**MAKE IT**

# How to Use a Biscuit Joiner

A biscuit joiner can be used to make edge-to-edge joints as well as perpendicular joints. Here's how it works.

## TOOLS

pencil
ruler or straightedge
biscuit joiner

Show All

## MATERIALS

biscuits
pieces of wood to be joined

Show All

Like this? Here's more:
**POWER TOOLS (HTTP://WWW.DIYNETWORK.COM/HOW-TO/TOPICS/POWER-TOOLS)**
**TOOLS (HTTP://WWW.DIYNETWORK.COM/HOW-TO/SKILLS-AND-KNOW-HOW/TOOLS)**
**WOODWORKING (HTTP://WWW.DIYNETWORK.COM/HOW-TO/TOPICS/WOODWORKING)**

Pinterest          Facebook          Twitter          Email

---

**STEP 1**

★          **TABLE OF CONTENTS**          ★

Step 1:Line up the Wood Pieces

Step 2:Draw a Triangle Across the Boards

Step 3:Mark Each Joint Lightly with a Pencil

Step 4:Insert the Biscuits into the Slots

Step 5:Make Pencil Marks 6 Inches Apart for
Perpendicular or T-Joints

Step 6:Cut Matching Slots into both Pieces of
Wood, Join and Clamp

What's New

IC-App-0511



## Line up the Wood Pieces

Line up the pieces of wood to be joined, with their grains facing the same way. Make sure the tree rings on the edges of the wood are in the shape of an arch, with the open end of the curves facing downward. This positioning will prevent the wood from curving when humidity is high.

**STEP 2**



## Draw a Triangle Across the Boards

Using a pencil, draw a triangle across the width of the boards to be joined. This triangle will act as a guide for placing the boards back together in their correct positions.

Sign up for weekly project ideas and advice from experts
Privacy Policy
(http://www.scrippsnetworksinteractive.com/privacy-policy/)

Enter email address          Sign Up

## Get Social With Us

We love to DIY. You love to DIY. Let's get together.

- Twitter (https://twitter.com/DIYNetwork)
- Facebook (https://www.facebook.com/DIYNetwork)
- Pinterest (https://www.pinterest.com/diynetwork/)
- Instagram (https://instagram.com/diynetwork)

**More DIY Social
(http://www.diynetwork.com/about-us/social)**

## Ideas From Our Blog

Get quick inspiration from Made + Remade each week.
Privacy Policy
(http://www.scrippsnetworksinteractive.com/privacy-policy/)

Enter email address          Sign Up

## Most Popular in Landscaping

- The Essential Steps to Landscape Design
  (http://www.diynetwork.com/how-
  to/outdoors/landscaping/the-essential-steps-to-
  landscape-design-pictures)
- Tired of Mowing? Try These Plants and Groundcovers
  (http://www.diynetwork.com/how-
  to/outdoors/landscaping/tired-of-mowing-try-these-
  plants-and-groundcovers-instead-pictures)
- 10 Things You Must Know About Landscaping
  (http://www.diynetwork.com/how-
  to/outdoors/landscaping/10-things-you-must-know-
  about-landscaping-pictures)
- Lush Landscaping Creates Major Curb Appeal
  (http://www.diynetwork.com/how-
  to/outdoors/landscaping/lush-landscaping-creates-
  major-curb-appeal-pictures)
- 12 Budget-Friendly Backyards
  (http://www.diynetwork.com/how-
  to/outdoors/landscaping/12-budget-friendly-backyards-
  pictures)
- A Magical Landscape Makeover
  (http://www.diynetwork.com/how-
  to/outdoors/landscaping/a-magical-landscape-
  makeover-pictures)
- America's Most Desperate Landscape 2015: Before and
  After Pictures
  (http://www.diynetwork.com/shows/americas-most-
  desperate-landscape/americas-most-desperate-
  landscape-2015-before-and-after-pictures-pictures)
- How to Design a Great Yard with Landscape Plants
  (http://www.diynetwork.com/how-

## STEP 3

to/outdoors/landscaping/how-to-design-a-great-yard-with-landscape-plants)
- How to Landscape a Shady Yard (http://www.diynetwork.com/how-to/outdoors/landscaping/how-to-landscape-a-shady-yard)
- Making A Checkerboard Patio Garden (http://www.diynetwork.com/how-to/outdoors/gardening/making-a-checkerboard-patio-garden)
- How to Landscape a Sloping Backyard (http://www.diynetwork.com/how-to/outdoors/landscaping/how-to-landscape-a-sloping-backyard)
- Add Interest to Your Lawn With Ornamental Grasses (http://www.diynetwork.com/how-to/outdoors/gardening/add-interest-to-your-lawn-with-ornamental-grasses-pictures)



### Mark Each Joint Lightly with a Pencil

Make pencil marks along each joint where you want to put a biscuit (Image 1). The biscuits should be about 6" apart. Spread the boards apart. Using a biscuit joiner, cut a slot at each mark, making sure to center the cuts according to the marks (Image 2). Apply a little bit of wood glue along the length of the edge to be joined as well as inside the slots.

## STEP 4

IC-App-0513



## Insert the Biscuits into the Slots

Insert the biscuits into the slots of one piece of wood. Then slide the biscuits into their corresponding slots on the second piece of wood. Clamp the pieces of wood together and allow them to dry.

**STEP 5**



## Make Pencil Marks 6 Inches Apart for Perpendicular or T-Joints

For perpendicular joints, such as in the construction of bookshelves where the edge of one board is fastened to the face of another, hold the boards to be joined together and make pencil marks on both boards to indicate where the biscuit cuts should be made. Space the cuts about 6" apart. Place the two boards parallel on top of each other, with the top of the horizontal board aligned with the line you just drew. Clamp the two boards together in this position.

IC-App-0514

**STEP 6**

## Cut Matching Slots into both Pieces of Wood, Join and Clamp

Use the biscuit joiner to cut slots in the end of the top piece of wood. Turn the joiner to a vertical position, and cut matching slots in the bottom piece of wood. Assemble with biscuits and a small amount of wood glue. Clamp the joint together and allow the glue to dry.

# NEXT UP



(http://www.diynetwork.com/how-

### How to Use a Biscuit Joiner (http://www.diynetwork.com/how-to/skills-and-know-how/tools/how-to-use-a-biscuit-joiner)

Biscuits are a quick and simple way to join wood. They can be used in many situations where a strong, inconspicuous joint is required.

SPONSORED CONTENT

### Craft a colorful party

Give any celebration a pop of color with the KISSES Flower Bouquet craft.

**Ad by Hershey's**

# WE RECOMMEND

(http://www.diynetwork.com/how-to/skills-and-know-how/tools/how-to-make-a-cross-cut-platform-for-your-circular-saw)

(http://www.diynetwork.com/how-to/skills-and-know-how/tools/how-to-use-router-templates-and-bearing-guides)

**How to Use Router Templates and Bearing Guides** 3 Steps **(http://www.diynetwork.com/how-to/skills-and-know-how/tools/how-to-use-router-templates-and-bearing-guides)**

(http://www.diynetwork.com/how-to/skills-and-know-how/carpentry-and-woodworking/how-to-draw-angles-and-circles)

IC-App-0515

**How to Make a Cross-cut Platform for your Circular Saw** 8 Steps (http://www.diynetwork.com/how-to/skills-and-know-how/tools/how-to-make-a-cross-cut-platform-for-your-circular-saw)

**How to Draw Angles and Circles** 6 Steps (http://www.diynetwork.com/how-to/skills-and-know-how/carpentry-and-woodworking/how-to-draw-angles-and-circles)

(http://www.diynetwork.com/how-to/skills-and-know-how/carpentry-and-woodworking/how-to-make-a-drilling-guide-block-with-bushings)

(http://www.diynetwork.com/how-to/skills-and-know-how/tools/solutions-to-common-table-saw-problems)

(http://www.diynetwork.com/how-to/skills-and-know-how/tools/how-to-use-a-biscuit-joiner)

**How to Make a Drilling Guide Block with Bushings** 3 Steps (http://www.diynetwork.com/how-to/skills-and-know-how/carpentry-and-woodworking/how-to-make-a-drilling-guide-block-with-bushings)

**Solutions to Common Table Saw Problems** (http://www.diynetwork.com/how-to/skills-and-know-how/tools/solutions-to-common-table-saw-problems)

**How to Use a Biscuit Joiner** 8 Steps (http://www.diynetwork.com/how-to/skills-and-know-how/tools/how-to-use-a-biscuit-joiner)

IC-App-0516

article. - DIYonline.com - home improvement & remodeling made easy ...

www.diyonline.com/servlet/GIB_BaseT/diylib_article.html?session.docid=1242 ▼

Feb 1, 2001 - A **biscuit** is a thin, flat, **oval** shaped disc of wood that is inserted into a pocket hole ...
and it's important to be accurate while cutting these **slots** for a clean finish.

IC-App-0517

# Exhibit J



## Router Tips



## Use Your Router as a Biscuit Joiner

Recently I picked up a biscuit cutter set from Dimar Canada (photo 1) and couldn't wait to give it a try.

Many projects need some form of joint. Biscuits not only hold projects together but also make aligning your stock very easy. The kit as pictured is set up for standard #0, #10 and #20 biscuits. It comes with: a ¼" or ½" shank; a 5/32" slot cutter; three sizes of bearings for the different size biscuits; and a sample of each biscuit.

To assemble the kit for routing, first you must choose the proper size bearing for the biscuit that you require. The large bearing is for the #0 biscuits, medium for #10 and small for #20.

Photo 2 shows how to assemble the cutter and bearing to the shaft. I used using the #10 biscuit bearing for my cuts.




**Safety Note:** the nature of this cutter allows the user to possibly assemble the slot so that it will spin backwards on your router. BE VERY CAREFUL during assembly. The carbide should be facing you and should turn in a counter clockwise direction in your router.

Now that you have chucked up the cutter you must align it to the centre of your stock. Set up you router fence and isolate your bearing flush with the edge of your fence. Using a test piece, mark the centre of your board. Now align the centre of the carbide to the centre line that you have drawn (photo 3).



IC-App-0518

Test this set up by cutting a small groove into your stock (photo 4). Now flip the board over and check to see if the cutter goes into the slot from the other side (photo 5). If it doesn't slide right into the slot, you are half the distance off. Either raise or lower your cutter half of the distance that you are off and run another test.




You are now ready to start cutting your biscuit slots. If you simply press your stock into the cutter you will find that the depth is right but the length is too short (photo 6). To compensate for this you must start your cut and then move your stock across the cutter to get the right length. The safest way to do this is to have stops on your fence (photo 7). Press your stock against the rear stop, pivot into the cutter and slide the board forward to the front stop. Now pivot off the cutter.






Unless you have a very long fence you probably won't be able to start and stop this way, so you will have to make some marks on your stock and on your fence. The length of cut for this cutter it 1 ⅜" on either side of centre for a #10 biscuit (photo 9).



First make marks on your stock where you want to cut your biscuits (photo 10). Now make marks on your fence that are the same distance from centre as the length of your cut (photo 11).

IC-App-0519

 

Pivot your stock into the cutter using your marks on your stock and the marks on the fence (photo 12). Slide your stock across to the second mark and pivot out.

This will make a perfect cut that will allow you to slide your biscuit back and forth the make alignment easier (photo 13).





A biscuit will assist in the alignment of your stock, but if you don't have a good jointed edge to start with you won't get a better joint with the biscuit in place (photo 14).

Try using your cutter for face frames and mitres. Make sure that you use start and stop blocks for these cuts (photo 15).

 

When you are using it for mitres, make an angled jig (photo 16), and then reverse it for the second cut (photo 17 & 18).

  

**Note:** The router is a versatile tool that can be used to do a lot more than most woodworkers realize. Watch for future articles where I will show you a variety of ways to get the most out of your router. Next issue I will show you how to use your router as a jointer.

**Guidelines to proper insertion of the Arbor into the Router Collet:**
Insert the Arbor all the way into the collet, and pull it back to the maximum so that it is more

IC-App-0520

than the diameter of the Arbor. For example:

If you use ¼" shank arbor, maximum pull back after shank has been fully inserted into collet, is ¼".

If you use ½" shank arbor, maximum pull back after shank has been fully inserted into collet, is ½".

The DIMAR bit may be run at the max RPM of your router machine.

If you find that the groove produced is too wide for the biscuits provided, stop using the machine and check your router machine and router bit for run-out.

After extensive usage, the carbide tipped groover (fly cutter) will need to be resharpened by a qualified person.

Use only brand name, quality wood biscuits made of Beech wood. They will be stronger, consistent in thickness and will ensure proper assembly and ease of use.

MARK EATON is founder of The National Router Academy
nra@cogeco.ca









# Exhibit K

# Making Strong
# Wood Joints

Here are tips and instructions on how to make strong and inconspicuous joints in wood. Read these instructions carefully to help save you time and money. In this document you will find:

- Making Corner Joints
- Joining a Top Piece of Wood to a Side Piece
- Joining One Board in the Center of Another

---



You need the Flash plugin to view animations. Click to install Flash.



Step # **1**

## MAKING CORNER JOINTS

- On almost any woodworking job, you occasionally need to make a strong corner joint. But there are many types of corner joints. Which type is best for the job you are undertaking?

- The simple butt joint is most commonly used (Fig. 1). This joint is formed by nailing or screwing the end of one piece of wood to the end of the other. While this is simple, fast and effective, the butt joint cannot be used on many types of end joints.

- A simple butt joint leaves the heads of the screws or nails exposed. Of course, the heads can be countersunk and covered with water putty or wood filler if desired.



FIG. 1 - A simple butt joint is formed by nailing or screwing two ends together.

- The dowel joint is basically the same as the butt joint except dowels are used to hold the two pieces of wood together instead of screws and nails (Fig. 2).

- You can make the dowel joint by drilling holes completely through one piece of wood and into the other. Dowels are driven into these holes, completely through one piece of wood and deeply into the other. Then glue the dowels firmly into position to provide strength and prevent slippage.

- Construct blind dowel joints by drilling the holes only partway into each piece of wood. Then drive the dowels into these holes and glue them into position. The dowels are not visible.



FIG. 2 - Use a drill to start the holes for a dowel joint.

- While dowel joints have the advantage of being inconspicuous, they do not provide the structural strength of a simple butt joint.

- The end lap joint is made by sawing halfway through each piece of wood and then knocking out or sawing away half of this area (Fig. 3).

- Now you can put the two pieces of wood together with screws, nails, corrugated nails, etc.

- The end lap joint provides a great deal of strength, but the heads of the nails, screws or corrugated nails are exposed.



FIG. 3 - The end lap joint provides a great deal of strength.



FIG. 4 - The through mortise and tenon joint is easy to make with a power saw and a dado head.



FIG. 5 - Use a mortising chisel on a drill press to make an open mortise and tenon joint.



FIG. 6 - The conventional mitered joint is made by mitering each corner at a 45-degree angle.

- The through mortise and tenon joint is easy to make with a power saw and a dado head (Fig. 4). A through mortise and tenon joint is suitable for various woodworking jobs.

- To form this joint, saw a slot into one piece of wood. The end of the other piece of wood is then notched out to fit the slot in the first piece (Fig. 4).

- Insert the notched piece of wood into the slotted piece of wood and glue, nail or screw the piece into position.

- When making a through mortise and tenon joint, be sure to measure the areas to be notched and slotted before making any cuts.

- You can make an open mortise and tenon joint by cutting the slot or mortise only partway into one piece of wood. Then create a notched-out area on the other piece that fits into the slotted area in the first piece of wood (Fig. 5).

- The open mortise and tenon cut creates a stronger joint than the through mortise and tenon joint. It can easily be cut with a mortising chisel on a drill press.

- Although the open mortise and tenon joint provides more structural strength, it is a little more difficult to make than the through mortise and tenon joint. However, with a little practice and the proper tools, you can make either joint easily.

- The conventional miter joint is widely used for making corners in various types of woodwork (Fig. 6). However, it is not recommended where the joint is subject to excessive weight or unusual strain.

- The conventional miter joint is made by mitering each corner at a 45-degree angle (Fig. 6). If you'll be using many miter joints, you'll need a regular miter box or a homemade miter box.

- Use nails, screws or corrugated nails to attach the two pieces of wood in a conventional miter joint.

- The conventional miter joint is common for making trims around cabinet doors and other trim pieces.

