# Exhibit W

REEXAM

PTO/SB/57 (04-05)
Approved for use through 04/30/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**(Also referred to as FORM PTO-1465)**

04660 U.S. PTO
90007661

08/08/05

# REQUEST FOR *EX PARTE* REEXAMINATION TRANSMITTAL FORM

Address to:
**Mail Stop *Ex Parte* Reexam**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

Attorney Docket No.: 9003.001

Date: August 5, 2005

1. [X] This is a request for *ex parte* reexamination pursuant to 37 CFR 1.510 of patent number 6,402,415
   issued June 11, 2002 . The request is made by:

   [ ] patent owner.   [X] third party requester.

2. [X] The name and address of the person requesting reexamination is:

   G. Steven Harris

   4915 W. 120th Place

   Overland Park, Kansas 66209

3. [X] a. A check in the amount of $ 2,520.00 is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(1);

   [ ] b. The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(1)
      to Deposit Account No. _____ (submit duplicative copy for fee processing); or

   [ ] c. Payment by credit card. Form PTO-2038 is attached.

4. [X] Any refund should be made by [ ] check or [X] credit to Deposit Account No. 50-0548 .
   37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

5. [X] A copy of the patent to be reexamined having a double column format on one side of a separate paper is
   enclosed. 37 CFR 1.510(b)(4)

6. [ ] CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
   [ ] Landscape Table on CD

7. [ ] Nucleotide and/or Amino Acid Sequence Submission
   *If applicable, items a. – c. are required.*

   a. [ ] Computer Readable Form (CRF)
   b. Specification Sequence Listing on:

      i. [ ] CD-ROM (2 copies) or CD-R (2 copies); **or**
      ii. [ ] paper

   c. [ ] Statements verifying identity of above copies

8. [ ] A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. [X] Reexamination of claim(s) 1-12 is requested.

10. [X] A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on
    Form PTO/SB/08, PTO-1449, or equivalent.

11. [X] An English language translation of all necessary and pertinent non-English language patents and/or printed
    publications is included.

08/11/2005 MSALDANA 00000036 90007661
01 FC:1812                              2520.00 OP

[Page 1 of 2]

This collection of information is required by 37 CFR 1.510. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO
to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 2 hours to complete,
including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments
on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent
and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS
ADDRESS. **SEND TO: Mail Stop *Ex Parte* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/57 (04-05)
Approved for use through 04/30/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. [X] The attached detailed request includes at least the following items:

  a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.510(b)(1)
  b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested. 37 CFR 1.510(b)(2)

13. [ ] A proposed amendment is included (only where the patent owner is the requester). 37 CFR 1.510(e)

14. [X] a. It is certified that a copy of this request (if filed by other than the patent owner) has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
The name and address of the party served and the date of service are:

Kenneth P. Glynn

Glynn & Assoc., P.C.

24 Mine Street, Flemington, NJ 08822

Date of Service: August 8, 2005 _____; or

  [ ] b. A duplicate copy is enclosed since service on patent owner was not possible.

15. Correspondence Address: Direct all communication about the reexamination to:

[ ] The address associated with Customer Number: _____

**OR**

[X] Firm or Individual Name  Berenato, White & Stavish-Attn Matthew Stavish,Esq

Address
6550 Rock Spring Drive, Suite 240

| City Bethesda | State MD | Zip 20817 |

Country USA

| Telephone  301-896-0600 | Email 301-896-0607 |

16. [X] The patent is currently the subject of the following concurrent proceeding(s):
  [ ] a.  Copending reissue Application No. _____
  [ ] b.  Copending reexamination Control No. _____
  [ ] c.  Copending Interference No. _____
  [X] d.  Copending litigation styled:

  Eberle v. Harris

  Case No 03-5809; U.S. District Court of New Jersey

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| Authorized Signature | Date |
| --- | --- |
| Matthew Stavish, Esq<br>Typed/Printed Name | 36,286<br>Registration No. | [ ] For Patent Owner Requester<br>[X] For  Third Party Requester |

IC-App-0657



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re: Eberle, III
U.S Patent No.: 6,402,415
Serial Number: 09/186,741
Filed: 11/05/1998
Title: Anchoring Biscuit Device

<div style="border:1px solid black">

**Third Party Request for Ex Parte Reexamination Under 35 USC §§ 302-307 and 37 CFR §1.510**

</div>

**Mail Stop Ex Parte Reexam**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir or Madam:

Reexamination under 35 USC §§ 302-307 and 37 CFR §1.510 is requested of U.S. Patent No. 6,402,415 which issued on June 11, 2002, to Harry W. Eberle, III, by the undersigned acting on behalf of G. Steven Harris, Sr. ("Requester"). This patent is still enforceable. Appendix A is a copy of U.S. Patent No. 6,402,415. Appendix B contains copies of the prior art patents relied on for the present Request.

**Claims For Which Reexamination is Requested**

Reexamination is requested for claims 1-12. A detailed discussion of the relationship of the claims in the Eberle patent, for which reexamination is requested, to the prior art is provided below.

IC-App-0658

## Listing of Prior Patents and Printed Publications

Reexamination is requested in view of the following prior publications:

U.S. Pat. No. 695,722 to Heilmann, issued March 18, 1902 (the Heilmann patent).

U.S. Pat. No. 1,714,738 to Smith, issued May 28, 1929 (the Smith patent).

U.S. Pat. No. 2,201,129 to Weiland, issued May 14, 1940 (the Weiland patent).

U.S. Pat. No. 2,337,156 to Elmendorf, issued December 21, 1943 (the Elmendorf patent).

U.S. Pat. No. 5,619,834 to Chen, issued April 15, 1997, filed December 5, 1995 (the

Chen patent).

German Patent Document 372483, published March 28, 1923, translation provided by the

U.S. PTO Translations Branch during original prosecution of the '415 patent at issue.

The foregoing documents are listed on the enclosed PTO-1449 along with copies thereof.

## Statement Identifying Each Substantial New Question of Patentability Based on Prior Patents and Printed Publications

The prior art listed above, either alone under 35 USC 102, or in combination under 35 USC 103, raises a substantial new question of patentability as to Claims 1-12 of the '415 Eberle patent at issue.

**To wit: Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of the subject Eberle '415 patent read on the device shown in drawing figures 6 & 11 of the Weiland patent (US Patent 2,201,129). The Weiland '129 patent is prior art to the '415 patent under 35 USC 102(b) and was not considered during the original prosecution of the '415 patent.**

Briefly, as to Claim **1** and **10** from the '415 patent at issue: The Weiland Fig. 6 anchoring device discloses a substantially flat top surface 14a subtended on opposed sides by arcs. Extending from beneath the top surface are pairs of aligned support members 13a on opposed sides (see also Claim **8** of the '415 patent at issue) of a centrally located screw hole 12. The members A (see page 2, col.1, lines 59-70, of Weiland '129) attached to a surface using the Weiland anchoring devices are slotted using a small circular cutting wheel (see page 1, col. 2, lines 35-47 of Weiland '129). The screwhole 12 in Weiland is centrally located in the top surface of the anchoring device ('415 Claim **2**). The cross section of the Weiland screwhole shown in Figure 9 of Weiland shows a bevelled (sp. Incorrect in '415 claims) screwhole periphery ('415 Claim **3, 5, & 11**). All of the Weiland anchoring device respective top element and support members are unitarily formed (see Weiland pg. 1, col. 2, lines 51-end, and pg. 2, col. 1, lines 15-21) ('415 Claim **7 & 9**).

**Claims 4, 6, and 12 of the '415 patent are obvious under 35 USC 103 in of Weiland '129, and further in view of German Patent document 372,483 (cited during the prosecution of the '415 patent).**

As to Claims **4, 6,** and **12** of the '415 patent at issue: Each of these claims depends from a claim anticipated by Weiland (USP 2,201,129) as described above. The further feature in each of claims 4, 6, and 12 is an elongated screwhole. German reference 372,483 well establishes that when wood members are attached one to the other, the hole for attaching the respective members is usually a slot so that the screw can move in the hole. The primary reference to Weiland '129 describes the Weiland anchoring devices as being suitable for attaching members of fibrous character (see pg. 2, col. 1, lines 58-70) to a wooden substrate (see pg 1, col. 2, lines 9-16, of Weiland). Hence, by virtue of the suggestion in the German reference that slots are commonly used in such circumstances of wood (rigid fibrous units of fibrous character, Weiland, pg. 2, col. 1, lines 59-70) joining wood, slotting the central attaching holes in Weiland is prima facie obvious under 35 USC 103.

**Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of the subject Eberle '415 patent are obvious in view of Smith (USP 1,714,738) in view of Elmendorf (USP 2,337,156). The Smith and Elmendorf patents are qualifying prior art to the '415 patent under 35 USC 102(b) and, thusly, can be used in a 35 USC 103 rejection. In addition, neither reference was considered during the original prosecution of the '415 patent.**

As to claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of Eberle '415: Smith '738 discloses a flooring anchoring system essentially identical in all materials respects to the Eberle claims identified in the preceding sentence. The single distinction between the Smith anchoring device and the Eberle claims is the "biscuit" shape of the top element (flanges 10 in Smith). Smith indicates that

the flanges.. "may be made in various forms..". Elmendorf ('156) discloses a wood tile flooring system wherein adjacent wooden floor elements (element 18, Fig. 13, '156 patent) are slotted (see Fig. 17, pg. 3, col. 1, lines 28-29, of the '156 patent) to match the shape of an inserted anchoring device 30. Inasmuch as the primary Smith '738 reference suggests that the flange may take "various forms" (See Smith, page 2, col. 2, lines 74-76) and Elmendorf shows a similar wood floor anchoring device arrangement with discrete edgewise slots made using a small saw device (See Elmendorf, page 3, col. 1, lines 26-33), it is prima facie obvious under 35 USC 103 to adopt or modify the Elmendorf flange shape onto the Smith flange. Elmendorf also indicates the "keys or plates 8" can take on "any other desired shape", (see page 2, column 1, lines 65-68). This modification of the Smith top plate in view of Elmendorf results in the subject matter of the identified claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of Eberle '415.

**As to Claims 4, 6, and 12 of the Eberle '415 patent: These claims are obvious under 35 USC 103 in view of the prima facie combination of Smith '738 and Elmendorf '156 above and further in view of the prior cited and discussed (above) German reference '483.**

The single feature lacking in the combination of Smith and Elmendorf is the slotted screwhole included in Eberle claims 4, 6, and 12. The German reference '483 well establishes the prior art convention of using slotted attachment holes when wood is being attached to wood. Inasmuch as Smith and Elmendorf are both attaching wood-to-wood, the reliance and use of the German reference taught slotted holes is prima facie obvious in the combination of Smith and Elmendorf.

**Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 are obvious under 35 USC 103 in view of Heilmann (USP 695,722) in view of Elmendorf ('156). Heilmann '722 and Elmendorf '156 both qualify as prior art under 35 USC 102(b) and can, accordingly, be used in a rejection under 35 USC 103.**

Heilmann '722 discloses an anchoring systems for panels wherein the blocks to be anchored are suitably supplied with edgewise grooves to accept a washer so as to attach the block to an underlying surface (see Heilmann '722, claim 1). With the exception of the Eberle claim recited arced biscuit shape of the anchoring device top plate, the Heilmann device and anchoring system is identical in all material respects to the identified Eberle '415 claims. Elmendorf likewise uses an edgewise groove engaging fastener to connect tile or floor elements to a substrate. Elmendorf further discloses the discrete single edgewise arcuate slot recited in the Eberle claims 1 and 10. In view of the expansive language in Heilmann that "the washers D of any suitable form" may be used, the use of an Elmendorf style arcuate washer is well suggested. With this shape modification to the top element flange or washer of Heilmann to an arcuate shape as shown in Elmendorf, the exact anchoring device recited in the previously recited claims of Eberle is prima facie obvious in view of the prior art.

**As to Claims 4, 6, and 12 of the Eberle '415 patent: These claims are obvious under 35 USC 103 in view of the prima facie combination of Heilmann '722 and Elmendorf '156 above and further in view of the prior cited and discussed (above) German reference '483.**

The single feature lacking in the combination of Heilmann and Elmendorf is the slotted screwhole included in Eberle claims 4, 6, and 12. The German reference '483 well establishes the prior art convention of using slotted attachment holes when wood is being attached to wood. Inasmuch as Heilmann and Elmendorf are both attaching-to-wood (either as a substrate (see

Elmendorf, pg. 1, col. 1, lines 9-14) or as framing (see Heilmann, pg. 1, col. 1, lines 32-36)), the reliance and use of the German reference taught slotted holes is prima facie obvious in the above recited combination of Heilmann and Elmendorf.

## Explanation of Pertinency and Manner of Applying Cited Prior Art to Claims for Which Reexamination is Requested

### Claim 1

Claim 1 of the '415 patent reads as follows:

An anchoring biscuit device for joining three boards, which comprises:

    (a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, said top element having a center area between said opposite sides walls in the shape of arcs;

    (b) at least two substantially vertical support members attached to an underside of said top element at said center area of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joining two adjacent boards which have been pre-cut with biscuit receiving slots, two of said at least two vertical support members being substantially flat, being in the same plane and one of each being located on opposite sides of an attachment orifice; and,

    (c) at least one attachment orifice located at least on said top element for attachment of said anchoring biscuit device to a support board for anchoring and support of said two adjacent boards.

### Manner of Applying Prior Art to Claim 1:

#### Under 35 USC 102:

The Weiland (USP 2,201,129) reference: The preamble of Claim 1 is directed to an anchoring device including an intended use of joining three boards. Inasmuch as the intended use should be given little weight, this feature of the preamble can be largely ignored. However, the Weiland patent anchor device can be used for anchoring tile and any

other element used in "veneering",(see Weiland, page 2, column 1, lines 59-70), and specifically identifies blocks of fibrous character. It is submitted that the Eberle Claim 1 recited boards (either man-made or wood) are "blocks..of fibrous character" as described in Weiland.

The 1st paragraph of Eberle Claim 1 sets forth a "first substantially flat top element having a generally biscuit-shaped top view...with opposite walls in the shape of arcs". The Weiland Fig. 6 anchoring device discloses a substantially flat top surface 14a subtended on opposed sides by arcs and forms a rounded biscuit shape.

The 2nd paragraph of Eberle Claims 1 sets forth "at least two substantially vertical support members attached to an underside of said top element...to maintain said top element in a predetermined position during use.." The Weiland, Figure 6 anchoring device shows, extending from beneath the top surface of the anchoring device, pairs of aligned support members 13a on opposed sides of a centrally located screw hole 12. Further, the Weiland anchoring means is recited, on page 3, column 1, lines 1-8, "to engage the supporting surface rearward of the tiles so that the tiles are positioned in the desired relationship independent of any supporting surface variation." That is, the "predetermined position" recited in Eberle claim 1 is exactly taught in Weiland, for the same reasons.

Lastly, the 2nd paragraph in Eberle Claim 1 recites boards having pre-cut receiving slots. The Weiland members A (see page 2, col.1, lines 59-70, of Weiland) attached to a surface are slotted using a small circular cutting wheel (see page 1, col. 2, lines 35-47 of Weiland) so to receive the Weiland anchoring device.

As to the last paragraph in Eberle Claim 1: The screwhole 12 in the Weiland Figure 6 anchoring device is centrally located in the top surface of the anchoring device.

**Alternatively, under 35 USC 103:**

As to claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of Eberle '415: USP 1,714,738 to Smith discloses a flooring anchoring system essentially identical in all materials respects to the Eberle claims identified in the preceding sentence. The Smith floor anchoring system anchors slotted boards to a board substrate beneath. The anchors shown in Smith Figs. 3 and 4 each have tops walls (9 & 22) that have extending portions (10 & 21) that engage slotted flooring boards (7 & 8). Each anchor includes downwardly projecting (11 & 20) aligned feet that space the anchor from the underlying substrate. Each anchor includes a centrally located attachment attachment orifice (13 & 23).

As to the features recited in Eberle Claim 2 specifically: See Smith Figs. 3 and 4 and attachment holes 13 and 23 respectively wherein the attachment orifices are located in a top element of the Smith anchoring device.

As to the features in Eberle Claims 3, 5, and 11: See the depressed area around the respective attachment orifice regions of the Smith anchor devices in Figs. 3 and 4. These respective depressions are "bevelled" at least with respect to the surrounding surface of the top element 9 and 22, respectively, shown in Smith.

As to the features in Eberle Claim 7 and 9: See Smith, col. 1, lines 32-37, wherein the illustrated fasteners are described as being formed from sheet metal and bent accordingly to a desired shape. Hence, the Smith fasteners are "unitarily" formed as recited in claims 7 and 9 of Eberle.

As to the features in Eberle Claim 8: Both of the fasteners (anchoring devices) shown in Figs. 3 & 4 of Smith include vertical support members 11 and 20 respectively located on each side of attachment orifices 13 and 23 respectively.

The single distinction between the Smith anchoring device and the Eberle claimed anchor is the arc subtended "biscuit" shape of the top element (flanges 10 in Smith) recited in Eberle Claims 1 and 10. In this regard, Smith indicates that the flanges.. "may be made in various forms..". (See Smith, page 2, col. 2, lines 74-76). Elmendorf (USP 2,337,156) discloses a wood tile flooring system wherein adjacent wooden floor elements (element 18, Fig. 13, '156 patent) are slotted (see Fig. 17, pg. 3, col. 1, lines 28-29, of the '156 patent) to match the shape of an inserted anchoring device 30. Inasmuch as the primary Smith '738 reference suggests that the flange may take "various forms" and Elmendorf shows a similar wood floor anchoring device arrangement with discrete edgewise slots made using a small circular saw device, it is prima facie obvious under 35 USC 103 to adopt or modify the Elmendorf flange shape onto the Smith flange so as to accommodate discretely slotted, as opposed to longitudinally grooved, flooring members. This modification of Smith, in view of the Elmendorf structure and system, to create arced flanges results, exactly, in the recited subject matter of the identified claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of Eberle '415 patent at issue.

**Alternatively Under 35 USC 103:**

Heilmann discloses an anchoring systems for panels wherein the blocks to be anchored are suitably supplied with edgewise grooves to accept a washer so as to attach the block to an underlying surface (see Heilmann, claim 1). With the exception of the Eberle claim recited arced biscuit shape of the anchoring device top plate, the Heilmann device and anchoring system is identical in all material respects to the identified Eberle '415 claims. Elmendorf likewise uses an edgewise groove engaging fastener to connect tile or floor elements to a substrate. Elmendorf further discloses the discrete single edgewise arcuate slot recited in the Eberle claims 1 and 10. In view of the expansive language in Heilmann that "the washers D of any suitable form" may be

used, the use of an Elmendorf style arcuate washer is well suggested. With this shape modification to the top element flange or washer of Heilmann to an arcuate shape as shown in Elmendorf, the exact anchoring device recited in the previously recited claims of Eberle is prima facie obvious in view of the prior art.

## Manner of Applying Prior Art to Claim 2

Claim 2. The anchoring biscuit device of claim 1 wherein said attachment orifice is at least one screwhole located on said top element for screwing of said anchoring biscuit device to a support board.

### Under 35 USC 102:

The Weiland Figure 6 anchoring device shows an attachment orifice 12 located in the top element of Weiland for accepting screws (11) for anchoring the device.

### Under 35 USC 103:

See above, under Claim 1 explanation of Smith in view Elmendorf above. Smith shows a centrally located attachment orifice 13 and 23.

### Alternatively under 35 USC 103:

See above, under Claim 1 explanation of Heilmann in view of Elmendorf. The Heilmann anchoring device shows a centrally located attachment orifice d1.

## Manner of Applying Prior Art to Claim 3

Claim 3. The anchoring biscuit device of claim 2 wherein said screwhole has a bevelled top.

### Under 35 USC 102:

The Weiland anchoring device is shown in cross section in Figure 9 having a screw hole with an inserted anchoring screw. The screwhole is shown as bevelled in the Weiland device.

**Under 35 USC 103:**

See above, under Claim 1 explanation of Smith in view Elmendorf above. Smith shows depressed areas surrounding the attachment orifice that are "bevelled" with respect to the top plates in Smith.

**Alternatively under 35 USC 103:**

See above, under Claim 1 explanation of Heilmann in view of Elmendorf and further in view of German reference '483. The German reference '483 describes the advantages when joining wood-to-wood of slotted elongated holes. In addition, each of the holes in the German reference is shown as bevelled (see edge D, figure in Abb. 2).

## Manner of Applying Prior Art to Claim 4

Claim 4. The anchoring biscuit device of claim 2 wherein said screwhole is non-circular and elongated.

**Under 35 USC 103:**

Claim 4 of the '415 patent is obvious under 35 USC 103 in view of Weiland, and further in view of German Patent document 372,483 (cited during the prosecution of the '415 patent). The further feature in claim 4 is an elongated screwhole. German reference 372,483 well establishes that when wood members are attached one to the other, the hole used for respectively attaching the wooden members is usually a slot so that the screw can move in the hole. The primary reference to Weiland describes the Weiland anchoring devices as being suitable for attaching members of fibrous character (see pg. 2, col. 1, lines 58-70) to a wooden substrate (see pg 1, col. 2, lines 9-16, of Weiland). Hence, by virtue of the suggestion in the German reference that slots are commonly used in such circumstances of wood (rigid fibrous units of fibrous

character, Weiland, pg. 2, col. 1, lines 59-70) joining wood, slotting the central attaching holes in Weiland in view of the German 372,483 reference is prima facie obvious under 35 USC 103.

**Alternatively under 103:**

The single feature lacking in the combination of Smith and Elmendorf (recited above)is the slotted screwhole included in Eberle claims 4, 6, and 12. The German reference '483 well establishes the prior art convention of using slotted attachment holes when wood is being attached to wood. Inasmuch as Smith and Elmendorf are both attaching wood-to-wood, the reliance and use of the German reference taught slotted holes is prima facie obvious in the combination of Smith and Elmendorf.

**Alternatively under 103:**

See above, under Claim 1 explanation of Heilmann in view of Elmendorf and further in view of German reference '483. The German reference '483 describes the advantages when joining wood-to-wood of slotted elongated holes. In addition, each of the holes in the German reference is shown as slotted (see shape of slot, Abb. 3)and bevelled (see edge D, figure in Abb. 2).

**Manner of Applying Prior Art to Claim 5**

Claim 5. The anchoring biscuit device of claim 1 wherein said attachment orifice has a beveled top.

**Under 35 USC 102:**

The Weiland anchoring device is shown in cross section in Figure 9 having a screw hole with an inserted anchoring screw. The screwhole is shown as bevelled in the Weiland device.

**Under 35 USC 103:**

See above, under Claim 1 explanation of Smith in view Elmendorf above.

**Alternatively under 35 USC 103:**

See above, under Claim 3, explanation of Heilmann in view of Elmendorf and further in view of German reference '483.

## Manner of Applying Prior Art to Claim 6

Claim 6. The anchoring biscuit device of claim 1 wherein said attachment orifice is non-circular and elongated.

### Under 35 USC 103:

Claim 6 of the '415 patent is obvious under 35 USC 103 in of Weiland, and further in view of German Patent document 372,483 (cited during the prosecution of the '415 patent). The further feature in claim 6 is an elongated screwhole. German reference 372,483 well establishes that when wood members are attached one to the other, the hole used for respectively attaching the wooden members is usually a slot so that the screw can move in the hole. The primary reference to Weiland describes the Weiland anchoring devices as being suitable for attaching members of fibrous character (see pg. 2, col. 1, lines 58-70) to a wooden substrate (see pg 1, col. 2, lines 9-16, of Weiland). Hence, by virtue of the suggestion in the German reference that slots are commonly used in such circumstances of wood (rigid fibrous units of fibrous character, Weiland, pg. 2, col. 1, lines 59-70) joining wood, slotting the central attaching holes in Weiland in view of the German 372,483 reference is prima facie obvious under 35 USC 103.

### Alternatively under 35 USC 103:

The single feature lacking in the combination of Smith and Elmendorf is the slotted screwhole included in Eberle claims 4, 6, and 12. The German reference '483 well establishes

the prior art convention of using slotted attachment holes when wood is being attached to wood. Inasmuch as Smith and Elmendorf are both attaching wood-to-wood, the reliance and use of the German reference taught slotted holes is prima facie obvious in the combination of Smith and Elmendorf.

**Alternatively under 35 USC 103:**

See above explanation of Heilmann in view of Elmendorf and further in view of German reference '483 in relation to Claim 4.

## Manner of Applying Prior Art to Claim 7

Claim 7. The anchoring biscuit device of claim 1 wherein said top element and said vertical support member are unitarily formed.

**Under 35 USC 102:**

All of the Weiland anchoring device respective top element and support members are unitarily formed (see Weiland pg. 1, col. 2, lines 51-end, and pg. 2, col. 1, lines 15-21).

**Under 35 USC 103:**

See above, under Claim 1 explanation of Smith in view Elmendorf above. All interations of Smith are unitarily formed.

**Alternatively under 35 USC 103:**

See above explanation of Heilmann in view of Elmendorf in relation to Claim 1. Each iteration of the Heilmann anchoring device D is unitarily formed.

## Manner of Applying Prior Art to Claim 8

Claim 8. The anchoring device of claim 1 wherein there are two vertical support members and one is located on each side of said attachment orifice.

**Under 35 USC 102:**

It is not clear how this claim further limits claim 1. However, the re-recited feature of the vertical support members located one on each side of the attachment orifice is clearly shown in Figure 6 (vertical supports13a located on each side of attachment orifice 12) of Weiland.

**Under 35 USC 103:**

See above, under Claim 1 explanation of Smith in view Elmendorf above. Smith shows vertical support elements 11, 20 on each side of the attachment orifice.

**Alternatively under 35 USC 103:**

See above, under Claim 1 explanation of Heilmann in view of Elmendorf above. Heilmann shows vertical support elements d on each side of the attachment orifice d1 that passes entirely through the support element d from the Hielmann top plate and through the support element d.

## Manner of Applying Prior Art to Claim 9

Claim 9. The anchoring device of claim 8 wherein said top element and said two vertical support members are unitarily formed.

**Under 35 USC 102:**

All of the Weiland anchoring device respective top element and support members are unitarily formed (see Weiland pg. 1, col. 2, lines 51-end, and pg. 2,col. 1, lines 15-21).

**Under 35 USC 103:**

See above, under Claim 1 explanation of Smith in view Elmendorf above. All embodiments of Smith are unitarily formed.

**Alternatively under 35 USC 103:**

See above explanation of Hielmann in view of Elmendorf under Claim 1. All interations of Heilmann are unitarily formed.

## Manner of Applying Prior Art to Claim 10

Claim 10. An anchoring biscuit device for joining three boards, which comprises:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, said top element having a center area between said opposite sides walls in the shape of arcs;

(b) at least one substantially vertical support member attached to an underside of said top element at said center area of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joining two adjacent boards which have been pre-cut with biscuit receiving slots, said at least one vertical support member being substantially flat; and,

(c) at least one attachment orifice located at least on said top element for attachment of said anchoring biscuit device to a support board for anchoring and support of said two adjacent boards.

**Under 35 USC 102:**

The preamble of Claim 10 is directed to an anchoring device including an intended use of joining three boards. Inasmuch as the intended use should be given little weight, this feature of the preamble can be largely ignored. However, the Weiland patent anchor device can be used for anchoring tile and any other element used in "veneering",(see Weiland, page 2,

column 1, lines 59-70), and specifically identifies blocks of fibrous character. It is submitted that Eberle Claim 1 recited boards (either man-made or wood) are "blocks..of fibrous character" as described in Weiland.

The 1st paragraph of Eberle Claim 10 sets forth a "first substantially flat top element having a generally biscuit-shaped top view…with opposite walls in the shape of arcs". The Weiland Fig. 6 anchoring device discloses a substantially flat top surface 14a subtended on opposed sides by arcs.

The 2nd paragraph of Eberle Claims 10 sets forth "at least one substantially vertical support members attached to an underside of said top element…to maintain said top element in a predetermined position during use.." The Weiland, Figure 6 anchoring device shows, extending from beneath the top surface of the anchoring device, "at least one substantially vertical support member" 13a on one side of a centrally located screw hole 12. Further, the Weiland anchoring means is recited, on page 3, column 1, lines 1-8, "to engage the supporting surface rearward of the tiles so that the tiles are positioned in the desired relationship independent of any supporting surface variation." That is, the "predetermined position" recited in Eberle claim 10 is exactly taught in Weiland, for the same reasons.

Lastly, the 2nd paragraph in Eberle Claim 10 recites boards having pre-cut receiving slots. The Weiland members A (see page 2, col.1, lines 59-70, of Weiland) attached to a surface are slotted using a small circular cutting wheel (see page 1, col. 2, lines 35-47 of Weiland) so to receive the Weiland anchoring device.

As to the last paragraph in Eberle Claim 10: The Weiland anchoring device shows at least one support element (13a) located off-center to one side of the attachment orifice 12.

**Under 35 USC 103:**

See above, under Claim 1 explanation of Smith in view Elmendorf above. Inasmuch as the above combination has at least two vertical support elements, the combination would also have "at least one vertical support element" as recited in Claim 10.

**Alternatively under 35 USC 103:**

See above explanation of Heilmann in view of Elmendorf above under Claim 1. Again, inasmuch as the recited combination has "at least two vertical support elements", the combination would also have "at least one substantially vertical support member…located to one side of said attachment orifice". The language of Claim 10 does not preclude another vertical support member elsewhere extending downwardly from the top element. Hence, Heilmann meets the requirements of Claim 10 when, under 35 USC 103, it is combined with an alternative shape for the top element as suggested in Heilmann (See Heilmann, page 1, col. 1, lines 46-51), in view of Elmendorf (arc subtended plates or keys 8).

## Manner of Applying Prior Art to Claim 11

Claim 11. The anchoring biscuit device of claim 10 wherein said attachment orifice has a bevelled top.

**Under 35 USC 102:**

The Weiland anchoring device is shown in cross section in Figure 9 having a screw hole with an inserted anchoring screw. The screwhole is shown as bevelled in the Weiland device.

**Under 35 USC 103:**

See above, under Claim 1 & 10 explanation of Smith in view Elmendorf above.

**Alternatively under 35 USC 103:**

See above explanation of Claim 10 combination of Heilmann in view of Elmendorf and further in view of German reference '483. The German reference '483 shows a beveled and slotted attachment orifice for use when wood is attached to wood. The slotting and beveling of wood to wood connection holes is conventional and shown in the German '483 reference. Inasmuch as each of Heilmann and Elmensdorf use wood to wood connections, incorporating the slotting and beveling of the German '483 reference would be obvious to one of ordinary skill in the veneering field.

## Manner of Applying Prior Art to Claim 12

Claim 12. The anchoring biscuit device of claim 10 wherein said attachment orifice is non-circular and elongated.

**Under 35 USC 103:**

Claim 12 of the '415 patent is obvious under 35 USC 103 in of Weiland, and further in view of German Patent document 372,483 (cited during the prosecution of the '415 patent). The further feature in claim 12 is an elongated screwhole. German reference 372,483 well establishes that when wood members are attached one to the other, the hole used for respectively attaching the wooden members is usually a slot so that the screw can move in the hole. The primary reference to Weiland describes the Weiland anchoring devices as being suitable for attaching members of fibrous character (see pg. 2, col. 1, lines 58-70) to a wooden substrate (see pg 1, col. 2, lines 9-16, of Weiland). Hence, by virtue of the suggestion in the German reference that slots are commonly used in such circumstances of wood (rigid fibrous units of fibrous character,

Weiland, pg. 2, col. 1, lines 59-70) joining wood, slotting the central attaching holes in Weiland in view of the German 372,483 reference is prima facie obvious under 35 USC 103.

**Alternatively under 35 USC 103:**

The single feature lacking in the combination of Smith and Elmendorf (recited above)is the slotted screwhole included in Eberle claims 4, 6, and 12. The German reference '483 well establishes the prior art convention of using slotted attachment holes when wood is being attached to wood. Inasmuch as Smith and Elmendorf are both attaching wood-to-wood, the reliance and use of the German reference taught slotted holes is prima facie obvious in the combination of Smith and Elmendorf.

**Alternatively under 35 USC 103:**

See above explanation of Claim 10 combination of Heilmann in view of Elmendorf and further in view of German reference '483. The German reference '483 shows a beveled and slotted attachment orifice for use when wood is attached to wood. The slotting and beveling of wood to wood connection holes is conventional and shown in the German '483 reference. Inasmuch as each of Heilmann and Elmensdorf use wood to wood connections, incorporating the slotting and beveling of the German '483 reference would be obvious to one of ordinary skill in the veneering field.

**As to Each 35 USC 103 Rejection Posed Above:**

The Chen USP 5,619,834 reference is cited, as prior art qualifying against Eberle under 35 USC 102(e), as showing in Figures 5, 9 & 10 a "biscuit" shaped retainer for veneered elements. Inasmuch as each of the foregoing references to Smith and Heilmann each suggest a variety of shapes for the veneer retainer flanges, the shape for a retainer, key, or plate in the conventional and widely familiar "biscuit" shape incorporated into the flange shapes of either

Smith of Heilmann would be obvious to one of ordinary skill in the veneering field as shown by

Chen.


**Conclusion**

Based on the prior art and arguments provided herewith, Patentee's claims 1-12 are

unpatentable under 35 USC 102 or, alternatively, under various combinations described under 35

USC 103, and should, accordingly, be disallowed.


Respectfully,


Matthew W. Stavish, Esq.
USPTO Reg. No. 36286
Berenato White & Stavish LLC
6550 Rock Spring Drive, Suite 240
Bethesda, Maryland, 20817
Tel. No. (301) 896-0600
Fax No. (301) 896-0607
Attorneys for Requester


**Certificate of Mailing/Service:** I certify that on the date below, this Request for Ex Parte
Reexamination and referenced attachments, if any, was sent via Courier to: Mail Stop Ex Parte
Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450, and via First
Class Mail to Kenneth P. Glynn, Esq, attorney of record for the patent.


_8_ August 2005                          _____
                                                  Signature

**Appendix A – U.S. Patent No. 6,402,415 (Eberle III)**

IC-App-0681



US006402415B1

(12) **United States Patent**  (10) Patent No.: **US 6,402,415 B1**
Eberle, III  (45) Date of Patent: **Jun. 11, 2002**

(54) **ANCHORING BISCUIT DEVICE**

(76) Inventor: **Harry W. Eberle, III**, 357 Vernoy Rd., Califon, NJ (US) 07830

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/186,741**

(22) Filed: **Nov. 5, 1998**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 08/811,898, filed on Mar. 5, 1997, now abandoned.

(51) Int. Cl.[7] .......................................... B25C 3/00
(52) U.S. Cl. ................. 403/231; 403/232.1; 403/408.1; 52/483.1
(58) Field of Search .................................. 403/230, 231, 403/232.1, 294, 298, 401, 408.1; 52/408, 483.1, 506.05, 586.1, 586.2, 585.1, 772

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,184,080 A | 5/1916 | D'Arcy | |
| 2,332,081 A | 10/1943 | Hunt et al. | 20/91 |
| 2,362,252 A | 11/1944 | Ellinwood | 20/4 |
| 2,398,603 A | 4/1946 | Soderberg | 85/49 |
| 2,406,387 A | 8/1946 | Lank | 144/309 |
| 4,641,988 A | 2/1987 | Ganner | 403/245 |
| 4,682,458 A | 7/1987 | Sparrow | 52/309.8 |
| 5,004,027 A | 4/1991 | Legler et al. | 144/136 R |
| 5,071,280 A | * 12/1991 | Turner | 403/232.1 |
| 5,160,211 A | * 11/1992 | Gilb | 403/232.1 X |
| 5,182,891 A | 2/1993 | Slocum | 52/480 |
| 5,251,996 A | 10/1993 | Hiller et al. | 403/406.1 |
| 5,377,732 A | 1/1995 | Fujii et al. | 144/347 |
| 5,419,649 A | * 5/1995 | Gilb | 403/232.1 X |
| 5,458,433 A | 10/1995 | Stastny | 403/408.1 |
| 5,480,117 A | 1/1996 | Fleming, III | 248/231.9 |
| 5,529,428 A | 6/1996 | Bischof | 403/408.1 |
| 5,564,248 A | * 10/1996 | Callies | 403/232.1 X |
| 5,603,580 A | * 2/1997 | Leek et al. | 403/232.1 |
| 5,660,016 A | 8/1997 | Erwin et al. | 52/483.1 |

FOREIGN PATENT DOCUMENTS

DE 372483 * 3/1923 ................. 403/408

* cited by examiner

*Primary Examiner*—Bruce A. Lev
(74) *Attorney, Agent, or Firm*—Kenneth P. Glynn, Esq.

(57) **ABSTRACT**

An anchoring biscuit device for joining three boards. It includes, (a) a first substantially flat horizontal top element having a generally biscuit-shaped configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and, (c) an attachment orifice located at least on the top element for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated.

**12 Claims, 3 Drawing Sheets**







Fig. 4

Fig. 1

Fig. 2

Fig. 3

IC-App-0683



Fig. 7



Fig. 8



Fig. 5



Fig. 6

IC-App-0684



Fig. 10

Fig. 11



Fig. 9

# ANCHORING BISCUIT DEVICE

## REFERENCE TO RELATED CASE

This is a continuation-in-part of U.S. patent application Ser. No. 08/811,898, now abandoned filed on Mar. 5, 1997 entitled, "Anchoring Biscuit Device for Joining Two Adjacent Boards", by the same inventor herein.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention is directed to an improved biscuit for joining adjacent boards. More specifically, the invention is an anchoring biscuit device, as well an anchoring half biscuit device which has the ability for pre-setting distances between adjacent boards and attaching to at least one board by means in addition to the biscuit itself. The anchoring biscuit device physically joins two adjacent boards in the same plane to a third, supporting board. The anchoring half-biscuit device joins two adjacent boards at right angles to one another.

### 2. Information Disclosure Statement

The following patents are representative of the state of the art for wood joining devices, equipment and methods:

U.S. Pat. No. 1,184,080 to D'Arcy describes a structure of the class described, the combination of frame pieces disposed at an angle to each other and plate-like corner irons having angularly disposed flanges, said corner irons being arranged in opposed pairs on the sides of and secured to the ends of meeting frame pieces with their flanges engaging the inner edges thereof in overlapping telescoping relation to each other, the inner flanges having vertical nail slots therein and brads on their edges driven into the frame pieces, the outer flanges having nail perforations opposite the nail slots, there being nails disposed through the said perforations and slots and driven into the frame.

U.S. Pat. No. 2,332,081 to G. M. Hunt et al is directed to a wooden panel. It is described as a panel comprising wooden strips joined along their edges with glue, each strip having at least one groove in its edge matching groove in the edge of the adjoining strip, an asbestos millboard spline fitted in the matching grooves and bridging the joint between the strips, crossbands covering the strips on both sides of the panel, and veneers covering the crossbands.