- A miter joint with a spline is easy to make and adds great strength to a common miter joint (Fig. 7).

- First cut a regular 45-degree-angle miter joint. Then cut a groove in each end of the pieces to be mitered. Or if you prefer, you can lay out the 45-degree angle on each piece of wood. This will show you how deep the groove needs to be. Go ahead and cut the groove while the end of the wood is still square. This makes cutting the groove much safer and much easier. Next cut the 45-degree angle.

- After sawing the grooves, saw a spline to fit the grooves.

- Use a top-grade adhesive to hold the spline in the mitered joint in position. Or if appearance isn't important, it can be nailed or screwed into position.

- A newer version of the spline is a biscuit, a football-shaped spline. The biscuit requires a power biscuit jointer tool that is easy to use and produces excellent results. Biscuits can be used on almost any type of joint (Fig. 8).



FIG. 7 - A mitered joint with a spline adds great strength to the joint.



FIG. 8 - Biscuit joints can be used in any number of applications.

**Click on drawing above to view animation.**

 **Step # 2**

## JOINING A T OP PIECE OF WOOD T O A SIDE PIECE



FIG. 9 - You need a power saw to make a lock miter joint.

- In working with wood, all joints are not corner joints. You occasionally need to join a top piece of wood to a side piece.

- Again, the standard butt joint is the most commonly used (Fig. 1).

- The standard butt joint can be nailed or screwed together if appearance is not important. This provides a strong joint and is completely satisfactory for ordinary jobs.

- If you are an experienced handyman, you might want to use the lock miter joint for joining a top or bottom to side pieces of wood (Fig. 9). You need a power saw to make the lock miter joint.

- Accuracy is important when sawing the lock miter joint. When sawed correctly and properly grooved, the lock miter joint is strong and inconspicuous.

- The mitered rabbet joint is similar to the lock miter joint, and it too must be made with power equipment (Fig. 10). Accuracy in sawing and rabbeting is important.

IB-App-0525



FIG. 10 - The mitered rabbet joint is similar to the lock miter joint.



FIG. 11 - You can use ordinary hand tools to make a rabbet joint.



FIG. 12 - Only the skilled craftsman should undertake a box corner joint.



FIG. 13 - The milled corner joint creates a professional-looking corner with no end grain visible.

- The two pieces of wood on a mitered rabbet joint can be held together with screws, nails, adhesives or dowels.

- Regardless of how the mitered rabbet joint is secured, it provides an excellent joint with a professional look and a great deal of strength.

- The regular rabbet joint is much easier to make than the mitered rabbet joint. Although power equipment is helpful, you can make a regular rabbet joint with ordinary hand tools (Fig. 11).

- The rabbet can be cut into either the side piece or the top piece when two pieces of wood are joined with a rabbet joint.

- The position of the rabbet cut depends largely on where you want the half-section of grained end to appear. With a rabbet joint, the grained end of one piece of wood is completely hidden.

- Rabbet joints are normally held together with adhesives, but you can use screws, nails and dowels. Again, it is a matter of how important the appearance is to you.

- The box corner joint is one that should be undertaken only by the skilled craftsman (Fig. 12). It requires sawing a groove in one piece of wood and a tongue or flange in the other.

- The box corner joint provides a strong joint that can be held together with adhesives, nails or screws. In most cases, adhesive alone is used.

- Use power equipment to construct the box corner joint. If you have the required skill and time, this is a very strong corner joint and leaves no end grain showing.

- The milled corner joint also creates a corner with no end grain visible. This is highly desirable on some types of woodwork (Fig. 13).

- The milled corner joint is widely used with drawers. This joint is much stronger than the box corner joint and is less likely to crack.

- Use power equipment to make a milled corner joint. Be sure to saw the tongues and grooves accurately.

- The half-blind dovetail joint is used almost exclusively for making drawers (Fig. 14). Don't undertake this joint without some experience and good power tools.

- Hold together the half-blind dovetail joint with adhesives to provide an excellent joint with no end grain visible.

- You can make a complete open dovetail joint by simply cutting through the second piece of wood. This joint is equally strong, but the end grain is visible on both sides of the joint. You might or might not want this.



FIG. 14 - The half-blind dovetail joint is used
almost exclusively for drawers.

 

## JOINING ONE BOARD IN THE CENTER OF ANOTHER



FIG. 15 - You can use nails, screws or
adhesives to secure a butt joint.

<span style="color:red">Click on drawing above to
view animation.</span>



FIG. 16 - Make a dado joint by cutting a slot
into one piece of wood to match the end of
the other.

- Some woodworking jobs require a joint where the end of one board butts against the center of another. Again, you have a choice of several joints.

- The regular butt joint is again the most commonly used (Fig. 15). Secure this type of joint with nails, screws or adhesives.

- A butt joint provides a lot of strength, and if the heads of nails or screws are not objectionable, it will do the job well.

- To make a dado joint, cut a slot into one piece of wood to match the end of the other (Fig. 16). The dado joint is much stronger than the butt joint and creates a more professional appearance.

- You can cut a dado into the board with a dado head on a power saw, a regular handsaw, a dado plane or even a chisel and a mallet.

- Use wood screws, nails or dowels to hold dado joints.

- The stopped dado joint is a modified version of the regular dado joint (Fig. 17).

- The stopped dado joint is a little more difficult to make by hand, but is quite easy with the proper power tools.

- The stopped dado joint has a neater appearance than the regular dado joint because the front edge is uncut. Thus, the slotted area is not visible from the front side.

- Use ordinary wood adhesives, wood screws, nails or dowels to hold the two pieces of wood together in a stopped dado joint.

- The biscuit joint works quite well for joining one board to the center of another. For this joint, extra care must be taken to align the biscuit slots to ensure a straight center board (Fig. 18). Measure the work pieces carefully. Check the joint by assembling it without adhesive.



FIG. 17 - The stopped dado joint is a
modified version of the regular dado joint.



FIG. 18 - Careful planning, measuring and
cutting result in attractive strong joints.

## TOOL AND MATERIAL CHECKLIST

- ☐ Chisel
- ☐ Carpenter's Pencil
- ☐ Wood Screws
- ☐ Miter Box
- ☐ Vise
- ☐ Folding Rule
- ☐ Wood Adhesive
- ☐ Screwdriver
- ☐ Sandpaper
- ☐ Drill

- ☐ Power Saw
- ☐ Dado Head for Power Saw
- ☐ Hammer
- ☐ Corrugated Nails
- ☐ Mallet
- ☐ Handsaw
- ☐ Nails
- ☐ Dowels
- ☐ C-Clamp

Check your state and local codes before starting any project. Follow all safety precautions. Information in this document has been furnished by the National Retail Hardware Association (NRHA) and associated contributors. Every effort has been made to ensure accuracy and safety. Neither NRHA, any contributor nor the retailer can be held responsible for damages or injuries resulting from the use of the information in this document.

Ask for Other "Show-How" Instruction Sheets
Additional easy-to-use instruction sheets for home do-it-yourself projects are available from your local supplier of materials. Come in and ask for "Show-How" instructions when you get ready for that next handyman project!

IC-App-0528

## Making Strong Wood Joints

https://www.nrha.org/How-To/shelving/woodjoint/woodjoints.htm ▾

Feb 1, 2001 - A miter **joint** with a spline is **easy to make** and adds great strength to a common miter **joint** (Fig. 7). First cut a regular 45-degree-angle miter **joint**. Then cut a groove in each end of the pieces to be mitered. Or if you prefer, you can lay out the 45-degree angle on each piece of **wood**.

IC-App-0529

# Exhibit L

# Quizlet

## Woodworking Terms

**Like this study set?**

Create a free account to save it.

Create a free account

Maybe later

| Adhesive | A substance that is capable of bonding material together by surface attachment.  | ☆ |
|---|---|---|
| Air Dried | Lumber stacked and stored so that it is dried naturally by the exposure to air.  | ☆ |

IC-App-0530

| Allen Head | A screw head with a recess requiring a hexagon shaped key, used mainly on machinery. These may be in metric or SAE sizes.  | ☆ |
| --- | --- | --- |
| Annual Growth Ring | The layer of growth to the circumference of a tree in a season, easily recognizable in many woods by the difference in cells formed during the early and late parts of the season.  | ☆ |
| Apron | A frame around the base of a table to which the top and legs are fastened.  | ☆ |
| Arbor | A stub shaft on a machine to turn blades or other cutting wheels. | ☆ |
| Awl | Pointed instrument that looks like an ice pick, useful for marking positions when laying out a project.  | ☆ |
| Bark | The outer protective layer of a tree.  | ☆ |

IC-App-0531



| | | |
|---|---|---|
| **Birds-eye Figure** | A figure on wood, usually maple and a few other species, composed of many small rounded areas resembling a birds eye. <br><br> |  |
| **Biscuit Joint** | An oval shaped disk that when inserted in a slot with glue swells to form a tight bond. A special tool is required to cut the slot. <br><br> |  |
| **Board Foot** | Measurement of lumber equal to one square foot an inch thick or 144 cubic inches. Multiply width in inches X length in inches X thickness in inches, divide by 144 for total board feet. <br><br> |  |
| **Bookmatch** | Successive layers of veneer are arranged side by side to resemble a mirror image of each other. <br><br> |  |
| **Bow** | A warp along the length of a board. <br><br> |  |

IC-App-0532



| | | |
|---|---|---|
| Box Joint | Square shaped finger joints used to join pieces at right angles.  |  |
| Butt Joint | A joint where the edges of two boards are against each other.  |  |
| Branding Iron | A tool for burning a name or logo on to wood, electric or flame heated.  |  |
| Carbide Tipped | Extremely hard steel pieces with sharp cutting edges fastened to cutting tools such as saw blades, and router bits. |  |
| Chamfer | To bevel the corner of a board at a 45° angle.  |  |
| Check | A defect caused by uneven shrinking of the wood during drying, a checked board has splits which develop lengthwise across the growth rings.  |  |

IC-App-0533



| | | |
|---|---|---|
| Chuck | An attachment to hold work or a tool in a machine, lathe chucks and drill chucks are examples. <br><br>  |  |
| Collet | A type of chuck that accepts a fixed shaft size, commonly used on routers. <br><br>  |  |
| Common Grade Lumber | Lumber with obvious defects, used in construction framing. |  |
| Cross Cut | A cut which runs across the board, perpendicular to the grain. |  |
| Cupping | This is when the edges of a board bend with the grain away from the center to form a concave shape. <br><br>  |  |
| Dado | A groove in the face of a board, usually to accept another board at 90 degrees as in shelf uprights. <br><br>  |  |
| Deciduous | Trees that shed their foliage annually, commonly referred |  |

IC-App-0534

to as hardwood.



| | | |
|---|---|---|
| Dovetail Joint | A joint where the fingers are shaped like a doves tail, used to join pieces at 90 degrees.  |  |
| Dowel | A wood pin used to align and hold two adjoining pieces.  |  |
| Dressed Size | The dimension of lumber after being surfaced by a planer. |  |
| Epoxy Glue | A two part glue that practically glues anything to anything, including metal to metal.  |  |
| Face | When a board has one side that is wider than the other, the wider side is referred to as the face (as opposed to the edge). May also refer to the side that is to be visible in the finished item. |  |
| Face Frame | A flat frame attached to the front of a cabinet, usually to conceal the exposed edges of plywood, or to give a decorative appearance.  | |

IC-App-0535



| Featherboard | Pieces of wood with fingers used to hold material against a fence and or down against the table on power tools such as a table saw.  |  |
|---|---|---|
| Fence | A straight guide on a tool such as a table saw or router table to keep the material a set parallel distance from the blade or cutter.  |  |
| Fiddleback | Describes wood, usually maple or mahogany but can be any wood, with Curl or Tiger grain material with fine grain used in the manufacture of violins, hence the name. |  |
| Filler | A substance that is used the fill pores and irregularities on the surface of material to decrease the porosity before applying a finishing coat.  |  |
| Finger Joint | Long tapered fingers used to join material lengthwise, often used in manufacturing molding to join short lengths.  |  |

IC-App-0536

| Flat-sawn | A method of sawing lumber where the log is cut tangential to the growth rings, also called plain-sawn. | ☆ |
| Grain | The appearance, size and direction of the alignment of the fibers of the wood.  | ☆ |
| Green Lumber | Freshly cut lumber that has not been dried. | ☆ |
| Grit | The grade of particles in sandpaper or sharpening stones which determines the aggressiveness of the cut. | ☆ |
| Hardwood | Lumber from the group of trees with broad leaves, this has no reference to the actual hardness of the wood. | ☆ |
| Heartwood | The wood from the pith extending to the sapwood, darker in color due to gum, resins, and other materials which make it less susceptible to rot. | ☆ |
| Hinge | A mechanical device that connects two solid objects, allowing rotation between them.  | ☆ |
| Infeed | The side of a power tool where a board enters. | ☆ |
| Jig | A device used to hold work or act as a guide in manufacturing or assembly.  | ☆ |
| Kerf | The width of a saw cut, determined by the thickness and set of the blade. | ☆ |

IC-App-0537



| | | |
|---|---|---|
| Kick Back | This is when a workpiece is thrown back by a cutter, prevented using anti-kick back devices on power tools such as table saws. | ☆ |
| Kiln | A heated chamber for drying lumber where the air flow, heat and relative humidity can be controlled. | ☆ |
| Knot | The portion of a branch or limb that is embedded in the wood. | ☆ |
| Laminate | The product of bonding layers together as in beams or plywood. | ☆ |
| Linseed Oil | Is an amber-colored, fatty oil extracted from the cotyledon and inner coats of the linseed. Used to preserve or refinish wood. | ☆ |

IC-App-0538

| MDF | Medium density fiberboard, very stable underlay for counter tops etc. to be covered with laminate.  |  |
|---|---|---|
| Miter Box | An apparatus to guide a saw to make miter joints.  |  |
| Miter Gauge | A guide with an adjustable head that fits in a slot and slides across a power tool table to cut material at an angle.  |  |
| Miter Joint | Pieces are cut on an angle to make a joint.  |  |
| Molding (Moulding) | A strip of material with a profile cut on the facing edges, used for trimming.  |  |
| Mortise | A cavity or hole cut to allow a tenon to pass through to make a joint.  |  |

IC-App-0539



| | | |
|---|---|---|
| Muntin | A strip of wood or metal separating and holding panes of glass in a window or door.  |  |
| Nominal Size | The rough sawn dimension a finished piece of material is referred to, for example what is referred to as a 2 X 4 is actually 1 1/2" X 3 1/2". |  |
| Particle Board | A generic term for material manufactured from wood particles and bound together with glue.  |  |
| Pilot Bit | A router bit with a bearing at the end of the cutter that rides against the edge the material or a template to guide the cut.  |  |
| TPI | The number of teeth on a saw blade per inch.  |  |
| Pith | The soft core in the center of a log.  |  |

IC-App-0540



| | | |
|---|---|---|
| Plain Sawn | Boards are sliced from the log with the cut tangent to the growth rings.  |  |
| Plumb | A term used to describe something that is perfectly perpendicular to the earth relative to gravity. A plumb bob on the end of a string will give you a line that is plumb or straight up and down. |  |
| Plywood | A glued wood panel usually 4' X 8' made up of thin layers of wood laid at right angles to each other.  |  |
| Pocket Hole | A hole drilled on an angle with a step bit to make a butt joint. The larger hole is for the screw head to enter, and the smaller hole is for the shank.  |  |
| Quarter Sawn | Boards which have been cut so that the wide surfaces are approximately 90 degrees to the annual growth rings, this type of cut reduces cupping of the boards.  | |

IC-App-0541

| Rabbet | A groove in the edge or face of a board, usually a rabbet is referred to on the edge, a dado is referred to on the face.  | ☆ |
| Rail | A horizontal member between chair legs or between styles or vertical members of a door frame.  | ☆ |
| Raised Grain | The roughened condition of sanded wood when the hard latewood rises above the soft earlywood when moisture is applied. | ☆ |
| Rip Cut | A cut which runs through the length of a board parallel to the grain. | ☆ |
| Rough Lumber | Boards which are sawn, edged and trimmed but not run through a planer.  | ☆ |
| Sapwood | The wood lighter colored wood on the outside of a log, this wood is more susceptible to rot than heartwood.  | ☆ |
| Seasoning | The time it takes for wood to dry. Wood air-dries and takes one year for every inch of thickness. It refers to a year, a season. | ☆ |

IC-App-0542

| Shellac | Resin flakes dissolved in alcohol used as a finish for wood.  ☆ |



| Snipe | The tendency to gouge the trailing end of material when running it through a joiner. ☆ |

| Softwood | Wood manufactured from trees with needles or scale like leaves, has no reference to actual hardness of the wood. ☆ |

| Spline | A thin strip of wood fitted between two grooves to make a joint. ☆ |

| Stickers | Strips placed between layers of lumber for drying. ☆ |

| Style or Stile | A vertical member of a door framework attached to the horizontal rails. ☆ |





IC-App-0543



| | | |
|---|---|---|
| Tack Cloth or Tack Rag | A cloth permeated with a sticky substance to wipe up the dust from sanding when finishing a project.  |  |
| Tearout | The tendency to splinter the trailing edge of material when cutting across the grain.  |  |
| Tenon | A projection made at the end of a board, by cutting away the wood around it, to insert into a mortise to make a joint.  |  |
| Tongue and Groove | A joinery method where a board has a protruding tongue on one edge and a groove on the other, the tongue of one board fits into the groove of the next.  |  |
| Torx Head | A screw head requiring a driver in the shape of a star.  |  |

IC-App-0544

| Varnish | A liquid preparation that dries to a hard lustrous coating.  |  |
|---|---|---|
| Vee Joint | Tongue and groove boards with their top corners beveled so when the two boards come together a V is formed.  |  |
| Veneer | A thin layer of expensive wood bonded to a thicker piece of cheaper plywood to give the appearance of the expensive wood but at a reduced price.  |  |
| Warp | To bent or twist to the pull of the grain in the wood.  |  |

IC-App-0545

Woodworking Terms Flashcards | Quizlet

https://quizlet.com/3894414/woodworking-terms-flash-cards/ ▾

Feb 1, 2001 - **Biscuit** Joint. An **oval** shaped disk that when inserted in a **slot** with glue swells to form a tight bond. A special tool is required to cut the **slot**. Board Foot.