U.S. Pat. No. 2,362,252 to Ellinwood describes a wall structure of the character described comprising a pair of adjacent wallboard panels having meeting edges, each of said panels being formed with a groove opening into its meeting edge, the groove in each panel providing an outer lip and an inner lip, said outer lips being in abutting relation, a joining strip permanently secured to the under surface of said outer lips, said inner lips being spaced, a T-shaped connecting member movably positioned in said groove and having a base in spaced relation to said inner lips, and means for anchoring said connecting member to a structural element.

U.S. Pat. No. 2,398,603 to Soderberg describes a joining staple, comprising a metal body having at least two portions extending at right angles to each other and at least two teeth carried upon each of said portions, each of said teeth consisting of a flat substantially rectangular body having a cutting edge extending substantially parallel to its body portion, the cutting edges of all of said teeth being located in one plane, each of said portions having another cutting edge extending between the teeth of that portion, the second mentioned cutting edges being also located in one plane.

U.S. Pat. No. 2,406,387 to Lank describes the method of constructing a plurality of wooden posts each of which has a connector element incorporated therein adjacent each end thereof which method comprises forming a plurality of longitudinally extending grooves in one side of each of a pair of wooden blanks from which the posts are to be formed, forming a transverse groove adjacent each end of said side of each of said blanks with the transverse grooves intersecting the longitudinal grooves, providing a pair of connector retaining members with a plurality of seats for receiving connector elements, the number and spacing of said seats in each of said connector retaining members conforming to the number and spacing of the longitudinal grooves in each of said blanks, placing connector elements in each of said seats, positioning said blanks with their grooved sides together and with said connector retaining members in said transverse grooves, bonding said blanks together, and severing the thus bonded assembly along longitudinal lines intermediate said longitudinal grooves.

U.S. Pat. No. 4,641,988 to Ganner is directed to a fitting for releasably joining two structural components. It is illustrated for releasably joining two structural components particularly plate-shaped structural components which extend at a right angle relative to one another, a fitting has a preferably cylindrical locking element which can be inserted either directly in a bore in the first structural component or it can be inserted indirectly in a housing, and a holding piece with a holding projection anchored in the second structural component. In the assembled position, the holding projection & abuts against one or two gripping surfaces of the locking element which gripping surfaces are of, for example, eccentric shape, and the holding projection is pulled toward the locking element when the locking element is turned. The holding piece is constructed plate-shaped and is insertable in a slot in the second structural component.

U.S. Pat. No. 4,682,458 to Sparrow describes a floor composed of parallel spaced beams having flanges and blocks of polystyrene foam which are laid on the flanges to bridge the gaps between the beams. Boards are laid on the polystyrene blocks, and are supported by the blocks, which form load-bearing members of the floor. The blocks may have flanged portions extending over the beams, so as to provide heat insulation.

U.S. Pat. No. 5,004,027 to Legler et al illustrates a biscuit joiner. It is described as a biscuit joiner for cutting semi-elliptical slots in opposing edges of workpieces which are to be joined along those edges includes a housing adapted to be mounted upon the quill of a multi-purpose woodworking tool, which housing encloses a rotary saw blade adapted to be attached to a spindle projecting from the quill on which the housing is mounted. A spring loaded guide projects from the front face of the housing and has a slot therethrough, so that when the front face of the guide is engaged by an edge of a workpiece to be slotted the guide can be pushed inwardly against spring pressure, allowing the rotary saw blade to be exposed and form a slot in the edge of the workpiece. Adjustable stops are provided on the guide so that a desired depth of cut will automatically be made after adjustment. An alternative construction of this biscuit joiner is especially adapted for use in conjunction with a conventional drill press, with the arbor which carries the saw blade being clamped in the chuck on the drive spindle of the drill motor.

U.S. Pat. No. 5,182,891 to Slocum describes a flooring construction which is provided having a unitary construction with a top layer providing a finished flooring surface and an

3

insulation layer adjacent the top layer. The flooring panel includes an upper portion and a lower portion. The upper portion has a larger dimension than the lower portion and extends outwardly beyond the lower portion. A recessed portion between the upper portion and the lower portion defines a channel. A plurality of interlock support elements having a vertical web and an upper horizontal flange are arranged so that the horizontal flange extends into the channel. The vertical web extends below the lower portion to raise the flooring.

U.S. Pat. No. 5,251,996 to Hiller et al describes a connecting element for connecting two parts generally in a connection plane has a first portion for connecting the element relative to a first of the parts and second portion for connecting the element relative to the second part. The second portion includes actuation members which on relative movement of the parts substantially along the connection plane urge the parts forcefully towards each other.

U.S. Pat. No. 5,377,732 to Fujii et al illustrates a wood joining structure and method thereof. It is described as a technique is provided for joining wood members. A plurality of slits are formed on the end portions of wood pieces desired to be joined, and the end portions are abutted with corresponding slits in alignment to form a common surface. Each of the abutted wood end portions is fixed by temporary fixing means to a desired joining state. Thereafter, an adhesive agent is applied into the interior surfaces of the slits. Connecting plates, e.g., made of a reinforced plastic material coated with the adhesive agent, are inserted into the aligned slits. The adhesive agent is then hardened.

U.S. Pat. No. 5,458,433 to Stastny explicates a biscuit and joint made using same. It is described as a biscuit having octagonal outer periphery is used to form a joint between first and second workpieces. The biscuit fits within arcuate slots formed in the workpieces, with glue placed in the slots and/or on the biscuit before the joint is put together. The biscuit is made of an anhydrous compressed wood.

U.S. Pat. No. 5,480,117 to Fleming, III describes a bracket for mounting a rotary lock member in the frame of a panel which is provided. The bracket is a preferably U-shaped body having a base and two legs extending therefrom. The inner dimension of the bracket is chosen to allow insertion of a rotary lock member therein. Panel engaging steps and protrusions are located on the outside surface of each leg for engaging the frame material. The legs of the bracket are biased inwardly towards one another, such that when a locking member is inserted therein, the legs are pressed outwardly, driving the protrusions into the frame material. A number of bores are located in the bracket to allow supplemental locking members to lock the bracket to the frame.

U.S. Pat. No. 5,529,428 to Bischof is directed to a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic. It is described as a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic, consisting of a lamellar part, which provides the non-positive connection with the first workpiece provided with a groove and a transverse hole, and a bolt-like part which, through screwing or pinning, realizes the non-positive connection with the second workpiece provided with a longitudinal hole. The lamellar part has, in the center, a hole which is at right angles to the plane of the lamella and is intended for fixing in the groove of the workpiece. Variants having a wing-like long or rectangular short lamellar part and a bolt-like part in the form of a conical wood screw, cylindrical screw, screw having a metal thread, threaded sleeve or pin. Accessories: screwing tool and drilling template.

4

U.S. Pat. No. 5,660,016 to Erwin et al describes an extruded plastic decking plank for mounting to an underlying support structure, the plank having a rigid foam core, a resilient outer plastic shell, and a clamping portion for securing the plank to the support structure. The top surface of the plank can be provided with a non-slip surface. The invention also includes an attachment system for securing such decking planks to a support structure by engaging the clamping portions of the decking planks onto clamps or hold down blocks which are secured onto the support structure, and which permit relative motion between the planks and the structure in the planks' lengthwise direction to prevent stress and buckling caused by uneven expansion.

Notwithstanding the prior art, the present invention is neither taught nor rendered obvious thereby.

## SUMMARY OF THE INVENTION

The present invention is an anchoring biscuit device for joining three boards. It includes, (a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and, (c) an attachment orifice located at least on the top element for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated.

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention should be more fully understood when the specification herein is taken in conjunction with the drawings appended hereto wherein:

FIG. 1 illustrates a top view of one preferred embodiment of the present invention anchoring biscuit device,

FIG. 2 illustrates a front view, and

FIG. 3 illustrates a side view thereof;

FIG. 4 shows a side view of the present invention device shown in FIGS. 1 through 3 but being attached to a joist and a first deck board and about to be attached to a second deck board where both deck boards are supported by that joist;

FIG. 5 shows a front view of an alternative embodiment present invention anchoring biscuit device;

FIGS. 6 and 7 show top views of alternative present invention anchoring biscuit devices;

FIG. 8 shows a partial side cut view of the device shown in FIG. 7 to illustrate the beveled cut of the screw hole;

FIG. 9 shows a side view of the present invention device shown in FIG. 7, but being attached to a joist and a first deck board and about to be attached to a second deck board where both deck boards are supported by that joist; and,

FIG. 10 and FIG. 11 show front views of alternative embodiment present invention anchoring biscuit devices having single vertical extended members.

## DETAILED DESCRIPTION OF THE PRESENT INVENTION

In FIG. 1, there is shown a top view of present invention anchor biscuit device 1. Device 1 includes a top element 3

having a flat top surface as shown, and a top view shape of a biscuit. Thus, it includes walls 5 and 7 in the shape of arcs having predetermined radius and predetermined arc lengths. In this case, they are perfectly symmetrical and have flat endwalls 9 and 11. Without exceeding the scope of the present invention, these biscuit shapes could be slightly modified, such as having slightly non-circular arcs or linear segments at angles approximating arcs.

Top element 3 also includes an attachment means, in this case, screw hole 13 located on center. This enables the user to nail or screw device 1 into a joist, as more fully described in conjunction with FIG. 4 below.

FIGS. 2 and 3 show front and end (right side) views, respectively of device 1 shown in FIG. 1. Thus, device 1 includes vertical support members 15 and 17 with a space therebetween to permit a screw or nail to pass through screw hole 13 into a joist or support board. Vertical support members 15 and 17 have a predetermined height so as to rest on a joist in such a way as to establish biscuit top element 3 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots corresponding thereto.

FIG. 4 shows present invention device 1 with identical parts identically numbered. Top element rear biscuit wall 5 is inserted into pre-cut biscuit slot 27 of horizontal beam 21, as shown. Screw 31 is inserted into screw hole 13 and into joist beam 25. This anchors device 1 to joist beam 25 and establishes the elevation of top element 3 so as to match with biscuit slot 27. Beam 23 will be placed atop joist 25 and adjacent to beam 21 by being slid into position with wall 7 fitting into slot 29 and the bottom of beam 23 resting on joist 25. By this method, device 1 attaches all three boards to one another as the biscuit aspects are typically tight-fitting. Thus, for example, decking boards may be attached without the need for nails or screws entering the beams from the top.

FIG. 5 shows an alternative embodiment present invention device 51 which has multiple screw holes 43, 53 and 55 located in a straight line on center of top element 47. It includes ends 41 and 49, and it has a plurality of vertical support members such as vertical support members 45 and 57, with spaces therebetween for screw or nail insertions. Device 51 is used in the same manner as device 1 described above with respect to FIG. 4.

FIGS. 6 and 7 show top views of alternative embodiment present invention anchoring biscuit devices 61 and 91 respectively. In FIG. 6, there is shown a top view of present invention anchor biscuit device 61. Device 61 includes a top element 63 having a flat top surface as shown, and a top view shape of a biscuit. Thus, it includes walls 65 and 67 in the shape of arcs having predetermined radius and predetermined arc lengths. In this case, they are perfectly symmetrical and have flat endwalls 69 and 71. Top element 63 also includes an attachment means, in this case, screw hole 73 located on center. Screw hole 73 has a bevel cut 75 at its top. This enables the user to nail or screw device 61 into a joist with the screw or nail being installed vertically, or, more preferably, at an angle.

In FIG. 7, there is shown a top view of present invention anchor biscuit device 91. Device 91 includes a top element 93 having a flat top surface as shown, and a top view shape of a biscuit. Thus, it includes walls 95 and 97 in the shape of arcs having predetermined radius and predetermined arc lengths. In this case, they are perfectly symmetrical and have flat endwalls 99 and 101. Top element 93 also includes an attachment means, screw hole 103 located on center. Note that screw hole 103 is elongated and has a beveled top 105.

This enables the user to nail or screw device 91 into a joist, either vertically or at an angle, as more fully described in conjunction with FIG. 8 below.

FIG. 8 shows a partial side cut view of device 91 of FIG. 7 to illustrate the beveled cut 105 of screw hole 103.

FIG. 9 shows present invention device 91 of FIG. 7 and the boards shown in FIG. 4, with identical parts identically numbered. Top element 93 at rear biscuit wall 95 is inserted into pre-cut biscuit slot 27 of horizontal beam 21, as shown. Screw 131 is inserted at about a 30° angle from vertical into beveled screw hole 103 and into horizontal beam 21 and joist beam 25. This anchors device 91 and horizontal beam 21 to joist beam 25 and support member 117 (and 115 not shown) maintains top element 93 in a horizontal position during screwing and to maintain its position with biscuit slot 27. Beam 23 will be placed atop joist 25 and adjacent to beam 21 by being slid into position with wall 97 fitting into slot 29 and the bottom of beam 23 resting on joist 25. By this method, device 91 attaches all three boards to one another as the biscuit aspects are typically tight-fitting. The steps are repeated along each joint beam in a deck and they are repeated for each next horizontal beam to assemble, e.g., a deck, platform, porch, etc.

FIG. 10 shows a front view of device 141. Thus, device 141 includes a single vertical support member 145 with a space cut out 143 to permit a screw or nail to pass through beveled screw hole 153 and through support member 145 into a joist or support board. Vertical support member 145 has a predetermined height so as to rest on the side of a beam into which device 141 may be inserted and, optionally, so as to rest on a joist in such a way as to establish biscuit top element 147 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots corresponding thereto.

FIG. 11 shows a front view present invention of device 161, which includes a single off-center vertical support member 165 with a space underneath beveled screw hole 163 to permit a screw or nail to pass through screw hole 163 into a beam and/or joist or support board. Top 167 has opposite ends 169 and 171 as shown, with support member 165 biased to the left toward end 169, as shown. Top 163 may have a topography which would be the same as that shown in FIGS. 1, 6 or 7 above.

Obviously, numerous modifications and variations of the present invention are possible in light of the above teachings. It is therefore understood that within the scope of the appended claims, the invention may be practiced otherwise than as specifically described herein.

What is claimed is:

1. An anchoring biscuit device for joining three boards, which comprises:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and predetermined arc lengths, said top element having a center area between said opposite side walls in the shape of arcs;

(b) at least two substantially vertical support members attached to an underside of said top element at said center area of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joining two adjacent boards which have been pre-cut with biscuit receiving slots, two of said at least two vertical support members being substantially flat, being in the same plane and one of each being located on opposite sides of an attachment orifice; and,

(c) at least one attachment orifice located at least on said top element for attachment of said anchoring biscuit device to a support board for anchoring and support of said two adjacent boards.

2. The anchoring biscuit device of claim 1 wherein said attachment orifice is at least one screwhole located on said top element for screwing of said anchoring biscuit device to a support board.

3. The anchoring biscuit device of claim 2 wherein said screwhole has a bevelled top.

4. The anchoring biscuit device of claim 2 wherein said screwhole is non-circular and elongated.

5. The anchoring biscuit device of claim 1 wherein said attachment orifice has a bevelled top.

6. The anchoring biscuit device of claim 1 wherein said attachment orifice is non-circular and elongated.

7. The anchoring biscuit device of claim 1 wherein said top element and said vertical support member are unitarily formed.

8. The anchoring biscuit device of claim 1 wherein there are two vertical support members and one is located on each side of said attachment orifice.

9. The anchoring biscuit device of claim 8 wherein said top element and said two vertical support members are all unitarily formed.

10. An anchoring biscuit device for joining three boards, which comprises:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, said top element having a center area between said opposite side walls in the shape of arcs;

(b) at least one substantially vertical support member attached to an underside of said top element at said center area of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joining two adjacent boards which have been precut with biscuit receiving slots, said at least one vertical support member being substantially flat; and,

(c) at least one attachment orifice located at least on said top element for attachment of said anchoring biscuit device to a support board for anchoring and support of said two adjacent boards;

wherein there is one substantially vertical support member which is located off-center and to one side of said attachment orifice.

11. The anchoring biscuit device of claim 10 wherein said attachment orifice has a bevelled top.

12. The anchoring biscuit device of claim 10 wherein said attachment orifice is non-circular and elongated.

* * * * *

EXAMINER'S
COPY 8
Div.

DEUTSCHES REICH



AUSGEGEBEN
AM 28. MÄRZ 1923

REICHSPATENTAMT

# PATENTSCHRIFT

— № 372483 —

KLASSE **37b** GRUPPE 5

*(W 60710 V|37b)*

**Arnold Wothe in Markt-Oberdorf, Allg.**

Schraubenunterlagsplatte für Holzverbindungen.

———————

# PTO 2001-1463

S.T.I.C. Translations Branch



Abb. 1.

Abb. 2.

Abb. 3.

BEST AVAILABLE COPY

## Arnold Wothe in Markt-Oberdorf, Allg.

### Schraubenunterlagsplatte für Holzverbindungen.

Patentiert im Deutschen Reiche vom 14. März 1922 ab.

In der Holzindustrie kommt es oft vor, daß auf breites nicht gesperrtes Querholz mittels Holzschrauben Langholz zu befestigen ist. Wenn nun das Querholz nicht reißen soll, wird gewöhnlich das Loch für die Schraube als Schlitz ausgebildet, damit die Schraube sich in diesem Loch bewegen kann. Dies ist aber meist nicht der Fall, da sich der Schraubenkopf in dem Langholz verbeißt.

Die vorliegende Erfindung soll diesem Übelstand abhelfen. Dazu wird für die Schraube eine Unterlagscheibe vorgesehen, durch deren Schlitz die Schraube hindurchgeht, während der Kopf der Schraube auf der Platte gleitet, sich also in das Holz nicht verbeißen kann. Die Zeichnung veranschaulicht die Erfindung in einem Ausführungsbeispiel, und zwar zeigen die Abbildungen 1 und 2 im Schnitt und im Grundriß, wie ein Querholz *a* mit dem Langholz *b* durch die Schraube *c* verbunden ist. *e* bedeutet das Schlitzloch, in dem sich die Schraube beim Arbeiten des Querholzes bewegen kann. Abb. 3 zeigt die Gleitplatte. Der Kopf der Schraube *c* liegt auf der Platte *d* auf und gleitet auf dem Metall. Ein Verbeißen des Schraubenkopfes ist ausgeschlossen.

### PATENT-ANSPRUCH:

Verbindung von Langholz mit Querholz durch Schrauben, welche in Langlochbohrungen der Hölzer eingelassen sind, gekennzeichnet durch eine mit Schlitz versehene, in die Bohrung versenkte Unterlagsplatte aus Metall für jede Schraube.

---

Hierzu 1 Blatt Zeichnungen.

BERLIN. GEDRUCKT IN DER REICHSDRUCKEREI.

IC-App-0692

Translated from the German

German Empire
Imperial Patent Office

# PATENT SPECIFICATION
## - No. 372483 -
Class 37b, Group 5
(W 60710 V 37b)
D a t e   o f   p u b l i c a t i o n :  March 28, 1923
Arnold Wothe, [residing] in Markt-Oberdorf, Allgäu [Bavaria, Germany]
[Title in German of the Object of the Invention:]
**Schraubenunterlagsplatte für Holzverbindungen**
Patented in the German Empire from March 14, 1922


SCREW SUPPORTING PLATE FOR JOINING OF WOOD


In the timber industry, it often happens that a beam [long wood] is to be attached by means of screws on a wide, unlocked crossbar [transom; end-grained wood]. Now, if the crossbar is not to tear off, the hole for the screw is usually designed as slot so that the screw can move in this hole. However, this is often not the case, because the screwhead becomes embedded or sets on in the beam [long wood].

The proposed invention ought to redress this imperfection. To this end, a supporting or bolster plate is provided for the screw, through the slot of which bolster plate the screw passes, while the head of the screw slides on the plate, hence cannot set on or become embedded into the wood. The drawing illustrates the invention in the case of an exemplified embodiment, and, indeed,

1

IC-App-0693

Figs. 1 and 2 show in section and a top view how a crossbar [transom] *a*, is connected to the beam [long wood] *b* by means of the screw *c*. The slot-hole, in which the screw can move when the crossbar [transom, or end grained wood] performs its function, is denoted by *e*. Fig. 3 shows the sliding-contact plate [slip plate]. The head of the screw *c* rests on the plate *d*, and slides on the metal. A setting on or embedding of the screw-head is precluded.


PATENT CLAIM


Connection of long wood [beam] to crossbar [end grained wood; transom] by means of screws, which are inserted into elongated boreholes [slots] of the woods, characterized by a supporting or bolster plate of metal for each screw, which bolster plate is provided with slot, and is countersunk into the borehole.

US DEPARTMENT OF COMMERCE/USPTO/STIC/Translations Branch
John M Koytcheff
February 12, 2001

2

IC-App-0694

# **Appendix B**

- U.S. Pat. No. 695,722 to Heilmann, issued March 18, 1902 (the Heilmann patent).

- U.S. Pat. No. 1,714,738 to Smith, issued May 28, 1929 (the Smith patent).

- U.S. Pat. No. 2,201,129 to Weiland, issued May 14, 1940 (the Weiland patent).

- U.S. Pat. No. 2,337,156 to Elmendorf, issued December 21, 1943 (the Elmendorf patent).

- U.S. Pat. No. 5,619,834 to Chen, issued April 15, 1997, filed December 5, 1995 (the Chen patent).

- German Patent Document 372483, published March 28, 1923, translation provided by the U.S. PTO Translations Branch during original prosecution of the '415 patent at issue.



| FORM PTO/SB/08 (08-00) Substitute for form 1449/PTO **US DEPT. OF COMMERCE PATENT & TRADEMARK OFFICE** INFORMATION DISCLOSURE STATEMENT (Use several sheets if necessary) | ATTY DOCKET NO. 9003.001 | APPLICATION NO. Reexamination of U.S. Patent No. 6,402,415 |
|---|---|---|

| | APPLICANT(S) Eberle, III | |
|---|---|---|
| | FILING DATE August 8, 2005 | GROUP |

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUB CLASS |
|---|---|---|---|---|---|---|
| | | 695,722 | 03/18/1902 | HEILMANN | | |
| | | 1,714,738 | 05/28/1929 | SMITH | | |
| | | 2,201,129 | 05/14/1940 | WEILAND | | |
| | | 2,337,156 | 12/21/1943 | ELMENDORF | | |
| | | 5,619,834 | 04/18/1997 | CHEN | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUB CLASS |
|---|---|---|---|---|---|---|
| | | 372483 | 03/28/1923 | Germany | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | Translation of German Patent Document 372483 provided by the U.S. PTO Translations Branch |
|---|---|---|
| | | |
| | | |
| | | |

| EXAMINER | DATE CONSIDERED |
|---|---|

Examiner: Initial if citation considered, whether or not citation is in conformance with M.P.E.P. 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov



Bib Data Sheet

**CONFIRMATION NO. 1207**

| SERIAL NUMBER 90/007,661 | FILING OR 371(c) DATE 08/08/2005 RULE | CLASS 403 | GROUP ART UNIT 3993 | ATTORNEY DOCKET NO. 9003.001 |
|---|---|---|---|---|

**APPLICANTS**
4602415, Residence Not Provided;
Blue Heron Enterprises LLC(Owner), Califon, NJ;
Matthew W. Stavish(3rd. Pty. Req.), Bethesda, MD;
Matthew W. Stavish, Esq., Bethesda, MD

** CONTINUING DATA ***************************
This application is a REX of 09/186,741 11/05/1998 PAT 6,402,415
which is a CIP of 08/811,898 03/05/1997 ABN

** FOREIGN APPLICATIONS *********************

| Foreign Priority claimed ☐ yes ☐ no 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance Verified and Acknowledged     Examiner's Signature        Initials | | STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS 12 | INDEPENDENT CLAIMS 2 |
|---|---|---|---|---|---|

**ADDRESS**
Kenneth P. Glynn
GLYNN & ASSOCIATES, PC
24 Mine Street
Flemington ,NJ 08822

**TITLE**
ANCHORING BISCUIT DEVICE

| FILING FEE RECEIVED 2520 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

| Application Number  | Application/Control No. | Applicant(s)/Patent under Reexamination | |
|---|---|---|---|
| | 90/007,661 | 4602415 | |
| | Examiner | Art Unit | |
| | *** | 3993 | |

# Index of Claims



| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 90/007,661 | 4602415 |
| **Examiner** | **Art Unit** |
| *** | 3993 |

| √ | Rejected | — | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| Claim | | Date | | | | | | | | Claim | | Date | | | | | | | | Claim | | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | | | | | | | | | Final | Original | | | | | | | | | Final | Original | | | | | | | | |
| | 1 | | | | | | | | | | 51 | | | | | | | | | | 101 | | | | | | | | |
| | 2 | | | | | | | | | | 52 | | | | | | | | | | 102 | | | | | | | | |
| | 3 | | | | | | | | | | 53 | | | | | | | | | | 103 | | | | | | | | |
| | 4 | | | | | | | | | | 54 | | | | | | | | | | 104 | | | | | | | | |
| | 5 | | | | | | | | | | 55 | | | | | | | | | | 105 | | | | | | | | |
| | 6 | | | | | | | | | | 56 | | | | | | | | | | 106 | | | | | | | | |
| | 7 | | | | | | | | | | 57 | | | | | | | | | | 107 | | | | | | | | |
| | 8 | | | | | | | | | | 58 | | | | | | | | | | 108 | | | | | | | | |
| | 9 | | | | | | | | | | 59 | | | | | | | | | | 109 | | | | | | | | |
| | 10 | | | | | | | | | | 60 | | | | | | | | | | 110 | | | | | | | | |
| | 11 | | | | | | | | | | 61 | | | | | | | | | | 111 | | | | | | | | |
| | 12 | | | | | | | | | | 62 | | | | | | | | | | 112 | | | | | | | | |
| | 13 | | | | | | | | | | 63 | | | | | | | | | | 113 | | | | | | | | |
| | 14 | | | | | | | | | | 64 | | | | | | | | | | 114 | | | | | | | | |
| | 15 | | | | | | | | | | 65 | | | | | | | | | | 115 | | | | | | | | |
| | 16 | | | | | | | | | | 66 | | | | | | | | | | 116 | | | | | | | | |
| | 17 | | | | | | | | | | 67 | | | | | | | | | | 117 | | | | | | | | |
| | 18 | | | | | | | | | | 68 | | | | | | | | | | 118 | | | | | | | | |
| | 19 | | | | | | | | | | 69 | | | | | | | | | | 119 | | | | | | | | |
| | 20 | | | | | | | | | | 70 | | | | | | | | | | 120 | | | | | | | | |
| | 21 | | | | | | | | | | 71 | | | | | | | | | | 121 | | | | | | | | |
| | 22 | | | | | | | | | | 72 | | | | | | | | | | 122 | | | | | | | | |
| | 23 | | | | | | | | | | 73 | | | | | | | | | | 123 | | | | | | | | |
| | 24 | | | | | | | | | | 74 | | | | | | | | | | 124 | | | | | | | | |
| | 25 | | | | | | | | | | 75 | | | | | | | | | | 125 | | | | | | | | |
| | 26 | | | | | | | | | | 76 | | | | | | | | | | 126 | | | | | | | | |
| | 27 | | | | | | | | | | 77 | | | | | | | | | | 127 | | | | | | | | |
| | 28 | | | | | | | | | | 78 | | | | | | | | | | 128 | | | | | | | | |
| | 29 | | | | | | | | | | 79 | | | | | | | | | | 129 | | | | | | | | |
| | 30 | | | | | | | | | | 80 | | | | | | | | | | 130 | | | | | | | | |
| | 31 | | | | | | | | | | 81 | | | | | | | | | | 131 | | | | | | | | |
| | 32 | | | | | | | | | | 82 | | | | | | | | | | 132 | | | | | | | | |
| | 33 | | | | | | | | | | 83 | | | | | | | | | | 133 | | | | | | | | |
| | 34 | | | | | | | | | | 84 | | | | | | | | | | 134 | | | | | | | | |
| | 35 | | | | | | | | | | 85 | | | | | | | | | | 135 | | | | | | | | |
| | 36 | | | | | | | | | | 86 | | | | | | | | | | 136 | | | | | | | | |
| | 37 | | | | | | | | | | 87 | | | | | | | | | | 137 | | | | | | | | |
| | 38 | | | | | | | | | | 88 | | | | | | | | | | 138 | | | | | | | | |
| | 39 | | | | | | | | | | 89 | | | | | | | | | | 139 | | | | | | | | |
| | 40 | | | | | | | | | | 90 | | | | | | | | | | 140 | | | | | | | | |
| | 41 | | | | | | | | | | 91 | | | | | | | | | | 141 | | | | | | | | |
| | 42 | | | | | | | | | | 92 | | | | | | | | | | 142 | | | | | | | | |
| | 43 | | | | | | | | | | 93 | | | | | | | | | | 143 | | | | | | | | |
| | 44 | | | | | | | | | | 94 | | | | | | | | | | 144 | | | | | | | | |
| | 45 | | | | | | | | | | 95 | | | | | | | | | | 145 | | | | | | | | |
| | 46 | | | | | | | | | | 96 | | | | | | | | | | 146 | | | | | | | | |
| | 47 | | | | | | | | | | 97 | | | | | | | | | | 147 | | | | | | | | |
| | 48 | | | | | | | | | | 98 | | | | | | | | | | 148 | | | | | | | | |
| | 49 | | | | | | | | | | 99 | | | | | | | | | | 149 | | | | | | | | |
| | 50 | | | | | | | | | | 100 | | | | | | | | | | 150 | | | | | | | | |

# ISSUE CLASSIFICATION

| ORIGINAL | | CROSS REFERENCE(S) | | |
|---|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | |
| 403 | 231 | | | |
| INTERNATIONAL CLASSIFICATION | | | | |
| | / | | | |
| | / | | | |
| | / | | | |
| | / | | | |
| | / | | | |

(Assistant Examiner)    (Date)

(Legal Instruments Examiner)    (Date)

(Primary Examiner)          (Date)

**Total Claims Allowed:**

| O.G. Print Claim(s) | O.G. Print Fig. |
|---|---|

☐ Claims renumbered in the same order as presented by applicant     ☐ CPA     ☐ T.D.     ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | 31 | | 61 | | 91 | | 121 | | 151 | | 181 |
| | 2 | | 32 | | 62 | | 92 | | 122 | | 152 | | 182 |
| | 3 | | 33 | | 63 | | 93 | | 123 | | 153 | | 183 |
| | 4 | | 34 | | 64 | | 94 | | 124 | | 154 | | 184 |
| | 5 | | 35 | | 65 | | 95 | | 125 | | 155 | | 185 |
| | 6 | | 36 | | 66 | | 96 | | 126 | | 156 | | 186 |
| | 7 | | 37 | | 67 | | 97 | | 127 | | 157 | | 187 |
| | 8 | | 38 | | 68 | | 98 | | 128 | | 158 | | 188 |
| | 9 | | 39 | | 69 | | 99 | | 129 | | 159 | | 189 |
| | 10 | | 40 | | 70 | | 100 | | 130 | | 160 | | 190 |
| | 11 | | 41 | | 71 | | 101 | | 131 | | 161 | | 191 |
| | 12 | | 42 | | 72 | | 102 | | 132 | | 162 | | 192 |
| | 13 | | 43 | | 73 | | 103 | | 133 | | 163 | | 193 |
| | 14 | | 44 | | 74 | | 104 | | 134 | | 164 | | 194 |
| | 15 | | 45 | | 75 | | 105 | | 135 | | 165 | | 195 |
| | 16 | | 46 | | 76 | | 106 | | 136 | | 166 | | 196 |
| | 17 | | 47 | | 77 | | 107 | | 137 | | 167 | | 197 |
| | 18 | | 48 | | 78 | | 108 | | 138 | | 168 | | 198 |
| | 19 | | 49 | | 79 | | 109 | | 139 | | 169 | | 199 |
| | 20 | | 50 | | 80 | | 110 | | 140 | | 170 | | 200 |
| | 21 | | 51 | | 81 | | 111 | | 141 | | 171 | | 201 |
| | 22 | | 52 | | 82 | | 112 | | 142 | | 172 | | 202 |
| | 23 | | 53 | | 83 | | 113 | | 143 | | 173 | | 203 |
| | 24 | | 54 | | 84 | | 114 | | 144 | | 174 | | 204 |
| | 25 | | 55 | | 85 | | 115 | | 145 | | 175 | | 205 |
| | 26 | | 56 | | 86 | | 116 | | 146 | | 176 | | 206 |
| | 27 | | 57 | | 87 | | 117 | | 147 | | 177 | | 207 |
| | 28 | | 58 | | 88 | | 118 | | 148 | | 178 | | 208 |
| | 29 | | 59 | | 89 | | 119 | | 149 | | 179 | | 209 |
| | 30 | | 60 | | 90 | | 120 | | 150 | | 180 | | 210 |

| *Reexamination* | Application/Control No.<br>90/007,661 | Applicant(s)/Patent Under Reexamination<br>4602415 |
|---|---|---|
| | Certificate Date | Certificate Number |

**Requester    Correspondence Address:**    ☐ **Patent Owner**    ☒ **Third Party**

Matthew W. Stavish, Esq.
BERENATO WHITE & STAVISH LLC
6550 Rock Spring Drive, Suite 240
Bethesda, MD  20817

**LITIGATION REVIEW ☐**

| (examiner initials) | (date) |
|---|---|
| Case Name | Director Initials |
| | |
| | |
| | |
| | |
| | |

| COPENDING OFFICE PROCEEDINGS ||
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| 1. | |
| 2. | |
| 3. | |
| 4. | |

U.S. Patent and Trademark Office

DOC. CODE **RXFILJKT**

IC-App-0701

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 90/007,661 | 4602415 |
| Examiner | Art Unit | |
| *** | 3993 | |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | DATE | EXMR |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |

# Patent Assignment Abstract of Title

**Total Assignments: 1**

**Application #:** 09186741  **Filing Dt:** 11/05/1998    **Patent #:** 6402415  **Issue Dt:** 06/11/2002

**PCT #:** NONE    **Publication #:** NONE    **Pub Dt:**

**Inventor:** HARRY W. EBERLE III

**Title:** ANCHORING BISCUIT DEVICE

**Assignment: 1**

**Reel/Frame:** 013570/0151    **Received:** 12/17/2002    **Recorded:** 12/10/2002    **Mailed:** 04/16/2003    **Pages:** 3

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** EBERLE, HARRY W. III    **Exec Dt:** 12/06/2002

**Assignee:** BLUE HERON ENTERPRISES, LLC
357 VERNOY ROAD
CALIFON, NEW JERSEY 07830

**Correspondent:** KENNETH P. GLYNN
24 MINE STREET
FLEMINGTON, NJ 08822

---

If you have any comments or questions concerning the data displayed, contact OPR / Assignments at 703-308-9723
Web interface last modified: Oct. 5, 2002



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| REEXAM CONTROL NUMBER | FILING OR 371 (c) DATE | PATENT NUMBER |
|---|---|---|
| 90/007,661 | 08/08/2005 | 6402415 |

Matthew W. Stavish, Esq.
BERENATO WHITE & STAVISH LLC
6550 Rock Spring Drive, Suite 240
Bethesda, MD 20817

**CONFIRMATION NO. 1207**

*OC000000016762893*

Date Mailed: 08/11/2005

# NOTICE OF REEXAMINATION REQUEST FILING DATE

### *(Third Party Requester)*

Requester is hereby notified that the filing date of the request for reexamination is 08/08/2005, the date the required fee of $2,520 was received.

A decision on the request for reexamination will be mailed within three months from the filing date of the request for reexamination. (See 37 CFR 1.515(a)).

A copy of the Notice is being sent to the person identified by the requester as the patent owner. Further patent owner correspondence will be the latest attorney or agent of record in the patent file. (See 37 CFR 1.33). Any paper filed should include a reference to the present request for reexamination (by Reexamination Control Number).

cc: Patent Owner

Kenneth P. Glynn
GLYNN & ASSOCIATES, PC
24 Mine Street
Flemington, NJ 08822

Office of Patent Legal Administration
Central Reexamination Unit 571-272-7705

PART 3 - OFFICE COPY

IC-App-0704



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| REEXAM CONTROL NUMBER | FILING OR 371 (c) DATE | PATENT NUMBER |
|---|---|---|
| 90/007,661 | 08/08/2005 | 6402415 |

Kenneth P. Glynn
GLYNN & ASSOCIATES, PC
24 Mine Street
Flemington, NJ 08822

**CONFIRMATION NO. 1207**
**REEXAM ASSIGNMENT NOTICE**

*OC000000016762894*

Date Mailed: 08/11/2005

## NOTICE OF ASSIGNMENT OF REEXAMINATION REQUEST

The above-identified request for reexamination has been assigned to Art Unit 3993. All future correspondence to the proceeding should be identified by the control number listed above and directed to the assigned Art Unit.

A copy of this Notice is being sent to the latest attorney or agent of record in the patent file or to all owners of record. (See 37 CFR 1.33(c)). If the addressee is not, or does not represent, the current owner, he or she is required to forward all communications regarding this proceeding to the current owner(s). An attorney or agent receiving this communication who does not represent the current owner(s) may wish to seek to withdraw pursuant to 37 CFR 1.36 in order to avoid receiving future communications. If the address of the current owner(s) is unknown, this communication should be returned within the request to withdraw pursuant to Section 1.36.

cc: Third Party Requester(if any)

Matthew W. Stavish, Esq.
BERENATO WHITE & STAVISH LLC
6550 Rock Spring Drive, Suite 240
Bethesda, MD 20817

Office of Patent Legal Administration
Central Reexamination Unit 571-272-7705

PART 3 - OFFICE COPY

IC-App-0705



# STIC Search Report
## EIC 3700

USPTO

**TO: James R Matthews**
**Location: MDW7C76**
**Art Unit: 3700**
**Friday, September 09, 2005**

**Case Serial Number: 90/007661**

**From: John Sims**
**Location: EIC 3700**
**RND 8B31**
**Phone: 571 272-3507**

**john.sims@uspto.gov**

## Search Notes

Per your request, a litigation search was performed on the above case, US 6402415. Litigation alerts were found. The search results, and the dockets indicating the status of the cases, are attached.