# Exhibit M



SINCE 1828   MENU

<sup>1</sup>**compress**

*verb*  |  com·press  |  \kəm-ˈpres\

Popularity: Bottom 40% of words

**Tip:** Synonym Guide ⌄

**Examples:** COMPRESS in a Sentence ⌄

## Definition of COMPRESS

### transitive verb

**1**  :  to press or squeeze together

**2**  :  to reduce in size, quantity, or volume as if by squeezing • *compress* a computer file

### intransitive verb

 :  to undergo compression

## NEW! Time Traveler

First Known Use: 14th century

**SEE WORDS FROM THE SAME YEAR**

See *compress* defined for English-language learners

## Explore M-W

## Examples of COMPRESS in a Sentence

*compress* the air in a closed chamber

Her lips *compressed* into a frown.

a material that *compresses* easily

This type of file *compresses* easily.

## Recent Examples of COMPRESS from the Web

The deadly drug does its work instantly, *compressing* the person's lungs, and causing

IC-App-0548

The electricity used to *compress* the air could be produced by wind turbines, as is planned for The Bethel Energy Center in West Texas.

> — Molly A. Seltzer, *Smithsonian*, "Why Salt Is This Power Plant's Most Valuable Asset," 4 Aug. 2017

In the three episodes broadcast thus far, Game of Thrones is fulfilling this prophecy and then some: characters are flat, timelines have been *compressed*, the dialogue is cheesy, and plots are painfully predictable.

> — Julie Kosin, *Harper's BAZAAR*, "Game of Thrones Season 7 Is a Disappointment So Far," 2 Aug. 2017

*These example sentences are selected automatically from various online news sources to reflect current usage of the word 'compress.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors.* Send us feedback.

## Origin and Etymology of COMPRESS

Middle English, from Late Latin *compressare* to press hard, frequentative of Latin *comprimere* to compress, from *com-* + *premere* to press — more at PRESS

## COMPRESS Synonyms

Synonyms

capsule, capsulize, collapse, compact, condense, constrict, constringe, contract, narrow (down), squeeze, telescope

## Synonym Discussion of COMPRESS

CONTRACT, SHRINK, CONDENSE, COMPRESS, CONSTRICT, DEFLATE mean to decrease in bulk or volume. CONTRACT applies to a drawing together of surfaces or particles or a reduction

IC-App-0549

paragraph) COMPRESS implies a pressing into a small compass and definite shape usually against resistance. ⟨• *compressed* cotton into bales⟩ CONSTRICT implies a tightening that reduces diameter. ⟨• the throat is *constricted* by a tight collar⟩ DEFLATE implies a contracting by reducing the internal pressure of contained air or gas. ⟨• *deflate* the balloon⟩

# ₂compress

*noun*  |  com·press  |  \ˈkäm-ˌpres\

## Definition of COMPRESS

1  : a folded cloth or pad applied so as to press upon a body part

2  : a machine for compressing

---

See *compress* defined for English-language learners

## Recent Examples of COMPRESS from the Web

And every day, her keepers apply cold *compresses* or ice her joints to help minimize inflammation.

— Carolyn Wilke, *sacbee*, "A 14-foot-tall arthritis patient receives treatment at the Sacramento Zoo," 18 Aug. 2017

The American Red Cross offers a checklist for a more robust first-aid kit that includes a cold *compress*, non-latex gloves, scissors and more.

— *OregonLive.com*, "16 things to have in your car for a solar eclipse road trip," 9 Aug. 2017

Pro tip: Put them in the fridge for a few hours before applying them for the additional benefit of a cold *compress*.

— Eden Univer, *Cosmopolitan*, "Exactly How to Make Your Eyes Look Bigger and Brighter," 24

These example sentences are selected automatically from various online news sources to reflect current usage of the word 'compress.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors. *Send us feedback.*

## Origin and Etymology of COMPRESS

Middle French *compresse*, from *compresser* to compress, from Late Latin *compressare*

## COMPRESS Defined for English Language Learners

# compress

*verb*

### Definition of COMPRESS for English Language Learners

:  to press or squeeze (something) so that it is smaller or fills less space

:  to make (something) shorter or smaller

*computers* :  to reduce the size of (a computer file) by using special software

# compress

*noun*

### Definition of COMPRESS for English Language Learners

:  a folded cloth that is pressed against a part of the body to reduce pain or stop bleeding from an injury

IC-App-0551

# ₁ compress

*verb* | com·press | \kəm-ˈpres\

## Definition of COMPRESS for Students

**compressed;   compressing**

1   **:** to press or squeeze together • *compressing* his lips

2   **:** to reduce in size, quantity, or volume by or as if by pressure • The pump is for *compressing* air.

# ₂ compress

*noun* | com·press | \ˈkäm-ˌpres\

## Definition of COMPRESS for Students

**:** a pad (as of folded cloth) applied firmly to a part of the body (as to stop bleeding)

## Medical Dictionary

# ₁ compress

*transitive verb* | com·press | \kəm-ˈpres\

## Medical Definition of COMPRESS

1   **:** to press or squeeze together • a ligament in the wrist was *compressing* a nerve

2   **:** to reduce in size or volume as if by squeezing • *compress* air

IC-App-0552

*noun*  |  com·press  |  \ˈkäm-ˌpres\

## Medical Definition of COMPRESS

1  :  a covering consisting usually of a folded cloth that is applied and held firmly by the aid of a bandage over a wound dressing to prevent oozing

2  :  a folded wet or dry cloth applied firmly to a part (as to allay inflammation)

## Learn More about COMPRESS

See words that rhyme with *compress*

Thesaurus: All synonyms and antonyms for *compress*

Spanish Central: Translation of *compress*

Nglish: Translation of *compress* for Spanish speakers

Britannica English: Translation of *compress* for Arabic speakers

## Seen and Heard

What made you want to look up *compress*? Please tell us where you read or heard it (including the quote, if possible).

**+ SHOW** 3 COMMENTS

## Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

MERRIAM-WEBSTER UNABRIDGED

IC-App-0553

# amanuensis

one employed to write from dictation

Get Word of the Day daily email!

Your email address                    SUBSCRIBE

## TRENDING NOW

**1 bodega**
"Don't mess with the beloved bodega."

**2 carceral**
Of, relating to, or suggesting a jail or prison

**3 allegory**
No spoilers!

**4 hurricane**
'A tropical cyclone'

**5 rescind**
To take away; cancel; repeal

**SEE ALL**

## BROWSE DICTIONARY

compresence

compresent

## compress

compressed

compressed air

IC-App-0554

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

Which is a synonym of **fuliginous**?

| | |
|---|---|
| murky | joyous |
| archaic | cavernous |

Name That Thing

Test your visual vocabulary with our 10-question challenge!

**TAKE THE QUIZ**

Word Winder's CrossWinder

Test Your Knowledge - and learn some interesting things along the way.

**TAKE THE QUIZ**

**WORDS AT PLAY**

alt-59bad350d88f1

## Welcome to the New Words

From 'hive mind' to 'sriracha'

image2143067130

## Origins

Class is in session.

image624847743

### 8 Foods Named After Real People

A delicious collection of eponymous foods

## ASK THE EDITORS

video-title-words-of-the-year-1066

### Words of the Year: 1066

Or, Why Pig Meat is Called 'Pork' and Cow Meat is Called 'Beef'

payday

IC-App-0556

## How Often Is 'Biweekly'?

Don't get us started on 'bimonthly'

video-irregardless-grammar-peeve-blend-of-the-synonyms-irrespective-and-regardless

## Irregardless

It is in fact a real word (but that doesn't mean you should use it).

### WORD GAMES

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

## Challenging Vocabulary Quiz Returns!

No tricks, just difficult words.

**TAKE THE QUIZ**

## Name that Color!

NEW! Additional colors! More
obscure than before!

**TAKE THE QUIZ**

Name That Thing

## Name That Thing

Test your visual vocabulary with
our 10-question challenge!

**TAKE THE QUIZ**

## Learn a new word every day. Delivered to your inbox!

Your email address

### OTHER MERRIAM-WEBSTER DICTIONARIES

SPANISH CENTRAL

LEARNER'S ESL DICTIONARY

WORDCENTRAL FOR KIDS

IC-App-0558

# Exhibit N



SINCE 1828   MENU

[1]collapse

*verb*  |  col·lapse  |  \kə-ˈlaps\

Popularity: Top 20% of words

**Examples:** COLLAPSE in a Sentence ⌄

## Definition of COLLAPSE

**collapsed;   collapsing**

### intransitive verb

1   :  to fall or shrink together abruptly and completely :  fall into a jumbled or flattened mass through the force of external pressure • a blood vessel that *collapsed*

2   :  to break down completely :  DISINTEGRATE
- … his case had *collapsed* in a mass of legal wreckage … —Erle Stanley Gardner

3   :  to cave or fall in or give way • The bridge *collapsed*.

4   :  to suddenly lose force, significance, effectiveness, or worth • fears that the currency may *collapse*

5   :  to break down in vital energy, stamina, or self-control through exhaustion or disease • She came home from work and *collapsed* on the sofa : *especially* : to

IC-App-0559

## transitive verb

1 :  to cause to collapse • buildings *collapsed* by an earthquake

2 :  CONDENSE • *collapse* several stories into one

—collapsibility       \kə-ˌlap-sə-ˈbi-lə-tē\ *noun*

—collapsible       \kə-ˈlap-sə-bəl\ *adjective*

See *collapse* defined for English-language learners

See *collapse* defined for kids

## Explore Merriam-Webster

## Examples of COLLAPSE in a Sentence

The roof *collapsed* under a heavy load of snow.

IC-App-0560

She came home from work and *collapsed* on the sofa.

The crying child ran to his mother and *collapsed* in her arms.

The civilization *collapsed* for reasons that are still unknown.

He warned that such measures could cause the economy to *collapse*.

My Stylist

—

SHE GETS ME
WEEKEND READY.

Free shipping. Free Returns Every Time.

## Recent Examples of COLLAPSE from the Web

Under pressure from Trump, GOP senators were trying to revive their health care bill, which *collapsed* twice.

— Alan Fram, *The Seattle Times*, "GOP senators in last-ditch try to rescue health care bill," 20 July 2017

Under pressure from Trump, GOP senators were trying to revive their health care bill, which *collapsed* twice.

— *Washington Post*, "House GOP defiant on health bill amid Senate uncertainty," 20 July 2017

The telegrams describing their operation were found in 1945 as Hitler's regime *collapsed*.

— Robert Hutton, *Bloomberg.com*, "Churchill Tried to Cover Up Nazi Plan to Woo Former King," 19 July 2017

*These example sentences are selected automatically from various online news sources to reflect current usage of the*

## Origin and Etymology of COLLAPSE

Latin *collapsus*, past participle of *collabi*, from *com- + labi* to fall, slide — more at SLEEP

## COLLAPSE Synonyms

Synonyms

buckle, cave (in), crumple, founder, give, go, go out, implode, tumble, yield, give way

<sub>2</sub># collapse

*noun*

## Definition of COLLAPSE

1   **a :**  a breakdown in vital energy, strength, or stamina • suffered a mental *collapse*

    **b :**  a state of extreme prostration and physical depression (as from circulatory failure or great loss of body fluids)

    **c :**  an airless state of all or part of a lung originating spontaneously or induced surgically

2   :  the act or action of collapsing
    • the cutting of many tent ropes, the *collapse* of the canvas —Rudyard Kipling

3   :  a sudden failure :  BREAKDOWN, RUIN • the *collapse* of the government

4   :  a sudden loss of force, value, or effect

IC-App-0562

## Examples of COLLAPSE in a Sentence

The structure is in danger of *collapse*.

She was on the verge of *collapse*.

The country has endured civil war and economic *collapse*.

## Recent Examples of COLLAPSE from the Web

Building *collapses* are common in India during the monsoon season, which is June to September.

— *Washington Post*, "Building collapses in India, killing at least 12; 25 trapped," 31 Aug. 2017

Look, nothing says Tehran must respond to a *collapse* of the Iran deal by building nuclear weapons.

— *chicagotribune.com*, "Trump's next self-inflicted crisis is a nuclear Iran," 30 Aug. 2017

In 2009, Cohn reportedly took the same tactics that led to the subprime mortgage *collapse* and offered to apply them in Greece as that country's economy was crumbling.

— Thomas Macmillan, *Cosmopolitan*, "Who Is Gary Cohn? 9 Things You Should Know About the White House Economic Adviser.," 25 Aug. 2017

*These example sentences are selected automatically from various online news sources to reflect current usage of the word 'collapse.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors.* <u>Send us feedback</u>.

## Origin and Etymology of COLLAPSE

see <sup>1</sup>COLLAPSE

see [1]COLLAPSE

IC-App-0563

## COLLAPSE Synonyms

Synonyms

burnout, fatigue, exhaustion, frazzle, lassitude, prostration, tiredness, weariness

## COLLAPSE Defined for English Language Learners

# collapse
*verb*

### Definition of COLLAPSE for English Language Learners

:  to break apart and fall down suddenly

:  to fall down or become unconscious because you are sick or exhausted

:  to completely relax the muscles of your body because you are very tired, upset, etc.

# collapse
*noun*

### Definition of COLLAPSE for English Language Learners

:  a situation or occurrence in which something (such as a bridge, building, etc.) suddenly breaks apart and falls down

:  a situation or occurrence in which someone suddenly falls down or becomes unconscious because of being sick or exhausted

IC-App-0564

# COLLAPSE Defined for Kids

## ₁collapse

*verb* | col·lapse | \kə-ˈlaps\

### Definition of COLLAPSE for Students

**collapsed; collapsing**

1    : to break down completely : fall in • He escaped from the mine before it *collapsed*.

2    : to completely relax • I *collapsed* onto the sofa.

3    : to suffer a physical or mental breakdown • She *collapsed* from exhaustion.

4    : to fail or stop working suddenly • The ancient civilization *collapsed*.

5    : to fold together • The umbrella *collapses* to a small size.

## ₂collapse

*noun*

### Definition of COLLAPSE for Students

: the act or an instance of breaking down • The building is in danger of *collapse*.