UNITED STATES PATENT AND TRADEMARK OFFICE GRANTED PATENT

6402415

Link to Claims Section

June 11, 2002

Anchoring biscuit device

**REEXAM-LITIGATE:**

NOTICE OF LITIGATION

Harry W. Eberle III, et al v. Robert J. Pelc, et al, Filed February 28, 2003, D.C. New Jersey (Trenton), Doc. No. 03CV892(SRC)

**APPL-NO:** 186741 (09)

**FILED-DATE:** November 5, 1998

**GRANTED-DATE:** June 11, 2002

**ASSIGNEE-AFTER-ISSUE:** December 10, 2002 - ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS)., BLUE HERON ENTERPRISES, LLC 357 VERNOY ROAD CALIFON NEW JERSEY 07830, Reel and Frame Number: 13570/0151

File searched: QUESTEL ORBIT PLUSPAT

  Selected file: PLUSPAT

  PLUSPAT - (c) Questel-Orbit, All Rights Reserved.
  Comprehensive Worldwide Patents database

  1/1 PLUSPAT - (C) QUESTEL-ORBIT
  PN  - US6402415 B1 20020611 [US6402415]
  TI  - (B1) Anchoring biscuit device
  IN  - (B1) EBERLE III HARRY W  (US)
  AP  - US18674198  19981105  [1998US-0186741]
  FD  - C.I.P. of  US811898 19970305 [1997US-0811898] (Abandoned)
  PR  - US18674198  19981105  [1998US-0186741]
      - US81189897  19970305  [1997US-0811898]
  IC  - (B1) B25G-003/00
  EC  - F16B-012/02
      - F16B-012/04
  PCL - ORIGINAL (O) : 403231000; CROSS-REFERENCE (X) : 052483100  403232100
        403408100
  DT  - Corresponding document
  CT  - US1184080; US2332081; US2362252; US2398603; US2406387; US4641988;
        US4682458; US5004027; US5071280; US5160211; US5182891; US5251996;
        US5377732; US5419649; US5458433; US5480117; US5529428; US5564248;
        US5603580; US5660016; DE372483
  STG - (B1) U.S. Patent (no pre-grant pub.) after Jan. 2, 2001
  AB  - An anchoring biscuit device for joining three boards. It includes,
(a)
        a first substantially flat horizontal top element having a generally
        biscuit-shaped configuration, (b) at least one substantially vertical
        support member attached to the underside of the top element and
        extending downwardly therefrom for a predetermined length for joinder
        of two adjacent boards which have been pre-cut with biscuit receiving
        slots, and, (c) an attachment orifice located at least on the top
        element for attachment of the anchoring biscuit device to a support
        board for anchoring and support of the two adjacent boards. In one
        preferred embodiment, a top bevel is included at the orifice to
permit
        angled screwing at positions other than vertical positions. In other
        embodiments, the screw orifice will have an oval or elongated shape
to
        likewise enable screwing at angles other than vertical. In yet
another
        preferred embodiment, the orifice will both be beveled and elongated.
  UP  - 2002-25


  1/1 LGST - (C) EPO
  PN  - US6402415 B1 20020611 [US6402415]

AP  - US18674198  19981105  [1998US-0186741]
ACT - 20021210  US/AS-A
      ASSIGNMENT
      OWNER: BLUE HERON ENTERPRISES, LLC 357 VERNOY ROADCALIFON; EFFECTIVE
      DATE: 20021206
      ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:EBERLE, HARRY W.
      III;REEL/FRAME:013570/0151
UP  - 2004-52


1/1 CRXX - (C) CLAIMS/RRX
PN  - 6,402,415 A  20020611  [US6402415]
PA  - Eberle, Harry W III
ACT - 20021210  REASSIGNED
      ASSIGNMENT OF ASSIGNORS INTEREST

      Assignor: EBERLE, HARRY W. III DATE SIGNED: 12/06/2002

      Assignee: BLUE HERON ENTERPRISES, LLC 357 VERNOY ROAD CALIFON NEW
      JERSEY 07830

      Reel 013570/Frame 0151

      Contact: KENNETH P. GLYNN 24 MINE STREET FLEMINGTON, NJ 08822

1/2 LITA - (C) Thomson Derwent
AN  - P2003-50-15
FS  - PATENT (P)
PN  - US6402415  20020611 (Utility)
PF  - Eberle III Harry W; Blue Heron Enterprises LLC
DF  - Harris Steven;
    - t/a;
    - KK Manufacturing;
    - t/a;
    - KK Manufacturing, et al;
    - KK Manufacturing Company
CT  - NJ
DN  - 03cv5809 (SRC)
FD  - 2003-12-08
ACT - A complaint was filed.

2/2 LITA - (C) Thomson Derwent
AN  - P2003-12-31
FS  - PATENT (P)
PN  - US6402415  20020611 (Utility)
PF  - Eberle III Harry W , et al
DF  - Pelc Robert J, et al
CT  - NJ
DN  - 03cv892
FD  - 2003-02-28
ACT - A complaint was filed.


NOTE : LITIGATION ALERTS FOUND

?fam us6402415/pn

1/5 PLUSPAT - (C) QUESTEL-ORBIT
PN  - AU5932499 A 20000511 [AU9959324]
STG - (A) Open to public inspection
TI  - (A) Anchoring biscuit device
PA  - (A) HARRY W EBERLE III
IN  - (B2) EBERLE HARRY W III
IC  - (A) E04B-005/00 F16B-005/02 F16B-012/24
PN2 - AU765758 B2 20030925 [AU-765758]
STG2- (B2) Patent preceeded by OPI
TI2 - (B2) Anchoring biscuit device
PA2 - (B2) EBERLE HARRY W III
IN2 - (B2) EBERLE HARRY W III
IC2 - (B2) E04B-005/00 F16B-005/02 F16B-012/24
AP  - AU5932499  19991105  [1999AU-0059324]
PR  - US18674198  19981105  [1998US-0186741]
UP  - 2000-22


2/5 PLUSPAT - (C) QUESTEL-ORBIT
PN  - CA2231211 A1 19980905 [CA2231211]
STG - (A1) Application laid open
TI  - (A1) ANCHORING BISCUIT DEVICE FOR JOINING TWO ADJACENT BOARDS
OTI - (A1) DISPOSITIF D'ANCRAGE DE LANGUETTES POUR JOINDRE DEUX PLANCHES
      ADJACENTES
PA  - (A1) EBERLE HARRY W  (US)
IN  - (A1) EBERLE HARRY W III  (US)
IC  - (A1) F16B-005/02 F16B-012/14
LA  - ENGLISH (ENG)
AP  - CA2231211  19980303  [1998CA-2231211]
PR  - US81189897  19970305  [1997US-0811898]


3/5 PLUSPAT - (C) QUESTEL-ORBIT- image
CPIM (C) Questel-Orbit
PN  - EP0863317 A2 19980909 [EP-863317]
STG - (A2) Pub. Of applic. Without search report
TI  - (A2) Anchoring biscuit device for joining two adjacent boards
OTI - (A2) Halbkreisformige Verankerungsvorrichtung fur eine
Stossverbindung
      zweier Platten
    - (A2) Dispositif d'ancrage semi-circulaire pour joindre deux panneaux
      bout a bout
PA  - (A2) EBERLE HARRY W III  (US)
IN  - (A2) EBERLE HARRY W III  (US)
IC  - (A2) F16B-012/02 F16B-012/04
PN2 - EP0863317 A3 20010919 [EP-863317]
STG2- (A3) Publi. Of search report
TI2 - (A3) Anchoring biscuit device for joining two adjacent boards
OTI2- (A3) Halbkreisformige Verankerungsvorrichtung fur eine
Stossverbindung
      zweier Platten
    - (A3) Dispositif d'ancrage semi-circulaire pour joindre deux panneaux

```
       bout a bout
PA2 - (A3) EBERLE HARRY W III   (US)
IN2 - (A3) EBERLE HARRY W III   (US)
IC2 - (A3) E04F-013/08 F16B-012/00 F16B-012/02 F16B-012/04
LA  - ENGLISH (ENG)
AP  - EP98301644  19980305  [1998EP-0301644]
PR  - US81189897  19970305  [1997US-0811898]
EC  - F16B-012/02
    - F16B-012/04
DS  - AT BE CH DE DK ES FI FR GB GR IE IT LI LU MC NL PT SE
DT  - Basic

4/5 PLUSPAT - (C) QUESTEL-ORBIT- image
CPIM
PN  - EP0999320 A2 20000510 [EP-999320]
STG - (A2) Pub. Of applic. Without search report
TI  - (A2) Anchoring biscuit device
OTI - (A2) Halbkreisformige Verankerungsvorrichtung
    - (A2) Dispositif d'ancrage semi-circulaire
PA  - (A2) EBERLE HARRY W III   (US)
IN  - (A2) EBERLE HARRY W III   (US)
IC  - (A2) E04F-013/08
PN2 - EP0999320 A3 20000823 [EP-999320]
STG2- (A3) Publi. Of search report
TI2 - (A3) Anchoring biscuit device
OTI2- (A3) Halbkreisformige Verankerungsvorrichtung
    - (A3) Dispositif d'ancrage semi-circulaire
PA2 - (A3) EBERLE HARRY W III   (US)
IN2 - (A3) EBERLE HARRY W III   (US)
IC2 - (A3) E04F-013/08 F16B-005/00 F16B-012/12
LA  - ENGLISH (ENG)
AP  - EP99308803  19991104  [1999EP-0308803]
PR  - US18674198  19981105  [1998US-0186741]
EC  - E04F-013/08B3A6
DS  - AT BE CH CY DE DK ES FI FR GB GR IE IT LI LU MC NL PT SE
    - AL LT LV MK RO SI
DT  - Basic
UP  - 2000-17

5/5 PLUSPAT - (C) QUESTEL-ORBIT
PN  - US6402415 B1 20020611 [US6402415]
STG - (B1) U.S. Patent (no pre-grant pub.) after Jan. 2, 2001
TI  - (B1) Anchoring biscuit device
IN  - (B1) EBERLE III HARRY W  (US)
IC  - (B1) B25G-003/00
AP  - US18674198  19981105  [1998US-0186741]
PR  - US18674198  19981105  [1998US-0186741]
    - US81189897  19970305  [1997US-0811898]
EC  - F16B-012/02
    - F16B-012/04
PCL - ORIGINAL (O) : 403231000; CROSS-REFERENCE (X) : 052483100  403232100
      403408100
```

DT - Corresponding document
UP - 2002-25


1/4 LEGALI - (C) EPO
PN - US6402415 B1 20020611 [US6402415]
AP - US18674198 19981105 [1998US-0186741]
ACTE- 20021210 US/AS-A
       ASSIGNMENT
       OWNER: BLUE HERON ENTERPRISES, LLC 357 VERNOY ROADCALIFON; EFFECTIVE
       DATE: 20021206
       ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:EBERLE, HARRY W.
       III;REEL/FRAME:013570/0151
UP - 2004-52


2/4 LEGALI - (C) EPO
PN - CA2231211 A1 19980905 [CA2231211]
AP - CA2231211 19980303 [1998CA-2231211]
ACTE- 20030820 CA/EEER-A [+]
       EXAMINATION REQUEST
       EFFECTIVE DATE: 20030226
UP - 2003-44


3/4 LEGALI - (C) EPO
PN - EP0999320 A2 20000510 [EP-999320]
   - EP0999320 A3 20000823 [EP-999320]
AP - EP99308803 19991104 [1999EP-0308803]
ACTE- 20000510 EP/AK-A [+]
       DESIGNATED CONTRACTING STATES:
       AT BE CH CY DE DK ES FI FR GB GR IE IT LI LU MC NL PT SE
   - 20000510 EP/AX-A [+]
       EXTENSION OF THE EUROPEAN PATENT TO
       AL;LT;LV;MK;RO;SI
   - 20000823 EP/AK-A [+]
       DESIGNATED CONTRACTING STATES:
       AT BE CH CY DE DK ES FI FR GB GR IE IT LI LU MC NL PT SE
   - 20000823 EP/AX-A [+]
       EXTENSION OF THE EUROPEAN PATENT TO
       AL;LT;LV;MK;RO;SI
   - 20000823 EP/RIC1-A
       CLASSIFICATION (CORRECTION)
       7E 04F 13/08    A, 7F 16B    5/00   B, 7F 16B  12/12   B
   - 20010418 EP/17P-A [+]
       REQUEST FOR EXAMINATION FILED
       EFFECTIVE DATE: 20010223
   - 20010509 EP/AKX-A [+]
       PAYMENT OF DESIGNATION FEES
       AT BE CH CY DE DK ES FI FR GB GR IE IT LI LU MC NL PT SE
   - 20040428 EP/17Q-A [+]
       FIRST EXAMINATION REPORT
       EFFECTIVE DATE: 20040310
   - 20050323 EP/18D-A

```
              DEEMED TO BE WITHDRAWN
              EFFECTIVE DATE: 20040921
      UP  - 2005-12


      4/4 LEGALI - (C) EPO
      PN  - EP0863317 A2 19980909 [EP-863317]
          - EP0863317 A3 20010919 [EP-863317]
      AP  - EP98301644  19980305  [1998EP-0301644]
      ACTE- 19980909  EP/AK-A  [+]
              DESIGNATED CONTRACTING STATES:
              AT BE CH DE DK ES FI FR GB GR IE IT LI LU MC NL PT SE
          -  19980909  EP/AX-A  [+]
              EXTENSION OF THE EUROPEAN PATENT TO
              AL;LT;LV;MK;RO;SI
          -  20010919  EP/AK-A  [+]
              DESIGNATED CONTRACTING STATES:
              AT BE CH DE DK ES FI FR GB GR IE IT LI LU MC NL PT SE
          -  20010919  EP/AX-A  [+]
              EXTENSION OF THE EUROPEAN PATENT TO
              AL;LT;LV;MK;RO;SI
          -  20010919  EP/RIC1-A
              CLASSIFICATION (CORRECTION)
              7F 16B  12/04   A, 7F 16B  12/02   B, 7F 16B  12/00   B, 7E 04F
13/08
              B
          -  20020515  EP/18D-A  [-]
              DEEMED TO BE WITHDRAWN
              EFFECTIVE DATE: 20011002
      UP  - 2003-22
```

IC-App-0713

       
**Search > Search by Criteria > US-DIS-NJD 03cv5809 9/8/2005 > US-DIS-NJD:3:03cv5809:CV**

**Docket Tools**

| Get Updated Docket | Track Docket Activity | Search for Similar | Set Alert for Similar Dockets | |
|---|---|---|---|---|
| This docket was last retrieved from the court on 9/8/2005 | CourtLink can alert you when there is new activity in this case | Start a new search based on the characteristics of this case | CourtLink alerts you when there are new cases that match characteristics of this case | [Email this Docket] [Printer friendly format] |

View patents concerning this case.

**Docket**

# US District Court Civil Docket

### U.S. District - New Jersey
### (Trenton)

## 3:03cv5809

## Eberle, et al v. Harris, et al

**This case was retrieved from the court on Thursday, September 08, 2005**

| | |
|---|---|
| **Date Filed:** 12/08/2003 | **Class Code:** 12BQ, SCHEDO |
| **Assigned To:** Judge Stanley R Chesler | **Closed:** no |
| **Referred To:** Magistrate Judge Tonianne J Bongiovanni | **Statute:** 35:145 |
| **Nature of suit:** Patent (830) | **Jury Demand:** Defendant |
| **Cause:** Patent Infringement | **Demand Amount:** $0 |
| **Lead Docket:** None | **NOS Description:** Patent |
| **Other Docket:** None | |
| **Jurisdiction:** Federal Question | |

| **Litigants** | **Attorneys** |
|---|---|
| James H Coleman<br>Mediator<br>[Term: 12/13/2004] | James H Coleman, Jr<br>[COR LD NTC]<br>[Term: 12/13/2004]<br>Porzio, Bromberg & Newman, PC<br>100 Southgate Parkway<br>Morristown , NJ 07962-1997<br>USA<br>(973) 538-4006<br>Fax: (973) 538-5146 |
| Harry W Eberle, III A Resident of New Jersey<br>Plaintiff | Ernest D Buff<br>[COR LD NTC]<br>Ernest D Buff & Associates, LLC<br>231 Somerville Road<br>Bedminster , NJ 07921<br>USA |

IC-App-0714

(908) 901-0220
Fax: (908) 901-0330
Email: Ebuff@edbuff.com

G Richard Malgran
[COR LD NTC]
[Term: 04/15/2005]
170 Barbertown-Point Breeze Road
Frenchtown , NJ  08825
USA
(908) 996-0745

Kenneth P Glynn
[COR LD NTC]
[Term: 10/08/2004]
GLYNN & Associates, PC
24 Mine Street
Flemington , NJ  08822
USA
(908) 788-0077

Blue Heron Enterprises, Llc A New Jersey Limited Liability Company
Plaintiff

Ernest D Buff
[COR LD NTC]
Ernest D Buff & Associates, LLC
231 Somerville Road
Bedminster , NJ  07921
USA
(908) 901-0220
Fax: (908) 901-0330
Email: Ebuff@edbuff.com

G Richard Malgran
[COR LD NTC]
[Term: 04/15/2005]
170 Barbertown-Point Breeze Road
Frenchtown , NJ  08825
USA
(908) 996-0745

Kenneth P Glynn
[COR LD NTC]
[Term: 10/08/2004]
GLYNN & Associates, PC
24 Mine Street
Flemington , NJ  08822
USA
(908) 788-0077

Steven Harris A Resident of Kansas Trading as KK Mfg Co Trading as KK Manufacturing Co Trading as KK Manufacturing Company
Defendant

Beth S Block
[COR LD NTC]
[Term: 09/01/2005]
Callan, Koster, Brady & Brennan
740 Broad Street
PO Box 7520
Shrewsbury , NJ  07702
USA
(732) 345-9333

Steven Gerber
[COR LD NTC]
Adorno & Yoss LLP
155 Willowbrook Boulevard
Wayne , NJ  07470
USA
(973) 256-9000
Email: Sgerber@adorno.com

IC-App-0715

| | |
|---|---|
| Kk Mfg Co, Inc A Corporation of The State of Kanas<br>Defendant | Beth S Block<br>[COR LD NTC]<br>[Term: 09/01/2005]<br>Callan, Koster, Brady & Brennan<br>740 Broad Street<br>PO Box 7520<br>Shrewsbury , NJ 07702<br>USA<br>(732) 345-9333<br><br>Steven Gerber<br>[COR LD NTC]<br>Adorno & Yoss LLP<br>155 Willowbrook Boulevard<br>Wayne , NJ 07470<br>USA<br>(973) 256-9000<br>Email: Sgerber@adorno.com |
| Steven Harris A Resident of Kansas<br>Counter Claimant | Beth S Block<br>[COR LD NTC]<br>[Term: 09/01/2005]<br>Callan, Koster, Brady & Brennan<br>740 Broad Street<br>PO Box 7520<br>Shrewsbury , NJ 07702<br>USA<br>(732) 345-9333<br><br>Steven Gerber<br>[COR LD NTC]<br>Adorno & Yoss LLP<br>155 Willowbrook Boulevard<br>Wayne , NJ 07470<br>USA<br>(973) 256-9000<br>Email: Sgerber@adorno.com |
| Kk Mfg Co, Inc A Corporation of The State of Kanas<br>Counter Claimant | Beth S Block<br>[COR LD NTC]<br>[Term: 09/01/2005]<br>Callan, Koster, Brady & Brennan<br>740 Broad Street<br>PO Box 7520<br>Shrewsbury , NJ 07702<br>USA<br>(732) 345-9333<br><br>Steven Gerber<br>[COR LD NTC]<br>Adorno & Yoss LLP<br>155 Willowbrook Boulevard<br>Wayne , NJ 07470<br>USA<br>(973) 256-9000<br>Email: Sgerber@adorno.com |
| Blue Heron Enterprises, Llc A New Jersey Limited Liability<br>Company<br>Counter Defendant | Ernest D Buff<br>[COR LD NTC]<br>Ernest D Buff & Associates, LLC<br>231 Somerville Road<br>Bedminster , NJ 07921<br>USA<br>(908) 901-0220<br>Fax: (908) 901-0330<br>Email: Ebuff@edbuff.com |

IC-App-0716

G Richard Malgran
[COR LD NTC]
[Term: 04/15/2005]
170 Barbertown-Point Breeze Road
Frenchtown , NJ 08825
USA
(908) 996-0745

Harry W Eberle, III A Resident of New Jersey
Counter Defendant

Ernest D Buff
[COR LD NTC]
Ernest D Buff & Associates, LLC
231 Somerville Road
Bedminster , NJ 07921
USA
(908) 901-0220
Fax: (908) 901-0330
Email: Ebuff@edbuff.com

G Richard Malgran
[COR LD NTC]
[Term: 04/15/2005]
170 Barbertown-Point Breeze Road
Frenchtown , NJ 08825
USA
(908) 996-0745

## Documents

**Retrieve Document(s)**

| | | | | Items 1 to 17 of 17 |
|---|---|---|---|---|
| ☐ | **Availability** | **Date** | **No.** | **Proceeding Text** |
| ☐ | Runner | 12/08/2003 | 1 | COMPLAINT filed (FILING FEE $ 150.00 RECEIPT # 330754) (ck) (Entered: 12/10/2003) |
| ☐ | Runner | 12/10/2003 | 2 | NOTICE of Allocation and Assignment filed. (TRENTON - Judge STANLEY R. CHESLER - Magistrate Judge TONIANNE J. BONGIOVANNI) (NM) (ck) (Entered: 12/10/2003) |
| ☐ | Runner | 12/10/2003 | -- | SUMMONS issued for STEVEN HARRIS & KK MFG. CO., INC. (20 Days) (Mailed to Counsel) (ck) (Entered: 12/10/2003) |
| ☐ | Online | 01/22/2004 | 3 | NOTICE of Appearance by BETH S. BLOCK on behalf of STEVEN HARRIS, KK MFG. CO., INC. (ss, ) (Entered: 01/30/2004) |
| ☐ | Online | 02/18/2004 | 4 | ANSWER to Complaint with Jury Demand, COUNTERCLAIM against BLUE HERON ENTERPRISES, LLC, & HARRY W. EBERLE III by STEVEN HARRIS, & KK MFG. CO., INC..(ck, ) (Entered: 02/24/2004) |
| ☐ | Online | 03/10/2004 | 5 | ORDER Initial Conference set for 4/29/2004 11:00 AM in Trenton - Courtroom 6E before Magistrate Judge Tonianne J. Bongiovanni.. Signed by Judge Tonianne J. Bongiovanni on 3/10/04. (Attachments: # 1 ADR MEMO)(mr, ) (Entered: 03/10/2004) |
| ☐ | Runner | 04/29/2004 | -- | Minute Entry for proceedings held before Judge Tonianne J. Bongiovanni : Initial Pretrial Conference held on 4/29/2004. Parties agree to ADR. Order for mediation to enter. (mr) (Entered: 04/29/2004) |
| ☐ | Online | 04/29/2004 | 6 | ORDER REFERRING CASE to Mediation Signed by Judge Tonianne J. Bongiovanni on 4/29/04. (ss, ) (Entered: 05/04/2004) |
| ☐ | Online | 05/28/2004 | 7 | LETTER ORDER DESIGNATING JUSTICE JAMES H. COLEMAN, JR. as mediator. Signed by Judge Ronald J. Hedges on 05/28/2004. (cc, ) (Entered: 05/28/2004) |
| ☐ | Online | 07/21/2004 | 8 | STIPULATION AND ORDER extending time for pltfs. to answer counterclaim to 7/20/04 Signed by Judge Tonianne J. Bongiovanni on 7/20/04. (ss, ) (Entered: 07/27/2004) |
| ☐ | Online | 07/21/2004 | 9 | ANSWER to Counterclaim by BLUE HERON ENTERPRISES, LLC, HARRY W. EBERLE III.(ss, ) (Entered: 07/27/2004) |
| ☐ | Online | 10/08/2004 | 10 | Substitution of Attorney - Attorney G. RICHARD MALGRAN for HARRY W. EBERLE; HARRY W. EBERLE; BLUE HERON ENTERPRISES, LLC and BLUE HERON ENTERPRISES, LLC added. Attorney KENNETH P. GLYNN terminated.. (mr) (Entered: 10/13/2004) |
| ☐ | Online | 10/21/2004 | 11 | ORDER staying Discovery pending non-binding Mediation. Signed by Judge Tonianne J. Bongiovanni on 10/21/04. (ms) (Entered: 10/25/2004) |
| ☐ | Online | 04/15/2005 | 12 | Substitution of Attorney - Added Attorney ERNEST D. BUFF for BLUE HERON ENTERPRISES, LLC & HARRY W. EBERLE, III; Terminated Attorney G. RICHARD MALGRAN. (Attachments: # 1 Certificate of Service)(ms) (Entered: 04/19/2005) |

IC-App-0717

| ☐ | Runner | 05/31/2005 | -- | Minute Entry for proceedings held before Judge Tonianne J. Bongiovanni : Status Telephone Conference held on 5/31/2005. Status Telephone Conference set for 11/14/2005 10:30 AM before Magistrate Judge Tonianne J. Bongiovanni. (mr) (Entered: 05/31/2005) |
|---|---|---|---|---|
| | Online | 06/08/2005 | 13 | SCHEDULING ORDER: Status Telephone Conference set for 11/14/2005 10:30 AM before Magistrate Judge Tonianne J. Bongiovanni. Motions to Amend Pleadings due by 8/15/2005. Discovery due by 11/30/2005. Motions to Join Parties due by 8/15/2005. Dispositive motion to be served within 30 days of completion of discovery. Expert discovery schedule set. Final Pretrial Conference to be set by the Court.. Signed by Judge Tonianne J. Bongiovanni on 6/8/05. (Attachments: # 1 FORM OF FINAL PRETRIAL ORDER)(mr) (Entered: 06/08/2005) |
| | Online | 09/01/2005 | 14 | Substitution of Attorney - Attorney STEVEN GERBER and STEVEN GERBER for STEVEN HARRIS; KK MFG. CO., INC.; STEVEN HARRIS and KK MFG. CO., INC. added. Attorney BETH S. BLOCK terminated.. (GERBER, STEVEN) (Entered: 09/01/2005) |

**Items 1 to 17 of 17**

**Retrieve Document(s)**

Pricing     Privacy     Master Services Agreement

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

IC-App-0718

**LexisNexis· CourtLink·**

**Welcome John Sims!**

 My CourtLink | Search | Dockets & Documents | Track | Alert | Strategic Profiles | My Account

Search > Search by Criteria > US-DIS-NJD 03cv0892 9/8/2005 > US-DIS-NJD:3:03cv892:CV

## Docket Tools

| Get Updated Docket | Track Docket Activity | Search for Similar | Set Alert for Similar Dockets |
|---|---|---|---|
| This docket was last retrieved from the court on 9/8/2005 | CourtLink can alert you when there is new activity in this case | Start a new search based on the characteristics of this case | CourtLink alerts you when there are new cases that match characteristics of this case |

[Email this Docket]
[Printer friendly format]

View patents concerning this case.

### Docket

# US District Court Civil Docket

## U.S. District - New Jersey
## (Trenton)

## 3:03cv892

## Eberle, et al v. Pelc, et al

This case was retrieved from the court on Thursday, September 08, 2005

Date Filed: **02/28/2003**
Assigned To: **Judge Stanley R Chesler**
Referred To: **Magistrate Judge John J Hughes**
Nature of suit: **Patent (830)**
Cause: **Patent Infringement**
Lead Docket: **None**
Other Docket: **None**
Jurisdiction: **Federal Question**

Class Code: **12BH**
Closed: **no**
Statute: **15:1126**
Jury Demand: **None**
Demand Amount: **$0**
NOS Description: **Patent**

| Litigants | Attorneys |
|---|---|
| Harry W Eberle, III A Resident of New Jersey<br>Plaintiff | Kenneth P Glynn<br>[COR LD NTC]<br>GLYNN & Associates, PC<br>24 Mine Street<br>Flemington , NJ  08822<br>USA<br>(908) 788-0077 |
| Blue Heron Enterprises, Llc A New Jersey Limited Liability Company<br>Plaintiff | Kenneth P Glynn<br>[COR LD NTC]<br>GLYNN & Associates, PC<br>24 Mine Street<br>Flemington , NJ  08822<br>USA<br>(908) 788-0077 |

IC-App-0719

Robert J Pelc A Resident of New York
Defendant

Original Ipe Clip Company, The A New York Company
Defendant

Ipe Clip Company, The A New York Company
Defendant

Advantage Lumber Company A New York Company
Defendant

R&B Marketing Corporation A New York Corporation
Defendant

## Documents

**Retrieve Document(s)**

| | Availability | Date | No. | Proceeding Text |
|---|---|---|---|---|
| | | | | **Items 1 to 11 of 11** |
| ☐ | Runner | 02/28/2003 | 1 | COMPLAINT filed (FILING FEE $ 150.00 RECEIPT # 324073) (ck) (Entered: 02/28/2003) |
| ☐ | Runner | 02/28/2003 | 2 | NOTICE of Allocation and Assignment filed. (TRENTON - Judge STANLEY R. CHESLER - Magistrate Judge JOHN J. HUGHES) (NM) (ck) (Entered: 02/28/2003) |
| ☐ | Runner | 02/28/2003 | -- | SUMMONS issued for all dfts. (20 Days) (Mailed to Counsel) (ck) (Entered: 02/28/2003) |
| ☐ | Runner | 04/14/2003 | 3 | RETURN OF SERVICE executed as to all dfts 3/22/03; Answer due on 4/11/03. (DS) (Entered: 04/17/2003) |
| ☐ | Runner | 04/24/2003 | 4 | STIPULATION and ORDER, extending time and, setting answer due for 5/16/03 for dfts. (signed by Mag. Judge John J. Hughes) (NM) (ss) (Entered: 04/24/2003) |
| ☐ | Runner | 05/29/2003 | 5 | STIPULATION and ORDER, setting answer due for 7/1/03 for dfts. (signed by Mag. Judge John J. Hughes) (NM) (ss) (Entered: 05/29/2003) |
| ☐ | Runner | 07/16/2003 | 6 | STIPULATION and ORDER, extending time and, setting answer due for 9/1/03 for dfts. (signed by Mag. Judge John J. Hughes) (NM) (ss) (Entered: 07/16/2003) |
| ☐ | Runner | 09/08/2003 | 7 | STIPULATION and ORDER, extending time and, setting answer due for 9/8/03 for dfts. (signed by Mag. Judge John J. Hughes) (NM) (ss) (Entered: 09/09/2003) |
| ☐ | Runner | 09/12/2003 | 8 | STIPULATION and ORDER, extending time and, setting answer due for 10/8/03 for dfts. (signed by Mag. Judge John J. Hughes) (NM) (ss) (Entered: 09/16/2003) |
| ☐ | Runner | 10/15/2003 | 9 | STIPULATION and ORDER, resetting answer due for 10/31/03 for all defts. (signed by Mag. Judge John J. Hughes) (NM) (SA) (Entered: 10/15/2003) |
| ☐ | Runner | 11/13/2003 | 10 | STIPULATION and ORDER, extending time and setting answer due for 12/1/03 for dfts. (signed by Mag. Judge John J. Hughes)(NM) (ss) (Entered: 11/17/2003) |
| | | | | **Items 1 to 11 of 11** |

**Retrieve Document(s)**

Pricing    Privacy    Master Services Agreement

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

IC-App-0720



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,661 | 08/08/2005 | 4602415 | 9003.001 | 1207 |

| 7590 09/20/2005 | EXAMINER |
|---|---|
| Kenneth P. Glynn | BOMBERG, K |
| GLYNN & ASSOCIATES, PC | |
| 24 Mine Street | ART UNIT / PAPER NUMBER |
| Flemington, NJ 08822 | 3993 |

DATE MAILED: 09/20/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

IC-App-0721

| | Control No. | Patent Under Reexamination |
|---|---|---|
| **Order Granting / Denying Request For Ex Parte Reexamination** | 90/007,661 | 4602415 |
| | Examiner | Art Unit | |
| | Kenneth Bomberg | ~~3999~~ 3993 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>08 August 2005</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO-1449,    c)☐ Other: _____

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐ by Treasury check or,

b) ☐ by credit to Deposit Account No. _____, or

c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 04-01)        Office Action in *Ex Parte* Reexamination        Part of Paper No. 20050914

IC-App-0722

DECISION

1.      A substantial new question of patentability affecting Claims 1-12 of United States Patent

Number 6,402,415 to Eberle, III is raised by the request for reexamination.


2.      Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that reexamination proceedings

"will be conducted with special dispatch" (37 CFR 1.550(a)).  Extension of time in *ex parte*

reexamination proceedings are provided for in 37 CFR 1.550(c).


3.      The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 6,402,415 throughout the course of this reexamination proceeding.  See MPEP §§

2207, 2282 and 2286.


4.      The requester indicates that Claims 1-12 are unpatentable over the prior art as detailed

below:

**Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of the subject Eberle '415 patent read on the device**

**shown in drawing figures 6 & 11 of the Weiland patent (US Patent 2,201,129). The Weiland**

**'129 patent is prior art to the '415 patent under 35 USC 102(b) and was not considered**

**during the original prosecution of the '415 patent.**

It is agreed that the consideration of Weiland raises a substantial new question of
patentability as to claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of the subject Eberle '415 patent. As
pointed out on page 3 of the request:

> Weiland teaches in Fig. 6, an anchoring device having a substantially flat top surface
> (tops of marginal portions 14a) having opposite sidewalls in the shape of arcs. Extending
> from beneath the top surface are pairs of aligned support members (lugs or flanges 13a)
> on opposed sides (see Claim 8 of the Eberle '415 patent) of a centrally located screw hole
> (screw aperture 12). The boards (tiles A) (see page 2, col. 1, lines 59-70, of Weiland '129)
> are attached to a surface using the Weiland anchoring devices. The boards are slotted
> using a small circular cutting wheel (see page 1, col. 2, lines 35-47 of Weiland '129).
> The screw hole (screw aperture 12) in Weiland is centrally located in the top surface of
> the anchoring device ('415, Claim 2). The cross section of the Weiland screw hole shown
> in Figure 9 of Weiland is a beveled ('415, claims 3, 5, 11). The Weiland anchoring
> devices top elements and support members are unitarily formed (see Weiland pg. 1, col.
> 2, lines 51-end, and pg. 2, col. 1, lines 15- 21) ('415 Claim 7 & 9).

Further, there is a substantial likelihood that a reasonable examiner would consider this teaching
important in deciding whether or not the claims are patentable. Accordingly, Weiland raises a
substantial new question of patentability as to Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11, which
question has not been decided in a previous examination of the Eberle '415 patent.

**Claims 4, 6, and 12 of the '415 patent are obvious under 35 USC 103 in view of Weiland '129, and German Patent document 372,483 (cited during the prosecution of the '415 patent).**

It is agreed that the consideration of Weiland in view of German document '483 raises a substantial new question of patentability as to claims 4, 6, and 12 of the subject Eberle '415 patent. As pointed out on page 4 of the request:

> Providing a hole in the form of a non-circular and elongated slot in a device for attaching adjoining boards in known.

Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not the claims are patentable. Accordingly, Weiland in view of German document '483 raises a substantial new question of patentability as to Claims 4, 6, and 12, which question has not been decided in a previous examination of the Eberle '415 patent.

**Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of the subject Eberle '415 patent are obvious in view of Smith (USP 1,714,738) and Elmendorf (USP 2,337,156). The Smith and Elmendorf patents are qualifying prior art to the '415 patent under 35 USC 102(b) and, thusly, can be used in a 35 USC 103 rejection. Neither reference was considered during the original prosecution of the '415 patent.**

It is agreed that the consideration of Smith in view of Elmendorf raises a substantial new question of patentability as to claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of the subject Eberle '415 patent. As pointed out on pages 4-5 of the request:

Smith In figure 3 depicts anchoring device having, inter alia, a flat horizontal top element

(top wall 9), vertical support members (supports / feet 11), and attachment orifice (nail

hole 13) substantially according to the claims. The top view shape being rectangular

rather than the claimed "biscuit-shaped" with arc shaped side walls. Elmendorf explicitly

teaches in an anchoring device to alternatively make the top shape square, circular, or any

other desired shape (page 3, column 2, lines 8-15).

There is a substantial likelihood that a reasonable examiner would consider this teaching

important in deciding whether or not the claims are patentable. Accordingly, Smith in view of

Elmendorf raises a substantial new question of patentability as to Claims 1, 2, 3, 5, 7, 8, 9, 10,

and 11, which question has not been decided in a previous examination of the Eberle '415 patent.

**Claims 4, 6, and 12 of the '415 patent are obvious under 35 USC 103 in view of Smith '738**

**and Elmendorf '156, and further in view of German Patent document 372,483 (cited during**

**the prosecution of the '415 patent).**

It is agreed that the consideration of Smith and Elmendorf in view of German document

'483 raises a substantial new question of patentability as to claims 4, 6, and 12 of the subject

Eberle '415 patent. As pointed out on page 5 of the request:

Providing a hole in the form of a non-circular and elongated slot in a device for attaching

adjoining boards is known.

Further, there is a substantial likelihood that a reasonable examiner would consider this teaching

important in deciding whether or not the claims are patentable. Accordingly, Smith and

Elmendorf in view of German document '483 raises a substantial new question of patentability

as to Claims 4, 6, and 12, which question has not been decided in a previous examination of the

Eberle '415 patent.


**Claims 1, 2, 7, 8, 9, and 10 are obvious under 35 USC 103 in view of Heilmann (USP**

**695,722) and Elmendorf '156.   Heilmann '722 and Elmendorf '156 both qualify as prior**

**art under 35 USC 102(b) and can, accordingly, be used in a rejection under 35 USC 103.**

It is agreed that the consideration of Heilmann in view of Elmendorf raises a substantial

new question of patentability as to claims 1, 2, 7, 8, 9, and 10 of the subject Eberle '415 patent.

As pointed out on pages 6 of the request:

> Heilmann in figure 4 depicts anchoring device having, inter alia, a flat horizontal top
>
> element (front facing), vertical support members (shoulders ribs d), and attachment
>
> orifice (central perforation / hole $d^1$) substantially according to the claims.  The top view
>
> shape being rectangular rather than the claimed "biscuit-shaped" with arc shaped side
>
> walls.  Elmendorf explicitly teaches in an anchoring device to alternatively make the top
>
> shape square, circular, or any other desired shape (page 3, column 2, lines 8-15).

There is a substantial likelihood that a reasonable examiner would consider this teaching

important in deciding whether or not the claims are patentable.  Accordingly, Heilmann in view

of Elmendorf raises a substantial new question of patentability as to Claims 1, 2, 7, 8, 9, and 10,

which question has not been decided in a previous examination of the Eberle '415 patent.

**Claims 3, 4, 5, 6, and 11-12 of the '415 patent are obvious under 35 USC 103 in view of**

**Heilmann '722 and Elmendorf '156, and further in view of German Patent document**

**372,483 (cited during the prosecution of the '415 patent).**

It is agreed that the consideration of Heilmann and Elmendorf in view of German

document '483 raises a substantial new question of patentability as to claims 3, 4, 5, 6, and 11-12

of the subject Eberle '415 patent.  As pointed out on page 6 of the request:

Providing a hole in the form of a non-circular and elongated slot in a device for attaching

adjoining boards in known. With respect to claims 3, 5, and 11 as pointed out on page 13

of the request, the German reference '483 further teaches a beveled top of the screw hole.

Further, there is a substantial likelihood that a reasonable examiner would consider this teaching

important in deciding whether or not the claims are patentable.  Accordingly, Heilmann and

Elmendorf in view of German document '483 raises a substantial new question of patentability

as to Claims 3, 4, 5, 6, and 11-12, which question has not been decided in a previous

examination of the Eberle '415 patent.


**Claims 1-12 of the '415 patent are obvious under 35 USC 103 in view of the new questions**

**of patentability raised above, and further in view of Chen (USP 5,619,834) (qualifying**

**under 102(e)).**

It is agreed that the consideration of the above questions of patentability further in view

of Chen '834 raises a substantial new question of patentability as to claims 1-12 of the subject

Eberle '415 patent.  As pointed out on page 22 of the request:

The use of a "biscuit" shaped "biscuit device" as depicted by Eberle '415 for attaching

adjoining boards is known. The "biscuit" shape as taught by Chen '834 (see figures 5, 9,

and 10) closely resembles the "biscuit" shape as depicted by Eberle '415 patent.