## Medical Dictionary

## ₁collapse

IC-App-0565

collapsed;    collapsing

### intransitive verb

1   :  to fall or shrink together abruptly and completely :  fall into a jumbled or
    flattened mass through the force of external pressure • a blood vessel that
    *collapsed*

2   :  to break down in vital energy, stamina, or self-control through exhaustion or
    disease; *especially* :  to fall helpless or unconscious

### transitive verb

:  to cause to collapse • *collapsing* an infected lung

—collapsibility       \-͵lap-sə-ˈbil-ət-ē\ *noun*

—collapsible       \-ˈlap-sə-bəl\ *adjective*

## ₂collapse
*noun*

### Medical Definition of COLLAPSE

1   :  a breakdown in vital energy, strength, or stamina :  complete sudden
    enervation
        • the daughter's mental *collapse* through mounting frustration —Leslie Rees

2   :  a state of extreme prostration and physical depression resulting from
    circulatory failure, great loss of body fluids, or heart disease and occurring
    terminally in diseases such as cholera, typhoid fever, and pneumonia

3   :  an airless state of a lung of spontaneous origin or induced surgically — see
    ATELECTASIS

4   :  an abnormal falling together of the walls of an organ • *collapse* of blood

IC-App-0566

## Learn More about COLLAPSE

See words that rhyme with *collapse*

Thesaurus: All synonyms and antonyms for *collapse*

Spanish Central: Translation of *collapse*

Nglish: Translation of *collapse* for Spanish speakers

Britannica English: Translation of *collapse* for Arabic speakers

## Seen and Heard

What made you want to look up *collapse*? Please tell us where you read or heard it (including the quote, if possible).

**+ SHOW** 3 COMMENTS

## Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

MERRIAM-WEBSTER UNABRIDGED

### WORD OF THE DAY

# amanuensis

one employed to write from dictation

Get Word of the Day daily email!

IC-App-0567

**1** bodega
"Don't mess with the beloved bodega."

**2** carceral
Of, relating to, or suggesting a jail or prison

**3** allegory
No spoilers!

**4** hurricane
'A tropical cyclone'

**5** rescind
To take away; cancel; repeal

**SEE ALL**

**BROWSE DICTIONARY**

colla parte

collapsar

# collapse

collapse breccia

collapse therapy

**TEST YOUR VOCABULARY**

Challenging Vocabulary Quiz Returns!

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

Which is a synonym of **fuliginous**?

| archaic | murky |
|---------|-------|
| joyous | cavernous |

IC-App-0568

Word
Winder's
CrossWinder

Test Your Knowledge - and learn some interesting things along the way.

**TAKE THE QUIZ**

## WORDS AT PLAY

alt-59bad350d88f1

### Welcome to the New Words

From 'hive mind' to 'sriracha'

image2143067130

### 9 Slang Words With Academic Origins

Class is in session.

image624847743

## 8 Foods Named After Real People

A delicious collection of eponymous foods

### ASK THE EDITORS

video-title-words-of-the-year-1066

## Words of the Year: 1066

Or, Why Pig Meat is Called 'Pork' and Cow Meat is Called 'Beef'

payday

## How Often Is 'Biweekly'?

Don't get us started on 'bimonthly'

## Irregardless

It is in fact a real word (but that doesn't mean you should use it).

W O R D   G A M E S

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

## Challenging Vocabulary Quiz Returns!

No tricks, just difficult words.

**TAKE THE QUIZ**

name-that-color-logo

## Name that Color!

NEW! Additional colors! More

IC-App-0571

### Name That Thing

Test your visual vocabulary with
our 10-question challenge!

**TAKE THE QUIZ**

## Learn a new word every day. Delivered to your inbox!

Your email address

### OTHER MERRIAM-WEBSTER DICTIONARIES

SPANISH CENTRAL

LEARNER'S ESL DICTIONARY

WORDCENTRAL FOR KIDS

VISUAL DICTIONARY

SCRABBLE® WORD FINDER

MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY

BRITANNICA ENGLISH - ARABIC TRANSLATION

NGLISH - SPANISH-ENGLISH TRANSLATION

### FOLLOW US

IC-App-0572

# Exhibit O

 SINCE 1828    MENU

## ₁ support

*verb*  |  sup·port  |  \sə-ˈpȯrt\

Popularity: Top 10% of words   |   Updated on: 26 Jul 2017

**Tip:** Synonym Guide  ⌄

**Examples:** SUPPORT in a Sentence  ⌄

## Definition of SUPPORT

### transitive verb

**1**  :  to endure bravely or quietly :  BEAR

**2**  **a** (1) :  to promote the interests or cause of (2) :  to uphold or defend as valid or right :  ADVOCATE • *supports* fair play (3) :  to argue or vote for • *supported* the motion to lower taxes
**b** (1) :  ASSIST, HELP • bombers *supported* the ground troops (2) :  to act with (a star actor) (3) :  to bid in bridge so as to show support for

**c** :  to provide with substantiation :  CORROBORATE • *support* an alibi

**3**  **a** :  to pay the costs of :  MAINTAIN • *support* a fam
**b** :  to provide a basis for the existence or subsis

•  the island could probably *support* three —*A*

•  *support* a habit


LEARN MORE FROM M-W

**Words of the Year: 1066**

IC-App-0573

**5**  :  to keep from fainting, yielding, or losing courage :  COMFORT

**6**  :  to keep (something) going

    —**supportability**    \sə-ˌpȯr-tə-ˈbi-lə-tē\ *noun*

    —**supportable**    \-ˈpȯr-tə-bəl\ *adjective*

    —**supportive**    \-ˈpȯr-tiv\ *adjective*

    —**supportiveness**    \-nəs\ *noun*

See *support* defined for English-language learners

See *support* defined for kids

# Read the Latest from M-W

She no longer *supports* the war.

The senator says that he *supports* the proposed legislation.

Which presidential candidate do you *support*?

The study is *supported* by the American Medical Association.

The country's citizens were asked to *support* the war effort.

Her friends *supported* her by signing her petition.

The charity *supports* needy families.

Bombers were called in to *support* the ground troops.

The planet's atmosphere cannot *support* human life.



My Stylist

—

SHE GETS ME
**TIME WITH MY KIDS.**

## Recent Examples of SUPPORT from the Web

Now, to *support* animals in need after Hurricane Harvey, the MuttNation team has been on the ground in Houston since Tuesday, August 29th, working to help local shelters.

— *Southern Living*, "Animal Rescue Groups in Texas Need Your Help—Here's What You Can Do," 30 Aug. 2017

The S&WB also argued it had not been given enough time to uncover evidence to *support* its case.

On hand to *support* the artist was Shant Sahakian, commissioner on the Glendale Art and Culture Commission and Glendale Unified board member.

— Ruth Sowby, *Glendale News-Press*, "On the Town: Bingo night sells out, raises funds for veterans' programs," 29 Aug. 2017

*These example sentences are selected automatically from various online news sources to reflect current usage of the word 'support.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors.* <u>Send us feedback</u>.

## Origin and Etymology of SUPPORT

Middle English, from Anglo-French *supporter*, from Late Latin *supportare*, from Latin, to transport, from *sub-* + *portare* to carry — more at FARE

## SUPPORT Synonyms

Synonyms

advocate, back, champion, endorse (*also* indorse), patronize, plump (for), plunk (for) *or* plonk (for), go in for, go to bat for, hold a brief for, stand up for, stick up for, foot

## Synonym Discussion of SUPPORT

SUPPORT, UPHOLD, ADVOCATE, BACK, CHAMPION mean to favor actively one that meets opposition. SUPPORT is least explicit about the nature of the assistance given. ⟨• *supports* waterfront development⟩ UPHOLD implies extended support given to something attacked. ⟨• *upheld* the legitimacy of the military action⟩ ADVOCATE stresses urging or pleading. ⟨• *advocated* prison reform⟩ BACK suggests supporting by lending assistance to one failing or falling. ⟨• refusing to *back* the call for sanctions⟩ CHAMPION suggests publicly defending one unjustly attacked or too weak to advocate his or her

IC-App-0576

# <sub>2</sub> support

*noun*

## Definition of SUPPORT

1    **a :**  the act or process of *supporting* **:**  the condition of being *supported*

     **b :**  assistance provided by a company to users of its products • customer *support*

2    **:**  one that *supports* —often used attributively • a *support* staff

3    **:**  sufficient strength in a suit bid by one's partner in bridge to justify raising the suit

---

See *support* defined for English-language learners

## Examples of SUPPORT in a Sentence

The team gets a lot of *support* from its fans.

I'd like to thank my parents for all of their love and *support* over the years.

He depended on his wife for emotional *support*.

He applied for financial *support* from the state.

the company's friendly *support staff*

Inspectors found that some of the bridge's *supports* were weak.

She *used* my arm as a *support* and limped to the chair.

These sneakers are designed to give your feet extra *support*.

IC-App-0577

National had 44 percent *support* in a poll published Aug. 17.

— Tracy Withers, *Bloomberg.com*, "Housing Affordability Fires Up New Zealand's Voters," 29 Aug. 2017

In large part, the Newseum gets *support* from the Freedom Forum, a nonprofit that focuses on First Amendment advocacy and education.

— Sophie Haigney, *New York Times*, "Newseum's Leader Resigns Amid Review of Finances," 29 Aug. 2017

As Americans nationwide band together to help show *support* for Hurricane Harvey victims in Texas, social media has given us a glimpse of the incredible efforts of heroic citizens already on the ground in Houston.

— *Southern Living*, "These Incredible Everyday Heroes Are Saving Lives Through Hurricane Harvey," 28 Aug. 2017

*These example sentences are selected automatically from various online news sources to reflect current usage of the word 'support.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors. Send us feedback.*

## First Known Use of SUPPORT

14th century

## SUPPORT Synonyms

Synonyms

brace, buttress, mount, mounting, prop, reinforcement, shore, spur, stay, underpinning

### Financial Definition of SUPPORT

IC-App-0578

*noun*

## What It Is

In technical trading analysis, **support** is a lower limit in a price channel in which a security's price tends to stay.

## How It Works

Price channels can slope up (indicating <u>bullish</u> sentiment) or down (indicating <u>bearish</u> sentiment); they don't have to simply go "sideways." The important geometric characteristic is that the <u>resistance</u> lines (which are the opposite of support lines; they are the upper limits of the price channel) and support lines are parallel, as shown in this <u>price channel</u> for ChevronTexaco (CVX). The channel lines themselves are often based on multiday moving averages or logarithmic scales that reflect price movements in percentage <u>terms</u>. However, technical trading is as much an art as it is a science, and so one technical trader's price channel might be different from another's.

When a <u>stock</u>'s price touches or goes below the support, this may signal a trend change, which is why the support level is very important to technical traders.



## Why It Matters

IC-App-0579

breakout). For example, a technical trader might buy when a <u>stock</u> hits the support level of an upward-sloping <u>price channel</u>; similarly, traders hope to be already out of a stock before it hits the support level on a downward-sloping price channel.

*Source: <u>Investing Answers</u>*

## Phrases Related to SUPPORT

### Related Phrases

in support of

means of support

moral support

supporting cast

technical/tech support

visible means of support

## SUPPORT Defined for English Language Learners

# support
*verb*

### Definition of SUPPORT for English Language Learners

:  to agree with or approve of (someone or something)

:  to show that you approve of (someone or something) by doing something

:  to give help or assistance to (someone or something)

*noun*

## Definition of SUPPORT for English Language Learners

: the act of showing that you believe that someone or something is good or acceptable : approval of someone or something

: the act of helping someone by giving love, encouragement, etc.

: help that is given in the form of money or other valuable things

## SUPPORT Defined for Kids

# ¹support

*verb* | sup·port | \sə-ˈpȯrt\

## Definition of SUPPORT for Students

**supported;    supporting**

1    : to hold up or in position : serve as a foundation or prop for • Posts *support* the porch roof.

2    : to take sides with : FAVOR • Which candidate do you *support*?

3    : to provide evidence for : VERIFY • They cannot *support* this claim.

4    : to pay the costs of : MAINTAIN • His income *supports* a large family.

5    : to keep going : SUSTAIN • There is not enough air to *support* life.

6    : to provide help or encouragement to • My friends *supported* me while I was sick.

    —**supporter** *noun*

IC-App-0581

*noun*

## Definition of SUPPORT for Students

1 : the act of supporting : the condition of being supported

2 : someone or something that supports

## Medical Dictionary

### [1]support

*transitive verb* | sup·port | \sə-ˈpō(ə)rt, -ˈpȯ(ə)rt\

## Medical Definition of SUPPORT

1 : to hold up or serve as a foundation or prop for

2 : to maintain in condition, action, or existence • *support* respiration • *support* life

### [2]support
*noun*

## Medical Definition of SUPPORT

1 : the act or process of supporting : the condition of being supported
 • respiratory *support*

2 : SUPPORTER

IC-App-0582

*transitive verb*   |   sup·port

## Legal Definition of SUPPORT

1     **a :** to promote the interests or cause of

      **b :** to uphold or defend as valid or right

      **c :** to argue or vote for

2     **:** to provide with substantiation or corroboration • *support* an alibi

3     **:** to provide with the means of livelihood (as housing, food, or clothing) especially in accordance with an agreement or court order

4     **:** to hold up or in position **:** maintain the physical integrity of • the right to have one's land *supported* by the underlying land

# 2 support

*noun*

## Legal Definition of SUPPORT

1     **:** the act or process of supporting **:** the condition of being supported • pledged the candidate their *support*

2     **:** a means of obtaining the necessities of life (as food, shelter, and clothing) **:** a source of livelihood especially in the form of alimony or child support

3     **:** something that provides support

## Learn More about SUPPORT

See words that rhyme with *support*

IC-App-0583

Britannica English: Translation of *support* for Arabic speakers

## Seen and Heard

What made you want to look up *support*? Please tell us where you read or heard it (including the quote, if possible).

**+ SHOW** 24 COMMENTS

## Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

MERRIAM-WEBSTER UNABRIDGED

---

### WORD OF THE DAY

# amanuensis

one employed to write from dictation

Get Word of the Day daily email!

Your email address                                   SUBSCRIBE

---

### TRENDING NOW

**1** bodega
"Don't mess with the beloved bodega."

No spoilers!

**4**   hurricane
'A tropical cyclone'

**5**   rescind
To take away; cancel; repeal

**SEE ALL**

**BROWSE DICTIONARY**

supply-side economics

supply teacher

## support

supportance

supportation

**TEST YOUR VOCABULARY**

Challenging Vocabulary Quiz Returns!

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

Which is a synonym of **fuliginous**?

| murky | cavernous |
|-------|-----------|
| joyous | archaic |

Name That Thing

Test your visual vocabulary with our 10-question challenge!

**TAKE THE QUIZ**

Word

Test Your Knowledge - and learn some interesting things along the way.

## WORDS AT PLAY

alt-59bad350d88f1

### Welcome to the New Words

From 'hive mind' to 'sriracha'

image2143067130

### 9 Slang Words With Academic Origins

Class is in session.

image624847743

A delicious collection of
eponymous foods

ASK THE EDITORS

video-title-words-of-the-year-1066

## Words of the Year: 1066

Or, Why Pig Meat is Called 'Pork'
and Cow Meat is Called 'Beef'

payday

## How Often Is 'Biweekly'?

Don't get us started on
'bimonthly'

video-irregardless-grammar-peeve-
blend-of-the-synonyms-irrespective-
and-regardless

IC-App-0587

## Irregardless

It is in fact a real word (but that doesn't mean you should use it).

### WORD GAMES

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

## Challenging Vocabulary Quiz Returns!

No tricks, just difficult words.

**TAKE THE QUIZ**

name-that-color-logo

## Name that Color!

NEW! Additional colors! More obscure than before!

**TAKE THE QUIZ**

Name That Thing

IC-App-0588

## Name That Thing

Test your visual vocabulary with our 10-question challenge!

**TAKE THE QUIZ**

## Learn a new word every day. Delivered to your inbox!

Your email address

### OTHER MERRIAM-WEBSTER DICTIONARIES

SPANISH CENTRAL

LEARNER'S ESL DICTIONARY

WORDCENTRAL FOR KIDS

VISUAL DICTIONARY

SCRABBLE® WORD FINDER

MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY

BRITANNICA ENGLISH - ARABIC TRANSLATION

NGLISH - SPANISH-ENGLISH TRANSLATION

### FOLLOW US

Browse the Dictionary:   A   B   C   D   E   F   G   H   I   J   K   L   M   N   O   P   Q   R   S   T   U   V   W   X   Y   Z   0-9

IC-App-0589

# Exhibit P



SINCE 1828    MENU

# centerline

*noun* | cen·ter·line | \-ˈlīn, -ˌlīn\

Popularity: Bottom 30% of words

## Definition of CENTERLINE

: a real or imaginary line that is equidistant from the surface or sides of something

## NEW! Time Traveler

First Known Use: 1807

**SEE WORDS FROM THE SAME YEAR**

See *centerline* defined for kids

## Read the Latest from M-W



**Welcome to the New Words**



**Challenging Vocabulary Quiz Returns!**



**Trending: 'Bodega' Startup Draws Criticism, Mockery**



**9 Slang ... Academ...**

IC-App-0590

## Recent Examples of CENTERLINE from the Web

On the *centerline* of the eclipse path, the totality (the time the sun is totally eclipsed by the moon) will last a maximum of 2 minutes and 40 seconds.