Although the claimed "biscuit" shape of Eberle merely requires opposite side walls in the

shape of arcs, Chen '843, further teaches the disclosed "biscuit" shape.

Further, there is a substantial likelihood that a reasonable examiner would consider this teaching

important in deciding whether or not the claims are patentable. Accordingly, the above

patentability questions raised under 35 USC 103 in view of Chen '834 raises a substantial new

question of patentability as to Claims 1- 12, which question has not been decided in a previous

examination of the Eberle '415 patent.


5.　　　　Any inquiry concerning this communication or earlier communications from the
examiner should be directed to Kenneth Bomberg whose telephone number is 571-272-4922.
The examiner can normally be reached on Monday, Tuesday, Thursday and alternative Fridays.
　　　　If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Andres Kashnikow can be reached on (571) 272-4361. The fax phone number for
the organization where this application or proceeding is assigned is 571-273-9900.
　　　　Information regarding the status of an application may be obtained from the Patent
Application Information Retrieval (PAIR) system. Status information for published applications
may be obtained from either Private PAIR or Public PAIR. Status information for unpublished
applications is available through Private PAIR only. For more information about the PAIR
system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR
system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).


K.B.

Conferees

Andres Kashnikow

Kenneth Bomberg

Jimmy Foster

KENNETH BOMBERG
PRIMARY EXAMINER

OIPE JC104
AUG 0 8 2005
PATENT & TRADEMARK OFFICE

| FORM PTO/SB/08 (08-00)<br>Substitute for form 1449/PTO<br><br>**US DEPT. OF COMMERCE**<br>**PATENT & TRADEMARK OFFICE**<br><br>INFORMATION DISCLOSURE STATEMENT<br><br>(Use several sheets if necessary) | ATTY DOCKET NO.<br>9003.001 | APPLICATION NO.<br><br>Reexamination of U.S.<br>Patent No. 6,402,415<br><br>*90/007,661* |
|---|---|---|
| | APPLICANT(S)<br>Eberle, III | |
| | FILING DATE<br>August 8, 2005 | GROUP *3993* |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUB CLASS |
|---|---|---|---|---|---|---|
| *KB* | | 695,722 | 03/18/1902 | HEILMANN | | |
| *KB* | | 1,714,738 | 05/28/1929 | SMITH | | |
| *KB* | | 2,201,129 | 05/14/1940 | WEILAND | | |
| *KB* | | 2,337,156 | 12/21/1943 | ELMENDORF | | |
| *KB* | | 5,619,834 | 04/18/1997 | CHEN | | |
| | | | | | | |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUB CLASS |
|---|---|---|---|---|---|---|
| *KB* | | 372483 | 03/28/1923 | Germany | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | |
|---|---|
| | Translation of German Patent Document 372483 provided by the U.S. PTO Translations Branch |
| | |
| | |
| | |

| EXAMINER *Kenneth Bomberg* | DATE CONSIDERED *9/14/05* |
|---|---|

Examiner: Initial if citation considered, whether or not citation is in conformance with M.P.E.P. 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

| Reexamination  | Application/Control No. 90/007,661 | Applicant(s)/Patent Under Reexamination 4602415 |
|---|---|---|
| | Certificate Date | Certificate Number |

| Requester | Correspondence Address: | ☐ Patent Owner | ☒ Third Party |
|---|---|---|---|

MATTHEW W. STAVISH, ESQ.
BERENATO WHITE & STAVISH LLC
6550 ROCK SPRING DRIVE, SUITE 240
BETHESDA, MD 20817

| LITIGATION REVIEW ☒ | KB *XB* | 9/16/2005 |
|---|---|---|
| | (examiner initials) | (date) |
| **Case Name** | | **Director Initials** |
| Eberle, et al. V. Harris et al. Filed December 8, 2003, D.C. New Jersey (Trenton) 03cv5809 | | |
| Eberle, et al. V. Pelc, et al. Filed February 28, 2003, D.C. New Jersey (Trenton), Doc. No. 03cv892(SRC) | | |
| | | |
| | | |
| | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| 1. | |
| 2. | |
| 3. | |
| 4. | |

U.S. Patent and Trademark Office                    DOC. CODE  RXFILJKT



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov



Bib Data Sheet

**CONFIRMATION NO. 1207**

| SERIAL NUMBER 90/007,661 | FILING DATE 08/08/2005 RULE | CLASS 403 | GROUP ART UNIT 3993 | ATTORNEY DOCKET NO. 9003.001 |
|---|---|---|---|---|

**APPLICANTS**

4602415, Residence Not Provided;

Blue Heron Enterprises LLC(Owner), Califon, NJ;
Matthew W. Stavish(3rd. Pty. Req.), Bethesda, MD;Matthew W. Stavish, Esq., Bethesda, MD

** CONTINUING DATA ************************
This application is a REX of 09/186,741 11/05/1998 PAT 6,402,415 *OIC 9/16/05 MS*
which is a CIP of 08/811,898 03/05/1997 ABN

** FOREIGN APPLICATIONS ********************* *NONE 9/16/05 MS*

| Foreign Priority claimed ☐ yes ☑ no | STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS 12 | INDEPENDENT CLAIMS 2 |
|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☑ Met after Allowance | | | | |
| Verified and Acknowledged *MS 9/16/05* Examiner's Signature   Initials | | | | |

ADDRESS
Kenneth P. Glynn
GLYNN & ASSOCIATES, PC
24 Mine Street
Flemington , NJ
08822

TITLE
ANCHORING BISCUIT DEVICE

| FILING FEE RECEIVED 2520 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |

IC-App-0732





11-14-05    ReExam

90/007661

N/E =
No cert.
of
service.

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE



Service confirmed on 11/10/05.

In re issued patent of:

HARRY W. EBERLE, III

Serial No. 09/186,741

Filing Date: November 5, 1998

Priority Date: March 5, 1997

For: ANCHORING BISCUIT DEVICE

**U.S. Patent No. 6,402,415 B1**

Issue Date: June 11, 2002

: Examiner:
:
: **KENNETH BOMBERG**
:
: Group Art Unit: 3993
:
: Attorney Docket No. HWE-105C
:
:
:
:
:
:
:

## Ex Parte ReExamination Control No. 90/007,661

Honorable Commissioner of Patents
P.O. BOX 1450
Alexandria, VA 22313-1450

## PATENT OWNER'S STATEMENT

This Issued Patent is the subject of a Request for an Ex Parte ReExamination

Request filed by G. Steven Harris, a third party individual currently a Defendant in Patent

Infringement Litigation (United States District Court, District of New Jersey, Trenton,

Court Case Number 03-5809, Harry W. Eberle, III and Blue Heron Enterprises, LLC

versus Steven Harris and Steven Harris, t/a KK Mfg Co.). The Request was filed on

August 8, 2005 and was granted by the United States Patent & Trademark Office on September 20, 2005.

This Statement is filed in response to the grant for Ex Parte ReExamination of September 20, 2005, and specifically to the content of the Harris Request and the Examiner's Decision set forth in the grant of September 20, 2005.

STATUS OF CLAIMS:

The following is the current status of all claims:

| CLAIMS | STATUS |
|---|---|
| 1 through 12 | Allowed and issued |
| 1 through 12 | Now Subject to ReExamination as set forth in Decision |

## REMARKS

I. Statement of Examiner's Reasons For granting Request For Reconsideration

The Examiner has stated reasons for reexamination. The requester's filing has raised new substantial questions of patentability based on the following allegations:

1.) Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of the subject Eberle '415 patent read on the device shown in drawing figures 6 & 11 of the Weiland patent (US Patent 2,201,129). The Weiland '129 patent is prior art to the '415 patent under 35 USC 102 (b) and was not considered during the original prosecution of the '415 patent.

2

2.) Claims 4, 6, and 12 of the '415 patent are obvious under 35 USC 103 in view of Weiland '129, and German Patent document 372,483 (cited during the prosecution of the '415 patent).

3.) Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of the subject Eberle '415 patent are obvious in view of Smith (USP 1,714,738) and Elmendorf (USP 2,337,156). The Smith and Elmendorf patents are qualifying prior art to the '415 patent under 35 USC 102(b) and, thusly, can be used in a 35 USC 103 rejection. Neither reference was considered during the original prosecution of the '415 patent.

4.) Claims 4, 6, and 12 of the '415 patent are obvious under 35 USC 103 in view of Smith '738 and Elmendorf '156, and further in view of German Patent document 372,483 (cited during the prosecution of the '415 patent).

5.) Claims 1, 2, 7, 8, 9, and 10 are obvious under 35 USC 103 in view of Heilmann (USP 695,722) and Elmendorf '156. Heilmann '722 and Elmendorf '156 both qualify as prior art under 35 USC 102(b) and can, accordingly, be used in a rejection under 35 USC 103.

6.) Claims 3, 4, 5, 6, and 11-12 of the '415 patent are obvious under 35 USC 103 in view of Heilmann '722 and Elmendorf '156, and further in view of German Patent document 372,483 (cited during the prosecution of the '415 patent).

3

IC-App-0735

7.) Claims 1-12 of the '415 patent are obvious under 35 USC 103 in view of the new questions of patentability raised above, and further in view of Chen (USP 5,619,834) (qualifying under 102(e)).

II. Owner's Response

1.) Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of the subject Eberle '415 patent are alleged to read on the device shown in drawing figures 6 & 11 of the Weiland patent (US Patent 2,201,129). However, contrary to Harris's allegations, the Weiland patent does not anticipate or even render obvious the present invention anchoring biscuit device. Weiland shows tile spacer/attachment devices that have semicircular tops cut up into four separate quadrants for fitting with corners of four different tiles. Weiland also shows starter device with two cut quadrant circular arcs and an opposing straight edge. The devices of Weiland are very distinct from the Eberle patent anchoring biscuit devices for a number of reasons:

First, the Weiland devices have no vertical support members extending down at the center area of the top element. Weiland does the opposite. The Weiland devices have vertical spaced plates separated from a center area to create space between the plates and hence to create extra space between the tiles to which they are attached. Thus, the structures of Weiland differ by intentionally having no vertical support members along the center area as in the Eberle invention (all Eberle claims). Compare especially Figures

4

3 and 9 of Eberle that show the end views of the Eberle claimed devices, as compared to those of Weiland's Figures. Because the Weiland devices are structurally different from those claimed by Eberle, they cannot anticipate the Eberle invention. Because they necessarily require these different structures to perform their intended purpose as set forth in the Weiland patent, they do not render the Eberle claims obvious.

Second, the Weiland devices have vertical members that are in different planes, whereas the Eberle claimed devices require the vertical support members to be in the same plane. This is another salient feature of the Eberle invention that is specifically set forth in the claims. Not only is it absent from Weiland, but Weiland does the opposite and specifically requires that the plates be at right angles to one another. The Weiland devices have tops with vertical spaced plates that are "vertically and horizontally disposed means". The Weiland devices "are provided with four radially extending channel-like portions formed integrally with plates, the said portions extending rearwardly of the members and being ninety degrees apart." (col. 2, lines 23-27 of Weiland; and see also all of the Weiland Figures showing right angled plates or flanges.) Thus, Weiland has vertical members at right angles to one another and cannot have vertical members that are in the same plane.

Third, the devices of Weiland are so different from the Eberle devices that the Weiland devices would be inoperative for the Eberle purpose, and likewise, the Eberle devices could not function effectively for the Weiland purposes. The Weiland devices have the radially extending plates or flanges that are at right angle to each other and inherently create products that cannot be slipped into a biscuit cut or wood slot, because,

5

as can be seen from the Weiland drawings, there are no single plane vertical members that would create a single plane top area that could fit into a saw cut, biscuit cut or slot in a side of wood. The Eberle device, on the other hand, is appointed for "use for joining two adjacent boards which have been precut with biscuit receiving slots." See, e.g., Claim 1, feature (b) and claim 10, feature (b).

Weiland's devices are built specifically for corners and can only be used in two corners (two tiles at their corners) or four corners (four tiles at their closest corners). Weiland's devices have downwardly projecting and outwardly projecting members that totally prevent the insertion of the device into a slot, whereas the Eberle devices as claimed are specifically structured to fit into a side slot of wood or synthetic wood.

Hence, no device disclosed by Weiland can anticipate the Eberle device, since the downwardly projecting members would preclude the receipt of the Weiland device by a biscuit receiving slot.

In order for the Weiland device to accomplish the function provided by the Eberle device, it would have to be reconstructed by removing certain of its critical elements, e.g. two of the channels 13 of Fig. 3 or two of the flanges 13a of Fig. 6, to leave two generally collinear portions on either side of attachment hole 12. Such a reconstruction is submitted to be substantial, precluding a finding of obviousness under *In re Ratti*, 270 F.2d 810, 123 USPQ 349 (CCPA 1959). Moreover, once modified in this manner, the Weiland device would be rendered inoperable for the disclosed function of attaching tiles at their corners, further precluding any finding of obviousness.

6

IC-App-0738

The function afforded by the Weiland device, viz. the securing of generally square or rectangular tiles at their corners presents a significantly different problem than the securing of deck boards. As would be known to one of ordinary skill in the carpentry and deck building arts, wooden deck boards, which are typically disposed outdoors and exposed to the elements, including rain and snow and relatively large temperature excursions, undergo significant dimensional changes. Moreover, deck boards are often many feet in length, in some cases as long as sixteen feet or more. If secured merely at their corners, as would be the case using a securing device such as that of Weiland, the deck boards would be subject to marked deformation, warping, bowing, or the like. Such deformation would be highly detrimental and aesthetically unacceptable, and would likely lead to premature failure of the board. On the other hand, the Eberle device is auspiciously employed for securing the board at regular intervals along its length, virtually eliminating the foregoing deformation.

Thus, Weiland's devices have different structures from the present invention that (i) function differently from the present invention, and (ii) are used for a different purpose than the present invention and, as such, neither disclose the present invention nor render it obvious.

2.) Claims 4, 6, and 12 of the '415 patent are alleged to be obvious under 35 USC 103 in view of Weiland '129, and German Patent document 372,483 (cited during the prosecution of the '415 patent). All of the comments set forth in paragraph 1 of this section regarding the Weiland patent are repeated here and incorporated herein by

7

reference. The secondary reference to Arnold Wothe (the German reference) does not overcome any of the aforesaid shortcomings of the Weiland patent. Wothe is merely a teaching of the use of an elongated hole to accommodate wood expansion and contraction (from gaining and losing moisture), and does not teach an angled screw insert accommodating beveled orifice as in the present invention. It is otherwise acknowledged that beveled orifices for angled screws are known. However, this does not render the claimed invention obvious because the shortcomings of Weiland still apply.

3.) Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of the subject Eberle '415 patent are alleged to be obvious in view of Smith (USP 1,714,738) and Elmendorf (USP 2,337,156). The Smith and Elmendorf patents, however, are also inappropriate as a basis for rejection, for a number of reasons.

First, the Smith patent describes a flooring device for attaching flooring having a continuous groove cut into the side, and not a biscuit cut. The Smith device does not have the claimed features of the Eberle invention as it does not have a biscuit-shaped top view. Second, the Smith device does not have single plane vertical support members, but ones that are parallel to one another. Third, the Smith device has turned down knife edges that bit into the wood. Fourth, the Smith device is formed from cut and reversely bent sheet metal creating parallel instead of in-line (single plane) supports.

Fifth, as illustrated by Fig. 2, the Smith device is appointed for use in attaching floor boards that have an angled cutaway 18 below the continuous groove 8 in which the side flanges 10 are received. Such an arrangement is said to be an important

8

consideration (see, e.g., lines 63-68. Moreover, Smith teaches an installation in which the nail specifically is <u>not</u> driven through the board and adjacent boards are drawn together into abutment by angle nailing (lines 70-77. On the other hand, the Eberle device is used in conjunction with decks which are conventionally installed with gaps intentionally provided between adjacent boards, the gap spacing being determined by the width of the downwardly projecting vertical supports (e.g., elements 15 and 17 of Fig. 2. In addition, the Eberle device permits installations in which the device-securing fastener is intentionally driven through one of the deck boards, as depicted by Fig. 9.

All of these differences teach away from rather than toward the present invention.

Furthermore, during the initial prosecution of the Eberle patent, the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office considered U.S. Patent 2,362,252 to Ellingwood. Like the Smith device, the Ellingwood device is generally T-shaped. Significantly, the Board held the Eberle device, which has a generally biscuit-shaped top view, patentable over the T-shaped Ellingwood device. In pertinent part, the Board specifically stated in its opinion in this case:

> "Contrary to the findings made by the examiner (See pages 4 and 5 in the answer), Ellinwood's T-shaped element does not respond to the limitations" [of the Eberle claims]... "requiring a substantially flat horizontal top element having a generally biscuit-shaped top view configuration...". "Ellingwood's T-shaped element also fails to respond to the limitations in claims 18 and 27 requiring the substantially flat horizontal top element to have "opposite side walls in the shape

IC-App-0741

*of arcs from a top view, said arcs having predetermined radii and arc lengths".* "

(Page 4, line 14, et seq., Decision of Patent Appeals and Interferences, August 27, 2001, Appeal No. 2001-0217, unpublished, of record in this file.)

It is submitted that the same considerations that predicated patentability of the Eberle device over the Ellingwood reference apply with equal force to the Smith reference, which references both disclose a device with a substantially identical top view.

Apparently recognizing Smith's failure to disclose or suggest a biscuit-shaped top view, as required by Eberle's claims, the Requester has proposed that the Smith teaching be combined with Elmendorf, which is directed to wood tile flooring. Elmendorf further provides disk-like fasteners having a generally circular or square shape. These fasteners engage the Elmendorf tiles either at their beveled corners, in an arrangement of square or rectangular tiles (e.g. Figs. 2, 7, and 14), or at complementary right-angled vertices in a herringbone arrangement (e.g. Fig. 18). Elmendorf fails to disclose or suggest any fastener that engages adjacent boards at any point along shared parallel edges. Instead, the fasteners are disposed only at vertices having an interior or exterior opening angle of 90°. Contrary to the Requester's pretension, Elmendorf thus does not provide a fastener that is to be received in biscuit-receiving slots in <u>adjacent</u> boards, as required by the Eberle claims.

Moreover, the Elmendorf discs do not have any of the present invention features as set forth in the claims of Eberle and add nothing to the Smith shortcomings set forth above. In fact, it is only by hindsight that Harris suggests combining these references.

IC-App-0742

Smith contemplates floor boards having a groove extending substantially the entire length of the board, so that there would be no motivation to use a fastening device having a biscuit-shaped top view, as would be suited for engaging a biscuit-receiving slot, instead of an extended groove. Without the knowledge of the Eberle teachings, there would thus be no thought by one of ordinary skill in the art to combine these teachings of Smith and Elmendorf in the manner proposed. The assertion that the "various forms" disclosed by Smith at page 2, line 75 provides motivation for the proposed combination falls far short of the legal standard required. The mere possibility that references could be combined has repeatedly been ruled inadequate. Instead, a combination is warranted only if there is some suggestion or motivation, either in the references themselves or in the knowledge generally available to a skilled artisan that would lead such a person to the combination.

Further, in reality, it would be impossible to bend the sheet metal of Smith into anything but squared or right-angled elements, as circular cuts would create variable height supports and extra trimming and folding that would be needed, and would make such concoctions impossible to fabricate, further undermining the alleged motivation to combine Smith and Elmendorf as proposed. Also, even if such a combination were possible and were obvious, the result would still be a device with parallel supports in different planes not in-line (same plane) or in the center area. Neither patent teaches that arrangement. It is only in hindsight that one could even think of trying to create the biting edge sheet metal devices of Smith with the round top shape of Elmendorf. For all of these reasons, none of the Eberle claims are obvious over Smith in view of Elmendorf.

11

IC-App-0743

4.) Claims 4, 6, and 12 of the '415 patent are obvious under 35 USC 103 in view of Smith '738 and Elmendorf '156, and further in view of German Patent document 372,483 (cited during the prosecution of the '415 patent). ). All of the comments set forth in paragraph 3 of this section regarding the Smith and Elmendorf patents are repeated here and incorporated herein by reference. The tertiary reference to Arnold Wothe (the German reference) does not overcome any of the aforesaid shortcomings of either the Smith or the Elmendorf patents. It is otherwise acknowledged that beveled orifices for angled screws are known. However, this does not render the claimed invention obvious because the shortcomings of Smith and Elmendorf cited above still apply.

5.) Claims 1, 2, 7, 8, 9, and 10 are alleged to be obvious under 35 USC 103 in view of Heilmann (USP 695,722) and Elmendorf '156. Heilmann describes wall attachment devices that are T-shaped and have an orifice for a screw. The devices are not top view biscuit shaped and would to fit efficiently into a biscuit cut slot, i.e., it is not possible to have a square peg fit efficiently into a round hole. The device would only have a portion of its surfaces anchor and/or would not fit all the way in, and it could not use all of the space or surface of a circular or biscuit cut. In either case, the device is old and well recognized.

   As set forth above in connection with the purported obviousness of Eberle's claims over Smith in view of Elmendorf, the Board of Patent Appeals and Interferences ruled the Eberle claims patentable over the T-shaped device of the Ellingwood patent. It is respectfully submitted that the same considerations that predicate patentabiliy of the

IC-App-0744

Eberle claims over Ellingwood apply with equal force to Heilmann, when taken either singly or in combination with Elmendorf.

It is further to be noted that various biscuit shapes, including generally circular and octagonal biscuit shapes, are known in the prior art. For example, US Patent 5,458,433 to Stasny, which is of record in the Eberle patent, discloses such shapes. Nonetheless, the Eberle claims were adjudged patentable by the Board, notwithstanding the Stasny reference, even in light of other references disclosing generally T-shaped devices, such as those of Ellinwood. It is thus further submitted that the Requester's reliance on the combination of Heilmann and Elmendorf is misplaced.


6.) Claims 3, 4, 5, 6, and 11-12 of the '415 patent are obvious under 35 USC 103 in view of Heilmann '722 and Elmendorf '156, and further in view of German Patent document 372,483 (cited during the prosecution of the '415 patent). All of the comments set forth in paragraph 3 and 4 of this section regarding the Heilmann and Elmendorf patents are repeated here and incorporated herein by reference. The tertiary reference to Arnold Wothe (the German reference) does not overcome any of the aforesaid shortcomings of the Heilmann and Elmendorf patents. It is otherwise acknowledged that beveled orifices for angled screws are known. However, this does not render the claimed invention obvious because the shortcomings of Heilmann and Elmendorf still apply.


7.) Claims 1-12 of the '415 patent are alleged to be obvious under 35 USC 103 in view of the new questions of patentability raised above, and further in view of Chen (USP

IC-App-0745

5,619,834). All of the comments set forth in paragraphs 1 through 6 of this section regarding the patents cited therein are repeated here and incorporated herein by reference. The reference to Chen is directed to a sliding and then locking J-shaped metal fastener or T-shaped metal fastener that has an arcuate bottom or bottom element, and an arcuate complementary pad at right angles to its positioning plate for supporting vertical sheets of slate. The multi-piece structure of Chen is far more complicated to manufacture and install than the unitary structure provided by the Eberle teaching. Only in hindsight could it possibly be modified to create a device of the type called for by present claims 1-12. Biscuit shaped devices for joining wood are well known. Reliance upon Chen that has a different product with no throughhole in its top and that has a different purpose and works in a different way is non-analogous to wood joinders, and, nonetheless, is unnecessary to establish biscuit shapes, as biscuit shapes *per se* are not new.

Further, one of ordinary skill in the art of carpentry and deck building would not look to vertical granite wall teachings, and this Chen patent relating to vertical granite walls is nonanalogous art. Clearly, the Requester has not demonstrated any affirmative disclosure or suggestion in Chen, the other references of record in the present proceeding, or in the art in general, that would lead a person having ordinary skill in the art to combine Chen, apart from hindsight based on Eberle's own teaching. Finally, the Chen patent does not render the claimed invention obvious because the shortcomings of all of the other patents cited above still apply.

III. Summary

IC-App-0746

For all of the above reasons, it is believed that all of the claims now issued remain patentable and the patent claims should not be rejected. The alleged anticipation and obviousness of the Eberle claims by Harris allegations should not be relied upon and the patentability thereof should stand.

Respectfully submitted,

Dated: November 9, 2005

Kenneth P. Glynn
Reg. No. 26, 893
Attorney for Applicant
24 Mine Street
Flemington, NJ 08822
(908) 788-0077 Tele
(908) 788-3999 Fax

KPG/hd
EM RRR No. ED 982891221 US
cc: Blue Heron Enterprises, LLC
    Ernest Buff, Esq.

## CERTIFICATION OF MAILING BY EXPRESS MAIL

The undersigned hereby certifies that this document was delivered to the United States Post Office in Flemington, New Jersey 08822 between 7:30 a.m. and 4:45 p.m. on Wednesday, November 9, 2005 as EXPRESS MAIL. The undersigned further declares that this Certification is made with the knowledge that willful false statements are punishable by fine or imprisonment, or both, under applicable sections of United States law, and that willful false statements made before the United States Patent and Trademark Office may jeopardize the validity of the application or issuing patent related thereto.

Kenneth P. Glynn

KPG/hd

15

# GlynnTech, Inc.

24 Mine Street
Flemington, NJ 08822
Tele 908 788 0077
Fax  908 788 3999

Kenneth P. Glynn
President

Steven P. Glynn
Manager of Licensing

## FACSIMILE TRANSMISSION

TO: _Marsha (U.S.P.T.O.)_

FAX NUMBER: _(571) 273-9900_

FROM: _Kenneth P. Glynn_

RE: _HWE-106C_
    _Patent No. 6,402,416 B1_

COMMENTS: _Enclosed is the Certificate_
_of Service on the Third Party Requester._
_Please file Patent Owner's Statement_
_accordingly._

DATE: _11-16-05_     TIME: _4:50 P.m._

NO OF PAGES (INCLUDING COVER SHEET): _2_

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE
AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED AND
CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS
COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US
IMMEDIATELY BY TELEPHONE. THANK YOU.

PLEASE ACKNOWLEDGE RECEIPT OF THIS TRANSMISSION. THANK YOU.

PREPARED BY _mlh_      SENT BY _mlh_

IC-App-0748

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re issued patent of:                          :Examiner:

HARRY W. EBERLE, III                      : KENNETH BOOMBERG

Serial No. 09/186,741                          : Group Art Unit: 3993

Filing Date: November 5, 1998            : Attorney Docket No.: HWE-105C

Priority Date: March 5, 1997

For: ANCHORING BISCUIT DEVICE

U.S. PATENT NO. 6,402,415 B1

Issue Date: June 11, 2002


### CERTIFICATION OF SERVICE

The undersigned hereby certifies that the Patent Owner's Statement was addressed to:

Matthew W. Stavish, Esquire
BERENATO WHITE & STAVISH LLC
6550 Rock Spring Drive
Suite 240
Bethesda, MD 20817

and delivered to the United States Post Office in Flemington, New Jersey 08822 between 8:30 a.m. and 4:30 p.m. on. Wednesday, November 16, 2005. The undersigned further declares that this Certification is made with the knowledge that willful false statements are punishable by fine or imprisonment, or both, under applicable sections of United States law.

Michelle Lyn Harris

KPG/mlh
Certified Mail No. 7005 0390 0003 2101 5138

PAGE 2/2 * RCVD AT 11/16/2005 4:56:15 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/33 * DNIS:2739900 * CSID:9087883999 * DURATION (mm-ss):00-44      P.02

IC-App-0749



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re: Eberle, III
U.S Patent No.: 6,402,415
Serial Number: 09/186,741
Filed: 11/05/1998
Title: Anchoring Biscuit Device

N/E
(See 37 CFR
1.570) and
37 CFR 1.248)

REPLY TO PATENT OWNER'S STATEMENT BY THIRD PARTY REQUESTER

United States Patent and Trademark Office
Customer Service Window, Mail Stop Ex Parte Reexam
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Dear Sir:

In reply to the patent owner's statement filed in response to the Examiner's

Decision Granting Ex Parte Reexamination of U.S. Patent No. 6,402,415 to Eberle, III,

the Requester submits the following remarks in further support of its position that claims

1-12 of the '415 patent are unpatentable.

It is believed that no fees are due with this submission. Should that determination

be incorrect, then please debit Account No. 50-0548 and notify the undersigned.

1

**REMARKS:**

In his response to the Decision granting the Request for an Ex Parte Reexamination of the '415 patent, the patent owner makes various arguments for patentability of claims 1-12 over the cited references. The arguments are not persuasive.

## A. Claims 1, 2, 3, 5, 7, 8, 9, 10 and 11 of the '415 patent read on the device shown in the Weiland patent.

Claims 1, 2, 3, 5, 7, 8, 9, 10 and 11 are either anticipated by or obvious over Weiland. In response, the patent owner makes various assertions:

1). The patent owner argues that the Weiland devices have no vertical support members extending down at the center area of the top element. However, Figures 6 and 11 of Weiland clearly disclose an anchoring device having a flat top surface 14a (i.e. the 'top element'), with pairs of aligned support members 13a (i.e. vertical support members) extending from the top surface.

The patent owner's comments seem to imply that the support members of the Weiland devices are not aligned with the longitudinal centerline of the anchor, though it is not entirely clear what exactly is being argued. Such an argument is not a claim limitation and therefore irrelevant. The claims simply provide that the vertical support members are attached to the 'center area.' There is no disclosure in the '415 patent which would suggest a definition of 'center area' different than its plain meaning.

2). The patent owner argues that the Weiland devices have vertical members that are in different planes, whereas the Eberle devices require the vertical support members to be in the same plane. Again, Figures 6 and 11 of Weiland clearly show vertical members 13a that are in the same plane. For example, Figure 6 of Weiland shows eight

2

vertical members extending from the center area of the top surface. Each vertical member is aligned with another vertical member in the same plane, with the orifice spaced between the two corresponding vertical members. The patent owner simply references two vertical members that are not disposed in the same plane, while disregarding corresponding vertical members that are in the same plane.

3). The patent owner argues that the devices of Weiland are so different from the devices of Eberle, that they would be inoperative for the Eberle purpose, and vice versa. Specifically, the owner asserts that the Weiland devices cannot be slipped into a biscuit cut or wood slot. Such an argument is not persuasive for two reasons.

First, it is well settled that patentability of apparatus claims must depend upon structural limitations and not upon statements of function. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005), *citing In re Michlin*, 45 C.C.P.A. 1028, 256 F.2d 317, 320, 1958 Dec. Comm'r Pat. 408 (C.C.P.A. 1958). The patent owner's comments are directed to an intended use or function of the device, and not to structural features. For example, the patent owner states that "the Eberle device is auspiciously employed for securing the board at regular intervals along its length, virtually eliminating the foregoing deformation." See Patent Owner's Statement at p. 7. Such statements are not directed to structural features set forth in the claims. Many of the arguments and comments presented are likewise irrelevant, and fail to distinguish the subject claims from Weiland.

Second, and contrary to the patent owner's assertions, Weiland *does* disclose a top element that may be slipped into a slot. Indeed, the top element is specifically designed to fit within slots 8, as shown in Figures 7 and 8 of Weiland. Indeed, "the thickness of the

IC-App-0752

members 10 is such as to readily permit a sliding insertion thereof into the corner slots 8 of the tiles." See Weiland, p. 1, col. 2, line 54 – p. 2, col. 3, line 2. Thus, the patent owner's statement that "Weiland's devices have downwardly projecting and outwardly projecting members that totally prevent the insertion of the device into a slot" is false.

Note that the claims of the '415 patent do not specify where along the side the receiving slots are disposed. In fact, claim 1 of the '415 patent simply provides that the boards are pre-cut with biscuit receiving slots. Furthermore, Weiland specifically discloses anchoring two or more adjacent tiles, as shown in Figure 7. "Tiles" are broadly defined by Weiland to include tiles of "fibrous nature" and veneering elements. See Weiland, p. 2, col. 2, lines 65-68.

## B. Claims 4, 6 and 12 are obvious over Weiland in view of German patent 372,483 (herein "Wothe").

Claims 4, 6 and 12 provide that the attachment orifice is a non-circular and elongated screw hole. See '415 patent, claims 4, 6 and 12. The patent owner agrees that Wothe is merely a teaching of the use of an elongated hole." See Patent Owner's Statement at p. 8. The patent owner also states that Wothe "does not teach an angled screw insert accommodating beveled orifice as in the present invention". It is not entirely clear what argument the patent owner is trying to make, given the patent owner thereafter states that "beveled orifices for angled screws are known." *Id*.

Thus, the patent owner admits that the feature in claims 4, 6 and 12 is known in the art. With respect to the use of an angled screw insert, such a feature is not set forth in the claims. Furthermore, such an argument is again simply directed to an intended use or function, and not structural features of the claimed invention.

4

IC-App-0753

**C. Claims 1, 2, 3, 5, 7, 8, 9, 10 and 11 are obvious in view of Smith and Elmendorf.**

In response to such a rejection, the patent owner makes various arguments, none of which are persuasive:

1). The patent owner asserts that the Smith patent describes a floor device for attaching flooring having a continuous groove cut in the side, and not a biscuit cut. However, boards having biscuit cuts are not claimed as structural limitations in the claims of the '415 patent. Rather, claims 1 and 10 provide for vertical support members extending downwardly from the top element and maintaining the top element in a predetermined position during use "*for joining two adjacent boards which have been pre-cut with biscuit receiving slots*." This clause is not recited as a structural limitation, but instead merely provides an intended use and/or functional language.

As noted above, claims directed to an apparatus must be distinguished from the prior art in terms of structure rather than function. *In re Schreiber*, 128 F.3d 1473, 1477-78, 44 USPQ2d 1429, 1431-32 (Fed. Cir. 1997); see also In *re Danly,* 263 F.2d 844, 847, 120 USPQ 528, 531 (CCPA 1959). Apparatus claims cover what a device *is*, not what a device *does. Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469, 15 USPQ2d 1525, 1528 (Fed. Cir. 1990). As such, a claim containing a recitation with respect to the manner in which a claimed apparatus is intended to be employed does not differentiate the claimed apparatus from a prior art apparatus if the prior art apparatus teaches all the structural limitations of the claim. *Ex parte Masham,* 2 USPQ2d 1647 (Bd. Pat. App. & Inter. 1987).

IC-App-0754

The patent owner also states that Smith does not have a biscuit-shaped top view. The requester had already noted this distinction as the only difference between the Smith anchoring device and Eberle's claimed top element. However, Smith specifically indicates that the flanges "may be made in various forms". See Smith, p. 2, col. 2, lines 74-75. Furthermore, Elmendorf discloses a wood tile flooring system wherein adjacent wooden floor elements are slotted (see Elmendorf, Fig. 17; and p. 3, col. 1, lines 28-29) to match the shape of an inserted anchoring device. Elmendorf also indicates the "keys or plates 8" can take on "any other desired shape", (see Elmendorf, p. 2, col. 1, lines 65-68). This modification of the Smith top plate in view of Elmendorf results in the subject matter of the identified claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 of Eberle '415.

Inasmuch as the primary Smith reference suggests that the flange may take "various forms" and Elmendorf shows a similar wood floor anchoring device arrangement with discrete edgewise slots made using a small saw device, it is prima facie obvious to adopt or modify the Elmendorf flange shape onto the Smith flange.

2). The patent owner states that the Smith device does not have single plane vertical support members, but rather ones that are parallel to one another. However, as shown in Figures 3 and 4 of Smith, downwardly projecting aligned feet (11 and/or 20) are provided. Each aligned foot 11, 20 has first and second potions disposed on opposed sides of holes 14, 24 lying in the same plane. The vertical sides 11, 20 are functional indistinguishable from the claimed vertical support members in the Eberle patent.

Furthermore, independent claim 10 of the Eberle patent does not provide for two vertical support members in the same plane, as implied by the patent owner. Rather, claim 10 specifically provides for at least one vertical support member, and one vertical

6

support member 'which is located off center and to one side of said attachment orifice".
Thus, the patent owner's arguments are not supported by structural limitations provided
in the claims.

3). The patent owner states that the Smith device has turned down knife edges
that bit into the wood. Smith discloses flanges 10 that "are *preferably* provided with
downwardly-projecting knife edges or sharpened extensions 15 which when the flanges
10 are forced into the grooves 8 bite into the wood." See Smith, p. 1, col. 1, lines 46-51
(emphasis added). Thus, Smith *may* include sharpened edges, though of course this is not
a requirement for the Smith device. In any event, Eberle's claims fail to provide any
structural limitations which would exclude a device having such an edge. Thus, this
argument is without merit.

4). The patent owner states the Smith device is formed from sheet metal. Again,
Eberle's claims do not exclude devices formed from metal. While claims 7 and 9 are
directed toward a "unitarily formed" top element and support members, none of the
claims limit the material from which the Eberle device is formed. Thus, the claims read
on the devices of Smith. Furthermore, Smith provides that "the fasteners or grips may be
made in various forms, either from sheet material or as castings." See Smith, p. 2, col. 2,
lines 74-76. Therefore, the devices in Smith need not be formed from sheet metal.

5). The patent owner argues that Smith is appointed for use in attaching floor
boards that have an angled cutaway below a continuous groove that receives the flanges.
The patent owner also argues that Smith teaches an installation in which the nail is not
driven through the board. As noted above, arguments directed to the intended use are
irrelevant to the claims at issue. The Eberle patent includes apparatus claims, which must

IC-App-0756

be distinguished from the prior art in terms of structure rather than function. The claims of the '415 patent fail to distinguish from the prior art.

The patent owner also points to U.S. Patent No. 2,362,252 to Ellingwood, which was cited during prosecution of the Eberle patent. The patent owner asserts that because both Ellingwood and Smith do not have biscuit shaped top elements, and because Ellingwood was considered during prosecution, the same considerations should apply to Smith. Obviously, such reasoning is faulty.

First, the Eberle reference is obvious over Smith in view of Elmendorf. Even if Smith had been considered during prosecution, which it had not, Elmendorf was not considered. The patent owner fails to address the obviousness of combining these two references.

Furthermore, Smith indicates that the flanges "may be made in various forms". See Smith, p. 2, col. 2, lines 74-76. Thus, Smith suggests that the flange may take "various forms" and Elmendorf shows a similar wood floor anchoring device arrangement with discrete edgewise slots made using a small circular saw device. It is therefore prima facie obvious under 35 USC 103 to adopt or modify the Elmendorf flange shape onto the Smith flange so as to accommodate discretely slotted, as opposed to longitudinally grooved, flooring members.

Finally, the patent owner acknowledges that "various biscuit shapes, including generally circular and octagonal biscuit shapes, are known in the prior art." See Patent Owner's Statement at p. 13. Therefore, this feature of the Eberle device is admittedly well known in the art. For example, Chen discloses a "biscuit" shaped retainer for veneered elements. Inasmuch as Smith suggests a variety of shapes for the flanges, the

8

widely familiar "biscuit" shape incorporated into the flange shapes would be obvious to one of ordinary skill in the veneering field as shown by Chen.