— Vincent Crampton, *OrlandoSentinel.com*, "Staring at the sun? Get some eclipse glasses," 16 Aug. 2017

The motorcyclist was driving a Kawasaki east on U.S. 20 near milepost 93 when a 2015 Nissan Altima traveling the opposite direction drifted across the *centerline*, Capt.

— Carli Brosseau, *OregonLive.com*, "Motorcyclist from Hillsboro dies from injuries in crash with car," 29 July 2017

The only fatal accident on the highway north of Turnagain Pass this year happened on March 6 — a 27-year-old Nikiski man was killed when his pickup truck crossed the *centerline*, hit a power pole and flipped at Mile 81, near Portage.

— Michelle Theriault Boots, *Alaska Dispatch News*, "What you need to know about Seward Highway crashes, closures and delays this summer," 13 July 2017

*These example sentences are selected automatically from various online news sources to reflect current usage of the word 'centerline.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors.* Send us feedback.

## First Known Use of CENTERLINE

1807

IC-App-0591

See words that rhyme with *centerline*

Britannica English: Translation of *centerline* for Arabic speakers

## Seen and Heard

What made you want to look up *centerline*? Please tell us where you read or heard it (including the quote, if possible).

**+ SHOW** 3 COMMENTS

## Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

MERRIAM-WEBSTER UNABRIDGED

### WORD OF THE DAY

# amanuensis

one employed to write from dictation

Get Word of the Day daily email!

Your email address                                                SUBSCRIBE

### TRENDING NOW

1. bodega

IC-App-0592

**3**  allegory

No spoilers!

**4**  hurricane

'A tropical cyclone'

**5**  rescind

To take away; cancel; repeal

**SEE ALL**

---

**BROWSE DICTIONARY**

center jump

centerless grinder

# centerline

centerman

centermost

---

**TEST YOUR VOCABULARY**

Challenging Vocabulary Quiz Returns!

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

Which is a synonym of **fuliginous**?

| archaic | joyous |
|---------|--------|
| cavernous | murky |

How Strong Is Your Vocabulary?

Test your vocabulary with our 10-question quiz!

**TAKE THE QUIZ**

IC-App-0593

### WORDS AT PLAY

alt-59bad350d88f1

## Welcome to the New Words

From 'hive mind' to 'sriracha'

image2143067130

## 9 Slang Words With Academic Origins

Class is in session.

image624847743

IC-App-0594

A delicious collection of
eponymous foods

## ASK THE EDITORS

video-title-words-of-the-year-1066

### Words of the Year: 1066

Or, Why Pig Meat is Called 'Pork'
and Cow Meat is Called 'Beef'

payday

### How Often Is 'Biweekly'?

Don't get us started on
'bimonthly'

video-irregardless-grammar-peeve-
blend-of-the-synonyms-irrespective-
and-regardless

IC-App-0595

## Irregardless

It is in fact a real word (but that doesn't mean you should use it).

**WORD GAMES**

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

### Challenging Vocabulary Quiz Returns!

No tricks, just difficult words.

**TAKE THE QUIZ**

name-that-color-logo

### Name that Color!

NEW! Additional colors! More obscure than before!

**TAKE THE QUIZ**

How Strong Is Your Vocabulary?

IC-App-0596

# Exhibit Q


SINCE 1828    MENU

[1]along

*preposition*  |  \ə-ˈlȯŋ\

Popularity: Bottom 40% of words

**Examples:** ALONG in a Sentence ⌄

## Definition of ALONG

1    : in a line matching the length or direction of • walking *along* the road; *also* : at a point or points on • a house *along* the river

2    : in the course of • made stops *along* the way

3    : in accordance with : IN • a new agreement *along* the lines of the first

## NEW! Time Traveler

First Known Use: before 12th century

SEE WORDS FROM THE SAME YEAR

See *along* defined for English-language learners

See *along* defined for kids

LEARN MORE FROM M-W


**Trending: 'Bodega' Startup Draws Criticism, Mockery**

## Explore Merriam-Webster

IC-App-0597

## Examples of ALONG in a Sentence

We walked *along* the beach.

The chairs were lined up *along* the wall.

The ship sailed *along* the coast.

We drove to Boston and we stopped *along the way* for lunch.

My Stylist

—

SHE GETS ME
READY FOR WORK.

No subscriptions. Free shipping & returns.

## Origin and Etymology of ALONG

Middle English, from Old English *andlang*, from *and-* against + *lang* long — more at

IC-App-0598

# <sub>2</sub>along
*adverb*

## Definition of ALONG

1   :  FORWARD, ON  •  move *along*

2   :  from one to another  •  word was passed *along*

3   **a** :  in company :  as a companion  •  brought his wife *along* —often used with *with*  •  walked to school *along* with her friends
    **b** :  in association —used with *with*  •  work *along* with colleagues

4   **a** :  sometime within a specified or implied extent of time —usually used with *about*  •  *along* about July 17
    **b** :  at or to an advanced point  •  plans are far *along*

5   :  in addition :  ALSO —usually used with *with*  •  a bill came *along* with the package

6   :  at hand :  as a necessary or useful item  •  brought an extra one *along*  •  had his gun *along*

7   :  on hand :  THERE  •  tell him I'll be *along* to see him

See *along* defined for English-language learners

## Examples of ALONG in a Sentence

We walked *along* beside the road.

I was just walking *along*, minding my own business.

IC-App-0599

Plans for a new stadium are already pretty far *along*.

## Recent Examples of ALONG from the Web

His wife and 15-year-old son had fled *along* with nearly everyone else on Ruby Allen Street, a line of trailer homes on a 10-foot rise three miles from the Gulf of Mexico.

> — *Washington Post*, "Sam Speights' desperate effort to stay alive during Harvey," 28 Aug. 2017

Provide ongoing training for individual churches *along* with a systematic program in leadership development to create, maintain and sustain community mobilization.

> — Carole Carlson, *Post-Tribune*, "Seeking divine intervention in Gary's violent streets," 26 Aug. 2017

Host Mike Drucker and comedians like Adam Conover and Zoe Quinn will—*along* with audience members!—play and make fun of terrible video games including (but not limited to) Shaq Fu, and Bible Adventures.

> — Marielle Wakim, *Los Angeles Magazine*, "These Are the 5 Best Things to Do in L.A. This Weekend," 25 Aug. 2017

*These example sentences are selected automatically from various online news sources to reflect current usage of the word 'along.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors. Send us feedback.*

## First Known Use of ALONG

14th century

## ALONG Synonyms

# ALONG Defined for English Language Learners

## along

*preposition*

### Definition of ALONG for English Language Learners

: in a line matching the length or direction of (something)

: at a point on (something)

## along

*adverb*

### Definition of ALONG for English Language Learners

: in a forward direction

: at or to an advanced point

: at a particular place : here or there

## ALONG Defined for Kids

### ¹along

*preposition* | \ə-ˈlȯŋ\

2  : at a point on • He stopped *along* the way.



## ₂along
*adverb*

### Definition of ALONG for Students

1  : farther forward or on • Move *along*.

2  : as a companion, associate, or useful item • I brought a friend *along*.

3  : at an advanced point • The project is pretty well *along*.

—all along
  : all the time • I knew it was you *all along*.

### Learn More about ALONG

See words that rhyme with *along*

Thesaurus: All synonyms and antonyms for *along*

Spanish Central: Translation of *along*

Nglish: Translation of *along* for Spanish speakers

Britannica English: Translation of *along* for Arabic speakers

## Seen and Heard

What made you want to look up *along*? Please tell us where you read or heard it (including the quote, if possible).

# Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

MERRIAM-WEBSTER UNABRIDGED

---

## WORD OF THE DAY

# amanuensis

one employed to write from dictation

Get Word of the Day daily email!

Your email address                                    SUBSCRIBE

---

## TRENDING NOW

**1** bodega
"Don't mess with the beloved bodega."

**2** carceral
Of, relating to, or suggesting a jail or prison

**3** allegory
No spoilers!

**4** hurricane
'A tropical cyclone'

**5** rescind
To take away; cancel; repeal

**SEE ALL**

---

BROWSE DICTIONARY

IC-App-0603

alone time

# along

along about

along for the ride

---

## TEST YOUR VOCABULARY

### Challenging Vocabulary Quiz Returns!

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

Which is a synonym of **fuliginous**?

| joyous | cavernous |
| --- | --- |
| murky | archaic |

---

Name That Thing

Test your visual vocabulary with our 10-question challenge!

**TAKE THE QUIZ**

---

Word Winder's CrossWinder

Test Your Knowledge - and learn some interesting things along the way.

**TAKE THE QUIZ**

---

## WORDS AT PLAY

alt-59bad350d88f1

From "hive mind" to "sriracha"

image2143067130

## 9 Slang Words With Academic Origins

Class is in session.

image624847743

## 8 Foods Named After Real People

A delicious collection of eponymous foods

### ASK THE EDITORS

video-title-words-of-the-year-1066

IC-App-0605

## Words of the Year: 1066

Or, Why Pig Meat is Called 'Pork' and Cow Meat is Called 'Beef'

payday

## How Often Is 'Biweekly'?

Don't get us started on 'bimonthly'

video-irregardless-grammar-peeve-blend-of-the-synonyms-irrespective-and-regardless

## Irregardless

It is in fact a real word (but that doesn't mean you should use it).

### WORD GAMES

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

## Challenging Vocabulary Quiz Returns!

No tricks, just difficult words.

**TAKE THE QUIZ**

name-that-color-logo

## Name that Color!

NEW! Additional colors! More obscure than before!

**TAKE THE QUIZ**

Name That Thing

## Name That Thing

Test your visual vocabulary with our 10-question challenge!

**TAKE THE QUIZ**

# Exhibit R

 SINCE 1828    MENU

# adjacent

*adjective*  |  ad·ja·cent  |  \ə-ˈjā-sᵊnt\

Popularity: Top 20% of words

**Tip:** Synonym Guide  ⌄

**Examples:** ADJACENT in a Sentence  ⌄

## Definition of ADJACENT

1   **a :**  not distant :   NEARBY • the city and *adjacent* suburbs

   **b :**  having a common endpoint or border • *adjacent* lots • *adjacent* sides of a triangle

   **c :**  immediately preceding or following

2   *of two angles* :  having the vertex and one side in common

   —**adjacently**  *adverb*

## NEW! Time Traveler

First Known Use: 15th century

**SEE WORDS FROM THE SAME YEAR**

See *adjacent* defined for English-language learners

## Read the Latest from M-W

## Examples of ADJACENT in a Sentence

The Harrimans owned two large *adjacent* houses on N Street, one for themselves and one for Averell Harriman's pictures. —Larry McMurtry, *New York Times Review of Books*, 23 Oct. 2003

Hearing unexpected chords was linked to magnetic activity in a left-brain region known as Broca's area and in *adjacent* right-brain tissue. —Bruce Bower, *Science News*, 5 May 2001

The hallways, especially those *adjacent* to the satellite phone, were crowded with journalists, avid to cover the Taliban takeover … —Michael Ignatieff, *New Yorker*, 24 Mar. 1997

Digging further in that spot and five *adjacent* areas, they retrieved 19 skulls, five eggs, over 150 jaws and hundreds of teeth, limbs and bone bits. —Natalie Angier, *Time*, 8 Oct. 1984

their house is *adjacent* to a wooded park

IC-App-0609

## Recent Examples of ADJACENT from the Web

The agency's latest project, the LAX-*adjacent* Crenshaw Line, is moving at a steady, speedy clip.

> — Neal Broverman, *Los Angeles Magazine*, "The Crenshaw Line Is Taking Shape, and Suddenly 2019 Can't Get Here Fast Enough," 24 Aug. 2017

The building's common-area terraces are *adjacent* to the High Line, though there is no private access to the park.

> — Matt Gross, *Bloomberg.com*, "Live in Zaha Hadid's Undulating High Line Building for $22,500 a Month," 22 Aug. 2017

However, those hoping the outdoor theme park might be *adjacent* to Disney World in Orlando or Disneyland in Anaheim will be disappointed.

> — Devon Ivie, *Teen Vogue*, "A "Hunger Games" and "Twilight" Theme Park Is Actually Happening," 16 Aug. 2017

*These example sentences are selected automatically from various online news sources to reflect current usage of the word 'adjacent.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors.* Send us feedback.

## Origin and Etymology of ADJACENT

Middle English, from Anglo-French or Latin; Anglo-French, *ajesaunt*, from Latin *adjacent-, adjacens*, present participle of *adjacēre* to lie near, from *ad-* + *jacēre* to lie; akin to Latin *iacere* to throw — more at IET

## ADJACENT Synonyms

Synonyms

IC-App-0610

## Synonym Discussion of ADJACENT

ADJACENT, ADJOINING, CONTIGUOUS, JUXTAPOSED mean being in close proximity. ADJACENT may or may not imply contact but always implies absence of anything of the same kind in between. ⟨• a house with an *adjacent* garage⟩ ADJOINING definitely implies meeting and touching at some point or line. ⟨• had *adjoining* rooms at the hotel⟩ CONTIGUOUS implies having contact on all or most of one side. ⟨• offices in all 48 *contiguous* states⟩ JUXTAPOSED means placed side by side especially so as to permit comparison and contrast. ⟨• a skyscraper *juxtaposed* to a church⟩

## ADJACENT Defined for English Language Learners

# adjacent

*adjective*

### Definition of ADJACENT for English Language Learners

: close or near : sharing a border, wall, or point

## ADJACENT Defined for Kids

# adjacent

*adjective* | ad·ja·cent | \ə-ˈjā-sᵊnt\

### Definition of ADJACENT for Students

: next to or near something • My sister sleeps in the *adjacent* room.

IC-App-0611

See words that rhyme with *adjacent*

Thesaurus: All synonyms and antonyms for *adjacent*

Spanish Central: Translation of *adjacent*

Nglish: Translation of *adjacent* for Spanish speakers

Britannica English: Translation of *adjacent* for Arabic speakers

## Seen and Heard

What made you want to look up *adjacent*? Please tell us where you read or heard it (including the quote, if possible).

**+ SHOW** 20 COMMENTS

## Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

MERRIAM-WEBSTER UNABRIDGED

### WORD OF THE DAY

---

# amanuensis

one employed to write from dictation

Get Word of the Day daily email!

Your email address

SUBSCRIBE

IC-App-0612

**2** carceral

Of, relating to, or suggesting a jail or prison

**3** allegory

No spoilers!

**4** hurricane

'A tropical cyclone'

**5** rescind

To take away; cancel; repeal

**SEE ALL**

**BROWSE DICTIONARY**

adjacency

adjacency effect

# adjacent

adjag

adject

**TEST YOUR VOCABULARY**

Challenging Vocabulary Quiz Returns!

stylized-drawing-of-
woman-pole-vaulting-        Which is a synonym of **fuliginous**?
across-gap-to-get-trophy

| murky | archaic |
|---|---|
| cavernous | joyous |

Name That        Test your visual vocabulary with our 10-question challenge!
Thing            **TAKE THE QUIZ**

IC-App-0613

CrossWinder

**WORDS AT PLAY**

alt-59bad350d88f1

### Welcome to the New Words

From 'hive mind' to 'sriracha'

image2143067130

### 9 Slang Words With Academic Origins

Class is in session.

image624847743

IC-App-0614

## 8 Foods Named After Real People

A delicious collection of eponymous foods

### ASK THE EDITORS

video-title-words-of-the-year-1066

## Words of the Year: 1066

Or, Why Pig Meat is Called 'Pork' and Cow Meat is Called 'Beef'

payday

## How Often Is 'Biweekly'?

Don't get us started on 'bimonthly'

video-irregardless-grammar-peeve-blend-of-the-synonyms-irrespective-

IC-App-0615

## Irregardless

It is in fact a real word (but that doesn't mean you should use it).