### D. Claims 4, 6 and 12 are obvious in view of Smith and Elmendorf, and further in view of German Patent 372,483.

Although the patent owner argues against such a rejection, the patent owner acknowledges that the beveled orifices for angled screws are known. See Patent Owner's Statement at p. 12. Therefore, it is agreed that an elongated orifice is conventional and shown in Wothe. Inasmuch as each of Smith and Elmendorf use wood to wood connections, incorporating the slotting and beveling of Wothe would be obvious to one of ordinary skill in the veneering field.

### E. Claims 1, 2, 7, 8, 9 and 10 are obvious in view of Heilmann and Elmendorf.

In response to such a rejection, the patent owner again attempts to distinguish the claimed invention by taking the unconventional approach of distinguishing Ellinwood. With the exception of the biscuit shape of the Eberle device, the Heilmann device is identical in all material respects to the identified Eberle claims. However, Heilmann provides that "the washers D [may be] of any suitable form". See Heilmann, p. 1, col. 1, lines 46-47. In view of the expansive language in Heilmann, the use of an Elmendorf style arcuate washer is well suggested. With this shape modification to the top element flange or washer of Heilmann to an arcuate shape as shown in Elmendorf, the exact anchoring device recited in the previously recited claims of Eberle is prima facie obvious in view of the prior art. These references were not considered during prosecution. The patent owner's assertion that consideration of Ellinwood somehow negates the relevant of Heilmann and Elmendorf is without merit.

9

IC-App-0758

**F. Claims 3, 4, 5, 6, 11 and 12 are obvious in view of Heilmann and Elmendorf, and further in view of German Patent 372,483.**

As noted above, the patent owner acknowledges that an elongated orifice is conventional and shown in Wothe. Inasmuch as each of Heilmann and Elmendorf use wood to wood connections, incorporating the slotting and beveling of Wothe would be obvious to one of ordinary skill in the veneering field.

**G. Claims 1-12 are obvious in view of the questions raised, and further in view of Chen.**

Chen is cited as prior art qualifying against Eberle as showing in Figures 5, 9 and 10 a "biscuit" shaped retainer for veneered elements. Inasmuch as each of the foregoing references each suggest a variety of shapes for the veneer retainer flanges, the shape for a retainer, key, or plate in the conventional and widely familiar "biscuit" shape incorporated into the flange shapes of either Smith of Heilmann would be obvious to one of ordinary skill in the veneering field as shown by Chen.

Indeed, the patent owner acknowledges that "biscuit shaped devices for joining wood are well known," and even states that Chen is unnecessary to establish biscuit shapes, as biscuit shapes are not new. See Patent Owner's Statement at p. 14.

IC-App-0759

**Conclusion**

Based on the arguments provided herein as well as those set forth in the Request

for an Ex Parte Reexamination, Patentee's claims 1-12 are unpatentable under 35 USC

102 or, alternatively, under various combinations described under 35 USC 103, and

should, accordingly, be disallowed.

Respectfully,

Matthew W. Stavish, Esq.
USPTO Reg. No. 36286

Berenato White & Stavish LLC
6550 Rock Spring Drive, Suite 240
Bethesda, Maryland, 20817
Tel. No. (301) 896-0600
Fax No. (301) 896-0607
Attorneys for Requester

**Certificate of Mailing/Service:** I certify that on the date below, this Reply to Patent
Owner's Statement was sent via Courier to: United States Patent and Trademark Office,
Customer Service Window, Mail Stop Ex Parte Reexam, Randolph Building, 401 Dulany
Street, Alexandria, VA 22314, and via First Class Mail to Kenneth P. Glynn, Esq,
attorney of record for the patent.

Dated: January 17, 2005

Matthew W. Stavish

IC-App-0760



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,661 | 08/08/2005 | 4602415 | 9003.001 | 1207 |

7590     12/14/2006

Kenneth P. Glynn
GLYNN & ASSOCIATES, PC
24 Mine Street
Flemington, NJ  08822

| EXAMINER |
|---|
| Jeffrey R. Jastrzab |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | IFW |

DATE MAILED: 12/14/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

IC-App-0761

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Matthew W. Stavish, Esq.
Berenato White & Stavish LLC
6550 Rock Spring Drive, Suite 240
Bethesda, Maryland, 20817

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/007,661*.

PATENT NO. *4602415*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

<table>
<tr><td rowspan="2"><strong><em>Office Action in Ex Parte Reexamination</em></strong></td><td>C ntrol No.<br>90/007,661</td><td>Patent Und r Re xaminati n<br>4602415</td><td></td></tr>
<tr><td>Examiner<br>Jeffrey R. Jastrzab</td><td>Art Unit<br>3993</td><td></td></tr>
</table>

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a ☒ Responsive to the communication(s) filed on <u>17 January 2006</u> .      b ☐ This action is made FINAL.

c ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

2(Two)

A shortened statutory period for response to this action is set to expire X month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination
certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days
will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.

2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION

1a. ☒ Claims <u>1-12</u> are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims <u>1-12</u> are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some*  c) ☐ None    of the certified copies have

    1 ☐ been received.

    2 ☐ not been received.

    3 ☐ been filed in Application No. _____ .

    4 ☐ been filed in reexamination Control No. _____.

    5 ☐ been received by the International Bureau in PCT application No. _____.

    * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal
matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D.
11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

### *Reexamination*

The patent owner is reminded of the continuing responsibility under 37 CFR

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving Patent No. 6,402,415 throughout the course of this reexamination

proceeding.  The third party requester is also reminded of the ability to similarly apprise

the Office of any such activity or proceeding throughout the course of this reexamination

proceeding.  See MPEP §§ 2207, 2282 and 2286.

In order to ensure full consideration of any amendments, affidavits or

declarations, or other documents as evidence of patentability, such documents must be

submitted in response to this Office action.  Submissions after the next Office action,

which is intended to be a final action, will be governed by the requirements of 37

CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly

enforced.

**Issue 1:**

**Claims 1-3, 5 and 7-11 are rejected under 35 U.S.C. 102(b) as being clearly**

**anticipated by Weiland, U.S. Patent No. 2,201,129.**

As pointed out on page 3 of the request:  Weiland teaches in Fig. 6, an anchoring

device having a substantially flat top surface (tops of marginal portions 14a) having

opposite sidewalls in the shape of arcs.  Extending from beneath the top surface are

pairs of aligned support members (lugs or flanges 13a) on opposed sides (see Claim 8

of the Eberle '415 patent) of a centrally located screw hole (screw aperture 12). The

boards (tiles A) (see page 2, col. 1, lines 59-70, of Weiland '129) are attached to a

surface using the Weiland anchoring devices. The boards are slotted using a small

circular cutting wheel (see page 1, col. 2, lines 35-47 of Weiland '129). The screw hole

(screw aperture 12) in Weiland is centrally located in the top surface of the anchoring

device ('415, Claim 2). The cross section of the Weiland screw hole shown in Figure 9

of Weiland is beveled ('415, claims 3, 5, 11). The Weiland anchoring devices top

elements and support members are unitarily formed (see Weiland pg. 1, col. 2, lines 51-

end, and pg. 2, col. 1, lines 15- 21) ('415 Claim 7 & 9).

Patent Owner argues:

First, "the Weiland devices have no vertical support members extending down at

the center area of the top element. Weiland does the opposite. The Weiland devices

have vertical spaced plates separated from a center area to create space between the

plates and hence to create extra space between the tiles to which they are attached.

Thus, the structures of Weiland differ by intentionally having no vertical support

members along the center area as in the Eberle invention (all Eberle claims)."

Secondly, "Weiland devices have vertical members that are in different planes,

whereas the Eberle claimed devices require the vertical support members to be in the

same plane. This is another salient feature of the Eberle invention that is specifically set

forth in the claims. Not only is it absent from Weiland, but also Weiland does the

opposite and specifically requires that the plates be at right angles to one another. The

Weiland devices have tops with vertical spaced plates that are 'vertically and

horizontally disposed means'. The Weiland devices 'are provided with four radially

extending channel-like portions formed integrally with plates, the said portions extending

rearwardly of the members and being ninety degrees apart.' (Col. 2, lines 23-27 of

Weiland; and see also all of the Weiland Figures showing right-angled plates or

flanges.) Thus, Weiland has vertical members at right angles to one another and cannot

have vertical members that are in the same plane."

And thirdly, "the devices of Weiland are so different from the Eberle devices that

the Weiland devices would be inoperative for the Eberle purpose, and likewise, the

Eberle devices could not function effectively for the Weiland purposes. The Weiland

devices have the radially extending plates or flanges that are at a right angle to each

other and inherently create products that cannot be slipped into a biscuit cut or wood

slot, because as can be seen from the Weiland drawings, there are no single plane

vertical members that would create a single plane top area that could fit into a saw cut,

biscuit cut or slot in a side of wood. The Eberle device, on the other hand, is appointed

for 'use for joining two adjacent boards which have been precut with biscuit receiving

slots.' See, e.g., Claim 1, feature (b) and claim 10, feature (b). Weiland's devices are

built specifically for corners and can only be used in two corners (two tiles at their

corners) or four corners (four tiles at their closest corners). Weiland's devices have

downwardly projecting and outwardly projecting members that totally prevent the

insertion of the device into a slot, whereas the Eberle devices as claimed are

specifically structured to fit into a side slot of wood or synthetic wood. Hence, no device

disclosed by Weiland can anticipate the Eberle device, since the downwardly projecting

members would preclude the receipt of the Weiland device by a biscuit receiving slot. In

order for the Weiland device to accomplish the function provided by the Eberle device, it

would have to be reconstructed by removing certain of its critical elements, e.g. two of

the channels 13 of Fig. 3 or two of the flanges 13a of Fig. 6, to leave two generally

collinear portions on either side of attachment hole 12. Such a reconstruction is

submitted to be substantial, precluding a finding of obviousness under In re Ratti, 270

F.2d 810, 123 USPQ 349 (CCPA 1959). Moreover, once modified in this manner, the

Weiland device would be rendered inoperable for the disclosed function of attaching

tiles at their corners, further precluding any finding of obviousness. The function

afforded by the Weiland device, viz. the securing of generally square or rectangular tiles

at their corners presents a significantly different problem than the securing of deck

boards. As would be known to one of ordinary skill in the carpentry and deck building

arts, wooden deck boards, which are typically disposed outdoors and exposed to the

elements, including rain and snow and relatively large temperature excursions, undergo

significant dimensional changes. Moreover, deck boards are often many feet in length,

in some cases as long as sixteen feet or more. If secured merely at their corners, as

would be the case using a securing device such as that of Weiland, the deck boards

would be subject to marked deformation, warping, bowing, or the like. Such deformation

would be highly detrimental and aesthetically unacceptable, and would likely lead to

premature failure of the board. On the other hand, the Eberle device is auspiciously

employed for securing the board at regular intervals along its length, virtually eliminating

the foregoing deformation. Thus, Weiland's devices have different structures from the

present invention that (i) function differently from the present invention, and (ii) are used for a different purpose than the present invention and, as such, neither discloses the present invention nor renders it obvious."

The Requester responds stating:

1)." The patent owner argues that the Weiland devices have no vertical support members extending down at the center area of the top element. However, Figures 6 and 11 of Weiland clearly disclose an anchoring device having a flat top surface 14a (i.e. the 'top element'), with pairs of aligned support members 13a (i.e. vertical support members) extending from the top surface. The patent owner's comments seem to imply that the support members of the Weiland devices are not aligned with the longitudinal centerline of the anchor, though it is not entirely clear what exactly is being argued. Such an argument is not a claim limitation and therefore irrelevant. The claims simply provide that the vertical support members are attached to the 'center area.' There is no disclosure in the '415 patent which would suggest a definition of 'center area' different than its plain meaning.

2). "The patent owner argues that the Weiland devices have vertical members that are in different planes, whereas the Eberle devices require the vertical support members to be in the same plane. Again, Figures 6 and 11 of Weiland clearly show vertical members 13a that are in the same plane. For example, Figure 6 of Weiland shows eight vertical members extending from the center area of the top surface. Each vertical member is aligned with another vertical member in the same plane, with the orifice spaced between the two corresponding vertical members. The patent owner

simply references two vertical members that are not disposed in the same plane, while

disregarding corresponding vertical members that are in the same plane.

3). "The patent owner argues that the devices of Weiland are so different from

the devices of Eberle, that they would be inoperative for the Eberle purpose, and vice

versa. Specifically, the owner asserts that the Weiland devices cannot be slipped into a

biscuit cut or wood slot. Such an argument is not persuasive for two reasons. First, it is

well settled that patentability of apparatus claims must depend upon structural

limitations and not upon statements of function. Cross Med. Prods., Inc. v. Medtronic

Sofamor Danek, Inc., 424 F.3d 1293, 1312 (Fed. Cir. 2005), citing In re Michlin, 45

C.C.P.A. 1028, 256 F.2d 317, 320, 1958 Dec. Comm'r Pat. 408 CCPA. 1958). The

patent owner's comments are directed to an intended use or function of the device, and

not to structural features. For example, the patent owner states 'the Eberle device is

auspiciously employed for securing the board at regular intervals along its length,

virtually eliminating the foregoing deformation.' See Patent Owner's Statement at p. 7.

Such statements are not directed to structural features set forth in the claims. Many of

the arguments and comments presented are likewise irrelevant, and fail to distinguish

the subject claims from Weiland. Second, and contrary to the patent owner's assertions,

Weiland does disclose a top element that may be slipped into a slot. Indeed, the top

element is specifically designed to fit within slots 8, as shown in Figures 7 and 8 of

Weiland. Indeed, 'the thickness of the members 10 is such as to readily permit a sliding

insertion thereof into the corner slots 8 of the tiles.' See Weiland, p. 1, col. 2, line 54 -p.

2, col. 3, line 2. Thus, the patent owner's statement that 'Weiland's devices have

downwardly projecting and outwardly projecting members that totally prevent the

insertion of the device into a slot' is false. Note that the claims of the '415 patent do not

specify where along the side the receiving slots are disposed. In fact, claim 1 of the '415

patent simply provides that the boards are pre-cut with biscuit receiving slots.

Furthermore, Weiland specifically discloses anchoring two or more adjacent tiles, as

shown in Figure 7. 'Tiles' are broadly defined by Weiland to include tiles of 'fibrous

nature' and veneering elements. See Weiland, p. 2, col. 2, lines 65-68."

In response to the above comments by Patent Owner and the Requester:

In the first regard, the claim language in Claim 1 calls for "two substantially

vertical support members attached...at said center area", the center area being defined

earlier in the claim as being located "between said opposite side walls in the shape of

arcs". The breadth of the claim therefore allows for the center area to include as much

as the entire area between the side walls or as little as the area of the centerline. In

Weiland, as seen in Figure 6, the downward extending portions 13a on each side of the

screw hole are considered to be in the center area since they are located generally near

the centerline and are located "between said opposite side walls in the shape of arcs"

as claimed. The Requesters comments on this matter apply equally here. Patent

Owner's arguments are thus not persuasive in this regard.

In the second regard, the claim construction of Claims 1 and 10 is open ended,

i.e. using the transitional phrase "comprising", thus the reference may include structures

other than those used to read on the claimed elements. In this instance, Patent Owner

seems to be arguing that the spacers of Weiland are not in the same plane. While it is

true that certain of the support members are not in the same plane as the others in

Figure 6, i.e. two members are located on each of four 90 degree offset locations of the

attachment hole 12, the claim does not prevent those additional "horizontally disposed"

members from existing, and certainly the diametrically opposed vertical members are in

the same plane.  The Requesters comments on this matter apply equally here.   Patent

Owner's arguments are thus not persuasive in this regard.

In the third regard, Patent Owner's argument that the Weiland device is

inoperative for the Eberle purpose is not persuasive.  The Weiland device need only be

inherently capable of providing the claimed function to read on the claim language.  In

looking at the tiles of Weiland, e.g. Figure 12, adjacent tiles have a "slot 8" (e.g. page 1,

col. 1 at 27).  Claim 1 calls for the device to be capable of "joining three boards" and "for

joining two adjacent boards which have been pre-cut with biscuit receiving slots".  In

Weiland Figure 1, adjacent tiles (which may be of a fibrous character, pg. 2, col. 1 at 65

as is wood) are connected using the Weiland attachment member (biscuit) wherein a

portion of the member is placed in a slot cut in the tile.  The slot is cut is into the side of

the tile, albeit also extending to an adjacent tile side.  As the current claim is drawn to

the anchoring device and not the system including the boards, the actual location of the

slot in the adjacent boards is irrelevant to the claim, and even if it were a claimed

system element, there is nothing in the disclosure preventing the biscuit slot from being

in the side of the tile or board at a corner thereof.  The Weiland slots hence *are* located

at the side of the tiles.  Furthermore, as to the argument that the outwardly projecting

members prevent the insertion of the device into a slot, the Weiland device allows for

four adjacent boards to be connected via the slots. The claims do not state that the
entire portion of the biscuit portion outside of the centerline is inserted into two and only
two adjacent boards, as the arguments imply. Hence the Patent Owner is considering
the claim to be narrower than it actually is written. As to the additional comments by
Patent Owner regarding the Weiland device being inoperable in the decking board field,
while this may be true, the decking boards are not in fact a part of the claim and bear no
relevance to the claimed structure. As such, this argument is moot. The Requester's
response to Patent Owner is noted and parallels the Examiner's regarding the slot
issue. As to the Requester's argument that the "claims must depend upon structural
limitations and not upon statements of function", while this is true per se, the structure
recited against the claims must be inherently capable of performing the claimed function
as is the case here. The remaining comments by the Requester are parallel to the
Examiner's in this regard.

   This rejection was proposed by the third party requestor in the request for
reexamination, as set forth on page 3 of the request and is adopted essentially as
proposed.

**Issue 2:**

   **Claims 4, 6 and 12 are rejected under 35 U.S.C. 103(a) as being
unpatentable over Weiland '129 in view of German Patent document 372,483
(Wothe).**

Weiland discloses the invention substantially as claimed less a non-circular and elongated slot. Wothe teaches a non-circular and elongated slot for attaching a screw to a board and allowing the screw to move in the slot. It would have been obvious to one having ordinary skill in the art at the time of the invention to have incorporated the Wothe teaching in the Weiland attachment member in order to allow movement of the anchor relative to the anchoring surface.

Patent Owner argues that "Wothe is merely a teaching of the use of an elongated hole to accommodate wood expansion and contraction (from gaining and losing moisture), and does not teach an angled screw insert accommodating beveled orifice as in the present invention. It is otherwise acknowledged that beveled orifices for angled screws are known. However, this does not render the claimed invention obvious because the shortcomings of Weiland still apply."

Requester states, "the patent owner agrees that Wothe is merely a teaching of the use of an elongated hole. See Patent Owner's Statement at p. 8. The patent owner also states that Wothe 'does not teach an angled screw insert accommodating beveled orifice as in the present invention'. It is not entirely clear what argument the patent owner is trying to make, given the patent owner thereafter states that "'beveled orifices for angled screws are known.' Id. Thus, the patent owner admits that the feature in claims 4, 6 and 12 is known in the art. With respect to the use of an angled screw insert, such a feature is not set forth in the claims. Furthermore, such an argument is again simply directed to an intended use or function, and not structural features of the claimed invention."

As to Patent Owner's argument that the combination "does not teach an angled screw insert accommodating beveled orifice as in the present invention", it is submitted that the claim language is much different than that argued. Clearly the combination provides an adequate teaching that forming a "non-circular and elongated slot", e.g. Claim 1, in a member to be attached to an anchoring surface (or board) is not a non-obvious addition to the invention. Further, Patent Owner's argument regarding the bevel is misplaced as this element is absent from the claims. Thus this argument is moot. The Requester's comments apply equally here, but for the statement that the Patent Owner "admits that the feature in claims 4, 6 and 12 is known in the art". Instead what is admitted is that "beveled orifices for angled screws are known" per page 8 of the Patent Owner's Statement filed 11/11/05, however, this issue is moot as stated above.

This rejection was proposed by the third party requestor in the request for reexamination, as set forth on page 4 of the request and is adopted essentially as proposed.

**Issue 3:**

**Claims 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Smith (US 1,714,738) in view of Elmendorf (US 2,337,156).**

As pointed out on pages 4-5 of the request Smith in figure 3 depicts an anchoring device having, inter alia, a flat horizontal top element (top wall 9), vertical support members (supports / feet 11), and attachment orifice (nail hole 13) substantially

according to the claims. The top view shape being rectangular rather than the claimed "biscuit-shaped" with arc shaped side walls.  Elmendorf explicitly teaches in an anchoring device, also for flooring anchoring, and to alternatively make the top shape square, circular, or any other desired shape (page 3, column 2, lines 8-15).  As such, merely changing the shape of the Smith anchor device to be biscuit shaped with arcs would have amounted to an obvious design choice given the Elmendorf teaching.

Patent Owner argues:

First, the Smith patent describes a flooring device for attaching flooring having a continuous groove cut into the side, and not a biscuit cut. The Smith device does not have the claimed features of the Eberle invention as it does not have a biscuit-shaped top view.

Second, the Smith device does not have single plane vertical support members, but ones that are parallel to one another.

Third, the Smith device has turned down knife edges that bit(e) into the wood.

Fourth, the Smith device is formed from cut and reversely bent sheet metal creating parallel instead of in-line (single plane) supports.

Fifth, as illustrated by Fig. 2, the Smith device is appointed for use in attaching floor boards that have an angled cutaway 18 below the continuous groove 8 in which the side flanges 10 are received. Such an arrangement is said to be an important consideration (see, e.g., lines 63-68). Moreover, Smith teaches an installation in which the nail specifically is not driven through the board and adjacent boards are drawn together into abutment by angle nailing (lines 70-77). On the other hand, the Eberle

device is used in conjunction with decks which are conventionally installed with gaps

intentionally provided between adjacent boards, the gap spacing being determined by

the width of the downwardly projecting vertical supports (e.g., elements 15 and 17 of

Fig. 2. In addition, the Eberle device permits installations in which the device-securing

fastener is intentionally driven through one of the deck boards, as depicted by Fig. 9. All

of these differences teach away from rather than toward the present invention.

Furthermore, during the initial prosecution of the Eberle patent, the Board of Patent

Appeals and Interferences of the United States Patent and Trademark Office

considered U.S. Patent 2,362,252 to Ellingwood. Like the Smith device, the Ellingwood

device is generally T-shaped. Significantly, the Board held the Eberle device, which has

a generally biscuit-shaped top view, patentable over the T-shaped Ellingwood device. In

pertinent part, the Board specifically stated in its opinion in this case: "Contrary to the

findings made by the examiner (See pages 4 and 5 in the answer), Ellinwood's T-

shaped element does not respond to the limitations" [of the Eberle claims]... 'requiring a

substantially flat horizontal top element having a generally biscuit-shaped top view

configuration... ' Ellinwood's T-shaped element also fails to respond to the limitations in

claims 18 and 27 requiring the substantially flat horizontal top element to have 'opposite

side walls in the shape 9 of arcs from a top view, said arcs having predetermined radii

and arc lengths'. (Page 4, line 14, et seq., Decision of Patent Appeals and

Interferences, August 27, 2001, Appeal No. 2001-0217, unpublished, of record in this

file.) It is submitted that the same considerations that predicated patentability of the

Eberle device over the Ellingwood reference apply with equal force to the Smith

reference, which references both disclose a device with a substantially identical top view. Apparently recognizing Smith's failure to disclose or suggest a biscuit-shaped top view, as required by Eberle's claims, the Requester has proposed that the Smith teaching be combined with Elmendorf, which is directed to wood tile flooring. Elmendorf further provides disk-like fasteners having a generally circular or square shape. These fasteners engage the Elmendorf tiles either at their beveled corners, in an arrangement of square or rectangular tiles (e.g. Figs. 2, 7, and 14), or at complementary right-angled vertices in a herringbone arrangement (e.g. Fig. 18). Elmendorf fails to disclose or suggest any fastener that engages adjacent boards at any point along shared parallel edges. Instead, the fasteners are disposed only at vertices having an interior or exterior opening angle of 90°. Contrary to the Requester's pretension, Elmendorf thus does not provide a fastener that is to be received in biscuit-receiving slots in adjacent boards, as required by the Eberle claims. Moreover, the Elmendorf discs do not have any of the present invention features as set forth in the claims of Eberle and add nothing to the Smith shortcomings set forth above. In fact, it is only by hindsight that Harris suggests combining these references. Smith contemplates floor boards having a groove extending substantially the entire length of the board, so that there would be no motivation to use a fastening device having a biscuit-shaped top view, as would be suited for engaging a biscuit-receiving slot, instead of an extended groove. Without the knowledge of the Eberle teachings, there would thus be no thought by one of ordinary skill in the art to combine these teachings of Smith and Elmendorf in the manner proposed. The assertion that the "various forms" disclosed by Smith at page 2, line 75

provides motivation for the proposed combination falls far short of the legal standard required. The mere possibility that references could be combined has repeatedly been ruled inadequate. Instead, a combination is warranted only if there is some suggestion or motivation, either in the references themselves or in the knowledge generally available to a skilled artisan that would lead such a person to the combination. Further, in reality, it would be impossible to bend the sheet metal of Smith into anything but squared or right-angled elements, as circular cuts would create variable height supports and extra trimming and folding that would be needed, and would make such concoctions impossible to fabricate, further undermining the alleged motivation to combine Smith and Elmendorf as proposed. Also, even if such a combination were possible and were obvious, the result would still be a device with parallel supports in different planes not in-line (same plane) or in the center area. Neither patent teaches that arrangement. It is only in hindsight that one could even think of trying to create the biting edge sheet metal devices of Smith with the round top shape of Elmendorf. For all of these reasons, none of the Eberle claims are obvious over Smith in view of Elmendorf.

The Requester argues in response the Patent Owner's statement as follows (in-part):

1). " The patent owner asserts that the Smith patent describes a floor device for attaching flooring having a continuous groove cut in the side, and not a biscuit cut. However, boards having biscuit cuts are not claimed as structural limitations in the claims of the '415 patent. Rather, claims 1 and 10 provide for vertical support members

extending downwardly from the top element and maintaining the top element in a predetermined position during use 'joining two adjacent boards which have been pre-cut with biscuit receiving slots.' This clause is not recited as a structural limitation, but instead merely provides an intended use and/or functional language. As noted above, claims directed to an apparatus must be distinguished from the prior art in terms of structure rather than function...The patent owner also states that Smith does not have a biscuit-shaped top view. The requester had already noted this distinction as the only difference between the Smith anchoring device and Eberle's claimed top element. However, Smith specifically indicates that the flanges "may be made in various forms". See Smith, p. 2, col. 2, lines 74-75. Furthermore, Elmendorf discloses a wood tile flooring system wherein adjacent wooden floor elements are slotted (see Elmendorf, Fig. 17; and p. 3, col. 1, lines 28-29) to match the shape of an inserted anchoring device. Elmendorf also indicates the 'keys or plates 8' can take on 'any other desired shape', (see Elmendorf, p. 2, col. 1, lines 65- 68.

2). "As shown in Figures 3 and 4 of Smith, downwardly projecting aligned feet (11 and/or 20) are provided. Each aligned foot 11, 20 has first and second potions disposed on opposed sides of holes 14, 24 lying in the same plane. The vertical sides 11, 20 are functional indistinguishable from the claimed vertical support members in the Eberle patent. Furthermore, independent claim 10 of the Eberle patent does not provide for two vertical support members in the same plane, as implied by the patent owner. Rather, claim 10 specifically provides for at least one vertical support member, and one vertical support member 'which is located off center and to one side of said attachment orifice'.

Thus, the patent owner's arguments are not supported by structural limitations provided in the claims.

3). "The patent owner states that the Smith device has turned down knife edges that bit into the wood. Smith discloses flanges 10 that 'are preferably provided with downwardly-projecting knife edges or sharpened extensions 15 which when the flanges 10 are forced into the grooves 8 bite into the wood.' See Smith, p. 1, col. 1, lines 46-51 (emphasis added). Thus, Smith may include sharpened edges, though of course this is not a requirement for the Smith device. In any event, Eberle's claims fail to provide any structural limitations, which would exclude a device having such an edge. Thus, this argument is without merit.

4). "The patent owner states the Smith device is formed from sheet metal. Again, Eberle's claims do not exclude devices formed from metal. While claims 7 and 9 are directed toward a "unitarily formed" top element and support members, none of the claims limit the material from which the Eberle device is formed. Thus, the claims read on the devices of Smith. Furthermore, Smith provides that "the fasteners or grips may be made in various forms, either from sheet material or as castings." See Smith, p. 2, col. 2, lines 74-76. Therefore, the devices in Smith need not be formed from sheet metal.

5). "The patent owner argues that Smith is appointed for use in attaching floor boards that have an angled cutaway below a continuous groove that receives the flanges. The patent owner also argues that Smith teaches an installation in which the nail is not driven through the board. As noted above, arguments directed to the intended

use are irrelevant to the claims at issue. The Eberle patent includes apparatus claims,

which must be distinguished from the prior art in terms of structure rather than

function... The patent owner also points to U.S. Patent No. 2,362,252 to Ellingwood,

which was cited during prosecution of the Eberle patent. The patent owner asserts that

because both Ellingwood and Smith do not have biscuit shaped top elements, and

because Ellingwood was considered during prosecution, the same considerations

should apply to Smith. Obviously, such reasoning is faulty. First, the Eberle reference is

obvious over Smith in view of Elmendorf. Even if Smith had been considered during

prosecution, which it had not, Elmendorf was not considered. The patent owner fails to

address the obviousness of combining these two references. Furthermore, Smith

indicates that the flanges 'may be made in various forms'. See Smith, p. 2, col. 2, lines

74-76. Thus, Smith suggests that the flange may take "various forms' and Elmendorf

shows a similar wood floor anchoring device arrangement with discrete edgewise slots

made using a small circular saw device. It is therefore prima facie obvious under 35

USC 103 to adopt or modify the Elmendorf flange shape onto the Smith flange so as to

accommodate discretely slotted, as opposed to longitudinally grooved, flooring

members. Finally, the patent owner acknowledges that 'various biscuit shapes,

including generally circular and octagonal biscuit shapes, are known in the prior art.'

See Patent Owner's Statement at p. 13. Therefore, this feature of the Eberle device is

admittedly well known in the art. "

    In response to Patent Owner's argument that the Smith device is not for a biscuit

cut but for a continuous groove, first note that the Smith structure must only be capable

of performing that claimed function. Smith clearly would be capable of fitting into a

smaller slot than the continuous groove 3 shown in that system. Second, note Figure

17 of Smith, which includes a side slot 29, which is exactly the system used by Patent

Owner in function. Further, the claims (1 and 10) do not limit the claimed structure to

biscuit grooves alone since the entire system is not claimed. As such, Patent Owner's

arguments are not persuasive in this regard. The Requesters comments parallel the

Examiner in this regard with respect to the intended use limitations in the claim.

As to the argument by Patent Owner that the Smith device does not have single

plane support members, Claim 1 calls for the support members to be "in the same plane

and one each located on opposite sides of an attachment orifice". Smith does not

teach this structure. The Smith members are instead a single vertical support on either

side of an attachment hole, but not in the same plane. To call the two vertical members

four separate members would be a misreading of the reference. As such, the rejection

of Claims 1, 2, 3, 5 and 7-9 is not adopted as proposed. Claim 10 on the other hand

does not have the same planar requirement. As such the Requesters comments on this

point are accurate and adopted. Requester's statement that the feet 11, 20 of Smith

have first and second portions on opposed sides of the holes 14, 24 is noted, but not

persuasive since these feet are in fact each one solitary member an not separate and

planar elements.

As to Patent Owner's third point, it is unclear as to what is being argued. Since

the Smith structure includes vertically extending members as claimed, whether they are

intended to bite into wood or not is irrelevant. Requester agrees with this point, as the claims do not prevent this structure from being present.

As to Patent Owner's fourth point on this issue, the type on material used is not relevant to the resultant structure of the Smith device, which continues to read on the above claims. Requester's comments apply equally here.

As to Patent Owner's final points on this issue, the intended use of the Smith device, i.e. angled nailing, does not prevent use with a vertical nail or screw through the center aperture. As such this argument is not persuasive. Further, the point that the Eberle device is for installation with gaps is misplaced. There is no structural relationship between what is being argued and what is claimed here. The intended uses of applicant's device and the Smith device are only relevant insofar as their relationship in the claims. That said, the Smith structure reads on the structure claimed in Claim 10 as set forth above. Patent Owner's Comments with respect to the BPAI decision in the Eberle patent are noted, however the comments are related to an anticipation rejection of a biscuit shape. This rejection is an obviousness rejection that acknowledges that the T-shaped top of the Smith anchor is not biscuit-shaped and thus is in-line with the BPAI comments on the Elmendorf patent. Accordingly, the modification in this rejection is not addressed. The Requester's comments parallel the Examiner's in this regard.

This rejection was proposed by the third party requestor in the request for reexamination, as set forth on pages 4 and 5 of the request and is adopted essentially

as proposed for Claims 10 and 11, however the rejection is not adopted for Claims 1, 2, 3, 5, and 7-9, for the reasons noted above.

## Issue 4:

**Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Smith (US 1,714,738) in view of Elmendorf (US 2,337,156) and further in view of German Patent document 372,483 (Wothe).**

The modified Weiland device discloses the invention substantially as claimed less a non-circular and elongated slot. Wothe teaches a non-circular and elongated slot for attaching a screw to a board and allowing the screw to move in the slot. It would have been obvious to one having ordinary skill in the art at the time of the invention to have incorporated the Wothe teaching in the modified Weiland attachment member in order to allow movement of the member relative to the anchoring surface.

Patent Owner's and Requester's comments parallel the arguments in Issue 2 and 3 above.

This rejection was proposed by the third party requestor in the request for reexamination, as set forth on page 5 of the request and is adopted essentially as proposed for Claim 12, however the rejection is not adopted for Claims 4 and 6 for the reasons set forth in Issue 3 above.

## Issue 5:

Requester proposes that Claims 1, 2, 7, 8, and 9 be rejected under 35 U.S.C.

103(a) as being unpatentable over Heilmann (USP 695,722) in view of Elmendorf '156,

on page 6 of the request stating that "(w)ith the exception of the Eberle claim recited

arced biscuit shape of the anchoring device top plate, the Heilmann device and

anchoring system is identical in all material respects to the identified Eberle '415

claims."

Patent Owner argues that the Heilmann "devices are not top view biscuit shaped

and would to fit efficiently into a biscuit cut slot, i.e., it is not possible to have a square

peg fit efficiently into a round hole. The device would only have a portion of its surfaces

anchor and/or would not fit all the way in, and it could not use all of the space or surface

of a circular or biscuit cut. In either case, the device is old and well recognized." Patent

Owner then goes on to relate the situation to the Smith and Elmendorf combination

above.  It is further noted that Patent Owner states, "various biscuit shapes, including

generally circular and octagonal biscuit shapes, are known in the prior art. For example,

US Patent 5,458,433 to Stasny…. Nonetheless, the Eberle claims were adjudged

patentable by the Board, notwithstanding the Stasny reference, even in light of other

references disclosing generally T-shaped devices, such as those of Ellinwood."

The Requester argues in response "the patent owner again attempts to

distinguish the claimed invention by taking the unconventional approach of

distinguishing Ellinwood.  With the exception of the biscuit shape of the Eberle device,

the Heilmann device is identical in all material respects to the identified Eberle claims.

However, Heilmann provides that 'the washers D [may be] of any suitable form'. See

Heilmann, p. 1, col. 1, lines 46-47. In view of the expansive language in Heilmann, the use of an Elmendorf style arcuate washer is well suggested. With this shape modification to the top element flange or washer of Heilmann to an arcuate shape as shown in Elmendorf, the exact anchoring device recited in the previously recited claims of Eberle is prima facie obvious in view of the prior art."

In response, it is conceded that the Heilman device is T-shaped and Patent Owner's Comments with respect to the BPAI decision in the Eberle patent are noted, however these comments are related to an anticipation rejection of a biscuit shape. This rejection is an obviousness rejection that acknowledges that the T-shaped top of the Heilman anchor is not biscuit-shaped and thus is in fact in-line with the BPAI comments on the Elmendorf patent. Thus this argument is not persuasive. Further, the comment that the claims were "adjudged patentable by the Board' not withstanding the Stasny reference (i.e. circular and octagonal biscuit shapes)" is not persuasive since the Stasny reference was not a subject of the rejection being reviewed in that case. The Board reversed the rejection under 103 using Ellingwood because the combination with Bischof was improper, (due to the fact that the figure used to show the biscuit shape was not in fact a biscuit or anchor, but instead a template for cutting a transverse hole - Figure 9, not due to the fact that a biscuit-shape is non-obvious). Accordingly, the modification in this rejection was not addressed by the BPAI. The Requester's comments essentially parallel the Examiner's in this regard.

Requester's comments however are silent as to how the combination addresses the limitation in Claim 1 that there be "at least two vertical support members" and the

limitation in Claim 10 that the vertical support be "off-center and to one side of said

attachment orifice." These features appear to be absent from both Heilman and

Elmendorf which both show a single vertical member and the attachment orifice

centered on the respective anchor devices/vertical members. Eberle teaches the

spacing between two vertical members (as opposed to a single member) to be

important for permitting a "screw or nail to pass through the hole (13) into a joist". As

such this rejection is not adopted.

This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on page 6 of the request but is not adopted as proposed.


**Issue 6:**

Requester proposes that Claims 3-6 be rejected under 35 U.S.C. 103(a) as being

unpatentable over Heilmann '722 in view of Elmendorf '156, and further in view of

German Patent document 372,483 to Wothe in the Request.

Patent Owner's and the Requester's comments parallel the arguments in Issues

3 and 4 above.

This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on pages 6 and 7 of the request but is not adopted as

proposed as set forth above in issue 5.

**Issue 7:**

**Claims 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Smith (US 1,714,738) in view of Chen (US 5,619,834) for the reasons set forth in Issue 3 regarding Elmendorf.**

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Smith (US 1,714,738) in view of Chen (US 5,619,834 and further in view of German Patent document 372,483 (Wothe) for the reasons set forth in Issue 4 regarding Elmendorf.

Patent Owner argues that only in hindsight would one look to Chen to modify the above references. "Biscuit shaped devices for joining wood are well known. Reliance upon Chen that has a different product with no through hole in its top and that has a different purpose and works in a different way is non-analogous to wood joiners, and, nonetheless, is unnecessary to establish biscuit shapes, as biscuit shapes per se are not new. Further, one of ordinary skill in the art of carpentry and deck building would not look to vertical granite wall teachings, and this Chen patent relating to vertical granite walls is nonanalogous art."

Requester rebuts "Chen is cited as prior art qualifying against Eberle as showing in Figures 5, 9 and 10 a 'biscuit' shaped retainer for veneered elements. Inasmuch as each of the foregoing references each suggest a variety of shapes for the veneer retainer flanges, the shape for a retainer, key, or plate in the conventional and widely familiar 'biscuit' shape."