WORD GAMES

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

## Challenging Vocabulary Quiz Returns!

No tricks, just difficult words.

**TAKE THE QUIZ**

name-that-color-logo

## Name that Color!

NEW! Additional colors! More obscure than before!

**TAKE THE QUIZ**

IC-App-0616

# Exhibit S



SINCE 1828    MENU

# ₁remote

*adjective*  |  re·mote  |  \ri-ˈmōt\

Popularity: Top 40% of words

**Examples:** REMOTE in a Sentence ⌄

## Definition of REMOTE

**remoter;   remotest**

1    :  separated by an interval or space greater than usual • an involucre *remote* from the flower

2    :  far **removed** in space, time, or relation :  DIVERGENT • the *remote* past • comments *remote* from the truth

3    :  OUT-OF-THE-WAY, SECLUDED • a *remote* cabin in the hills

4    :  acting, acted on, or controlled indirectly or from a distance • *remote* computer operation; *also* :  relating to the acquisition of information about a distant object (as by radar or photography) without coming into physical contact with it • *remote* sensing

5    :  not arising from a primary or proximate action

6    :  small in degree :  SLIGHT • a *remote* possibility • hadn't the *remotest* idea of what was going on

IC-App-0617

—**remoteness**  *noun*

See *remote* defined for English-language learners

See *remote* defined for kids

## Indulge Your Inner Word Nerd

## Examples of REMOTE in a Sentence

She enjoys reading about *remote* lands.

The mission is to transport medical supplies to *remote* areas of the globe.

a tradition that dates back to *remote* antiquity

an invention that may be available in the *remote* future

There is a *remote* possibility that I'll be free Friday night.

## Recent Examples of REMOTE from the Web

The cool, *remote* Prince of Wales may be weeping over the death of his former wife, Princess Diana, if tabloid tales are true, but the British public appears to be oddly unmoved by his sorrow.

> — Jennifer Amur, *Washington Post*, "How Britain and the world mourned Diana, the 'People's Princess,' over 8 days in 1997," 31 Aug. 2017

And even though extended, *remote* social networks are more accessible than ever for anyone with an internet connection, proximity still makes a difference.

> — Julie Beck, *The Atlantic*, "How Friends Become Closer," 29 Aug. 2017

Two *remote* keyless transmitters (fobs) can be programmed with driver's seat and mirror memory for two drivers to position the seat and mirrors when the door is unlocked using the fob.

> — Emma Jayne Williams, *star-telegram*, "New GMC Acadia Denali version gives this SUV the royal treatment," 25 Aug. 2017

*These example sentences are selected automatically from various online news sources to reflect current usage of the word 'remote.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors. Send us feedback.*

## Origin and Etymology of REMOTE

Middle English, from Latin *remotus*, from past participle of *removēre* to remove

## REMOTE Synonyms

IC-App-0619

# ₂ remote

*noun*

## Definition of REMOTE

1    : a radio or television program or a portion of a program originating outside the studio

2    : REMOTE CONTROL 2

---

See *remote* defined for English-language learners

## Recent Examples of REMOTE from the Web

This model from Joby ($27) has flexible legs with magnetic bases, a mounting that will accommodate both iPhone and Android models, along with a Bluetooth shutter *remote*.

> — Martha C. White, *PEOPLE.com*, "Procrastinators: Here's How to Get Solar Eclipse Glasses at the Last Minute," 17 Aug. 2017

Malaysia, Australia and China suspended a nearly three-year search in the southern Indian Ocean in January after scouring 120,000 square kilometers (46,000 square miles) of *remote* seabed and failing to find any trace of Malaysia Airlines Flight 370.

> — *Bloomberg.com*, "U.S. Company Offers to Take Financial Risk of New MH370 Search," 11 Aug. 2017

*Remote* is an understatement when describing Tromvik—the town has no restaurants, cafés, or any shops at all, really.

> — Elise Taylor, *Vogue*, "Happy Birthday, Meghan Markle! A Look Back at the Suits Star and Prince Harry's Most Swoon-Worthy Relationship Moments," 4 Aug. 2017

## First Known Use of REMOTE

1937

## Other Broadcasting Terms

continuity, dissolve, fade, feed, residual, spike, wipe

## Phrases Related to REMOTE

### Related Phrases

a remote chance

remote access

remote sensing

## REMOTE Defined for English Language Learners

# remote
## *adjective*

## Definition of REMOTE for English Language Learners

IC-App-0621

: far away in time : happening a long time ago or far into the future

# REMOTE Defined for Kids

## ₁remote

*adjective*  |  re·mote  |  \ri-ˈmōt\

### Definition of REMOTE for Students

**remoter;    remotest**

1    : far off in place or time • *remote* countries • the *remote* past

2    : SECLUDED 1 • a *remote* valley

3    : small in degree • a *remote* possibility

4    : distant in manner : ALOOF

5    : not closely connected or related • *remote* ancestors


—**remotely**  *adverb*

—**remoteness**  *noun*

## ₂remote

*noun*

### Definition of REMOTE for Students

: REMOTE CONTROL 1

IC-App-0622

# remote

*adjective* | re·mote

## Legal Definition of REMOTE

**remoter;** **remotest**

1   **a :** far removed in space, time, or relation • ancestors of a more *remote* degree

    **b :** exceeding the time allowed under the rule against perpetuities for the vesting of interests

> • the residuary clause…violates the rule against *remote* vesting—*Estate of Grove*, 70 Cal. App. 3d 355 (1977)

    ; *also* : being in violation of the rule against perpetuities • a *remote* contingent estate

2   : acting, acted on, or controlled indirectly or from a distance

3   **a :** not proximate or acting directly

    **b :** not arising from the effect of that which is proximate

4   : small in degree • a *remote* possibility of paternity

   —**remotely** *adverb*

   —**remoteness** *noun*

## Learn More about REMOTE

See words that rhyme with *remote*

Thesaurus: All synonyms and antonyms for *remote*

Spanish Central: Translation of *remote*

Nglish: Translation of *remote* for Spanish speakers

Britannica English: Translation of *remote* for Arabic speakers

IC-App-0623

## Seen and Heard

What made you want to look up *remote*? Please tell us where you read or heard it (including the quote, if possible).

**+ SHOW** 14 COMMENTS

---

## Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

MERRIAM-WEBSTER UNABRIDGED

---

WORD OF THE DAY

# amanuensis

one employed to write from dictation

Get Word of the Day daily email!

Your email address                                    SUBSCRIBE

---

TRENDING NOW

**1  bodega**
"Don't mess with the beloved bodega."

**2  carceral**
Of, relating to, or suggesting a jail or prison

**3  allegory**
No spoilers!

**4  hurricane**

**SEE ALL**

## BROWSE DICTIONARY

remorseful

remorseless

# remote

remote access

remote control

## TEST YOUR VOCABULARY

### Challenging Vocabulary Quiz Returns!

stylized-drawing-of-
woman-pole-vaulting-
across-gap-to-get-trophy

Which is a synonym of **fuliginous**?

| | |
|---|---|
| archaic | murky |
| cavernous | joyous |

How
Strong Is
Your
Vocabulary?

Test your vocabulary with our 10-question quiz!

**TAKE THE QUIZ**

Add
Diction

Test Your Knowledge - and learn some interesting things along the way.

**TAKE THE QUIZ**

## WORDS AT PLAY

IC-App-0625

## Welcome to the New Words

From 'hive mind' to 'sriracha'

image2143067130

## 9 Slang Words With Academic Origins

Class is in session.

image624847743

## 8 Foods Named After Real People

A delicious collection of eponymous foods

IC-App-0626

ASK THE EDITORS

video-title-words-of-the-year-1066

### Words of the Year: 1066

Or, Why Pig Meat is Called 'Pork' and Cow Meat is Called 'Beef'

payday

### How Often Is 'Biweekly'?

Don't get us started on 'bimonthly'

video-irregardless-grammar-peeve-blend-of-the-synonyms-irrespective-and-regardless

### Irregardless

It is in fact a real word (but that

IC-App-0627

## WORD GAMES

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

### Challenging Vocabulary Quiz Returns!

No tricks, just difficult words.

**TAKE THE QUIZ**

name-that-color-logo

### Name that Color!

NEW! Additional colors! More obscure than before!

**TAKE THE QUIZ**

How Strong Is Your Vocabulary?

# Exhibit T



SINCE 1828    MENU

# ¹bevel

*adjective*  |  bev·el  |  \ˈbe-vəl\

Popularity: Bottom 40% of words

**Examples:** BEVEL in a Sentence ⌄

## Definition of BEVEL

:  OBLIQUE, BEVELED • *a bevel* edge

## NEW! Time Traveler

First Known Use: 1609

SEE WORDS FROM THE SAME YEAR

## From the M-W Editors



**Challenging Vocabulary Quiz Returns!**



**Words of the Year: 1066**



**Welcome to the New Words**



**Trendin Startu Criticisi**

IC-App-0629



## First Known Use of BEVEL

1609

<sub>2</sub> # bevel

*noun*

## Definition of BEVEL

1   :  an instrument consisting of two rules or arms jointed together and opening to any angle for drawing angles or adjusting surfaces to be cut at an angle

2   **a** :  the angle that one surface or line makes with another when they are not at right angles

   **b** :  the slant of such a surface or line

   **c** :  the surface or line at such a slant or inclination

3   :  the part of printing type extending from face to shoulder

See *bevel* defined for English-language learners

See *bevel* defined for kids

IC-App-0630

## Recent Examples of BEVEL from the Web

Because of the shape of the seat, most of the slats require *bevels* on one or both edges.
> — Neal Barrett, *Popular Mechanics*, "How to Build an Adirondack Chair and Table," 21 Mar. 2017

*These example sentences are selected automatically from various online news sources to reflect current usage of the word 'bevel.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors. Send us feedback.*

## Illustration of BEVEL



## Origin and Etymology of BEVEL

Middle French *bevel*, from Old French *baivel*, from *baïf* with open mouth, from *baer* to yawn — more at ABEYANCE

## Other Hardware Terms

adze, auger, awl, chock, ferrule, punch, tang

IC-App-0631

3/11

*verb*

## Definition of BEVEL

**beveled** *or* **bevelled**;    **beveling** *or* **bevelling** \ˈbev-liŋ, ˈbe-və-\

### transitive verb

:  to cut or shape to a bevel

### intransitive verb

:  INCLINE, SLANT

---

See *bevel* defined for English-language learners

## Examples of BEVEL in a Sentence

a tool that is used for *beveling* wood

## Recent Examples of BEVEL from the Web

Another way to update classics: Here, Shaker-style cabinets, shiplap on walls and interior doors have been *beveled* to reduce the thickness of the edges.

— Janet Eastman, *OregonLive.com*, "'Carefree' family farmhouse with a concrete tub: Tour the Street of Dreams (photos)," 1 Aug. 2017

For the flipped effect, follow up a round-brush blowout by smoothing strands with a flat iron, slightly *beveling* the ends, says Atkin.

— Lauren Valenti, *Vogue*, "Bella Hadid, Kendall Jenner, and More Are Bringing Back the Clueless Blowout," 19 July 2017

Next, crosscut and *bevel* the seat support and lay the support across the legs.

— Joesph Truini, *Popular Mechanics*, "How to Build the Perfect Picnic Table," 12 June 2017

IC-App-0632

## First Known Use of BEVEL

1678

## BEVEL Defined for English Language Learners

# bevel
*noun*

## Definition of BEVEL for English Language Learners

:  a slanted surface or edge on a piece of wood, glass, etc.

:  a tool that is used to make a slanted surface or edge on a piece of wood, glass, etc.

# bevel
*verb*

## Definition of BEVEL for English Language Learners

:  to cut or shape (a surface or edge) at an angle or slant

## BEVEL Defined for Kids

IC-App-0633

*noun*  |  bev·el  |  \ be-vəl \

## Definition of BEVEL for Students

**:** a slant or slope of one surface or line against another

## History for BEVEL

At first the word *bevel* was used for a certain kind of angle. This was the angle formed by two surfaces that are not at right angles. Look at the opening of such an angle. You may be able to imagine that it looks like an open mouth. The English word

₂bevel

*verb*

## Definition of BEVEL for Students

**beveled** *or* **bevelled**;    **beveling** *or* **bevelling**

**:** to cut or shape (an edge or surface) at an angle or slant

## Learn More about BEVEL

See words that rhyme with *bevel*

Spanish Central: Translation of *bevel*

Nglish: Translation of *bevel* for Spanish speakers

IC-App-0634

**+ SHOW** 32 COMMENTS

## Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

MERRIAM-WEBSTER UNABRIDGED

---

WORD OF THE DAY

# amanuensis

one employed to write from dictation

Get Word of the Day daily email!

Your email address                                          SUBSCRIBE

---

TRENDING NOW

**1** bodega
"Don't mess with the beloved bodega."

**2** carceral
Of, relating to, or suggesting a jail or prison

**3** allegory
No spoilers!

**4** hurricane
'A tropical cyclone'

**5** rescind
To take away; cancel; repeal

IC-App-0635

BeV

BEV

# bevel

bevel chisel

beveled

TEST YOUR VOCABULARY

Challenging Vocabulary Quiz Returns!

stylized-drawing-of-woman-pole-vaulting-across-gap-to-get-trophy

Which is a synonym of **fuliginous**?

| murky | archaic |
|-------|---------|
| joyous | cavernous |

How Strong Is Your Vocabulary?

Test your vocabulary with our 10-question quiz!

**TAKE THE QUIZ**

Add Diction

Test Your Knowledge - and learn some interesting things along the way.

**TAKE THE QUIZ**

WORDS AT PLAY

alt-59bad350d88f1

## Welcome to the New Words

From 'hive mind' to 'sriracha'

## 9 Slang Words With Academic Origins

Class is in session.

## 8 Foods Named After Real People

A delicious collection of eponymous foods

**ASK THE EDITORS**
_____

IC-App-0637

## Words of the Year: 1066

Or, Why Pig Meat is Called 'Pork'
and Cow Meat is Called 'Beef'

payday

## How Often Is 'Biweekly'?

Don't get us started on
'bimonthly'

video-irregardless-grammar-peeve-
blend-of-the-synonyms-irrespective-
and-regardless

## Irregardless

It is in fact a real word (but that
doesn't mean you should use it).

**W O R D   G A M E S**

IC-App-0638

## Challenging Vocabulary Quiz Returns!

No tricks, just difficult words.

**TAKE THE QUIZ**

name-that-color-logo

## Name that Color!

NEW! Additional colors! More obscure than before!

**TAKE THE QUIZ**

How Strong Is Your Vocabulary?

## How Strong Is Your Vocabulary?

Test your vocabulary with our 10-question quiz!

**TAKE THE QUIZ**

# Exhibit U

1-800-438-3289

Builder's Choice for
Hidden Deck Fasteners

CONTACT US!

Home          Products          Where to Buy          Installation

Calculator

Contact EB-TY

# How t o Install E  B•TY® Hidden Deck Fasteners

EB•TY® Hidden Deck Fasteners™ make installation easy.
They help you install beautiful decking without splinters,
nail holes or visible fasteners — above or below the deck.
The dark color of the ultra-violet resistant polypropylene
fasteners blends with the shadow of the joints.

You do all work from above, so your deck can be as close
to the ground as you want to make it. EB•TY fasteners
automatically set even 3/32" or 1/4" spacing between
deck boards and ensure that all deck boards are at a level,
uniform height. You need only one EB•TY fastener and
one screw wherever a deck board intersects with a joist.

## Getting Started

Review the installation instructions provided by the lumber
supplier and / or producer prior to installing the EB•TY
fastening systems.

The EB•TY fastening systems have been designed to
accommodate special board spacing and board thickness.
To ensure top quality results, moisture in deck boards
should reach appropriate moisture level of the surroundings prior to installation.

## Fasteners/Square Foot Calculator

Unsure of how many fasteners to buy? Use our easy calculator to determine how many EB TY
hidden deck fasteners you need.