The Examiner disagrees that the Chen teachings are nonanalogous art. The disclosed invention in the Eberle patent deals with joining boards, however the scope of

the invention extends beyond the specific to the more general field of construction anchors or construction fasteners. A variety of techniques are used in the construction art for fastening veneers (coverings) to a substrate. Examples include flooring tiles (which may be ceramic or wood) to a floor, wall coverings, as sheathing, tiles, panel strips, etc. to existing walls or studs, as well as the current – decking boards to floor joists. In the present case, Chen is clearly relevant for teaching a known biscuit shape for attaching veneers to a substrate. As such, the rejection as proposed by the third party requestor in the request for reexamination, as set forth on pages 6, 7, 22 and 23 of the request and is adopted essentially as proposed for the Smith combinations as set forth above but not adopted for Heilman as noted in Issues 5 and 6 above.

**New Issues raised by the Examiner:**

**Issue 8:**

**Claims 1, 2, 7, 8, 9 and 10 are rejected under 35 U.S.C. 103(a) as being unpatentable over Heilmann (USP 695,722) in view of Elmendorf '156, or in the alternative, Heilmann (USP 695,722) in view of Elmendorf '156 and further in view of Weiland.**

Heilmann discloses the claimed anchoring system substantially as claimed less the arc shaped biscuit of the anchoring device top plate and less at least two vertical support members. Elmendorf explicitly teaches in an anchoring device to alternatively make the top shape of a structural anchor, for use in a tongue or biscuit slot of a

structural member, square, circular, or any other desired shape (page 3, column 2, lines

8-15). As such, merely changing the shape of the Smith anchor device to be biscuit

shaped with arcs would have amounted to an obvious design choice given the

Elmendorf teaching. See Issue 6 for further discussion of these references as

applicable to the above Claims.

Heilman is further lacking in that there is only one vertical member present. The

vertical member in Eberle is essentially a single planar member with a gap or spacing in

the middle where there is an absence of material. Eberle teaches this spacing to be

important for permitting a "screw or nail to pass through the hole (13) into a joist". This

differs from Heilman only insofar as the thickness of the vertical member, that is to say,

in an instance where the joint spacing were desired to be smaller, for example only the

width of the screw, the material making up the vertical member would be

correspondingly thinner and such removal of this material would amount to the same

gap in the single vertical member in Heilman, thus yielding in essence two vertical

members. Heilman clearly states, "the shoulders *d* defin(e) the width of the joint", col. 2

at 75. It would have been obvious to one having ordinary skill in the art at the time of

the invention to have modified the joint spacing in the Heilman system by altering the

shoulder width as a mere matter of design choice and in doing so arrive at the claimed

at least two vertical members. See illustrated modification:



*Figure 4 of Heilmann reproduced.*



Thickness of vertical member before modification.

*Proposed modification: end view of Heilman after thinning of the vertical member (note when thinned to screw width, material would be absent in the region of the screw aperture).*

In the alternative, it is widely accepted in the constructional anchor art that spacing between adjacent structures (e.g. tiles, boards, etc.) may either be defined by a single unitary spacing member, as in Heilman, or a plurality of spaced members as shown by Weiland, see Weiland Figure 6 as opposed to his Figure 4 wherein the joint spacing is the same in both embodiments only with the first spacer having a unitary member and the latter having a plurality of members.  As such, it would have been obvious to those having ordinary skill in the art at the time of the invention to have

formed the Heilman vertical spacer as plural smaller vertical members as a matter of choice in design.

## Issue 9:

**Claims 1, 2, 7, 8, 9 and 10 are rejected under 35 U.S.C. 103(a) as being unpatentable over Heilmann (USP 695,722) in view of Chen (US 5,619,834), or in the alternative in further view of Weiland, for the reasons set forth in Issue 8 regarding Elmendorf.**

## Issue 10:

**Claims 3-6 are rejected under 35 U.S.C. 103(a) as being unpatentable over Heilmann '722 in view of Elmendorf '156, or in the alternative in further view of Weiland, and further in view of German Patent document 372,483 to Wothe.**

The modified Heilman device discloses the invention substantially as claimed less a non-circular and elongated slot. Wothe teaches a non-circular and elongated slot for attaching a screw to a board and allowing the screw to move in the slot. It would have been obvious to one having ordinary skill in the art at the time of the invention to have incorporated the Wothe teaching in the Heilman attachment member in order to allow movement of the member relative to the anchoring surface or substrate. With respect to claims 3 and 5 as pointed out on page 13 of the request, the German reference '483 further teaches a beveled top of the screw hole.

**Issue 11:**

**Claims 1, 2, 3, 5, 7, 8, 9, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over JP 04-371657 to Hashida, or in the alternative, Hashida in view of Weiland.**

As to Claim 1 Hashida teaches: a fastener (20_ for connecting stone boards to each other and to a wall including a "substantially flat horizontal top element" Figure 1 at reference numeral (23); having a "biscuit-shaped top view with opposing sides in the shape of arcs", note here that Patent Owner's specification states: "Without exceeding the scope of the present invention, these biscuit shapes could be slightly modified, such as having slightly non-circular arcs or linear segments at angles approximating arcs", thus the angled corners of the Hashida anchor, which is intended to be placed in a "semicircular groove" in a stone board meets the limitation; an "attachment orifice" shown as the bore for screw (24); and the screw hole being is "beveled" as seen in Figure 2 or 3.

As to the at least two vertical support members of Claim 1, Hashida is lacking in that there is only one vertical member present. The vertical member in Eberle is essentially a single member with a gap or spacing in the middle where there is an absence of material. Eberle teaches this spacing to be important for permitting a "screw or nail to pass through the hole (13) into a joist". Nonetheless, this differs from the Hashida only insofar as the thickness of the vertical member, that is to say, in an instance where the joint spacing were desired to be smaller, for example only the width of the screw, the material making up the vertical member would be correspondingly

thinner and such removal of material would amount to the same gap in the single vertical member in Hashida, thus yielding in essence two vertical members. It would have been obvious to one having ordinary skill in the art at the time of the invention to have modified the joint spacing in the Heilman system by altering the shoulder width as a mere matter of design choice and in doing so arrive at the claimed at least two vertical members.

In the alternative, it is widely accepted in the constructional anchor art that spacing between adjacent structures (e.g. tiles, boards, etc.) may either be defined by a single vertical spacing member, as in Hashida, or a plurality of spaced vertical members as shown by Weiland, see Weiland Figure 6 as opposed to his Figure 4 wherein the joint spacing is the same in both embodiments only with the first vertical member being unitary and the latter being a plurality of members. As such, it would have been obvious to those having ordinary skill in the art at the time of the invention to have formed the Hashida vertical spacer with plural smaller vertical members as a matter of choice in design.

**Issue 12:**

**Claims 4, 6 and 12 are rejected under 35 U.S.C. 103(a) as being unpatentable over JP 04-371657 to Hashida in view of German Patent document 372,483 to Wothe, or in the alternative, Hashida in view of Weiland and further in view of German Patent document 372,483 to Wothe.**

The modified Hashida device discloses the invention substantially as claimed less a non-circular and elongated slot. Wothe teaches a non-circular and elongated slot for attaching a screw to a board and allowing the screw to move in the slot. It would have been obvious to one having ordinary skill in the art at the time of the invention to have incorporated the Wothe teaching in the Hashida attachment member in order to allow movement of the member relative to the anchoring surface or substrate.

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed as follows:

By **U.S. Postal Service Mail** to:

       Mail Stop *Ex Parte* Reexam
       ATTN: Central Reexamination Unit
       Commissioner for Patents
       P.O. Box 1450
       Alexandria, VA 22313-1450

By FAX to:    (571) 273-9900
             Central Reexamination Unit

By hand to:   Customer Service Window
            Randolph Building
            401 Dulany St.
            Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Jeffrey R. Jastrzab
Primary Examiner
Central Reexamination Unit
AU 3993
(571) 272-4947
12/13/06

Conferee _____

Conferee _____

## Notice of References Cited

| | |
|---|---|
| **Notice of References Cited** | |

| Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|
| 90/007,661 | 4602415 |

| Examiner | Art Unit | |
|---|---|---|
| Jeffrey R. Jastrzab | 3993 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US- | | | |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | JP-404371657A | 12-1992 | Japan | Hashisa | E04F013/14 |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

(19)日本国特許庁（JP）　　(12)公開特許公報（A）　　(11)特許出願公開番号

特開平4-371657

(43)公開日　平成4年(1992)12月24日

(51)Int.Cl.⁵　　　　　識別記号　　庁内整理番号　　　　FI　　　　　　　　技術表示箇所
　E04F　13/14　　　101　　　7023-2E
　　　　13/08　　　101　　D　7023-2E

審査請求　未請求　請求項の数4(全 4 頁)

(21)出願番号　　特願平3-242925

(22)出願日　　　平成3年(1991)6月18日

(71)出願人　591208799
　　　　　橋田　隆明
　　　　　東京都江東区亀戸2-1-1　株式会社チ
　　　　　エンパース建築設計事務所内
(72)発明者　橋田　隆明
　　　　　東京都江東区亀戸2-1-1　株式会社チ
　　　　　エンパース建築設計事務所内

(54)【発明の名称】　プレハブ式石張壁及び石板の張設方法

(57)【要約】　　　　（修正有）

【目的】構造体に石板を固定すると共に石板相互を連結
することができる石板張り用金具を用いて壁面の石張り
工事を容易に行なうようにする。

【構成】構造体11に、石板張り用金具20を介して四
角形の石板の裏面を上下、左右方向に天然又は人工の石
板31を並設して固定した石張壁30であって、石板張
り用金具20は目地32の幅に相当する高さと該石板の
厚さのほぼ三分の二より幅の狭い立方体又は直方体の形
状をしていて厚み方向に貫孔を穿孔したスペーサ22
と、中間に貫通孔を穿孔した幅の狭い板状片23と、ス
ペーサに対して回動自在に板状片を軸支するためのビス
24とよりなり、石板はその裏面に上下及び／又は水平
方向に回動する板状体23がはまり込むことができる半
円の溝33を刻設したものよりなる。



IC-App-0798

1

【特許請求の範囲】

【請求項1】壁面に設けた鉄骨製の縦筋と該縦筋の間に張設した横筋よりなる枠又は鉄枠に固定した板状物に、石板張り用金具を四角形の天然又は人工の石板の緣面に介在させて上下、及び／又は左右方向に天然又は人工の石板を並設するとともに石板を固定して張設するための石板張り用金具であって、目地の幅に相当する高さと該石板の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて、厚み方向に貫通孔を穿孔したスペーサと、中間に貫通孔を穿孔した目地の幅より幅の狭い板状片と、該スペーサに対して回動自在に板状片を軸支するための、一又は十の溝を刻設した頭部と先端に該板状物への固定手段を有する軸とからなるビスよりなり、該石板の緣面に刻設した半円の溝に目地の方向からほぼ９０度だけ回動して板状体がはまり込むことができるようになっていることを特徴とする石板張り用金具。

【請求項2】鉄骨製の縦筋と該縦筋の間に張設した横筋よりなる枠又は鉄枠に固定した板状物に、石板張り用金具を四角形の天然又は人工の石板の緣面に介在させて上下、及び／又は左右方向に天然又は人工の石板を並設するとともに固定して石板壁を張設したプレハブ式石板壁において、目地の幅に相当する高さと該石板の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて、厚み方向に貫通孔を穿孔したスペーサと、中間に貫通孔を穿孔した目地の幅より幅の狭い板状片と、該スペーサに対して回動自在に板状片を軸支するための、一又は十の溝を刻設した頭部と先端が該鉄枠に固定された軸とからなる石板張り用金具によって、該石板の緣面に刻設した半円の溝に目地方向からほぼ９０度だけ回動して板状体がはまり込んでいることを特徴とするプレハブ式石板壁。

【請求項3】壁面に鉄骨製の縦筋を設け、該縦筋の間に横筋を張設して枠を設け、該枠又は鉄枠に石板張り用金具を固定し、石板張り用金具を四角形の天然又は人工の石板の緣面に介在させて上下、及び左右方向に天然又は人工の石板を並設するとともに固定して石板壁を張設する石板壁の張設方法において、目地の幅に相当する高さと該石板の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて、厚み方向に貫通孔を穿孔したスペーサと、中間に貫通孔を穿孔した目地の幅より幅の狭い板状片と、該スペーサに対して回動自在に板状片を軸支するための、一又は十の溝を刻設した頭部と軸の先端を該板状物に固定し、該石板の緣面に刻設した半円の溝に該板状体を目地方向からほぼ９０度だけ回動してはまり込ませる上下及び／又は左右方向に該石板を並設し、形成された該石板の目地にコーキングシールを施すことを特徴とする石板壁の張設方法。

【請求項4】鉄骨製の縦筋の間に横筋を張設し、該横筋又は該縦筋に固定した板状物に石板張り用金具を介して四角形の天然又は人工の石板の緣面を上下、及び／又は

2

左右方向に並設して天然又は人工の石板を張設するプレハブ式石板壁の製造方法において、目地の幅に相当する高さと該石板の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて水平方向に貫通孔を穿孔したスペーサと、中間に貫通孔を穿孔した目地の幅より幅の狭い板状片と、該スペーサに対して回動自在に板状片を軸支するための、一又は十の溝を刻設した頭部と先端に中間つなぎ材への固定手段を有する軸とからなるビスよりなる石板張り用金具を介在させ、該ビスを横筋又は板状物に固定し、ついで該石板の緣面に刻設した半円の溝に目地方向からほぼ９０度だけ板状体を回動させてはまり込ませて上下及び／又は左右方向に該石板を並設し、形成された該石板の目地にコーキングシールを施すことを特徴とするプレハブ式石板壁の製造方法。

【発明の詳細な説明】

【産業上の利用分野】本発明は、石板用金具を用いた石板壁、プレハブ式石板壁部材、石板の張設方法、プレハブ式石板壁部材の製造方法に関し、詳しくは建造物の壁面への石板の張設方法、建造物の壁面に石板を張設するのに用いるプレハブ式石板壁部材及びその製造方法に関する。

【０００１】

【従来の技術】従来、建物などに石板を張る場合、鉄骨骨組みを既設のコンクリート壁面に設け、そのうえに石板を張り付ける方法で、構造体と石材を引き金具で固定し、石同士はだぼを用いて連結した後に、石裏全面にモルタルを充填する工法（総とろ工法）がある。この工法では、モルタルを一般には数回に分けて充填するので、工期が長く、エフロレッセンスの発生により表面を汚し易い。また、帯とろ工法として、石板の構造体への固定、石板同士の連結方法は前記の工法と同じであるが、裏込め部分を水平目地の上下約１０cm程とし、残りを空洞とする工法があるが、総とろ工法に比較して石の固定度が小さいし、モルタルが固化するまでは上段が積めずエフロレッセンスも発生する。乾式工法として、裏込めモルタルを全く用いず、石板そのものをアングルやプレート等の金物によって構造体に固定する工法がある。この方法では石の重量はすべて金物が支持するので、構造体の変形によってだぼ回りへ応力が集中することが考えられ、それに耐えられるような金物の耐久性を考慮しなければならないし、上記の金具としては石板相互を連結するためのだぼとコンクリート壁に設けた横筋又は掴り込みアンカーに石板を固定するための引き金物が必要である。更に、通常、外装材として軽量発泡コンクリートが用いられているが、この軽量発泡コンクリートは、風雨にさらされた場合に劣化が早く、外観が悪くなり、傷んだ表面への吹き付けは適当でなく、その再生化は困難であった。特に、近年、ビルの外装は高級化し多くの予算がさかれている中で、老朽化しみすぼらしくなった外観を再生化したいと希望する施主は多い。軽量発泡コ

−300−

ンクリート外壁へのタイル張りは、軽量発泡コンクリートとタイル接着用モルタルとの接着が完全でないので、タイルが剥がれ、施工法の問題点が多く指摘されてきた。また、既設の軽量発泡コンクリート外壁に石板を張る場合には、軽量発泡コンクリートと接着用モルタルとの接着が完全でないし、軽量発泡コンクリートそのものに石板を支持するだけの耐入力がないので、既設の軽量発泡コンクリート壁面に石板を張ることは、困難であった。

【0002】

【発明が解決しょうとする課題】前記した従来の方法では、石張りの工事現場においては、上記のような大きな問題点があった。本発明はこのような問題点を解決するものであって、コンクリート壁又は既設の軽量発泡コンクリート壁に設設した縦筋、横筋、又は板状物などの構造体に石板を固定すると共に石板相互を連結することができる石板張り用金具を用いた石板壁、及びこの金具を用いることによって新築の又は既設の壁面に石張り工事が容易に行なうことができ、工期も大幅に短縮できる工法を提供することにある。

【0003】

【課題を解決するための手段】第一の本発明は、軽量又は重量鉄骨製の枠柱と該枠柱の間に張設した梁材よりなる枠又はこの枠に固定した板状物よりなる構造体11に、石板張り用金具20を介して四角形の石板の縁面を上、左右方向に天然又は人工の石板31を並設して固定した石張壁30であって、該石板張り用金具20は目地32の幅に相当する高さと該石板の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて厚み方向に貫通孔を穿孔した幅の狭い板状片23と、スペーサに対して回動自在に板状片を軸支するための、多角形の頭部、又は−若しくは＋の溝を刻設した頭部241と先端に中間つなぎ材への牡ねじのような固定手段242を有する軸とからなるビス24とよりなり、該石板はその縁面に上下及び／又は水平方向に回動する板状体23がはまり込むことができる半円の溝33を刻設したものよりなることを特徴とする石張壁30である。第一の本発明において、既設の軽量発泡コンクリート外壁10に差し込む筋又は掘り込みアンカーによって軽量又は重量鉄骨製の縦筋を設け、次いでこの縦筋の間に横筋又は中間つなぎ材を設け、形成された枠又はこの枠に厚みのある合板などの板状物を固定して構造体11を設置する。石板張り用金具20は目地32の幅に相当する高さと該石板の厚さの三分の二より幅の狭い立方体又は直方体の形状をしていて厚み方向に貫通孔21を穿孔したスペーサ22と、中間に貫通孔を穿孔した幅の狭い板状片23と、スペーサ22に対して回動自在に板状片23を軸支するための、多角形の頭部、又は−若しくは＋の溝を刻設した頭部241と先端に中間つなぎ材への牡ねじのよ

うな固定手段242を有する軸とからなるビス24とよりなっている。石板31はグラインダーを用いてその縁面に目地の方向に対してほぼ90度だけ回動して石張り用金具の板状体23がはまり込むことができる半円の溝33を刻設したものである。第二の本発明は、軽量又は重量鉄骨製の枠柱と該枠柱の間に張設した中間つなぎ材よりなる枠又はこの枠に固定した板状物よりなる構造体11に、石板張り用金具20を介して四角形の天然又は人工の石板31の縁面を上下、左右方向に天然又は人工の石板31を並設して固定したプレハブ式石板壁であって、該石板張り用金具20は目地32の幅に相当する高さと該石板31の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて厚み方向に貫通孔21を穿孔したスペーサ22と、中間に貫通孔を穿孔した幅の狭い板状片23と、スペーサ22に対して回動自在に板状片23を軸支するための、多角形の頭部、又は−若しくは＋の溝を刻設した頭部241と先端に中間つなぎ材への牡ねじのような固定手段242を有する軸とからなるビス24とよりなり、該石板はその縁面に上下及び／又は水平方向に回動する板状体23がはまり込むことができる半円の溝33を刻設したものよりなることを特徴とするプレハブ式石板壁部材である。第三の本発明は、軽量又は重量鉄骨製の枠柱の間に中間つなぎ材を張設し、形成された枠又はこの枠に板状体を固定した構造体11に石張り用金具20を介して四角形の天然又は人工の石板31の縁面を上下及び／又は左右方向に並設して天然又は人工の石板31を軽量又は重量鉄骨製の枠に張設する方法において、その縁面に上下及び／又は水平方向に回動する板状体23がはまり込むことができる半円の溝を刻設した石板31に、目地32の幅に相当する高さと該石板の厚さのほぼ三分の二より幅の狭い立方体又は直方体の形状をしていて水平方向に貫通孔21を穿孔したスペーサ22と、中間に貫通孔を穿孔した幅の狭い板状片23と、スペーサ22に対して回動自在に板状片23を軸支するための、多角形の頭部、又は−若しくは＋の溝を刻設した頭部241と先端に中間つなぎ材への牡ねじのような固定手段242を有する軸とからなるビス24よりなる石板張り用金具20を介在させ、該ビス24を該枠、該中間つなぎ材、又は板状体23に係止し、ついで該石板の縁面に刻設した半円の溝に板状体23を回動させてはまり込ませて上下及び／又は水平方向に該石板を並設し、形成された該石板の目地32にコーキングシール34を施すことを特徴とする石板の張設方法である。

【0004】

【実施例】まず、既設の建造物の軽量発泡コンクリート製外壁10に差し筋を設け、これに縦筋を溶接などの手段によって固着し、又は溝型網を用いて横筋11を設ける。横筋の間には木製の中間つなぎ材を張設する。一方、所定の厚みと大きさの石板31を用意する。各々の

IC-App-0800

5

石板の縁の四方に所定の位置にグラインダーを用いて石板張り用金具２０の板状体２３が９０度だけ回動してはまりこむことができる半円の溝３３を設ける。次に、石板の一段目の目地３２に相当する水平線上とそれに対して垂直の線上に石板張り用金具２０を石板３１のそれぞれの溝に一致するところにビス２４止めする。石板張り用金具２０の板状体２３を９０度だけ回してこれを石板のそれぞれの溝に嵌め込み、この板状体を介して四角形の天然又は人工の石板３１の縁面を上下、及び／又は左右方向に並設するとともに石板３１を横筋１１、中間つなぎ材に固定する。目地にはシーリング材を充填して既設の軽量発泡コンクリート壁１０への石板３１の張設工事を完了する。同じ手順で２階部分、３階部分へと順次、軽量発泡コンクリート外壁１０への石板３１の張設工事を完了していく。

【０００５】
【発明の効果】従来のようにだぼと引き金具を用いる場合には、だぼと引き金具のための穴を石板の縁面に穿設しなければならないが、本発明によれば、本発明の石板張り用金具を用いることによって、（１）石板の縁面に穿設する穴の数を少なくすることができる、（２）コンクリート壁又は既設の軽量発泡コンクリート壁に設置した

6

縦筋、横筋、又は板状物などの構造体に石板を固定すると共に石板相互を連結することができ、かつ構造体と石板の縁面の固定用の溝との間の間隔を自由にとることができる、（３）新築の又は既設の壁面に石張り工事を容易に行なうことができ、工期も大幅に短縮できる、（４）手間がかからずに石板壁又はプレハブ式石板壁部材を製造できるなど、本発明は優れた効果を奏する。

【０００６】
【図面の簡単な説明】
第１図は石張り用金具の斜視図、第２図は石板を壁面に設けた構造体（横筋）に固定するとともに上下、左右に並設する前め状態の説明図、第３図は石板を壁面に設けた構造体（横筋）に固定するとともに上下、左右に並設した状態の説明図である。
【図１】斜視図
【図２】断面図
【図３】断面図
【符号の説明】
１０：軽量発泡コンクリート壁　１１：構造体（横筋）
２０：石張り用金具　２１：貫通孔　２２：スペーサ
２３：板状体　２４：ビス　３１：石板　３２：目地
３３：半円の溝　３４：シーリング材

【図１】


【図２】


【図３】


IC-App-0801

PAT-NO:                    JP404371657A

DOCUMENT-IDENTIFIER:    JP 04371657 A

TITLE:                    PREFABRICATED STONE VENEER WALL AND METHOD FOR
ATTACHING

                          STONE BOARD

PUBN-DATE:                December 24, 1992


INVENTOR-INFORMATION:
NAME
HASHIDA, TAKAAKI


ASSIGNEE-INFORMATION:
NAME                                      COUNTRY
HASHIDA TAKAAKI                           N/A


APPL-NO:        JP03242925

APPL-DATE:      June 18, 1991


INT-CL (IPC):   E04F013/14, E04F013/08


ABSTRACT:

    PURPOSE: To perform an attachment work of stone boards of a wall
with ease
by fixing stone boards to a structural body and using a fitting for
attaching
stone boards which can connect stone boards to each other.

    CONSTITUTION: In a stone veneer wall 30 wherein natural or
artificial stone
**boards** 31 having square edge surfaces are parallely placed and fixed
on a
structural body 11 through a fitting 20 for attaching stone board in
the
vertical and left-right directions, the fitting 20 has a
configuration of a
cube or rectangular having a height corresponding to the width of a
joint 32
and a width narrower than two thrids of the thickness of the stone
board and

IC-App-0802

comprises a **spacer** 22 having a through hole bored in the thickness
direction, a
plate-like piece 23 having a narrow width and a through hole provided
in the
middle thereof, and a screw 24 for rotatably supporting the piece 23
with
respect to the **spacer**.  The stone board has a semicircular **groove** 33
on its
edge surface for engagement with the piece 23 which rotates in the
vertical
and/or horizontal direction.

COPYRIGHT: (C)1992,JPO&Japio

# EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L2 | 19 | ("0695722" \| "1018987" \| "20010027829" \| "20020059766" \| "2081368" \| "3946529" \| "4891920" \| "5359954" \| "5529428" \| "5623803" \| "5660016" \| "5730544" \| "6289646" \| "6314699" \| "6402415" \| "6594961"). PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/29 12:09 |
| S209 | 5 | US-0695722-$.DID. OR US-1714738-$.DID. OR US-2201129-$.DID. OR US-2337156-$.DID. OR US-5619834-$.DID. | USPAT | OR | OFF | 2006/11/22 18:38 |
| S210 | 216413 | floor or decking and biscuit | USPAT | OR | OFF | 2006/11/22 18:39 |
| S211 | 370159 | floor or decking and biscuit | USPAT; USOCR | OR | OFF | 2006/11/22 18:39 |
| S212 | 265 | (floor or decking) and biscuit | USPAT; USOCR | OR | OFF | 2006/11/22 20:19 |
| S213 | 18 | ("0363960" \| "20020121064" \| "20030101673" \| "20030154662" \| "2362252" \| "4198042" \| "4449346" \| "5660016" \| "5881508" \| "5953878" \| "6314699" \| "6363677" \| "6484467" \| "6490838" \| "6579605" \| "6651398"). PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 18:42 |
| S214 | 23 | erwin.in. and decking | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 18:42 |
| S215 | 37 | ("1533074" \| "1723306" \| "1946646" \| "2007354" \| "2204675" \| "3445325" \| "3680530" \| "4304080" \| "4526418" \| "4555292" \| "4649588" \| "4795666" \| "4885882" \| "5056286" \| "5351915" \| "5412915" \| "5483773" \| "5632123" \| "5642592" \| "5653076" \| "5660016" \| "5713165" \| "5755068" \| "5896723" \| "6237295" \| "6453630" \| "6468643" \| "6484467").PN. OR ("6711864"). URPN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 18:42 |
| S216 | 34 | ("1533074" \| "1723306" \| "1946646" \| "2007354" \| "2204675" \| "3445325" \| "3680530" \| "4304080" \| "4526418" \| "4555292" \| "4649588" \| "4795666" \| "4885882" \| "5056286" \| "5351915" \| "5412915" \| "5483773" \| "5632123" \| "5642592" \| "5653076" \| "5660016" \| "5713165" \| "5755068" \| "5896723" \| "6237295" \| "6453630" \| "6468643" \| "6484467").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 18:51 |

90/007,661

# EAST Search History

| | | | | | | |
|---|---|---|---|---|---|---|
| S21 7 | 40 | ("1375043" \| "1714738" \| "2137508" \| "2182523" \| "2206464" \| "2377211" \| "2382761" \| "3267630" \| "3577694" \| "4703601" \| "5209896" \| "5642592" \| "5660016" \| "5826382").PN. OR ("5953878").URPN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 18:54 |
| S21 8 | 38 | ("1379882" \| "1511764" \| "20020056238" \| "20020095897" \| "20020121064" \| "20030009973" \| "2089865" \| "3530633" \| "4198042" \| "4620403" \| "4798029" \| "4802553" \| "4852691" \| "4965980" \| "5076035" \| "5143418" \| "5205092" \| "5234652" \| "5274977" \| "5351458" \| "5361554" \| "5511353" \| "5625985" \| "5692345" \| "5762441" \| "5775048" \| "5950377" \| "5953878" \| "6125524" \| "6128880" \| "6153293" \| "6164024" \| "6314699" \| "6484467").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 18:57 |
| S21 9 | 22 | ("1375043" \| "1714738" \| "2137508" \| "2182523" \| "2206464" \| "2377211" \| "2382761" \| "3267630" \| "3577694" \| "4703601" \| "5209896" \| "5642592" \| "5660016" \| "5826382").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 18:58 |
| S22 0 | 23 | ("1714738").URPN. | USPAT | OR | OFF | 2006/11/22 18:59 |
| S22 1 | 70 | ("1714738" \| "1974259" \| "2038433" \| "2088625" \| "2115238" \| "2158732" \| "2316671" \| "2362252" \| "2865058" \| "3016998" \| "3248257" \| "3267630" \| "3405493" \| "3492935" \| "3518800" \| "3579941" \| "3713264" \| "RE26239").PN. OR ("4170859").URPN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 19:01 |
| S22 2 | 13 | ("2088625" \| "2137508" \| "3271916" \| "3518800" \| "4170859" \| "4409906" \| "5660016" \| "6065255" \| "6314699").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 19:03 |
| S22 3 | 6 | ("2362252").URPN. | USPAT | OR | OFF | 2006/11/22 19:37 |
| S22 4 | 19 | ("1184080"\|"2332081"\|"2362252"\|"2398603"\|"2406387"\|"4641988"\|"4682458"\|"5004027"\|"5182891"\|"5251996"\|"5377732"\|"5458433"\|"5480117"\|"5529428"\|"5660016"\|"5743672"\|"6032431"\|"6402415"\|"6471434").PN. | USPAT | OR | OFF | 2006/11/22 20:19 |

901007,661

# EAST Search History

| | | | | | | |
|---|---|---|---|---|---|---|
| S22 7 | 19 | ("0695722" \| "1018987" \| "20010027829" \| "20020059766" \| "2081368" \| "3946529" \| "4891920" \| "5359954" \| "5529428" \| "5623803" \| "5660016" \| "5730544" \| "6289646" \| "6314699" \| "6402415" \| "6594961"). PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 19:52 |
| S22 8 | 22 | ("0754215" \| "2735146" \| "3431810" \| "3563582" \| "3674068" \| "3855754" \| "4373829" \| "4531564" \| "5439308" \| "5458433").PN. OR ("5730544"). URPN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 19:54 |
| S22 9 | 21 | ("0695722" \| "20010027829" \| "20020059766" \| "4557219" \| "5193931" \| "5359954" \| "5386426" \| "5529428" \| "5623803" \| "5660016" \| "5730544" \| "6129053" \| "6314699" \| "6402415" \| "6634077" \| "6835929" \| "6851884" \| "6854221" \| "D384271" \| "D485160").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 19:55 |
| S23 0 | 3 | ("695722").URPN. | USPAT | OR | OFF | 2006/11/22 20:00 |
| S23 1 | 7 | ("4373829" \| "5458433" \| "5529428" \| "5730544" \| "6402415" \| "D455640"). PN. OR ("D470039").URPN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 20:02 |
| S23 2 | 2 | (floor or decking) and biscuit | FPRS; EPO; JPO | OR | OFF | 2006/11/22 20:20 |
| S23 5 | 275 | (floor or decking) and tongue and groove | FPRS; EPO; JPO | OR | OFF | 2006/11/22 20:28 |
| S23 9 | 2728 | (d8/382,354,349,352,384).CCLS. | USPAT | OR | OFF | 2006/11/22 20:40 |
| S24 0 | 3 | ("D427050" \| "D471794" \| "D479797").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 20:45 |
| S24 1 | 6 | ("2956292" \| "6402415" \| "D297502" \| "D371505" \| "D378986").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 20:46 |
| S24 2 | 6 | ("4373829" \| "5458433" \| "5529428" \| "5730544" \| "6402415" \| "D455640"). PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:09 |
| S24 3 | 1 | d485160.pn. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:11 |
| S24 4 | 0 | hidden same deck$ same fastenere | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:11 |

# EAST Search History

| S24 5 | 2 | hidden near deck$ near fastener | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:12 |
|---|---|---|---|---|---|---|
| S24 6 | 1 | hidden near board near fastener | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:13 |
| S24 8 | 77 | hidden near board | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:16 |
| S25 0 | 116 | hidden near fastener | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:16 |
| S25 1 | 7 | hidden near fastener same (board$ or decking) | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:19 |
| S25 2 | 194 | wood near fastener | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:20 |
| S25 3 | 23 | wood near fastener same (slot or groove) | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:29 |
| S25 4 | 0 | wood near joiner same (slot or groove) | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:21 |
| S25 5 | 6 | wood near joiner | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:22 |
| S25 6 | 1 | wood near joint near (groove or slot) | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:22 |
| S25 7 | 34621 | wood same (groove or slot) | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:22 |
| S25 8 | 35014 | (wood or decking) same (groove or slot) | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:22 |
| S25 9 | 72 | (wood or decking) same (groove or slot) and biscuit | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:23 |
| S26 0 | 17 | (wood or decking) same (groove or slot) and biscuit same (screw or nail) | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:24 |
| S26 1 | 54 | deck near clip | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:24 |

901007,661

| S26 2 | 13 | ("3031725" \| "3237360" \| "3619963" \| "3669480" \| "3713264" \| "4313688" \| "4620403" \| "4844651" \| "4925141" \| "5027573").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:26 |
|-------|-----|---|---|---|---|---|
| S26 3 | 90 | flooring same fastener same (slot or groove) | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:46 |
| S26 4 | 2515 | SHIRAISHI.in. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:46 |
| S26 5 | 0 | SHIRAISHI,toshiyuki.in. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:46 |
| S26 6 | 2515 | SHIRAISHI,$.in. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:46 |
| S26 7 | 0 | SHIRAISHI,t$.in. | US-PGPUB; USPAT; USOCR | OR | OFF | 2006/11/22 21:47 |
| S26 8 | 2 | (("d298736") or ("4832547")).PN. | USPAT | OR | OFF | 2006/11/22 21:48 |
| S26 9 | 167 | spacer same (boards or decking) same (slot$ or groove$) | USPAT | OR | OFF | 2006/11/22 21:51 |
| S27 0 | 712 | spacer same (boards or decking) same (slot or slots or slotted or groove or grooved or grooves) | USPAT; USOCR; FPRS; EPO; JPO | OR | OFF | 2006/11/22 22:07 |
| S27 1 | 255 | (d25/199).CCLS. | USPAT | OR | OFF | 2006/11/22 22:14 |
| S27 2 | 5 | join$ near three near (boards or decking) | USPAT | OR | OFF | 2006/11/22 22:15 |
| S27 3 | 3228 | ((403/408.1,231) or (248/300,309.1)).CCLS. | USPAT | OR | OFF | 2006/11/22 22:15 |
| S27 5 | 143 | S273 and (decking or boards) | USPAT | OR | OFF | 2006/11/22 22:17 |
| S27 8 | 161 | S273 and (decking or boards) and (groove or slot) | USPAT | OR | ON | 2006/11/22 22:21 |
| S27 9 | 1 | ("4,641,988").PN. | USPAT | OR | OFF | 2006/11/22 22:28 |
| S28 0 | 864 | fastener near plate same (groove or slot) | USPAT; USOCR | OR | ON | 2006/11/22 22:28 |
| S28 1 | 87 | fastener near plate same (groove or slot) and (board or decking) | USPAT; USOCR | OR | ON | 2006/11/22 22:31 |
| S28 2 | 11937 | bracket same (groove or slot) same (board or decking) | USPAT; USOCR | OR | ON | 2006/11/22 22:31 |

# EAST Search History

| S28 3 | 376 | bracket same (groove or slot) same (board or decking) same (tongue and groove) | USPAT; USOCR | OR | ON | 2006/11/22 22:38 |
|---|---|---|---|---|---|---|
| S28 4 | 0 | joining near decking near boards | USPAT; USOCR | OR | ON | 2006/11/22 22:39 |
| S28 5 | 324 | joining near boards | USPAT; USOCR | OR | ON | 2006/11/22 22:39 |
| S28 6 | 37 | joining near boards same ((tongue and groove) or slot) | USPAT; USOCR | OR | ON | 2006/11/22 22:41 |
| S28 7 | 0 | joining near decking same ((tongue and groove) or slot) | USPAT; USOCR | OR | ON | 2006/11/22 22:41 |
| S28 8 | 1 | anchoring near decking same ((tongue and groove) or slot) | USPAT; USOCR | OR | ON | 2006/11/22 22:41 |
| S29 0 | 0 | anchoring near flooring same ((tongue and groove) or slot) | USPAT; USOCR | OR | ON | 2006/11/22 22:42 |
| S29 1 | 4 | flooring near anchor same ((tongue and groove) or slot) | USPAT; USOCR | OR | ON | 2006/11/22 22:42 |
| S29 2 | 13 | (join or joining) near (wood or lumber or decking) and biscuit | USPAT; USOCR | OR | ON | 2006/11/22 22:48 |
| S29 3 | 488 | not S292 and (wood or lumber or decking) and biscuit | USPAT; USOCR | OR | ON | 2006/11/22 22:48 |
| S29 4 | 36 | not S292 and (wood or lumber or decking) and biscuit near2 (shape or shaped) | USPAT; USOCR | OR | ON | 2006/11/22 22:50 |
| S29 5 | 6 | wood near biscuit same shape | USPAT; USOCR | OR | ON | 2006/11/29 09:46 |
| S29 6 | 673 | nifco.as. | USPAT; USOCR | OR | ON | 2006/11/29 09:46 |
| S29 7 | 240 | nifco.as. and panel | USPAT; USOCR | OR | ON | 2006/11/29 09:47 |
| S29 8 | 26 | nifco.as. and panel.ti. | USPAT; USOCR | OR | ON | 2006/11/29 10:31 |
| S29 9 | 1 | ("5529428").PN. | USPAT | OR | OFF | 2006/11/29 10:31 |

### *Search Notes*

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 90/007,661 | 4602415 |
| **Examiner** | **Art Unit** | |
| Jeffrey R. Jastrzab | 3993 | |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| D8 | 382,354, 349 | | |
| D25 | 199 | | |
| 403 | 230, 231 | | |
| 248 | 300 | | |
| | 309.1 | 11/22/2006 | JRJ |
| 403 | 232.1 298 | | |
| | 401 408.1 | | |
| 52 | 408 483.1 | | |
| | 506.05 | | |
| | 586.1, | | |
| | 586.2 | | |
| | 585.1 | | |
| | 772 | | |
| 403 | 294 | 11/29/2006 | |

## INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

## SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

Bib Data Sheet

**CONFIRMATION NO. 1207**

| SERIAL NUMBER 90/007,661 | FILING DATE 08/08/2005 RULE | CLASS 403 | GROUP ART UNIT 3993 | ATTORNEY DOCKET NO. 9003.001 |
|---|---|---|---|---|

APPLICANTS

4602415, Residence Not Provided;

Blue Heron Enterprises LLC(Owner), Califon, NJ;
Matthew W. Stavish(3rd. Pty. Req.), Bethesda, MD;Matthew W. Stavish, Esq., Bethesda, MD

** CONTINUING DATA ***********************
This application is a REX of 09/186,741 11/05/1998 PAT 6,402,415 *OIC 9/16/05 WS*
which is a CIP of 08/811,898 03/05/1997 ABN

** FOREIGN APPLICATIONS ******************  *NONE  9/16/05 WS*

| Foreign Priority claimed ☐ yes ☑ no | STATE OR | SHEETS | TOTAL | INDEPENDENT |
|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☑ Met after Allowance Verified and Acknowledged *WS 9/16/05* Examiner's Signature ___ Initials | COUNTRY | DRAWING | CLAIMS 12 | CLAIMS 2 |

ADDRESS
Kenneth P. Glynn
GLYNN & ASSOCIATES, PC
24 Mine Street
Flemington , NJ
08822

TITLE
ANCHORING BISCUIT DEVICE

| FILING FEE RECEIVED 2520 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |

IC-App-0811

| *R ex min ti n* | Application/Control No. 90/007,661 | Applicant(s)/Patent Under Re examination 4602415 |
| | Certificat Dat | Certificat Number |

| Requester    Correspondence Address:    ☐ Patent Owner    ☒ Third Party |
| --- |
| MATTHEW W. STAVISH, ESQ.<br>BERENATO WHITE & STAVISH LLC<br>6550 ROCK SPRING DRIVE, SUITE 240<br>BETHESDA, MD 20814 |

| LITIGATION REVIEW ☒ | KB *KB* | 9/16/2005 |
| --- | --- | --- |
| Case Name (examiner initials) | | (date)    Director Initials |
| Eberle, et al. V. Harris et al. Filed December 8, 2003, D.C. New Jersey (Trenton) 03cv5809 | | *AK Ja LM* |
| Eberle, et al. V. Pelc, et al. Filed February 28, 2003, D.C. New Jersey (Trenton), Doc. No. 03cv892(SRC) | | |
| | | |
| | | |
| | | |

| COPENDING OFFICE PROCEEDINGS | |
| --- | --- |
| TYPE OF PROCEEDING | NUMBER |
| 1. | |
| 2. | |
| 3. | |
| 4. | |



02-12-07                                                    Reexam



# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## CENTRAL REEXAMINATION UNIT

## EX PARTE REEXAMINATION CONTROL NUMBER 90/007,661

| | |
|---|---|
| In re application of: | : Examiner: |
| | : |
| HARRY W. EBERLE, III | : JEFFREY R. JASTRZAB |
| | : |
| Serial No. 09/186,741 | : Central Reexamination Unit: 3993 |
| | : |
| Filing Date: November 5, 1998 | : Attorney Docket No. HWE-105C |
| | : |
| Priority Date: March 5, 1997 | : |
| | : |
| For: ANCHORING BISCUIT DEVICE | : HWE-105C |

**U.S. Patent No. 6,402,415 B1**

Issue Date: June 11, 2002

Honorable Commissioner of Patents
P.O. BOX 1450
Alexandria, VA 22313-1450

## AMENDMENT AND RESPONSE UNDER 37 CFR 1.550(b)

In response to the Office Action dated December 14, 2006 in the above-mentioned patent reexamination, the following amendments, remarks, declarations, and requests for reconsideration are submitted.