View Our Installation
Videos

View Our Installation
Slideshow

or

Download the
Installation
Instructions

- English (US Letter size)
- English (A4 size)
- 日本語 Japanese
- Español
- Russian
- Français (A4 size)
- Getusch (A4 size)

| Dimensions | Enter Number Square Feet | Total Number of Fasteners Needed |
|---|---|---|
| 3.5" boards w/12" on center joists | | 0 |
| 5.5" boards w/12" on center joists | | 0 |
| 3.5" boards w/16" on center joists | | 0 |
| 5.5" boards w/16" on center joists | | 0 |
| 3.5" boards w/24" on center joists | | 0 |
| 5.5" boards w/24" on center joists | | 0 |

submit

## Installing the First Board

- Apply a bead of exterior construction
  adhesive to each joist, approximately
  3/8" in width.
- Fasten one side of the first deck board
  using screws and plugs.

IC-App-0640

- Use a 1/8" drill bit with a 3/8" countersink.
- Drive in a #7 X 2-1/4" stainless trim-head screw at each joist of the first deck board.





- Glue and insert EB•TY® 3/8" IPE Tapered Wood Plugs (Part Code: IPLUG01) into each countersunk hole.



- Carefully remove any part of the wood plug that protrudes, using a small saw or belt sander.



- Cut a slot (or kerf) in deck board at each joist and deck board intersection using a 1/8" router bit or plate joiner (biscuit cutter #20).

Note: Adjust router or plate joiner (biscuit cutter) height so that the bottom edge of the EB-TY fastener is flush with the bottom of the deck board.

Note: If using pre-grooved decking no slot or (kerf) cut is necessary.



IC-App-0641



- Place EB•TY fasteners in the slots at each joist.





- Install one #7 X 2-1/4" stainless trim-head screw in each fastener at a 45° angle.

Don't over tighten screws, just tighten snug to the EB •TY fasteners.

Note: Drill an angled 1/8" pilot hole for each screw when installing hardwood decking to avoid splintering and to ensure that the decking is pulled tight to the joist.





IC-App-0642

## Installing Additional Deck Boards



- Apply a bead of exterior construction adhesive to each joist, approximately 3/8" in width.



- Cut a slot at each intersection with joist on each side of the next board. Do this in a production-like manner to maximize your efficiency and save time.
- Place the board so the slot slips over the exposed EB•TY fasteners. The fasteners will maintain uniform spacing between the deck boards.

Use a BoWrench® or a clamp to straighten boards if necessary.



- Place EB•TY fasteners in the slot at each joist.
- Install one #7 X 2-1/4" stainless trim-head screw in each fastener at a 45° angle.
- Tighten snug to the EB•TY fasteners.
- Repeat the above process until all decking are fastened with the exception of the final (outside) board.



## Installing the Final Outside Board



- Cut slots or kerfs only on the inside of the final board.
- Place the board so the slots slip over the exposed EB•TY fasteners.
- Fasten using screws and plugs, following the same procedure as with the first board.

Simpson Strong-Tie Company Inc.
Contact Eb-Ty ®    1-800-Get EBTY (1-800-438-3289)    Fax: 614-876-0636    Privacy Policy

# Exhibit V



US006402415B1

(12) **United States Patent**

Eberle, III

(10) Patent No.: **US 6,402,415 B1**

(45) Date of Patent: **Jun. 11, 2002**

(54) **ANCHORING BISCUIT DEVICE**

(76) Inventor: **Harry W. Eberle, III**, 357 Vernoy Rd., Califon, NJ (US) 07830

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/186,741**

(22) Filed: **Nov. 5, 1998**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 08/811,898, filed on Mar. 5, 1997, now abandoned.

(51) **Int. Cl.[7]** ................................................ **B25G 3/00**

(52) **U.S. Cl.** ................ **403/231**; 403/232.1; 403/408.1; 52/483.1

(58) **Field of Search** ................................ 403/230, 231, 403/232.1, 294, 298, 401, 408.1; 52/408, 483.1, 506.05, 586.1, 586.2, 585.1, 772

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,184,080 A | 5/1916 | D'Arcy | |
| 2,332,081 A | 10/1943 | Hunt et al. | 20/91 |
| 2,362,252 A | 11/1944 | Ellinwood | 20/4 |
| 2,398,603 A | 4/1946 | Soderberg | 85/49 |
| 2,406,387 A | 8/1946 | Lank | 144/309 |
| 4,641,988 A | 2/1987 | Ganner | 403/245 |
| 4,682,458 A | 7/1987 | Sparrow | 52/309.8 |
| 5,004,027 A | 4/1991 | Legler et al. | 144/136 R |
| 5,071,280 A * | 12/1991 | Turner | 403/232.1 |
| 5,160,211 A * | 11/1992 | Gilb | 403/232.1 X |
| 5,182,891 A | 2/1993 | Slocum | 52/480 |

| | | | |
|---|---|---|---|
| 5,251,996 A | 10/1993 | Hiller et al. | 403/406.1 |
| 5,377,732 A | 1/1995 | Fujii et al. | 144/347 |
| 5,419,649 A * | 5/1995 | Gilb | 403/232.1 X |
| 5,458,433 A | 10/1995 | Stastny | 403/408.1 |
| 5,480,117 A | 1/1996 | Fleming, III | 248/231.9 |
| 5,529,428 A | 6/1996 | Bischof | 403/408.1 |
| 5,564,248 A * | 10/1996 | Callies | 403/232.1 X |
| 5,603,580 A * | 2/1997 | Leek et al. | 403/232.1 |
| 5,660,016 A | 8/1997 | Erwin et al. | 52/483.1 |

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| DE | 372483 | * | 3/1923 | 403/408 |

* cited by examiner

*Primary Examiner*—Bruce A. Lev
(74) *Attorney, Agent, or Firm*—Kenneth P. Glynn, Esq.

(57) **ABSTRACT**

An anchoring biscuit device for joining three boards. It includes, (a) a first substantially flat horizontal top element having a generally biscuit-shaped configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and, (c) an attachment orifice located at least on the top element for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated.

**12 Claims, 3 Drawing Sheets**







Fig. 4

Fig. 1

Fig. 2

Fig. 3



Fig. 7



Fig. 8



Fig. 5



Fig. 6



Fig. 10



Fig. 11



Fig. 9

# ANCHORING BISCUIT DEVICE

## REFERENCE TO RELATED CASE

This is a continuation-in-part of U.S. patent application Ser. No. 08/811,898, now abandoned filed on Mar. 5, 1997 entitled, "Anchoring Biscuit Device for Joining Two Adjacent Boards", by the same inventor herein.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention is directed to an improved biscuit for joining adjacent boards. More specifically, the invention is an anchoring biscuit device, as well an anchoring half biscuit device which has the ability to pre-setting distances between adjacent boards and attaching to at least one board by means in addition to the biscuit itself. The anchoring biscuit device physically joins two adjacent boards in the same plane to a third, supporting board. The anchoring half-biscuit device joins two adjacent boards at right angles to one another.

### 2. Information Disclosure Statement

The following patents are representative of the state of the art for wood joining devices, equipment and methods:

U.S. Pat. No. 1,184,080 to D'Arcy describes a structure of the class described, the combination of frame pieces disposed at an angle to each other and plate-like corner irons having angularly disposed flanges, said corner irons being arranged in opposed pairs on the sides of and secured to the ends of meeting frame pieces with their flanges engaging the inner edges thereof in overlapping telescoping relation to each other, the inner flanges having vertical nail slots therein and brads on their edges driven into the frame pieces, the outer flanges having nail perforations opposite the nail slots, there being nails disposed through the said perforations and slots and driven into the frame.

U.S. Pat. No. 2,332,081 to G. M. Hunt et al is directed to a wooden panel. It is described as a panel comprising wooden strips joined along their edges with glue, each strip having at least one groove in its edge matching groove in the edge of the adjoining strip, an asbestos millboard spline fitted in the matching grooves and bridging the joint between the strips, crossbands covering the strips on both sides of the panel, and veneers covering the crossbands.

U.S. Pat. No. 2,362,252 to Ellinwood describes a wall structure of the character described comprising a pair of adjacent wallboard panels having meeting edges, each of said panels being formed with a groove opening into its meeting edge, the groove in each panel providing an outer lip and an inner lip, said outer lips being in abutting relation, a joining strip permanently secured to the under surface of said outer lips, said inner lips being spaced, a T-shaped connecting member movably positioned in said groove and having a base in spaced relation to said inner lips, and means for anchoring said connecting member to a structural element.

U.S. Pat. No. 2,398,603 to Soderberg describes a joining staple, comprising a metal body having at least two portions extending at right angles to each other and at least two teeth carried upon each of said portions, each of said teeth consisting of a flat substantially rectangular body having a cutting edge extending substantially parallel to its body portion, the cutting edges of all of said teeth being located in one plane, each of said portions having another cutting edge extending between the teeth of that portion, the second mentioned cutting edges being also located in one plane.

U.S. Pat. No. 2,406,387 to Lank describes the method of constructing a plurality of wooden posts each of which has a connector element incorporated therein adjacent each end thereof which method comprises forming a plurality of longitudinally extending grooves in one side of each of a pair of wooden blanks from which the posts are to be formed, forming a transverse groove adjacent each end of said side of each of said blanks with the transverse grooves intersecting the longitudinal grooves, providing a pair of connector retaining members with a plurality of seats for receiving connector elements, the number and spacing of said seats in each of said connector retaining members conforming to the number and spacing of the longitudinal grooves in each of said blanks, placing connector elements in each of said seats, positioning said blanks with their grooved sides together and with said connector retaining members in said transverse grooves, bonding said blanks together, and severing the thus bonded assembly along longitudinal lines intermediate said longitudinal grooves.

U.S. Pat. No. 4,641,988 to Ganner is directed to a fitting for releasably joining two structural components. It is illustrated for releasably joining two structural components particularly plate-shaped structural components which extend at a right angle relative to one another, a fitting has a preferably cylindrical locking element which can be inserted either directly in a bore in the first structural component or it can be inserted indirectly in a housing, and a holding piece with a holding projection anchored in the second structural component. In the assembled position, the holding projection & abuts against one or two gripping surfaces of the locking element which gripping surfaces are of, for example, eccentric shape, and the holding projection is pulled toward the locking element when the locking element is turned. The holding piece is constructed plate-shaped and is insertable in a slot in the second structural component.

U.S. Pat. No. 4,682,458 to Sparrow describes a floor composed of parallel spaced beams having flanges and blocks of polystyrene foam which are laid on the flanges to bridge the gaps between the beams. Boards are laid on the polystyrene blocks, and are supported by the blocks, which form load-bearing members of the floor. The blocks may have flanged portions extending over the beams, so as to provide heat insulation.

U.S. Pat. No. 5,004,027 to Legler et al illustrates a biscuit joiner. It is described as a biscuit joiner for cutting semi-elliptical slots in opposing edges of workpieces which are to be joined along those edges includes a housing adapted to be mounted upon the quill of a multi-purpose woodworking tool, which housing encloses a rotary saw blade adapted to be attached to a spindle projecting from the quill on which the housing is mounted. A spring loaded guide projects from the front face of the housing and has a slot therethrough, so that when the front face of the guide is engaged by an edge of a workpiece to be slotted the guide can be pushed inwardly against spring pressure, allowing the rotary saw blade to be exposed and form a slot in the edge of the workpiece. Adjustable stops are provided on the guide so that a desired depth of cut will automatically be made after adjustment. An alternative construction of this biscuit joiner is especially adapted for use in conjunction with a conventional drill press, with the arbor which carries the saw blade being clamped in the chuck on the drive spindle of the drill motor.

U.S. Pat. No. 5,182,891 to Slocum describes a flooring construction which is provided having a unitary construction with a top layer providing a finished flooring surface and an

3

insulation layer adjacent the top layer. The flooring panel includes an upper portion and a lower portion. The upper portion has a larger dimension than the lower portion and extends outwardly beyond the lower portion. A recessed portion between the upper portion and the lower portion defines a channel. A plurality of interlock support elements having a vertical web and an upper horizontal flange are arranged so that the horizontal flange extends into the channel. The vertical web extends below the lower portion to raise the flooring.

U.S. Pat. No. 5,251,996 to Hiller et al describes a connecting element for connecting two parts generally in a connection plane has a first portion for connecting the element relative to a first of the parts and second portion for connecting the element relative to the second part. The second portion includes actuation members which on relative movement of the parts substantially along the connection plane urge the parts forcefully towards each other.

U.S. Pat. No. 5,377,732 to Fujii et al illustrates a wood joining structure and method thereof. It is described as a technique is provided for joining wood members. A plurality of slits are formed on the end portions of wood pieces desired to be joined, and the end portions are abutted with corresponding slits in alignment to form a common surface. Each of the abutted wood end portions is fixed by temporary fixing means to a desired joining state. Thereafter, an adhesive agent is applied into the interior surfaces of the slits. Connecting plates, e.g., made of a reinforced plastic material coated with the adhesive agent, are inserted into the aligned slits. The adhesive agent is then hardened.

U.S. Pat. No. 5,458,433 to Stastny explicates a biscuit and joint made using same. It is described as a biscuit having octagonal outer periphery is used to form a joint between first and second workpieces. The biscuit fits within arcuate slots formed in the workpieces, with glue placed in the slots and/or on the biscuit before the joint is put together. The biscuit is made of an anhydrous compressed wood.

U.S. Pat. No. 5,480,117 to Fleming, III describes a bracket for mounting a rotary lock member in the frame of a panel which is provided. The bracket is a preferably U-shaped body having a base and two legs extending therefrom. The inner dimension of the bracket is chosen to allow insertion of a rotary lock member therein. Panel engaging steps and protrusions are located on the outside surface of each leg for engaging the frame material. The legs of the bracket are biased inwardly towards one another, such that when a locking member is inserted therein, the legs are pressed outwardly, driving the protrusions into the frame material. A number of bores are located in the bracket to allow supplemental locking members to lock the bracket to the frame.

U.S. Pat. No. 5,529,428 to Bischof is directed to a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic. It is described as a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic, consisting of a lamellar part, which provides the non-positive connection with the first workpiece provided with a groove and a transverse hole, and a bolt-like part which, through screwing or pinning, realizes the non-positive connection with the second workpiece provided with a longitudinal hole. The lamellar part has, in the center, a hole which is at right angles to the plane of the lamella and is intended for fixing in the groove of the workpiece. Variants having a wing-like long or rectangular short lamellar part and a bolt-like part in the form of a conical wood screw, cylindrical screw, screw having a metal thread, threaded sleeve or pin. Accessories: screwing tool and drilling template.

4

U.S. Pat. No. 5,660,016 to Erwin et al describes an extruded plastic decking plank for mounting to an underlying support structure, the plank having a rigid foam core, a resilient outer plastic shell, and a clamping portion for securing the plank to the support structure. The top surface of the plank can be provided with a non-slip surface. The invention also includes an attachment system for securing such decking planks to a support structure by engaging the clamping portions of the decking planks onto clamps or hold down blocks which are secured onto the support structure, and which permit relative motion between the planks and the structure in the planks' lengthwise direction to prevent stress and buckling caused by uneven expansion.

Notwithstanding the prior art, the present invention is neither taught nor rendered obvious thereby.

## SUMMARY OF THE INVENTION

The present invention is an anchoring biscuit device for joining three boards. It includes, (a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and, (c) an attachment orifice located at least on the top element for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated.

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention should be more fully understood when the specification herein is taken in conjunction with the drawings appended hereto wherein:

FIG. 1 illustrates a top view of one preferred embodiment of the present invention anchoring biscuit device,

FIG. 2 illustrates a front view, and

FIG. 3 illustrates a side view thereof;

FIG. 4 shows a side view of the present invention device shown in FIGS. 1 through 3 but being attached to a joist and a first deck board and about to be attached to a second deck board where both deck boards are supported by that joist;

FIG. 5 shows a front view of an alternative embodiment present invention anchoring biscuit device;

FIGS. 6 and 7 show top views of alternative present invention anchoring biscuit devices;

FIG. 8 shows a partial side cut view of the device shown in FIG. 7 to illustrate the beveled cut of the screw hole;

FIG. 9 shows a side view of the present invention device shown in FIG. 7, but being attached to a joist and a first deck board and about to be attached to a second deck board where both deck boards are supported by that joist; and,

FIG. 10 and FIG. 11 show front views of alternative embodiment present invention anchoring biscuit devices having single vertical extended members.