A statement of **Claim Status** is set forth on page 2 of this paper.

**Amendments to the Claims** are set forth beginning on page 3 of this paper.

A statement setting forth **Support for Amendments to the Claims** is provided beginning on page 9 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

**Declarations** under 37 CFR 1.132 by inventor Harry W. Eberle, III, and by Kevin Sabin are appended at the end of this paper, along with supporting exhibits.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 3

## IN THE CLAIMS

Kindly amend claims 1, 2, 7, 8, and 10 and add new claims 13-26 as follows:

1. (amended)  An anchoring biscuit device for joining [[three ]]together two adjacent boards and a support board, the adjacent boards being in the same plane and having in their sides pre-cut biscuit receiving slots, [[which]] the anchoring biscuit device comprising[[comprises]]:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration [[with]] having opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, and opposite end walls, said top element having a center [[area between said opposite side walls in the shape of arcs]]line extending between said end walls, and said respective side walls being adapted to be fitted into said respective biscuit receiving slots of said adjacent boards;

(b) at least two substantially vertical support members attached to an underside of said top element [[at ]]along said center [[area]] line of said top element and extending perpendicularly downwardly [[there]]from said top element for a predetermined length in a vertical plane that is aligned with, and directly under, said center line, said predetermined length being adapted to maintain said top element in a predetermined position during use for joining said two adjacent boards together with, and atop, said support board, [[which have been pre-cut with biscuit receiving slots]], [[two of ]]all of said at least two vertical support members being substantially flat[[, being]] and in [[the

IC-App-0814

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 4

same]]said vertical plane [[and one of each being located on opposite sides of an

attachment orifice]]; and,

(c) at least one attachment orifice located at least on said top element for

attachment of said anchoring biscuit device to [[a ]]said support board for anchoring and

support of said two adjacent boards, said attachment orifice being located between two of

said vertical support members.

2. (amended)  The anchoring biscuit device of claim 1 wherein said attachment

orifice is at least one screwhole located on said top element for screwing of said

anchoring biscuit device to [[a]]said support board.

7. (amended)  The anchoring biscuit device of claim 1 wherein said top element

and said vertical support members are unitarily formed.

8. (amended)  The anchoring biscuit device of claim 1 wherein there are exactly

two vertical support members[[ and one is located on each side of said attachment

orifice]].

10. (amended)  An anchoring biscuit device for joining [[three ]]together two

adjacent boards and a support board, the adjacent boards being in the same plane and

having in their sides pre-cut biscuit receiving slots, the anchoring biscuit device [[which

comprises]]comprising:

(a) a first substantially flat horizontal top element having a generally biscuit-

shaped top view configuration with opposite side walls in the shape of arcs from a top

view, said arcs having predetermined radii and arc lengths, and opposite end walls, said

IC-App-0815

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 5

top element having a center [[area between said opposite side walls in the shape of arcs]]
line extending between said end walls, and said respective side walls being adapted to be
fitted into said respective biscuit receiving slots of said adjacent boards;

     (b) at least one substantially vertical support member attached to an underside of
said top element [[at]]along said center [[area]]line of said top element and extending
perpendicularly downwardly therefrom for a predetermined length in a vertical plane that
is aligned with, and directly under, said center line, said predetermined length being
adapted to maintain said top element in a predetermined position during use for joining
said two adjacent boards together with, and atop, said support board[[which have been
precut with biscuit receiving slots]], said at least one vertical support member being
substantially flat; and,

     (c) at least one attachment orifice located at least on said top element for
attachment of said anchoring biscuit device to a support board for anchoring and support
of said two adjacent boards; and

     wherein [[there is]]said at least one substantially vertical support member
[[which]] is located off-center and to one side of said at least one attachment orifice.

     13. (new)  The anchoring biscuit device of claim 10 having exactly one said
vertical support member.

     14. (new)  An anchoring biscuit device for joining together two adjacent boards
and a support board, the adjacent boards being in the same plane and having in their sides
pre-cut biscuit receiving slots, the anchoring biscuit device comprising:

IC-App-0816

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 6

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration having opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, and opposite end walls, said top element having a center line extending between said end walls, and said respective side walls being adapted to be fitted into said respective biscuit receiving slots of said adjacent boards;

(b) exactly two substantially vertical support members attached to an underside of said top element along said center line of said top element and extending perpendicularly downwardly therefrom for a predetermined length in a vertical plane that is aligned with, and directly under, said center line, said predetermined length being adapted to maintain said top element in a predetermined position during use for joining said two adjacent boards together with, and atop, said support board, said vertical support members being substantially flat and in said vertical plane; and

(c) at least one attachment orifice located on said top element for attachment of said anchoring biscuit device to said support board for anchoring and support of said two adjacent boards, said attachment orifice being located between said vertical support members.

15. (new)  The anchoring biscuit device of claim 14 wherein said attachment orifice is at least one screwhole located on said top element for screwing of said anchoring biscuit device to said support board.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam     :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  7

16. (new)  The anchoring biscuit device of claim 15 wherein said screwhole has a bevelled top.

17. (new)  The anchoring biscuit device of claim 15 wherein said screwhole is non-circular and elongated.

18. (new)  The anchoring biscuit device of claim 14 wherein said top element and said vertical support member are unitarily formed.

19. (new)  The anchoring biscuit device of claim 14, having exactly one said attachment orifice.

20. (new)  An anchoring biscuit device for joining together two adjacent boards and a support board, the adjacent boards being in the same plane and having in their sides pre-cut biscuit receiving slots, and wherein the anchoring biscuit device comprises:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, and opposite end walls, said top element having a center line extending between said end walls, and said respective side walls being adapted to be fitted into said respective biscuit receiving slots of said adjacent boards;

(b) exactly one substantially vertical support member attached to an underside of said top element along said center line of said top element and extending perpendicularly downwardly therefrom for a predetermined length in a vertical plane that is aligned with, and directly under, said center line, said predetermined length being adapted to maintain

IC-App-0818

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  8

said top element in a predetermined position during use for joining said two adjacent

boards together with, and atop, said support board, said at least one vertical support

member being substantially flat; and,

    (c) at least one attachment orifice located at least on said top element for

attachment of said anchoring biscuit device to a support board for anchoring and support

of said two adjacent boards; and

    wherein said substantially vertical support member is located off-center and to

one side of said at least one attachment orifice.

    21. (new)  The anchoring biscuit device of claim 20 wherein said attachment

orifice is at least one screwhole located on said top element for screwing of said

anchoring biscuit device to said support board.

    22. (new)  The anchoring biscuit device of claim 21 wherein said screwhole has a

bevelled top.

    23. (new)  The anchoring biscuit device of claim 21 wherein said screwhole is

non-circular and elongated.

    24. (new)  The anchoring biscuit device of claim 20 wherein said top element and

said vertical support member are unitarily formed.

    25. (new)  The anchoring biscuit device of claim 20, having exactly one said

attachment orifice.

    26. (new)  The anchoring biscuit device of claim 25, wherein said attachment

orifice is situated on said center line.

ReExamination of USP 6,402,415                Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 2

## STATUS OF CLAIMS:

The following is the current status of all claims in the subject reexamination

proceeding:

| CLAIMS | STATUS |
|---|---|
| 1 through 12 | Issued Patent Claims, pending in the present reexamination. |
| 1, 2, 7, 8, 10 | Amended as set forth hereinafter. |
| 13 through 26 | Newly presented by this Amendment. |

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 9

## SUPPORT FOR CLAIM AMENDMENTS

Support for the claim amendments presented in this paper is provided by the specification of the original application and the issued patent as follows.  Consequently, no new matter has been added by the present amendment.

Claim 1:

> Claim 1 as originally filed;
>
> Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 24-25, 29-31, 31-33, and 39;
>
> Figs. 1, 4, 5.

Claim 7:

> (typographical error).

Claim 8:

> Figs. 1, 2, 6, 7.

Claim 10:

> Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 24-25, 29-31, 31-33, and 39;  col. 6, lines 35-37;
>
> Fig. 11.

Claim 13:

> Col. 6, lines 35-37;
>
> Fig. 11.

Claim 14:

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No.  : 09/186,741
Filed      : November 5, 1998
Page      : 10

Claim 1;

Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 13-22, 24-25, 29-31,

31-33, and 39;

Figs. 1, 4, 5.


Claims 15-17:

Claims 2-4, respectively.

Claim 18:

Claim 8 as originally filed;

Claim 7.

Claim 19:

Col. 5, lines 17-19;

Figs. 1-3.

Claim 20:

Claim 10;

Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 24-25, 29-31, 31-33,

and 39;  col. 6, lines 35-37;

Fig. 11.

Claims 21-23:

Claims 2-4, respectively.

Claim 24:

ReExamination of USP 6,402,415          Attorney Docket No.:  HWE-105C
Inventor    :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  11

Claim 8 as originally filed;

Claim 7.

Claim 25:

Col. 5, lines 17-19;

Figs. 1-3.

Claim 26:

Fig. 11.

ReExamination of USP 6,402,415                      Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 12

## REMARKS

In order to emphasize the patentable distinctions of the Patentee's contribution over the prior art of record, claims 1 and 10 have been amended to recite an anchoring biscuit device for joining together two adjacent boards and a support board, wherein the adjacent boards are in the same plane and have in their sides pre-cut biscuit receiving slots. The anchoring device has a substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, the arcs having predetermined radii and arc lengths, and opposite end walls. The top element has a center line extending between the end walls. The respective side walls are adapted to be fitted into the respective biscuit receiving slots of the adjacent boards. Amended claim 1 further calls for at least two substantially vertical support members attached to an underside of the top element along the center line of the top element. The vertical support members extend perpendicularly downwardly from the underside of the top element for a predetermined length in a vertical plane that is aligned with, and directly under, said center line. The predetermined length is adapted to maintain the top element in a predetermined position during use for joining the two adjacent boards together with and atop the support board. The at least two vertical support members are substantially flat and in the same vertical plane. One of the vertical support members is located on each side of an attachment orifice.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 13

Claim 8 has been amended to emphasize the patentable distinctions of the Patentee's contribution to the art and for the sake of clarity. Claim 8 now calls for exactly two vertical support members. The recitation that the two vertical support members are located on the sides of the attachment orifice has been removed as being redundant, this feature now being recited by claim 1.

Claims 2 and 7 have been amended for the sake of clarity. In claim 2, the antecedent basis for the support board has been clarified. The word "member" in claim 7, an obvious typographical error, has been corrected to the plural form "members."

New claims 13-26 have been added to provide adequate coverage for the Patentee's contribution to the art.

Claim 13, dependent from claim 10, calls for exactly one vertical support member.

New independent claim 14 parallels amended claim 1, but calls for exactly two vertical support members. Claims 15-18 depend from claim 14 and recite preferred embodiments paralleling those of claims 2-4 and 7. Dependent claim 19 calls for an anchoring biscuit device having exactly one attachment orifice.

New independent claim 20 parallels amended claim 10, but calls for exactly one vertical support member. Claims 21-24 depend from claim 20 and recite preferred embodiments paralleling those of claims 2-4 and 7. Dependent claim 25 calls for an anchoring biscuit device having exactly one attachment orifice. Claim 26 depends from claim 25 and calls for the attachment orifice to be on the center line of the device.

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 14

Support for the foregoing amendments is provided by the patent as issued and the specification, including claims, as originally filed, particularly as set forth hereinabove. Consequently, no new matter has been added.

The present response is accompanied by two Declarations Under 37 CFR 1.132. The first declaration is made by Harry W. Eberle, III, the patentee of the present patent. The other declaration is made by Kevin Sabin.  Based on the qualifications and the experience of these declarants, as set forth in the respective declarations, the patent owner respectfully submits that each declarant is a person having at least ordinary skill in the art to which the present patent pertains.

**Issue 1:**

Claims 1-3, 5, and 7-11 were rejected under 35 USC 102(b) as being clearly anticipated by US Patent No. 2,201,129 to Weiland, which relates to a tiling system that includes means for positive mechanical attachment of ceramic or composition tiles to a surface without use of cement.

As amended, claims 1 and 10 respectively call for an anchoring biscuit device for joining together two adjacent boards and a support board.  The adjacent boards are in the same plane and have in their sides pre-cut biscuit receiving slots.  A person having ordinary skill in the deck construction arts would regard the use of a conventional biscuit jointer as disclosed by US Patent 5,004,027 to Legler et al. (see col. 2, lines 45-64 of the

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam    :  90/007,661
Serial No.  :  09/186,741
Filed        :  November 5, 1998
Page        :  15

present patent) as one possible and convenient means of forming the present biscuit receiving slot.

The claim 1 device comprises at least two substantially vertical support members, while the claim 10 device comprises at least one substantially vertical support member that is located off-center and to one side of the attachment orifice. Amended claims 1 and 10 further call for the vertical support members: (i) to be attached to an underside of the top element along a center line of the top element that extends between the end walls; and (ii) to extend perpendicularly downward from the top element in a vertical plane that is aligned with, and directly under the center line. Newly presented claims 14 and 20 call for exactly two and exactly one such vertical support member in the same relationship to the top element.

The Patent Owner maintains that the foregoing features unambiguously distinguish the structure of claims 1, 10, 14, and 20, and the claims dependent thereon, from any device disclosed by Weiland.

In particular, the Weiland devices includes structural features that contravene the structural requirements of the present claims and preclude it from carrying out the function provided by the instant patent's claimed device.

By way of contrast, the Examiner has adapted the arguments of the third party requester and has interpreted the claim language of the issued claims rather broadly, both as to the meanings of the words used by patentee, and the context of the phrases used by patentee. Thus, it appears that the Examiner has construed the claim language in a

ReExamination of USP 6,402,415　　　　　　　　　　Attorney Docket No.: HWE-105C
Inventor　：Eberle, III
ReExam　：90/007,661
Serial No.：09/186,741
Filed　：November 5, 1998
Page　：16

manner that is inconsistent with what would be understood by a person having ordinary skill in the art in the context of the application as filed, taken as a whole.

For example, the patentee submits that the Examiner has misinterpreted the recitation of a vertical support member "extending down at the center area of the top element". The requester and the Examiner have taken the phrase "center area between said side walls" to mean the entire area between said sidewalls. See, for example, the Office Action of December 14, 2006, at page 8, lines 12-13. This interpretation is unsupportable for many reasons.

First, this interpretation that the area between the side walls in its entirety is the "center area" ignores the existence of the word "center". Had the claim phrase said that the vertical support members were extending down at the area between the side walls, then this interpretation makes sense. However, the Examiner's position fails to recognize any limitation resulting from the inclusion of this term and thereby impermissibly strips the word "center" of any meaning whatsoever.

In the present instance, the term "center area" is used with respect to the top element, but in conjunction with other portions thereof, including the "end" and "sides." These terms, as used by the patent specification, provide context that must figure in any construction of the particular meaning of the term "center area." It is respectfully submitted that the Examiner's expansive reading, being incompatible with these distinctions, is untenable.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam     :  90/007,661
Serial No.  :  09/186,741
Filed        :  November 5, 1998
Page        :  17

Second, the context within which the term "center area" is used clearly means an area that includes the center line. The devices provided by Weiland's Figs. 6 and 11 do not have vertical support members in the center area and thus cannot be construed as satisfying the limitations of issued claim 1.

Nevertheless, for the sake of clarity, claims 1 and 10 have been amended to call for the substantially vertical support members of the Eberle device to extend downwardly from a center line of the top element, a feature Weiland clearly does not disclose. New claims 14 and 20 incorporate the same recitation.

The Patent Owner also maintains that claims 1, 10, 14, and 20 include further structural recitations, albeit delineated in functional terms. The propriety of a claim recitation in this form is well established. See, e.g., *Sanada v. Reynolds*, 67 USPQ2d 1459, 1463 (B.P.A.I. 2003) (unpublished) ["There is nothing wrong with using functional claim language, where the means-plus-function provision of 35 U.S.C. § 112 applies <u>or where such functional language further limits structure or composition already defined in the claim</u>." citing *In re Swinehart*, 439 F.2d 210, 212, 169 USPQ 226, 228 (CCPA 1971), emphasis added].

The Patent Owner concurs with the Examiner's statement that "The Weiland device need only be inherently capable of providing the claimed function to read on the claim language," but maintains that this very standard operates to preclude any novelty rejection of the patent claims over the Weiland device. Specifically, the Patent Owner maintains that the recited intended use of the present anchoring device ("to joint together

IC-App-0829

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam     :  90/007,661
Serial No.  :  09/186,741
Filed        :  November 5, 1998
Page        :  18

two adjacent boards and a support board," as further elucidated by the remainder of the claims), imposes structural requirements that the Weiland devices inherently does not satisfy. The failure to satisfy these requirements is manifest by the Weiland device's inability to carry out the present patent's anchoring function.

Attention is respectfully directed to the tiling installations depicted by Figs. 1 and 8 of Weiland. In the Fig. 1 arrangement, square tiles are disposed in a simple pattern wherein four tiles meet with their corners at a common vertex. Attachment devices of the form of Fig. 4 or 6 are situated at the right angle vertex. Slots 8 to accommodate the attachment devices are located at the corners of tiles A, not their sides. The Fig. 4 and 6 devices thus provide for the attachment of _five_ workpieces (four tiles to a support structure). The staggered tile disposition in Fig. 8 employs the modified device of Fig. 10 at a vertex at which _three_ tiles meet and are secured to a support structure. However, the device only engages slots in two of the tiles, but again _only_ at their corners.

The Examiner has correctly recognized that Weiland's Fig. 6 device has projections equally spaced at 90° intervals around a generally circular configuration. Even the Fig. 11 device, which is a portion of the Fig. 6 device, has these mutually perpendicular projections. As a result, Weiland only provides devices that can engage a tile having a corner slot, like slot 8 of tiles A. The presence of perpendicular projections inherently _precludes_ insertion of any Weiland device into a biscuit receiving slot cut into the _side_ of a decking board.

IC-App-0830

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 19

By way of contrast, claims 1 and 14 respectively call for a device having at least two, or exactly two, vertical support members, that lie in a vertical plane that is aligned with, and directly under, the device center line. The claims additionally call for the at least two, or two, support members to be substantially flat and in "said vertical plane."

Clearly, none of the Weiland attaching means satisfies these requirements. The projections of the Weiland device are provided in pairs. The various pairs lie in <u>parallel</u> planes, and so do <u>not</u> lie in a vertical plane aligned with, and directly under any center line. Moreover, as the Examiner has recognized, the Weiland projections are spaced at 90° angles, thereby locating them in <u>multiple, mutually perpendicular</u> planes, not in a single plane. Furthermore, the orifice in the devices of Weiland's Figs. 6 and 11 is <u>not</u> between two of said vertical support members; it is not disposed on a line that is collinear with any of the projections, thus the orifice is not "between" the members.

Because the Weiland devices are structurally different from those claimed by Eberle, they cannot anticipate the Eberle invention. The present amendment to the claims only emphasizes the radical and fundamental structural differences between the Eberle and Weiland attachments.

Further, although the Examiner implies that intended use and operability are irrelevant, patentee wishes to re-emphasize that the devices of Weiland are so different from the Eberle devices that the Weiland devices would be inoperative for the Eberle purposes, and likewise, the Eberle devices could not function effectively for the Weiland purposes. If modified to satisfy the Eberle purpose, the Weiland device would no longer

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 20

be useful for its intended purpose. In order to carry out their intended function, the Weiland devices necessarily have the radially extending plates or flanges that are at right angle to each other and inherently create products that cannot be slipped into a biscuit cut or wood slot, because, as can be seen from the Weiland drawings, there are no single plane vertical members that would create a single plane top area that could fit into a saw cut, biscuit cut or slot in a side of wood. The Eberle device, on the other hand, is appointed for "use for joining two adjacent boards which have been precut with biscuit receiving slots." See, e.g., feature (b) of claim 1, and claim 10, and of new claims 14 and 20. Accordingly, the Weiland reference cannot be construed to render the Eberle claims obvious in view of *In re Gordon*, 733 F.2d 900, 902, 221 USPQ 1125, 1127 (Fed. Cir. 1984).

Weiland's devices are built specifically for corner engagement and can only be used at points where two or four tiles meet with their corners at a common vertex. The devices have downwardly projecting and outwardly projecting members that totally prevent the insertion of the device into a slot, whereas the Eberle devices as claimed are specifically structured to fit into a side slot of wood or synthetic wood.

Hence, no device disclosed by Weiland can anticipate the Eberle device, since the downwardly projecting members would preclude the receipt of the Weiland device by a biscuit receiving slot.

In order for the Weiland device to accomplish the function provided by the Eberle device, it would have to be reconstructed by removing certain of its critical elements, e.g.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 21

two of the channels 13 of Fig. 4 or four of the flanges 13a of Fig. 6, to leave two generally collinear portions on either side of attachment hole 12. Such a reconstruction is submitted to be substantial, precluding a finding of obviousness under *In re Ratti*, 270 F.2d 810, 123 USPQ 349 (CCPA 1959). Moreover, once modified in this manner, the Weiland device would be rendered inoperable for the disclosed function of attaching tiles at their corners, further precluding any finding of obviousness.

The function afforded by the Weiland device, viz. the securing of generally square or rectangular tiles at their corners presents a significantly different problem than the securing of deck boards. As would be known to one of ordinary skill in the carpentry and deck building arts, wooden deck boards, which are typically disposed outdoors and exposed to the elements, including rain and snow and relatively large temperature and humidity excursions, undergo significant dimensional changes. Moreover, deck boards are often many feet long, is some cases as long as sixteen feet or more. If secured merely at their corners, as would necessarily be the case using a securing device such as that of Weiland, the deck boards would be subject to marked deformation, warping, bowing, or the like. Such deformation would be highly detrimental and aesthetically unacceptable, and would likely lead to premature failure of the board. The attachment would be highly tenuous, potentially leading to the board becoming disengaged and a serious safety hazard. On the other hand, the Eberle device is employed for securing the board at regular intervals along its length, virtually eliminating the foregoing deformation and providing a much more stable and secure attachment.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed         :  November 5, 1998
Page         :  22

Thus, Weiland's devices have different structures from the present invention, that (i) function differently from the present invention, and (ii) are used for a different purpose than the present invention.  These considerations would discourage a person having ordinary skill in the art from any motivation to carry out the modification of the Weiland devices needed to reach the Eberle device.  Accordingly, it is submitted that Weiland neither discloses the present invention nor renders it obvious.

Attention is respectfully drawn to both Rule 132 declarations submitted herewith. The Patent Owner maintains that each declaration separately sets forth bases that further confirm that Weiland neither discloses nor suggests the subject matter of claims 1-3, 5, and 7-11, and that a person having ordinary skill in the art would not have had motivation to modify the Weiland attachment device by removing features thereof, as would be required to reach the present claimed anchoring biscuit device..

Accordingly, reconsideration of the rejection of claims 1-3, 5, and 7-11 under 35 USC 102(b) as being clearly anticipated by Weiland is respectfully requested, along with confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

In view of the foregoing arguments, the newly presented claims and the Declarations supporting patentability that are appended hereto, it is urged that this rejection be withdrawn and that the new claims be allowed.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 23

## Issue 2:

Claims 4, 6, and 12 were rejected under 35 USC 103(a) as being unpatentable over Weiland in view of German Patent Document DE372,483 to Wothe, which relates to a screw supporting plate used in conjunction with a screw that attaches a beam for a crossing wood member.

The Examiner has alleged that Weiland discloses the invention substantially as claimed less a non-circular and elongated slot. For the reasons set forth above under Issue 1 in connection with the novelty rejection over Weiland, the Patent Owner respectfully disagrees. In particular, it is submitted that Weiland does not disclose or suggest the subject matter of amended claims 1 and 10, on which claims 4 and 6, and 12 respectively depend.

The Examiner has not pointed to any disclosure or suggestion that cures this deficiency, but instead merely relies on Wothe for the feature of the non-circular and elongated slot to allege that the modification of Weiland to include such a slot as part of the attachment orifice would be obvious to a skilled artisan.

The patentee respectfully submits that the screw supporting plate of the Wothe reference clearly engages only the cross-bar member "b" of Figs. 1-2 in Wothe and the attaching screw itself. The plate does not play any direct role in the mutual engagement of multiple boards. By way of contrast, the patentee's anchoring device directly engages two adjacent decking boards and is attached to the third board member by a fastener such as a screw. As a result, the Wothe reference, whether taken singly or in combination with

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 24

Weiland, does not cure the lack of disclosure or suggestion of the particular arrangement of the at least two vertical support members, in the form delineated by amended claim 1, which feature is inherited by claims 4 and 6, or the at least one vertical support member of amended claim 10, on which claim 12 depends.

Moreover, the slotted orifice in the Wothe plate functions in an altogether different way than the slotted orifice delineated by the patentee's claims. In particular, slotting is said by the present patent to permit insertion of a screw or the like at an angled, non-vertical position. See, e.g., col. 4, lines 30-34, col. 6, lines 1-3, and Figs. 7 and 9. Such a non-vertical installation typically has been found to provide additional support and integrity to the deck flooring structure, inasmuch as the fastener directly engages both the supporting beam and one of the deck boards, instead of just the beam, as it would if the fastener were driven vertically. On the other hand, the elongated plate in the Wothe reference merely permits the screw position to be moved horizontally, while maintaining a vertical disposition of the screw itself. In addition, the screw itself in the Wothe construction provides the principal alignment and fastening of the cross-member and the long beam, and not vertical support members provided by the Eberle device..

In view of the aforesaid differences, it is submitted that even in combination, Weiland and Wothe do not disclose or suggest the subject matter of amended claims 4, 6, and 12. Neither would a skilled artisan be motivated to carry out the substantial reconstruction of any structure provided by the combination of Weiland and Wothe that

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 25

would be required to reach the anchoring device of present claims 4, 6, and 12. It is submitted that prima facie obviousness of claims 4, 6, and 12 has not been established.

Accordingly, and in view of the foregoing arguments, the newly presented claims and the Declarations supporting patentability that are appended hereto, reconsideration of the rejection of claims 4, 6, and 11 under 35 USC 103(a) as being unpatentable over Weiland and Wothe is respectfully requested, along with confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

**Issue 3:**

Claims 10 and 11 were rejected under 35 USC 103(a) as being unpatentable over US Patent No. 1,714,738 to Smith in view of US Patent No. 2,337,156 to Elmendorf.

Smith is directed to a construction of floorboards and a means of fastening such boards to a subflooring. Elmendorf provides a system for laying a flooring of wood tiles on a wood or concrete subfloor without the necessity of employing tongue and groove joints between meeting tiles, and with the assurance that the upper faces of meeting tiles lie in the same plane.

The Examiner has accepted the requester's contention that Fig. 3 of Smith depicts an anchoring device having, inter alia, a flat horizontal top element, vertical support members, and an attachment orifice as delineated by the issued claims. The Examiner acknowledges that the top view shape of the Smith device is rectangular, rather than the claimed biscuit shape. Accordingly, he has pointed to Elmendorf to contend that it would

IC-App-0837

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam   :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  26

be obvious to change the shape of the Smith top configuration.  The Patent Owner respectfully traverses this characterization.

Amended claim 10 and new claim 20 both call for an anchoring biscuit device having a vertical support member that extends perpendicularly downwardly from the device's top element in a vertical plane that is aligned with, and directly under, a center line.

Clearly, Smith provides no such structure.  Both Figs. 3 and 4 of Smith depict devices wherein two vertical projections (e.g., supports or feet 11 of Fig. 3 and feet 20 of Fig. 4) extend downwardly from plural lines on the top element, neither of which is a center line.

The Patent Owner observes that Smith variously discloses "support means" and "support feet" associated with his fastener.  Inasmuch as there is no disclosure, either by way of drawing illustration or textual description, of any support means that does not entail two support feet, the term "support means" must be construed as requiring two support feet laterally separated from the centerline of the Smith fastener.  On the other hand, the Elmendorf keys (e.g. item 8 of Figs. 4 and 8) do not include any downward projection, so that Elmendorf cannot be regarded as providing any motivation for modifying the Smith device to remove some, but not all, of the downward projection therefrom.

Smith further discloses that "Feet 11 engage the subflooring and serve to hold the fasteners straight and to keep them from being bent downward either accidentally or

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 27

when the nails are being driven.  The provision of a means, such as the feet 11, for

supporting the fasteners from the sub-flooring so as to positively position them is one

important feature of my construction, for by this means the fasteners are all held straight

so that when the next board is put in position no difficulty is experienced in fitting its

grooves onto the outwardly-projecting flanges of the fasteners." (Page 1, col. 2, lines 99-

111, emphasis added).  The feet are said to be "spaced."  (Page 1, col. 1, line 36).

     The patentee respectfully submits that these disclosures, taken in combination,

constrain what a skilled person would recognize as being the scope of the Smith

disclosure.  Specifically, the lateral spacing between the feet of the Smith fastener (e.g.

between feet 11 of Fig. 3 or feet 20 of Fig. 4) must be relatively wide, so as to provide the

aforementioned required stability of the table-like top surface of the fastener (e.g., surface

10 of Fig. 3 and surface 22 of Fig. 4).  It is clear from the floor assembly depicted by

Figs. 1-2 that the lateral spacing of the feet in turn establishes the width of undercut 17

(see page 1, col. 2, lines 79-80) required for the top edges of adjacent flooring boards to

be installed in abutment, to avoid cracks between boards.  Such cracks are eschewed for

interior wood floors (see page 2, col. 1, lines 61-62).

     On the other hand, if a Smith fastener with such a width were to be used for

installing deck boards having but a single rectangular groove or biscuit receiving slot,

such as those employed by the patentee, the lateral spacing of the Smith feet would

necessarily establish the open spacing between adjacent deck boards.  Some amount of

spacing (typically of the order of 3/32 - 1/8") is conventionally employed in both prior art

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam     :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  28

forms of deck assembly and in the patentee's deck assembly system.  However, it is

submitted that the Smith fastener, which must have spacing sufficient to maintain the

aforementioned stability, would result in an <u>excessive</u> spacing between adjacent boards in

a decking installation.  The typical small spacing of deck boards, which are ordinarily

installed outdoors or in damp locations, accommodates the swelling and shrinking of

lumber due to varying temperature and moisture, but is not large enough to present

hazards, such as tripping or catching a narrow shoe heel.  Installation of deck flooring

with the Smith fasteners thus could not be readily accomplished with boards having

biscuit receiving slots or a single groove.  Instead, an additional step of rabbeting each

deck board would be required to provide a sufficient undercutting to achieve the desired

board spacing.  These width considerations are submitted to negate any motivation for a

skilled artisan to modify the Smith fastener in the manner required to reach the Eberle

device.

The patentee further traverses the basis on which the Examiner discounted

arguments based on the decision of the Board of Patent Appeals and Interferences.

Specifically, the patent owner's answer argued that the same considerations on which

BPAI ruled the Eberle application patentable over Ellinwood also apply with respect to

the present rejection over Smith and Elmendorf.  The Examiner countered as follows:

> Patent Owner's Comments with respect to the BPAI decision in the
> Eberle patent are noted, however <u>the comments are related to an</u>
> <u>anticipation rejection</u> of a biscuit shape.  <u>This rejection is an</u>
> <u>obviousness rejection</u> that acknowledges that the T-shaped top of the
> Smith anchor is not biscuit-shaped and thus is in-line with the BPAI

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 29

comments on the Elmendorf[*] patent. Accordingly, the modification in this rejection is not addressed. (page 21, second full paragraph of the present Office Action, emphases added)

The patentee respectfully submits that the Examiner has mischaracterized the BPAI decision, which did <u>not</u> relate to an anticipation rejection, but to an <u>obviousness</u> rejection. There were three issues before the Board in the aforementioned appeal: (i) rejection of claims 27-29 under 35 USC 112, second paragraph; (ii) rejection of claims 18, 19, and 24 under 35 USC 103(a) over US Patent 2,362,252 to Ellinwood in view of US Patent 5,529,428 to Bischof; and (iii) rejection of claims 20-23, 28, and 29 under 35 USC 103(a) over Ellinwood in view of Bischof and German Patent DE 372,483 (i.e., the present Wothe reference). <u>Contrary to the Examiner's statement, the BPAI addressed Ellinwood in the context of obviousness, not novelty.</u>

Attention is respectfully drawn to the BPAI decision at pages 4-6. Like the Smith and Heilmann devices, the Ellinwood connecting member is said to have a "general T-like formation…comprising a base 24 and side flanges 25" (page 2, col. 1, lines 40-42 and Figs. 2-4 of Ellinwood). The Ellinwood member is appointed for connecting adjacent panels forming a wall structure installation. The original Examiner's position in the appeal expressly acknowledged that Ellinwood did not disclose a biscuit-like configuration having side walls in the shape of an arc having radii and an arc length (Examiner's Answer at page 5, lines 3-4). Therefore, the original Examiner pointed to Fig. 9 of Bischof, which he alleged to provide the requisite shape in what he purported to

---

[*] *Sic.* The BPAI decision does not address Elmendorf. The Examiner may have intended reference to Ellinwood.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 30

be an anchoring device to obtain this feature. The Board's decision thus addressed the obviousness of the Eberle device over Ellinwood in combination with Bischof.

The Board rejected the original Examiner's arguments on several bases, including a finding that the proposed motivation for the combination was impermissibly hindsight-driven. In addition, the Board held that:

> "even if Ellinwood and Bischof were combined in the manner proposed, the result would still not respond to the limitation in claim 18 requiring 'at least two' substantially vertical support members attached to an underside of the top element or the limitation in claim 27 requiring the vertical support member to be 'located off-center and to one side of' an attachment orifice. These flaws in the basic Ellinwood-Bischof combination find no cure in the German reference." (page 6, full paragraph of BPAI Decision of August 27, 2001).

The patentee maintains this finding is directly apposite the rejection in present Issue 3. While the Board admittedly rejected the Examiner's friction motivation to permit the combination, the Board did not countenance or affirm any alternative motivation for the combination. In particular, the Board did not adopt the position the present Examiner urges, which seemingly relies on a *per se* rule that a change in shape of the top element of Smith to a biscuit-like shape is inherently motivated and renders the claims on appeal obvious. The courts have expressly rejected such reliance on *per se* rules. See., e.g., *In re Ochiai*, 71 F.3d 1565, 1572, 37 USPQ2d 1127, 1133 (1995). ["Reliance on *per se* rules of obviousness is legally incorrect and must cease."] At best, the BPAI permitted the combination *arguendo*, but still ruled for no obviousness, without affirming the propriety of the combination.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 31

The Examiner has pointed to Elemendorf at page 3, col. 2, lines 8-15 for the proposition that Elmendorf discloses a top shape that may be square, circular, or any other desired shape.  The patentee acknowledges this statement, but submits that it pertains directly only to devices that are otherwise flat, i.e., without the vertical support members provided by the Eberle device.  The only vertical element in any way associated with the Elmendorf device is a nail, which cannot constitute a vertical support member, and, in any event, cannot be regarded as <u>adjacent</u> an attachment orifice.  The Elmendorf disclosure fails to contemplate any such members, despite the availability of the Smith reference, which issued some twelve years before the Elmendorf filing.  The patentee thus submits that the combination of a non-rectangular shape like Elmendorf's, disclosed <u>only in the context of a flat securing device</u>, with devices like Smith's, which include both horizontal and vertical members, is possible only using impermissible hindsight.