## DETAILED DESCRIPTION OF THE PRESENT INVENTION

In FIG. 1, there is shown a top view of present invention anchor biscuit device 1. Device 1 includes a top element 3

5

having a flat top surface as shown, and a top view shape of a biscuit. Thus, it includes walls 5 and 7 in the shape of arcs having predetermined radius and predetermined arc lengths. In this case, they are perfectly symmetrical and have flat endwalls 9 and 11. Without exceeding the scope of the present invention, these biscuit shapes could be slightly modified, such as having slightly non-circular arcs or linear segments at angles approximating arcs.

Top element 3 also includes an attachment means, in this case, screw hole 13 located on center. This enables the user to nail or screw device 1 into a joist, as more fully described in conjunction with FIG. 4 below.

FIGS. 2 and 3 show front and end (right side) views, respectively of device 1 shown in FIG. 1. Thus, device 1 includes vertical support members 15 and 17 with a space therebetween to permit a screw or nail to pass through screw hole 13 into a joist or support board. Vertical support members 15 and 17 have a predetermined height so as to rest on a joist in such a way as to establish biscuit top element 3 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots corresponding thereto.

FIG. 4 shows present invention device 1 with identical parts identically numbered. Top element rear biscuit wall 5 is inserted into pre-cut biscuit slot 27 of horizontal beam 21, as shown. Screw 31 is inserted into screw hole 13 and into joist beam 25. This anchors device 1 to joist beam 25 and establishes the elevation of top element 3 so as to match with biscuit slot 27. Beam 23 will be placed atop joist 25 and adjacent to beam 21 by being slid into position with wall 7 fitting into slot 29 and the bottom of beam 23 resting on joist 25. By this method, device 1 attaches all three boards to one another as the biscuit aspects are typically tight-fitting. Thus, for example, decking boards may be attached without the need for nails or screws entering the beams from the top.

FIG. 5 shows an alternative embodiment present invention device 51 which has multiple screw holes 43, 53 and 55 located in a straight line on center of top element 47. It includes ends 41 and 49, and it has a plurality of vertical support members such as vertical support members 45 and 57, with spaces therebetween for screw or nail insertions. Device 51 is used in the same manner as device 1 described above with respect to FIG. 4.

FIGS. 6 and 7 show top views of alternative embodiment present invention anchoring biscuit devices 61 and 91 respectively. In FIG. 6, there is shown a top view of present invention anchor biscuit device 61. Device 61 includes a top element 63 having a flat top surface as shown, and a top view shape of a biscuit. Thus, it includes walls 65 and 67 in the shape of arcs having predetermined radius and predetermined arc lengths. In this case, they are perfectly symmetrical and have flat endwalls 69 and 71. Top element 63 also includes an attachment means, in this case, screw hole 73 located on center. Screw hole 73 has a bevel cut 75 at its top. This enables the user to nail or screw device 61 into a joist with the screw or nail being installed vertically, or, more preferably, at an angle.

In FIG. 7, there is shown a top view of present invention anchor biscuit device 91. Device 91 includes a top element 93 having a flat top surface as shown, and a top view shape of a biscuit. Thus, it includes walls 95 and 97 in the shape of arcs having predetermined radius and predetermined arc lengths. In this case, they are perfectly symmetrical and have flat endwalls 99 and 101. Top element 93 also includes an attachment means, screw hole 103 located on center. Note that screw hole 103 is elongated and has a beveled top 105.

6

This enables the user to nail or screw device 91 into a joist, either vertically or at an angle, as more fully described in conjunction with FIG. 8 below.

FIG. 8 shows a partial side cut view of device 91 of FIG. 7 to illustrate the beveled cut 105 of screw hole 103.

FIG. 9 shows present invention device 91 of FIG. 7 and the boards shown in FIG. 4, with identical parts identically numbered. Top element 93 at rear biscuit wall 95 is inserted into pre-cut biscuit slot 27 of horizontal beam 21, as shown. Screw 131 is inserted at about a 30° angle from vertical into beveled screw hole 103 and into horizontal beam 21 and joist beam 25. This anchors device 91 and horizontal beam 21 to joist beam 25 and support member 117 (and 115 not shown) maintains top element 93 in a horizontal position during screwing and to maintain its position with biscuit slot 27. Beam 23 will be placed atop joist 25 and adjacent to beam 21 by being slid into position with wall 97 fitting into slot 29 and the bottom of beam 23 resting on joist 25. By this method, device 91 attaches all three boards to one another as the biscuit aspects are typically tight-fitting. The steps are repeated along each joint beam in a deck and they are repeated for each next horizontal beam to assemble, e.g., a deck, platform, porch, etc.

FIG. 10 shows a front view of device 141. Thus, device 141 includes a single vertical support member 145 with a space cut out 143 to permit a screw or nail to pass through beveled screw hole 153 and through support member 145 into a joist or support board. Vertical support member 145 has a predetermined height so as to rest on the side of a beam into which device 141 may be inserted and, optionally, so as to rest on a joist in such a way as to establish biscuit top element 147 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots corresponding thereto.

FIG. 11 shows a front view present invention of device 161, which includes a single off-center vertical support member 165 with a space underneath beveled screw hole 163 to permit a screw or nail to pass through screw hole 163 into a beam and/or joist or support board. Top 167 has opposite ends 169 and 171 as shown, with support member 165 biased to the left toward end 169, as shown. Top 163 may have a topography which would be the same as that shown in FIGS. 1, 6 or 7 above.

Obviously, numerous modifications and variations of the present invention are possible in light of the above teachings. It is therefore understood that within the scope of the appended claims, the invention may be practiced otherwise than as specifically described herein.

What is claimed is:

1. An anchoring biscuit device for joining three boards, which comprises:

    (a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, said top element having a center area between said opposite side walls in the shape of arcs;

    (b) at least two substantially vertical support members attached to an underside of said top element at said center area of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joining two adjacent boards which have been pre-cut with biscuit receiving slots, two of said at least two vertical support members being substantially flat, being in the same plane and one of each being located on opposite sides of an attachment orifice; and,

(c) at least one attachment orifice located at least on said top element for attachment of said anchoring biscuit device to a support board for anchoring and support of said two adjacent boards.

**2**. The anchoring biscuit device of claim **1** wherein said attachment orifice is at least one screwhole located on said top element for screwing of said anchoring biscuit device to a support board.

**3**. The anchoring biscuit device of claim **2** wherein said screwhole has a bevelled top.

**4**. The anchoring biscuit device of claim **2** wherein said screwhole is non-circular and elongated.

**5**. The anchoring biscuit device of claim **1** wherein said attachment orifice has a bevelled top.

**6**. The anchoring biscuit device of claim **1** wherein said attachment orifice is non-circular and elongated.

**7**. The anchoring biscuit device of claim **1** wherein said top element and said vertical support member are unitarily formed.

**8**. The anchoring biscuit device of claim **1** wherein there are two vertical support members and one is located on each side of said attachment orifice.

**9**. The anchoring biscuit device of claim **8** wherein said top element and said two vertical support members are all unitarily formed.

**10**. An anchoring biscuit device for joining three boards, which comprises:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, said top element having a center area between said opposite side walls in the shape of arcs;

(b) at least one substantially vertical support member attached to an underside of said top element at said center area of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joining two adjacent boards which have been precut with biscuit receiving slots, said at least one vertical support member being substantially flat; and,

(c) at least one attachment orifice located at least on said top element for attachment of said anchoring biscuit device to a support board for anchoring and support of said two adjacent boards;

wherein there is one substantially vertical support member which is located off-center and to one side of said attachment orifice.

**11**. The anchoring biscuit device of claim **10** wherein said attachment orifice has a bevelled top.

**12**. The anchoring biscuit device of claim **10** wherein said attachment orifice is non-circular and elongated.

\* \* \* \* \*



US006402415C1

## (12) EX PARTE REEXAMINATION CERTIFICATE (6264th)

# United States Patent
### Eberle, III

(10) **Number:**    **US 6,402,415 C1**

(45) **Certificate Issued:**    **Jun. 17, 2008**

---

(54) **ANCHORING BISCUIT DEVICE**

(75) Inventor: **Harry W. Eberle, III**, Califon, NJ (US)

(73) Assignee: **Blue Heron Enterprises, LLC**, Califon, NJ (US)

**Reexamination Request:**
No. 90/007,661, Aug. 8, 2005

**Reexamination Certificate for:**
Patent No.: **6,402,415**
Issued: **Jun. 11, 2002**
Appl. No.: **09/186,741**
Filed: **Nov. 5, 1998**

### Related U.S. Application Data

(63) Continuation-in-part of application No. 08/811,898, filed on Mar. 5, 1997, now abandoned.

(51) **Int. Cl.**
*B25G 3/00*      (2006.01)

(52) **U.S. Cl.** ................ **403/231**; 403/232.1; 403/408.1; 52/483.1

(58) **Field of Classification Search** .................. D8/382, D8/354, 349; D25/199; 403/230, 231, 232.1, 403/298, 294, 401, 408.1; 248/300, 309.1; 52/408, 483.1, 506.05, 586.1, 586.2, 585.1, 52/772
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

695,722 A    3/1902   Heilmann

1,714,738 A    5/1929   Smith
2,201,129 A    5/1940   Weiland
2,337,156 A   12/1943   Elmendorf
5,619,834 A    4/1997   Chen

FOREIGN PATENT DOCUMENTS

DE        372483      3/1923
JP    404371657 A   * 12/1992

* cited by examiner

*Primary Examiner*—Jeffrey R. Jastrzab

(57) **ABSTRACT**

An anchoring biscuit device for joining three boards. It includes, (a) a first substantially flat horizontal top element having a generally biscuit-shaped configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and, (c) an attachment orifice located at least on the top element for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated.



IC-App-0653

1

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the
patent, but has been deleted and is no longer a part of the
patent; matter printed in italics indicates additions made
to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

Claims 1, 2, 7, 8 and 10 are determined to be patentable
as amended.

Claims 3–6, 9, 11 and 12, dependent on an amended
claim, are determined to be patentable.

New claims 13–26 are added and determined to be
patentable.

1. An anchoring biscuit device for joining [three] *together
two adjacent* boards *and a support board, the adjacent
boards being in the same plane and having in their sides
pre-cut biscuit receiving slots,* [which comprises] *the
anchoring biscuit device comprising*:

(a) a first substantially flat horizontal top element having
a generally biscuit-shaped top view configuration
[with] *having* opposite side walls in the shape of arcs
from a top view, said arcs having predetermined radii
and arc lengths, *and opposite end walls,* said top
element having a center [area between said opposite
side walls in the shape of arcs] *line extending between
said end walls, and said respective side walls being
adapted to be fitted into said respective biscuit receiv-
ing slots of said adjacent boards*;

(b) at least two substantially vertical support members
attached to an underside of said top element [at] *along*
said center [area] *line* of said top element and extending
*perpendicularly* downwardly [therefrom] *from said top
element* for a predetermined length *in a vertical plane
that is aligned with, and directly under, said center line,
said predetermined length being adapted* to maintain
said top element in a predetermined position during use
for joining *said* two adjacent boards *together with, and
atop, said support board,* with biscuit receiving slots, two of] *all of* said at least
two vertical support members being substantially flat[,
being] *and in* [the same] *said vertical* plane [and one of
each being located on opposite sides of an attachment
orifice]; and,

(c) at least one attachment orifice located at least on said
top element for attachment of said anchoring biscuit
device to [a] *said* support board for anchoring and
support of said two adjacent boards, *said attachment
orifice being located between two of said vertical
support members*.

2. The anchoring biscuit device of claim 1 wherein said
attachment orifice is at least one screwhole located on said
top element for screwing of said anchoring biscuit device to
[a]*said* support board.

7. The anchoring biscuit device of claim 1 wherein said
top element and said vertical support [member] *members* are
unitarily formed.

2

8. The anchoring biscuit device of claim 1 wherein there
are *exactly* two vertical support members [and one is located
on each side of said attachment orifice].

10. An anchoring biscuit device for joining [three]
*together two adjacent* boards *and a support board, the
adjacent boards being in the same plane and having in their
sides pre-cut biscuit receiving slots,* [which comprises] *the
anchoring biscuit device comprising*:

(a) a first substantially flat horizontal top element having
a generally biscuit-shaped top view configuration with
opposite side walls in the shape of arcs from a top view,
said arcs having predetermined radii and arc lengths,
*and opposite end walls,* said top element having a
center [area between said opposite side walls in the
shape of arcs] *line extending between said end walls,
and said respective side walls being adapted to be fitted
into said respective biscuit receiving slots of said
adjacent boards*;

(b) at least one substantially vertical support member
attached to an underside of said top element [at] *along*
said center [area] *line* of said top element and extending
*perpendicularly* downwardly therefrom for a predeter-
mined length *in a vertical plane that is aligned with,
and directly under, said center line, said predetermined
length being adapted* to maintain said top element in a
predetermined position during use for joining *said* two
adjacent boards [which have been precut with biscuit
receiving slots] *together with, and atop, said support
board,* said at least one vertical support member being
substantially flat; and,

(c) at least one attachment orifice located at least on said
top element for attachment of said anchoring biscuit
device to a support board for anchoring and support of
said two adjacent boards; *and*

wherein [there is] *said at least* one substantially vertical
support member [which] is located off-center and to
one side of said *at least one* attachment orifice.

*13. The anchoring biscuit device of claim 10 having
exactly one vertical support member.*

*14. An anchoring biscuit device for joining together two
adjacent boards and a support board, the adjacent boards
being in the same plane and having in their sides pre-cut
biscuit receiving slots, the anchoring biscuit device com-
prising*:

(a) *a first substantially flat horizontal top element having
a generally biscuit-shaped top view configuration hav-
ing opposite side walls in the shape of arcs from a top
view, said arcs having predetermined radii and arc
lengths, and opposite end walls, said top element
having a center line extending between said end walls,
and said respective side walls being adapted to be fitted
into said respective biscuit receiving slots of said
adjacent boards*;

(b) *exactly two substantially vertical support members
attached to an underside of said top element along said
center line of said top element and extending perpen-
dicularly downwardly therefrom for a predetermined
length in a vertical plane that is aligned with, and
directly under, said center line, said predetermined
length being adapted to maintain said top element in a
predetermined position during use for joining said two
adjacent boards together with, and atop, said support
board, said vertical support members being substan-
tially flat and in said vertical plane; and*

(c) *at least one attachment orifice located on said top
element for attachment of said anchoring biscuit device*

3

to said support board for anchoring and support of said two adjacent boards, said attachment orifice being located between said vertical support members.

15. The anchoring biscuit device of claim 14 wherein said attachment orifice is at least one screwhole located on said top element for screwing of said anchoring biscuit device to said support board.

16. The anchoring biscuit device of claim 15 wherein said screwhole has a bevelled top.

17. The anchoring biscuit device of claim 15 wherein said screwhole is non-circular and elongated.

18. The anchoring biscuit device of claim 14 wherein said top element and said vertical support member are unitarily formed.

19. The anchoring biscuit device of claim 14, having exactly one said attachment orifice.

20. An anchoring biscuit device for joining together two adjacent boards and a support board, the adjacent boards being in the same plane and having in their sides pre-cut biscuit receiving slots, and wherein the anchoring biscuit device comprises:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, and opposite end walls, said top element having a center line extending between said end walls, and said respective side walls being adapted to be fitted into said respective biscuit receiving slots of said adjacent boards;

(b) exactly one substantially vertical support member attached to an underside of said top element along said center line of said top element and extending perpen-

4

dicularly downwardly therefrom for a predetermined length in a vertical plane that is aligned with, and directly under, said center line, said predetermined length being adapted to maintain said top element in a predetermined position during use for joining said two adjacent boards together with, and atop, said support board, said at least one vertical support member being substantially flat; and,

(c) at least one attachment orifice located at least on said top element for attachment of said anchoring biscuit device to a support board for anchoring and support of said two adjacent boards; and

wherein said substantially vertical support member is located off-center and to one side of said at least one attachment orifice.

21. The anchoring biscuit device of claim 20 wherein said attachment orifice is at least one screwhole located on said top element for screwing of said anchoring biscuit device to said support board.

22. The anchoring biscuit device of claim 21 wherein said screwhole has a bevelled top.

23. The anchoring biscuit device of claim 21 wherein said screwhole is non-circular and elongated.

24. The anchoring biscuit device of claim 20 wherein said top element and said vertical support member are unitarily formed.

25. The anchoring biscuit device of claim 20, having exactly one said attachment orifice.

26. The anchoring biscuit device of claim 25, wherein said attachment orifice is situated on said center line.

*  *  *  *  *