The Patent Owner further submits that Elmendorf, like Weiland, discloses devices appointed only to engage workpieces either at their beveled corners, in an arrangement of square or rectangular tiles (e.g. Figs. 2, 7, and 14),  or at complementary right-angled vertices in a herringbone arrangement (e.g. Fig. 18).  Elmendorf fails to disclose or suggest any fastener that engages adjacent boards at any point along shared parallel edges.  Instead, the fasteners are disposed only at vertices having an interior or exterior opening angle of 90°.  Thus, Elmendorf does not provide a fastener that is to be received in the sides biscuit-receiving slots in <u>adjacent</u> boards, as required by the Eberle claims.

IC-App-0843

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page     : 32

Significantly, the Third Party Requestor, in arguing a rejection over Smith and Elmendorf, points to Smith's phrase that the flanges "may be made in various forms," but extends this quotation beyond its context, which clearly does not include any disclosure of top shapes other than rectilinear forms (see, e.g., Figs. 3-4). (Request, page 6, line 4, citing Smith, page 2, col. 2, lines 74-75).

Second, the patentee maintains that the Smith-Elmendorf combination, like the Ellinwood-Bischof combination considered in the original appeal, does not respond to the "off-center and to one side of an attachment orifice" limitation recited by amended claims 10-11, or by new claims 20-26.

Were the Smith fastener to be modified as required to reach present claims 10-11 by removing one of its support feet and locating the remaining foot off center, it clearly would lose the stability said to be an important feature, thereby negating the motivation to make such modification.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Kevin Sabin. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Smith and Elmendorf do not disclose or suggest the subject matter of claims 10-11. The Sabin Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Smith and Elmendorf as would be required to reach the present claimed anchoring biscuit device.

ReExamination of USP 6,402,415        Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 33

Accordingly, and in view of the foregoing arguments, the amended and newly presented claims, and the Declarations supporting patentability that are appended hereto, reconsideration of the rejection of claims 10-11 under 35 USC 103(a) as being unpatentable over Smith and Elmendorf is respectfully requested, along with confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

The Patent Owner concurs with the Examiner's rejection of the Requestor's proposal that Claims 1, 2, 3, 5, and 7-9 be rejected on the same grounds. Clearly, the subject matter of claims 1, 2, 3, 5, and 7-9 is not disclosed or suggested by Smith and Elmendorf, whether taken singly or in combination.

**Issue 4:**

Claim 12 was rejected under 35 USC 103(a) as being unpatentable over Smith in view of Elmendorf and further in view of Wothe.

For the reasons set forth above concerning Issue 3, the patentee respectfully maintains that the combination of Smith and Elmendorf does not render obvious amended claim 10, from which claim 12 depends. The patentee's discussion of Wothe set forth under Issue 2 above is submitted to apply to the present rejection of claim 12 with equal force. Clearly, Wothe does not cure the lack of disclosure or suggestion of any anchoring biscuit device of base claim 10 provided by Smith and Elmendorf, even in combination.

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 34

In addition, the remarks set forth under Issue 3 regarding the pertinence of the earlier BPAI decision with respect to the rejection of claims 10-11 over Smith and Elemendorf apply with equal force to claim 12. The BPAI specifically considered the further combination with Wothe with Ellinwood and Bischof in regard to claim 12, and ruled for patentability. The patentee maintains that patentability of claim 12 over Smith, Elemendorf, and Wothe can be predicated on a comparable basis.

The patentee thus maintains that amended claim 12 is neither disclosed nor suggested by the combination of Smith, Elemendorf, and Wothe.

In view of the foregoing arguments, the amended and newly presented claims, and the Declarations supporting patentability that are appended hereto, it is submitted that the subject matter of claim 12 is patentable over the combination of Smith, Elemendorf, and Wothe.

Accordingly, reconsideration of the rejection of claim 12 under 35 USC 103(a) as being unpatentable over Smith, Elemendorf, and Wothe, and confirmation of amended claim 12, together with newly presented claims 13-26 are respectfully requested.

The Patent Owner concurs with the Examiner's rejection of the Requestor's proposal that Claims 4 and 6 be rejected on the same grounds. Clearly, the subject matter of claims 4 and 6 is not disclosed or suggested by Smith, Elemendorf, and Wothe, whether taken singly or in any combination.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam     :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  35

## Issue 5:

The Patent Owner concurs with the Examiner's rejection of the Requestor's proposal that Claims 1, 2, 7, 8, and 9 be rejected under 35 USC 103(a) as being unpatentable over US Patent 695,722 to Heilmann in view of Elmendorf. Clearly, the subject matter of claims 1, 2, 7, 8, and 9 is not disclosed or suggested by Heilmann and Elmendorf, whether taken singly or in combination.

## Issue 6:

The Patent Owner concurs with the Examiner's rejection of the Requestor's proposal that Claims 3-6 be rejected under 35 USC 103(a) as being unpatentable over Heilmann in view of Elmendorf and further in view of Wothe. Clearly, the subject matter of claims 3-6 is not disclosed or suggested by Heilmann, Elmendorf, and Wothe, whether taken singly or in any combination.

## Issue 7:

Claims 10 and 11 were rejected under 35 USC 103(a) as being unpatentable over Smith in view of US Patent No. 5,619,834 to Chen.

The Examiner has indicated that the foregoing rejection is made for the reasons set forth in Issue 3 regarding Elmendorf. The patentee respectfully submits that the remarks hereinabove responsive to Issue 3 apply with equal or greater force to the combination of Smith with Chen instead of with Elemendorf.

ReExamination of USP 6,402,415                          Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 36

Chen is directed to a slate positioning device comprising a positioning plate having a horizontal plate and first and second longitudinal plates at two ends of the horizontal plate. The first longitudinal plate has a hole, and the second longitudinal plate has upper and lower convex edges. A screw rod passes through the hole and the slot to fasten the first longitudinal plate and the pad plate. The upper convex edge and lower convex edges are inserted into corresponding grooves of corresponding slates. The Chen device necessarily includes multiple pieces to provide its adjustability, rendering it far more complicated to fabricate and install than the Eberle device.

Significantly, the slate positioning device of Chen is usable only with a wall construction in which the device holds the covering slates away from the underlying wall structure. This outward spacing in a direct consequence of the presence and size of a horizontal plate structure, such as single piece horizontal plate 42 of Fig. 5 or the combination of members 61 and 42' of Figs. 11-12. The Chen device is bolted to the underlying wall structure, e.g. by bolt 400. Were these horizontal plate structures and the resulting outward spacing eliminated, there would be no access for inserting and securing bolt 400. Importantly, there is no hole or other similar structure in the Chen device adapted to function as the patentee's attachment orifice, such as Chen's second longitudinal plate 40, which the Examiner has equated to the Eberle biscuit top element. Still further, all the disclosed embodiments of the Chen bracket include two longitudinal plates in parallel planes, whereas the Eberle device has only a single flat top element. Eliminating either longitudinal plate of Chen would clearly defeat its operation.

IC-App-0848

ReExamination of USP 6,402,415                                    Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 37

Like Weiland and Elmendorf, Chen only discloses embodiments wherein an attachment device is disposed solely at the corners of workpieces being secured to an underlying structure, be it a wall, ceiling, or floor, i.e., at vertices having interior or exterior 90° angles.  The patentee thus maintains that the Examiner has not pointed to any evidence demonstrating motivation to combine any of these references, which admittedly disclose non-rectangular shapes for certain devices, with the T-shape, rectangular-top device of Smith.  Nonetheless, the Examiner has combined these references with devices such as those of Smith and Heilmann (discussed further in Items 8-10 below), that engage workpieces along their sides, but only with attachment fixtures that have rectangularly shaped tops for the engagement.  It is thus respectfully submitted that the combinations have been made only on the basis of impermissible hindsight reconstruction.

The patentee submits that the person having ordinary skill in the art for the purpose of the determination of the obviousness of the Eberle device is a tradesperson experienced in the field of carpentry, including wooden deck building.  The patentee continues to maintain the position that such a person would not have been motivated to consider the combination of the Chen device with the subject matter of Smith, given the markedly different problems of installing relatively light wood flooring and massive stone or slate panels as a wall construction.  Clearly, neither the Eberle device nor the Smith device is required to sustain any substantial static loading.  The flooring being installed in accordance with the Smith teaching bears on a subfloor, so the device merely has to restrain the flooring against relatively small forces involving lateral movement of

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  38

the individual pieces, warpage, and the like.  On the other hand, in the Chen construction, the device is the <u>only</u> means by which the stone wall structure is supported.  The Chen devices must collectively sustain the static weight of the entire wall, as well as prevent relative motion of the individual panels.  The requirements and sizing of such devices are thus altogether different.

The courts have unequivocally recognized that a general relationship between two references is insufficient to predicate a combination, absent a specific suggestion for the combination.  See, e.g. *Interactive Techs., Inc. v. Pittway Corp.*, Civ. App. No. 98-1464, slip op. at 13, 1999 U.S. App. LEXIS 11166,  (Fed. Cir. June 1, 1999) (unpublished), *cert. denied*, 528 U.S. 1046 (1999).  ["The sole evidence proffered of a motivation to combine was that several prior art patents mentioned there being a similarity between garage door openers and home security systems. However, such limited evidence of there being a general relationship between the fields does not suggest a motivation to combine the particular references here relied upon by the Pittway parties."]   See also *In re Alhamad*, Civ. App. 97-1345, slip op. at 3-4, 1997 U.S. App. LEXIS 38110 (Fed. Cir. Dec. 18, 1997).

The patentee maintains that the Examiner's contention that both the Smith and Chen devices relate to construction fasteners or the attachment of veneers at best demonstrates no more than a general relationship of the type that the courts have deemed insufficient.  Absent express establishment of another motivation, as required under *In re*

ReExamination of USP 6,402,415                                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 39

*Lee*, 277 F.3d 1338, 1344-45, 61 U.S.P.Q.2d 1430, 1435 (Fed. Cir. 2002), the combination of Smith and Chen is submitted to be improper.

Attention is respectfully directed to the Rule 132 Declaration by Sabin in support of the patentability of the present patent claims. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Smith and Chen do not disclose or suggest the subject matter of claims 10-11. The Sabin Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Smith and Chen as would be required to reach the present claimed anchoring biscuit device.

Accordingly, and in view of the foregoing arguments, the amended and newly presented claims, and the Declarations supporting patentability that are appended hereto, reconsideration of the rejection of claims 10-11 under 35 USC 103(a) as being unpatentable over Smith and Chen is respectfully requested, along with confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

Although not specifically given enumeration as a separate issue, the Examiner appears to have included under the heading "Issue 7" a further and separate rejection of claim 12 under 35 USC 103(a) as being unpatentable over Smith in view of Chen and further in view of Wothe. The Patent Owner respectfully maintains that Wothe does not cure the lack of disclosure or suggestion of the subject matter of base claim 10, on which

IC-App-0851

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 40

claim 12 depends. Accordingly it is submitted that this rejection is also untenable for at least the same reasons.

Reconsideration of the rejection claim 12 under 35 USC 103(a) as being unpatentable over Smith in view of Chen and further in view of Wothe is thus respectfully requested, along with confirmation of claim 12.


**Issue 8:**

Claims 1, 2, 7, 8, 9, and 10 were rejected under 35 USC 103(a) as being unpatentable over Heilmann in view of Elmendorf, or, in the alternative, over Heilmann in view of Elmendorf and further in view of Weiland.

Heilmann is directed to a fireproof covering system for frame structures that is said to cause the structure to have the appearance of a stone building. The covering comprises blocks, plates, or slabs. The construction disclosed by Heilmann entails use of a generally T-shaped washer, as depicted by Fig. 4, that engages grooves in the sides of the slabs, plates, or blocks used. Significantly, the construction further calls for the joints between the adjoining blocks to be filled with cement mortar, which is clearly essential for the covering to retain its fireproofing ability. In particular, the lower blocks are said to be first set in cement mortar (page 1, col. 2, lines 55-57). The Fig. 4 washers are then placed in grooves in the sides of the lower blocks and secured by nails, screws, or other fasteners (line 96). The connection is described as "tongue and groove" (line 93). Mortar is spread in the grooves of each course before the next course is laid. ("...the

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 41

spreading of mortar first done, <u>of course</u>, before another course is laid." Page 1, col. 2, lines 79-81, emphasis added). Moreover, all the remainder of the joint, apart from the location of the washers, is filled with mortar, e.g. by a pointing operation (line 104 and material *f* of Fig. 3). The mortar filling is said to provide a firm and solid connection of the blocks with each other, so that a practically monolithic facing is produced. (lines 99-103).

The Examiner has contended that Heilmann discloses the claimed anchoring system apart from the shape of the top element and the requirement of at least two vertical support members. He further has asserted that it would have been an obvious design choice to select a biscuit shape for the Smith [*sic – Heilmann may have been intended*] anchor device given the Elmendorf teaching.

The Examiner further has acknowledged that Heilmann is further lacking in that only one vertical member is provided. However, the Examiner further asserted that the "vertical member in Eberle is essentially a single planar member with a gap or spacing in the middle where these is an absence of material" as the basis for an assertion denying a any substantive difference between that Eberle's two-vertical member device and Heilmann's single vertical member device. The patentee agrees that the width of the joint between blocks in the Heilmann construction is defined by the lateral width of the shoulder *d* of the Fig. 4 device. However, attention is respectfully drawn to the Hielmann reference at page 1, col. 2, lines 53-54, which discloses a perforation or hole *d'* that passes "through the main body of the washers <u>and through the ribs or shoulders *d*</u>

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page      : 42

.(emphasis added).  Fig. 3 clearly discloses a construction employing a device having such a perforation.

The Examiner has proposed a modification of the Heilmann washer device in which the thickness of the rib *d* is reduced enough to convert the single rib, e.g. as shown in Heilmann's Fig. 3, into two separate, collinearly disposed ribs.  The patentee respectfully maintains that nothing in the Heilmann disclosure supports, let alone suggests, such a radical reconstruction.  To the contrary, and if so modified, such a device could not properly be characterized as having a hole that extends through both the body and the shoulder of the device, as taught at col. 2, lines 53-54.  Clearly, the hole would no longer extend through the shoulder, negating the Examiner's proposal.

Moreover, it is submitted that a person having ordinary skill in the art would regard the hole *d'* in the Heilmann device as being relatively small, i.e. sized to provide clearance for a screw, nail, or fastener used for its attachment, but not significantly larger  The hole clearly would have to be <u>small</u> enough that the head of the fastener could not pass through, lest the fastening function be defeated.  Still further, in the Examiner's modification, the thickness of *d'* would inherently have to be <u>less than the shank diameter</u> of the fastener.   Therefore, the possible gap between blocks would be severely constrained to the very small values imposed by the diameters of suitable fasteners.  Alternatively stated, <u>the fastener shank diameter would have to be greater than the gap between blocks</u>.  Reduction of thickness *d'* to less than a fastener shank diameter would

ReExamination of USP 6,402,415                          Attorney Docket No.: HWE-105C
Inventor   :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed      :  November 5, 1998
Page      :  43

be highly problematical.  Once the fastener were to be driven, its shank would <u>necessarily</u> disrupt the edge of the block.

Many of the block materials used in the Heilmann construction would be hard and/or brittle materials, such as stone or concrete slabs or composition tiles.  In some cases, a typical metal fastener (e.g. screw or nail) would be unable to penetrate the facing block.  In others, the facing block would be highly prone to severe edge damage.  Either outcome could be clearly untenable.  Accordingly, the patentee maintains that a person having ordinary skill in the art would be motivated not to carry out the Examiner's proposed extensive reconstruction, recognizing that such a reconstruction would render the Heilmann device inoperative for its appointed function.

A further problem negating motivation for the proposed reconstruction stems from the risk that fireproofing would be compromised.  A skilled artisan would recognize that fully enclosing the fasteners in a mortar or cement filling enhances fireproofing.  On the other hand, the presence of air pockets, that are highly likely to result if the fasteners were modified in the proposed manner, would result in a degraded firewall.  The heat rating and efficiency of such modifications would be unacceptable.  In any event, there is no teaching or suggestion to make this modification of the Heilmann disclosure, even in light of the Elmendorf or the Elmendorf and Weiland teachings.

The patentee further points to a benefit afforded by the Eberle device.  Because the attachment orifice is separate from the vertical projections, the Eberle device permits a decking system to be installed with fasteners driven at an off-vertical angle, e.g. as

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 44

shown in Fig. 9 and described at col. 6, lines 6-23. This construction provides improved

attachment (see lines 18-19). Significantly, no such benefit or configuration is

recognized by Heilmann, or even possible using the disclosed device.

Still further, it is submitted that a reconstruction that vitiates a recited feature (the

single shoulder *d* of the Heilmann device) inherently cannot be regarded as an obvious

modification.

For at least the reasons set forth above, the patentee traverses the combination

with Elmendorf, for reasons set forth hereinabove. In arguing the rejection of the present

claims over Heilmann and Elmendorf, the requester points to the disclosure of Heilmann

that "the washers D [may be] of any suitable form" (Heilmann, p. 1, col. 1, lines 46-47).

By way of contrast, the patentee draws attention to the fuller context of this phrase.

Conspicuously absent from this limited quotation is the remainder of the sentence, and

the next sentence, which call for the washer "[to be] provided with longitudinal shoulders

or ribs *d*, so that a washer is produced which has a T-shaped cross-sections. These

washers are provided with preferably central perforations or holes *d'*, that pass through

the main body of the washers and through the ribs or shoulders *d*." The patentee again

submits that the combination is argued, without justification and in hindsight, between a

flat device such as Elmendorf, and a rectangular or rectilinear-topped device, such as

Heilmann's.

The patentee's remarks under Issue 3 above concerning the original BPAI

decision are submitted to be equally pertinent to the rejection over Heilmann and

IC-App-0856

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 45

Elmendorf, as the Examiner again has incorrectly characterized the BPAI decision as being made in relation "to an anticipation rejection of a biscuit shape" (Office Action, page 24, first full paragraph, line 3). Moreover, the Examiner has alleged that the Board's rejection of the Ellinwood-Bischof combination was "due to the fact that the figure used to show the biscuit shape was not in fact a biscuit or anchor, but instead a template...). However, the Board did not so limit its consideration, and further stated that "Although Bischof's connecting element is somewhat more pertinent, its structure and function sill differ markedly from those of Ellinwood's connecting element. The friction-reducing rationale advanced by the examiner to support the combination of these two references is quite strained, and highlights the impermissible hindsight-driven impetus for the combination." (page 7 of BPAI decision). Clearly, the Board recognized that biscuit shapes for construction devices were known, but considered the substitution of such a shape for a rectangular shaped top in an attachment device such as Heilmann's not to be obvious.

For the foregoing reasons, it is submitted that a person having ordinary skill in the art would not regard Heilmann as disclosing or suggesting any device having at least two vertical projections, as delineated by amended claim 1 (and claims 2, 7, 8, and 9 dependent thereon), or exactly two vertical projections, as provided by new claim 14 (and claims 15-19 dependent thereon).

The patentee also maintains that Heilmann like Smith, discloses only a device having a rectangular top configuration. For the reasons set forth hereinabove under Issue

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam     :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  46

7, it is maintained that no motivation has been adduced for combining a reference disclosing a rectangular top element appointed to engage workpieces along their sides with references having a non-rectangular element, but only disclosed for engagement of workpieces at their corners.

The Examiner's rejection further includes claim 10. As now amended, claim 10 calls for at least one substantially vertical support member that is located off-center and to one side of at least one attachment orifice. No remarks in the present rejection specifically address this claim. However, the patentee maintains that Heilmann discloses only a hole that extends through both the top and shoulder *d* of his attachment means. Such disclosure clearly does not satisfy the limitation of a support member that is to <u>one side</u> of an attachment orifice. Nothing, either in Heilmann itself or the foregoing modification proposed by the Examiner, would provide this feature. Accordingly, it is submitted that amended claim 10 is not obvious over Heilmann. The same considerations also predicate patentability of new claim 20, which calls for exactly one off-center support member that also is to one side of an attachment orifice.

The Examiner has further alleged, in the alternative, that claims 1, 2, 7, 8, 9, and 10 are obvious over the combination of Heilmann, Elmendorf, and Weiland. He has stated that it is widely accepted in the constructional anchor art that spacing between adjacent structures (e.g., tile, boards, etc.) may either be defined by a single unitary spacing member, as in Heilmann, or a plurality of spaced members, as shown by Weiland. In particular, he pointed to Fig. 6 of Weiland as opposed to his Fig. 4, alleging

ReExamination of USP 6,402,415        Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  47

that the spacing is the same in both embodiments only with the first spacer having a

unitary member and the latter having a plurality of members.  He concluded that it would

have been obvious to those having ordinary skill in the art at the time of the invention to

have formed the Heilmann vertical spacer as plural smaller vertical members as a matter

of choice in design.

The patentee respectfully traverses this contention.  Fig. 4 of Weiland provides a

device having four radially extending portions 13 that are said to be "channel-like" (page

2, col. 1, lines 23-27).  Those portions are located 90 degrees apart.  It is further said

adjacent portions 13 form, <u>with the intervening wing or marginal portions</u> 14, a series of

right angled corner-receiving pockets *a* for positioning and retaining tiles (lines 27-31).

For the reasons set forth hereinabove in connection with Issue 1, the patentee maintains

that nothing in Weiland or elsewhere motivates the elimination of one set of the radially

opposed portions (e.g., those at the 12 o'clock and 6 o'clock positions) and the retention

of the other set of radially opposed portions (e.g., those at the 3 o'clock and 9 o'clock

positions), as would be required to provide a device having its vertical support members

along the device's centerline.  Furthermore, once two of portions 13 were removed, the

device would no longer have right-angled pockets *a*, so that inherently it could not

function to engage tiles at their corners and carry out its function of provid[ing] an

accurate spacing and confining security for the tiles" (lines 39-41).

The patentee further maintains that while features 13 of Fig. 4 of Weiland are

denominated as "channel-like portions," they would not be regarded by a skilled person

IC-App-0859

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam     :  90/007,661
Serial No.  :  09/186,741
Filed        :  November 5, 1998
Page        :  48

as being separate, substantially vertical support members, as that nomenclature is used in the present specification.  Rather, they must be regarded as a single member.  Fig. 4 of Weiland thus cannot be regarded as disclosing or suggesting any embodiment having at least two substantially vertical support members.  Even less would the Fig. 4 embodiment be regarded as providing an attachment orifice that is between two members, as also required by claim 1.  Instead, the orifice clearly passes through a single member.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Harry Eberle.  The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Heilmann, Elmendorf, and Weiland do not disclose or suggest the subject matter of claims 1, 2, 7, 8, and 9.  The Eberle Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Heilmann, Elmendorf, and Weiland as would be required to reach the present claimed anchoring biscuit device.

Accordingly, and in view of the foregoing arguments, the newly presented claims and the Declarations supporting patentability that are appended hereto, reconsideration of the rejection of claims 1, 2, 7, 8, and 9 under 35 USC 103(a) as being unpatentable over Heilmann in view of Elmendorf, or, in the alternative, over Heilmann in view of Elmendorf and further in view of Weiland, is respectfully requested, along with confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 49

## Issue 9:

Claims 1, 2, 7, 8, 9, and 10 were rejected under 35 USC 103(a) as being unpatentable over Heilmann in view of Chen, or, in the alternative, in further view of Weiland.

The Examiner has indicated that this rejection is made for the reasons set forth in Issue 8 regarding Elmendorf. In the present instance, the Examiner has not provided any express basis on which Heilmann and Chen are properly combined, as the courts have repeatedly required. See, e.g., *Ex parte Skinner*, 2 USPQ2d 1788, 1790 (B.P.A.I. 1986). The patentee therefore maintains that no motivation is operative in this rejection beyond that articulated under Item 8 for the combination of Heilmann with Elmendorf and, optionally, Weiland. To the contrary, it is submitted that any motivation for the combination with Chen is negated by the structure of the Chen attachment device, including the spacing of the wall tiles away from the underlying support structure, as necessitated for accessing and tightening the securing bolt, as discussed under Item 7 above. Other reasons set forth by the patentee in this section are also as pertinent to impropriety of the combination of Chen with Heilmann as with Smith.

The Patentee also maintains that the combination of Chen with Heilmann is no more availing than the combination of Elmendorf with Heilmann. As set forth above under Issue 8, the patentee maintains that the modification of Heilmann required to provide at least two substantially vertical support members by reducing the thickness of the Heilmann shoulder *d*, as required to reach amended claim 1 (and claims 2 and 7-9

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 50

dependent thereon), would not be made by a skilled artisan, is unreasonably strained, and reflects the operation of impermissible hindsight. Chen in no way remedies such a deficiency. The at least one off-center element required by amended claim 10 also is not disclosed or suggested by Heilmann, even in combination with Chen.

Further, the patentee respectfully submits that the alternative additional combination of Weiland with Heilmann and Chen is no more availing that the combination of Weiland with Heilmann and Elmendorf as discussed in connection with Issue 8.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Harry Eberle. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Heilmann, Chen, and Weiland do not disclose or suggest the subject matter of claims 1, 2, 7, 8, 9, and 10. The Eberle Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Heilmann, Chen, and Weiland as would be required to reach the present claimed anchoring biscuit device.

It is thus submitted that claims 1, 2, 7, 8, 9, and 10, as amended, are not obvious over Heilmann, Chen, and Weiland, whether taken singly or in any combination.

In view of the present claim amendments, the remarks set forth above, and the Declarations in support of patentability submitted herewith, reconsideration of the rejection of claims 1, 2, 7, 8, 9, and 10 under 35 USC 103(a) over Heilmann, Chen, and

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 51

Weiland, and their confirmation, together with allowance of newly presented claims 13-26, are respectfully requested.

## Issue 10:

Claims 3-6 were rejected under 35 USC 103(a) as being unpatentable over Heilmann in view of Elmendorf, or, in the alternative, in further view of Weiland, and further in view of Wothe.

As set forth hereinabove in connection with the rejection of Issue 8, the patentee traverses the Examiner's assertion that the modified Heilmann device discloses the invention as presently claimed. In particular, the patentee maintains that amended claim 1 is not disclosed or suggested by the combination of Heilmann and Elemendorf, or even alternatively in further view of Weiland, for the aforesaid reasons. Under Issue 2 above, the patentee has further differentiated Wothe, which does not cure the fundamental deficiencies of Heilmann, Elmendorf, and Weiland with respect to the features of amended claim 1, from which claims 3-6 depend. Thus, even with the disclosure of a non-circular and elongated slot washer provided by Wothe, claims 3-6 are not disclosed or suggested as the Examiner has alleged.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Harry Eberle. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Heilmann, Elmendorf, Weiland, and Wothe do not disclose or suggest the subject matter of claims 3-6. The Eberle Declaration further

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 52

provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Heilmann, Elmendorf, Weiland, and Wothe, as would be required to reach the present claimed anchoring biscuit device.

Accordingly, reconsideration of the rejection of claims 3-6 under 35 USC 103(a) as being unpatentable over Heilmann in view of Elmendorf, or, in the alternative, in further view of Weiland, and further in view of Wothe, is respectfully requested, along with confirmation of claims 3-6, as amended, over said art..

**Issue 11:**

Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 were rejected under 35 USC 103(a) as being unpatentable over Japanese Patent Publication JP 04-371657 to Hashida, or, in the alternative, Hashida in view of Weiland.

In the present instance, the Examiner has provided a translation apparently only of the abstract of Hashida, and not of the full publication. As best understood by the Patent Owner, Hashida provides an attachment of stone boards to a wall and a fitting useful therefor.

It is respectfully submitted that the present office action reflects a practice that the Board of Patent Appeals and Interferences has eschewed as being improper, namely a rejection predicated on an English-language translation solely of an abstract of a foreign-

IC-App-0864

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page      : 53

language reference.  In *Ex parte Jones*, 62 U.S.P.Q.2D (BNA) 1206, 1208 (BPAI 2001),

the Board wrote as follows:

> The Board of Patent Appeals and Interferences continues to have
> recurring problems in resolving *ex parte* appeals which come before it.
> One continuing recurring problem is the citation and reliance by
> examiners on abstracts, without citation and reliance on the underlying
> scientific document.

> In this appeal, the examiner relied upon abstracts of three technical
> journal articles without referring to translations of the underlying
> documents.  Citation of an abstract without citation and reliance on the
> underlying scientific document itself is generally inappropriate where
> both the abstract and the underlying document are prior art. Abstracts
> often are not written by the author of the underlying document and
> may be erroneous.  It is our opinion that a proper examination under
> 37 CFR § 1.104 should be based on the underlying documents and
> translations, where needed.  Accordingly, the preferred practice is for
> the examiner to cite and rely on the underlying document.

> In the event a reference is in a foreign language, if the applicant does
> not wish to expend resources to obtain a translation, the applicant may
> wish to request the examiner to supply a translation.  If a translation is
> not supplied by the examiner, the applicant may wish to consider
> seeking supervisory relief by way of a petition (37 C.F.R. § 1.181) to
> have the examiner directed to obtain and supply a translation. . . . In
> our view, obtaining translations is the responsibility of the examiner.
> A review by the examiner and applicant of translations of the prior art
> relied upon in support of the examiner's rejection may supply
> additional relevant evidence as to whether there is a legally sufficient
> reason, suggestion, teaching or motivation to combine the teachings of
> the five technical journal articles.  Moreover, an evaluation of
> translations may eliminate the need for an appeal.

It is well established that a reference being applied in a rejection must be

considered for what it would suggest, as a whole, to a person having ordinary skill in the

ReExamination of USP 6,402,415                                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  54

art.  Clearly, a rejection based on the translation of a small portion of such a reference cannot be regarded as being based on what the reference as a whole teaches.

The need for a translation in the present instance is particularly apparent in a comparison of Figs. 2 and 3 of Hashida.  The patent owner submits that these Figures demonstrate, as best as can be ascertained without any underlying textual description, that the Hashida fastener is a two-part device that functions as a turn-button.  In Figs. 2 and 3, portions 22 and 23 are differentiated by the crosshatching only of portion 22.  By way of contrast, the present claimed anchoring biscuit device has vertical support members that are attached to the underside of the top element.  The claimed device is preferably fabricated as a unitary object.  In the Hashida device, the spacer portion (22) is used on a vertical surface to space individually installed stone panels.  After a given stone is in position, the aligner portion (23) is rotated to lock in that stone and place the aligner into position to receive the next, adjacent stone.   The procedure is repeated as subsequent stones are installed and the desired height is obtained.  With this system, fasteners are put into position prior to installing the stone, thus assuring straight lines for grouting.  This application method would not prove practical for surfaces that are installed horizontally, such as decks, because the space required to accommodate the spacer and rotating portion for a screw would result in an excessively wide gap.  Such a width would be regarded as unattractive and unsafe for a decking installation.

This usage of fitting 20 of Hashida differentiates its structure from that of the Eberle anchoring biscuit device.  Fitting 20 has only a single vertical member 22 that is

IC-App-0866

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 55

not attached to the top element 23.  Versions of the Eberle device having two vertical

support members with an attachment orifice between inherently could not function in

Hashida's manner, because there would be no means of securing the top element and

vertical support members with a screw or other fastener.  In addition, Hashida's two-

piece fastener is more complicated and difficult to fabricate than a single-piece device.

The installation would require added extraneous steps during the deck installation

process, including the rotation of the top element into position and a final tightening of

the screw attachment that would be needed thereafter to remove play and assure adequate

holding force.  The attachment would not be as strong, because the width of the top

element would be limited to the acceptable gap between adjacent deck boards, thus

severely restricting the possible bearing area of the device.  The Hashida fastener itself

would have a marked weakness and propensity to break due to flexure along a line across

the narrow width dimension of the top element at the screw orifice.  On the other hand,

the vertical support members of the Eberle device act in concert with the top element to

limit flexure and provide enhanced strength.  The Hashida device thus is not capable of

adequately providing the Eberle support function.

Accordingly, it is respectfully submitted that a person having ordinary skill in the

art would have no motivation to carry out the substantial modifications of any device

constructed in accordance with the Hashida reference singly or in combination with

Weiland, as would be required to reach the claimed device.  Like Chen, Hashida teaches

a device that must be constructed of suitable materials and given sufficient heft to secure

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 56

stone wall panels in two dimensions.  Any such device must both restrain the panels from becoming detached from the wall structure behind them and carry the static vertical loading of the tiles.  Hashida teaches only a generally T-shaped device with a single projection from a top element.  The Weiland element has multiple projections, but they are perpendicularly oriented so that they can engage relatively light wall tiles, not heavy stone panels, at their corners.  The perpendicular projections of the Weiland device clearly prevent it from rotating in the manner in which the Hashida element is used

Specifically, Hashida's fitting 20 is clearly differentiated from the present claimed anchoring biscuit device.  Fitting 20 has only a single vertical member 22, whereas amended claims 1-9 call for at least two substantially vertical support members and claims 14-19 call for exactly two such vertical support members.  The Eberle device, having at least two members, inherently could not function in the manner proposed for the Hashida device as a result of its structure.

Like Chen, Hashida teaches a device that must be constructed of suitable materials and given sufficient heft to secure stone wall panels in two dimensions.  Any such device must both restrain the panels from becoming detached from the wall structure behind them and carry the static vertical loading of the tiles.  Hashida teaches only a generally T-shaped device with a single projection from a top element.  The Weiland element has multiple projections, but they are perpendicularly oriented so that they can engage relatively light wall tiles, not heavy stone panels, at their corners.  The

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 57

perpendicular projections of the Weiland device clearly prevent it from rotating in the manner in which the Hashida element is used

It is further submitted that Hashida, whether taken singly or in combination with Weiland, also fails to disclose or suggest the subject matter of claims 10-11 as amended, or new claims 20-26. Claims 10-11 now call for at least one off-center vertical support member. On the other hand, as best understood by the patentee, spacer 22 of the Hashida device is located on-center, not off-center, and the Examiner has not pointed to any disclosure or suggestion to the contrary or any suggestion that Hashida (even in combination with Weiland) be so modified. The same considerations are submitted to apply with equal force to claims 20-26, which require exactly one off-center vertical support.

The patentee also maintains that the considerations set forth above under Issue 7 regarding the skilled person's motivation to consider the Chen reference relating to stone panel wall construction also apply to Hashida. That is to say, a person having ordinary skill in the art to which the Eberle device pertains would not have been motivated to look to hardware and techniques used in constructing and supporting massive stone walls for combination with hardware used instead for the radially different problem of attaching decking boards. Accordingly, it is further submitted that the combination of Weiland and Hashida is not a proper predicate for the present obviousness rejection.

The Hashida prior art device, like Heilmann's metal device, prevents or inhibits insertion of an attachment screw at an angle to catch both the deck board and the board

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam      : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page        : 58

being attached as in the present invention device.  Thus, this structural difference is significant.  The new claims expressly indicate that the attachment orifice and the support member(s) are separate and apart from one another.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Harry Eberle.  The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Hashida and Weiland do not disclose or suggest the subject matter of claims 1, 2, 3, 5, 7, 8, 9, 10 and 11.  The Eberle Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Hashida and Weiland as would be required to reach the present claimed anchoring biscuit device.

In view of the foregoing remarks, the present claim amendment, and the Declarations supporting patentability that are appended hereto, it is submitted that claims 1, 2, 3, 5, 7, 8, 9, 10, and 11, as amended, are not obvious over Hashida and Weiland.

Accordingly, reconsideration of the rejection under 35 USC 103(a) of amended claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 as being unpatentable over Hashida, or in the alternative, Hashida in view of Weiland, is respectfully requested, along with confirmation of said claims and allowance of new claims 13-26.  In addition, and in accordance with *Ex parte Jones*, *supra*, the patentee respectfully requests that the Examiner obtain and provide a translation of the full Hashida reference and provide appropriate citation to that document to establish the propriety of any rejection based on

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 59

Hashida, which has not previously been cited as prior art in the present proceeding or in the original prosecution of the subject patent.

## Issue 12:

Claims 4, 6, and 12 were rejected under 35 USC 103(a) as being unpatentable over Hashida in view of Wothe, or, in the alternative, Hashida in view of Weiland and further in view of Wothe.

The examiner has asserted that the Hashida device as modified discloses the invention substantially as claimed, less a non-circular and elongated slot. For at least the reasons set forth above under Issue 11, the patentee respectfully disagrees, and maintains that amended claims 1 and 10 are patentable over Hashida, either singly or in combination with Weiland.

Claims 4 and 6, and 12 respectively depend on claims 1 and 10, and further require the aforementioned non-circular and elongated slot. As set forth under Issue 2 above, any disclosure by Wothe of a non-circular and elongated slot does not cure the lack of disclosure of other features of claims 1 and 10. The patentee thus maintains that claims 4, 6, and 12 are not rendered obvious by any combination of Hashida, Weiland, and Wolthe.

Accordingly, reconsideration of the rejection under 35 USC 103(a) of amended claims 4, 6, and 12 as being unpatentable over Hashida, or in the alternative, Hashida in

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 60

view of Weiland, in further view of Wothe, is respectfully requested, along with

confirmation of said claims.

**Further Remarks:**

The Examiner's attention is respectfully drawn to the Rule 132 Declarations of

Sabin and Eberle.  Set forth therein is further evidence tending to establish the novelty

and non-obviousness of the present patent claims over the prior art applied.  In addition,

these declarations provide evidence of the industry recognition of the EB-TY®

PRODUCT as satisfying a long-felt need in the art and its commercial acceptance and

success.

In view of the remarks set forth herein, the amendment of issued claims 1. 2, 7, 8,

and 10, and the Rule 132 Declarations of Sabin and Eberle submitted herewith,

reconsideration of the rejection of issued claims 1-12, and their confirmation, together

with allowance of newly presented claims 13-26, are earnestly solicited.

Date: Feb 9 2007

Kenneth P. Glynn
Reg. No. 26,893
Attorney for Applicant
24 Mine Street
Flemington, NJ 08822
(908) 788-0077 Tele
(908) 788-3999 Fax

Enclosures

ReExamination of USP 6,402,415                           Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 61



# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## CENTRAL REEXAMINATION UNIT

## EX PARTE REEXAMINATION CONTROL NUMBER 90/007,661

In re application of:                          : Examiner:
                                              :
HARRY W. EBERLE, III                          : JEFFREY R. JASTRZAB
                                              :
Serial No.  09/186,741                        : Central Reexamination Unit: 3993
                                              :
Filing Date: November 5, 1998                 : Attorney Docket No.
                                              :
Priority Date: March 5, 1997                  :
                                              :
For:    ANCHORING BISCUIT DEVICE              : HWE-105C

**U.S. Patent No. 6,402,415 B1**

 Issue Date: June 11, 2002


Honorable Commissioner of Patents
P.O. BOX 1450
Alexandria, VA 22313-1450

## CERTIFICATION OF MAILING BY EXPRESS MAIL

    The undersigned hereby certifies that this document was delivered to the United States Post Office in Flemington, New Jersey 08822 between 7:30 a.m. and 4:45 p.m. on _____ *Feb 9 2007* _____ as EXPRESS MAIL. The undersigned further declares that this Certification is made with the knowledge that willful false statements are punishable by fine or imprisonment, or both, under applicable sections of United States law, and that willful false statements made before the United States Patent and Trademark Office may jeopardize the validity of the application or issuing patent related thereto.

EM RRR EB 181517550 US

Kenneth P. Glynn