

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

### CENTRAL REEXAMINATION UNIT

### EX PARTE REEXAMINATION CONTROL NUMBER 90/007,661

| | |
|---|---|
| In re application of: | : Examiner: |
| | : |
| HARRY W. EBERLE, III | : JEFFREY R. JASTRZAB |
| | : |
| Serial No. 09/186,741 | : Central Reexamination Unit: 3993 |
| | : |
| Filing Date: November 5, 1998 | : Attorney Docket No. HWE-105C |
| | : |
| Priority Date: March 5, 1997 | : |
| | : |
| For: ANCHORING BISCUIT DEVICE | : HWE-105C |

**U.S. Patent No. 6,402,415 B1**

Issue Date: June 11, 2002

Honorable Commissioner of Patents and Trademarks
P. O. Box 1450
Alexandria, VA 22313-1450

### DECLARATION UNDER 37 CFR 1.132 OF HARRY W. EBERLE, III

I, Harry W. Eberle, III, am the inventor in US Patent No. 6,402,415 that is the subject of the above-referenced reexamination proceeding, and wish to state as follows:

1.       I have been involved in the construction industry for more than 45 years and have been the owner and construction manager of Eberle Builders, Inc. and related companies for more than 18 years. My family has been in the hardware business for

1

IC-App-0874

decades. During my career I have participated in the construction of numerous decks, such as those typically associated with single and multiple family residences and have also supervised the construction of such decks.

2.    I have reviewed and am familiar with the Office Action dated December 14, 2006 in the above-referenced reexamination proceeding, as well as the prior art references cited therein, namely US Patent No. 2,201,129 to Weiland; German Patent Document DE372,483 to Wothe; US Patent No. 1,714,738 to Smith; US Patent No. 2,337,156 to Elmendorf; US Patent 695,722 to Heilmann; US Patent No. 5,619,834 to Chen; and the Japanese Patent Publication JP 04-371657 to Hashida. With respect to the Hashida reference, I read the English translation of the abstract, as provided by the USPTO, and reviewed the patent drawing figures.

3.    I have traveled around the country promoting my new product line of "EB·TY" deck fastener products, including products delineated by the above-identified US Patent No. 6,402,415.

4.    I am familiar with the EB·TY® Hidden Deck Fasteners sold by my company, Blue Heron Enterprises, LLC. These EB·TY® Hidden Deck Fasteners (hereinafter "the EB·TY® PRODUCT") are advantageously employed for joining together two adjacent boards and a support board, the adjacent boards being in the same plane and having in their sides pre-cut biscuit receiving slots. They are typically used in the construction of exterior decks with a plurality of wood or wood-like deck boards disposed in parallel alignment to form the deck surface. The deck boards in such a construction rest on, and are supported by, a series of parallel joists, which are most

2

commonly installed on 12-24 inch center to center spacing.

   5.  The EB·TY® PRODUCT has a substantially flat horizontal top element having a generally biscuit-shaped top view configuration having opposite side walls in the shape of arcs from a top view, the arcs having predetermined radii and arc lengths, and opposite end walls. The respective side walls are dimensioned and positioned to permit them to be inserted into biscuit receiving slots. The top element has a center line extending between the end walls. The EB·TY® PRODUCT has two substantially vertical support members attached to an underside of the top element along the center line of the top element. The support members extend perpendicularly downwardly from the top element for a predetermined length in a vertical plane that is aligned with, and directly under, said center line. The two vertical support members are substantially flat and in the vertical plane. The EB·TY® PRODUCT further includes an attachment orifice located on the top element between the two vertical support members. The EB·TY® PRODUCT is typically installed in a deck system with its opposite side walls inserted into respective biscuit-receiving slots cut in the sides of the adjacent boards. A fastener, such as a deck screw, is driven through the orifice and into a support board, such as a joist, underneath the deck. The two adjacent boards and the support board are thereby secured together. The predetermined length permits the EB·TY® PRODUCT to maintain the top element in a predetermined position during use for joining the three boards. The thickness of the vertical support members establishes a desired gap between the adjacent boards. In a typical exterior installation, the gap is adequate to permit moisture from rain, snow, or the like to drain through, but not large enough to create a

3

IC-App-0876

safety hazard. The EB·TY® PRODUCT is described and claimed by my U.S. Patent No. 6,402,415 B1. The drawing figures of that patent generally depict the commercial embodiment of the EB·TY® PRODUCT.

6.     At the time of my invention and as my EB·TY® PRODUCT thereafter came to the market, and as a result of my work in the deck construction industry, I was generally familiar with a wide variety of commercially available systems and techniques used for building conventional decks, such as those often associated with single and multiple family residential structures, that were then available and in commercial use.

7.     I have constructed decks and attached decking boards with EB·TY® PRODUCT in the manner described in §§4-5 above, as well as observing and supervising the construction of such decks. These experiences have given me an intimate understanding of the installation and functionality of the EB·TY PRODUCT® in this end use.

8.     Based on my knowledge and experience, at the time I made the invention that is the subject of US Patent No. 6,402,415, and continuing through to the time at which I brought my EB·TY® PRODUCT to the market, I was not aware of any commercial deck attachment system or technique used for attaching deck boards to support structure in conventional deck construction that that did not involve one or more of the following techniques for securing the deck boards: (i) Driving nails, screws, or like fasteners generally downward though the finish top surface of the deck boards, leaving an indentation or marring of the top surface; (ii) Driving nails, screws, or like fasteners generally downward though the finish top surface of the deck boards, countersinking the

4

IC-App-0877

head of the fasteners and filling the resulting hole with a filler or wood plug; (iii) Driving the prongs of a pronged metal fastener into the side of one of the adjacent deck boards and thereafter attaching the other adjacent deck board; or (iv) Driving nails, screws, or like fasteners generally upward from below the deck, through a bracket or similar attachment, and into the underside of the deck boards. All of the foregoing processes have detrimental consequences that are considered undesirable in the marketplace.

9. Based on my knowledge and experience, the presence of visible screws, nails, or like fasteners in the finish top surface of deck boards has been and is presently considered in the marketplace to be extremely undesirable and likely to lead to: (i) an aesthetically undesirable appearance; (ii) degradation or decay of the deck boards due to the accumulation of water or other foreign matter in the indentations left by the fasteners; (iii) in the case of nailing, the unsafe and aesthetically displeasing condition resulting from popping nails, and (iv) the chance of personal injury due to splinters generated at the indentation. These detriments are regarded by both builders and property owners as being especially undesirable in installations that use expensive or exotic hardwood deck boards.

10. Based on my knowledge and experience, the installation of deck boards using any technique that involves fasteners driven generally downward through the finish surface of the boards and countersinking and filling the resulting holes with a filler or wood plug has been and presently is considered undesirable for many reasons, including the time and expense required to accomplish the filling operation and the likelihood that the filling may become dislodged or degraded after exposure to the elements. It is also

IC-App-0878

my experience that both plugged and filled holes ordinarily remain visible in the finished surface even after painting, staining, or other like finishing operation, since the plugging or filling material does accepts the finishing material differently than the remainder of the surface. Such a variation in appearance is considered undesirable in the marketplace. It is further my experience that over time, these differences ordinarily become even more noticeable.

11.     Based on my knowledge and experience, the installation of deck boards using any technique that involves fasteners driven generally upward from beneath the deck surface has been and presently is considered quite undesirable, since such installation requires added time, expense, and inconvenience. In some cases, attachment from below the deck surface is not feasible, since there is limited clearance between the bottom of the deck surface and joists, and the ground beneath, making it difficult or impossible for a carpenter to gain access and/or to have room to maneuver tools such as screw guns, nail guns, hammers, or screwdrivers needed to drive the fastener. Even when access to the underside is available, the installer is often forced into an awkward, uncomfortable position. The result is serious fatigue and discomfort from having to work overhead and hold the needed tools, fasteners, and workpieces at varying heights. Working for long periods either in a cramped position with undesirably low head clearance or off a ladder only increases stress and fatigue, and even the likelihood of an accident.

12.     Based on my knowledge and experience, the installation of deck boards using a metal pronged fastener driven into the side of a deck board is considered

6

IC-App-0879

undesirable, since driving such fasteners quite frequently causes splitting of the deck board, which weakens the board and its attachment and is aesthetically undesirable, especially for decks constructed with expensive or exotic hardwood and similar deck materials.

13.    Decks installed using my EB-TY® PRODUCT do not suffer from any of the aforementioned defects, inasmuch as no fasteners need to be driven either downward through the finish surface of the deck boards or upward from beneath the deck surface or into the side of the deck boards. Even without these earlier forms of attachment of the deck boards to the supporting joists or like structure, the deck boards are securely and durably attached and the installation is aesthetically pleasing using the EB-TY® PRODUCT.

14.    Based on my knowledge and experience, the installation of deck boards using the EB-TY® PRODUCT ensures that adjacent boards are installed in substantially parallel relationship with a substantially identical spacing between boards throughout the entire deck surface. This spacing is established by the uniform thickness of the vertical support members of the EB-TY® PRODUCT. By way of contrast, none of the aforementioned alternative fastening methods automatically produces this aesthetically desirable uniform spacing. Instead, when the alternative methods are used, one or more separate and distinct operations and steps are required to ensure that adjacent boards are disposed and secured with substantially parallel alignment and uniform spacing. To maintain a uniform spacing, either temporary or permanent spacers ordinarily must be placed between adjacent boards, requiring additional time and effort during installation.

7

IC-App-0880

It is thus my experience that the installation process for a deck surface is far more efficient and rapid if carried out using the EB-TY® PRODUCT system.

15.     US Patent No. 2,201,129 to Weiland relates a tiling system that includes means for positive mechanical attachment of ceramic or composition tiles to a surface without use of cement. The Weiland attachment device has a structure that is entirely different from the structure of my EB-TY® PRODUCT, because the Weiland device is intended to secure tiles using a slot cut in the corner of each tile. All the forms of the attachment device shown in Weiland's figures include multiple projections that are oriented in perpendicular directions. As a result of these perpendicular projections, the Weiland device inherently cannot engage a workpiece (such as a deck board) using slots in the side of the workpiece. That is to say, Weiland's perpendicularly-oriented projections prevent the sides of the device from being inserted in side slots. If the perpendicular projections were removed to leave only linearly aligned projections, the Weiland device would lose its ability to carry out the intended functions of aligning and securing tiles at their intersections. My device, on the other hand, has vertical support members that are attached to the underside of the top element along its center line. The vertical elements extend perpendicularly downwardly from the top element in a vertical plane that is aligned with, and directly under, the center line. This configuration permits the side walls of the device to be inserted into biscuit receiving slots cut in the sides of adjacent boards during use of the device for joining and securing the adjacent boards together with a support board.

16.     Based on my knowledge and experience, any form of deck construction in

8

which deck boards could be secured to their supporting joists only at their corners would be completely unsatisfactory. Deck boards are often as much as 16 feet or longer, and so would be subject to marked deformation, warping, bowing, or the like if secured only at their corners. This would create an unsightly appearance and a safety hazard. Instead, building codes and sound construction practice ordinarily dictate that deck boards we attached at every point that they cross the supporting joists. Therefore, the Weiland devices, whose configuration limits their use to corners, could not be used satisfactorily for deck construction.

17. German Patent Document DE372,483 to Wothe relates to a screw supporting plate used in conjunction with a screw that attaches a beam for a crossing wood member. Based on my experience and knowledge, a person having ordinary skill in the art of wooden deck construction would recognize that the screw supporting plate of the Wothe reference clearly engages only the cross-bar member "b" of Figs. 1-2 in Wothe and the attaching screw itself. The plate does not play any direct role in the mutual engagement of multiple boards. By way of contrast, my anchoring device directly engages two adjacent decking boards and is attached to the support board member (e.g., a joist) by a fastener such as a screw. As a result, the Wothe reference, whether taken singly or in combination with Weiland, does not provide any disclosure or suggestion of an anchoring biscuit device having vertical support members in a vertical plane that is aligned with the center line of the top element of the anchoring device. Based on my experience and knowledge, a person having ordinary skill in the art of wooden deck construction, even knowing both the Weiland and Wothe references, would not have any

9

IC-App-0882

motivation to reconfigure the Weiland device by removing perpendicularly oriented downward projections and provide only projections aligned in a single vertical plane.

18.     US Patent 695,722 to Heilmann is directed to a fireproof covering system for frame structures that is said to cause the structure to have the appearance of a stone building.  The covering comprises blocks, plates, or slabs.  The construction disclosed by Heilmann entails use of a generally T-shaped washer, as depicted by Fig. 4, that engages grooves in the sides of the slabs, plates, or blocks used for the wall structure.

19.     The Heilmann reference teaches that the joints between the adjoining blocks should be filled with cement mortar.  In the first step of Heilmann's wall construction, the lower blocks are set in cement mortar.  The Fig. 4 washers are then placed in grooves in the sides of the lower blocks and secured by nails, screws, or other fasteners.  The connection is described as "tongue and groove."  Mortar is spread in the grooves of each course before the next course is laid.  Thereafter, all the remainder of the joint, apart from the location of the washers, is filled with mortar, e.g. by a pointing operation.  The mortar filling is said to provide a firm and solid connection of the blocks with each other, so that a practically monolithic facing is produced.

20.     Based on my knowledge and experience, a person having ordinary skill in the art would recognize the substantial filling of the Heilmann joints with mortar or the like as being essential for the wall covering to retain its fireproofing ability.  A skilled artisan would recognize that fully enclosing the fasteners in a mortar or cement filling enhances fireproofing.  On the other hand, the skilled artisan would recognize that presence of air pockets would result in a degraded firewall having an unacceptable heat

10

IC-App-0883

rating.

21.    Based on my knowledge and experience, a person having ordinary skill in the art would have no motivation to carry out the modification of Heilmann proposed by the Examiner, wherein the thickness of the downwardly projecting member of the Heilmann T-shaped washer would be reduced sufficiently to convert the single member into two such members. Such a reduction would require that the missing middle portion be located where the original perforation or hole (e.g., feature $d'$ of Fig. 3) was situated. If the Heilmann washer were so modified, it would no longer have a hole that passes "through the main body of the washers and through the ribs or shoulders $d$" that Heilmann discloses. Instead, it would have a hole only through what Heilmann calls the main body. The hole clearly has to be small enough that the head of the fastener could not pass through, lest the fastening function be defeated. However, to form two downwardly projecting members, the thickness of modified rib $d$ would then be constrained to be less than the shank diameter of the fastener that was intended to be used with the washer. Therefore, the possible gap between blocks would be severely constrained to the very small values imposed by the diameters of suitable fasteners. By way of contrast, the thickness of the vertical support members of the EB-TY® PRODUCT is selected to produce a desired gap between adjacent gap boards. Such a gap, for example, provides proper drainage from the deck without creating a safety hazard from an excessive gap. By employing an attachment orifice and space for a fastener that is separate from the vertical support members, the design of the EB-TY® PRODUCT allows the desired gap to be selected without any such constraint.

11

IC-App-0884

22.	Based on my knowledge and experience, a person having ordinary skill in the art would further be discouraged from carrying out the Examiner's proposed modification of Heilmann discussed in §21 above, because of the highly deleterious effect of having a fastener shank diameter substantially greater than the gap between blocks. The driven fastener, being thicker than the downwardly projecting rib of the washer itself, would inherently come into contact with the edges of both adjacent panel members. These panels are typically a hard and brittle material (e.g. stone or concrete slabs or composition tiles). In some cases, a typical metal fastener (e.g. screw or nail) would be unable to penetrate the facing block. In others, the facing block would be highly prone to severe edge damage. In still other cases, screw threads would be abraded, so the screw would lose its holding power. All these eventualities are clearly untenable. None is compatible with a strong, secure joint. Accordingly, the patentee maintains that a person having ordinary skill in the art would be motivated not to carry out the Examiner's proposed extensive reconstruction, recognizing that such a reconstruction would render the Heilmann device inoperative for its appointed function.

23.	US Patent No. 2,337,156 to Elmendorf provides a system for laying a flooring of wood tiles on a wood or concrete subfloor without the necessity of employing tongue and groove joints between meeting tiles, and with the assurance that the upper faces of meeting tiles lie in the same plane. Elmendorf employs keys in the form of little plates or disks made of metal, hard fiber board, or other strong, tough material, and teaches that these keys be fitted into edge slots in the tiles. The only constructions depicted by Elmendort place these keys at vertices at which there is at least one 90°

12

IC-App-0885

interior or exterior angle provided by a corner of a generally square or rectangular tile. The Elmendorf key is substantially flat and does not include any downward projection. Elmendorf teaches a construction in which adjacent tiles are installed in abutting position.

24. Based on my knowledge and experience, a person having ordinary skill in the art and knowing of Heilmann, Elmendorf, and Weiland would not have any motivation to combine these references to reach the Eberle biscuit attachment device. Heilmann is directed to a stone wall construction with perceptible, mortar-filled joints, whereas Elmendorf and Weiland both concern wood flooring with tiles or boards installed substantially in abutment. The fasteners in the Heilmann installation are required to provide support in both horizontal and vertical directions. That is to say, the fasteners: (i) secure the stone panels so they do not fall horizontally away from the wall; and (ii) carry at least a portion of the vertical loading of the panels. In contrast, the fasteners in both Elmendorf and Weiland need only provide restraint against movement of the floor boards or tiles in the horizontal plane of the floor. In addition, Heilmann and Weiland provide generally T-shaped fasteners with rectangular or rectilinear top shapes that engage their respective workpieces along their sides, whereas Elmendorf uses generally round shaped, flat washer-like structure that engages the floor pieces only at vertices at which there are at least two pieces having corners with 90° interior or exterior angles. The reasons included in §16 above that establish the need to secure deck boards along their length, and not just at the corners, apply equally to the combination of Elemendorf with Heilmann and Weiland. In any event, there is no teaching or suggestion to make this modification of the Heilmann disclosure, even in light of the Elmendorf or

13

IC-App-0886

the Elmendorf and Weiland teachings.

25.     US Patent No. 5,619,834 to Chen provides a slate positioning device comprising a positioning plate having a horizontal plate and first and second longitudinal plates at two ends of the horizontal plate.  The first longitudinal plate has a hole, and the second longitudinal plate has upper and lower convex edges.  A screw rod passes through the hole and the slot to fasten the first longitudinal plate and the pad plate.  The upper convex edge and lower convex edges are inserted into corresponding grooves of generally rectangular slates at their corners.   The Chen device necessarily includes multiple pieces to provide its adjustability, rendering it far more complicated to fabricate and install than the EB-TY® PRODUCT.

26.     A critical feature of the Chen slate positioning device is the presence and size of its horizontal plate structure, which is needed so that the covering slates are held away from the underlying wall structure.  Without this spacing of the slates away from the wall, it would be impossible to insert and secure bolt 400 of Chen's Figs. 6-8 during the intended use of the Chen device.  The attachment of this bolt to the underlying wall structure must be completely secure, because the Chen devices and bolts must support the full static vertical loading of the wall slates.  The Chen device thus provides an altogether different function than the EB-TY® PRODUCT anchoring biscuit device, which does not carry any substantial vertical load, but serves only to position the deck boards and secure them to the underlying floor joists on which they rest.

27.     The Chen bracket also differs from the EB-TY® PRODUCT anchoring biscuit device in that the hole through which bolt 400 passes is not located in the top

14

IC-App-0887

element between vertical support members. Instead, it is located in a bottom plate. Thus, the Chen device would not function in its intended manner if the bottom plate were eliminated and the hole for bolt 400 were moved to its top plate. If the Chen device were constructed in this configuration, the gap between adjacent slates in the final installation would have to be large enough to give access for tightening the bolt, an impractical requirement.

28.    Based on my knowledge and experience in the construction and installation of both wood flooring and exterior decks, a person having ordinary skill in the deck construction art would find no motivation to combine the Heilmann and Chen references and modify any fastener they suggest to reach the Eberle anchoring biscuit device. The functioning of the Chen and Heilmann devices and the material and heft they need both to secure relatively wall panels and carry static vertical loading are so radically different from the requirements for deck construction that a skilled artisan would not regard them as being analogous and would, in any event, find no motivation to combine them to provide an anchoring biscuit device dimensioned and constructed for application in deck building.

29.    Japanese Patent Publication JP 04-371657 to Hashida, as best I am able to understand from the patent drawing figures and the portion provided in English translation, provides an attachment of stone boards to a wall and a fitting used to make this attachment. As best I can ascertain without having the full text of the Hashida reference available, these Figures lead me to regard the Hashida fastener as being a two-part device that functions as a turn-button. In Figs. 2 and 3, portions 22 and 23 are

15

IC-App-0888

differentiated by the crosshatching only of portion 22. By way of contrast, my anchoring biscuit device has vertical support members that are attached to the underside of the top element. My device is preferably fabricated as a unitary object. In the Hashida device, the spacer portion (22) is used on a vertical surface to space individually installed stone panels. After a given stone is in position, the aligner portion (23) is rotated to lock in that stone and place the aligner into position to receive the next, adjacent stone. The procedure is repeated as subsequent stones are installed and the desired height is obtained. With this system, fasteners are put into position prior to installing the stone, thus assuring straight lines for grouting. This application method would not prove practical for surfaces that are installed horizontally, such as decks, because the space required to accommodate the spacer and rotating portion for a screw would result in an excessively wide gap. Such a width would be regarded as unattractive and unsafe for a decking installation.

30. This usage of fitting 20 of Hashida differentiates its structure from that of the Eberle anchoring biscuit device. Fitting 20 has only a single vertical member 22 that is not attached to the top element 23. Versions of the Eberle device having two vertical support members with an attachment orifice between inherently could not function in Hashida's manner, because there would be no means of securing the top element and vertical support members with a screw or other fastener. In addition, Hashida's two-piece fastener is more complicated and difficult to fabricate than a single-piece device. The installation would require added extraneous steps during the deck installation process, including the rotation of the top element into position and a final tightening of

16

the screw attachment that would be needed thereafter to remove play and assure adequate holding force. The attachment would not be as strong, because the width of the top element would be limited to the acceptable gap between adjacent deck boards, thus severely restricting the possible bearing area of the device. The Hashida fastener itself would have a marked weakness and propensity to break due to flexure along a line across the narrow width dimension of the top element at the screw orifice. On the other hand, the vertical support members of the Eberle device act in concert with the top element to limit flexure and provide enhanced strength. The Hashida device thus is not capable of adequately providing the Eberle support function. Accordingly a person having ordinary skill in the art would have no motivation to carry out the substantial modifications of the Hashida structure that would be required to reach my device.

31.     Based on my knowledge and experience, a person having ordinary skill in the art would have no motivation to modify any device made in accordance with the teachings of Hashida singly or in combination with Weiland in the manner that would be needed to reach the EB·TY® PRODUCT. Like Chen, Hashida teaches a device that must be constructed of suitable materials and given sufficient heft to secure stone wall panels in two dimensions. Any such device must both restrain the panels from becoming detached from the wall structure behind them and carry the static vertical loading of the tiles. Hashida teaches only a generally T-shaped device with a single projection from a top element. The Weiland element has multiple projections, but they are perpendicularly oriented so that they can engage relatively light wall tiles, not heavy stone panels, at their corners. The perpendicular projections of the Weiland device clearly prevent it from

17

IC-App-0890

rotating in the manner in which the Hashida element is used.

32.     The EB·TY® PRODUCT described by my U. S. Patent No. 6,402,415 B1 has received, and continues to receive, significant recognition within the marketplace. The EB·TY® PRODUCT's use in deck construction has been the subject of more than twenty (20) articles in magazines widely circulated among homeowners; hobbyists; and architects, designers and builders of decks and similar structures.  Among these articles are the following, which are included as exhibits to this declaration:

a)  Decks Sought-After as an option – <u>Builder Developer Magazine</u> 2005 (Exhibit A);

b)  25 Years of Innovation – Decks – <u>This Old House Magazine</u> 25th Anniversary 2005 (Exhibit B);

c)  Parksite Group – EB-TY – 2005 (Exhibit C);

d)  Hidden Deck Fasteners – <u>Remodeling Magazine</u> 2005 (Exhibit D);

e)  "Tools and Materials", <u>Fine Homebuilding</u>, March 1998, No. 114, Pages 132 through 134 (Exhibit E);

f)  "Almost Invisible", <u>Building Products</u>, May/June 1998, Page 141 (Exhibit F);

g)  "Innovative Tools and Materials", <u>Journal of Light Construction</u>, July 1998, Page 39 (Exhibit G);

h)  "Construction Innovation Awards", <u>CBTC Expo Program Guide</u>, October 23 and 24, 1998, two pages (Exhibit H);

i)  "Decks for Decades", <u>Garden, Deck and Landscape</u>, Fall 1998, Page 34

18

IC-App-0891

through 39 (Exhibit I); and

j) "Better Decks = Higher Profits," <u>Professional Deck Builder</u>, January/February 2007 (Exhibit J).

33. Industry recognition and acceptance of my EB·TY® PRODUCT is further evidenced by awards I have received for the product, including:

a) 1998 Construction Innovation Award from <u>The Journal of Light Construction</u> (Award Certificate – Exhibit K); and

b) MVP Award – Hanley Wood Publications 2005 (Exhibit L).

34. Still further evidence of the industry recognition and acceptance of my EB·TY® PRODUCT is demonstrated by the following television and radio broadcasts, which have featured the product and demonstrated its use in deck construction:

a) "Men In Tool Belts-Deck" – The Learning Channel (5 national broadcasts 1998-2000);

b) "This Old House" – PBS and A&E (3 national broadcasts 2004);

c) "Designing Spaces" – The Learning Channel (1 national broadcast 2006);

d) "Designing Spaces" – (18 independent station broadcasts 2006); and

e) "Ask Andrea" – Nationally syndicated radio program (1 national broadcast, 156 markets – 2005).

35. Submitted herewith for the convenience of the USPTO is a copy of an EB·TY® PRODUCT Demo Photo CD (Exhibit M); a copy of a VCR Tape of the aforementioned entitled "Men in Toolbelts-Deck" program (Exhibit N); and a copy of a DVD of the aforementioned Designing Spaces TV program (Exhibit O). These exhibits

19

IC-App-0892

will illustrate more vividly for the Examiner the installation and functioning of the EB·TY products.

36.    My EB-TY® PRODUCT was introduced commercially in 1998, resulting in first-year sales of more than 500,000 units. Sales have increased each year since, reaching an annual rate of more than 9,000,000 units in 2006. A total of about 45,000,000 of the units described and claimed by my US Patent No. 6,402,415 have been sold to date.

37.    The foregoing sales of the EB-TY® PRODUCT has been accomplished without expending of any significant marketing or advertising funds and without any pre-existing sales force. I attribute its continuing success in the marketplace to its cost effectiveness, the technical ease and convenience of installing decks with it, the aesthetically pleasing appearance of a deck with hidden joints and no exposed fasteners, and the long standing desire of the marketplace for an attachment system that provided a safe, strong, and durable construction that was not attainable using any commercial product available in the marketplace prior to the invention and commercialization of the EB-TY® PRODUCT.

38.    In summary, my EB·TY® PRODUCT, which is described and claimed by my U.S. Patent No. 6,402,415, has had surprising commercial success and satisfies a long felt need in the industry. This is evidenced not only by my actual sales results, but further by the exhibits submitted herewith. I have used other floor tile and deck fasteners, and none work as effectively and efficiently as the EB·TY® PRODUCT.

39.    I hereby declare that all statements made herein of my own knowledge are

IC-App-0893

true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willfully false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of the Title 18 of the United States Code, and that such willfully false statements may jeopardize the validity of the application or any patent issuing thereon.

Date: February 9, 2007

Harry W. Eberle, III

Enclosures

21

IC-App-0894



*The Biggest Regional Professional Homebuilder's Magazine in the USA™ Serving California, Arizona, Nevada and the West.*

## Decks Sought-After as an Option for Additional Livable Space

With home prices on the rise, homeowners are more likely to realize the added value of a deck as a "bonus room."

### By Katie Pegler

According to John Burns, marketing director for Trex Company Inc., the top three reasons people buy Trex decking are its low maintenance, long-term durability and because it is splinter-free. "They know that 25 years from now, they're not going to have cracked or warped boards." Burns says.

Expansive decks are a resourceful way to add square footage to houses, while also placing an emphasis on outdoor living. Whether made from wood or composite materials, decks appeal to buyers, complementing the architectural design of today's homes.
More room to unwind
According to Harry Eberle III, founder and president of EB-TY® Hidden Deck Fasteners™, decks offer a much-desired area for relaxation, as well as entertainment. Decks — especially if customized with misters, lights or ceilings fans if enclosed — also facilitate a connection with the outdoors, while still providing the comforts of home.
"More homebuyers are spending time outdoors and realizing the value of decks," says John Burns, marketing director for Trex Company Inc, the manufacturer of Trex® decking and railings. And according to those in the industry, these are not the simple decks of yesteryear.
"It used to be that you could put a little wood deck on a home and that would be great," says Mark Longstaff, a senior associate at McKinley Architects in San Diego, Calif. "But now with the price of homes, homeowners are expecting more for their dollar." Decking as part of design
According to Longstaff, decking is an intricate part of not only the elevations, but also the floor plans.
"Exterior decks have become another room off of the house," Longstaff says. "As far as the elevation goes, it adds some much-needed detail to rear-elevations and is a true enhancement."

EverGrain decking looks like real wood but resists nature's weathering effects. The product comes in four colors with multiple grain patterns. Photo courtesy of Epoch Composite Materials.

In Southern California, the deck and house are often treated as a whole. "We prefer to integrate stucco to tie in the deck," Longstaff says. "It then looks like a true extension of the home, as opposed to just having a wood deck that looks attached."
Deciding on materials
As for choice of materials, it often depends on the project, as well as the price point. "The trend is going to a composite material just because of the maintenance that occurs on a wood deck," Longstaff says.
On the contrary, Doug Graybeal, principal architect for Graybeal and Associates in Carbondale, Colo., says that homebuyers in Colorado are still partial to real wood. "Ipé is a top choice because it is so good looking and durable," Graybeal says. "However, recycled products like Trex and Choice Dek are also popular because they're durable, and some colors areneutral in appearance."
Maintenance is usually a deciding factor, unless a home warrants high-end hardwood or load-bearing framing material. "Maintaining a wood deck over the course of five or 10 years could be expensive in a huge development, whereas composite material is worth it to the developer to spend the money upfront for the long run," Longstaff says.

(over)

  

# A&E NETWORK'S HOME IMPROVEMENT SERIES

## *INSIDE THIS OLD HOUSE*

## IS ALL DECKED OUT IN ITS NEXT EPISODE

### EB-TY National Broadcast 2004

**NEW YORK, NY –**   Find out all you need to know about one of America's favorite weekend projects - building a deck – on a new episode of *INSIDE THIS OLD HOUSE on A&E.*

General contractor Tom Silva shares his memories about the *This Old House* 1988 Lexington B&B project, which involved several decks.  Listen as Tom shares a behind the scenes tale about his disagreement with Norm on how to build them -- and find out whose plans won out! Join host Kevin O'Connor for a present day trip back to the Lexington B&B to see how those decks are fairing.  In the studio, Tom shares building practices on deck fasteners and proper maintenance.

Decks have become one of the most important features of American homes today.  More and more people are deciding that having a deck enhances the value of their home as well as their lifestyle.  They extend the home's living space and connect people to nature all year round.

This episode of *INSIDE THIS OLD HOUSE on A&E* features the latest trend in the building trade industry, EB-TY® Hidden Deck Fasteners™.  Invented by a family of home builders, EB-TY Hidden Deck Fasteners create beautiful, safe, long-lasting decks without splinters and without hundreds of nail and screw holes that, aside from being unsightly, allow moisture to seep into the wood and cause water damage.  The easy-to-install hidden deck fasteners give decks a beautiful, clean and uniform appearance.  They are virtually invisible from top or bottom, so they highlight the beauty of all types of woods and composites.  They're safer than nails and screws—they don't pop up, which is good news for people who love to go outside on their decks barefoot.  They're long lasting and maintenance-free.  They're manufactured in the United States of ultra-violet resistant polypropylene, so they don't rust and are compatible with every climate.  In addition, they're guaranteed to last 100 years with normal use.

*INSIDE THIS OLD HOUSE on A&E*, hosted by Kevin O'Connor, is a new weekly magazine series providing answers to age-old and newfangled home-improvement questions.  The series revisits classic stories from the longtime series *This Old House* and updates them with new ideas, information, and techniques, along with visits to original sites.  *INSIDE THIS OLD HOUSE on A&E* features timely updates of new advances in the building world, guest segments on the latest and greatest in home renovation and repair, and new visits with some of

(continued on back)

Exhibit C



# TheParksiteGroup

*Where employee ownership works for you!*



builders/architects/
dealers/fabrica
home owner

Home > News > **Article**

**PPW Will Distribute EB-TY® Hidden Fasteners™**

Parksite Plunkett-Webster (PPW) will be the latest distributor, east of the Mississippi River, of EB-TY® Hidden Fasteners™, the world's premier hidden fastening system for all kinds of decks, docks and boardwalks, including Ipé and composites. PPW is an industry leader in the distribution of high-end specialty building products including house wrap, decking, trim, siding and a unique mixture of traditional lumber lines and wood alternatives. With strategically placed distribution centers, PPW focuses on superior products, exceptional service and industry education.

EB-TY® Hidden Fasteners™ were invented by builders looking for a better way to build a more safe and beautiful deck, dock and boardwalk. EB-TY® Hidden Fasteners are designed to replace the nails or screws used in standard board fastening, which can become a safety hazard and result in callbacks because they can rust, pop up, require pre-drilling in some cases and cause the project to creak.

Innovative, award-winning EB-TY® Hidden Fasteners put an end to these problems. They are the most reliable long-lasting fasteners on the market. Manufactured in the United States and made of ultraviolet-resistant polypropylene, they won't rust and are guaranteed to last for 100 years under normal use.

When you use EB-TY® Hidden Fasteners, you won't have unsightly surface scars, such as splinters, holes or puddle areas. The fasteners are virtually invisible, both above and below because the dark color of the fasteners blends with the shadow of the joints. The most common EB-TY® Hidden Fastener automatically sets a 3/32-inch space between boards, and they ensure that all boards are a level, uniform height, highlighting the beauty of the deck, dock or boardwalk material. There are a variety of EB-TY® Hidden Fasteners made for every type of wood and composite.

EB-TY® Hidden Fasteners can save you time and money. You work from the top surface when using them, so you can build your project as close to the ground as you want. And installation takes only one EB-TY® Hidden Fastener and one screw wherever a board intersects with a joist. Installing EB-TY® Hidden Fasteners in hardwoods saves you labor compared with other fastening techniques such as straight screws, screws and plugs, or under-mount installations.

For more information on EB-TY® visit www.ebty.com, contact PPW at info@parksite.com or call one of the local PPW distribution centers near you.

**Quality Landscape P**

Keyword Search
**Search Parksite's Products**

Featured Products

CROW

**Browse Product Categorie**

Featured Manufacturer Partr

MONARC

**View Manufacturers**

Email Sign up
**Sign-up to receive our new**

---

About Parksite | News | Parksite Builder Solutions | PPW | Parksite Surfaces | Locations
Contact Us | Terms | Careers | ESOP | Clearance Center | myParksite
TheParksiteGroup ScreenSaver

© 2006 The Parksite Group, All Rights Reserved.



VeriSign
Secured
V E R I F Y ▸

**About SSL Certificates**

IC-App-0897

# Remodeling™

## Hidden Deck Fasteners

For a premium wood deck, face-nailing is not an option.

Source: REMODELING Magazine
Publication date: 2005-06-01

### By Clayton DeKorne

At $2.50 per linear foot for ipe, the last thing I want to do is riddle a deck with screw holes," exclaims Colorado deck builder, Dennis McCurdy. "There's no quicker way to destroy wood in this climate." McCurdy, who specializes in one-of-a-kind custom decks, has found a niche in the replacement market tearing off pressure-treated decking and replacing it with premium woods. Ipe — a Brazilian mahogany — is one of his most popular replacements. "It's a luxuriant material that withstands season after season of snow," explains McCurdy. "But once the face is punctured, water gets in, freezes, and will split the wood apart."

With composites it's a different story. "We don't get many requests for hidden fasteners," says Jim Craig, whose Manassas, Va., company averages over $4 million per year in decks and porches alone. "We use a lot of Trex.

Water penetration is not the issue, so the only reason to go with a hidden fastener is aesthetics." For Craig, this becomes an issue only when using ipe, tigerwood, jatoba, or other exotic hardwoods. "They're a real upgrade. Really [they're] a pain to install, so I upgrade my profit margin, adding $4 to $5 per square foot on top of hard costs. I need to. The expectation is very high, and we have to be meticulous."

Craig has tried a number of hidden deck fasteners and has strong reservations about most of them. Those that are screwed into the decking from underneath make it difficult to pull a board down to the joist. Those with prongs are difficult to drive into the edge of hardwood. The more aggressive the prong, the more likely it is to split the wood.



Courtesy Eb-Ty

When called for, Craig and McCurdy rely on Eb-Ty fasteners — polypropylene inserts designed to fit into the slot cut by a biscuit joiner. This allows the material to expand and contract while maintaining a positive connection. Both contractors forego the biscuit joiner, however, and buy decking with a groove milled along each edge. "Even with pre-grooved material, these aren't the easiest fasteners to install," Craig reports. "But there's not a lot of error, either. We have very few field problems."

TAUNTON'S

# Fine Homebuildin

Bevel-Edge Countertops   ○   Floor Trusses   ○   Outdoor Lighting

March 1998   No. 114



Building Finish St:



03>

U.S. $6.95

IC-App-0899

Exhibit E

the toughness and durability of phenolic plastic when I learned that it has been used extensively for automotive timing gears and aircraft cable pulleys precisely because it was so tough and durable. AMPS recommends that the edges be sprayed regularly with silicone lubricant to reduce friction and forestall wear along the edge. The spray also helps the dovetail connections to fit together more easily.

I've used the AMPS equipment for about a year now; it is a well-engineered, precisely manufactured, useful tool. The only real drawback I can find is its cost. A simple 48-in. straightedge runs $140. That's a lot, but it's no more than a carefully machined aluminum edge costs. A starter kit is more affordable than individual pieces. My starter kit consists of 31-in., 48-in. and 96-in. straightedges, a joining plate and a 90° corner plate. The price for that kit is $425. If you want an accurate, professional-quality straightedge for projects around your shop, an AMPS edge fits the bill. And if you fabricate a lot of countertops, I think you'll appreciate the whole system.

—*Herrick Kimball, a remodeler and kitchen contractor from Moravia, NY.*

## Plat - joiner decking hold-downs



When I worked as a carpenter, I reached a point where I hated building decks. I knew that whether I nailed or screwed down the decking, in a year the deck would creak when walked on and that probably at least one fastener would work its way out and become a trip hazard. I guess Harry Eberle, a builder from Califon, New Jersey, started to hate decks, too. But instead of just shaking his head and muttering at

the start of every deck job, he deve Eb-Ty (888-438-3289), a polypropyle that spaces and holds down deckir spline that resembles the keel of a sa tends the length of the biscuit bottor tersunk screw hole bisects both the b its keel.

Slots aligned on joist centers are cu sides of the deck boards with a plate ter the boards are slotted, a deck boa of construction adhesive is squeezed of the joists. The first board is set in the fastened along its outer edge. The El into the board's slots and fasten to with deck screws. More adhesive is pl the next board is slid onto the Eb-Tys. tinues until the last board is in place.

I haven't installed Eb-Tys myself, b seen a finished deck that was with them. It didn't creak or pop as across it. And with no visible fasteners had a real crafted look. Eb-Tys cost a each.—*A. E.*

*"Tools & Materials" continues on p. 1



# SystemOne® MODULAR TRUCK EQUIPMENT
## ...industrial quality equipment for professional contractors

Extruded Aluminum Alloy
1200 lb. Capacity
Inserts in 66 Colors
Awarded 18 U.S. Patents

Contractor Rig Shown
**$499**
(Accessories not included)
Utility Rig (not shown) $289

**3 SYSTEMS IN ONE!**
**CARRIES OVERHEAD CARGO** Ratchet Tie-Downs and heavy duty Rubber Wear Strips provide safe, quiet and damage free transport of ladders and other cargo.
**SECURES INTERIOR CARGO** Infinitely positionable Sliding Cargo Anchors secure large and small loads safely inside truck body.
**ORGANIZES EQUIPMENT** Recessed T-slots located throughout rack accept over 30 accessories for efficient organization; they also allow mounting of crossover and top-side tool boxes without having to penetrate your truck body.

Call for Free Brochure: 1-800-627-9783    P.O. Box 592, Pennington, NJ 08534
READER SERVICE NO. 100



# Swim at Ho

*Swim or exercise against a smooth current adjustable to any speed or a Ideal for swimming, water ae rehabilitation and fun. The 8 sample to ma easy*

**Call (800) 732-866
For FREE BROCHURE
or visit www.endlesspools.co
Endless Pools, Inc
200 E Dutton Mill Rd, D
Aston, PA 19014
READER SERVICE NO. 93**

IC-App-0900

# BUILDING PRODUCTS

A HANLEY-WOOD, INC. PUBLICATION

MAY/JUNE



TOP 150 PRODUCT PICKS

## BY REQUEST
### YOUR TOP PRODUCT PICKS

IC-App-0901

## LIGHT YET POWERFUL
The K1250 Active Power Cutter offers



**Partner Industrial Products. Circle 399.**

119cc's of raw power, making it 20 percent more powerful than any other cut-off saw on the market, claims its maker, Partner Industrial Products of Itasca, Ill. Weighing less than 30 pounds, the saw is for work on concrete and steel piping, beams and poured and reinforced concrete. Other features include a decompression valve design and an easy-to-adjust blade guard. 800-323-3553. http://www.partnerusa.com. Circle 399.

## TIME-SAVING SCRAPING
Faster and easier removal of acoustic ceiling texture is now possible with the Ceiling Texture Scraper, claims its maker, Homax Products of Bellingham, Wash. The easy-to-use Ceiling Texture Scraper is attached to a broom handle or paint roller extension handle. A 4-gallon plastic bag attaches below the 10-inch-wide scraper head to capture the texture as it is scraped from the ceiling. It reduces labor and clean-up



**Homax Products. Circle 400.**

time, in addition to protecting floors and furniture. 800-729-9029. Circle 400.

## ALMOST INVISIBLE
EB-TY Deck Fastening System is easy and fast to use and produces a deck without fasteners showing, claims inventor Harry Eberle III of Califon, N.J. The system uses only one screw at the joist and deck board intersections to install. Components of the labor-saving system are essentially invisible from the top or bottom of the deck. They also relieve stress caused by natural shrinkage of wood boards, Eberle says. 888-438-3289. Circle 401.

## HEAVY-DUTY SUPPORT
Wolfcraft of Itasca, Ill., introduces a roller support stand that supports heavy wood and metal stock. Weighing only 11½ pounds, the roller support stand can be used with a table saw, drill press, band saw or jointer. Its height adjusts to ranges from 27½ inches to 43½ inches, and its wide-braced stance and metal construction supports up to 130 pounds. 630-773-4777. Circle 402.



**Wolfcraft. Circle 402.**

## CLEAR WATER
The Safe Pro UV Sterilizer contains a sediment and carbon filtration system that produces clear, odor-free water, effectively destroying 99.9 percent of bacteria and viruses, says manufacturer WGS International of San Diego, Calif. The easy-to-install system, which only requires once-a-year maintenance, comes in sizes from one gallon per minute for res-

**All it takes is VELUX**

In a recent survey, one out of every two respondents indicated they plan to add skylights to their home. No surprise, really.

After all, skylights transmit 30 percent more light than vertical windows and offer a dramatic view of the heavens as well.

And since VELUX skylights protect against leaks, heat gain and fading, you won't have to worry about customer callbacks.

For a brochure and price information, call 1-800-283-2831.

Circle no. 553

**VELUX®**

JURNAL OF LIGHT
TRUCTION

JULY 1...

# CORNICE
## TRIM DETAILS

SOLID SURFACING

uses    Cures for
CHIMNEY DEFECTS

INNOVATIVE
TOOLS & MATERIALS

EXHIBIT

price. Unfortunately, however, if you're done estimating direct costs, you to use the right gross profit markup to have to add 1/3 of those costs to arrive at come up with the wrong selling price. It a selling price that will cover a gross seems obvious, for instance, that adding profit of 1/4.

25% to your direct costs would give you With a smaller gross profit of 20% or a selling price that would cover the 25% 1/5, you need to add 1/4 of estimated gross profit in the above example. But costs. For a larger gross profit — 33% or the fact is, simply adding 25% results in 1/3, for example — you need to add 1/2 of a selling price that's too low. To cover a estimated costs. Finally, to earn a gross 25% gross profit, you have to increase profit of 50%, or 1/2, you have to sell the estimated costs by 33%. job at exactly twice your cost.

To understand why this is true, look at the four pairs of columns in Figure 2 (previous page). In each pair, the left-hand column represents estimated direct costs (materials, labor, and subs) of $40,000, so every left-hand column is the same height. The right-hand column in each pair, however, changes depending on what gross profit percentage is being used to figure the selling price.

To follow through on our example, look at the pair of columns labeled "25% Gross Profit." The blue box represents 25%, or 1/4, of the total revenue for the job. But this is 33%, or 1/3, of the estimated direct costs. In other words, when

## The Magic Formula

These examples use nice round numbers that I hope will help you visualize the relationship between estimated costs, gross profit, and selling price. When it comes to actually crunching the numbers, however, there's a foolproof formula for calculating a selling price that covers both overhead and profit: Simply take the decimal value of your gross profit, subtract it from 1, and divide it into your estimated costs. Returning to our example of $40,000 in estimated direct costs, the calculation would look like this:

$$1 - .25 = .75$$
$$\$40{,}000 \div .75 = \$53{,}333 \text{ Selling Price}$$

The formula works, not just for the gross profit percentages shown in Figure 2, but for any gross profit percentage. For example, if your gross profit is an odd number like 17.3%, the formula would work like this:

$$\text{Gross Profit} = 17.3\%, \text{ or } .173$$
$$1 - .173 = .827$$
$$\$40{,}000 \div .827 = \$48{,}368 \text{ Selling Price}$$

Next time you have to quote a price, don't simply add 15% to your estimate like everybody else. Instead, figure out what your gross profit percentage should be, then use a divisor to figure the selling price. You may not win every bid, but those jobs you do get, you'll cover your costs and earn a profit as well.

*Sal Alfano, a former builder and remodeler, is editor of the* Journal of Light Construction.



"The Original"

# Authentic Roof™

*By Crowe Building Products Ltd.*

*From The People Who Invented It!*
**Manufactured in USA**

*Authentic Looking*          *Long Lasting*
*Enviro/Friendly*            *Easy to Install*
*Light Weight*   *100% Recycled Polymers & Rubber*
*Available through your local Building/Roofing Supply.*

H/O: 116 Burris Street, Hamilton, Ontario. L8M 2J5
Phone: 905-529-6818     Fax: 905-529-1755
Internet: http:\www.authentic-roof.com

Circle #185 on Reader Service Card



EB•TY

# Hidden Deck Fastening System

## Why EB•TY ?

• No fasteners visible
• Beautiful appearance
• Decks are safer
• 100 year life - made of
  UV resistant polypropylene
• Automatic spacing
• Work done from top side
• Maintenance free

(800) GET-EBTY

Circle #217 on Reader Service Card

Exhibit G

IC-App-0904

# STRUCTURE

## Footer Form/Drain Combo

The *Snap Forms* combination footer form and foundation drain system uses modified plastic drain pipe placed in trenches in two parallel rows. Reusable rebar stakes and adjustable clamps hold the pipe in position, and the inner and outer perimeter drains are connected with crossover pipes. The trench is then backfilled with gravel to retain the concrete. Rebar hooks are available for hanging reinforcement, and the tops of the pipes act as a screed. The cost is about $1.10 per linear foot of wall.

*Contact:* Snap Footing Systems, P.O. Box 1810, Fairview Heights, IL 62208; 800/334-4460.



## Reusable Debris Chutes

Here's a better way to handle de from roof tearoffs and second-story remodels. The *Plastic Debris Chute* i complete system of 32-inch-diame straight chutes, intake hoppers, and p tective panels made of injection-mold high-density polyethylene (HDP Individual sections are fitted with cc necting chains and are tapered for ea storage and assembly. Initial cost m seem high — a basic system suitable erecting a second-story chute, includi mounting hardware for scaffolding a flat or pitched roofs, costs about $1,0C But compared with custom-built stu and-plywood chutes, which waste mat ial and require more labor to install, tl reusable Plastic Debris Chute will pay f itself after only a few jobs.

*Contact:* Chutes International, : Irongate Dr., Waldorf, MD 2060 800/882-4883; www.chutesintl.com.

## Wet Basement Solution

This recycled plastic membrane can be used to control water on both the outside and inside of a foundation. Wrapped around the exterior, the dimpled surface of *Hydro-Guard* promotes the flow of underground water to perimeter drains. As an interior retrofit solution for wet basements, the material captures water leaking through the wall and directs it to sub-slab drain tile. Hydro-Guard is available in rolls up to 8 feet wide and 65 feet long, priced between $80 and $135 per roll (in full skid quantities). The manufacturer also supplies fasteners, washers, plugs, and trim strips. A sister product, called *Warm-Crete*, comes in 1x3-meter foam-cushioned sheets that can be applied directly to a slab to isolate finish flooring from moisture or to control radon.

*Contact:* Hydro-Cell Inc., 1588 Stonechurch Rd. East, Unit #4, Hamilton, Ontario L8W 3P9 Canada; 800/289-8314.





Exhibit G

IC-App-0905

# &Materials

## Flexible Framing Anchor

A new material called *Millibar* is designed as a tension tie to anchor framing. The 2½-inch-wide flexible strap is made of Kevlar, which has a tensile strength of 525,000 psi and is impervious to heat, cold, water, and salt air. Installed in an "X" or "V" pattern and securely fastened



along its entire length, the strap adds shear strength to walls and roofs. By creating a kerf in the sheathing where roof and wall meet, Millibar can also be used as a super-strong hold-down. The material comes in 230-foot coils and wholesales for $2.20 per linear foot.

*Contact:* New Necessities, 5710 Pebblebrook Trail, Gainesville, GA 30506; 770/844-9438; www.millibar.com

## Steel Stud Insulator

A new insulating system is designed to eliminate thermal shorts through steel studs, joists, and headers. The *Snap-Cap*, which uses Amofoam (Tenneco) or Foamular (Owens-Corning) rigid EPS insulation, is designed to friction fit over the flanges of standard steel studs and joists; a self-adhering *Flat-Cap* is used for headers and doubled members. The components are available in th nesses from ½ to 2 inches, and in 4- and 8-foot lengths, and provide an ir lating value of R-5 per inch. Prices range from 10¢ to 16¢ per linear foot.

*Contact:* United States Building Technology, 701-B Waverly Framingham, MA 01702; 508/424-0055; www.usbt.com

## Concealed Deck Fastener



The best hidden decking fastener we've seen yet is called the *Eb-Ty*. The plastic connector is fastened to the joists from above with a screw angled at about 20° to the decking. The oval-shaped flanges, which fit into slots cut with a plate joiner at the point where each deck board crosses a joist, hold the deck boards tight to the framing and serve positive stops to provide consistent spacing between boards. Designed by custom home builder and remodeler, the Eb-Ty sells for about 40¢.

*Contact:* Eb-Ty, P.O. Box 414, Califon, NJ 07830; 888/438-328 www.EBTY.com.

## Engineered Subflooring



A new structural flooring panel called *Advantech* is designed to be more stable and more water-resistant than plywood. Available in 4-foot-wide tongue-and-groove sheets up to 16 feet long and in thicknesses ranging from 19/32 to 1⅛ inches, the four-layer oriented strandboard is bonded with an advanced, non-formaldehyde resin adhesive that the manufacturer guarantees will not need sanding due to moisture absorption. The homogenous material has no voids or knots, will not delaminate, and comes with a 50-year guarantee against defects.

*Contact:* Huber Engineered Woods, 10925 David Taylor Dr., Suite 300, Charlotte, NC 28262; 800/933-9220; www.huberwood.com.

Exhibit 6





# CBTC EXPO
# PROGRAM GUIDE

a companion to JLC's:
## CONSTRUCTION BUSINESS & TECHNOLOGY CONFERENCE



Build It RIGHT ON SITE!

At CBTC's Live Training Event

# OCTOBER 23 & 24, 1998
### Santa Clara Convention Center • Santa Clara, CA

Presented by:

## THE JOURNAL OF LIGHT CONSTRUCTION

Sponsored by:



NARI®
NATIONAL ASSOCIATION OF THE REMODELING INDUSTRY

EXHIBIT H

IC-App-0907

# Construction Innovation Awards



The editors at JLC have chosen these innovative and efficient tools and products for their great promise for improving building practices.

Manufacturers will be on hand to demonstrate their features and benefits and you're invited to try them out for yourself!

## Cedar Breather — Benjamin Obdyke
This ⅜" thick nylon matrix creates a virtual "rain screen" that has been shown to reduce moisture problems that can lead to splitting, rot, and paint failures.

## Eb-Ty Deck Tie — Eberle Brothers, Inc.
This hidden deck fastener is perhaps the best we've seen to date. The anchor is fastened with a single screw driven at an angle, providing a tight lock for deck boards.

## Millibar NN — New Necessities
Wrapped around building corners, across intersections, and over roofs, this material successfully meets code requirements for high-wind zones. Less expensive per house and faster to install than metal hardware.

## Trex Decking — Trex Company LLC
A wood/plastic composite made from recycled materials, Trex used for decking. Prices are comparable to treated lumber, and though it's heavier than wood, it doesn't crack, splinter, or shri

## Icynene Spray Insulation — Icynene
This low-density foam serves as insulation, air barrier, and vapo retarder. Sprayed in a thin layer, the foam expands up to 100 ti is flexible and fills any voids it encounters.

## Jamsill Door Guard — Jamsill
The Jamsill is a pre-made, multipart sill pan that installs directly the rough sill, and can easily be expanded to fit wide openings

## Sawmate — Prazi USA
The Sawmate is a rip and cross-cutting guide that can be attach all circular saws, including wormdrives. Can be used to guide p wood cuts over 24 inches wide.

## RoboLaser — Toolz Ltd
This laser features a hand-held remote control that allows you t spin the beam to transfer elevations from one place to another. RoboLaser is self-leveling when you get it to within 10%, accura ⅛" over 100 feet.

## Bammer — Porter-Cable Corporation
The Bammer is a cordless finish nailer that fires 15-gauge nails. runs on a piezo-electric ignition, without a battery, and its nose-piece is adjustable, with a hex key located on the magazine.



**Pau Lope®**

DECKING

with the

**EB·TY**
**Hidden Deck**
**Fastening System**

available at
**Golden State Lumber**
San Rafael
415.454.2532
American Canyon
707.648.0522
**Sierra Point Lumber**
Brisbane
415.468.1000

**Quality you can depend on**

Exhibit H

IC-App-0908

# Garden, Deck & Landscape

Fall 1998
Display until November 24

## crazy for color

### Spectacular pumpkins, trees, sunflowers, and more

$3.99 U.S.

83>



**Plus: Decks** that last decades
Can't-miss **harvest tips**
A **family-style** landscape
5 autumn **garden plans**

Exhibit I
TIC-APP-0909

# decks for decades

Building a deck that will bring a lifetime of good memories begins by selecting quality materials that *last* a lifetime.

BY GLENN R. DINELLA

Family fun at the Marlen Kemmet home often begins around sundown when the clan gathers on the new deck for tasty food, a crackling fire, and conversation.



**Above:** Wide platform steps create an inviting entrance to this satellite deck, built away from the
In the tradition of Greene and Greene, the scalloped cloud-lift patterns on the extended beam
deck substructure *left* are also reflected in the rafters of Marlen's custom-built storage shed. Op
A 6-foot-long ipe cabinet includes a work surface, stainless-steel grill, and loads of storage.

a s the sun sets on one of the first crisp
days of fall, a few of the brightest stars
appear in the indigo band just above the
horizon. At the home of Marlen and Shamrae Kem-
met outside of Des Moines, the family gathers around
lamplight and firelight on their new two-level deck.
Fireside appeal is nothing new. It goes back, oh,
about 15,000 years to the Paleolithic period when
people first learned that this newly invented "fire"
stuff sure made woolly mammoth burgers a whole
lot tastier. But on this day in 1998 A.D., there's more
to this special outdoor room than a hot fire and the
tantalizing aroma of the chef's handiwork. The chef,
deck builder, and Dad are one in the same—Marlen
Kemmet, who also happens to be a senior editor at
our sister publication *WOOD®* magazine. And this
deck just happens to be his brainchild, decked out
with ideas for the future.

### F rm f ll w functi n

Given Marlen's woodworking skills, he was under
a bit of pressure to create something distinctive. His

attention to detail, love of craftsmanship, an-
tion to aesthetics not only necessitated an at.
deck, but called for one that would last a li
   "The first step I took was to sit down v
wife and children and see what they wanted,"
says. "My wife wants to add a three-seaso
to the back of our house eventually, so a d
attached to the house was a principal starting

They chose a site under the trees beside th
distant enough for privacy, yet close enoug
convenient. "The kids wanted a fire pit, and I
a place for the family to gather for outdoor
Marlen says. "I also wanted a project buil
piece of furniture—well-designed with lots (
and built to last. I'd seen too many three- a:
year-old decks already in need of major re

### Getting inspired

With a site in mind, Marlen searched for a
style. It didn't take long for him to turn to
his favorites. In the early 1900s, brothers
Sumner and Henry Mather Greene of P

IC-App-0911



California, created some of the most finely crafted homes and furniture in Southern California by combining their love of design and woodwork. Marlen used the Greene brothers as inspiration for his deck.

"They were doing their work around the same time that Frank Lloyd Wright and the Mission style were becoming popular," Marlen says. "The three styles are somewhat similar, but the Greenes had a little more Oriental influence. They built some incredible furniture to go with the houses they did. One of their chairs today can go for $20,000 to $30,000."

This "architecture as art" perspective led to Marlen's unusual selection of wood. He built the substructure from standard pressure-treated pine timbers, but for the more visible elements, he selected ipe (pronounced EE-pay), the same material used on the boardwalks in Atlantic City and in Canal Park in Duluth, Minnesota. The durable rain-forest wood has a mahogany-like appearance, making it perfect for the furniture-and-art philosophy.

"It proved to be an excellent choice," Marlen says. "With no cracks, knots, or warping, there was virtually no scrap. Ipe is really on the cutting edge when it comes to wood decking. It's virtually indestructible. Ipe comes from South America, looks and works like mahogany, and is comparable in price to clear-heart redwood. Plus, with a Class A fire rating, it was ideal around the fire pit and grill."

Partly because the wood is so hard and partly because it's so beautiful, Marlen couldn't bring himself to pound nails into it. He kept his hammer holstered and used stainless-steel screws and thin plastic biscuits to bring things together.

"With the advent of several new fastening systems, it's no longer necessary to litter a deck surface with hundreds of screw holes," he says. "I chose EB-TY, a plastic, biscuitlike fastener that secures the edges of deck boards directly over a joist. When installed, the biscuits are nearly invisible and hold the edges of the boards down flush with each other." (See Deck Board Fastener Detail, *page 36*.)

## The fire pit first

Although the kids take credit for the idea to integrate a fire pit with the deck, it was Marlen's creativity that made the idea flow. The project came together after he hit on the notion of building the basic bones of the pit from a 4-foot-diameter, 4-foot-deep manhole section purchased for about $180 from a local concrete products facility.

The concrete company delivered the 3,500-pound unwieldy monster, and a neighbor with a skid steer eased it into place after Marlen had checked and rechecked his measurements to ensure the top rim would rest 22 inches above the future deck floor. Once in place, it would not be easily adjusted. After it was positioned and leveled, he filled the pit to 22 inches from the top with pea gravel. Next, he lined

# yippee for ipe



It's so dense, it doesn't float. It can't be penetrated with a nail. (Use a carbide-tip drill bit and screws.) And although it looks like beautiful furniture, it's so dense it doesn't burn. It's ipe. And here's more:
• Among Latin-speaking horticulturists, ipe is known as *Tabebuia* spp. and is a member of the *Lapacho* family.
• In the flooring industry, ipe is known as Brazilian walnut.
• Ipe first gained popularity in the United States in 1971, when Atlantic City began using it to construct boardwalks.
• In their ideal natural habitat, ipe trees can grow to 150 feet in height, with trunk diameters of 6 feet. Legally harvested trees average 1 meter in diameter.
• Weighing in at a hefty 69 pounds per cubic foot, ipe weighs twice as much as Southern pine (35 pounds).
• The retail price for ipe ranges from $3.45 per square foot to $3.68 per square foot.
• Ipe outlasts soft decking woods five to one, which translates to about 60 years. Even without preservatives, it is naturally resistant to termites, marine borers, and water, and it has the same fire rating as steel and concrete.
• The primary source of ipe in the United States is Timber Holdings Ltd. of Milwaukee, which says its trees are harvested from sustainably managed tropical forests in Brazil. All trees harvested by Timber Holdings Ltd. are independently certified to be produced by legally harvested methods. This means each felled tree receives a certificate from the Brazilian Department of Natural Resources, which does multiple checks on the trees before they are exported and also enforces reseeding or replanting programs.



IC-App-0912



Stainless-steel prop... (?)
Cabinet has storage for accessories

**GRILL CABINET**

36"

72"

fabric

plate steel roofs
3"

Lights, mounted on a
3/4" wooden base inside

1" x 1" square steel tube

Stained glass on all
four sides, held in place
with silicone

8"

16"

1/4"-thick plate steel,
welded to posts

Electrical wiring is
run through posts

4"

2 1/4"

18"

1/4" steel base

**LIGHTS**

Round-over all edges of deck

1x5 railing is fashioned with a Greene-and-Greene pattern

Floorboards fastened
with EB-TY fasteners

Steps are set
45° to deck

**GRILL CABINET**

**UPPER DECK**

Support beams

4 x 4 railing posts

2 x 10 support beams

2 x 10 filler at end only

Screw and g...
beams toge...

2x8 floor joists,
spaced 16" apart

Notch both sides of post
for beams to rest onto

1 1/2"

**BEAM END DETAIL**

4 x 4 post

Steps are screwed and plugged together

Corners of railing and floor joists are notched at corners

Decorative trim behind steps

IC-App-0913



**Above:** The 4-foot concrete manhole found a much better life as a fire pit on Marlen's deck. "I ha shepherd's hook fabricated to hold a cast-iron Dutch oven for on-site cooking," h says. Leather glo stored in the handy cabinet are a necessity for removing the hot kettle from the hook. **Left:** Ma designed his own Mission-style lamps with stained glass. Day or night, the lights add to the ha crafted look. The wiring hides inside the hollow steel tubes.

the inside of the structure with firebrick (the type used in home fireplaces) to prevent the concrete from becoming too hot or cracking. High-temperature flat black paint dresses the concrete enough to hide its original purpose. With the fire pit in place, Marlen could begin the task of building the deck around it.

He planned enough seating so the family—and friends—could all sit around the fire pit. The benches, about 3 feet back, are within marshmallow-roasting distance, but keep the kids safe from the heat. The benches are tilted 10 degrees for extra comfort.

## Food and function

Though the fireside deck features seclusion and restfulness, the attached larger upper deck strikes a different mood. This hardworking area, access from two sides, includes the dining and cook areas. But functional doesn't mean plain.

Marlen crafted an ipe cabinet for a cooking cen housing a stainless-steel grill, and plenty of stor for dinnerware and supplies. A work surface bes the grill has a Corian insert, which is easy to cl and holds up well under adverse weather. The c inet also has an electrical outlet on one end fo slow-cooker, CD player, or other electronic devi

As with every other part of this project, Ma sweated the details.

"I chose a stainless-steel grill that until rece was available only to restaurants and professiona he says. "This four-burner unit with convection-s

IC-App-0914

cooking is good enough not only to roast turkeys, chickens, and roasts without a rotisserie, but gentle enough to bake bread and pies." When not in use, the cabinet is protected with a canvas cover.

## Mission–styl light

A deck of this magnitude deserves more than day-time flings. Marlen planned plenty of stained-glass lighting to create an amber after-hours glow. Iron lamps stand at each of the deck corners, rising another 2 feet above the deck railing.

True to the style that first inspired his deck, Marlen's lamp designs incorporate the gently sloped roofs common to the Craftsman era and details frequently used by the Greenes. The posts are made of 1-inch square steel tubing; the lamp tops were fashioned from flat steel stock.

Custom-cut stained-glass panels diffuse the light and add to the ambience. The lamps on the deck have a steel plate base, while concrete secures three more off the deck. To protect the lamps, Marlen painted them with Hammerite, a tough, durable finish commonly used by machinery manufacturers. Applied with a roller, the paint curdles on the surface, leaving an orange-peel-textured appearance.

## A quality finish

When it came time to protect the wood, Marlen began his homework with a trip to the federally funded Forest Products Laboratory in Madison, Wisconsin.

"Although almost any finish will look good for a few months, I wanted a finish to keep the deck looking good for years," he says. A thorough review of the track record of numerous finishes led him to select a quality penetrating oil.

"Most of the less expensive sealers just stay on the surface and break down fairly quickly. A penetrating oil is actually absorbed into the wood and does not build up on the surface in layers that can break down easily," he says. "To keep the rich color, I'll need to apply a fresh coat of finish each year. Left unfinished, ipe will weather to a Cape Cod gray or similar to an unfinished teak garden bench."

In the end, Marlen not only created a great deck, he crafted a piece of art that will provide the family with a gathering spot for years. Sure, it costs more than a basic model, but how can you place a monetary value on the memories that will be created on a solid-as-a-rock, pretty-as-a-picture, ipe deck? ❏

For Resources, see page 101.

# extras from marlen



**Above, from left:** The scalloped support beams will extend 2 feet beyond the future deck. • The finished substructure measures 16x16 feet on top; 12x12¾ on the lower level. • Biscuit fasteners create a hardware-free look and help reduce warping. • Marlen cut ipe plugs from scrap wood to cover each counterbored screw hole.

## Substructure with style

"I wanted the detailing to start with the post-and-beam substructure by extending the beams beyond the deck. To do this I notched the top end of my pressure-treated 4x4s, allowing the beams, in this case 2x10s, to sit on the shoulders of the notches, rather than be held with mechanical fasteners. I made the areas between the shoulders exactly the thickness of a 2x10. Then, I glued and screwed an additional piece of 2x10 between the protruding end pieces; the three 2x10s stack together to look like a 4½x10 beam. I contoured this protruding end in an inverted cloud-lift pattern, which was popularized by Greene and Greene." (See Beam End Detail on diagram, page 37.)

## Seamless boards with biscuits

"To start the decking, the first board is screwed down in the regular fashion, although for my deck, I counterbored the holes and plugged them. Next I used a biscuit cutter to slot the edge of the first deck board directly over the joist. I slid the plastic EB-TY biscuit into that slot; then drove a finish-head screw at a 45-degree angle through th biscuit fastener into the joist. After routing mating slots in the next board, I laid a bead of construction adhesive on the joist and slid the next board onto the biscuit. The final result is very smooth." (See Deck Board Fastener Detail on diagram, page 36.)

## Fine-crafted rails

"To secure the railing, I drilled counterbored screw holes, used stainless-steel screws and plugged all the holes. It's more time-consuming, but worth the effort to achieve that crafted furniture look without a single visible screw. Stainless-steel screws are harder than galvanized screws and won't stain wood black over time."



IC-App-0915

# **buying** *guide*

*For more information about the stories shown in this issue, contact the professionals and sources listed below. Be prepared to pay copying/shipping costs for some of the materials provided.*

# RESOURCES

## ▉ AUTUMN APPRECIATION
**Pages 20–28**
*Landscape architect:* homeowner Susie Miller Hall.

For more information about grasses, consider *Taylor's Guide to Ornamental Grasses* edited by Roger Holmes and Frances Tenenbaum; Houghton Mifflin Co., 222 Berkley St., Boston, MA 02116; 800/225-3362; 1997; $19.95.

## ▉ SIMPLY SUNFLOWERS
**Pages 29–32**
**Container with dwarf-size sunflower**—W. Atlee Burpee, 300 Park Ave., Warminster, PA 18974-0001; 800/888-1447.
**Sunflower lantern**—Gardener's Supply Co., 128 Intervale Rd., Burlington, VT 05401; 800/955-3370.
**Sunflower arbor, trellises, garden ornaments**—Rosebar metal garden art, 2064 Skagit City Rd., Mount Vernon, WA 98273; 360/445-2294. Also available through Ravenna Gardens, 2580 NE. University Village, Seattle, WA 98105; 206/729-7388.

Sunflower vase project excerpted with permission from *Fast Flower Arranging* by Jane Packer; D.K. Publishing, Inc., 95 Madison Ave., New York, NY 10016; 212/213-4800; 1998; $19.95.

For sunflower sources, consider:
W. Atlee Burpee, 300 Park Ave., Warminster, PA 18974-0001; 800/888-1447.
Johnny's Selected Seeds, 310 Foss Hill Rd., Albion, ME 04910; 207/437-4301.
Park Seed Co., 1 Parkton Ave., Greenwood, SC 29647-0001; 800/845-3369.
Seeds of Change, P.O. Box 15700, Santa Fe, NM 87506-5700; 888/762-7333.
Seed Savers Exchange, 3076 N. Winn Rd., Decorah, IA 52101; 319/382-5990.

## ▉ DECKS FOR DECADES
**Pages 33–42**
**Decking**—Iron Woods, Timber Holdings, Ltd., 2400 W. Cornell St., Milwaukee, WI 53209; 414/445-8989.
**Stain**—Penofin, Performance Coatings, Inc., P.O. Box 1569, Ukiah, CA 95482; 707/462-3023; www.penofin.com.
**Stainless-steel screws**—McFeeley's, 1620 Wythe Rd., P.O. Box 11169, Lynchburg, VA 24506-1169; 800/443-7937.
**Deck-fastening system for ¾-inch stock**—EB-TY, P.O. Box 414, Califon, NJ 07830; 888/438-3289; www.EB-TY.com. **Gas grill**—Ironworks, P.O. Box 578, Stockbridge, MI 49285; 517/851-8889. **Lanterns**—custom made.

The Certified Forest Product Council publishes a directory for recycled wood. Call 503/590-6600 or send e-mail to cfpc@ix.netcom.com. Other sources:
Heritage Vinyl Products, 1576 Magnolia Dr., Macon, MS 39341; 800/473-3623.
Kodiak, Inc., P.O. Box 9158, Memphis, TN 38109-0158; 901/344-5353.
Master Mark, P.O. Box 662, Albany, MN 56307; 800/535-4838.
Metro Plastics, Inc., 2916 107th St., S, Tacoma, WA 98444; 800/676-4091.
Nebraska Plastics, P.O. Box 45, Cozad, NE 69130; 800/445-2887.
Recycled Plastics Marketing, Inc., 2829 152nd Ave., NE, Redmond, WA 98052; 800/867-3201.
Resource Woodworks, Inc., 627 E. 60th St., Tacoma, WA 98404; 253/474-3757.
Rumber Materials, Inc., 3420 Executive Center Dr., Suite 200, Austin, TX 78731; 512/794-8473.
SmartDeck, 2600 W. Roosevelt Rd., Chicago, IL 60608; 888/733-2546.
Trex, 20 S. Cameron St., Winchester, VA 22601; 800/289-8739.
U.S. Plastic Lumber, 2300 Glades Rd., Suite 440, W, Boca Raton, FL 33431; 800/653-2784.

## ▉ FAMILY-STYLE LANDSCAPE
**Pages 43–48**
*Landscape designer:* Chris Hecht, 6320 Broadway Terr., Oakland, CA 94628 510/654-9994. *Plant designer:* Lura DeOme, Earthmoods, 728 San Carlos Albany, CA 94706; 510/526-1140. *Window-box designer:* Arleta Chang, Jarvis Architects, 1889 Alcatraz Ave., Berkeley, CA 94703; 510/654-6755. **White chairs**—Smith & Hawken, 2 Arbor Ln., P.O. Box 6900, Florence, KY 41022-6900; 800/776-3336.

## ▉ THE GREAT PUMPKIN
**Pages 49–52**
For more information, consider:
Atlantic Pumpkin Growers' Association, P.O. Box 901, Windsor, Nova Scotia B0N 2T0 Canada; 902/798-2728.
International Pumpkin Association, Inc., 1606 Union St., San Francisco, CA 94123; 415/346-4446.
New England Pumpkin Growers Association, 445 Middlesex Ave., Wilmington, MA 01887.
*The Perfect Pumpkin* by Gail Damerow; Storey Communications, Inc., Schoolhouse Road, Pownal, VT 05261; 800/441-5700; 1997; $12.95.
Stonycreek Farm. Loren Schmierer, 11366 S.R. 38, E, Noblesville, IN 46060; 317/773-3344.
World Pumpkin Confederation, 14050 Rte. 62, Collins, NY 14034; 716/532-5995.
For pumpkin seeds, consider:
Hollar Seeds, P.O. Box 106, Rocky Ford, CO 81067-0167; 719/254-7411.
Jung Seed Co., 335 S. High St., Randolph, WI 53957; 800/297-3123.
Park Seed Co., 1 Parkton Ave., Greenwood, SC 29647-0001; 800/845-3369.
PineTree Garden Seeds, Box 3000, New Gloucester, ME 04260; 207/926-3400.
Territorial Seed, P.O. Box 157, Cottage Grove, OR 97424-0061; 541/942-9547.

IC-App-0916

professional
**deck**
January/February 2007

# Higher Profits
# From Better Decks

## Housed-Stringer Stairs

## Franchises, Anyone?

## Deck Footings

*BXNNVKR***************AUTO**ALL FOR ADC 07055
#00950157-B99 72701002 S0021-21
GLENN EBERLE
EBLY
PO BOX 5389
NORTH BRAN, NJ 08876-1304

EXHIBIT

# Better Decks

Premium materials production building methods, and custom touches make your more money

IC-App-0018

by Jim Craig

My company has been building custom sun decks and porches in northern Virginia for the past 17 years. In that time, we've developed uniform production methods and selected premium materials that enable us to sell more than 120 projects every year.

Details and custom options not only sell decks but also provide opportunities for increased profit — typically 15 percent to 50 percent higher than for our basic specs. We offer many levels of sophistication, from basic railing systems to enclosed gazebos, decorative pergolas, hot tubs, stone-masonry patios and walkways, built-in storage and planter boxes, and more. Nearly every option can be quickly estimated by the square or linear foot, enabling us to value-engineer the project during the sales process. I have the unit prices memorized, which encourages the homeowner to come to a quick decision and speeds the process of getting a signed contract.

Whether we're subcontracting for a builder or working directly with the homeowner, I always consider how the deck will complement the appearance and improve the function of the home. Many homeowners have trouble visualizing an unbuilt project from sketches or plans, so I've developed a digital presentation portfolio for my laptop that contains images of more than 500 of our projects. Looking over those images often helps customers focus on the types of solutions that might work best for them. The photos also illustrate the importance of matching the style of the deck to that of the home, and show how a well-designed outdoor leisure space can unite the house with the landscape.



IC-App-0919



This approach seems to work well — our closing rate in this region's high-end market is better than 50 percent, and after giving a presentation I often find that the budget has taken a lower priority in the overall plan.

## Dollars for Details

You don't make money by building the deck shown on the Yes You Can TV channel. Details sell decks, so I charge for the details as separate line items.

For example, the posts in our standard railing system are visibly bolted to the exposed face of the band joist, but we also offer an optional post detail that embeds their bases in the deck surface (Figure 1, previous page). The square-foot cost of our basic deck is based on the externally mounted posts. If the customer wants to upgrade to the embedded posts, we charge an additional $20 per linear foot of railing. If the customer selects our 6x6 cedar post option, which includes a decorative finial cap, chamfered corners, and a base molding, we charge $180 per post.

We also offer a broad range of railing options, from the upscale Chippendale style to the relatively modest

# Better Decks = Higher Profits

Madison Colonial version (Figure 2, page 46). The latter isn't much more difficult to assemble than the base-priced square-baluster-and-rail system, but it provides a higher profit opportunity. If your average markup is, say, 35 percent, adding higher-priced options such as these can easily bump it to 50 percent or more.

*Let there be light.* In recent years, local building departments have begun to require safety lighting for exterior stairs. This hasn't posed any problems for us, because we have always offered and recommended a lighting option (Figure 3, page 46). We use low-voltage Hadco sconce and step lights (Hadco, 717/359-7131, www.hadcolighting.com) that we build into the stair risers and mount on the rail posts. This makes the deck a much more pleasant place to be after dark, and it's a huge selling point for us, as well as an important source of added profit.

## Design

To be truly functional, an outdoor deck should be no smaller than 450 square feet, with a minimum depth of 12 feet. We try to keep lumber waste to a minimum by sizing our decks in even 2-foot increments, but we don't hesitate to deviate from that if it will result in a better-proportioned space.

*Principal activities.* In planning a deck, we consider the three activities that decks are most often used for — socializing, barbecuing, and eating — and provide a distinct area for each. The socializing area should comfortably accommodate a few chairs, a lounger or two, and maybe an umbrella table. The minimum area I allow for this is 12x12 feet. An eating area, which will include a larger table and at least four chairs, also requires a minimum of 12x12 feet (Figure 4). The grill area requires at least 50 square feet. Anything smaller than these basic requirements compromises the comfortable enjoyment of the space.

*Let it flow.* It's important to place the deck stairs where traffic between the house and yard won't pass directly through any of those three areas. In most cases, placing stairs at an outside deck corner will create a diagonal flow across the deck, resulting in an awkward division of otherwise usable space. It's best to keep steps as close to the entry door as possible. If elements of the house or landscape make that difficult, I center the steps on the



Figure 4. The three primary uses of a deck are socializing, cooking, and eating. Each activity should have its own space. Comfortable socializing and dining areas require at least 150 square feet each.



Figure 5. Enclosing the base of a deck with paneling or lattice provides a ground-hugging look and prevents it from appearing spindly. Where an elevated deck is located above a walkout basement, substantial support posts help provide a solid feel.

IC-App-0921

# Better Decks = Higher Profits

deck. A nominal 4-foot-wide walkway across the middle of a 16x28-foot deck will still provide comfortable 12x16-foot areas to either side.

*Location, location, location.* An attached deck built in the wrong place is destined to go unused. Placing the deck up against the home's breakfast and family areas makes it appealing and easy to use. Ideally, the location will allow indoor and outdoor activity and entertaining to flow seamlessly together.

*Not always on the sunny side.* The best side of the house for a deck is not always the sunniest side, and sun is not always the owner's objective. A screened-in area on a deck provides a pleasant, shady outdoor entertaining area, free from bothersome insects. It's best to attach the screened area to the house and provide direct access from indoors. An attached screened porch also creates the illusion of greater living space.

Mature trees can be a nice source of shade, but they also have some drawbacks. A tree-shaded deck soon gets a stained and tired appearance as sap and pollen deposits take their toll. Where this is likely to be a problem, I recommend a darker decking color to help conceal any discoloration and reduce cleaning maintenance.

On the other hand, a dark surface on a sunny deck can become uncomfortably warm underfoot. In that case, I recommend a lighter-colored surface. Composite decking lumber is available in various shades to help accommodate those situations.

*Hugging the ground.* Because leggy decks with exposed posts tend to look unfinished and less secure, we keep our decks as low to the ground as possible. If the landscape falls away from the building, forcing an elevated ground-floor deck, a skirt enclosure or latticework helps to visually anchor the deck. If the deck will be located above a walkout basement — especially one that provides finished living space



Above: The basic frame of the deck is assembled on temporary posts placed where they won't interfere with the permanent posts (above). The site for each footing is determined with a plumb bob, and the holes are dug by hand (right). Once the concrete piers have been finished flush with the grade and drilled to accept an expansion bolt, the posts are fastened to post anchors with a palm nailer (far right).

# Better Decks = Higher Profits

— enclosing the base usually isn't an option. We sometimes extend the outdoor leisure space to both levels by installing a stone patio or ground-level platform below the main deck level and connecting the levels by steps, landings, and walkways (Figure 5, page 48). Again, the design goal is to ensure that the deck completely integrates the house and landscape.

*Paint and stain.* A glaring design defect of the average deck is that it's built of pressure-treated lumber and simply left to weather. Meanwhile, the house to which it's attached has painted trim, siding, and other architectural embellishments. From the start, the deck looks like a crude alien growth, or a burr hitching a ride on a helpless host. Extending the house trim color to the deck's perimeter, step risers, and railing system helps to integrate deck and house, creating a more refined look. We apply two coats of oil-based stain to all exposed wood surfaces. Few builders actually enjoy painting, and it certainly complicates the building schedule, but it adds to our profit; plus, it leads to referrals because it really sets our decks apart.

## Materials Matter

Composite decking is our standard surface, and of all the options Trex is our favorite product. Because composites are perceived as a vast improvement over common pressure-treated decking, this choice sets up the basic expectation that we offer a better-quality product than other deck builders in our area. Specifying premium materials also allows us to increase our markup per square foot. For framing material, we use .40 pressure-treated No. 2 lumber, including double 2x10 or 2x12 girders, 6x6 structural posts, and 2x10 joists.

Self-cutting ceramic-coated screws speed assembly of railing systems and trim pieces. The reversibility of



the screws allows us to fit many of the components, then disassemble them for painting.

I save a lot of money by purchasing all of our standard hardware in bulk — including nails, screws, bolts, joist hangers, and post bases — and maintaining a steady inventory. We buy our millwork, post caps, lighting fixtures, screen doors, stain, paint, and even skylights the same way. At the beginning of each week, our eight field crews stock up on supplies at our warehouse before heading off to their sites. That way, there's no time wasted on long trips to the lumberyard for small but essential items.

## Construction Details

Before we break ground for the footings, we assemble the deck framing on temporary support posts (Figure 6, page 50). This allows us to use a plumb bob to accurately position the anchor bolts for the permanent posts, which are supported by 18-inch-diameter concrete piers.

The piers themselves are poured directly into hand-dug holes that have been widened at the bottom to increase the bearing surface. (The rocky, clay-bound soil in our region provides the only form needed.) The



Figure 2. Running the deck boards diagonally eliminates unsightly butt joints. The layout is planned so that no individual board will be longer than 20 feet (top). Joists are spaced on 12-inch centers to provide a stiff surface underfoot. Where adjacent diagonal runs meet, an inlet strip, fastened to blocking between joists (above), provides a pleasing transition.

IC-App 0923

# Better Decks = Higher Profits

piers are filled flush with the ground surface, making them inconspicuous. Although the code allows buried lumber posts on concrete pads placed below the frost line, I've seen plenty of rotted posts pulled from the ground — even pressure-treated posts — after only 15 years in service.

*Framing.* Whenever decking boards deflect underfoot, a deck can seem unpleasantly flimsy. To ensure a solid feel, we usually frame our decks with 2x10 joists on 12-inch centers.

We typically run our decking diagonally. Trex is a dense, flexible material. Although you can special order it in virtually any length, it becomes impractical to handle in lengths over 20 feet. Butt joints in decking are ugly, so I purposely break the deck surface into pattern sections limited by the maximum plank length and separated by inlet strips — full-width 2x6s that all the planks in an area die into (Figure 7, page 52).

A 2x10 finish band wraps the perimeter of the deck framing and conceals the joist end-nails.

*Working with Trex.* Because Trex doesn't have the warping tendency of



solid lumber, heavy fastening isn't needed. Originally, our specs called for the decking to be screw-fastened on alternating sides of each board, one screw per joist, to minimize the pattern of the fasteners. But last year, the county stepped in and required double fastening at every joist, so that's now our standard method.

A Quik Drive screw gun automatically sets proprietary square-drive, ceramic-coated trim-head screws below the surface (Figure 8). This leaves a little eruption of material, or "mushrooming," around the hole. While one worker screws the decking, another follows behind and hammers the mushrooms flush, effectively concealing the screw heads. To

create a more finished appearance, we also use a router to radius the edges of all butt joints and any place where the decking changes direction.

*Solid wood decking.* We offer solid-wood decking as a higher-priced (and more profitable) upgrade. On those jobs, we use ipe, a tropical hardwood, and fasten it with Eb-Ty concealed connectors (Eb-Ty, 888/438-3289, www.ebty.com). The Eb-Ty connector is an oval-shaped plastic wafer designed to fit in a standard biscuit slot cut into the edge of the plank. We save some serious time by ordering the 5/4x6 ipe planks premilled with a running groove on both edges, replacing the biscuit cutter entirely (Figure 9). But installing ipe still takes longer, because each connector must be individually screwed to the joist beneath.

*Railing posts.* We make most of our rail posts from 4x4 cedar, spaced no more than 5 feet apart. We occasion-



Figure 9. Tropical hardwood decking is fastened with the Eb-Ty connector system, which uses a slot-mounted plastic biscuit. Rather than cutting individual slots with a biscuit jointer, the author increases productivity by ordering deck boards with premilled grooves.

# Better Decks = Higher Profits



Figure 10. A hanger nail driven into a precut post at the level of the deck surface provides temporary support while the post is lag-nailed in place before bolting (above). To provide a simpler, stronger installation, posts are paired at either side of angle transitions and corners. The 4-inch gap between posts corresponds to the standard baluster spacing (right).

ally use pressure-treated posts as a budget concession, but only after warning the customer to expect splits and checks as the lumber dries out.

To make post installation as efficient as possible, we cut the 4x4s to a standard 45 1/2-inch length before squaring a line across each at the level of the deck surface. We then drive a hanger nail partway into the post, just above the line (Figure 10). This nail helps hold the post at the proper height while it's plumbed and temporarily toe-nailed in place. Once all the posts have been positioned in this way, each one is drilled for a pair of 1/2-inch carriage bolts spaced on either side of the centerline and as far apart vertically as the joist depth will allow.

We place a full post at either side of every corner and transitional angle, leaving a gap between them approximately as wide as the maximum 4-inch gap between balusters. This is structurally stronger than relying on a single post, and it gives a distinctive and substantial look to the railing system.

*Railing assembly.* We like to limit railing sections to maximum 5-foot lengths. Longer segments allow too much lateral deflection under loading and may also require awkward-looking intermediate support between deck and subrail to prevent sagging. After bolting the posts in place, we measure between sections and assemble a section of railing to fit. Our most popular railing systems include a top and bottom railing separated by the balusters.

Kids like to climb up on the horizontal subrail of a baluster railing to peer over the top. But all that hopping up and down soon separates the subrail from the balusters. To counteract that, we screw the center and end balusters through the top

and bottom rails. That's much more effective than hoping kids won't be kids. The remaining balusters are secured with finish nails, which leave smaller, easily filled holes.

We always fill fastener holes, and sand and stain the railing systems. If the customer elects to use pressure-treated railing components, I recommend a darker finish color to better conceal the inevitable cracks and checks in the lumber. Lighter colors only highlight the defects. ◆

Editor's note: *This article is reprinted from the June 2003 issue of* JLC The Journal of Light Construction. *At that time, author Jim Craig was the owner of Craig Sundecks & Porches in Manassas, Va.*

*No attempt has been made to update pricing to account for inflation. Also, no mention is made of fasteners and framing connectors rated for use with the new generation of ACQ-treated lumber.* — A.E.

IC-App-0925

# Construction Innovation Award

The editors and associates of _The Journal of Light Construction_

present this award to

**EB-TY**

in recognition of their innovative, high quality

hidden deck fastener

**EB-TY.**

1998





THE JOURNAL OF LIGHT CONSTRUCTION

cBITc

IC-App-0926

# Construction Innovation Awards

The editors of *The Journal of Light Construction* have chosen a selection of innovative and efficient tools and products showcase at CBTC, and have given them their own showcase - the Construction Innovation Awards. The intent of this award is to bring attention to the most promising new technologies that we believe stand a good chance of improving building practices.

Come take the tour, and get a hands-on look at these award-winning tools and products. Manufacturers will be on location to demonstrate the products, and you're invited to try them out for yourself.

<div style="writing-mode: vertical"> CONSTRUCTION INNOVATION AWARDS</div>

## Blue Maxx
AAB Building Systems
The Blue Maxx System is representative of this new foundation category that allows builders and remodelers to set their own concrete forms.
Booth #13

## Cedar Breather
Benjamin Obdyke
This 3/8"-thick nylon matrix creates a virtual "rain screen" that has been shown to reduce moisture problems that can lead to warping, splitting, rot, and paint failures.
Booth #12

## Mungo Nylon Anchor
Driltec
Nylon anchors such as the Mungo have proven stronger and more durable for attaching fixtures to tile, concrete, and masonry than typical plastic anchors.
Booth #4

## Deck Tie
Eb-Ty
This hidden deck fastener is perhaps the best we've seen to date. The anchor is fastened with a single screw driven at an angle, providing a tight lock for deck boards.
Booth #3

## A-Square
Ercon
Us d for quick layout, or to evaluate the squareness of any building corner, the A-Square provides an instant, accurate reference.
Booth #8

## Millibar NN
New Necessities
Wrapped around building corners, across intersections, and over roofs, this material successfully meets code requirements for high-wind zones. Less expensive per house and faster to install than metal hardware.
Booth #11



## Air-Admittance Valve
Studor
Since the air flows only one way through these plumbing vent valves, sewer gases can't come back into the house.
Booth #6

## Trex
Decking
A wood/plastic composite made from recycled materials, Trex is used for decking. Prices are comparable to treated lumber, and though it's heavier than wood, it doesn't crack, splinter, or shrink.
Booth #9

## Spray Insulation
Icynene
This low-density foam serves as insulation, air barrier, and vapor retarder. Sprayed in a thin layer, the foam expands up to 100 times, is flexible and fills any voids it encounters.
Booth #1

## Jamsill Door Guard
Jamsill
The Jamsill is a pre-made, multi-part sill pan that installs directly on the rough sill, and can easily be expanded to fit wide openings
Booth #7

## Cordless Jig Saw
Milwaukee Electric Tool
This 12-volt saw has a keyless Quik-Lok blade changing system, an anti-splintering device, and four levels of orbital action.
Booth #14

## Cordless Trim Saw
Panasonic Industrial
The 5 3/8-inch, 12-volt Panasonic is light, has an easily gripped handle, and a simple safety switch. With its super-thin 3/64-inch blade, this little saw can make about 75 cuts through a 2x4 on a single charge.
Booth #15

## Sawmate
Prazi USA
The Sawmate is rip and cross-cutting guide that can be attached to all circular saws, including wormdrives. Can be used to guide plywood cuts over 24 inches wide.
Booth #2

## RoboLaser
Toolz Ltd
This laser features a hand-held remote control that allows you to spin the beam to transfer elevations from one place to another. The RoboLaser is self-leveling when you get it to within 10%, accurate to 1/8 inch over 100 feet.
Booth #5

## Cordless Finish Nailers
Two companies offer power finish nailers that are free from the hassles of pulling a hose around the site.

Paslode
Impulse IM250 II
This well-balanced cordless finish nailer shoots a full-range of 16-gauge nails from 3/4 to 2 inches long. Depth of drive is controlled with an adjustable tip, and the IM250 II runs on a 6-volt ni-cad battery.
Booth #16

Porter-Cable
Bammer
The Bammer is a cordless finish nailer that fires 15-gauge nails. It runs on a piezo-electric ignition, without a battery, and its nosepiece is adjustable, with a hex key located on the magazine.
Booth #10

IC-App-0927

EXhibit 1



**Hidden Deck-Fastening Systems™**

Blue Heron Enterprises, LLC
P.O. Box 414 • Califon, NJ 07830
T: 800-438-3289 • F: (908)-832-5691
www.ebty.com

*For Immediate Release*

**Contacts:**
Ken Cowles
EB-TY
Tel: (800) 438-3289
E-mail: ebtyken@earthlink.net

## EB-TY® Receives 2005 Most Valuable Product Award

CALIFON, N.J.)—EB-TY® Hidden Deck Fastening Systems™ for composite and wood decks has received the prestigious 2005 Most Valuable Product (MVP) award from *Building Products* magazine. EB-TY is one of 28 unique products selected by the magazine in its annual MVP awards issue.

Editor Jean Dimeo said a six-judge panel consisting of builders, remodelers and architects called EB-TY hidden fasteners "innovative alternatives to traditional systems."

**Hidden fasteners provide nail-free look and solve nail popping**

"We created EB-TY hidden fasteners because builders and homeowners don't want to see rusty nails and screws on their decks," said Harry W. Eberle III, estate home builder and company founder, who designed the EB-TY Hidden Fastening System. "With EB-TY, decks always have a clean, nail-free look. The fasteners, used with either composite or wood decking, adjust to climatic conditions allowing a natural expansion and contraction. This is an improvement over traditional systems where decking materials are forced into a rigid position, causing a tendency to 'pop nails.' We refer to it as a 'living deck' because the adjustment process is ongoing."

**Six different EB-TY Fasteners™**

One size does not fit all when it comes to EB-TY Hidden Deck Fasteners™. The company has created six customized fasteners to meet the different needs of decks, docks and boardwalks. Each fastener is designed for specific board widths, board thickness and spacing in use with composites, mahogany, Ipé or other types of wood.

Over



EBTY

# Hidden Deck - Fastening Systems™

Photo CD for Press and Vendors www.ebty.com
1-800-GET-EBTY (1-800-438-3289)

IC-App-0929



# Program MASTER

nu.

### EB·TY®

**HIDDEN DECK-FASTENING SYSTEMS™**

Exhibit N



DVD-R

QUORUM
Productions, Inc.

3850 N Powerline Road  Deerfield Beach, FL 33073  954-571-5221

1) General Woodcraft
   - Mataverde
2) EB-TY
   - Swan

Designing Spaces

August 8th, 2006

IC-App-0931

# This Page is Inserted by IFW Indexing and Scanning Operations and is not part of the Official Record

## BEST AVAILABLE IMAGES

Defective images within this document are accurate representations of the original documents submitted by the applicant.

Defects in the images include but are not limited to the items checked:

- BLACK BORDERS
- IMAGE CUT OFF AT TOP, BOTTOM OR SIDES
- ✓ FADED TEXT OR DRAWING
- BLURRED OR ILLEGIBLE TEXT OR DRAWING
- SKEWED/SLANTED IMAGES
- COLOR OR BLACK AND WHITE PHOTOGRAPHS
- GRAY SCALE DOCUMENTS
- LINES OR MARKS ON ORIGINAL DOCUMENT
- REFERENCE (S) OR EXHIBIT (S) SUBMITTED ARE POOR QUALITY
- OTHER: _____

## IMAGES ARE BEST AVAILABLE COPY.
As rescanning these documents will not correct the image problems checked, please do not report these problems to the IFW Image problem Mailbox.

IC-App-0932



### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

### CENTRAL REEXAMINATION UNIT

### EX PARTE REEXAMINATION CONTROL NUMBER 90/007,661

| | |
|---|---|
| In re Application of | : Examiner: |
| HARRY W. EBERLE, III. | : JEFFREY R. JASTRZAB |
| | |
| Serial No.: 09/186,741 | : Group Art Unit: 3993 |
| | |
| Filing Date: November 5, 1998 | : Attorney Docket Number: |
| | |
| For:    ANCHORING BISCUIT DEVICE | : HWE-105C |

**U.S. Patent No. 6,402,415 B1**

Issue Date: February 8, 2005

Honorable Commissioner of Patents and Trademarks
P. O. Box 1450
Alexandria, VA 22313

### DECLARATION UNDER 37 CFR 1.132 OF KEVIN SABIN

1.      I, Kevin Sabin, age 49, having an address of 88 Cherry Lane, Basking Ridge, New Jersey 07920, have been in the construction industry for 30 years.  I have spent 30 years of my career focusing on design, layout and installation of indoor flooring and have constructed a number of exterior decks.

2.      I am familiar with U.S. Patent No. 6,402,415 B1 entitled "Anchoring Biscuit Device", issued on June 11, 2002, to Harry W. Eberle, III, which is the subject of the above-referenced reexamination proceeding in the United States Patent and Trademark Office (USPTO).  I have thoroughly read this patent, including its claims, and understand it.

1

IC-App-0933

3.    I have reviewed and am familiar with the Office Action dated December 14, 2006 in the above reexamination proceeding, as well as the prior art references cited therein, namely US Patent No. 2,201,129 to Weiland; German Patent Document DE372,483 to Wothe; US Patent No. 1,714,738 to Smith; US Patent No. 2,337,156 to Elmendorf; US Patent 695,722 to Heilmann; US Patent No. 5,619,834 to Chen; and Japanese Patent publication JP 04-371657 to Hashida.  With respect to the Hashida reference, I read the English translation of the abstract, as provided by the USPTO, and reviewed the patent drawing figures.

4.    I am familiar with the EB·TY® Hidden Deck Fasteners sold by Harry Eberle's company.  These EB·TY® Hidden Deck Fasteners (hereinafter "the EB·TY® PRODUCT") are advantageously employed for joining together two adjacent boards and a support board, the adjacent boards being in the same plane and having in their sides pre-cut biscuit receiving slots.  They are typically used in the construction of exterior decks with a plurality of wood or wood-like deck boards secured in parallel alignment to form the deck surface.  The deck boards in such a construction usually rest on, and are supported by, a series of parallel joists, which are most commonly installed with 12-24 inch center to center spacing.

5.    The EB·TY® PRODUCT has a substantially flat horizontal top element having a generally biscuit-shaped top view configuration.  The top element has opposite side walls in the shape of arcs from a top view, the arcs having predetermined radii and arc lengths, and opposite end walls.  The respective side walls are dimensioned and positioned to permit them to be inserted into biscuit receiving slots.  The top element has

2

a center line extending between the end walls. The EB·TY® PRODUCT has two substantially vertical support members attached to an underside of the top element along the center line of the top element. The support members extend perpendicularly downwardly from the top element for a predetermined length in a vertical plane that is aligned with, and directly under, said center line. The two vertical support members are substantially flat and in the vertical plane. The EB·TY® PRODUCT further includes an attachment orifice located on the top element between the two vertical support members. The EB·TY® PRODUCT is typically installed in a deck system with its opposite side walls inserted into respective biscuit-receiving slots cut in the sides of the adjacent boards. A fastener, such as a deck screw, is driven through the orifice and into a support board, such as a joist, underneath the deck. The two adjacent boards and the support board are thereby secured together. The predetermined length permits the EB·TY® PRODUCT to maintain the top element in a predetermined position during use for joining the three boards. The thickness of the vertical support members establishes a desired gap between the adjacent boards. In a typical exterior installation, the gap is adequate to permit moisture from rain, snow, or the like to drain through, but not large enough to create a safety hazard for tripping or catching a narrow shoe heel.. I recognize the EB·TY® PRODUCT as being described and claimed by Eberle's U.S. Patent No. 6,402,415 B1. The drawing figures of that patent generally depicts the commercial embodiment of the EB·TY® PRODUCT with which I am familiar.

6.  I have constructed decks and attached decking boards with EB·TY® PRODUCT in the manner described in §5 above. This experience has given me an

IC-App-0935

intimate understanding of the installation and functionality of the EB-TY PRODUCT®
in this end use.

7.    US Patent No. 2,201,129 to Weiland relates to a tiling system that
includes means for positive mechanical attachment of ceramic or composition tiles to a
surface without use of cement.  The Weiland attachment device has a structure that is
entirely different from the structure of Eberle's EB-TY® PRODUCT, because the
Weiland device is intended to space and secure tiles using a slot cut in the corner of each
tile.  All the forms of the device shown in Weiland's figures include multiple projections
that are oriented in perpendicular directions.   As a result of these perpendicular
projections, the Weiland device inherently cannot engage a workpiece (such as a deck
board) using slots, such as those cut with a biscuit joiner, in the side of the workpiece.
That is to say, Weiland's perpendicularly-oriented projections prevent the sides of the
device from being inserted in side slots.  If the perpendicular projections were removed to
leave only linearly aligned projections, the Weiland device would lose its ability to carry
out the intended functions of aligning and securing tiles at their intersections.  The Eberle
device, on the other hand, has vertical support members that are attached to the underside
of the top element along its center line.  The vertical elements extend perpendicularly
downwardly from the top element in a vertical plane that is aligned with, and directly
under, the center line.  This configuration permits the side walls of the device to be
inserted into biscuit receiving slots cut in the side of adjacent boards during use of the
device for joining and securing the adjacent boards together with a support board.

8.    Based on my knowledge and experience, any construction, including that

4

disclosed by Weiland, in which deck boards could be secured to their supporting joists only at their corners would be completely unsatisfactory. Deck boards are often as much as 16 feet or longer, and so would be subject to marked deformation, warping, bowing, or the like if secured only at their corners. This would create an unsightly appearance and a safety hazard. Instead, building codes and sound construction practice ordinarily dictate that deck boards be attached at every point that they cross the supporting joists. Therefore, the Weiland devices could not be used satisfactorily for deck construction.

9.    US Patent No. 1,714,738 to Smith is directed to a construction of floorboards and a means of fastening such boards to a subflooring. The Smith reference exclusively concerns the installation of floorboards in the manner typically used for interior flooring, such as oak hardwood. In such an installation, adjacent boards are abutted with only a minimal gap between them at the floor finish surface, as is common and functionally necessary with oak or other similar hardwood flooring.

10.    The Smith reference discloses fasteners, of which two forms are shown in Smith's Figs. 3 and 4. These fasteners are used to secure floorboards to subflooring. In both of the disclosed fastener types, there are two generally parallel and downward projections (termed "feet" or "supports" by Smith) from a rectangular or rectilinear top shape. In order to accommodate the fastener while maintaining close abutment at the surface, both sides of each floorboard are provided with a groove 8 and an undercutting 19, as depicted by Smith's Fig. 2. The required width of undercutting generally matches the spacing between the respective parallel downward projections of the fastening device or the desired surface abutment would not be attained. Smith further discloses that "Feet

5

11 engage the subflooring and serve to hold the fasteners straight and to keep them from being bent downward either accidentally or when the nails are being driven. The provision of a means, such as the feet 11, for supporting the fasteners from the sub-flooring so as to positively position them is one <u>important feature of my construction</u>, for by this means the fasteners are all held straight so that when the next board is put in position no difficulty is experienced in fitting its grooves onto the outwardly-projecting flanges of the fasteners." (Page 1, col. 2, lines 99-111, emphasis added). The feet are said to be "spaced." (Page 1, col. 1, line 36).

11. Smith's fasteners have a physical configuration that clearly distinguishes them from the EB·TY® PRODUCT. The Smith fasteners do not have a biscuit-shaped top configuration having opposite side walls in the shape of arcs from a top view, the arcs having predetermined radii and arc lengths. Instead, the fasteners are constructed either of folded or of cut and folded sheet metal in which the top configuration has sides that are parallel straight lines, or parallel straight sides with parallel straight side insets. The fasteners also have vertical support members that are not positioned in a single vertical plane at the centerline; rather, they are on opposite sides of the centerline and spaced away from it. These supports of the Smith fastener cause it to operate like a small table with legs separated for balance. Smith requires specially cut floorboards, as can be seen from Smith's Figure 2. Without undercut 19 in the floorboards, use of Smith's fastener would result in an unacceptable gap in the finish surface between adjacent floorboards.

12. Based on my knowledge and experience in the construction and installation of both wood flooring and exterior decks, a person having ordinary skill in

6

IC-App-0938

the art of installing wood flooring and/or installing outdoor decking would have had no motivation for any modification of the Smith fastener that would lack vertical members located on opposite sides of the centerline and spaced away from it. The skilled artisan would have recognized that removal of these members or significant reduction of the spacing would compromise stability of such a device. During installation, tilting would almost certainly occur, causing the fastening sometimes to be askew, making it impossible to affix or slide the next board onto that fastener.

13.     Based on my knowledge and experience in the wood flooring art, a person having ordinary skill in the art of wood flooring construction and installation at the time of the filing of the Eberle patent would have understood that the lateral spacing between the feet of the Smith fastener (e.g. between feet 11 of Fig. 3 or feet 20 of Fig. 4) must be relatively wide, so as to provide the aforementioned required stability of the table-like top surface of the fastener (e.g., surface 10 of Fig. 3 or surface 22 of Fig. 4). On the other hand, using the Smith fastener to construct a deck with deck boards that are not undercut would be unacceptable, as the gap between boards inevitably would be too large and present a safety hazard.

14.     US Patent No. 2,337,156 to Elmendorf provides a system for laying a flooring of wood tiles on a wood or concrete subfloor without the necessity of employing tongue and groove joints between meeting tiles, and with the assurance that the upper faces of meeting tiles lie in the same plane. Elmendorf employs keys in the form of little plates or disks made of metal, hard fiber board, or other strong, tough material, and teaches that these keys be fitted into edge slots in the tiles. The only constructions

7

depicted by Elmendort place these keys at vertices at which there is at least one 90° interior or exterior angle provided by a corner of a generally square or rectangular tile. The Elmendorf key is substantially flat and does not include any downward projection. Like Smith, Elmendorf teaches a construction in which adjacent tiles are installed in abutting position.

15.     Based on my knowledge and experience in the construction and installation of both wood flooring and exterior decks, a person having ordinary skill in the deck construction art would have had no motivation at the time of the Eberle invention to combine and modify the Smith and Elmendorf references, which both concern attachments for wood flooring in which the boards or tiles are installed substantially in abutment, to provide an anchoring biscuit device suitable for attaching deck boards with a uniform gap between adjacent boards.  Specifically, there would be no motivation, based on these references, for such a person to construct an anchoring biscuit device of the Eberle type.  That is to say, there would be no motivation to construct an anchoring biscuit device having, in combination: (i) a flat horizontal top element having a generally biscuit-shaped top view configuration having opposite side walls in the shape of arcs from a top view, the arcs having predetermined radii and arc lengths; (ii) two substantially vertical support members that are attached to an underside of the top element at a center line and extend downward in a vertical plane that is aligned with, and directly under, said center line; and (iii) in which the vertical support members are substantially flat, in the vertical plane, and act to establish a predetermined spacing between adjacent deck boards  Moreover, there is no apparent or identified deficiency in

8

the Smith device that would motivate a change to a circular top. Even if modified to have a different top shape, Smith's device would still not have vertical supports in the same plane.

16.    The German Patent Publication to Wothe in no way changes my thinking on Smith or Weiland and fails to overcome the shortcomings of Smith and of Weiland. Also, the EB·TY® PRODUCT'S beveled orifices permit fasteners to be inserted either vertically or at an angle, whereas the slots in the Wothe device are provided for expansion and movement.

17.    US Patent No. 5,619,834 to Chen provides a slate positioning device comprising a positioning plate having a horizontal plate and first and second longitudinal plates at two ends of the horizontal plate. The first longitudinal plate has a hole, and the second longitudinal plate has upper and lower convex edges. A screw rod passes through the hole and the slot to fasten the first longitudinal plate and the pad plate. The upper convex edge and lower convex edges are inserted into corresponding grooves of generally rectangular slates at their corners. The Chen device necessarily includes multiple pieces to provide its adjustability, rendering it far more complicated to fabricate and install than the Eberle device.

18.    A critical feature of the Chen slate positioning device is the presence and size of its horizontal plate structure, which is needed so that the covering slates are held away from the underlying wall structure. Without this spacing of the slates away from the wall, it would be impossible to insert and secure bolt 400 of Chen's Figs. 6-8 during the intended use of the Chen device. The attachment of this bolt to the underlying wall

9

IC-App-0941

structure must be completely secure, because the Chen devices and bolts must support the full static vertical loading of the wall slates. The Chen device thus provides an altogether different function than the Eberle anchoring biscuit device, which does not carry any substantial vertical load, but serves only to position the deck boards and secure them to the underlying floor joists on which they rest.

19.     The Chen bracket also differs from the Eberle anchoring biscuit device in that the hole through which bolt 400 passes is not located in the top element between vertical support members. Instead, it is located in a bottom plate. Thus, the Chen device would not function in its intended manner if the bottom plate were eliminated and the hole for bolt 400 were moved to its top plate. If the Chen device were constructed in this configuration, the gap between adjacent slates in the final installation would have to be large enough to give access for tightening the bolt, an impractical requirement.

20.     Based on my knowledge and experience in the construction and installation of both wood flooring and exterior decks, a person having ordinary skill in the deck construction art would find no motivation to combine the Smith and Chen references and modify any fastener they suggest to reach the Eberle anchoring biscuit device. The functioning of the Chen device and the material and heft it needs to secure slate wall panels are so radically different from the requirements for deck construction that a skilled artisan would not regard the Smith and Chen references as being analogous, and in any case, would not be motivated to look to a reference relating to stone wall construction in considering possible modifications of a wooden flooring attachment device. Even if Chen and Smith were combined to produce a Smith fastener with a non-

IC-App-0942

rectangular top, there would still not be vertical support members lying in a single plane. Instead, there would be multiple support members in parallel but different planes.

21.    The teachings of Weiland and Smith do not provide any fastener that has proven commercially practical for deck construction. I have never seen any product based on these disclosures on the market. It is my opinion that no such product would be commercially successful. Even a product modified by a further combination with Wothe and/or Chen would, in my opinion, be no more successful. I have used other floor tile and deck fasteners, and none works as effectively and efficiently as the EB·TY® PRODUCT.

22.    I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willfully false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of the Title 18 of the United States Code, and that such willfully false statements may jeopardize the validity of the application or any patent issuing thereon.

Date: February 9, 2007 _____
                        Kevin Sabin

11

IC-App-0943

# AMENDMENT TRANSMITTAL LETTER

ATTORNEY'S DOCKET NO.:

0247-3 CIP RE

| SERIAL NUMBER:<br>09/186,741 | FILING DATE:<br>November 5, 1998 | EXAMINER:<br>Jeffrey R. Jastrzab | CENTRAL REEXAM UNIT:<br>3993 70181 U.S. PTO |
|---|---|---|---|

INVENTION:

## ANCHORING BISCUIT DEVICE

INVENTOR(s): Harry W. Eberle, III

02/12/07

TO THE ASSISTANT COMMISSIONER FOR PATENTS:
Transmitted herewith is an amendment in the above-identified application. The fee has been calculated as shown below.

## CLAIMS AS AMENDED

| (1) | (2)<br>CLAIMS REMAINING<br>AFTER AMENDMENT | (3) | (4)<br>HIGHEST NUMBER<br>PREVIOUSLY PAID<br>FOR | (5)<br>NO. OF EXTRA<br>CLAIMS PRESENT | (6)<br>RATE | (7)<br>ADDITIONAL<br>FEE |
|---|---|---|---|---|---|---|
| TOTAL<br>CLAIMS | 26 | MINUS | 20 | 6 | X $25 | $ 150.00 |
| INDEP. CLAIMS | 4 | MINUS | 3 | 1 | X $100 | $ 100.00 |
| | | | | TOTAL ADDITIONAL FEE<br>FOR THIS AMENDMENT | | $ 250.00 |

\* If the entry in column 2 is less than the entry in column 4, write "0" in column 5.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, write "20" in this space.
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, write "3" in this space.

[ ] No additional fee is required.

[✓] A Check for $ 250 is enclosed to cover the fee for the additional claims. _____

[ ] The undersigned petitions for a one month time extension for filing this document under 37 C.F.R. 1.136
A Check for $ ___ Is enclosed to cover the fee for this time extension. _____ .
A triplicate copy of this sheet is enclosed.

[✓] Charge any additional fees to Deposit Account No. 50-3832

| February 12, 2007 | _[signature]_ |
|---|---|
| Date | Signature |
| | Ernest D. Buff |
| | Attorney Name |
| (908) 901-0220 | 25,833 |
| Phone | Reg. Number |

I hereby certify that this correspondence is being deposited with the United States Postal Service as Express Mail No._____ in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on February 12, 2007.

_[signature]_

(Signature)

Ernest D. Buff

Attorney of Record

February 12, 2007

(Date)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

### CENTRAL REEXAMINATION UNIT

### EX PARTE REEXAMINATION CONTROL NUMBER 90/007,661

| | |
|---|---|
| In re application of: | : Examiner: |
| | : |
| HARRY W. EBERLE, III | : JEFFREY R. JASTRZAB |
| | : |
| Serial No. 09/186,741 | : Central Reexamination Unit: 3993 |
| | : |
| Filing Date: November 5, 1998 | : Attorney Docket No. HWE-105C |
| | : |
| Priority Date: March 5, 1997 | : |
| | : |
| For: ANCHORING BISCUIT DEVICE | : HWE-105C |

**U.S. Patent No. 6,402,415 B1**

Issue Date: June 11, 2002

Bedminster, NJ 07921
February 12, 2007

Honorable Commissioner of Patents
P.O. BOX 1450
Alexandria, VA 22313-1450

### SUPPLEMENTAL AMENDMENT UNDER 37 CFR 1.550(B)

Supplemental to Applicant's Amendment filed February 9, 2007, the following remarks are filed. Claims 1-2, 7-9, 10 and 13-26 are under consideration.

IC-App-0945

Reexamination of USP 6,402,415
Inventor: Eberle, III
ReExam: 90/007,661
Docket No.: 0247-3 CIP RE
February 12, 2007

## REMARKS

In the course of a further review of the file in the above-identified application, it was discovered that the submission of amendment papers to the Central Reexamination Unit of the United States Patent And Trademark Office on February 9, 2007 was not accompanied by an additional sheet summarizing the cost of additional claims fees. Previously on file with the United States Patent And Trademark Office were two (2) independent and twelve (12) total claims. The amendment papers submitted February 9, 2007 in the above-identified application brought the number of claims on file to four (4) independent and twenty-six (26) total claims.

Accordingly, Applicant is submitting herewith a check in the amount of $250 to cover the total additional fees for one (1) independent claim over three and six (6) additional claims over twenty. In the event that the Commissioner deems that a further fee is required, it is respectfully requested that such additional fee be charged to applicant's deposit account no. 50-3832.

## Conclusion

In view of the Remarks set forth above and in applicant's February 9th amendment, as well as the additional claim fees submitted herewith, it is submitted that the present application is in condition for further processing. Accordingly, reconsideration of the rejections of issued claims 1-12 and their confirmation, together with the allowance of newly presented claims 13-26, are earnestly solicited.

Respectfully submitted,

Harry W. Eberle III

By

Ernest D. Buff
(His Attorney)
Reg. No. 25,833
(908) 901-0220



_Reexam_

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re: Eberle, III
U.S Patent No.: 6,402,415
Serial Number: 09/186,741
Filed: 11/05/1998
Title: Anchoring Biscuit Device
        3193
**Control No. 90/007,661**

---

## DEFECTIVE SERVICE BY PATENT OWNER

**Mail Stop Ex Parte Reexam**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir or Madam:

An Office Action dated December 14, 2006 was issued in the above-captioned

Reexamination Control No. 90/007,661. Requester received an incomplete copy of Patent

Owner's Amendment and Response with a Certification of Mailing dated February 9, 2007.

Patent Owner failed to properly serve Requester with a complete copy of its response as

required by 37 C.F.R. §§ 1.550(f) and 1.248. Specifically, Patent Owner's Response indicates

that a demo Photo CD was submitted at Exhibit M of the Declaration of Harry W. Eberle, III at

Exhibit M, as well as a VCR tape at Exhibit N, and a DVD at Exhibit O. Patent Owner failed to

provide Requester a copy of any of these submissions. Indeed, Patent Owner does not provide a

Certificate of Service certifying that its Amendment and Response were served upon counsel for

Requester.

IC-App-0947



Accordingly, Patent Owner's response is defective, and should be refused consideration.

See MPEP §2266.03 Service of Papers.

Respectfully submitted,

William C. Schrot
Registration No. 48,447
**Berenato White & Stavish LLC**
6550 Rock Spring Drive, Suite 240
Bethesda, Maryland, 20817
Telephone: (301) 896-0600
Facsimile: (301) 896-0607
Attorneys for Requester

**Certificate of Mailing/Service:** I certify that on the date below, this Communication asserting Defective Service was sent via Courier to: Mail Stop Ex Parte Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450, and via First Class Mail to Kenneth P. Glynn, Esq, attorney of record for the patent.

February 15th, 2007

William C. Schrot

# ERNEST D. BUFF & ASSOCIATES, LLC

## *Intellectual Property Solutions*

231 Somerville Road
Bedminster, NJ 07921
(908) 901-0220
FAX (908) 901-0330

**FAX RECEIVED**

**FEB 22 2007**

CENTRAL REEXAMINATION UNIT

## FAX COVER SHEET

Date:            **February 22, 2007**
From:            **Ernest D. Buff**
Attorney #:
To:              **Patricia Volpe, Central Reexamination Unit, USPTO**
Re:              **Reexamination Control No.: 90/007,661**

Pages sent (including cover):  2

| RECIPIENT | FIRM | CC: | FAX NUMBER |
|-----------|------|-----|------------|
| Patricia Volpe | USPTO | | 1 (571) 273-9900 |

**Message:**

Dear Ms. Volpe:

In accordance with our telephone conference on February 21, 2007, enclosed please find a copy of the Certificate of Service that has been served on Requestor's Attorney of Record.

Please do not hesitate to contact us if we can be of further assistance in this matter.

Very truly yours,

Ernest D. Buff

**Confidentiality Note:**
The documents accompanying this telecopy transmission contain information from the law firm of Ernest D. Buff & Associates, LLC, which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named in the transmittal sheets. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone so that we can arrange for the return of the original documents to us at no cost to you.

Time Sent:_____  Operator:_____

0247-3 CIP RE – CERTIFICATE OF SERVICE –FAX LTR

IC-App-0949

## EX PARTE REEXAMINATION CONTROL NUMBER 90/007,661

In re application of:                    : Examiner:                    **FAX RECEIVED**
                                         :
HARRY W. EBERLE, III                     : JEFFREY R. JASTRZAB          **FEB 2 2 2007**
                                         :
Serial No. 09/186,741                    : Central Reexamination Unit: 3993   CENTRAL REEXAMINATION UNIT
                                         :
Filing Date:  November 5, 1998           : Attorney Docket No.  HWE-105C
                                         :
Priority Date: March 5, 1997             :
                                         :
For:    ANCHORING BISCUIT DEVICE         :

   **U.S. Patent No. 6,402,415 B1**

Issue Date: June 11, 2002


### CERTIFICATE OF SERVICE


   The undersigned hereby certifies that a complete copy of this Supplemental Amendment Under 37 CFR 1.550(B) was served on this 22 day of February 2007 upon the below-listed party of record, by mailing the same via United States Express Mail in an envelope addressed to the Requester's attorney of record as follows:


Mathew W. Stavish
**BERENATO, WHITE & STAVISH, LLC**
6550 Rock Spring Drive, Suite 240
Bethesda, Maryland 20817


_____
Signature

Ernest D. Buff, Esq.
Reg. No.: 25,833

Ernest D. Buff & Associates
231 Somerville Road
Bedminster, NJ 07920

IC-App-0950

# GLYNN & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

KENNETH P. GLYNN, ESQ.
Bars: New Jersey, Federal, Conn.,
U.S. Patent & Trademark Office

DIERDRA M. RAGNO, ESQ.
Bars: New Jersey, Federal
U.S. Patent & Trademark Office

CYNTHIA V. PONTECORVO
Licensing Liaison

STEVEN P. GLYNN
Trademark & Corporate Liaison

Mailing Address:
24 Mine Street
Flemington
New Jersey 08822-1598

Telephone:
(908) 788-0077

Telefax:
(908) 788-3999

## FACSIMILE TRANSMISSION

TO: Patent Office Paralegal Attn: Patricia Volpe

FAX NUMBER: (571) 273-9900

FROM: Kenneth P. Glynn

RE: Reexamination of U.S. Patent 6,851,884

COMMENTS: see attached; please call;
Thank you.

DATE: February 22, 2007    TIME: 4:50 PM

NO OF PAGES (INCLUDING COVER SHEET): _____

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE
AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED AND
CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS
COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US
IMMEDIATELY BY TELEPHONE. THANK YOU.

PLEASE ACKNOWLEDGE RECEIPT OF THIS TRANSMISSION. THANK YOU.

PREPARED BY _____ EAD _____    SENT BY _____ EAD _____

# GLYNN & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

KENNETH P. GLYNN, ESQ.
Bars: New Jersey, Federal, Conn.,
U.S. Patent & Trademark Office

DEIRDRA M. MEAGHER, ESQ.
Bars: New Jersey, Federal
U.S. Patent & Trademark Office

CYNTHIA V. PONTECORVO
Licensing Liaison

STEVEN P. GLYNN
Trademark & Corporate Liaison

Mailing Address:
24 Mine Street
Flemington
New Jersey 08822

Telephone:
(908) 788-0077

Telefax:
(908) 788-3999

22 February 2007

William C. Schrot, Esq.
Berenato, White & Stavish
6550 Rock Spring Drive Suite 240
Bethesda, Maryland 20817

RE: Reexamination of U.S. Patent 6,851,884  ~~6,402,415 PY.~~
Title: DECKING ANCHORING DEVICE
Applicant: Eberle, III
Your Ref.: 9003.003

Dear Mr. Schrot,

I am in receipt of your February 15, 2007 letter regarding the above. We did mail out a copy of the Amendment and Response to you as you requested. However, enclosed is yet another copy along with a Certification of Mailing. The earlier copy was not certified and sent by regular mail. As you can see, this copy is by overnight Express Mail Return Receipted so that we both know that your office received it and the return receipt will be proof.

The entire document with attachments that was filed in the USPTO is enclosed. We ran out of copies of the DVDs and tape and are urgently procuring new copies. We expect to send these to you under separate cover within the next five business days.

In advance, I thank you for your patience with respect to the transmittal of the VCR tape and the DVDs.

Sincerely,

Kenneth P. Glynn, Esq.

KPG/EAD
Cc: Glen Eberle (Letter and Certification of Mailing);
Ernest Buff, Esq. (Letter and Certification of Mailing); and,
Patricia Volpe, USPTO (Letter and Certification of Mailing)
EM RRR No. EB 181517617 US

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

In re Application of:                           :Examiner:

HARRY W. EBERLE, III                       :BIBHU MOHANTY

Serial No. 10/393,100                         :Group Art Unit: 3993

Filing Date: March 20, 2003                 :Attorney Docket No.

For: DECKING ANCHOR DEVICE         :HWE-108A

U.S. Patent No. 6,851,884 B2

Issue Date: February 8, 2005

Honorable Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22313-1450

<u>CERTIFICATION OF MAILING BY EXPRESS MAIL</u>

The undersigned hereby certifies that this document was delivered to William C. Schrot, Esq. in Bethesda, Maryland 20817 between 8:30 a.m. and 4:30 p.m. on Thursday, February 22, 2007. The undersigned further declares that this Certification is made with the knowledge that willful false statements are punishable by fine or imprisonment, or both, under application sections of United States law, and that willful false statements made before the United States Patent and Trademark Office may jeopardize the validity of the application or issuing patent related thereto.

Kenneth P. Glynn

KPG/VNS
EM RRR EB 181517617 US

# GLYNN & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

KENNETH P. GLYNN, ESQ.
Bars: New Jersey, Federal, Conn.,
U.S. Patent & Trademark Office

DIERDRA M. RAGNO, ESQ.
Bars: New Jersey, Federal
U.S. Patent & Trademark Office

CYNTHIA V. PONTECORVO
Licensing Liaison

STEVEN P. GLYNN
Trademark & Corporate Liaison

Mailing Address:
24 Mine Street
Flemington
New Jersey 08822-1598

Telephone:
(908) 788-0077

Telefax:
(908) 788-3999

## FACSIMILE TRANSMISSION

**FAX RECEIVED**

FEB 2 3 2007

TO: Patent office paralegal Attn. Patricia Voipe CENTRAL REEXAMINATION UNIT

FAX NUMBER: (571)273-9900

FROM: Kenneth P. Glynn

RE: Reexamination of U.S. patent 6,851,884

COMMENTS:

DATE: February 23, 2007    TIME: 5:00 PM

NO OF PAGES (INCLUDING COVER SHEET): 7

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE
AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED AND
CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS
COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US
IMMEDIATELY BY TELEPHONE. THANK YOU.

PLEASE ACKNOWLEDGE RECEIPT OF THIS TRANSMISSION. THANK YOU.

PREPARED BY EAD    SENT BY EAD

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:                     : Examiner:
                                          :
HARRY W. EBERLE, III                      : KENNETH BOMBERG
                                          :
Serial No.  09/186,741                    : Group Art Unit: 3993
                                          :
Filing Date:  November 5, 1998            : Attorney Docket No.
                                          :
For: ANCHORING BISCUIT DEVICE             : HWE-105C

**FAX RECEIVED**

**FEB 2 3 2007**

CENTRAL REEXAMINATION UNIT

U.S. Patent No. 6,402,415 B1

Issue Date: June 11, 2002

**REEXAMINATION CONTROL NUMBER 90/007,661**

Mail Stop Ex Parte Reexam
Honorable Commissioner of Patents
P.O. BOX 1450
Alexandria, VA 22313-1450

## SUPPLEMENTAL RESPONSE

In response to Requester's attorney's letter (William Schrot, Esq.) to the United
States Patent & Trademark Office in the above matter dated February 15, 2007, applicant
encloses for the record herewith the following:

(1) Certification of Service dated February 09, 2007 as to the transmittal of the
Amendment and Response in this matter to William Schrot, Esq.;

(2) Certification of Service dated February 23, 2007 as to the three physical Exhibits
(two DVDs and one VCR tape) in this matter to William Schrot, Esq..

1

(3) A copy of the aforesaid two DVDs and the VCR tape for the record.

Dated February 23, 2007

Kenneth P. Glynn
Reg. No. 26,893
Attorney for Applicant
24 Mine Street
Flemington, NJ 08822
(908) 788-0077 Tele
(908) 788-3999 Fax

kpg/hd
Enclosures
Via Express Mail RRR No. EB 181517665 US

2

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:                          : Examiner:
                                               :
HARRY W. EBERLE, III                           : KENNETH BOMBERG
                                               :
Serial No.  09/186,741                         : Group Art Unit: 3993
                                               :
Filing Date:  November 5, 1998                 : Attorney Docket No.
                                               :
For: ANCHORING BISCUIT DEVICE                  : HWE-105C

U.S. Patent No. 6,402,415 B1

Issue Date: June 11, 2002

**REEXAMINATION CONTROL NUMBER 90/007,661**

Mail Stop Ex Parte Reexam
Honorable Commissioner of Patents
P.O. BOX 1450
Alexandria, VA 22313-1450

### CERTIFICATION OF MAILING BY EXPRESS MAIL

The undersigned hereby certifies that this document was delivered to the United States Post Office in Flemington, New Jersey 08822 between 7:30 a.m. and 4:45 p.m. on Friday, February 23, 2007 as EXPRESS MAIL. The undersigned hereby further certifies that a copy of this document was delivered to the United States Post Office in Flemington, New Jersey 08822 between 7:30 a.m. and 4:45 p.m. on Thursday, August 17, 2006 as EXPRESS MAIL, addressed to William Schrot, Esq. at his business address at Berenato, White & Stavish, 6550 Rick Spring Drive, Bethesdea MD 20817.   The undersigned further declares that this Certification is made with the knowledge that willful false statements are punishable by fine or imprisonment, or both, under applicable sections of United States law, and that willful false statements made before the United States Patent and Trademark Office may jeopardize the validity of the application or issuing patent related thereto.

Kenneth P. Glynn

KPG/NLK/LBH

EMRRR No. . EB 181517665 US

3

# GLYNN & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

KENNETH P. GLYNN, ESQ.
Bars: New Jersey, Federal, Conn.,
U.S. Patent & Trademark Office

DEIRDRA M. MEAGHER, ESQ.
Bars: New Jersey, Federal
U.S. Patent & Trademark Office

_____

CYNTHIA V. PONTECORVO
Licensing Liaison

STEVEN P. GLYNN
Trademark & Corporate Liaison

Mailing Address:
24 Mine Street
Flemington
New Jersey 08822

Telephone:
(908) 788-0077

Telefax:
(908) 788-3999

23 February 2007

William C. Schrot, Esq.
Berenato, White & Stavish
6550 Rock Spring Drive Suite 240
Bethesda, Maryland 20817

### RE:  Reexamination of U.S. Patent 6,402,415

### Control Number 90/007,661

Dear Mr. Schrot,

I am in receipt of your February 15, 2007 letter regarding the above.  This is further to my letter of yesterday.  Enclosed are the two DVDs and the Tape Exhibits in the above matter and in Control Number 90/007,770.  We thank you for your patience with respect to the transmittal of the VCR tape and the DVDs.

Sincerely,

Kenneth P. Glynn, Esq.

KPG/EAD
Cc: Glen Eberle;
     Ernest Buff, Esq.; and,
     Patricia Volpe, USPTO
EM RRR No. EB 181517634 US

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                    :Examiner:

HARRY W. EBERLE, III                     :KENNETH BOMBERG

Serial No. 09/186,741                    :Group Art Unit: 3993

Filing Date: November 5, 1998            :Attorney Docket No.

For: ANCHORING BISCUIT DEVICE            :HWE-105C

U.S. Patent No. 6,402,415 B1

Issue Date: June 11, 2002

Mail Stop Ex Parte Reexam
Honorable Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22313-1450


## CERTIFICATION OF MAILING BY EXPRESS MAIL

The undersigned hereby certifies that this document to which this Certification is attached, along with the two DVDs and one tape designated therein was delivered to the United States Patent Office, Flemington, New Jersey 08822 addressed to William C. Schrot, Esq. Berenato, White & Stavish, 6550 Rock Spring Drive, Suite 240, Bethesda, Maryland 20817, between 8:30 a.m. and 4:30 p.m. on Friday, February 23, 2007. The undersigned further declares that this Certification is made with the knowledge that willful false statements are punishable by fine or imprisonment, or both, under application sections of United States law, and that willful false statements made before the United States Patent and Trademark Office may jeopardize the validity of the application or issuing patent related thereto.

Kenneth P. Glynn

KPG/VNS
EM RRR EB 181517634 US

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:        :Examiner:

HARRY W. EBERLE, III       :JEFFREY R. JASTRZAB

Serial No. 09/186,741       :Group Art Unit: 3993

Filing Date: November 5, 1998       :Attorney Docket No.

Priority Date: March 5, 1997

For: ANCHORING BISCUIT DEVICE       :HWE-105C

U.S. Patent No. 6,402,415 B1

Issue Date: June 11, 2002

Mail Stop Ex Parte Reexam
Honorable Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## CERTIFICATION OF MAILING BY EXPRESS MAIL

The undersigned hereby certifies that this was delivered to the United States
Patent Office, Flemington, New Jersey 08822 addressed to William C. Schrot, Esq.
Berenato, White & Stavish, 6550 Rock Spring Drive, Suite 240, Bethesda, Maryland
20817, between 8:30 a.m. and 4:30 p.m. on February 9, 2007. The undersigned further
declares that this Certification is made with the knowledge that willful false statements
are punishable by fine or imprisonment, or both, under application sections of United
States law, and that willful false statements made before the United States Patent and
Trademark Office may jeopardize the validity of the application or issuing patent related
thereto.

Kenneth P. Glynn

KPG/VNS



### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | : Examiner: |
| | : |
| HARRY W. EBERLE, III | : KENNETH BOMBERG |
| | : |
| Serial No.  09/186,741 | : Group Art Unit: 3993 |
| | : |
| Filing Date:  November 5, 1998 | : Attorney Docket No. |
| | : |
| For: ANCHORING BISCUIT DEVICE | : HWE-105C |

U.S. Patent No. 6,402,415 B1

Issue Date: June 11, 2002

**REEXAMINATION CONTROL NUMBER 90/007,661**

Mail Stop Ex Parte Reexam
Honorable Commissioner of Patents
P.O. BOX 1450
Alexandria, VA 22313-1450

### SUPPLEMENTAL RESPONSE

In response to Requester's attorney's letter (William Schrot, Esq.) to the United

States Patent & Trademark Office in the above matter dated February 15, 2007, applicant

encloses for the record herewith the following:

(1)  Certification of Service dated February 09, 2007 as to the transmittal of the

Amendment and Response in this matter to William Schrot, Esq.;

(2)  Certification of Service dated February 23, 2007 as to the three physical Exhibits

(two DVDs and one VCR tape) in this matter to William Schrot, Esq..

1

IC-App-0961

(3) A copy of the aforesaid two DVDs and the VCR tape for the record.


Dated February 23, 2007

Kenneth P. Glynn
Reg. No. 26,893
Attorney for Applicant
24 Mine Street
Flemington, NJ 08822
(908) 788-0077 Tele
(908) 788-3999 Fax


kpg/hd
Enclosures
Via Express Mail RRR No. EB 181517665 US

2

IC-App-0962

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | : Examiner: |
| | : |
| HARRY W. EBERLE, III | : KENNETH BOMBERG |
| | : |
| Serial No. 09/186,741 | : Group Art Unit: 3993 |
| | : |
| Filing Date: November 5, 1998 | : Attorney Docket No. |
| | : |
| For: ANCHORING BISCUIT DEVICE | : HWE-105C |

U.S. Patent No. 6,402,415 B1

Issue Date: June 11, 2002

**REEXAMINATION CONTROL NUMBER 90/007,661**

Mail Stop Ex Parte Reexam
Honorable Commissioner of Patents
P.O. BOX 1450
Alexandria, VA 22313-1450

### CERTIFICATION OF MAILING BY EXPRESS MAIL

The undersigned hereby certifies that this document was delivered to the United States Post Office in Flemington, New Jersey 08822 between 7:30 a.m. and 4:45 p.m. on Friday, February 23, 2007 as EXPRESS MAIL. The undersigned hereby further certifies that a copy of this document was delivered to the United States Post Office in Flemington, New Jersey 08822 between 7:30 a.m. and 4:45 p.m. on Thursday, August 17, 2006 as EXPRESS MAIL, addressed to William Schrot, Esq. at his business address at Berenato, White & Stavish, 6550 Rick Spring Drive, Bethesdea MD 20817. The undersigned further declares that this Certification is made with the knowledge that willful false statements are punishable by fine or imprisonment, or both, under applicable sections of United States law, and that willful false statements made before the United States Patent and Trademark Office may jeopardize the validity of the application or issuing patent related thereto.

Kenneth P. Glynn

KPG/NLK/LBH

EMRRR No. . EB 181517665 US

IC-App-0963

| | |
|---|---|
| In re Application of: | :Examiner: |
| HARRY W. EBERLE, III | :JEFFREY R. JASTRZAB |
| Serial No. 09/186,741 | :Group Art Unit: 3993 |
| Filing Date: November 5, 1998 | :Attorney Docket No. |
| Priority Date:  March 5, 1997 | |
| For: ANCHORING BISCUIT DEVICE | :HWE-105C |
| U.S. Patent No. 6,402,415 B1 | |
| Issue Date: June 11, 2002 | |

Mail Stop Ex Parte Reexam
Honorable Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## CERTIFICATION OF MAILING BY EXPRESS MAIL

The undersigned hereby certifies that this was delivered to the United States Patent Office, Flemington, New Jersey 08822 addressed to William C. Schrot, Esq. Berenato, White & Stavish, 6550 Rock Spring Drive, Suite 240, Bethesda, Maryland 20817, between 8:30 a.m. and 4:30 p.m. on February 9, 2007.  The undersigned further declares that this Certification is made with the knowledge that willful false statements are punishable by fine or imprisonment, or both, under application sections of United States law, and that willful false statements made before the United States Patent and Trademark Office may jeopardize the validity of the application or issuing patent related thereto.

Kenneth P. Glynn

KPG/VNS

IC-App-0964

# GLYNN & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

KENNETH P. GLYNN, ESQ.
Bars: New Jersey, Federal, Conn.,
U.S. Patent & Trademark Office

DEIRDRA M. MEAGHER, ESQ.
Bars: New Jersey, Federal
U.S. Patent & Trademark Office

———————

CYNTHIA V. PONTECORVO
Licensing Liaison

STEVEN P. GLYNN
Trademark & Corporate Liaison

Mailing Address:
24 Mine Street
Flemington
New Jersey 08822

Telephone:
(908) 788-0077

Telefax:
(908) 788-3999

23 February 2007

William C. Schrot, Esq.
Berenato, White & Stavish
6550 Rock Spring Drive Suite 240
Bethesda, Maryland 20817

**RE: Reexamination of U.S. Patent 6,402,415**

**Control Number 90/007,661**

Dear Mr. Schrot,

I am in receipt of your February 15, 2007 letter regarding the above. This is further to my letter of yesterday. Enclosed are the two DVDs and the Tape Exhibits in the above matter and in Control Number 90/007,770. We thank you for your patience with respect to the transmittal of the VCR tape and the DVDs.

Sincerely,

Kenneth P. Glynn, Esq.

KPG/EAD
Cc: Glen Eberle;
    Ernest Buff, Esq.; and,
    Patricia Volpe, USPTO
EM RRR No. EB 181517634 US

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | :Examiner: |
| HARRY W. EBERLE, III | :KENNETH BOMBERG |
| Serial No. 09/186,741 | :Group Art Unit: 3993 |
| Filing Date: November 5, 1998 | :Attorney Docket No. |
| For: ANCHORING BISCUIT DEVICE | :HWE-105C |

U.S. Patent No. 6,402,415 B1

Issue Date: June 11, 2002

Mail Stop Ex Parte Reexam
Honorable Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## CERTIFICATION OF MAILING BY EXPRESS MAIL

The undersigned hereby certifies that this document to which this Certification is attached, along with the two DVDs and one tape designated therein was delivered to the United States Patent Office, Flemington, New Jersey 08822 addressed to William C. Schrot, Esq. Berenato, White & Stavish, 6550 Rock Spring Drive, Suite 240, Bethesda, Maryland 20817, between 8:30 a.m. and 4:30 p.m. on Friday, February 23, 2007. The undersigned further declares that this Certification is made with the knowledge that willful false statements are punishable by fine or imprisonment, or both, under application sections of United States law, and that willful false statements made before the United States Patent and Trademark Office may jeopardize the validity of the application or issuing patent related thereto.

Kenneth P. Glynn

KPG/VNS
EM RRR EB 181517634 US

# ARTIFACT SHEET

Enter artifact number below. Artifact number is application number + artifact type code (see list below) + sequential letter (A, B, C …). The first artifact folder for an artifact type receives the letter A, the second B, etc.. Examples: 59123456PA, 59123456PB, 59123456ZA, 59123456ZB

*90/007,661 VA*

Indicate quantity of a single type of artifact received but not scanned. Create individual artifact folder/box and artifact number for each Artifact Type.

☐ CD(s) containing:
   computer program listing
   Doc Code: Computer       ☐ Artifact Type Code: P
   pages of specification
   and/or sequence listing
   and/or table
   Doc Code: Artifact       ☐ Artifact Type Code: S
   content unspecified or combined
   Doc Code: Artifact       ☐ Artifact Type Code: U

☐ Stapled Set(s) Color Documents or B/W Photographs
   Doc Code: Artifact    Artifact Type Code: C

☐ Microfilm(s)
   Doc Code: Artifact    Artifact Type Code: F

☑ Video tape(s)
   Doc Code: Artifact    Artifact Type Code: V

☐ Model(s)
   Doc Code: Artifact    Artifact Type Code: M

☐ Bound Document(s)
   Doc Code: Artifact    Artifact Type Code: B

☐ Confidential Information Disclosure Statement or Other Documents marked Proprietary, Trade Secrets, Subject to Protective Order, Material Submitted under MPEP 724.02, etc.
   Doc Code: Artifact    Artifact Type Code X

☐ Other, description: _____
   Doc Code: Artifact    Artifact Type Code: Z

March 8, 2004



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,661 | 08/08/2005 | 4602415 | 9003.001 | 1207 |

| | | EXAMINER |
|---|---|---|
| 7590 | 05/08/2007 | JASTRZAB, J |

Kenneth P. Glynn
GLYNN & ASSOCIATES, PC
24 Mine Street
Flemington, NJ 08822

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

DATE MAILED: 05/08/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

5/8/2007

MATTHEW W. STAVISH, ESQ.

BERENATO WHITE & STAVISH LLC

6550 ROCK SPRING DRIVE, SUITE 240

BETHESDA, MD  20817

# *EX PARTE*  REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/007661

PATENT NO.  6,402,415

ART UNI   3993

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a replly has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| | Control Number | Patent Under Reexamination |
|---|---|---|
| **Notice Of Defective Paper In Ex Parte Reexamination** | 90/007,661 | 4602415 |
| | **Examiner** | **Art Unit** | |
| | Jeffrey R. Jastrzab | 3993 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

1. ☐ Since no proof of service was included with the paper filed on _____ , it fails to comply with 37 CFR 1.248 and 1.540. Proof of service is required within ONE (1) MONTH or THIRTY (30) DAYS from the mailing date of this letter, whichever is longer. Failure to provide proof of service may result in a refusal to consider the paper. If the failure to comply with this requirement results in a patent owner failure to file a timely and appropriate response to any Office action or any written statement of an interview required under 37 CFR 1.560(b), the prosecution of the reexamination proceeding will be terminated under 37 CFR 1.550(d).

2. ☐ The paper filed on _____ is unsigned. A duplicate paper or ratification, properly signed, is required within ONE (1) MONTH or THIRTY (30) DAYS from the mailing date of this letter, whichever is longer. Failure to comply with this requirement will result in the paper not being considered. If the failure to comply results in a patent owner failure to file a timely and appropriate response to any Office action or any written statement of an interview required under 37 CFR 1.560(b), the prosecution of the reexamination proceeding will be terminated under 37 CFR 1.550(d).

3. ☐ The paper filed on _____ is signed by _____ , who is not of record. A duplicate paper or ratification signed by a person of record, a person made of record by way of a new power of attorney, is required within ONE (1) MONTH or THIRTY (30) DAYS from the mailing date of this letter, whichever is longer. Failure to comply with this requirement will result in the paper not being considered. If the failure to comply results in a patent owner failure to file a timely and appropriate response to any Office action or any written statement of an interview required under § 1.560(b), the prosecution of the reexamination proceeding will be terminated under 37 CFR 1.550(d).

4. ☒ The Amendment filed on <u>12 February 2007</u> does not comply with 37 CFR 1.530(d)-(j). Patent owner is given ONE (1) MONTH or THIRTY (30) DAYS from the mailing date of this letter, whichever is longer to correct this informality; otherwise, the prosecution of the the reexamination proceeding will be terminated under (37 CFR 1.550(d)).

5. ☐ The amendment filed by patent owner on _____ , does not comply with 37 CFR ☐1.20(c)(3) and/or ☐1.20(c)(4), as to excess claim fees. Patent owner is given a time period of ONE (1) MONTH or THIRTY (30) DAYS from the mailing date of this letter, whichever is longer, to correct this fee deficiency, or the prosecution of the reexamination proceeding will be terminated under 37 CFR 1.550(d), to effect the "abandonment" set forth in 37 CFR 1.20(c)(5).

6. ☐ Other :

Note: single bracketing is required for omitted subject matter per 37 CFR 1.530(f)(1).

**NOTE: EXTENSION OF TIME ARE GOVERNED BY 37 CFR 1.550(c). If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.**

cc: Requester (if third party requester)

Jeffrey R. Jastrzab
Primary Examiner
Art Unit 3993

IC-App-0970



09- 19- 07

$\mathcal{DAC}$
& an



OIPE IAP-35
SEP 17 2007
PATENT & TRADEMARK OFFICE

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re application of: | Harry W. Eberle, III | Central RE Unit: | 3993 |
| Serial No.: | 09/186,741 | Examiner: | Jeffrey R. Jastrzab |
| Filed: | November 5, 1998 | ExParte RE Control No. | 90/007,661 |
| For: | **ANCHORING BISCUIT DEVICE** | | |
| Old Docket No.: | HWE-105C | | |
| New Docket No.: | 0247-3 CIP RE | | |

Bedminster, N.J. 07921
September 17, 2007

Mailstop Petitions
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

## PETITION FOR REVIVAL OF
## UNINTENTIONALLY ABANDONDED APPLICATION
### UNDER 37 C.F.R. 1.137(b)

Applicant respectfully petitions, through his attorney of record, the Commissioner of Patents and Trademarks to revive the above-identified application and to reinstate prosecution of the ExParte Reexamination proceeding.

Applicant prepared and submitted on May 18, 2007 a Supplemental Amendment Under 37 CFR 1.550(b) in response to the Notice of Defective Paper in Ex Parte Reexamination dated May 8, 2007. The Supplemental Amendment was never received by the United States Patent And Trademark Office, and the application therefore became abandoned on June 8, 2007.

The entire delay in responding to the Notice was unintentional.

Applicant is resubmitting herewith a copy of the Supplemental Amendment and Response Under 37 CFR 1.550 (b) which was filed on May 18, 2007

09/20/2007 FRETEK11 00000031 09186741
01 FC:2453          750.00 OP

Copied from 09186741 on 10/30/2007

IC-App-0971

by date-certified First Class Mail in response to the Notice. The Supplemental Amendment presents arguments that are believed to place the application in condition for allowance. The revival is requested in order to provide sufficient time for the Examiner to consider the Amendment.

A check made payable to the Director of U.S. Patents and Trademarks in the amount of $750 is enclosed to cover the $750 fee associated with this Petition to Revive.

Respectfully submitted,

Harry W. Eberle, III

By_____

Ernest D. Buff
(His Attorney)
Reg. No. 25,833
(908) 901-0220

0247-3 CIP RE-PR

Copied from 09186741 on 10/30/2007



# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Application of: | Harry W. Eberle, III | Central RE Unit | 3993 |
| Serial No.: | 09/186,741 | Examiner: | Jeffrey J. Jastrzab |
| For: | **ANCHORING BISCUIT DEVICE** | | |
| ExParte RE Control No. | 90/007,661 | | |
| Old Docket No.: | HWE 105C | | |
| New Docket No.: | 0247-3 CIP RE | | |

Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, New Jersey 079210
(908) 901-0220
September 17, 2007

Commissioner For Patents
P.O. Box 1450
Alexandria, VA 22313-1450

S i r :

## Certificate of Mailing by Express Mail

I hereby certify that this correspondence is being deposited with the United States Postal Service as Express Mail in an envelope bearing Express Mail Label No. EQ 1744 53 791 US addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on   September 17, 2007  .

*Signature*

**Ernest D. Buff**

*Attorney of Record*

*September 17, 2007*

*(Date)*

Copied from 09186741 on 10/30/2007

IC-App-0973

In re application of:                          : Examiner:
                                               :
HARRY W. EBERLE, III                           : JEFFREY R. JASTRZAB
                                               :
Serial No.  09/186,741                         : Central Reexamination Unit: 3993
                                               :
Filing Date:  November 5, 1998                 : Attorney Docket No.  HWE-105C
                                               :
Priority Date: March 5, 1997                   :
                                               :
For:     ANCHORING BISCUIT DEVICE              :

**U.S. Patent No. 6,402,415 B1**

Issue Date: June 11, 2002


## CERTIFICATE OF SERVICE


The undersigned hereby certifies that a complete copy of this Supplemental Amendment Under 37 CFR 1.550(b) was served on this 17th day of September 2007 upon the below-listed party of record, by mailing the same via United States First Class Mail in an envelope addressed to the Requester's attorney of record as follows:


Mathew W. Stavish
BERENATO, WHITE & STAVISH, LLC
6550 Rock Spring Drive, Suite 240
Bethesda, Maryland 20817


_____
Signature

Ernest D. Buff, Esq.
Reg. No.: 25,833

Ernest D. Buff & Associates
231 Somerville Road
Bedminster, NJ 07920

IC-App-0974

Copied from 09186741 on 10/30/2007

| AMENDMENT TRANSMITTAL LETTER | ATTORNEY'S DOCKET NO.: 0247-3 CIP RE |
|---|---|

| SERIAL NUMBER: 09/186,741 | FILING DATE: November 5, 1998 | EXAMINER: Jeffrey R. Jastrzab | CENTRAL REEXAM UNIT: 3993 |
|---|---|---|---|

INVENTION:
## ANCHORING BISCUIT DEVICE
INVENTOR(s): Harry W. Eberle, III

TO THE ASSISTANT COMMISSIONER FOR PATENTS:
Transmitted herewith is an amendment in the above-identified application. The fee has been calculated as shown below.

### CLAIMS AS AMENDED

| (1) | (2) CLAIMS REMAINING AFTER AMENDMENT | (3) | (4) HIGHEST NUMBER PREVIOUSLY PAID FOR | (5) NO. OF EXTRA CLAIMS PRESENT | (6) RATE | (7) ADDITIONAL FEE |
|---|---|---|---|---|---|---|
| TOTAL CLAIMS | 26 | MINUS | 20 | 6 | X $25 | $ 150.00 |
| INDEP. CLAIMS | 4 | MINUS | 3 | 1 | X $100 | $ 100.00 |
| | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT | | $ 250.00 |

\* If the entry in column 2 is less than the entry in column 4, write "0" in column 5.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, write "20" in this space.
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, write "3" in this space.

[✓] No additional fee is required.

[ ] A Check for $ _____ is enclosed to cover the fee for the additional claims.

[ ] The undersigned petitions for a one month time extension for filing this document under 37 C.F.R. 1.136
A Check for $ __ Is enclosed to cover the fee for this time extension.

A triplicate copy of this sheet is enclosed.

[✓] Charge any additional fees to Deposit Account No. 50-3832

| May 18, 2007 | _Signature_ |
|---|---|
| Date | Ernest D. Buff |
| | Attorney Name |
| (908) 901-0220 | 25,833 |
| Phone | Reg. Number |

I hereby certify that this correspondence is being deposited with the United States Postal Service as First Class Mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on  May 18, 2007 .

(Signature)

Ernest D. Buff
Attorney of Record

May 18, 2007
(Date)

PTO Form 3.52

Patent and Trademark Office – U.S. DEPARTMENT of COMMERCE

Copied from 09186741 on 10/30/2007

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## CENTRAL REEXAMINATION UNIT

## EX PARTE REEXAMINATION CONTROL NUMBER 90/007,661

In re application of:                                      : Examiner:

HARRY W. EBERLE, III                                      : JEFFREY R. JASTRZAB

Serial No. 09/186,741                                     : Central Reexamination Unit: 3993

Filing Date: November 5, 1998                             : Attorney Docket No. HWE-105C

Priority Date: March 5, 1997                              :

For:    ANCHORING BISCUIT DEVICE     :

**U.S. Patent No. 6,402,415 B1**                         **: Issue Date: June 11, 2002**


Honorable Commissioner of Patents
P.O. BOX 1450
Alexandria, VA 22313-1450

## SUPPLEMENTAL AMENDMENT AND RESPONSE UNDER 37 CFR 1.550(b)

In response to the Office Action dated May 8, 2007 in the above-mentioned patent reexamination, the following amendments, remarks, declarations, and requests for reconsideration are submitted.

A statement of **Claim Status** is set forth on page 2 of this paper.

**Amendments to the Claims** are set forth beginning on page 3 of this paper.

A statement setting forth **Support for Amendments to the Claims** is provided beginning on page 9 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

CERTIFICATE OF MAILING BY FIRST CLASS MAIL

I hereby certify under 37 CFR §1.8(a) that this correspondence is being deposited with the United States Postal Service as first class mail with sufficient postage on the date indicated below and is addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450

  May 18, 2007
Date of Deposit

Signature

 Ernest D. Buff
Typed or Printed Name of Person Signing Certificate

IC-App-0976

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,4__,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 2

## STATUS OF CLAIMS:

The following is the current status of all claims in the subject reexamination

proceeding:

| CLAIMS | STATUS |
|--------|--------|
| 1 through 12 | Issued Patent Claims, pending in the present reexamination. |
| 1, 2, 7, 8, 10 | Amended as set forth hereinafter. |
| 13 through 26 | Newly presented by this Amendment. |

ReExamination of USP 6,402,415       Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 3

## IN THE CLAIMS

Kindly amend claims 1, 2, 7, 8, and 10 and add new claims 13-26 as follows:


1. (amended)  An anchoring biscuit device for joining [three ]together two
adjacent boards and a support board, the adjacent boards being in the same plane and
having in their sides pre-cut biscuit receiving slots, [which] the anchoring biscuit device
comprising[comprises]:

(a) a first substantially flat horizontal top element having a generally biscuit-
shaped top view configuration [with] having opposite side walls in the shape of arcs from
a top view, said arcs having predetermined radii and arc lengths, and opposite end walls,
said top element having a center [area between said opposite side walls in the shape of
arcs]line extending between said end walls, and said respective side walls being adapted
to be fitted into said respective biscuit receiving slots of said adjacent boards;

(b) at least two substantially vertical support members attached to an underside of
said top element [at ]along said center [area] line of said top element and extending
perpendicularly downwardly [there]from said top element for a predetermined length in a
vertical plane that is aligned with, and directly under, said center line, said predetermined
length being adapted to maintain said top element in a predetermined position during use
for joining said two adjacent boards together with, and atop, said support board, [which
have been pre-cut with biscuit receiving slots, two of ]all of said at least two vertical

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 4

support members being substantially flat[, being] and in [the same]said vertical plane

[and one of each being located on opposite sides of an attachment orifice]; and,

(c) at least one attachment orifice located at least on said top element for

attachment of said anchoring biscuit device to [a ]said support board for anchoring and

support of said two adjacent boards, said attachment orifice being located between two of

said vertical support members.

2. (amended)  The anchoring biscuit device of claim 1 wherein said attachment

orifice is at least one screwhole located on said top element for screwing of said

anchoring biscuit device to [a]said support board.

7. (amended)  The anchoring biscuit device of claim 1 wherein said top element

and said vertical support members are unitarily formed.

8. (amended)  The anchoring biscuit device of claim 1 wherein there are exactly

two vertical support members[ and one is located on each side of said attachment orifice].

10. (amended)  An anchoring biscuit device for joining [three ]together two

adjacent boards and a support board, the adjacent boards being in the same plane and

having in their sides pre-cut biscuit receiving slots, the anchoring biscuit device [which

comprises]comprising:

(a) a first substantially flat horizontal top element having a generally biscuit-

shaped top view configuration with opposite side walls in the shape of arcs from a top

view, said arcs having predetermined radii and arc lengths, and opposite end walls, said

top element having a center [area between said opposite side walls in the shape of arcs]

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415 :     Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No.  : 09/186,741
Filed       : November 5, 1998
Page        : 5

line extending between said end walls, and said respective side walls being adapted to be

fitted into said respective biscuit receiving slots of said adjacent boards;

(b) at least one substantially vertical support member attached to an underside of

said top element [at]along said center [area]line of said top element and extending

perpendicularly downwardly therefrom for a predetermined length in a vertical plane that

is aligned with, and directly under, said center line, said predetermined length being

adapted to maintain said top element in a predetermined position during use for joining

said two adjacent boards together with, and atop, said support board[which have been

precut with biscuit receiving slots], said at least one vertical support member being

substantially flat; and,

(c) at least one attachment orifice located at least on said top element for

attachment of said anchoring biscuit device to a support board for anchoring and support

of said two adjacent boards; and

wherein [there is]said at least one substantially vertical support member [which]

is located off-center and to one side of said at least one attachment orifice.

13. (new)  The anchoring biscuit device of claim 10 having exactly one said

vertical support member.

14. (new)  An anchoring biscuit device for joining together two adjacent boards

and a support board, the adjacent boards being in the same plane and having in their sides

pre-cut biscuit receiving slots, the anchoring biscuit device comprising:

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed    : November 5, 1998
Page    : 6

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration having opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, and opposite end walls, said top element having a center line extending between said end walls, and said respective side walls being adapted to be fitted into said respective biscuit receiving slots of said adjacent boards;

(b) exactly two substantially vertical support members attached to an underside of said top element along said center line of said top element and extending perpendicularly downwardly therefrom for a predetermined length in a vertical plane that is aligned with, and directly under, said center line, said predetermined length being adapted to maintain said top element in a predetermined position during use for joining said two adjacent boards together with, and atop, said support board, said vertical support members being substantially flat and in said vertical plane; and

(c) at least one attachment orifice located on said top element for attachment of said anchoring biscuit device to said support board for anchoring and support of said two adjacent boards, said attachment orifice being located between said vertical support members.

15. (new)  The anchoring biscuit device of claim 14 wherein said attachment orifice is at least one screwhole located on said top element for screwing of said anchoring biscuit device to said support board.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed    : November 5, 1998
Page    : 7

16. (new)  The anchoring biscuit device of claim 15 wherein said screwhole has a bevelled top.

17. (new)  The anchoring biscuit device of claim 15 wherein said screwhole is non-circular and elongated.

18. (new)  The anchoring biscuit device of claim 14 wherein said top element and said vertical support member are unitarily formed.

19. (new)  The anchoring biscuit device of claim 14, having exactly one said attachment orifice.

20. (new)  An anchoring biscuit device for joining together two adjacent boards and a support board, the adjacent boards being in the same plane and having in their sides pre-cut biscuit receiving slots, and wherein the anchoring biscuit device comprises:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, and opposite end walls, said top element having a center line extending between said end walls, and said respective side walls being adapted to be fitted into said respective biscuit receiving slots of said adjacent boards;

(b) exactly one substantially vertical support member attached to an underside of said top element along said center line of said top element and extending perpendicularly downwardly therefrom for a predetermined length in a vertical plane that is aligned with, and directly under, said center line, said predetermined length being adapted to maintain

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 8

said top element in a predetermined position during use for joining said two adjacent boards together with, and atop, said support board, said at least one vertical support member being substantially flat; and,

(c) at least one attachment orifice located at least on said top element for attachment of said anchoring biscuit device to a support board for anchoring and support of said two adjacent boards; and

wherein said substantially vertical support member is located off-center and to one side of said at least one attachment orifice.

21. (new)  The anchoring biscuit device of claim 20 wherein said attachment orifice is at least one screwhole located on said top element for screwing of said anchoring biscuit device to said support board.

22. (new)  The anchoring biscuit device of claim 21 wherein said screwhole has a bevelled top.

23. (new)  The anchoring biscuit device of claim 21 wherein said screwhole is non-circular and elongated.

24. (new)  The anchoring biscuit device of claim 20 wherein said top element and said vertical support member are unitarily formed.

25. (new)  The anchoring biscuit device of claim 20, having exactly one said attachment orifice.

26. (new)  The anchoring biscuit device of claim 25, wherein said attachment orifice is situated on said center line.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415 ·          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 9

## SUPPORT FOR CLAIM AMENDMENTS

Support for the claim amendments presented in this paper is provided by the specification of the original application and the issued patent as follows. Consequently, no new matter has been added by the present amendment.

Claim 1:

     Claim 1 as originally filed;

     Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 24-25, 29-31, 31-33, and 39;

     Figs. 1, 4, 5.

Claim 7:

     (typographical error).

Claim 8:

     Figs. 1, 2, 6, 7.

Claim 10:

     Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 24-25, 29-31, 31-33, and 39; col. 6, lines 35-37;

     Fig. 11.

Claim 13:

     Col. 6, lines 35-37;

     Fig. 11.

Claim 14:

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415     Attorney Docket No.: HWE-105C
Inventor : Eberle, III
ReExam : 90/007,661
Serial No. : 09/186,741
Filed  : November 5, 1998
Page  : 10

Claim 1;

Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 13-22, 24-25, 29-31,

31-33, and 39;

Figs. 1, 4, 5.


Claims 15-17:

Claims 2-4, respectively.

Claim 18:

Claim 8 as originally filed;

Claim 7.

Claim 19:

Col. 5, lines 17-19;

Figs. 1-3.

Claim 20:

Claim 10;

Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 24-25, 29-31, 31-33,

and 39; col. 6, lines 35-37;

Fig. 11.

Claims 21-23:

Claims 2-4, respectively.

Claim 24:

Copied from 09186741 on 10/30/2007

IC-App-0985

ReExamination of USP 6,4~~,~15                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 11

Claim 8 as originally filed;

Claim 7.

Claim 25:

Col. 5, lines 17-19;

Figs. 1-3.

Claim 26:

Fig. 11.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,4\_2,+15                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 12

## REMARKS

In the Office Action dated May 8, 2007, in the instant *Ex Parte* Reexamination proceeding, the Examiner has indicated that the Patent Owner's response filed February 9, 2007, was not compliant with the requirements of 37 CFR 1.530(d)-(j). Specifically, the Examiner indicated that the claim listing did not employ single brackets enclosing text to be deleted from the claims as originally issued. The Examiner set a one month period for the Patent Owner to correct the informality.

Provided herewith is a replacement claim listing that is believed to be in compliance with the formal requirements of 37 CFR 1.530(d)-(j) and MPEP 2250 I.B. The claim listing includes amended claims 1, 2, 7, 8, and 10 and newly presented claims 13-26. Each of the claims is amended so that text to be omitted is enclosed within single brackets and text to be added is underlined. The text of the amended and newly presented claims is otherwise identical to that included in the February 9, 2007 response.

For the convenience of the Examiner, the present amendment further includes sections of the February 9, 2007 response entitled "Claim Status" and "Support for Amendments to the Claims". These sections repeat verbatim the corresponding sections that were included in the amendment dated February 9, 2007.

The present amendment further includes the remarks set forth below in support of the patentability of claims 1-12 of the issued '415 patent, as presently amended, and new claims 13-26. These remarks are substantially identical to those provided in the February

Copied from 09186741 on 10/30/2007

IC-App-0987

ReExamination of USP 6,402,415                      Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 13

9, 2007 that was deemed non-compliant, and are submitted herewith for the Examiner's

convenience. In view of the present claim amendments, the remarks hereinbelow, and

the Declarations under 37 CFR 1.132 by Harry W. Eberle, III, and Kevin Sabin filed on

February 9, 2007, it is respectfully submitted that claims 1-26 are in allowable condition.


In order to emphasize the patentable distinctions of the Patentee's contribution

over the prior art of record, claims 1 and 10 have been amended to recite an anchoring

biscuit device for joining together two adjacent boards and a support board, wherein the

adjacent boards are in the same plane and have in their sides pre-cut biscuit receiving

slots. The anchoring device has a substantially flat horizontal top element having a

generally biscuit-shaped top view configuration with opposite side walls in the shape of

arcs from a top view, the arcs having predetermined radii and arc lengths, and opposite

end walls. The top element has a center line extending between the end walls. The

respective side walls are adapted to be fitted into the respective biscuit receiving slots of

the adjacent boards. Amended claim 1 further calls for at least two substantially vertical

support members attached to an underside of the top element along the center line of the

top element. The vertical support members extend perpendicularly downwardly from the

underside of the top element for a predetermined length in a vertical plane that is aligned

with, and directly under, said center line. The predetermined length is adapted to

maintain the top element in a predetermined position during use for joining the two

adjacent boards together with and atop the support board. The at least two vertical

Copied from 09186741 on 10/30/2007

IC-App-0988

ReExamination of USP 6,402,415
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page        : 14

Attorney Docket No.: HWE-105C

support members are substantially flat and in the same vertical plane. One of the vertical

support members is located on each side of an attachment orifice.

Claim 8 has been amended to emphasize the patentable distinctions of the

Patentee's contribution to the art and for the sake of clarity. Claim 8 now calls for

exactly two vertical support members. The recitation that the two vertical support

members are located on the sides of the attachment orifice has been removed as being

redundant, this feature now being recited by claim 1.

Claims 2 and 7 have been amended for the sake of clarity. In claim 2, the

antecedent basis for the support board has been clarified. The word "member" in claim

7, an obvious typographical error, has been corrected to the plural form "members."

New claims 13-26 have been added to provide adequate coverage for the

Patentee's contribution to the art.

Claim 13, dependent from claim 10, calls for exactly one vertical support

member.

New independent claim 14 parallels amended claim 1, but calls for exactly two

vertical support members. Claims 15-18 depend from claim 14 and recite preferred

embodiments paralleling those of claims 2-4 and 7. Dependent claim 19 calls for an

anchoring biscuit device having exactly one attachment orifice.

New independent claim 20 parallels amended claim 10, but calls for exactly one

vertical support member. Claims 21-24 depend from claim 20 and recite preferred

embodiments paralleling those of claims 2-4 and 7. Dependent claim 25 calls for an

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,40_,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page     : 15

anchoring biscuit device having exactly one attachment orifice. Claim 26 depends from claim 25 and calls for the attachment orifice to be on the center line of the device.

Support for the foregoing amendments is provided by the patent as issued and the specification, including claims, as originally filed, particularly as set forth hereinabove. Consequently, no new matter has been added.

Attention is respectfully drawn to two Declarations Under 37 CFR 1.132 filed in the present reexamination proceedings on February 9, 2007. The first declaration is made by Harry W. Eberle, III, the patentee of the present patent. The other declaration is made by Kevin Sabin. The Declarations include exhibits including certain printed and recorded materials pertinent to the determination of patentability of the subject matter delineated by the pending claims. Based on the qualifications and the experience of the declarants, as set forth in their respective declarations, the patent owner respectfully submits that each declarant is a person having at least ordinary skill in the art to which the present patent pertains.

**Issue 1:**

Claims 1-3, 5, and 7-11 were rejected under 35 USC 102(b) as being clearly anticipated by US Patent No. 2,201,129 to Weiland, which relates to a tiling system that includes means for positive mechanical attachment of ceramic or composition tiles to a surface without use of cement.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415 · Attorney Docket No.: HWE-105C
Inventor : Eberle, III
ReExam : 90/007,661
Serial No. : 09/186,741
Filed : November 5, 1998
Page : 16

As amended, claims 1 and 10 respectively call for an anchoring biscuit device for joining together two adjacent boards and a support board. The adjacent boards are in the same plane and have in their sides pre-cut biscuit receiving slots. A person having ordinary skill in the deck construction arts would regard the use of a conventional biscuit jointer as disclosed by US Patent 5,004,027 to Legler et al. (see col. 2, lines 45-64 of the present patent) as one possible and convenient means of forming the present biscuit receiving slot.

The claim 1 device comprises at least two substantially vertical support members, while the claim 10 device comprises at least one substantially vertical support member that is located off-center and to one side of the attachment orifice. Amended claims 1 and 10 further call for the vertical support members: (i) to be attached to an underside of the top element along a center line of the top element that extends between the end walls; and (ii) to extend perpendicularly downward from the top element in a vertical plane that is aligned with, and directly under the center line. Newly presented claims 14 and 20 call for exactly two and exactly one such vertical support member in the same relationship to the top element.

The Patent Owner maintains that the foregoing features unambiguously distinguish the structure of claims 1, 10, 14, and 20, and the claims dependent thereon, from any device disclosed by Weiland.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,40z,+15                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 17

In particular, the Weiland devices includes structural features that contravene the structural requirements of the present claims and preclude it from carrying out the function provided by the instant patent's claimed device.

By way of contrast, the Examiner has adapted the arguments of the third party requester and has interpreted the claim language of the issued claims rather broadly, both as to the meanings of the words used by patentee, and the context of the phrases used by patentee. Thus, it appears that the Examiner has construed the claim language in a manner that is inconsistent with what would be understood by a person having ordinary skill in the art in the context of the application as filed, taken as a whole.

For example, the patentee submits that the Examiner has misinterpreted the recitation of a vertical support member "extending down at the center area of the top element". The requester and the Examiner have taken the phrase "center area between said side walls" to mean the entire area between said sidewalls. See, for example, the Office Action of December 14, 2006, at page 8, lines 12-13. This interpretation is unsupportable for many reasons.

First, this interpretation that the area between the side walls in its entirety is the "center area" ignores the existence of the word "center". Had the claim phrase said that the vertical support members were extending down at the area between the side walls, then this interpretation makes sense. However, the Examiner's position fails to recognize any limitation resulting from the inclusion of this term and thereby impermissibly strips the word "center" of any meaning whatsoever.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 18

Attorney Docket No.: HWE-105C

In the present instance, the term "center area" is used with respect to the top element, but in conjunction with other portions thereof, including the "end" and "sides." These terms, as used by the patent specification, provide context that must figure in any construction of the particular meaning of the term "center area." It is respectfully submitted that the Examiner's expansive reading, being incompatible with these distinctions, is untenable.

Second, the context within which the term "center area" is used clearly means an area that includes the center line. The devices provided by Weiland's Figs. 6 and 11 do not have vertical support members in the center area and thus cannot be construed as satisfying the limitations of issued claim 1.

Nevertheless, for the sake of clarity, claims 1 and 10 have been amended to call for the substantially vertical support members of the Eberle device to extend downwardly from a center line of the top element, a feature Weiland clearly does not disclose. New claims 14 and 20 incorporate the same recitation.

The Patent Owner also maintains that claims 1, 10, 14, and 20 include further structural recitations, albeit delineated in functional terms. The propriety of a claim recitation in this form is well established. See, e.g., *Sanada v. Reynolds*, 67 USPQ2d 1459, 1463 (B.P.A.I. 2003) (unpublished) ["There is nothing wrong with using functional claim language, where the means-plus-function provision of 35 U.S.C. § 112 applies or where such functional language further limits structure or composition already defined in

Copied from 09186741 on 10/30/2007

IC-App-0993

ReExamination of USP 6,40∠,415                          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 19

the claim." citing *In re Swinehart*, 439 F.2d 210, 212, 169 USPQ 226, 228 (CCPA 1971), emphasis added].

The Patent Owner concurs with the Examiner's statement that "The Weiland device need only be inherently capable of providing the claimed function to read on the claim language," but maintains that this very standard operates to preclude any novelty rejection of the patent claims over the Weiland device. Specifically, the Patent Owner maintains that the recited intended use of the present anchoring device ("to joint together two adjacent boards and a support board," as further elucidated by the remainder of the claims), imposes structural requirements that the Weiland devices inherently does not satisfy. The failure to satisfy these requirements is manifest by the Weiland device's inability to carry out the present patent's anchoring function.

Attention is respectfully directed to the tiling installations depicted by Figs. 1 and 8 of Weiland. In the Fig. 1 arrangement, square tiles are disposed in a simple pattern wherein four tiles meet with their corners at a common vertex. Attachment devices of the form of Fig. 4 or 6 are situated at the right angle vertex. Slots 8 to accommodate the attachment devices are located at the corners of tiles A, not their sides. The Fig. 4 and 6 devices thus provide for the attachment of five workpieces (four tiles to a support structure). The staggered tile disposition in Fig. 8 employs the modified device of Fig. 10 at a vertex at which three tiles meet and are secured to a support structure. However, the device only engages slots in two of the tiles, but again only at their corners.

Copied from 09186741 on 10/30/2007

IC-App-0994

ReExamination of USP 6,402,415 ·  
Inventor   :  Eberle, III  
ReExam    :  90/007,661  
Serial No.  :  09/186,741  
Filed      :  November 5, 1998  
Page       :  20

Attorney Docket No.:  HWE-105C

The Examiner has correctly recognized that Weiland's Fig. 6 device has projections equally spaced at 90° intervals around a generally circular configuration. Even the Fig. 11 device, which is a portion of the Fig. 6 device, has these mutually perpendicular projections. As a result, Weiland only provides devices that can engage a tile having a <u>corner</u> slot, like slot 8 of tiles A. The presence of perpendicular projections inherently <u>precludes</u> insertion of any Weiland device into a biscuit receiving slot cut into the <u>side</u> of a decking board.

By way of contrast, claims 1 and 14 respectively call for a device having at least two, or exactly two, vertical support members, that lie in a vertical plane that is aligned with, and directly under, the device center line. The claims additionally call for the at least two, or two, support members to be substantially flat and in "said vertical plane."

Clearly, none of the Weiland attaching means satisfies these requirements. The projections of the Weiland device are provided in pairs. The various pairs lie in <u>parallel</u> planes, and so do <u>not</u> lie in a vertical plane aligned with, and directly under any center line. Moreover, as the Examiner has recognized, the Weiland projections are spaced at 90° angles, thereby locating them in <u>multiple, mutually perpendicular</u> planes, not in a single plane. Furthermore, the orifice in the devices of Weiland's Figs. 6 and 11 is <u>not</u> between two of said vertical support members; it is not disposed on a line that is collinear with any of the projections, thus the orifice is not "between" the members.

Because the Weiland devices are structurally different from those claimed by Eberle, they cannot anticipate the Eberle invention. The present amendment to the claims

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 21

only emphasizes the radical and fundamental structural differences between the Eberle

and Weiland attachments.

Further, although the Examiner implies that intended use and operability are

irrelevant, patentee wishes to re-emphasize that the devices of Weiland are so different

from the Eberle devices that the Weiland devices would be inoperative for the Eberle

purposes, and likewise, the Eberle devices could not function effectively for the Weiland

purposes. If modified to satisfy the Eberle purpose, the Weiland device would no longer

be useful for its intended purpose. In order to carry out their intended function, the

Weiland devices necessarily have the radially extending plates or flanges that are at right

angle to each other and inherently create products that cannot be slipped into a biscuit cut

or wood slot, because, as can be seen from the Weiland drawings, there are no single

plane vertical members that would create a single plane top area that could fit into a saw

cut, biscuit cut or slot in a side of wood. The Eberle device, on the other hand, is

appointed for "use for joining two adjacent boards which have been precut with biscuit

receiving slots." See, e.g., feature (b) of claim 1, and claim 10, and of new claims 14 and

20. Accordingly, the Weiland reference cannot be construed to render the Eberle claims

obvious in view of *In re Gordon*, 733 F.2d 900, 902, 221 USPQ 1125, 1127 (Fed.

Cir. 1984).

Weiland's devices are built specifically for corner engagement and can only be

used at points where two or four tiles meet with their corners at a common vertex. The

devices have downwardly projecting and outwardly projecting members that totally

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                              Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 22

prevent the insertion of the device into a slot, whereas the Eberle devices as claimed are specifically structured to fit into a side slot of wood or synthetic wood.

Hence, no device disclosed by Weiland can anticipate the Eberle device, since the downwardly projecting members would preclude the receipt of the Weiland device by a biscuit receiving slot.

In order for the Weiland device to accomplish the function provided by the Eberle device, it would have to be reconstructed by removing certain of its critical elements, e.g. two of the channels 13 of Fig. 4 or four of the flanges 13a of Fig. 6, to leave two generally collinear portions on either side of attachment hole 12. Such a reconstruction is submitted to be substantial, precluding a finding of obviousness under *In re Ratti*, 270 F.2d 810, 123 USPQ 349 (CCPA 1959). Moreover, once modified in this manner, the Weiland device would be rendered inoperable for the disclosed function of attaching tiles at their corners, further precluding any finding of obviousness.

The function afforded by the Weiland device, viz. the securing of generally square or rectangular tiles at their corners presents a significantly different problem than the securing of deck boards. As would be known to one of ordinary skill in the carpentry and deck building arts, wooden deck boards, which are typically disposed outdoors and exposed to the elements, including rain and snow and relatively large temperature and humidity excursions, undergo significant dimensional changes. Moreover, deck boards are often many feet long, is some cases as long as sixteen feet or more. If secured merely at their corners, as would necessarily be the case using a securing device such as that of

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415　　　　　　Attorney Docket No.: HWE-105C
Inventor　　: Eberle, III
ReExam　　: 90/007,661
Serial No. : 09/186,741
Filed　　　: November 5, 1998
Page　　　: 23

Weiland, the deck boards would be subject to marked deformation, warping, bowing, or the like. Such deformation would be highly detrimental and aesthetically unacceptable, and would likely lead to premature failure of the board. The attachment would be highly tenuous, potentially leading to the board becoming disengaged and a serious safety hazard. On the other hand, the Eberle device is employed for securing the board at regular intervals along its length, virtually eliminating the foregoing deformation and providing a much more stable and secure attachment.

Thus, Weiland's devices have different structures from the present invention, that (i) function differently from the present invention, and (ii) are used for a different purpose than the present invention. These considerations would discourage a person having ordinary skill in the art from any motivation to carry out the modification of the Weiland devices needed to reach the Eberle device. Accordingly, it is submitted that Weiland neither discloses the present invention nor renders it obvious.

Attention is respectfully drawn to both Rule 132 declarations submitted herewith. The Patent Owner maintains that each declaration separately sets forth bases that further confirm that Weiland neither discloses nor suggests the subject matter of claims 1-3, 5, and 7-11, and that a person having ordinary skill in the art would not have had motivation to modify the Weiland attachment device by removing features thereof, as would be required to reach the present claimed anchoring biscuit device..

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415       Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page    : 24

Accordingly, reconsideration of the rejection of claims 1-3, 5, and 7-11 under 35 USC 102(b) as being clearly anticipated by Weiland is respectfully requested, along with confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

In view of the foregoing arguments, the newly presented claims and the Declarations supporting patentability that are appended hereto, it is urged that this rejection be withdrawn and that the new claims be allowed.

**Issue 2:**

Claims 4, 6, and 12 were rejected under 35 USC 103(a) as being unpatentable over Weiland in view of German Patent Document DE372,483 to Wothe, which relates to a screw supporting plate used in conjunction with a screw that attaches a beam for a crossing wood member.

The Examiner has alleged that Weiland discloses the invention substantially as claimed less a non-circular and elongated slot. For the reasons set forth above under Issue 1 in connection with the novelty rejection over Weiland, the Patent Owner respectfully disagrees. In particular, it is submitted that Weiland does not disclose or suggest the subject matter of amended claims 1 and 10, on which claims 4 and 6, and 12 respectively depend.

The Examiner has not pointed to any disclosure or suggestion that cures this deficiency, but instead merely relies on Wothe for the feature of the non-circular and

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam   :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  25

elongated slot to allege that the modification of Weiland to include such a slot as part of the attachment orifice would be obvious to a skilled artisan.

The patentee respectfully submits that the screw supporting plate of the Wothe reference clearly engages only the cross-bar member "b" of Figs. 1-2 in Wothe and the attaching screw itself.  The plate does not play any direct role in the mutual engagement of multiple boards.  By way of contrast, the patentee's anchoring device directly engages two adjacent decking boards and is attached to the third board member by a fastener such as a screw.  As a result, the Wothe reference, whether taken singly or in combination with Weiland, does not cure the lack of disclosure or suggestion of the particular arrangement of the at least two vertical support members, in the form delineated by amended claim 1, which feature is inherited by claims 4 and 6, or the at least one vertical support member of amended claim 10, on which claim 12 depends.

Moreover, the slotted orifice in the Wothe plate functions in an altogether different way than the slotted orifice delineated by the patentee's claims.  In particular, slotting is said by the present patent to permit insertion of a screw or the like at an angled, non-vertical position.  See, e.g., col. 4, lines 30-34, col. 6, lines 1-3, and Figs. 7 and 9.  Such a non-vertical installation typically has been found to provide additional support and integrity to the deck flooring structure, inasmuch as the fastener directly engages both the supporting beam and one of the deck boards, instead of just the beam, as it would if the fastener were driven vertically.  On the other hand, the elongated plate in the Wothe reference merely permits the screw position to be moved horizontally, while

Copied from 09186741 on 10/30/2007

IC-App-1000

ReExamination of USP 6,402,415                              Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam  : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 26

maintaining a vertical disposition of the screw itself. In addition, the screw itself in the Wothe construction provides the principal alignment and fastening of the cross-member and the long beam, and not vertical support members provided by the Eberle device..

In view of the aforesaid differences, it is submitted that even in combination, Weiland and Wothe do not disclose or suggest the subject matter of amended claims 4, 6, and 12. Neither would a skilled artisan be motivated to carry out the substantial reconstruction of any structure provided by the combination of Weiland and Wothe that would be required to reach the anchoring device of present claims 4, 6, and 12. It is submitted that prima facie obviousness of claims 4, 6, and 12 has not been established.

Accordingly, and in view of the foregoing arguments, the newly presented claims and the Declarations supporting patentability that are appended hereto, reconsideration of the rejection of claims 4, 6, and 11 under 35 USC 103(a) as being unpatentable over Weiland and Wothe is respectfully requested, along with confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

### Issue 3:

Claims 10 and 11 were rejected under 35 USC 103(a) as being unpatentable over US Patent No. 1,714,738 to Smith in view of US Patent No. 2,337,156 to Elmendorf.

Smith is directed to a construction of floorboards and a means of fastening such boards to a subflooring. Elmendorf provides a system for laying a flooring of wood tiles on a wood or concrete subfloor without the necessity of employing tongue and groove

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 27

joints between meeting tiles, and with the assurance that the upper faces of meeting tiles
lie in the same plane.

The Examiner has accepted the requester's contention that Fig. 3 of Smith depicts
an anchoring device having, inter alia, a flat horizontal top element, vertical support
members, and an attachment orifice as delineated by the issued claims. The Examiner
acknowledges that the top view shape of the Smith device is rectangular, rather than the
claimed biscuit shape. Accordingly, he has pointed to Elmendorf to contend that it would
be obvious to change the shape of the Smith top configuration. The Patent Owner
respectfully traverses this characterization.

Amended claim 10 and new claim 20 both call for an anchoring biscuit device
having a vertical support member that extends perpendicularly downwardly from the
device's top element in a vertical plane that is aligned with, and directly under, a center
line.

Clearly, Smith provides no such structure. Both Figs. 3 and 4 of Smith depict
devices wherein <u>two</u> vertical projections (e.g., supports or feet 11 of Fig. 3 and feet 20 of
Fig. 4) extend downwardly from <u>plural</u> lines on the top element, <u>neither</u> of which is a
center line.

The Patent Owner observes that Smith variously discloses "support means" and
"support feet" associated with his fastener. Inasmuch as there is no disclosure, either by
way of drawing illustration or textual description, of any support means that does not
entail <u>two</u> support feet, the term "support means" must be construed as <u>requiring two</u>

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                        Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page     : 28

<u>support feet</u> laterally separated from the centerline of the Smith fastener. On the other hand, the Elmendorf keys (e.g. item 8 of Figs. 4 and 8) do not include <u>any</u> downward projection, so that Elmendorf cannot be regarded as providing any motivation for modifying the Smith device to remove some, but not all, of the downward projection therefrom.

Smith further discloses that "Feet 11 engage the subflooring and serve to hold the fasteners straight and to keep them from being bent downward either accidentally or when the nails are being driven. The provision of a means, such as the feet 11, for supporting the fasteners from the sub-flooring so as to positively position them is one <u>important feature of my construction</u>, for by this means the fasteners are all held straight so that when the next board is put in position no difficulty is experienced in fitting its grooves onto the outwardly-projecting flanges of the fasteners." (Page 1, col. 2, lines 99-111, emphasis added). The feet are said to be "spaced." (Page 1, col. 1, line 36).

The patentee respectfully submits that these disclosures, taken in combination, constrain what a skilled person would recognize as being the scope of the Smith disclosure. Specifically, the lateral spacing between the feet of the Smith fastener (e.g. between feet 11 of Fig. 3 or feet 20 of Fig. 4) must be relatively wide, so as to provide the aforementioned required stability of the table-like top surface of the fastener (e.g., surface 10 of Fig. 3 and surface 22 of Fig. 4). It is clear from the floor assembly depicted by Figs. 1-2 that the lateral spacing of the feet in turn establishes the width of undercut 17 (see page 1, col. 2, lines 79-80) required for the top edges of adjacent flooring boards to

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415
Inventor : Eberle, III
ReExam : 90/007,661
Serial No. : 09/186,741
Filed : November 5, 1998
Page : 29

Attorney Docket No.: HWE-105C

be installed in abutment, to avoid cracks between boards. Such cracks are eschewed for interior wood floors (see page 2, col. 1, lines 61-62).

On the other hand, if a Smith fastener with such a width were to be used for installing deck boards having but a single rectangular groove or biscuit receiving slot, such as those employed by the patentee, the lateral spacing of the Smith feet would necessarily establish the open spacing between adjacent deck boards. Some amount of spacing (typically of the order of 3/32 - 1/8") is conventionally employed in both prior art forms of deck assembly and in the patentee's deck assembly system. However, it is submitted that the Smith fastener, which must have spacing sufficient to maintain the aforementioned stability, would result in an <u>excessive</u> spacing between adjacent boards in a decking installation. The typical small spacing of deck boards, which are ordinarily installed outdoors or in damp locations, accommodates the swelling and shrinking of lumber due to varying temperature and moisture, but is not large enough to present hazards, such as tripping or catching a narrow shoe heel. Installation of deck flooring with the Smith fasteners thus could not be readily accomplished with boards having biscuit receiving slots or a single groove. Instead, an additional step of rabbeting each deck board would be required to provide a sufficient undercutting to achieve the desired board spacing. These width considerations are submitted to negate any motivation for a skilled artisan to modify the Smith fastener in the manner required to reach the Eberle device.

Copied from 09186741 on 10/30/2007

IC-App-1004

ReExamination of USP 6,402,415                         Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page     : 30

The patentee further traverses the basis on which the Examiner discounted arguments based on the decision of the Board of Patent Appeals and Interferences. Specifically, the patent owner's answer argued that the same considerations on which BPAI ruled the Eberle application patentable over Ellinwood also apply with respect to the present rejection over Smith and Elmendorf. The Examiner countered as follows:

> Patent Owner's Comments with respect to the BPAI decision in the Eberle patent are noted, however the comments are related to an anticipation rejection of a biscuit shape. This rejection is an obviousness rejection that acknowledges that the T-shaped top of the Smith anchor is not biscuit-shaped and thus is in-line with the BPAI comments on the Elmendorf[*] patent. Accordingly, the modification in this rejection is not addressed. (page 21, second full paragraph of the present Office Action, emphases added)

The patentee respectfully submits that the Examiner has mischaracterized the BPAI decision, which did <u>not</u> relate to an anticipation rejection, but to an <u>obviousness</u> rejection. There were three issues before the Board in the aforementioned appeal: (i) rejection of claims 27-29 under 35 USC 112, second paragraph; (ii) rejection of claims 18, 19, and 24 under 35 USC 103(a) over US Patent 2,362,252 to Ellinwood in view of US Patent 5,529,428 to Bischof; and (iii) rejection of claims 20-23, 28, and 29 under 35 USC 103(a) over Ellinwood in view of Bischof and German Patent DE 372,483 (i.e., the present Wothe reference). <u>Contrary to the Examiner's statement, the BPAI addressed Ellinwood in the context of obviousness, not novelty.</u>

---

[*] *Sic.* The BPAI decision does not address Elmendorf. The Examiner may have intended reference to Ellinwood.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415 ·    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 31

Attention is respectfully drawn to the BPAI decision at pages 4-6. Like the Smith and Heilmann devices, the Ellinwood connecting member is said to have a "general T-like formation…comprising a base 24 and side flanges 25" (page 2, col. 1, lines 40-42 and Figs. 2-4 of Ellinwood). The Ellinwood member is appointed for connecting adjacent panels forming a wall structure installation. The original Examiner's position in the appeal expressly acknowledged that Ellinwood did not disclose a biscuit-like configuration having side walls in the shape of an arc having radii and an arc length (Examiner's Answer at page 5, lines 3-4). Therefore, the original Examiner pointed to Fig. 9 of Bischof, which he alleged to provide the requisite shape in what he purported to be an anchoring device to obtain this feature. The Board's decision thus addressed the obviousness of the Eberle device over Ellinwood in combination with Bischof.

The Board rejected the original Examiner's arguments on several bases, including a finding that the proposed motivation for the combination was impermissibly hindsight-driven. In addition, the Board held that:

> "even if Ellinwood and Bischof were combined in the manner proposed, the result would still not respond to the limitation in claim 18 requiring 'at least two' substantially vertical support members attached to an underside of the top element or the limitation in claim 27 requiring the vertical support member to be 'located off-center and to one side of' an attachment orifice. These flaws in the basic Ellinwood-Bischof combination find no cure in the German reference." (page 6, full paragraph of BPAI Decision of August 27, 2001).

The patentee maintains this finding is directly apposite the rejection in present Issue 3. While the Board admittedly rejected the Examiner's friction motivation to

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 32

permit the combination, the Board did not countenance or affirm any alternative motivation for the combination. In particular, the Board did <u>not</u> adopt the position the present Examiner urges, which seemingly relies on a *per se* rule that a change in shape of the top element of Smith to a biscuit-like shape is inherently motivated and renders the claims on appeal obvious. The courts have expressly rejected such reliance on *per se* rules. See., e.g., *In re Ochiai*, 71 F.3d 1565, 1572, 37 USPQ2d 1127, 1133 (1995). ["Reliance on *per se* rules of obviousness is legally incorrect and must cease."] At best, the BPAI permitted the combination *arguendo*, but still ruled for no obviousness, <u>without affirming the propriety of the combination</u>.

The Examiner has pointed to Elemendorf at page 3, col. 2, lines 8-15 for the proposition that Elmendorf discloses a top shape that may be square, circular, or any other desired shape. The patentee acknowledges this statement, but submits that it pertains directly only to devices that are otherwise flat, i.e., without the vertical support members provided by the Eberle device. The only vertical element in any way associated with the Elmendorf device is a nail, which cannot constitute a vertical support member, and, in any event, cannot be regarded as <u>adjacent</u> an attachment orifice. The Elmendorf disclosure fails to contemplate any such members, despite the availability of the Smith reference, which issued some twelve years before the Elmendorf filing. The patentee thus submits that the combination of a non-rectangular shape like Elmendorf's, disclosed <u>only in the context of a flat securing device</u>, with devices like Smith's, which include both horizontal and vertical members, is possible only using impermissible hindsight.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 33

The Patent Owner further submits that Elmendorf, like Weiland, discloses devices appointed only to engage workpieces either at their beveled corners, in an arrangement of square or rectangular tiles (e.g. Figs. 2, 7, and 14), or at complementary right-angled vertices in a herringbone arrangement (e.g. Fig. 18). Elmendorf fails to disclose or suggest any fastener that engages adjacent boards at any point along shared parallel edges. Instead, the fasteners are disposed only at vertices having an interior or exterior opening angle of 90°. Thus, Elmendorf does not provide a fastener that is to be received in the side's biscuit-receiving slots in <u>adjacent</u> boards, as required by the Eberle claims.

Significantly, the Third Party Requestor, in arguing a rejection over Smith and Elmendorf, points to Smith's phrase that the flanges "may be made in various forms," but extends this quotation beyond its context, which clearly does not include any disclosure of top shapes other than rectilinear forms (see, e.g., Figs. 3-4). (Request, page 6, line 4, citing Smith, page 2, col. 2, lines 74-75).

Second, the patentee maintains that the Smith-Elmendorf combination, like the Ellinwood-Bischof combination considered in the original appeal, does not respond to the "off-center and to one side of an attachment orifice" limitation recited by amended claims 10-11, or by new claims 20-26.

Were the Smith fastener to be modified as required to reach present claims 10-11 by removing one of its support feet and locating the remaining foot off center, it clearly would lose the stability said to be an important feature, thereby negating the motivation to make such modification.

Copied from 09186741 on 10/30/2007

IC-App-1008

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 34

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Kevin Sabin. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Smith and Elmendorf do not disclose or suggest the subject matter of claims 10-11. The Sabin Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Smith and Elmendorf as would be required to reach the present claimed anchoring biscuit device.

Accordingly, and in view of the foregoing arguments, the amended and newly presented claims, and the Declarations supporting patentability that are appended hereto, reconsideration of the rejection of claims 10-11 under 35 USC 103(a) as being unpatentable over Smith and Elmendorf is respectfully requested, along with confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

The Patent Owner concurs with the Examiner's rejection of the Requestor's proposal that Claims 1, 2, 3, 5, and 7-9 be rejected on the same grounds. Clearly, the subject matter of claims 1, 2, 3, 5, and 7-9 is not disclosed or suggested by Smith and Elmendorf, whether taken singly or in combination.

## Issue 4:

Claim 12 was rejected under 35 USC 103(a) as being unpatentable over Smith in view of Elmendorf and further in view of Wothe.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                        Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 35

For the reasons set forth above concerning Issue 3, the patentee respectfully maintains that the combination of Smith and Elmendorf does not render obvious amended claim 10, from which claim 12 depends. The patentee's discussion of Wothe set forth under Issue 2 above is submitted to apply to the present rejection of claim 12 with equal force. Clearly, Wothe does not cure the lack of disclosure or suggestion of any anchoring biscuit device of base claim 10 provided by Smith and Elmendorf, even in combination.

In addition, the remarks set forth under Issue 3 regarding the pertinence of the earlier BPAI decision with respect to the rejection of claims 10-11 over Smith and Elemendorf apply with equal force to claim 12. The BPAI specifically considered the further combination with Wothe with Ellinwood and Bischof in regard to claim 12, and ruled for patentability. The patentee maintains that patentability of claim 12 over Smith, Elemendorf, and Wothe can be predicated on a comparable basis.

The patentee thus maintains that amended claim 12 is neither disclosed nor suggested by the combination of Smith, Elmendorf, and Wothe.

In view of the foregoing arguments, the amended and newly presented claims, and the Declarations supporting patentability that are appended hereto, it is submitted that the subject matter of claim 12 is patentable over the combination of Smith, Elmendorf, and Wothe.

Accordingly, reconsideration of the rejection of claim 12 under 35 USC 103(a) as being unpatentable over Smith, Elmendorf, and Wothe, and confirmation of amended claim 12, together with newly presented claims 13-26 are respectfully requested.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,40∠,∹15          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 36

The Patent Owner concurs with the Examiner's rejection of the Requestor's proposal that Claims 4 and 6 be rejected on the same grounds. Clearly, the subject matter of claims 4 and 6 is not disclosed or suggested by Smith, Elmendorf, and Wothe, whether taken singly or in any combination.

**Issue 5:**

The Patent Owner concurs with the Examiner's rejection of the Requestor's proposal that Claims 1, 2, 7, 8, and 9 be rejected under 35 USC 103(a) as being unpatentable over US Patent 695,722 to Heilmann in view of Elmendorf. Clearly, the subject matter of claims 1, 2, 7, 8, and 9 is not disclosed or suggested by Heilmann and Elmendorf, whether taken singly or in combination.

**Issue 6:**

The Patent Owner concurs with the Examiner's rejection of the Requestor's proposal that Claims 3-6 be rejected under 35 USC 103(a) as being unpatentable over Heilmann in view of Elmendorf and further in view of Wothe. Clearly, the subject matter of claims 3-6 is not disclosed or suggested by Heilmann, Elmendorf, and Wothe, whether taken singly or in any combination.

**Issue 7:**

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 37

Claims 10 and 11 were rejected under 35 USC 103(a) as being unpatentable over Smith in view of US Patent No. 5,619,834 to Chen.

The Examiner has indicated that the foregoing rejection is made for the reasons set forth in Issue 3 regarding Elmendorf. The patentee respectfully submits that the remarks hereinabove responsive to Issue 3 apply with equal or greater force to the combination of Smith with Chen instead of with Elemendorf.

Chen is directed to a slate positioning device comprising a positioning plate having a horizontal plate and first and second longitudinal plates at two ends of the horizontal plate. The first longitudinal plate has a hole, and the second longitudinal plate has upper and lower convex edges. A screw rod passes through the hole and the slot to fasten the first longitudinal plate and the pad plate. The upper convex edge and lower convex edges are inserted into corresponding grooves of corresponding slates. The Chen device necessarily includes multiple pieces to provide its adjustability, rendering it far more complicated to fabricate and install than the Eberle device.

Significantly, the slate positioning device of Chen is usable only with a wall construction in which the device holds the covering slates away from the underlying wall structure. This outward spacing in a direct consequence of the presence and size of a horizontal plate structure, such as single piece horizontal plate 42 of Fig. 5 or the combination of members 61 and 42' of Figs. 11-12. The Chen device is bolted to the underlying wall structure, e.g. by bolt 400. Were these horizontal plate structures and the resulting outward spacing eliminated, there would be no access for inserting and securing

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 38

Attorney Docket No.: HWE-105C

bolt 400.  Importantly, there is no hole or other similar structure in the Chen device adapted to function as the patentee's attachment orifice, such as Chen's second longitudinal plate 40, which the Examiner has equated to the Eberle biscuit top element. Still further, all the disclosed embodiments of the Chen bracket include two longitudinal plates in parallel planes, whereas the Eberle device has only a single flat top element. Eliminating either longitudinal plate of Chen would clearly defeat its operation.

Like Weiland and Elmendorf, Chen only discloses embodiments wherein an attachment device is disposed solely at the corners of workpieces being secured to an underlying structure, be it a wall, ceiling, or floor, i.e., at vertices having interior or exterior 90° angles.  The patentee thus maintains that the Examiner has not pointed to any evidence demonstrating motivation to combine any of these references, which admittedly disclose non-rectangular shapes for certain devices, with the T-shape, rectangular-top device of Smith.  Nonetheless, the Examiner has combined these references with devices such as those of Smith and Heilmann (discussed further in Items 8-10 below), that engage workpieces along their sides, but only with attachment fixtures that have rectangularly shaped tops for the engagement.  It is thus respectfully submitted that the combinations have been made only on the basis of impermissible hindsight reconstruction.

The patentee submits that the person having ordinary skill in the art for the purpose of the determination of the obviousness of the Eberle device is a tradesperson experienced in the field of carpentry, including wooden deck building.  The patentee continues to maintain the position that such a person would not have been motivated to

Copied from 09186741 on 10/30/2007

IC-App-1013

ReExamination of USP 6,402,415       Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 39

consider the combination of the Chen device with the subject matter of Smith, given the markedly different problems of installing relatively light wood flooring and massive stone or slate panels as a wall construction. Clearly, neither the Eberle device nor the Smith device is required to sustain any substantial static loading. The flooring being installed in accordance with the Smith teaching bears on a subfloor, so the device merely has to restrain the flooring against relatively small forces involving lateral movement of the individual pieces, warpage, and the like. On the other hand, in the Chen construction, the device is the only means by which the stone wall structure is supported. The Chen devices must collectively sustain the static weight of the entire wall, as well as prevent relative motion of the individual panels. The requirements and sizing of such devices are thus altogether different.

The courts have unequivocally recognized that a general relationship between two references is insufficient to predicate a combination, absent a specific suggestion for the combination. See, e.g. *Interactive Techs., Inc. v. Pittway Corp.*, Civ. App. No. 98-1464, slip op. at 13, 1999 U.S. App. LEXIS 11166, (Fed. Cir. June 1, 1999) (unpublished), *cert. denied*, 528 U.S. 1046 (1999). ["The sole evidence proffered of a motivation to combine was that several prior art patents mentioned there being a similarity between garage door openers and home security systems. However, such limited evidence of there being a general relationship between the fields does not suggest a motivation to combine the particular references here relied upon by the Pittway parties."] See also *In re*

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 40

*Alhamad*, Civ. App. 97-1345, slip op. at 3-4, 1997 U.S. App. LEXIS 38110 (Fed. Cir. Dec. 18, 1997).

The patentee maintains that the Examiner's contention that both the Smith and Chen devices relate to construction fasteners or the attachment of veneers at best demonstrates no more than a general relationship of the type that the courts have deemed insufficient. Absent express establishment of another motivation, as required under *In re Lee*, 277 F.3d 1338, 1344-45, 61 U.S.P.Q.2d 1430, 1435 (Fed. Cir. 2002), the combination of Smith and Chen is submitted to be improper.

Attention is respectfully directed to the Rule 132 Declaration by Sabin in support of the patentability of the present patent claims. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Smith and Chen do not disclose or suggest the subject matter of claims 10-11. The Sabin Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Smith and Chen as would be required to reach the present claimed anchoring biscuit device.

Accordingly, and in view of the foregoing arguments, the amended and newly presented claims, and the Declarations supporting patentability that are appended hereto, reconsideration of the rejection of claims 10-11 under 35 USC 103(a) as being unpatentable over Smith and Chen is respectfully requested, along with confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

Copied from 09186741 on 10/30/2007

IC-App-1015

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 41

Although not specifically given enumeration as a separate issue, the Examiner appears to have included under the heading "Issue 7" a further and separate rejection of claim 12 under 35 USC 103(a) as being unpatentable over Smith in view of Chen and further in view of Wothe. The Patent Owner respectfully maintains that Wothe does not cure the lack of disclosure or suggestion of the subject matter of base claim 10, on which claim 12 depends. Accordingly it is submitted that this rejection is also untenable for at least the same reasons.

Reconsideration of the rejection claim 12 under 35 USC 103(a) as being unpatentable over Smith in view of Chen and further in view of Wothe is thus respectfully requested, along with confirmation of claim 12.

**Issue 8:**

Claims 1, 2, 7, 8, 9, and 10 were rejected under 35 USC 103(a) as being unpatentable over Heilmann in view of Elmendorf, or, in the alternative, over Heilmann in view of Elmendorf and further in view of Weiland.

Heilmann is directed to a fireproof covering system for frame structures that is said to cause the structure to have the appearance of a stone building. The covering comprises blocks, plates, or slabs. The construction disclosed by Heilmann entails use of a generally T-shaped washer, as depicted by Fig. 4, that engages grooves in the sides of the slabs, plates, or blocks used. Significantly, the construction further calls for the joints between the adjoining blocks to be filled with cement mortar, which is clearly essential

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 42

Attorney Docket No.: HWE-105C

for the covering to retain its fireproofing ability. In particular, the lower blocks are said

to be first set in cement mortar (page 1, col. 2, lines 55-57). The Fig. 4 washers are then

placed in grooves in the sides of the lower blocks and secured by nails, screws, or other

fasteners (line 96). The connection is described as "tongue and groove" (line 93).

Mortar is spread in the grooves of each course before the next course is laid. ("...the

spreading of mortar first done, <u>of course</u>, before another course is laid." Page 1, col. 2,

lines 79-81, emphasis added). Moreover, all the remainder of the joint, apart from the

location of the washers, is filled with mortar, e.g. by a pointing operation (line 104 and

material $f$ of Fig. 3). The mortar filling is said to provide a firm and solid connection of

the blocks with each other, so that a practically monolithic facing is produced. (lines 99-

103).

The Examiner has contended that Heilmann discloses the claimed anchoring

system apart from the shape of the top element and the requirement of at least two

vertical support members. He further has asserted that it would have been an obvious

design choice to select a biscuit shape for the Smith [*sic – Heilmann may have been

intended*] anchor device given the Elmendorf teaching.

The Examiner further has acknowledged that Heilmann is further lacking in that

only one vertical member is provided. However, the Examiner further asserted that the

"vertical member in Eberle is essentially a single planar member with a gap or spacing in

the middle where these is an absence of material" as the basis for an assertion denying a

any substantive difference between that Eberle's two-vertical member device and

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor : Eberle, III
ReExam : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page      : 43

Heilmann's single vertical member device. The patentee agrees that the width of the joint between blocks in the Heilmann construction is defined by the lateral width of the shoulder *d* of the Fig. 4 device. However, attention is respectfully drawn to the Hielmann reference at page 1, col. 2, lines 53-54, which discloses a perforation or hole *d'* that passes "through the main body of the washers <u>and through the ribs or shoulders</u> *d* .(emphasis added). Fig. 3 clearly discloses a construction employing a device having such a perforation.

The Examiner has proposed a modification of the Heilmann washer device in which the thickness of the rib *d* is reduced enough to convert the single rib, e.g. as shown in Heilmann's Fig. 3, into two separate, collinearly disposed ribs. The patentee respectfully maintains that nothing in the Heilmann disclosure supports, let alone suggests, such a radical reconstruction. To the contrary, and if so modified, such a device could not properly be characterized as having a hole that extends through both the body and the shoulder of the device, as taught at col. 2, lines 53-54. Clearly, the hole would no longer extend through the shoulder, negating the Examiner's proposal.

Moreover, it is submitted that a person having ordinary skill in the art would regard the hole *d'* in the Heilmann device as being relatively small, i.e. sized to provide clearance for a screw, nail, or fastener used for its attachment, but not significantly larger The hole clearly would have to be <u>small</u> enough that the head of the fastener could not pass through, lest the fastening function be defeated. Still further, in the Examiner's modification, the thickness of *d'* would inherently have to be <u>less than the shank diameter</u>

Copied from 09186741 on 10/30/2007

IC-App-1018

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 44

of the fastener. Therefore, the possible gap between blocks would be severely constrained to the very small values imposed by the diameters of suitable fasteners. Alternatively stated, <u>the fastener shank diameter would have to be greater than the gap between blocks</u>. Reduction of thickness $d'$ to less than a fastener shank diameter would be highly problematical. Once the fastener were to be driven, its shank would <u>necessarily</u> disrupt the edge of the block.

Many of the block materials used in the Heilmann construction would be hard and/or brittle materials, such as stone or concrete slabs or composition tiles. In some cases, a typical metal fastener (e.g. screw or nail) would be unable to penetrate the facing block. In others, the facing block would be highly prone to severe edge damage. Either outcome could be clearly untenable. Accordingly, the patentee maintains that a person having ordinary skill in the art would be motivated not to carry out the Examiner's proposed extensive reconstruction, recognizing that such a reconstruction would render the Heilmann device inoperative for its appointed function.

A further problem negating motivation for the proposed reconstruction stems from the risk that fireproofing would be compromised. A skilled artisan would recognize that fully enclosing the fasteners in a mortar or cement filling enhances fireproofing. On the other hand, the presence of air pockets, that are highly likely to result if the fasteners were modified in the proposed manner, would result in a degraded firewall. The heat rating and efficiency of such modifications would be unacceptable. In any event, there is

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 45

no teaching or suggestion to make this modification of the Heilmann disclosure, even in light of the Elmendorf or the Elmendorf and Weiland teachings.

The patentee further points to a benefit afforded by the Eberle device. Because the attachment orifice is separate from the vertical projections, the Eberle device permits a decking system to be installed with fasteners driven at an off-vertical angle, e.g. as shown in Fig. 9 and described at col. 6, lines 6-23. This construction provides improved attachment (see lines 18-19). Significantly, no such benefit or configuration is recognized by Heilmann, or even possible using the disclosed device.

Still further, it is submitted that a reconstruction that vitiates a recited feature (the single shoulder *d* of the Heilmann device) inherently cannot be regarded as an obvious modification.

For at least the reasons set forth above, the patentee traverses the combination with Elmendorf, for reasons set forth hereinabove. In arguing the rejection of the present claims over Heilmann and Elmendorf, the requester points to the disclosure of Heilmann that "the washers D [may be] of any suitable form" (Heilmann, p. 1, col. 1, lines 46-47). By way of contrast, the patentee draws attention to the fuller context of this phrase. Conspicuously absent from this limited quotation is the remainder of the sentence, and the next sentence, which call for the washer "[to be] provided with longitudinal shoulders or ribs *d*, so that a washer is produced which has a T-shaped cross-sections. These washers are provided with preferably central perforations or holes *d'*, that pass through the main body of the washers and through the ribs or shoulders *d*." The patentee again

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,r15   Attorney Docket No.: HWE-105C
Inventor : Eberle, III
ReExam : 90/007,661
Serial No. : 09/186,741
Filed  : November 5, 1998
Page  : 46

submits that the combination is argued, without justification and in hindsight, between a flat device such as Elmendorf, and a rectangular or rectilinear-topped device, such as Heilmann's.

The patentee's remarks under Issue 3 above concerning the original BPAI decision are submitted to be equally pertinent to the rejection over Heilmann and Elmendorf, as the Examiner again has incorrectly characterized the BPAI decision as being made in relation "to an anticipation rejection of a biscuit shape" (Office Action, page 24, first full paragraph, line 3). Moreover, the Examiner has alleged that the Board's rejection of the Ellinwood-Bischof combination was "due to the fact that the figure used to show the biscuit shape was not in fact a biscuit or anchor, but instead a template...). However, the Board did not so limit its consideration, and further stated that "Although Bischof's connecting element is somewhat more pertinent, its structure and function sill differ markedly from those of Ellinwood's connecting element. The friction-reducing rationale advanced by the examiner to support the combination of these two references is quite strained, and highlights the impermissible hindsight-driven impetus for the combination." (page 7 of BPAI decision). Clearly, the Board recognized that biscuit shapes for construction devices were known, but considered the substitution of such a shape for a rectangular shaped top in an attachment device such as Heilmann's not to be obvious.

For the foregoing reasons, it is submitted that a person having ordinary skill in the art would not regard Heilmann as disclosing or suggesting any device having at least two

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 47

vertical projections, as delineated by amended claim 1 (and claims 2, 7, 8, and 9 dependent thereon), or exactly two vertical projections, as provided by new claim 14 (and claims 15-19 dependent thereon).

The patentee also maintains that Heilmann like Smith, discloses only a device having a rectangular top configuration. For the reasons set forth hereinabove under Issue 7, it is maintained that no motivation has been adduced for combining a reference disclosing a rectangular top element appointed to engage workpieces along their sides with references having a non-rectangular element, but only disclosed for engagement of workpieces at their corners.

The Examiner's rejection further includes claim 10. As now amended, claim 10 calls for at least one substantially vertical support member that is located off-center and to one side of at least one attachment orifice. No remarks in the present rejection specifically address this claim. However, the patentee maintains that Heilmann discloses only a hole that extends through both the top and shoulder *d* of his attachment means. Such disclosure clearly does not satisfy the limitation of a support member that is to <u>one side</u> of an attachment orifice. Nothing, either in Heilmann itself or the foregoing modification proposed by the Examiner, would provide this feature. Accordingly, it is submitted that amended claim 10 is not obvious over Heilmann. The same considerations also predicate patentability of new claim 20, which calls for exactly one off-center support member that also is to one side of an attachment orifice.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415
Inventor    : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page       : 48

Attorney Docket No.: HWE-105C

The Examiner has further alleged, in the alternative, that claims 1, 2, 7, 8, 9, and 10 are obvious over the combination of Heilmann, Elmendorf, and Weiland. He has stated that it is widely accepted in the constructional anchor art that spacing between adjacent structures (e.g., tile, boards, etc.) may either be defined by a single unitary spacing member, as in Heilmann, or a plurality of spaced members, as shown by Weiland. In particular, he pointed to Fig. 6 of Weiland as opposed to his Fig. 4, alleging that the spacing is the same in both embodiments only with the first spacer having a unitary member and the latter having a plurality of members. He concluded that it would have been obvious to those having ordinary skill in the art at the time of the invention to have formed the Heilmann vertical spacer as plural smaller vertical members as a matter of choice in design.

The patentee respectfully traverses this contention. Fig. 4 of Weiland provides a device having four radially extending portions 13 that are said to be "channel-like" (page 2, col. 1, lines 23-27). Those portions are located 90 degrees apart. It is further said adjacent portions 13 form, with the intervening wing or marginal portions 14, a series of right angled corner-receiving pockets *a* for positioning and retaining tiles (lines 27-31). For the reasons set forth hereinabove in connection with Issue 1, the patentee maintains that nothing in Weiland or elsewhere motivates the elimination of one set of the radially opposed portions (e.g., those at the 12 o'clock and 6 o'clock positions) and the retention of the other set of radially opposed portions (e.g., those at the 3 o'clock and 9 o'clock positions), as would be required to provide a device having its vertical support members

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam      : 90/007,661
Serial No.  : 09/186,741
Filed       : November 5, 1998
Page        : 49

along the device's centerline. Furthermore, once two of portions 13 were removed, the device would no longer have right-angled pockets *a*, so that inherently it could not function to engage tiles at their corners and carry out its function of provid[ing] an accurate spacing and confining security for the tiles" (lines 39-41).

The patentee further maintains that while features 13 of Fig. 4 of Weiland are denominated as "channel-like portions," they would not be regarded by a skilled person as being separate, substantially vertical support members, as that nomenclature is used in the present specification. Rather, they must be regarded as a single member. Fig. 4 of Weiland thus cannot be regarded as disclosing or suggesting any embodiment having at least two substantially vertical support members. Even less would the Fig. 4 embodiment be regarded as providing an attachment orifice that is <u>between</u> two members, as also required by claim 1. Instead, the orifice clearly passes through a single member.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Harry Eberle. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Heilmann, Elmendorf, and Weiland do not disclose or suggest the subject matter of claims 1, 2, 7, 8, and 9. The Eberle Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Heilmann, Elmendorf, and Weiland as would be required to reach the present claimed anchoring biscuit device.

Accordingly, and in view of the foregoing arguments, the newly presented claims and the Declarations supporting patentability that are appended hereto, reconsideration of

Copied from 09186741 on 10/30/2007

IC-App-1024

ReExamination of USP 6,40z,415                                      Attorney Docket No.: HWE-105C
Inventor   :  Eberle, III
ReExam    :  90/007,661
Serial No.  :  09/186,741
Filed         :  November 5, 1998
Page         :  50

the rejection of claims 1, 2, 7, 8, and 9 under 35 USC 103(a) as being unpatentable over

Heilmann in view of Elmendorf, or, in the alternative, over Heilmann in view of

Elmendorf and further in view of Weiland, is respectfully requested, along with

confirmation of said claims, as amended, and allowance of newly presented claims 13-26.


**Issue 9:**

Claims 1, 2, 7, 8, 9, and 10 were rejected under 35 USC 103(a) as being

unpatentable over Heilmann in view of Chen, or, in the alternative, in further view of

Weiland.

The Examiner has indicated that this rejection is made for the reasons set forth in

Issue 8 regarding Elmendorf. In the present instance, the Examiner has not provided any

express basis on which Heilmann and Chen are properly combined, as the courts have

repeatedly required. See, e.g., *Ex parte Skinner*, 2 USPQ2d 1788, 1790 (B.P.A.I. 1986).

The patentee therefore maintains that no motivation is operative in this rejection beyond

that articulated under Item 8 for the combination of Heilmann with Elmendorf and,

optionally, Weiland. To the contrary, it is submitted that any motivation for the

combination with Chen is negated by the structure of the Chen attachment device,

including the spacing of the wall tiles away from the underlying support structure, as

necessitated for accessing and tightening the securing bolt, as discussed under Item 7

above. Other reasons set forth by the patentee in this section are also as pertinent to

impropriety of the combination of Chen with Heilmann as with Smith.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 51

Attorney Docket No.: HWE-105C

The Patentee also maintains that the combination of Chen with Heilmann is no more availing than the combination of Elmendorf with Heilmann. As set forth above under Issue 8, the patentee maintains that the modification of Heilmann required to provide <u>at least two</u> substantially vertical support members by reducing the thickness of the Heilmann shoulder $d$, as required to reach amended claim 1 (and claims 2 and 7-9 dependent thereon), would not be made by a skilled artisan, is unreasonably strained, and reflects the operation of impermissible hindsight. Chen in no way remedies such a deficiency. The at least one off-center element required by amended claim 10 also is not disclosed or suggested by Heilmann, even in combination with Chen.

Further, the patentee respectfully submits that the alternative additional combination of Weiland with Heilmann and Chen is no more availing that the combination of Weiland with Heilmann and Elmendorf as discussed in connection with Issue 8.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Harry Eberle. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Heilmann, Chen, and Weiland do not disclose or suggest the subject matter of claims 1, 2, 7, 8, 9, and 10. The Eberle Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Heilmann, Chen, and Weiland as would be required to reach the present claimed anchoring biscuit device.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No.  : 09/186,741
Filed       : November 5, 1998
Page       : 52

It is thus submitted that claims 1, 2, 7, 8, 9, and 10, as amended, are not obvious over Heilmann, Chen, and Weiland, whether taken singly or in any combination.

In view of the present claim amendments, the remarks set forth above, and the Declarations in support of patentability submitted herewith, reconsideration of the rejection of claims 1, 2, 7, 8, 9, and 10 under 35 USC 103(a) over Heilmann, Chen, and Weiland, and their confirmation, together with allowance of newly presented claims 13-26, are respectfully requested.


**Issue 10:**

Claims 3-6 were rejected under 35 USC 103(a) as being unpatentable over Heilmann in view of Elmendorf, or, in the alternative, in further view of Weiland, and further in view of Wothe.

As set forth hereinabove in connection with the rejection of Issue 8, the patentee traverses the Examiner's assertion that the modified Heilmann device discloses the invention as presently claimed. In particular, the patentee maintains that amended claim 1 is not disclosed or suggested by the combination of Heilmann and Elemendorf, or even alternatively in further view of Weiland, for the aforesaid reasons. Under Issue 2 above, the patentee has further differentiated Wothe, which does not cure the fundamental deficiencies of Heilmann, Elmendorf, and Weiland with respect to the features of amended claim 1, from which claims 3-6 depend. Thus, even with the disclosure of a

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,40z,+15                               Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page     : 53

non-circular and elongated slot washer provided by Wothe, claims 3-6 are not disclosed or suggested as the Examiner has alleged.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Harry Eberle. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Heilmann, Elmendorf, Weiland, and Wothe do not disclose or suggest the subject matter of claims 3-6. The Eberle Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Heilmann, Elmendorf, Weiland, and Wothe, as would be required to reach the present claimed anchoring biscuit device.

Accordingly, reconsideration of the rejection of claims 3-6 under 35 USC 103(a) as being unpatentable over Heilmann in view of Elmendorf, or, in the alternative, in further view of Weiland, and further in view of Wothe, is respectfully requested, along with confirmation of claims 3-6, as amended, over said art..

## Issue 11:

Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 were rejected under 35 USC 103(a) as being unpatentable over Japanese Patent Publication JP 04-371657 to Hashida, or, in the alternative, Hashida in view of Weiland.

In the present instance, the Examiner has provided a translation apparently only of the abstract of Hashida, and not of the full publication. As best understood by the Patent

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415
Inventor : Eberle, III
ReExam : 90/007,661
Serial No. : 09/186,741
Filed : November 5, 1998
Page : 54

Attorney Docket No.: HWE-105C

Owner, Hashida provides an attachment of stone boards to a wall and a fitting useful

therefor.

It is respectfully submitted that the present office action reflects a practice that the

Board of Patent Appeals and Interferences has eschewed as being improper, namely a

rejection predicated on an English-language translation solely of an abstract of a foreign-

language reference. In *Ex parte Jones*, 62 U.S.P.Q.2D (BNA) 1206, 1208 (BPAI 2001),

the Board wrote as follows:

> The Board of Patent Appeals and Interferences continues to have
> recurring problems in resolving *ex parte* appeals which come before it.
> One continuing recurring problem is the citation and reliance by
> examiners on abstracts, without citation and reliance on the underlying
> scientific document.
>
> In this appeal, the examiner relied upon abstracts of three technical
> journal articles without referring to translations of the underlying
> documents. Citation of an abstract without citation and reliance on the
> underlying scientific document itself is generally inappropriate where
> both the abstract and the underlying document are prior art. Abstracts
> often are not written by the author of the underlying document and
> may be erroneous. It is our opinion that a proper examination under
> 37 CFR § 1.104 should be based on the underlying documents and
> translations, where needed. Accordingly, the preferred practice is for
> the examiner to cite and rely on the underlying document.
>
> In the event a reference is in a foreign language, if the applicant does
> not wish to expend resources to obtain a translation, the applicant may
> wish to request the examiner to supply a translation. If a translation is
> not supplied by the examiner, the applicant may wish to consider
> seeking supervisory relief by way of a petition (37 C.F.R. § 1.181) to
> have the examiner directed to obtain and supply a translation. . . . In
> our view, obtaining translations is the responsibility of the examiner.
> A review by the examiner and applicant of translations of the prior art
> relied upon in support of the examiner's rejection may supply
> additional relevant evidence as to whether there is a legally sufficient
> reason, suggestion, teaching or motivation to combine the teachings of

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                      Attorney Docket No.:  HWE-105C
Inventor   :  Eberle, III
ReExam   :  90/007,661
Serial No. :  09/186,741
Filed      :  November 5, 1998
Page      :  55

the five technical journal articles.   Moreover, an evaluation of translations may eliminate the need for an appeal.

It is well established that a reference being applied in a rejection must be considered for what it would suggest, as a whole, to a person having ordinary skill in the art.  Clearly, a rejection based on the translation of a small portion of such a reference cannot be regarded as being based on what the reference as a whole teaches.

The need for a translation in the present instance is particularly apparent in a comparison of Figs. 2 and 3 of Hashida.  The patent owner submits that these Figures demonstrate, as best as can be ascertained without any underlying textual description, that the Hashida fastener is a two-part device that functions as a turn-button.  In Figs. 2 and 3, portions 22 and 23 are differentiated by the crosshatching only of portion 22.  By way of contrast, the present claimed anchoring biscuit device has vertical support members that are attached to the underside of the top element.  The claimed device is preferably fabricated as a unitary object.  In the Hashida device, the spacer portion (22) is used on a vertical surface to space individually installed stone panels.  After a given stone is in position, the aligner portion (23) is rotated to lock in that stone and place the aligner into position to receive the next, adjacent stone.  The procedure is repeated as subsequent stones are installed and the desired height is obtained.  With this system, fasteners are put into position prior to installing the stone, thus assuring straight lines for grouting.  This application method would not prove practical for surfaces that are installed horizontally, such as decks, because the space required to accommodate the spacer and rotating portion

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 56

for a screw would result in an excessively wide gap. Such a width would be regarded as unattractive and unsafe for a decking installation.

This usage of fitting 20 of Hashida differentiates its structure from that of the Eberle anchoring biscuit device. Fitting 20 has only a single vertical member 22 that is not attached to the top element 23. Versions of the Eberle device having two vertical support members with an attachment orifice between inherently could not function in Hashida's manner, because there would be no means of securing the top element and vertical support members with a screw or other fastener. In addition, Hashida's two-piece fastener is more complicated and difficult to fabricate than a single-piece device. The installation would require added extraneous steps during the deck installation process, including the rotation of the top element into position and a final tightening of the screw attachment that would be needed thereafter to remove play and assure adequate holding force. The attachment would not be as strong, because the width of the top element would be limited to the acceptable gap between adjacent deck boards, thus severely restricting the possible bearing area of the device. The Hashida fastener itself would have a marked weakness and propensity to break due to flexure along a line across the narrow width dimension of the top element at the screw orifice. On the other hand, the vertical support members of the Eberle device act in concert with the top element to limit flexure and provide enhanced strength. The Hashida device thus is not capable of adequately providing the Eberle support function.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed         : November 5, 1998
Page         : 57

Accordingly, it is respectfully submitted that a person having ordinary skill in the art would have no motivation to carry out the substantial modifications of any device constructed in accordance with the Hashida reference singly or in combination with Weiland, as would be required to reach the claimed device. Like Chen, Hashida teaches a device that must be constructed of suitable materials and given sufficient heft to secure stone wall panels in two dimensions. Any such device must both restrain the panels from becoming detached from the wall structure behind them and carry the static vertical loading of the tiles. Hashida teaches only a generally T-shaped device with a single projection from a top element. The Weiland element has multiple projections, but they are perpendicularly oriented so that they can engage relatively light wall tiles, not heavy stone panels, at their corners. The perpendicular projections of the Weiland device clearly prevent it from rotating in the manner in which the Hashida element is used

Specifically, Hashida's fitting 20 is clearly differentiated from the present claimed anchoring biscuit device. Fitting 20 has only a single vertical member 22, whereas amended claims 1-9 call for at least two substantially vertical support members and claims 14-19 call for exactly two such vertical support members. The Eberle device, having at least two members, inherently could not function in the manner proposed for the Hashida device as a result of its structure.

Like Chen, Hashida teaches a device that must be constructed of suitable materials and given sufficient heft to secure stone wall panels in two dimensions. Any such device must both restrain the panels from becoming detached from the wall

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 58

structure behind them and carry the static vertical loading of the tiles. Hashida teaches

only a generally T-shaped device with a single projection from a top element. The

Weiland element has multiple projections, but they are perpendicularly oriented so that

they can engage relatively light wall tiles, not heavy stone panels, at their corners. The

perpendicular projections of the Weiland device clearly prevent it from rotating in the

manner in which the Hashida element is used

It is further submitted that Hashida, whether taken singly or in combination with

Weiland, also fails to disclose or suggest the subject matter of claims 10-11 as amended,

or new claims 20-26. Claims 10-11 now call for at least one off-center vertical support

member. On the other hand, as best understood by the patentee, spacer 22 of the Hashida

device is located on-center, not off-center, and the Examiner has not pointed to any

disclosure or suggestion to the contrary or any suggestion that Hashida (even in

combination with Weiland) be so modified. The same considerations are submitted to

apply with equal force to claims 20-26, which require exactly one off-center vertical

support.

The patentee also maintains that the considerations set forth above under Issue 7

regarding the skilled person's motivation to consider the Chen reference relating to stone

panel wall construction also apply to Hashida. That is to say, a person having ordinary

skill in the art to which the Eberle device pertains would not have been motivated to look

to hardware and techniques used in constructing and supporting massive stone walls for

combination with hardware used instead for the radially different problem of attaching

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 59

Attorney Docket No.: HWE-105C

decking boards. Accordingly, it is further submitted that the combination of Weiland and Hashida is not a proper predicate for the present obviousness rejection.

The Hashida prior art device, like Heilmann's metal device, prevents or inhibits insertion of an attachment screw at an angle to catch both the deck board and the board being attached as in the present invention device. Thus, this structural difference is significant. The new claims expressly indicate that the attachment orifice and the support member(s) are separate and apart from one another.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Harry Eberle. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Hashida and Weiland do not disclose or suggest the subject matter of claims 1, 2, 3, 5, 7, 8, 9, 10 and 11. The Eberle Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Hashida and Weiland as would be required to reach the present claimed anchoring biscuit device.

In view of the foregoing remarks, the present claim amendment, and the Declarations supporting patentability that are appended hereto, it is submitted that claims 1, 2, 3, 5, 7, 8, 9, 10, and 11, as amended, are not obvious over Hashida and Weiland.

Accordingly, reconsideration of the rejection under 35 USC 103(a) of amended claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 as being unpatentable over Hashida, or in the alternative, Hashida in view of Weiland, is respectfully requested, along with confirmation of said claims and allowance of new claims 13-26. In addition, and in

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 60

Attorney Docket No.: HWE-105C

accordance with *Ex parte Jones*, *supra*, the patentee respectfully requests that the Examiner obtain and provide a translation of the full Hashida reference and provide appropriate citation to that document to establish the propriety of any rejection based on Hashida, which has not previously been cited as prior art in the present proceeding or in the original prosecution of the subject patent.

## Issue 12:

Claims 4, 6, and 12 were rejected under 35 USC 103(a) as being unpatentable over Hashida in view of Wothe, or, in the alternative, Hashida in view of Weiland and further in view of Wothe.

The examiner has asserted that the Hashida device as modified discloses the invention substantially as claimed, less a non-circular and elongated slot. For at least the reasons set forth above under Issue 11, the patentee respectfully disagrees, and maintains that amended claims 1 and 10 are patentable over Hashida, either singly or in combination with Weiland.

Claims 4 and 6, and 12 respectively depend on claims 1 and 10, and further require the aforementioned non-circular and elongated slot. As set forth under Issue 2 above, any disclosure by Wothe of a non-circular and elongated slot does not cure the lack of disclosure of other features of claims 1 and 10. The patentee thus maintains that claims 4, 6, and 12 are not rendered obvious by any combination of Hashida, Weiland, and Wolthe.

Copied from 09186741 on 10/30/2007

ReExamination of USP 6,402,415
Inventor    : Eberle, III
ReExam      : 90/007,661
Serial No.  : 09/186,741
Filed       : November 5, 1998
Page        : 61

Attorney Docket No.: HWE-105C

Accordingly, reconsideration of the rejection under 35 USC 103(a) of amended claims 4, 6, and 12 as being unpatentable over Hashida, or in the alternative, Hashida in view of Weiland, in further view of Wothe, is respectfully requested, along with confirmation of said claims.

## Further Remarks:

The Examiner's attention is respectfully drawn to the Rule 132 Declarations of Sabin and Eberle. Set forth therein is further evidence tending to establish the novelty and non-obviousness of the present patent claims over the prior art applied. In addition, these declarations provide evidence of the industry recognition of the EB-TY® PRODUCT as satisfying a long-felt need in the art and its commercial acceptance and success.

## Conclusion:

In view of the resubmission of the claim listing comprising amended claims 1, 2, 7, 8, and 10 and newly presented claims 13-26; the Rule 132 Declarations of Sabin and Eberle submitted in conjunction with the response filed February 9, 2007; and the remarks set forth hereinabove and in the February 9, 2007 response, it is respectfully submitted that claims 1-26 are patentable over the art of record. Entry of the present

Copied from 09186741 on 10/30/2007

ReExamination of USP. 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 62

amendment, confirmation of claims 1-12, allowance of new claims 13-26, and issuance

of an *Ex Parte* Reexamination Certificate, are earnestly solicited.

_May 18, 2007_

Date

_Ernest Buff_

Ernest D. Buff
Reg. No. 25,833
Attorney for Patent Owner
231 Somerville Rd.
Bedminster, NJ 07921
(908) 901-0220 Tele
(908) 901-0330 Fax

Copied from 09186741 on 10/30/2007

IC-App-1037

ReExamination of USP 6,402,415  
Inventor  : Eberle, III  
ReExam  : 90/007,661  
Serial No. : 09/186,741  
Filed     : November 5, 1998  

Attorney Docket No.: HWE-105C

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the attached "SUPPLEMENTAL AMENDMENT AND RESPONSE UNDER 37 CFR 1.550(b)" was served by First Class Priority Mail on the date below to:

> Berenato, White, & Stavish, LLC
> 6550 Rock Spring Drive, Suite 240
> Bethesda, MD 20817

> Attention: Matthew W. Stavish, Esq.

_May 18, 2007_
_____
Date

_Signature_
Ernest D. Buff
Reg. No. 25,833
(Attorney for Patent Owner)
231 Somerville Rd.
Bedminster, NJ 07921
(908) 901-0220 Tele
(908) 901-0330 Fax

Copied from 09186741 on 10/30/2007

IC-App-1038

# ERNEST D. BUFF & ASSOCIATES, LLC

*Intellectual Property Solutions*

231 Somerville Road
Bedminster, NJ 07921
(908) 901-0220
FAX (908) 901-0330

**FAX RECEIVED**

**OCT 2 6 2007**

CENTRAL REEXAMINATION UNIT

# FAX COVER SHEET

Date:            October 26, 2007
From:            Ernest D. Buff
Attorney #:      25,833
To:              Jeffry R. Jastrzab, Central Reexamination Unit, USPTO
Re:              Reexamination Control No.: 90/007,661
                 ANCHORING BISCUIT DEVICE
                 Old Docket No.: HWE-105C
                 New Docket No.: 0247-3 CIP RE

| RECIPIENT | FIRM | CC: | FAX NUMBER |
|---|---|---|---|
| Jeffrey R. Jastrzab | USPTO | | 1 (571) 273-9900 |

**Message:**

Dear Mr. Jastrzab:

In accordance with our telephone conference on October 26, 2007, transmitted herewith are copies of the following documents: (i) Petition For Revival Of Unintentionally Abandoned Application Under 37 C.F.R. 1.137(b); (ii) Certificate of Mailing by Express Mail dated September 17, 2007; (iii) Certificate of Service; (iv) Check No.: 6031 payable to the Director Of U.S. Patents & Trademarks in the amount of $750; (iv) Copies of the previously transmitted Supplemental Amendment And Response Under 37 CFR 1.550(b) and Certificate of Service, each dated May 18, 2007; and (v) Return-Address Postcard bearing the USPTO date stamp, dated September 17, 2007. Each of these documents was transmitted to the Office via date certified Express mail on September 17, 2007. The documents were received by the Office and apparently entered electronically into the imaged file wrapper of USSN 09/186,741, which issued as U.S. Patent No.: 6,402,415 (which is subject to the present Reexamination Proceedings.

Please do not hesitate to contact us if we can be of further assistance in this matter.

Very truly yours,

Ernest D. Buff
Reg. No.: 25,833

**Confidentiality Note:**
The documents accompanying this telecopy transmission contain information from the law firm of Ernest D. Buff & Associates, LLC, which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named in the transmittal sheets. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone so that we can arrange for the return of the original documents to us at no cost to you.

Time Sent:_____ Operator:_____

0247-3 CIP RE – C OF PETITION-F

IC-App-1039

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re application of: | Harry W. Eberle, III | Central RE Unit: | 3993 |
| Serial No.: | 09/186,741 | Examiner: | Jeffrey R. Jastrzab |
| Filed: | November 5, 1998 | ExParte RE Control No. | 90/007,661 |
| For: | **ANCHORING BISCUIT DEVICE** | | |
| Old Docket No.: | HWE-105C | | |
| New Docket No.: | 0247-3 CIP RE | | |

Bedminster, N.J. 07921
September 17, 2007  *FAX RECEIVED*

Mailstop Petitions
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

*OCT 2 6 2007*

*CENTRAL REEXAMINATION UNIT*

Sir:

## PETITION FOR REVIVAL OF
## UNINTENTIONALLY ABANDONDED APPLICATION
## UNDER 37 C.F.R. 1.137(b)

Applicant respectfully petitions, through his attorney of record, the Commissioner of Patents and Trademarks to revive the above-identified application and to reinstate prosecution of the ExParte Reexamination proceeding.

Applicant prepared and submitted on May 18, 2007 a Supplemental Amendment Under 37 CFR 1.550(b) in response to the Notice of Defective Paper in Ex Parte Reexamination dated May 8, 2007. The Supplemental Amendment was never received by the United States Patent And Trademark Office, and the application therefore became abandoned on June 8, 2007.

The entire delay in responding to the Notice was unintentional.

Applicant is resubmitting herewith a copy of the Supplemental Amendment and Response Under 37 CFR 1.550 (b) which was filed on May 18, 2007

IC-App-1040

2

by date-certified First Class Mail in response to the Notice.  The Supplemental Amendment presents arguments that are believed to place the application in condition for allowance.  The revival is requested in order to provide sufficient time for the Examiner to consider the Amendment.

A check made payable to the Director of U.S. Patents and Trademarks in the amount of $750 is enclosed to cover the $750 fee associated with this Petition to Revive.

Respectfully submitted,

Harry W. Eberle, III

By Ernest D. Buff
(His Attorney)
Reg. No. 25,833
(908) 901-0220

0247-3 CIP RE-PR

10/30/2007 PVOLPE    00000001 90007661
01 FC:2453                750.00 OP

IC-App-1041

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:          Harry W. Eberle, III        Central RE Unit      3993
Serial No.:                    09/186,741                 Examiner:            Jeffrey J. Jastrzab
For:                           **ANCHORING BISCUIT DEVICE**
ExParte RE Control No.         90/007,661                 **FAX RECEIVED**
Old Docket No.:                HWE 105C
New Docket No.:                0247-3 CIP RE               OCT 2 6 2007

                                                          CENTRAL REEXAMINATION UNIT

                               Ernest D. Buff & Associates, LLC
                               231 Somerville Road
                               Bedminster, New Jersey 079210
                               (908) 901-0220
                               September 17, 2007

Commissioner For Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

---

**Certificate of Mailing by Express Mail**

I hereby certify that this correspondence is being deposited with the United States Postal Service as Express Mail in an envelope bearing Express Mail Label No. EQ 1744 53 791 US addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on ___September 17, 2007___ .

_Signature_

**Ernest D. Buff**
*Attorney of Record*

*September 17, 2007*
*(Date)*

---

IC-App-1042

## EX PARTE REEXAMINATION CONTROL NUMBER 90/007,661

In re application of:                    : Examiner:
                                         :
HARRY W. EBERLE, III                     : JEFFREY R. JASTRZAB
                                         :
Serial No. 09/186,741                    : Central Reexamination Unit: 3993
                                         :
Filing Date:  November 5, 1998           : Attorney Docket No.  HWE-105C
                                         :
Priority Date: March 5, 1997             :
                                         :
For:    ANCHORING BISCUIT DEVICE         :

**U.S. Patent No. 6,402,415 B1**

Issue Date: June 11, 2002

**FAX RECEIVED**

**OCT 2 6 2007**

CENTRAL REEXAMINATION UNIT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a complete copy of this Supplemental Amendment Under 37 CFR 1.550(b) was served on this 17th day of September 2007 upon the below-listed party of record, by mailing the same via United States First Class Mail in an envelope addressed to the Requester's attorney of record as follows:

Mathew W. Stavish
BERENATO, WHITE & STAVISH, LLC
6550 Rock Spring Drive, Suite 240
Bethesda, Maryland 20817

_____
Signature

Ernest D. Buff, Esq.
Reg. No.: 25,833

Ernest D. Buff & Associates
231 Somerville Road
Bedminster, NJ 07920

IC-App-1043

ERNEST D. BUFF & ASSOCIATES, LLC.
231 Somerville Road
Bedminster, New Jersey 07921
(908) 901-0220

WACHOVIA BANK, NA
Morristown, NJ 07960
55-212

6031

9/17/2007

PAY TO THE
ORDER OF    Dir. of U.S. Patent & Trademark                    $  **750.00

Seven Hundred Fifty and 00/100************************************************    DOLLARS

Dir. of U.S. Patent & Trademark
PO Box 1450
Alexandria, VA 22313-1450

MEMO    0247-3 CIP RE - Petition To Revive

© 2005 INTUIT INC. # 728  1-800-433-8810

⑈6031⑈ ⑆021212000251⑆ 20 20000 6940⑈

IC-App-1044

Commissioner For Patents
P.O. Box 1450
Alexandria, VA 22313-1450

The stamp of the Patent Office hereon may be taken as an acknowledgement
by it on the date stamped of:

File 0247-3CIP RE

*FINAL FEE
*AMENDMENT in application
Copy of Amendment
Petition to Revive
Express Mailing Certificate
Charter $755
Postcard
Certificate of Service

Re Control No. 90/000,441
Serial No. 09/186,441

IC-App-1045

Commissioner For Patents
P.O. Box 1450
Alexandria, VA 22313-1450

SEP 1 7 2007

File **O247 - 3 CIP RE**

The stamp of the Patent Office hereon may be taken as an acknowledgement
by it on the date stamped of:

(FINAL FEE

(AMENDMENT in application

( Copy of Supp-Paper

( Petition to Revive

( Express Mailing Certificate

( Check for $750

( Postcard

( Certificate of Service

RE Control No 90/007,661

Serial No. **O9/186,741**

IC-App-1046

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## CENTRAL REEXAMINATION UNIT

## EX PARTE REEXAMINATION CONTROL NUMBER 90/007,661

| | |
|---|---|
| In re application of: | : Examiner: |
| HARRY W. EBERLE, III | : JEFFREY R. JASTRZAB |
| Serial No.  09/186,741 | : Central Reexamination Unit: 3993 |
| Filing Date:  November 5, 1998 | : Attorney Docket No.  HWE-105C |
| Priority Date: March 5, 1997 | : |
| For:     ANCHORING BISCUIT DEVICE | : |
| **U.S. Patent No. 6,402,415 B1** | : **Issue Date: June 11, 2002** |

Honorable Commissioner of Patents
P.O. BOX 1450
Alexandria, VA 22313-1450

## SUPPLEMENTAL AMENDMENT AND RESPONSE UNDER 37 CFR 1.550(b)

In response to the Office Action dated May 8, 2007 in the above-mentioned patent reexamination, the following amendments, remarks, declarations, and requests for reconsideration are submitted.

A statement of **Claim Status** is set forth on page 2 of this paper.

**Amendments to the Claims** are set forth beginning on page 3 of this paper.

A statement setting forth **Support for Amendments to the Claims** is provided beginning on page 9 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

CERTIFICATE OF MAILING BY FIRST CLASS MAIL

I hereby certify under 37 CFR §1.8(a) that this correspondence is being deposited with the United States Postal Service as first class mail with sufficient postage on the date indicated below and is addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450

May 18, 2007
Date of Deposit

Signature

Ernest D. Buff
Typed or Printed Name of Person Signing Certificate

IC-App-1047

ReExamination of USP 6,40⌐,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 2

## STATUS OF CLAIMS:

The following is the current status of all claims in the subject reexamination

proceeding:

| CLAIMS | STATUS |
|--------|--------|
| 1 through 12 | Issued Patent Claims, pending in the present reexamination. |
| 1, 2, 7, 8, 10 | Amended as set forth hereinafter. |
| 13 through 26 | Newly presented by this Amendment. |

IC-App-1048

ReExamination of USP 6,4○○,415
Inventor   :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed      :  November 5, 1998
Page       :  3

Attorney Docket No.:  HWE-105C

**IN THE CLAIMS**

Kindly amend claims 1, 2, 7, 8, and 10 and add new claims 13-26 as follows:

1. (amended)  An anchoring biscuit device for joining [three ]together two adjacent boards and a support board, the adjacent boards being in the same plane and having in their sides pre-cut biscuit receiving slots, [which] the anchoring biscuit device comprising[comprises]:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration [with] having opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, and opposite end walls, said top element having a center [area between said opposite side walls in the shape of arcs]line extending between said end walls, and said respective side walls being adapted to be fitted into said respective biscuit receiving slots of said adjacent boards;

(b) at least two substantially vertical support members attached to an underside of said top element [at ]along said center [area] line of said top element and extending perpendicularly downwardly [there]from said top element for a predetermined length in a vertical plane that is aligned with, and directly under, said center line, said predetermined length being adapted to maintain said top element in a predetermined position during use for joining said two adjacent boards together with, and atop, said support board, [which have been pre-cut with biscuit receiving slots, two of ]all of said at least two vertical

PAGE 11/71 * RCVD AT 10/26/2007 5:09:13 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/10 * DNIS:2739900 * CSID:908 901 0330 * DURATION (mm-ss):15-16

IC-App-1049

ReExamination of USP 6,4⊍⌂,⌂15                    Attorney Docket No.:  HWE-105C
Inventor    :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  4

support members being substantially flat[, being] and in [the same]said vertical plane

[and one of each being located on opposite sides of an attachment orifice]; and,

(c) at least one attachment orifice located at least on said top element for

attachment of said anchoring biscuit device to [a ]said support board for anchoring and

support of said two adjacent boards, said attachment orifice being located between two of

said vertical support members.

2. (amended)  The anchoring biscuit device of claim 1 wherein said attachment

orifice is at least one screwhole located on said top element for screwing of said

anchoring biscuit device to [a]said support board.

7. (amended)  The anchoring biscuit device of claim 1 wherein said top element

and said vertical support members are unitarily formed.

8. (amended)  The anchoring biscuit device of claim 1 wherein there are exactly

two vertical support members[ and one is located on each side of said attachment orifice].

10. (amended)  An anchoring biscuit device for joining [three ]together two

adjacent boards and a support board, the adjacent boards being in the same plane and

having in their sides pre-cut biscuit receiving slots, the anchoring biscuit device [which

comprises]comprising:

(a) a first substantially flat horizontal top element having a generally biscuit-

shaped top view configuration with opposite side walls in the shape of arcs from a top

view, said arcs having predetermined radii and arc lengths, and opposite end walls, said

top element having a center [area between said opposite side walls in the shape of arcs]

IC-App-1050

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No.  : 09/186,741
Filed        : November 5, 1998
Page        : 5

line extending between said end walls, and said respective side walls being adapted to be

fitted into said respective biscuit receiving slots of said adjacent boards;

     (b) at least one substantially vertical support member attached to an underside of

said top element [at]along said center [area]line of said top element and extending

perpendicularly downwardly therefrom for a predetermined length in a vertical plane that

is aligned with, and directly under, said center line, said predetermined length being

adapted to maintain said top element in a predetermined position during use for joining

said two adjacent boards together with, and atop, said support board[which have been

precut with biscuit receiving slots], said at least one vertical support member being

substantially flat; and,

     (c) at least one attachment orifice located at least on said top element for

attachment of said anchoring biscuit device to a support board for anchoring and support

of said two adjacent boards; and

     wherein [there is]said at least one substantially vertical support member [which]

is located off-center and to one side of said at least one attachment orifice.

     13. (new)  The anchoring biscuit device of claim 10 having exactly one said

vertical support member.

     14. (new)  An anchoring biscuit device for joining together two adjacent boards

and a support board, the adjacent boards being in the same plane and having in their sides

pre-cut biscuit receiving slots, the anchoring biscuit device comprising:

IC-App-1051

ReExamination of USP 6,46.,415                          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page        : 6

    (a) a first substantially flat horizontal top element having a generally biscuit-

shaped top view configuration having opposite side walls in the shape of arcs from a top

view, said arcs having predetermined radii and arc lengths, and opposite end walls, said

top element having a center line extending between said end walls, and said respective

side walls being adapted to be fitted into said respective biscuit receiving slots of said

adjacent boards;

    (b) exactly two substantially vertical support members attached to an underside of

said top element along said center line of said top element and extending perpendicularly

downwardly therefrom for a predetermined length in a vertical plane that is aligned with,

and directly under, said center line, said predetermined length being adapted to maintain

said top element in a predetermined position during use for joining said two adjacent

boards together with, and atop, said support board, said vertical support members being

substantially flat and in said vertical plane; and

    (c) at least one attachment orifice located on said top element for attachment of

said anchoring biscuit device to said support board for anchoring and support of said two

adjacent boards, said attachment orifice being located between said vertical support

members.

    15. (new)  The anchoring biscuit device of claim 14 wherein said attachment

orifice is at least one screwhole located on said top element for screwing of said

anchoring biscuit device to said support board.

IC-App-1052

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 7

16. (new)  The anchoring biscuit device of claim 15 wherein said screwhole has a bevelled top.

17. (new)  The anchoring biscuit device of claim 15 wherein said screwhole is non-circular and elongated.

18. (new)  The anchoring biscuit device of claim 14 wherein said top element and said vertical support member are unitarily formed.

19. (new)  The anchoring biscuit device of claim 14, having exactly one said attachment orifice.

20. (new)  An anchoring biscuit device for joining together two adjacent boards and a support board, the adjacent boards being in the same plane and having in their sides pre-cut biscuit receiving slots, and wherein the anchoring biscuit device comprises:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, and opposite end walls, said top element having a center line extending between said end walls, and said respective side walls being adapted to be fitted into said respective biscuit receiving slots of said adjacent boards;

(b) exactly one substantially vertical support member attached to an underside of said top element along said center line of said top element and extending perpendicularly downwardly therefrom for a predetermined length in a vertical plane that is aligned with, and directly under, said center line, said predetermined length being adapted to maintain

IC-App-1053

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam     :  90/007,661
Serial No.  :  09/186,741
Filed        :  November 5, 1998
Page        :  8

said top element in a predetermined position during use for joining said two adjacent

boards together with, and atop, said support board, said at least one vertical support

member being substantially flat; and,

(c) at least one attachment orifice located at least on said top element for

attachment of said anchoring biscuit device to a support board for anchoring and support

of said two adjacent boards; and

wherein said substantially vertical support member is located off-center and to

one side of said at least one attachment orifice.

21. (new)  The anchoring biscuit device of claim 20 wherein said attachment

orifice is at least one screwhole located on said top element for screwing of said

anchoring biscuit device to said support board.

22. (new)  The anchoring biscuit device of claim 21 wherein said screwhole has a

bevelled top.

23. (new)  The anchoring biscuit device of claim 21 wherein said screwhole is

non-circular and elongated.

24. (new)  The anchoring biscuit device of claim 20 wherein said top element and

said vertical support member are unitarily formed.

25. (new)  The anchoring biscuit device of claim 20, having exactly one said

attachment orifice.

26. (new)  The anchoring biscuit device of claim 25, wherein said attachment

orifice is situated on said center line.

IC-App-1054

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam      : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page        : 9

## SUPPORT FOR CLAIM AMENDMENTS

Support for the claim amendments presented in this paper is provided by the

specification of the original application and the issued patent as follows. Consequently,

no new matter has been added by the present amendment.

Claim 1:

Claim 1 as originally filed;

Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 24-25, 29-31, 31-33,

and 39;

Figs. 1, 4, 5.

Claim 7:

(typographical error).

Claim 8:

Figs. 1, 2, 6, 7.

Claim 10:

Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 24-25, 29-31, 31-33,

and 39;  col. 6, lines 35-37;

Fig. 11.

Claim 13:

Col. 6, lines 35-37;

Fig. 11.

Claim 14:

IC-App-1055

ReExamination of USP 6,462,415          Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 10

     Claim 1;

     Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 13-22, 24-25, 29-31,

     31-33, and 39;

     Figs. 1, 4, 5.


Claims 15-17:

     Claims 2-4, respectively.

Claim 18:

     Claim 8 as originally filed;

     Claim 7.

Claim 19:

     Col. 5, lines 17-19;

     Figs. 1-3.

Claim 20:

     Claim 10;

     Col. 1, lines 18-19; col. 4, lines 24-25; col. 5, lines 4-5, 10, 24-25, 29-31, 31-33,

     and 39;  col. 6, lines 35-37;

     Fig. 11.

Claims 21-23:

     Claims 2-4, respectively.

Claim 24:

IC-App-1056

ReExamination of USP 6,40.,.15              Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
·Filed     : November 5, 1998
Page      : 11

Claim 8 as originally filed;

Claim 7.

Claim 25:

Col. 5, lines 17-19;

Figs. 1-3.

Claim 26:

Fig. 11.

IC-App-1057

ReExamination of USP 6,46..,415                    Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page      : 12

## REMARKS

In the Office Action dated May 8, 2007, in the instant *Ex Parte* Reexamination

proceeding, the Examiner has indicated that the Patent Owner's response filed February

9, 2007, was not compliant with the requirements of 37 CFR 1.530(d)-(j). Specifically,

the Examiner indicated that the claim listing did not employ single brackets enclosing

text to be deleted from the claims as originally issued. The Examiner set a one month

period for the Patent Owner to correct the informality.

Provided herewith is a replacement claim listing that is believed to be in

compliance with the formal requirements of 37 CFR 1.530(d)-(j) and MEP 2250 I.B.

The claim listing includes amended claims 1, 2, 7, 8, and 10 and newly presented claims

13-26. Each of the claims is amended so that text to be omitted is enclosed within single

brackets and text to be added is underlined. The text of the amended and newly

presented claims is otherwise identical to that included in the February 9, 2007 response.

For the convenience of the Examiner, the present amendment further includes

sections of the February 9, 2007 response entitled "Claim Status" and "Support for

Amendments to the Claims". These sections repeat verbatim the corresponding sections

that were included in the amendment dated February 9, 2007.

The present amendment further includes the remarks set forth below in support of

the patentability of claims 1-12 of the issued '415 patent, as presently amended, and new

claims 13-26. These remarks are substantially identical to those provided in the February

IC-App-1058

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam      :  90/007,661
Serial No.  :  09/186,741
Filed       :  November 5, 1998
Page        :  13

9, 2007 that was deemed non-compliant, and are submitted herewith for the Examiner's

convenience. In view of the present claim amendments, the remarks hereinbelow, and

the Declarations under 37 CFR 1.132 by Harry W. Eberle, III, and Kevin Sabin filed on

February 9, 2007, it is respectfully submitted that claims 1-26 are in allowable condition.


In order to emphasize the patentable distinctions of the Patentee's contribution

over the prior art of record, claims 1 and 10 have been amended to recite an anchoring

biscuit device for joining together two adjacent boards and a support board, wherein the

adjacent boards are in the same plane and have in their sides pre-cut biscuit receiving

slots. The anchoring device has a substantially flat horizontal top element having a

generally biscuit-shaped top view configuration with opposite side walls in the shape of

arcs from a top view, the arcs having predetermined radii and arc lengths, and opposite

end walls. The top element has a center line extending between the end walls. The

respective side walls are adapted to be fitted into the respective biscuit receiving slots of

the adjacent boards. Amended claim 1 further calls for at least two substantially vertical

support members attached to an underside of the top element along the center line of the

top element. The vertical support members extend perpendicularly downwardly from the

underside of the top element for a predetermined length in a vertical plane that is aligned

with, and directly under, said center line. The predetermined length is adapted to

maintain the top element in a predetermined position during use for joining the two

adjacent boards together with and atop the support board. The at least two vertical

ReExamination of USP 6,402,415                    Attorney Docket No.:  HWE-105C
Inventor   :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed       :  November 5, 1998
Page       :  14

support members are substantially flat and in the same vertical plane.  One of the vertical

support members is located on each side of an attachment orifice.

Claim 8 has been amended to emphasize the patentable distinctions of the

Patentee's contribution to the art and for the sake of clarity.  Claim 8 now calls for

exactly two vertical support members.  The recitation that the two vertical support

members are located on the sides of the attachment orifice has been removed as being

redundant, this feature now being recited by claim 1.

Claims 2 and 7 have been amended for the sake of clarity.  In claim 2, the

antecedent basis for the support board has been clarified.  The word "member" in claim

7, an obvious typographical error, has been corrected to the plural form "members."

New claims 13-26 have been added to provide adequate coverage for the

Patentee's contribution to the art.

Claim 13, dependent from claim 10, calls for exactly one vertical support

member.

New independent claim 14 parallels amended claim 1, but calls for exactly two

vertical support members.  Claims 15-18 depend from claim 14 and recite preferred

embodiments paralleling those of claims 2-4 and 7.  Dependent claim 19 calls for an

anchoring biscuit device having exactly one attachment orifice.

New independent claim 20 parallels amended claim 10, but calls for exactly one

vertical support member.  Claims 21-24 depend from claim 20 and recite preferred

embodiments paralleling those of claims 2-4 and 7.  Dependent claim 25 calls for an

IC-App-1060

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 15

anchoring biscuit device having exactly one attachment orifice.  Claim 26 depends from

claim 25 and calls for the attachment orifice to be on the center line of the device.

Support for the foregoing amendments is provided by the patent as issued and the

specification, including claims, as originally filed, particularly as set forth hereinabove.

Consequently, no new matter has been added.

Attention is respectfully drawn to two Declarations Under 37 CFR 1.132 filed in

the present reexamination proceedings on February 9, 2007.  The first declaration is made

by Harry W. Eberle, III, the patentee of the present patent.  The other declaration is made

by Kevin Sabin.  The Declarations include exhibits including certain printed and recorded

materials pertinent to the determination of patentability of the subject matter delineated

by the pending claims.  Based on the qualifications and the experience of the declarants,

as set forth in their respective declarations, the patent owner respectfully submits that

each declarant is a person having at least ordinary skill in the art to which the present

patent pertains.

## Issue 1:

Claims 1-3, 5, and 7-11 were rejected under 35 USC 102(b) as being clearly

anticipated by US Patent No. 2,201,129 to Weiland, which relates to a tiling system that

includes means for positive mechanical attachment of ceramic or composition tiles to a

surface without use of cement.

IC-App-1061

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 16

As amended, claims 1 and 10 respectively call for an anchoring biscuit device for joining together two adjacent boards and a support board. The adjacent boards are in the same plane and have in their sides pre-cut biscuit receiving slots. A person having ordinary skill in the deck construction arts would regard the use of a conventional biscuit jointer as disclosed by US Patent 5,004,027 to Legler et al. (see col. 2, lines 45-64 of the present patent) as one possible and convenient means of forming the present biscuit receiving slot.

The claim 1 device comprises at least two substantially vertical support members, while the claim 10 device comprises at least one substantially vertical support member that is located off-center and to one side of the attachment orifice. Amended claims 1 and 10 further call for the vertical support members: (i) to be attached to an underside of the top element along a center line of the top element that extends between the end walls; and (ii) to extend perpendicularly downward from the top element in a vertical plane that is aligned with, and directly under the center line. Newly presented claims 14 and 20 call for exactly two and exactly one such vertical support member in the same relationship to the top element.

The Patent Owner maintains that the foregoing features unambiguously distinguish the structure of claims 1, 10, 14, and 20, and the claims dependent thereon, from any device disclosed by Weiland.

IC-App-1062

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed      :  November 5, 1998
Page      :  17

In particular, the Weiland devices includes structural features that contravene the structural requirements of the present claims and preclude it from carrying out the function provided by the instant patent's claimed device.

By way of contrast, the Examiner has adapted the arguments of the third party requester and has interpreted the claim language of the issued claims rather broadly, both as to the meanings of the words used by patentee, and the context of the phrases used by patentee.  Thus, it appears that the Examiner has construed the claim language in a manner that is inconsistent with what would be understood by a person having ordinary skill in the art in the context of the application as filed, taken as a whole.

For example, the patentee submits that the Examiner has misinterpreted the recitation of a vertical support member "extending down at the center area of the top element".  The requester and the Examiner have taken the phrase "center area between said side walls" to mean the entire area between said sidewalls.  See, for example, the Office Action of December 14, 2006, at page 8, lines 12-13.  This interpretation is unsupportable for many reasons.

First, this interpretation that the area between the side walls in its entirety is the "center area" ignores the existence of the word "center".  Had the claim phrase said that the vertical support members were extending down at the area between the side walls, then this interpretation makes sense.  However, the Examiner's position fails to recognize any limitation resulting from the inclusion of this term and thereby impermissibly strips the word "center" of any meaning whatsoever.

IC-App-1063

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page      : 18

In the present instance, the term "center area" is used with respect to the top element, but in conjunction with other portions thereof, including the "end" and "sides." These terms, as used by the patent specification, provide context that must figure in any construction of the particular meaning of the term "center area." It is respectfully submitted that the Examiner's expansive reading, being incompatible with these distinctions, is untenable.

Second, the context within which the term "center area" is used clearly means an area that includes the center line. The devices provided by Weiland's Figs. 6 and 11 do not have vertical support members in the center area and thus cannot be construed as satisfying the limitations of issued claim 1.

Nevertheless, for the sake of clarity, claims 1 and 10 have been amended to call for the substantially vertical support members of the Eberle device to extend downwardly from a center line of the top element, a feature Weiland clearly does not disclose. New claims 14 and 20 incorporate the same recitation.

The Patent Owner also maintains that claims 1, 10, 14, and 20 include further structural recitations, albeit delineated in functional terms. The propriety of a claim recitation in this form is well established. See, e.g., *Sanada v. Reynolds*, 67 USPQ2d 1459, 1463 (B.P.A.I. 2003) (unpublished) ["There is nothing wrong with using functional claim language, where the means-plus-function provision of 35 U.S.C. § 112 applies <u>or where such functional language further limits structure or composition already defined in</u>

IC-App-1064

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam      :  90/007,661
Serial No.  :  09/186,741
Filed       :  November 5, 1998
Page        :  19

the claim." citing *In re Swinehart*, 439 F.2d 210, 212, 169 USPQ 226, 228 (CCPA 1971),

emphasis added].

The Patent Owner concurs with the Examiner's statement that "The Weiland

device need only be inherently capable of providing the claimed function to read on the

claim language," but maintains that this very standard operates to preclude any novelty

rejection of the patent claims over the Weiland device. Specifically, the Patent Owner

maintains that the recited intended use of the present anchoring device ("to joint together

two adjacent boards and a support board," as further elucidated by the remainder of the

claims), imposes structural requirements that the Weiland devices inherently does not

satisfy. The failure to satisfy these requirements is manifest by the Weiland device's

inability to carry out the present patent's anchoring function.

Attention is respectfully directed to the tiling installations depicted by Figs. 1 and

8 of Weiland. In the Fig. 1 arrangement, square tiles are disposed in a simple pattern

wherein four tiles meet with their corners at a common vertex. Attachment devices of the

form of Fig. 4 or 6 are situated at the right angle vertex. Slots 8 to accommodate the

attachment devices are located at the corners of tiles A, not their sides. The Fig. 4 and 6

devices thus provide for the attachment of five workpieces (four tiles to a support

structure). The staggered tile disposition in Fig. 8 employs the modified device of Fig. 10

at a vertex at which three tiles meet and are secured to a support structure. However, the

device only engages slots in two of the tiles, but again only at their corners.

IC-App-1065

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 20

The Examiner has correctly recognized that Weiland's Fig. 6 device has projections equally spaced at 90° intervals around a generally circular configuration. Even the Fig. 11 device, which is a portion of the Fig. 6 device, has these mutually perpendicular projections. As a result, Weiland only provides devices that can engage a tile having a <u>corner</u> slot, like slot 8 of tiles A. The presence of perpendicular projections inherently <u>precludes</u> insertion of any Weiland device into a biscuit receiving slot cut into the <u>side</u> of a decking board.

By way of contrast, claims 1 and 14 respectively call for a device having at least two, or exactly two, vertical support members, that lie in a vertical plane that is aligned with, and directly under, the device center line. The claims additionally call for the at least two, or two, support members to be substantially flat and in "said vertical plane."

Clearly, none of the Weiland attaching means satisfies these requirements. The projections of the Weiland device are provided in pairs. The various pairs lie in <u>parallel</u> planes, and so do <u>not</u> lie in a vertical plane aligned with, and directly under any center line. Moreover, as the Examiner has recognized, the Weiland projections are spaced at 90° angles, thereby locating them in <u>multiple, mutually perpendicular</u> planes, not in a single plane. Furthermore, the orifice in the devices of Weiland's Figs. 6 and 11 is <u>not</u> between two of said vertical support members; it is not disposed on a line that is collinear with any of the projections, thus the orifice is not "between" the members.

Because the Weiland devices are structurally different from those claimed by Eberle, they cannot anticipate the Eberle invention. The present amendment to the claims

IC-App-1066

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page      : 21

only emphasizes the radical and fundamental structural differences between the Eberle

and Weiland attachments.

Further, although the Examiner implies that intended use and operability are

irrelevant, patentee wishes to re-emphasize that the devices of Weiland are so different

from the Eberle devices that the Weiland devices would be inoperative for the Eberle

purposes, and likewise, the Eberle devices could not function effectively for the Weiland

purposes. If modified to satisfy the Eberle purpose, the Weiland device would no longer

be useful for its intended purpose. In order to carry out their intended function, the

Weiland devices necessarily have the radially extending plates or flanges that are at right

angle to each other and inherently create products that cannot be slipped into a biscuit cut

or wood slot, because, as can be seen from the Weiland drawings, there are no single

plane vertical members that would create a single plane top area that could fit into a saw

cut, biscuit cut or slot in a side of wood. The Eberle device, on the other hand, is

appointed for "use for joining two adjacent boards which have been precut with biscuit

receiving slots." See, e.g., feature (b) of claim 1, and claim 10, and of new claims 14 and

20. Accordingly, the Weiland reference cannot be construed to render the Eberle claims

obvious in view of *In re Gordon*, 733 F.2d 900, 902, 221 USPQ 1125, 1127 (Fed.

Cir. 1984).

Weiland's devices are built specifically for corner engagement and can only be

used at points where two or four tiles meet with their corners at a common vertex. The

devices have downwardly projecting and outwardly projecting members that totally

IC-App-1067

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 22

prevent the insertion of the device into a slot, whereas the Eberle devices as claimed are specifically structured to fit into a side slot of wood or synthetic wood.

Hence, no device disclosed by Weiland can anticipate the Eberle device, since the downwardly projecting members would preclude the receipt of the Weiland device by a biscuit receiving slot.

In order for the Weiland device to accomplish the function provided by the Eberle device, it would have to be reconstructed by removing certain of its critical elements, e.g. two of the channels 13 of Fig. 4 or four of the flanges 13a of Fig. 6, to leave two generally collinear portions on either side of attachment hole 12. Such a reconstruction is submitted to be substantial, precluding a finding of obviousness under *In re Ratti*, 270 F.2d 810, 123 USPQ 349 (CCPA 1959). Moreover, once modified in this manner, the Weiland device would be rendered inoperable for the disclosed function of attaching tiles at their corners, further precluding any finding of obviousness.

The function afforded by the Weiland device, viz. the securing of generally square or rectangular tiles at their corners presents a significantly different problem than the securing of deck boards. As would be known to one of ordinary skill in the carpentry and deck building arts, wooden deck boards, which are typically disposed outdoors and exposed to the elements, including rain and snow and relatively large temperature and humidity excursions, undergo significant dimensional changes. Moreover, deck boards are often many feet long, is some cases as long as sixteen feet or more. If secured merely at their corners, as would necessarily be the case using a securing device such as that of

IC-App-1068

ReExamination of USP 6,402,415                Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam      : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page        : 23

Weiland, the deck boards would be subject to marked deformation, warping, bowing, or

the like. Such deformation would be highly detrimental and aesthetically unacceptable,

and would likely lead to premature failure of the board. The attachment would be highly

tenuous, potentially leading to the board becoming disengaged and a serious safety

hazard. On the other hand, the Eberle device is employed for securing the board at

regular intervals along its length, virtually eliminating the foregoing deformation and

providing a much more stable and secure attachment.

Thus, Weiland's devices have different structures from the present invention, that

(i) function differently from the present invention, and (ii) are used for a different

purpose than the present invention. These considerations would discourage a person

having ordinary skill in the art from any motivation to carry out the modification of the

Weiland devices needed to reach the Eberle device. Accordingly, it is submitted that

Weiland neither discloses the present invention nor renders it obvious.

Attention is respectfully drawn to both Rule 132 declarations submitted herewith.

The Patent Owner maintains that each declaration separately sets forth bases that further

confirm that Weiland neither discloses nor suggests the subject matter of claims 1-3, 5,

and 7-11, and that a person having ordinary skill in the art would not have had motivation

to modify the Weiland attachment device by removing features thereof, as would be

required to reach the present claimed anchoring biscuit device..

IC-App-1069

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 24

Accordingly, reconsideration of the rejection of claims 1-3, 5, and 7-11 under 35

USC 102(b) as being clearly anticipated by Weiland is respectfully requested, along with

confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

In view of the foregoing arguments, the newly presented claims and the

Declarations supporting patentability that are appended hereto, it is urged that this

rejection be withdrawn and that the new claims be allowed.


## Issue 2:

Claims 4, 6, and 12 were rejected under 35 USC 103(a) as being unpatentable

over Weiland in view of German Patent Document DE372,483 to Wothe, which relates to

a screw supporting plate used in conjunction with a screw that attaches a beam for a

crossing wood member.

The Examiner has alleged that Weiland discloses the invention substantially as

claimed less a non-circular and elongated slot.  For the reasons set forth above under

Issue 1 in connection with the novelty rejection over Weiland, the Patent Owner

respectfully disagrees.  In particular, it is submitted that Weiland does not disclose or

suggest the subject matter of amended claims 1 and 10, on which claims 4 and 6, and 12

respectively depend.

The Examiner has not pointed to any disclosure or suggestion that cures this

deficiency, but instead merely relies on Wothe for the feature of the non-circular and

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 25

elongated slot to allege that the modification of Weiland to include such a slot as part of the attachment orifice would be obvious to a skilled artisan.

The patentee respectfully submits that the screw supporting plate of the Wothe reference clearly engages only the cross-bar member "b" of Figs. 1-2 in Wothe and the attaching screw itself. The plate does not play any direct role in the mutual engagement of multiple boards. By way of contrast, the patentee's anchoring device directly engages two adjacent decking boards and is attached to the third board member by a fastener such as a screw. As a result, the Wothe reference, whether taken singly or in combination with Weiland, does not cure the lack of disclosure or suggestion of the particular arrangement of the at least two vertical support members, in the form delineated by amended claim 1, which feature is inherited by claims 4 and 6, or the at least one vertical support member of amended claim 10, on which claim 12 depends.

Moreover, the slotted orifice in the Wothe plate functions in an altogether different way than the slotted orifice delineated by the patentee's claims. In particular, slotting is said by the present patent to permit insertion of a screw or the like at an angled, non-vertical position. See, e.g., col. 4, lines 30-34, col. 6, lines 1-3, and Figs. 7 and 9. Such a non-vertical installation typically has been found to provide additional support and integrity to the deck flooring structure, inasmuch as the fastener directly engages both the supporting beam and one of the deck boards, instead of just the beam, as it would if the fastener were driven vertically. On the other hand, the elongated plate in the Wothe reference merely permits the screw position to be moved horizontally, while

IC-App-1071

ReExamination of USP 6,402,415                              Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam      : 90/007,661
Serial No.  : 09/186,741
Filed       : November 5, 1998
Page        : 26

maintaining a vertical disposition of the screw itself.  In addition, the screw itself in the

Wothe construction provides the principal alignment and fastening of the cross-member

and the long beam, and not vertical support members provided by the Eberle device..

In view of the aforesaid differences, it is submitted that even in combination,

Weiland and Wothe do not disclose or suggest the subject matter of amended claims 4, 6,

and 12.   Neither would a skilled artisan be motivated to carry out the substantial

reconstruction of any structure provided by the combination of Weiland and Wothe that

would be required to reach the anchoring device of present claims 4, 6, and 12.  It is

submitted that prima facie obviousness of claims 4, 6, and 12 has not been established.

Accordingly, and in view of the foregoing arguments, the newly presented claims

and the Declarations supporting patentability that are appended hereto, reconsideration of

the rejection of claims 4, 6, and 11 under 35 USC 103(a) as being unpatentable over

Weiland and Wothe is respectfully requested, along with confirmation of said claims, as

amended, and allowance of newly presented claims 13-26.

## Issue 3:

Claims 10 and 11 were rejected under 35 USC 103(a) as being unpatentable over

US Patent No. 1,714,738 to Smith in view of US Patent No. 2,337,156 to Elmendorf.

Smith is directed to a construction of floorboards and a means of fastening such

boards to a subflooring.  Elmendorf provides a system for laying a flooring of wood tiles

on a wood or concrete subfloor without the necessity of employing tongue and groove

IC-App-1072

ReExamination of USP 6,402,415
Inventor     : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 27

Attorney Docket No.: HWE-105C

joints between meeting tiles, and with the assurance that the upper faces of meeting tiles lie in the same plane.

The Examiner has accepted the requester's contention that Fig. 3 of Smith depicts an anchoring device having, inter alia, a flat horizontal top element, vertical support members, and an attachment orifice as delineated by the issued claims. The Examiner acknowledges that the top view shape of the Smith device is rectangular, rather than the claimed biscuit shape. Accordingly, he has pointed to Elmendorf to contend that it would be obvious to change the shape of the Smith top configuration. The Patent Owner respectfully traverses this characterization.

Amended claim 10 and new claim 20 both call for an anchoring biscuit device having a vertical support member that extends perpendicularly downwardly from the device's top element in a vertical plane that is aligned with, and directly under, a center line.

Clearly, Smith provides no such structure. Both Figs. 3 and 4 of Smith depict devices wherein two vertical projections (e.g., supports or feet 11 of Fig. 3 and feet 20 of Fig. 4) extend downwardly from plural lines on the top element, neither of which is a center line.

The Patent Owner observes that Smith variously discloses "support means" and "support feet" associated with his fastener. Inasmuch as there is no disclosure, either by way of drawing illustration or textual description, of any support means that does not entail two support feet, the term "support means" must be construed as requiring two

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 28

support feet laterally separated from the centerline of the Smith fastener.  On the other

hand, the Elmendorf keys (e.g. item 8 of Figs. 4 and 8) do not include any downward

projection, so that Elmendorf cannot be regarded as providing any motivation for

modifying the Smith device to remove some, but not all, of the downward projection

therefrom.

Smith further discloses that "Feet 11 engage the subflooring and serve to hold the

fasteners straight and to keep them from being bent downward either accidentally or

when the nails are being driven.  The provision of a means, such as the feet 11, for

supporting the fasteners from the sub-flooring so as to positively position them is one

important feature of my construction, for by this means the fasteners are all held straight

so that when the next board is put in position no difficulty is experienced in fitting its

grooves onto the outwardly-projecting flanges of the fasteners." (Page 1, col. 2, lines 99-

111, emphasis added).  The feet are said to be "spaced." (Page 1, col. 1, line 36).

The patentee respectfully submits that these disclosures, taken in combination,

constrain what a skilled person would recognize as being the scope of the Smith

disclosure.  Specifically, the lateral spacing between the feet of the Smith fastener (e.g.

between feet 11 of Fig. 3 or feet 20 of Fig. 4) must be relatively wide, so as to provide the

aforementioned required stability of the table-like top surface of the fastener (e.g., surface

10 of Fig. 3 and surface 22 of Fig. 4).  It is clear from the floor assembly depicted by

Figs. 1-2 that the lateral spacing of the feet in turn establishes the width of undercut 17

(see page 1, col. 2, lines 79-80) required for the top edges of adjacent flooring boards to

IC-App-1074

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 29

be installed in abutment, to avoid cracks between boards. Such cracks are eschewed for

interior wood floors (see page 2, col. 1, lines 61-62).

On the other hand, if a Smith fastener with such a width were to be used for

installing deck boards having but a single rectangular groove or biscuit receiving slot,

such as those employed by the patentee, the lateral spacing of the Smith feet would

necessarily establish the open spacing between adjacent deck boards. Some amount of

spacing (typically of the order of 3/32 - 1/8") is conventionally employed in both prior art

forms of deck assembly and in the patentee's deck assembly system. However, it is

submitted that the Smith fastener, which must have spacing sufficient to maintain the

aforementioned stability, would result in an <u>excessive</u> spacing between adjacent boards in

a decking installation. The typical small spacing of deck boards, which are ordinarily

installed outdoors or in damp locations, accommodates the swelling and shrinking of

lumber due to varying temperature and moisture, but is not large enough to present

hazards, such as tripping or catching a narrow shoe heel. Installation of deck flooring

with the Smith fasteners thus could not be readily accomplished with boards having

biscuit receiving slots or a single groove. Instead, an additional step of rabbeting each

deck board would be required to provide a sufficient undercutting to achieve the desired

board spacing. These width considerations are submitted to negate any motivation for a

skilled artisan to modify the Smith fastener in the manner required to reach the Eberle

device.

IC-App-1075

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 30

The patentee further traverses the basis on which the Examiner discounted arguments based on the decision of the Board of Patent Appeals and Interferences. Specifically, the patent owner's answer argued that the same considerations on which BPAI ruled the Eberle application patentable over Ellinwood also apply with respect to the present rejection over Smith and Elmendorf. The Examiner countered as follows:

> Patent Owner's Comments with respect to the BPAI decision in the Eberle patent are noted, however the comments are related to an anticipation rejection of a biscuit shape. This rejection is an obviousness rejection that acknowledges that the T-shaped top of the Smith anchor is not biscuit-shaped and thus is in-line with the BPAI comments on the Elmendorf[*] patent. Accordingly, the modification in this rejection is not addressed. (page 21, second full paragraph of the present Office Action, emphases added)

The patentee respectfully submits that the Examiner has mischaracterized the BPAI decision, which did not relate to an anticipation rejection, but to an obviousness rejection. There were three issues before the Board in the aforementioned appeal: (i) rejection of claims 27-29 under 35 USC 112, second paragraph; (ii) rejection of claims 18, 19, and 24 under 35 USC 103(a) over US Patent 2,362,252 to Ellinwood in view of US Patent 5,529,428 to Bischof; and (iii) rejection of claims 20-23, 28, and 29 under 35 USC 103(a) over Ellinwood in view of Bischof and German Patent DE 372,483 (i.e., the present Wothe reference). Contrary to the Examiner's statement, the BPAI addressed Ellinwood in the context of obviousness, not novelty.

---

[*] Sic. The BPAI decision does not address Elmendorf. The Examiner may have intended reference to Ellinwood.

IC-App-1076

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page        : 31

Attention is respectfully drawn to the BPAI decision at pages 4-6.  Like the Smith

and Heilmann devices, the Ellinwood connecting member is said to have a "general T-

like formation...comprising a base 24 and side flanges 25" (page 2, col. 1, lines 40-42

and Figs. 2-4 of Ellinwood).   The Ellinwood member is appointed for connecting

adjacent panels forming a wall structure installation.  The original Examiner's position in

the appeal expressly acknowledged that Ellinwood did not disclose a biscuit-like

configuration having side walls in the shape of an arc having radii and an arc length

(Examiner's Answer at page 5, lines 3-4).  Therefore, the original Examiner pointed to

Fig. 9 of Bischof, which he alleged to provide the requisite shape in what he purported to

be an anchoring device to obtain this feature.  The Board's decision thus addressed the

obviousness of the Eberle device over Ellinwood in combination with Bischof.

The Board rejected the original Examiner's arguments on several bases, including

a finding that the proposed motivation for the combination was impermissibly hindsight-

driven.  In addition, the Board held that:

> "even if Ellinwood and Bischof were combined in the manner
> proposed, the result would still not respond to the limitation in claim
> 18 requiring 'at least two' substantially vertical support members
> attached to an underside of the top element or the limitation in claim
> 27 requiring the vertical support member to be 'located off-center and
> to one side of' an attachment orifice.  These flaws in the basic
> Ellinwood-Bischof combination find no cure in the German
> reference." (page 6, full paragraph of BPAI Decision of August 27,
> 2001).

The patentee maintains this finding is directly apposite the rejection in present

Issue 3.  While the Board admittedly rejected the Examiner's friction motivation to

IC-App-1077

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No.  : 09/186,741
Filed       : November 5, 1998
Page        : 32

permit the combination, the Board did not countenance or affirm any alternative
motivation for the combination. In particular, the Board did _not_ adopt the position the
present Examiner urges, which seemingly relies on a *per se* rule that a change in shape of
the top element of Smith to a biscuit-like shape is inherently motivated and renders the
claims on appeal obvious. The courts have expressly rejected such reliance on *per se*
rules. See., e.g., *In re Ochiai*, 71 F.3d 1565, 1572, 37 USPQ2d 1127, 1133 (1995).
["Reliance on *per se* rules of obviousness is legally incorrect and must cease."] At best,
the BPAI permitted the combination *arguendo*, but still ruled for no obviousness, without
affirming the propriety of the combination.

The Examiner has pointed to Elemendorf at page 3, col. 2, lines 8-15 for the
proposition that Elmendorf discloses a top shape that may be square, circular, or any
other desired shape. The patentee acknowledges this statement, but submits that it
pertains directly only to devices that are otherwise flat, i.e., without the vertical support
members provided by the Eberle device. The only vertical element in any way associated
with the Elmendorf device is a nail, which cannot constitute a vertical support member,
and, in any event, cannot be regarded as adjacent an attachment orifice. The Elmendorf
disclosure fails to contemplate any such members, despite the availability of the Smith
reference, which issued some twelve years before the Elmendorf filing. The patentee
thus submits that the combination of a non-rectangular shape like Elmendorf's, disclosed
only in the context of a flat securing device, with devices like Smith's, which include
both horizontal and vertical members, is possible only using impermissible hindsight.

IC-App-1078

ReExamination of USP 6,402,415                          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 33

     The Patent Owner further submits that Elmendorf, like Weiland, discloses devices appointed only to engage workpieces either at their beveled corners, in an arrangement of square or rectangular tiles (e.g. Figs. 2, 7, and 14),  or at complementary right-angled vertices in a herringbone arrangement (e.g. Fig. 18).  Elmendorf fails to disclose or suggest any fastener that engages adjacent boards at any point along shared parallel edges.  Instead, the fasteners are disposed only at vertices having an interior or exterior opening angle of 90°.  Thus, Elmendorf does not provide a fastener that is to be received in the side's biscuit-receiving slots in <u>adjacent</u> boards, as required by the Eberle claims.

     Significantly, the Third Party Requestor, in arguing a rejection over Smith and Elmendorf, points to Smith's phrase that the flanges "may be made in various forms," but extends this quotation beyond its context, which clearly does not include any disclosure of top shapes other than rectilinear forms (see, e.g., Figs. 3-4).  (Request, page 6, line 4, citing Smith, page 2, col. 2, lines 74-75).

     Second, the patentee maintains that the Smith-Elmendorf combination, like the Ellinwood-Bischof combination considered in the original appeal, does not respond to the "off-center and to one side of an attachment orifice" limitation recited by amended claims 10-11, or by new claims 20-26.

     Were the Smith fastener to be modified as required to reach present claims 10-11 by removing one of its support feet and locating the remaining foot off center, it clearly would lose the stability said to be an important feature, thereby negating the motivation to make such modification.

IC-App-1079

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 34

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Kevin Sabin. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Smith and Elmendorf do not disclose or suggest the subject matter of claims 10-11. The Sabin Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Smith and Elmendorf as would be required to reach the present claimed anchoring biscuit device.

Accordingly, and in view of the foregoing arguments, the amended and newly presented claims, and the Declarations supporting patentability that are appended hereto, reconsideration of the rejection of claims 10-11 under 35 USC 103(a) as being unpatentable over Smith and Elmendorf is respectfully requested, along with confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

The Patent Owner concurs with the Examiner's rejection of the Requestor's proposal that Claims 1, 2, 3, 5, and 7-9 be rejected on the same grounds. Clearly, the subject matter of claims 1, 2, 3, 5, and 7-9 is not disclosed or suggested by Smith and Elmendorf, whether taken singly or in combination.

## Issue 4:

Claim 12 was rejected under 35 USC 103(a) as being unpatentable over Smith in view of Elmendorf and further in view of Wothe.

IC-App-1080

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 35

For the reasons set forth above concerning Issue 3, the patentee respectfully maintains that the combination of Smith and Elmendorf does not render obvious amended claim 10, from which claim 12 depends. The patentee's discussion of Wothe set forth under Issue 2 above is submitted to apply to the present rejection of claim 12 with equal force. Clearly, Wothe does not cure the lack of disclosure or suggestion of any anchoring biscuit device of base claim 10 provided by Smith and Elmendorf, even in combination.

In addition, the remarks set forth under Issue 3 regarding the pertinence of the earlier BPAI decision with respect to the rejection of claims 10-11 over Smith and Elemendorf apply with equal force to claim 12. The BPAI specifically considered the further combination with Wothe with Ellinwood and Bischof in regard to claim 12, and ruled for patentability. The patentee maintains that patentability of claim 12 over Smith, Elemendorf, and Wothe can be predicated on a comparable basis.

The patentee thus maintains that amended claim 12 is neither disclosed nor suggested by the combination of Smith, Elmendorf, and Wothe.

In view of the foregoing arguments, the amended and newly presented claims, and the Declarations supporting patentability that are appended hereto, it is submitted that the subject matter of claim 12 is patentable over the combination of Smith, Elmendorf, and Wothe.

Accordingly, reconsideration of the rejection of claim 12 under 35 USC 103(a) as being unpatentable over Smith, Elmendorf, and Wothe, and confirmation of amended claim 12, together with newly presented claims 13-26 are respectfully requested.

IC-App-1081

ReExamination of USP 6,40~,~15                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 36

The Patent Owner concurs with the Examiner's rejection of the Requestor's

proposal that Claims 4 and 6 be rejected on the same grounds. Clearly, the subject matter

of claims 4 and 6 is not disclosed or suggested by Smith, Elmendorf, and Wothe, whether

taken singly or in any combination.


## Issue 5:

The Patent Owner concurs with the Examiner's rejection of the Requestor's

proposal that Claims 1, 2, 7, 8, and 9 be rejected under 35 USC 103(a) as being

unpatentable over US Patent 695,722 to Heilmann in view of Elmendorf. Clearly, the

subject matter of claims 1, 2, 7, 8, and 9 is not disclosed or suggested by Heilmann and

Elmendorf, whether taken singly or in combination.


## Issue 6:

The Patent Owner concurs with the Examiner's rejection of the Requestor's

proposal that Claims 3-6 be rejected under 35 USC 103(a) as being unpatentable over

Heilmann in view of Elmendorf and further in view of Wothe. Clearly, the subject matter

of claims 3-6 is not disclosed or suggested by Heilmann, Elmendorf, and Wothe, whether

taken singly or in any combination.


## Issue 7:

IC-App-1082

ReExamination of USP 6,402,415                    Attomey Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed       :  November 5, 1998
Page      :  37

Claims 10 and 11 were rejected under 35 USC 103(a) as being unpatentable over

Smith in view of US Patent No. 5,619,834 to Chen.

The Examiner has indicated that the foregoing rejection is made for the reasons

set forth in Issue 3 regarding Elmendorf.  The patentee respectfully submits that the

remarks hereinabove responsive to Issue 3 apply with equal or greater force to the

combination of Smith with Chen instead of with Elemendorf.

Chen is directed to a slate positioning device comprising a positioning plate

having a horizontal plate and first and second longitudinal plates at two ends of the

horizontal plate.  The first longitudinal plate has a hole, and the second longitudinal plate

has upper and lower convex edges.  A screw rod passes through the hole and the slot to

fasten the first longitudinal plate and the pad plate.  The upper convex edge and lower

convex edges are inserted into corresponding grooves of corresponding slates.  The Chen

device necessarily includes multiple pieces to provide its adjustability, rendering it far

more complicated to fabricate and install than the Eberle device.

Significantly, the slate positioning device of Chen is usable only with a wall

construction in which the device holds the covering slates away from the underlying wall

structure.  This outward spacing in a direct consequence of the presence and size of a

horizontal plate structure, such as single piece horizontal plate 42 of Fig. 5 or the

combination of members 61 and 42' of Figs. 11-12.  The Chen device is bolted to the

underlying wall structure, e.g. by bolt 400.  Were these horizontal plate structures and the

resulting outward spacing eliminated, there would be no access for inserting and securing

IC-App-1083

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 38

bolt 400.  Importantly, there is no hole or other similar structure in the Chen device

adapted to function as the patentee's attachment orifice, such as Chen's second

longitudinal plate 40, which the Examiner has equated to the Eberle biscuit top element.

Still further, all the disclosed embodiments of the Chen bracket include two longitudinal

plates in parallel planes, whereas the Eberle device has only a single flat top element.

Eliminating either longitudinal plate of Chen would clearly defeat its operation.

Like Weiland and Elmendorf, Chen only discloses embodiments wherein an

attachment device is disposed solely at the corners of workpieces being secured to an

underlying structure, be it a wall, ceiling, or floor, i.e., at vertices having interior or

exterior 90° angles.  The patentee thus maintains that the Examiner has not pointed to any

evidence demonstrating motivation to combine any of these references, which admittedly

disclose non-rectangular shapes for certain devices, with the T-shape, rectangular-top

device of Smith.  Nonetheless, the Examiner has combined these references with devices

such as those of Smith and Heilmann (discussed further in Items 8-10 below), that engage

workpieces along their sides, but only with attachment fixtures that have rectangularly

shaped tops for the engagement.  It is thus respectfully submitted that the combinations

have been made only on the basis of impermissible hindsight reconstruction.

The patentee submits that the person having ordinary skill in the art for the

purpose of the determination of the obviousness of the Eberle device is a tradesperson

experienced in the field of carpentry, including wooden deck building.  The patentee

continues to maintain the position that such a person would not have been motivated to

IC-App-1084

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 39

consider the combination of the Chen device with the subject matter of Smith, given the

markedly different problems of installing relatively <u>light</u> wood <u>flooring</u> and <u>massive</u>

stone or slate panels as a <u>wall construction</u>. Clearly, neither the Eberle device nor the

Smith device is required to sustain any substantial static loading. The flooring being

installed in accordance with the Smith teaching bears on a subfloor, so the device merely

has to restrain the flooring against relatively small forces involving lateral movement of

the individual pieces, warpage, and the like. On the other hand, in the Chen construction,

the device is the <u>only</u> means by which the stone wall structure is supported. The Chen

devices must collectively sustain the static weight of the entire wall, as well as prevent

relative motion of the individual panels. The requirements and sizing of such devices are

thus altogether different.

The courts have unequivocally recognized that a general relationship between two

references is insufficient to predicate a combination, absent a specific suggestion for the

combination. See, e.g. *Interactive Techs., Inc. v. Pittway Corp.*, Civ. App. No. 98-1464,

slip op. at 13, 1999 U.S. App. LEXIS 11166, (Fed. Cir. June 1, 1999) (unpublished),

*cert. denied*, 528 U.S. 1046 (1999). ["The sole evidence proffered of a motivation to

combine was that several prior art patents mentioned there being a similarity between

garage door openers and home security systems. However, such limited evidence of there

being a general relationship between the fields does not suggest a motivation to combine

the particular references here relied upon by the Pittway parties."] See also *In re*

IC-App-1085

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam      : 90/007,661
Serial No.  : 09/186,741
Filed       : November 5, 1998
Page        : 40

*Alhamad*, Civ. App. 97-1345, slip op. at 3-4, 1997 U.S. App. LEXIS 38110 (Fed. Cir. Dec. 18, 1997).

The patentee maintains that the Examiner's contention that both the Smith and Chen devices relate to construction fasteners or the attachment of veneers at best demonstrates no more than a general relationship of the type that the courts have deemed insufficient. Absent express establishment of another motivation, as required under *In re Lee*, 277 F.3d 1338, 1344-45, 61 U.S.P.Q.2d 1430, 1435 (Fed. Cir. 2002), the combination of Smith and Chen is submitted to be improper.

Attention is respectfully directed to the Rule 132 Declaration by Sabin in support of the patentability of the present patent claims. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Smith and Chen do not disclose or suggest the subject matter of claims 10-11. The Sabin Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Smith and Chen as would be required to reach the present claimed anchoring biscuit device.

Accordingly, and in view of the foregoing arguments, the amended and newly presented claims, and the Declarations supporting patentability that are appended hereto, reconsideration of the rejection of claims 10-11 under 35 USC 103(a) as being unpatentable over Smith and Chen is respectfully requested, along with confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

IC-App-1086

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 41

Although not specifically given enumeration as a separate issue, the Examiner

appears to have included under the heading "Issue 7" a further and separate rejection of

claim 12 under 35 USC 103(a) as being unpatentable over Smith in view of Chen and

further in view of Wothe. The Patent Owner respectfully maintains that Wothe does not

cure the lack of disclosure or suggestion of the subject matter of base claim 10, on which

claim 12 depends. Accordingly it is submitted that this rejection is also untenable for at

least the same reasons.

Reconsideration of the rejection claim 12 under 35 USC 103(a) as being

unpatentable over Smith in view of Chen and further in view of Wothe is thus

respectfully requested, along with confirmation of claim 12.

## Issue 8:

Claims 1, 2, 7, 8, 9, and 10 were rejected under 35 USC 103(a) as being

unpatentable over Heilmann in view of Elmendorf, or, in the alternative, over Heilmann

in view of Elmendorf and further in view of Weiland.

Heilmann is directed to a fireproof covering system for frame structures that is

said to cause the structure to have the appearance of a stone building. The covering

comprises blocks, plates, or slabs. The construction disclosed by Heilmann entails use of

a generally T-shaped washer, as depicted by Fig. 4, that engages grooves in the sides of

the slabs, plates, or blocks used. Significantly, the construction further calls for the joints

between the adjoining blocks to be filled with cement mortar, which is clearly essential

IC-App-1087

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed       :  November 5, 1998
Page       :  42

for the covering to retain its fireproofing ability.  In particular, the lower blocks are said

to be first set in cement mortar (page 1, col. 2, lines 55-57).  The Fig. 4 washers are then

placed in grooves in the sides of the lower blocks and secured by nails, screws, or other

fasteners (line 96).  The connection is described as "tongue and groove" (line 93).

Mortar is spread in the grooves of each course before the next course is laid.  ("...the

spreading of mortar first done, of course, before another course is laid." Page 1, col. 2,

lines 79-81, emphasis added).  Moreover, all the remainder of the joint, apart from the

location of the washers, is filled with mortar, e.g. by a pointing operation (line 104 and

material *f* of Fig. 3).  The mortar filling is said to provide a firm and solid connection of

the blocks with each other, so that a practically monolithic facing is produced.  (lines 99-

103).

The Examiner has contended that Heilmann discloses the claimed anchoring

system apart from the shape of the top element and the requirement of at least two

vertical support members.  He further has asserted that it would have been an obvious

design choice to select a biscuit shape for the Smith [*sic – Heilmann may have been*

*intended*] anchor device given the Elmendorf teaching.

The Examiner further has acknowledged that Heilmann is further lacking in that

only one vertical member is provided.  However, the Examiner further asserted that the

"vertical member in Eberle is essentially a single planar member with a gap or spacing in

the middle where there is an absence of material" as the basis for an assertion denying a

any substantive difference between that Eberle's two-vertical member device and

IC-App-1088

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page        : 43

Heilmann's single vertical member device. The patentee agrees that the width of the
joint between blocks in the Heilmann construction is defined by the lateral width of the
shoulder $d$ of the Fig. 4 device. However, attention is respectfully drawn to the Hielmann
reference at page 1, col. 2, lines 53-54, which discloses a perforation or hole $d'$ that
passes "through the main body of the washers and through the ribs or shoulders $d$
.(emphasis added). Fig. 3 clearly discloses a construction employing a device having
such a perforation.

The Examiner has proposed a modification of the Heilmann washer device in
which the thickness of the rib $d$ is reduced enough to convert the single rib, e.g. as shown
in Heilmann's Fig. 3, into two separate, collinearly disposed ribs. The patentee
respectfully maintains that nothing in the Heilmann disclosure supports, let alone
suggests, such a radical reconstruction. To the contrary, and if so modified, such a device
could not properly be characterized as having a hole that extends through both the body
and the shoulder of the device, as taught at col. 2, lines 53-54. Clearly, the hole would no
longer extend through the shoulder, negating the Examiner's proposal.

Moreover, it is submitted that a person having ordinary skill in the art would
regard the hole $d'$ in the Heilmann device as being relatively small, i.e. sized to provide
clearance for a screw, nail, or fastener used for its attachment, but not significantly larger
The hole clearly would have to be small enough that the head of the fastener could not
pass through, lest the fastening function be defeated. Still further, in the Examiner's
modification, the thickness of $d'$ would inherently have to be less than the shank diameter

IC-App-1089

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 44

of the fastener.    Therefore, the possible gap between blocks would be severely
constrained to the very small values imposed by the diameters of suitable fasteners.
Alternatively stated, <u>the fastener shank diameter would have to be greater than the gap
between blocks</u>.  Reduction of thickness $d$ to less than a fastener shank diameter would
be highly problematical.  Once the fastener were to be driven, its shank would <u>necessarily</u>
disrupt the edge of the block.

Many of the block materials used in the Heilmann construction would be hard
and/or brittle materials, such as stone or concrete slabs or composition tiles.  In some
cases, a typical metal fastener (e.g. screw or nail) would be unable to penetrate the facing
block.  In others, the facing block would be highly prone to severe edge damage.  Either
outcome could be clearly untenable.  Accordingly, the patentee maintains that a person
having ordinary skill in the art would be motivated not to carry out the Examiner's
proposed extensive reconstruction, recognizing that such a reconstruction would render
the Heilmann device inoperative for its appointed function.

A further problem negating motivation for the proposed reconstruction stems
from the risk that fireproofing would be compromised.  A skilled artisan would recognize
that fully enclosing the fasteners in a mortar or cement filling enhances fireproofing.  On
the other hand, the presence of air pockets, that are highly likely to result if the fasteners
were modified in the proposed manner, would result in a degraded firewall.  The heat
rating and efficiency of such modifications would be unacceptable.  In any event, there is

IC-App-1090

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam      : 90/007,661
Serial No.  : 09/186,741
Filed       : November 5, 1998
Page        : 45

no teaching or suggestion to make this modification of the Heilmann disclosure, even in light of the Elmendorf or the Elmendorf and Weiland teachings.

The patentee further points to a benefit afforded by the Eberle device. Because the attachment orifice is separate from the vertical projections, the Eberle device permits a decking system to be installed with fasteners driven at an off-vertical angle, e.g. as shown in Fig. 9 and described at col. 6, lines 6-23. This construction provides improved attachment (see lines 18-19). Significantly, no such benefit or configuration is recognized by Heilmann, or even possible using the disclosed device.

Still further, it is submitted that a reconstruction that vitiates a recited feature (the single shoulder $d$ of the Heilmann device) inherently cannot be regarded as an obvious modification.

For at least the reasons set forth above, the patentee traverses the combination with Elmendorf, for reasons set forth hereinabove. In arguing the rejection of the present claims over Heilmann and Elmendorf, the requester points to the disclosure of Heilmann that "the washers D [may be] of any suitable form" (Heilmann, p. 1, col. 1, lines 46-47). By way of contrast, the patentee draws attention to the fuller context of this phrase. Conspicuously absent from this limited quotation is the remainder of the sentence, and the next sentence, which call for the washer "[to be] provided with longitudinal shoulders or ribs $d$, so that a washer is produced which has a T-shaped cross-sections. These washers are provided with preferably central perforations or holes $d'$, that pass through the main body of the washers and through the ribs or shoulders $d$." The patentee again

IC-App-1091

ReExamination of USP 6,402,715                          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam      : 90/007,661
Serial No.  : 09/186,741
Filed       : November 5, 1998
Page        : 46

submits that the combination is argued, without justification and in hindsight, between a

flat device such as Elmendorf, and a rectangular or rectilinear-topped device, such as

Heilmann's.

The patentee's remarks under Issue 3 above concerning the original BPAI

decision are submitted to be equally pertinent to the rejection over Heilmann and

Elmendorf, as the Examiner again has incorrectly characterized the BPAI decision as

being made in relation "to an anticipation rejection of a biscuit shape" (Office Action,

page 24, first full paragraph, line 3).  Moreover, the Examiner has alleged that the

Board's rejection of the Ellinwood-Bischof combination was "due to the fact that the

figure used to show the biscuit shape was not in fact a biscuit or anchor, but instead a

template...).  However, the Board did not so limit its consideration, and further stated

that "Although Bischof's connecting element is somewhat more pertinent, its structure

and function sill differ markedly from those of Ellinwood's connecting element.  The

friction-reducing rationale advanced by the examiner to support the combination of these

two references is quite strained, and highlights the impermissible hindsight-driven

impetus for the combination." (page 7 of BPAI decision).  Clearly, the Board recognized

that biscuit shapes for construction devices were known, but considered the substitution

of such a shape for a rectangular shaped top in an attachment device such as Heilmann's

not to be obvious.

For the foregoing reasons, it is submitted that a person having ordinary skill in the

art would not regard Heilmann as disclosing or suggesting any device having at least two

IC-App-1092

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page      : 47

vertical projections, as delineated by amended claim 1 (and claims 2, 7, 8, and 9

dependent thereon), or exactly two vertical projections, as provided by new claim 14 (and

claims 15-19 dependent thereon).

The patentee also maintains that Heilmann like Smith, discloses only a device

having a rectangular top configuration. For the reasons set forth hereinabove under Issue

7, it is maintained that no motivation has been adduced for combining a reference

disclosing a rectangular top element appointed to engage workpieces along their sides

with references having a non-rectangular element, but only disclosed for engagement of

workpieces at their corners.

The Examiner's rejection further includes claim 10. As now amended, claim 10

calls for at least one substantially vertical support member that is located off-center and

to one side of at least one attachment orifice. No remarks in the present rejection

specifically address this claim. However, the patentee maintains that Heilmann discloses

only a hole that extends through both the top and shoulder *d* of his attachment means.

Such disclosure clearly does not satisfy the limitation of a support member that is to <u>one</u>

<u>side</u> of an attachment orifice. Nothing, either in Heilmann itself or the foregoing

modification proposed by the Examiner, would provide this feature. Accordingly, it is

submitted that amended claim 10 is not obvious over Heilmann. The same considerations

also predicate patentability of new claim 20, which calls for exactly one off-center

support member that also is to one side of an attachment orifice.

IC-App-1093

ReExamination of USP 6,402,415                          Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 48

The Examiner has further alleged, in the alternative, that claims 1, 2, 7, 8, 9, and

10 are obvious over the combination of Heilmann, Elmendorf, and Weiland. He has

stated that it is widely accepted in the constructional anchor art that spacing between

adjacent structures (e.g., tile, boards, etc.) may either be defined by a single unitary

spacing member, as in Heilmann, or a plurality of spaced members, as shown by

Weiland. In particular, he pointed to Fig. 6 of Weiland as opposed to his Fig. 4, alleging

that the spacing is the same in both embodiments only with the first spacer having a

unitary member and the latter having a plurality of members. He concluded that it would

have been obvious to those having ordinary skill in the art at the time of the invention to

have formed the Heilmann vertical spacer as plural smaller vertical members as a matter

of choice in design.

The patentee respectfully traverses this contention. Fig. 4 of Weiland provides a

device having four radially extending portions 13 that are said to be "channel-like" (page

2, col. 1, lines 23-27). Those portions are located 90 degrees apart. It is further said

adjacent portions 13 form, with the intervening wing or marginal portions 14, a series of

right angled corner-receiving pockets *a* for positioning and retaining tiles (lines 27-31).

For the reasons set forth hereinabove in connection with Issue 1, the patentee maintains

that nothing in Weiland or elsewhere motivates the elimination of one set of the radially

opposed portions (e.g., those at the 12 o'clock and 6 o'clock positions) and the retention

of the other set of radially opposed portions (e.g., those at the 3 o'clock and 9 o'clock

positions), as would be required to provide a device having its vertical support members

IC-App-1094

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    :  Eberle, III
ReExam      :  90/007,661
Serial No. :  09/186,741
Filed       :  November 5, 1998
Page        :  49

along the device's centerline.  Furthermore, once two of portions 13 were removed, the

device would no longer have right-angled pockets *a*, so that inherently it could not

function to engage tiles at their corners and carry out its function of provid[ing] an

accurate spacing and confining security for the tiles" (lines 39-41).

The patentee further maintains that while features 13 of Fig. 4 of Weiland are

denominated as "channel-like portions," they would not be regarded by a skilled person

as being separate, substantially vertical support members, as that nomenclature is used in

the present specification.  Rather, they must be regarded as a single member.  Fig. 4 of

Weiland thus cannot be regarded as disclosing or suggesting any embodiment having at

least two substantially vertical support members.  Even less would the Fig. 4 embodiment

be regarded as providing an attachment orifice that is <u>between</u> two members, as also

required by claim 1.  Instead, the orifice clearly passes through a single member.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of

Harry Eberle.  The Patent Owner submits that the Declaration provides additional bases

establishing that even in combination, Heilmann, Elmendorf, and Weiland do not disclose

or suggest the subject matter of claims 1, 2, 7, 8, and 9.  The Eberle Declaration further

provides evidence tending to establish that a person having ordinary skill in the art would

not have had motivation to modify the combined teaching of Heilmann, Elmendorf, and

Weiland as would be required to reach the present claimed anchoring biscuit device.

Accordingly, and in view of the foregoing arguments, the newly presented claims

and the Declarations supporting patentability that are appended hereto, reconsideration of

IC-App-1095

ReExamination of USP 6,402,415                    Attorney Docket No.:  HWE-105C
Inventor   :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed       :  November 5, 1998
Page      :  50

the rejection of claims 1, 2, 7, 8, and 9 under 35 USC 103(a) as being unpatentable over

Heilmann in view of Elmendorf, or, in the alternative, over Heilmann in view of

Elmendorf and further in view of Weiland, is respectfully requested, along with

confirmation of said claims, as amended, and allowance of newly presented claims 13-26.

## Issue 9:

Claims 1, 2, 7, 8, 9, and 10 were rejected under 35 USC 103(a) as being

unpatentable over Heilmann in view of Chen, or, in the alternative, in further view of

Weiland.

The Examiner has indicated that this rejection is made for the reasons set forth in

Issue 8 regarding Elmendorf. In the present instance, the Examiner has not provided any

express basis on which Heilmann and Chen are properly combined, as the courts have

repeatedly required. See, e.g., *Ex parte Skinner*, 2 USPQ2d 1788, 1790 (B.P.A.I. 1986).

The patentee therefore maintains that no motivation is operative in this rejection beyond

that articulated under Item 8 for the combination of Heilmann with Elmendorf and,

optionally, Weiland. To the contrary, it is submitted that any motivation for the

combination with Chen is negated by the structure of the Chen attachment device,

including the spacing of the wall tiles away from the underlying support structure, as

necessitated for accessing and tightening the securing bolt, as discussed under Item 7

above. Other reasons set forth by the patentee in this section are also as pertinent to

impropriety of the combination of Chen with Heilmann as with Smith.

IC-App-1096

ReExamination of USP 6,40~,~15                              Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam     : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 51

The Patentee also maintains that the combination of Chen with Heilmann is no more availing than the combination of Elmendorf with Heilmann. As set forth above under Issue 8, the patentee maintains that the modification of Heilmann required to provide at least two substantially vertical support members by reducing the thickness of the Heilmann shoulder $d$, as required to reach amended claim 1 (and claims 2 and 7-9 dependent thereon), would not be made by a skilled artisan, is unreasonably strained, and reflects the operation of impermissible hindsight. Chen in no way remedies such a deficiency. The at least one off-center element required by amended claim 10 also is not disclosed or suggested by Heilmann, even in combination with Chen.

Further, the patentee respectfully submits that the alternative additional combination of Weiland with Heilmann and Chen is no more availing that the combination of Weiland with Heilmann and Elmendorf as discussed in connection with Issue 8.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of Harry Eberle. The Patent Owner submits that the Declaration provides additional bases establishing that even in combination, Heilmann, Chen, and Weiland do not disclose or suggest the subject matter of claims 1, 2, 7, 8, 9, and 10. The Eberle Declaration further provides evidence tending to establish that a person having ordinary skill in the art would not have had motivation to modify the combined teaching of Heilmann, Chen, and Weiland as would be required to reach the present claimed anchoring biscuit device.

IC-App-1097

ReExamination of USP 6,402,415                      Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page      : 52

It is thus submitted that claims 1, 2, 7, 8, 9, and 10, as amended, are not obvious

over Heilmann, Chen, and Weiland, whether taken singly or in any combination.

In view of the present claim amendments, the remarks set forth above, and the

Declarations in support of patentability submitted herewith, reconsideration of the

rejection of claims 1, 2, 7, 8, 9, and 10 under 35 USC 103(a) over Heilmann, Chen, and

Weiland, and their confirmation, together with allowance of newly presented claims 13-

26, are respectfully requested.


**Issue 10:**

Claims 3-6 were rejected under 35 USC 103(a) as being unpatentable over

Heilmann in view of Elmendorf, or, in the alternative, in further view of Weiland, and

further in view of Wothe.

As set forth hereinabove in connection with the rejection of Issue 8, the patentee

traverses the Examiner's assertion that the modified Heilmann device discloses the

invention as presently claimed. In particular, the patentee maintains that amended claim

1 is not disclosed or suggested by the combination of Heilmann and Elemendorf, or even

alternatively in further view of Weiland, for the aforesaid reasons. Under Issue 2 above,

the patentee has further differentiated Wothe, which does not cure the fundamental

deficiencies of Heilmann, Elmendorf, and Weiland with respect to the features of

amended claim 1, from which claims 3-6 depend. Thus, even with the disclosure of a

IC-App-1098

ReExamination of USP 6,40.2,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 53

non-circular and elongated slot washer provided by Wothe, claims 3-6 are not disclosed

or suggested as the Examiner has alleged.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of

Harry Eberle. The Patent Owner submits that the Declaration provides additional bases

establishing that even in combination, Heilmann, Elmendorf, Weiland, and Wothe do not

disclose or suggest the subject matter of claims 3-6. The Eberle Declaration further

provides evidence tending to establish that a person having ordinary skill in the art would

not have had motivation to modify the combined teaching of Heilmann, Elmendorf,

Weiland, and Wothe, as would be required to reach the present claimed anchoring biscuit

device.

Accordingly, reconsideration of the rejection of claims 3-6 under 35 USC 103(a)

as being unpatentable over Heilmann in view of Elmendorf, or, in the alternative, in

further view of Weiland, and further in view of Wothe, is respectfully requested, along

with confirmation of claims 3-6, as amended, over said art..

**Issue 11:**

Claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 were rejected under 35 USC 103(a) as being

unpatentable over Japanese Patent Publication JP 04-371657 to Hashida, or, in the

alternative, Hashida in view of Weiland.

In the present instance, the Examiner has provided a translation apparently only of

the abstract of Hashida, and not of the full publication. As best understood by the Patent

IC-App-1099

ReExamination of USP 6,404,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page      : 54

Owner, Hashida provides an attachment of stone boards to a wall and a fitting useful

therefor.

It is respectfully submitted that the present office action reflects a practice that the

Board of Patent Appeals and Interferences has eschewed as being improper, namely a

rejection predicated on an English-language translation solely of an abstract of a foreign-

language reference. In *Ex parte Jones*, 62 U.S.P.Q.2D (BNA) 1206, 1208 (BPAI 2001),

the Board wrote as follows:

> The Board of Patent Appeals and Interferences continues to have
> recurring problems in resolving *ex parte* appeals which come before it.
> One continuing recurring problem is the citation and reliance by
> examiners on abstracts, without citation and reliance on the underlying
> scientific document.
>
> In this appeal, the examiner relied upon abstracts of three technical
> journal articles without referring to translations of the underlying
> documents. Citation of an abstract without citation and reliance on the
> underlying scientific document itself is generally inappropriate where
> both the abstract and the underlying document are prior art. Abstracts
> often are not written by the author of the underlying document and
> may be erroneous. It is our opinion that a proper examination under
> 37 CFR § 1.104 should be based on the underlying documents and
> translations, where needed. Accordingly, the preferred practice is for
> the examiner to cite and rely on the underlying document.
>
> In the event a reference is in a foreign language, if the applicant does
> not wish to expend resources to obtain a translation, the applicant may
> wish to request the examiner to supply a translation. If a translation is
> not supplied by the examiner, the applicant may wish to consider
> seeking supervisory relief by way of a petition (37 C.F.R. § 1.181) to
> have the examiner directed to obtain and supply a translation. . . . In
> our view, obtaining translations is the responsibility of the examiner.
> A review by the examiner and applicant of translations of the prior art
> relied upon in support of the examiner's rejection may supply
> additional relevant evidence as to whether there is a legally sufficient
> reason, suggestion, teaching or motivation to combine the teachings of

ReExamination of USP 6,402,415                                    Attorney Docket No.: HWE-105C
Inventor   :  Eberle, III
ReExam    :  90/007,661
Serial No. :  09/186,741
Filed        :  November 5, 1998
Page        :  55

the five technical journal articles.     Moreover, an evaluation of translations may eliminate the need for an appeal.

It is well established that a reference being applied in a rejection must be considered for what it would suggest, as a whole, to a person having ordinary skill in the art.  Clearly, a rejection based on the translation of a small portion of such a reference cannot be regarded as being based on what the reference as a whole teaches.

The need for a translation in the present instance is particularly apparent in a comparison of Figs. 2 and 3 of Hashida.  The patent owner submits that these Figures demonstrate, as best as can be ascertained without any underlying textual description, that the Hashida fastener is a two-part device that functions as a turn-button.  In Figs. 2 and 3, portions 22 and 23 are differentiated by the crosshatching only of portion 22.  By way of contrast, the present claimed anchoring biscuit device has vertical support members that are attached to the underside of the top element.  The claimed device is preferably fabricated as a unitary object.  In the Hashida device, the spacer portion (22) is used on a vertical surface to space individually installed stone panels.  After a given stone is in position, the aligner portion (23) is rotated to lock in that stone and place the aligner into position to receive the next, adjacent stone.  The procedure is repeated as subsequent stones are installed and the desired height is obtained.  With this system, fasteners are put into position prior to installing the stone, thus assuring straight lines for grouting.  This application method would not prove practical for surfaces that are installed horizontally, such as decks, because the space required to accommodate the spacer and rotating portion

IC-App-1101

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page      : 56

for a screw would result in an excessively wide gap. Such a width would be regarded as

unattractive and unsafe for a decking installation.

This usage of fitting 20 of Hashida differentiates its structure from that of the

Eberle anchoring biscuit device. Fitting 20 has only a single vertical member 22 that is

not attached to the top element 23. Versions of the Eberle device having two vertical

support members with an attachment orifice between inherently could not function in

Hashida's manner, because there would be no means of securing the top element and

vertical support members with a screw or other fastener. In addition, Hashida's two-

piece fastener is more complicated and difficult to fabricate than a single-piece device.

The installation would require added extraneous steps during the deck installation

process, including the rotation of the top element into position and a final tightening of

the screw attachment that would be needed thereafter to remove play and assure adequate

holding force. The attachment would not be as strong, because the width of the top

element would be limited to the acceptable gap between adjacent deck boards, thus

severely restricting the possible bearing area of the device. The Hashida fastener itself

would have a marked weakness and propensity to break due to flexure along a line across

the narrow width dimension of the top element at the screw orifice. On the other hand,

the vertical support members of the Eberle device act in concert with the top element to

limit flexure and provide enhanced strength. The Hashida device thus is not capable of

adequately providing the Eberle support function.

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed       : November 5, 1998
Page       : 57

Accordingly, it is respectfully submitted that a person having ordinary skill in the art would have no motivation to carry out the substantial modifications of any device constructed in accordance with the Hashida reference singly or in combination with Weiland, as would be required to reach the claimed device. Like Chen, Hashida teaches a device that must be constructed of suitable materials and given sufficient heft to secure stone wall panels in two dimensions. Any such device must both restrain the panels from becoming detached from the wall structure behind them and carry the static vertical loading of the tiles. Hashida teaches only a generally T-shaped device with a single projection from a top element. The Weiland element has multiple projections, but they are perpendicularly oriented so that they can engage relatively light wall tiles, not heavy stone panels, at their corners. The perpendicular projections of the Weiland device clearly prevent it from rotating in the manner in which the Hashida element is used

Specifically, Hashida's fitting 20 is clearly differentiated from the present claimed anchoring biscuit device. Fitting 20 has only a single vertical member 22, whereas amended claims 1-9 call for at least two substantially vertical support members and claims 14-19 call for exactly two such vertical support members. The Eberle device, having at least two members, inherently could not function in the manner proposed for the Hashida device as a result of its structure.

Like Chen, Hashida teaches a device that must be constructed of suitable materials and given sufficient heft to secure stone wall panels in two dimensions. Any such device must both restrain the panels from becoming detached from the wall

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 58

structure behind them and carry the static vertical loading of the tiles.  Hashida teaches

only a generally T-shaped device with a single projection from a top element.   The

Weiland element has multiple projections, but they are perpendicularly oriented so that

they can engage relatively light wall tiles, not heavy stone panels, at their corners.  The

perpendicular projections of the Weiland device clearly prevent it from rotating in the

manner in which the Hashida element is used

It is further submitted that Hashida, whether taken singly or in combination with

Weiland, also fails to disclose or suggest the subject matter of claims 10-11 as amended,

or new claims 20-26.  Claims 10-11 now call for at least one off-center vertical support

member.  On the other hand, as best understood by the patentee, spacer 22 of the Hashida

device is located on-center, not off-center, and the Examiner has not pointed to any

disclosure or suggestion to the contrary or any suggestion that Hashida (even in

combination with Weiland) be so modified.  The same considerations are submitted to

apply with equal force to claims 20-26, which require exactly one off-center vertical

support.

The patentee also maintains that the considerations set forth above under Issue 7

regarding the skilled person's motivation to consider the Chen reference relating to stone

panel wall construction also apply to Hashida.  That is to say, a person having ordinary

skill in the art to which the Eberle device pertains would not have been motivated to look

to hardware and techniques used in constructing and supporting massive stone walls for

combination with hardware used instead for the radially different problem of attaching

IC-App-1104

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 59

decking boards. Accordingly, it is further submitted that the combination of Weiland and
Hashida is not a proper predicate for the present obviousness rejection.

The Hashida prior art device, like Heilmann's metal device, prevents or inhibits
insertion of an attachment screw at an angle to catch both the deck board and the board
being attached as in the present invention device. Thus, this structural difference is
significant. The new claims expressly indicate that the attachment orifice and the support
member(s) are separate and apart from one another.

The Examiner's attention is respectfully drawn to the Rule 132 Declaration of
Harry Eberle. The Patent Owner submits that the Declaration provides additional bases
establishing that even in combination, Hashida and Weiland do not disclose or suggest
the subject matter of claims 1, 2, 3, 5, 7, 8, 9, 10 and 11. The Eberle Declaration further
provides evidence tending to establish that a person having ordinary skill in the art would
not have had motivation to modify the combined teaching of Hashida and Weiland as
would be required to reach the present claimed anchoring biscuit device.

In view of the foregoing remarks, the present claim amendment, and the
Declarations supporting patentability that are appended hereto, it is submitted that claims
1, 2, 3, 5, 7, 8, 9, 10, and 11, as amended, are not obvious over Hashida and Weiland.

Accordingly, reconsideration of the rejection under 35 USC 103(a) of amended
claims 1, 2, 3, 5, 7, 8, 9, 10, and 11 as being unpatentable over Hashida, or in the
alternative, Hashida in view of Weiland, is respectfully requested, along with
confirmation of said claims and allowance of new claims 13-26. In addition, and in

IC-App-1105

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor    : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed        : November 5, 1998
Page        : 60

accordance with *Ex parte Jones*, *supra*, the patentee respectfully requests that the Examiner obtain and provide a translation of the full Hashida reference and provide appropriate citation to that document to establish the propriety of any rejection based on Hashida, which has not previously been cited as prior art in the present proceeding or in the original prosecution of the subject patent.

## Issue 12:

Claims 4, 6, and 12 were rejected under 35 USC 103(a) as being unpatentable over Hashida in view of Wothe, or, in the alternative, Hashida in view of Weiland and further in view of Wothe.

The examiner has asserted that the Hashida device as modified discloses the invention substantially as claimed, less a non-circular and elongated slot. For at least the reasons set forth above under Issue 11, the patentee respectfully disagrees, and maintains that amended claims 1 and 10 are patentable over Hashida, either singly or in combination with Weiland.

Claims 4 and 6, and 12 respectively depend on claims 1 and 10, and further require the aforementioned non-circular and elongated slot. As set forth under Issue 2 above, any disclosure by Wothe of a non-circular and elongated slot does not cure the lack of disclosure of other features of claims 1 and 10. The patentee thus maintains that claims 4, 6, and 12 are not rendered obvious by any combination of Hashida, Weiland, and Wolthe.

IC-App-1106

ReExamination of USP 6,402,415          Attorney Docket No.: HWE-105C
Inventor   : Eberle, III
ReExam    : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998
Page       : 61

Accordingly, reconsideration of the rejection under 35 USC 103(a) of amended claims 4, 6, and 12 as being unpatentable over Hashida, or in the alternative, Hashida in view of Weiland, in further view of Wothe, is respectfully requested, along with confirmation of said claims.

**Further Remarks:**

The Examiner's attention is respectfully drawn to the Rule 132 Declarations of Sabin and Eberle. Set forth therein is further evidence tending to establish the novelty and non-obviousness of the present patent claims over the prior art applied. In addition, these declarations provide evidence of the industry recognition of the EB-TY® PRODUCT as satisfying a long-felt need in the art and its commercial acceptance and success.

**Conclusion:**

In view of the resubmission of the claim listing comprising amended claims 1, 2, 7, 8, and 10 and newly presented claims 13-26; the Rule 132 Declarations of Sabin and Eberle submitted in conjunction with the response filed February 9, 2007; and the remarks set forth hereinabove and in the February 9, 2007 response, it is respectfully submitted that claims 1-26 are patentable over the art of record. Entry of the present

IC-App-1107

ReExamination of USP 6,402,415                    Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed     : November 5, 1998
Page     : 62

amendment, confirmation of claims 1-12, allowance of new claims 13-26, and issuance

of an *Ex Parte* Reexamination Certificate, are earnestly solicited.

_May 18, 2007_

Date

Ernest D. Buff
Reg. No. 25,833
Attorney for Patent Owner
231 Somerville Rd.
Bedminster, NJ 07921
(908) 901-0220 Tele
(908) 901-0330 Fax

IC-App-1108

ReExamination of USP 6,402,415                     Attorney Docket No.: HWE-105C
Inventor  : Eberle, III
ReExam   : 90/007,661
Serial No. : 09/186,741
Filed      : November 5, 1998

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the attached "SUPPLEMENTAL AMENDMENT AND RESPONSE UNDER 37 CFR 1.550(b)" was served by First Class Priority Mail on the date below to:

Berenato, White, & Stavish, LLC
6550 Rock Spring Drive, Suite 240
Bethesda, MD 20817

Attention: Matthew W. Stavish, Esq.

_May 18, 2007_
Date

Signature
Ernest D. Buff
Reg. No. 25,833
(Attorney for Patent Owner)
231 Somerville Rd.
Bedminster, NJ 07921
(908) 901-0220 Tele
(908) 901-0330 Fax

IC-App-1109

 

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

Kenneth P. Glynn                    (For Patent Owner)
GLYNN & ASSOCIATES, PC                                    **MAILED**
24 Mine Street
Flemington NJ 08822                                       NOV 2 8 2007

                                                   CENTRAL REEXAMINATION UNIT

Mathew W. Stavish                   (For Third Party Requester)
Berenato, White & Tavish, LLC
6550 Rock Spring Drive, Suite 240
Bethesda, MD 20817


In re Reexamination Proceeding          :
H. Eberle                               :
Control No. 90/007,661                  : DECISION GRANTING PETITION
Filed: August 8, 2005                   :
U.S. Patent No. 6,402,415               :
Attorney Docket No. 0247-3 CIP RE       :


This is a decision on the petition under 37 CFR 1.137(b) filed by the patent owner on
September 17, 2007, by Express Mail, and resubmitted on October 26, 2007, by facsimile
transmission, for entry of late papers based upon unintentional delay.

The petition is before the Office of Patent Legal Administration (OPLA) for decision.

37 CFR 1.137(b) states, in part:

> *Unintentional.* If the delay in reply by applicant or patent owner was unintentional, a petition may be filed
> pursuant to this paragraph to revive an abandoned application, a reexamination proceeding terminated under
> §§ 1.550(d) or 1.957(b) or (c), or a lapsed patent. A grantable petition pursuant to this paragraph must be
> accompanied by: (1) The reply required to the outstanding Office action or notice, unless previously filed; (2)
> The petition fee as set forth in § 1.17(m); (3) A statement that the entire delay in filing the required reply from
> the due date for the reply until the filing of a grantable petition pursuant to this paragraph was unintentional. The
> Director may require additional information where there is a question whether the delay was unintentional ...."

A review of the Office records for this reexamination proceeding reveals that a petition filed
September 17, 2007, has been located in the Image File Wrapper.

The present petition under 37 CFR 1.137(b) includes, <u>inter alia</u>, the requisite response
(Supplemental Amendment - item 1), a $750.00 petition fee under 37 CFR 1.17(m) (item 2), the
requisite statement (item 3) and a Certificate of Service on the Third Party Requester.

The petition for entry of the late papers is <u>granted</u>.

Jurisdiction over the reexamination proceeding is being returned to Central Reexamination Unit (CRU) Art Unit 3993 for further examination and consideration of the Supplemental Amendment filed September 17, 2007, along with the present petition, <u>in due course</u>.

Any further communications as to the merits of the reexamination proceeding should be directed to the primary examiner, J. Jastrzab, in CRU Art Unit 3993, who can be reached at 571-272-4947.

Telephone inquiries related to this decision should be directed to Fred A. Silverberg at 571-272-7719.

Fred A. Silverberg
Senior Legal Advisor
Office of Patent Legal Administration
Office of the Deputy Commissioner for Patent Examination Policy

# Litigation Search Report CRU 3999

## Reexam Control No. 90/007,661

| | |
|---|---|
| TO: Andres Kashnikow<br>Location: CRU<br>Art Unit: 3993<br>Date: 2/06/08<br>Case Serial Number: 90/007,661 | From: Patricia Volpe<br>Location: CRU 3999<br>MDW 7C69<br>Phone: (571) 272-6825<br><br>Patricia.volpe@uspto.gov |

## Search Notes

**Litigation was found involving U.S. Patent Number 6,402,415**

**Sources:**

1) I performed a KeyCite Search in Westlaw, which retrieves all history on the patent including any litigation.

2) I performed a search on the patent in Lexis CourtLink for any open dockets or closed cases.

3) I performed a search in Lexis in the Federal Courts and Administrative Materials databases for any cases found.

4) I performed a search in Lexis in the IP Journal and Periodicals database for any articles on the patent.

5) I performed a search in Lexis in the news databases for any articles about the patent or any articles about litigation on this patent.

Date of Printing: FEB 06,2008

## KEYCITE

€US PAT 6402415 ANCHORING BISCUIT DEVICE, (Jun 11, 2002)

### History

=>    1 **ANCHORING BISCUIT DEVICE**, US PAT 6402415, 2002 WL 1281690 (U.S. PTO Utility
      Jun 11, 2002) (NO. 186741)

### Patent Family

2 ANCHORING BISCUIT DEVICE FOR JOINING THREE BOARDS COMPRISES TOP AND
REAR BISCUIT WALL INSERTED INTO SLOT OF THE HORIZONTAL BEAM AND
SCREW INSERTED INTO BEAM AND JOIST, DWPL 2000-306021

### Assignments

3 ACTION: ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DE-
TAILS). NUMBER OF PAGES: 003, DATE RECORDED: Dec 10, 2002

### Patent Status Files

. Request for Re-Examination, (OG date: Oct 11, 2005)

. Patent Suit(See LitAlert Entries),

### Docket Summaries

6 "EBERLE, ET AL v. HARRIS, ET AL", 3:03CV05809, (D.N.J. Dec 08, 2003), 35 USC 145
PATENT INFRINGEMENT

7 "EBERLE, ET AL v. PELC, ET AL", 3:03CV00892, (D.N.J. Feb 28, 2003), 15 USC 1126 PAT-
ENT INFRINGEMENT

### Litigation Alert

8 LitAlert P2003-50-15, (Dec 08, 2003) Action Taken: A complaint was filed.

9 LitAlert P2003-12-31, (Feb 28, 2003) Action Taken: A complaint was filed.

### Prior Art (Coverage Begins 1976)

C    10 US PAT 5458433 BISCUIT AND JOINT MADE USING SAME, (U.S. PTO Utility 1995)

C    11 US PAT 5004027 BISCUIT JOINER, Assignee: Shopsmith, Inc., (U.S. PTO Utility 1991)

C    12 US PAT 5564248 CONSTRUCTION HANGER AND METHOD OF MAKING THE SAME, As-
     signee: United Steel Products Company, (U.S. PTO Utility 1996)

C    13 US PAT 4682458 DRY LAID FLOORS, Assignee: Trent Jetfloor Limited, (U.S. PTO Utility
     1987)

C    14 US PAT 5251996 ELEMENT FOR CONNECTING TWO PARTS, (U.S. PTO Utility 1993)

© Copyright 2008 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058
914 668, or their Licensors. All rights reserved.

c     15 US PAT 4641988 FITTING FOR RELEASABLY JOINING TWO STRUCTURAL COMPONENTS, (U.S. PTO Utility 1987)

c     16 US PAT 5660016 FOAM-FILLED EXTRUDED DECKING PLANK AND DECKING ATTACHMENT SYSTEM, Assignee: Erwin; Ronald Dean, (U.S. PTO Utility 1997)

c     17 US PAT 5419649 INTERMEDIATE RAIL TO POST CONNECTION, Assignee: Simpson Strong-Tie Co., Inc., (U.S. PTO Utility 1995)

c     18 US PAT 5529428 METALLIC STRUCTURAL ELEMENT FOR CONNECTING WORK-PIECES CONSISTING OF WOOD, WOODWORKING MATERIAL OR PLASTIC, (U.S. PTO Utility 1996)

c     19 US PAT 5480117 MOUNTING BRACKET FOR WALL PANEL LOCKS, (U.S. PTO Utility 1996)

c     20 US PAT 5603580 POSITIVE ANGLE FASTENER DEVICE, Assignee: Simpson Strong-Tie Company, Inc., (U.S. PTO Utility 1997)

c     21 US PAT 5160211 POST TO RAILING TIE, Assignee: Simpson Strong-Tie Company, Inc., (U.S. PTO Utility 1992)

c     22 US PAT 5182891 RAISED INSULATED AND WATER RESISTANT COMPOSITE FLOORING MATERIAL, (U.S. PTO Utility 1993)

c     23 US PAT 5071280 SLANT AND SKEW NAILING DEVICE, (U.S. PTO Utility 1991)

c     24 US PAT 2362252 U.S. Utility Patent, (U.S. PTO Utility 1944)

c     25 US PAT 1184080 U.S. Utility Patent, (U.S. PTO Utility 1916)

c     26 US PAT 2332081 U.S. Utility Patent, (U.S. PTO Utility 1943)

c     27 US PAT 2406387 U.S. Utility Patent, (U.S. PTO Utility 1946)

c     28 US PAT 2398603 U.S. Utility Patent, (U.S. PTO Utility 1946)

c     29 US PAT 5377732 WOOD JOINING STRUCTURE AND METHOD THEREOF, Assignee: Forestry and Forest Products Research, (U.S. PTO Utility 1995)

© Copyright 2008 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

# US District Court Civil Docket

## U.S. District - New Jersey
## (Trenton)

## 3:03cv5809

## Eberle, et al v. Harris, et al

This case was retrieved from the court on Friday, June 15, 2007

| | |
|---|---|
| Date Filed: 12/08/2003 | Class Code: 12BQ, ADMCLOSED, SCHEDO |
| Assigned To: Judge Freda L Wolfson | Closed: yes |
| Referred To: Magistrate Judge Tonianne J Bongiovanni | Statute: 35:145 |
| Nature of suit: Patent (830) | Jury Demand: Defendant |
| Cause: Patent Infringement | Demand Amount: $0 |
| Lead Docket: None | NOS Description: Patent |
| Other Docket: None | |
| Jurisdiction: Federal Question | |

|  Litigants  |  Attorneys  |
|---|---|
| James H Coleman<br>Mediator<br>[Term: 12/13/2004] | James H Coleman, Jr<br>[COR LD NTC]<br>[Term: 12/13/2004]<br>Porzio, Bromberg & Newman, PC<br>100 Southgate Parkway<br>Morristown , NJ 07962-1997<br>USA<br>(973) 538-4006<br>Fax: (973) 538-5146 |
| Harry W Eberle, III A Resident of New Jersey<br>Plaintiff | Ernest D Buff<br>[COR LD NTC]<br>Ernest D Buff & Associates, LLC<br>231 Somerville Road<br>Bedminster , NJ 07921<br>USA<br>(908) 901-0220<br>Fax: (908) 901-0330<br>Email: Ebuff@edbuff.com<br><br>G Richard Malgran<br>[COR LD NTC]<br>[Term: 04/15/2005]<br>170 Barbertown-Point Breeze Road<br>Frenchtown , NJ 08825<br>USA<br>(908) 996-0745<br><br>Kenneth P Glynn<br>[COR LD NTC]<br>[Term: 10/08/2004]<br>GLYNN & Associates, PC<br>24 Mine Street<br>Flemington , NJ 08822 |

USA
(908) 788-0077

| | |
|---|---|
| Blue Heron Enterprises, Llc A New Jersey Limited Liability Company<br>Plaintiff | Ernest D Buff<br>[COR LD NTC]<br>Ernest D Buff & Associates, LLC<br>231 Somerville Road<br>Bedminster , NJ  07921<br>USA<br>(908) 901-0220<br>Fax: (908) 901-0330<br>Email: Ebuff@edbuff.com<br><br>G Richard Malgran<br>[COR LD NTC]<br>[Term: 04/15/2005]<br>170 Barbertown-Point Breeze Road<br>Frenchtown , NJ  08825<br>USA<br>(908) 996-0745<br><br>Kenneth P Glynn<br>[COR LD NTC]<br>[Term: 10/08/2004]<br>GLYNN & Associates, PC<br>24 Mine Street<br>Flemington , NJ  08822<br>USA<br>(908) 788-0077 |
| Steven Harris A Resident of Kansas Trading as KK Mfg Co Trading as KK Manufacturing Co Trading as KK Manufacturing Company<br>Defendant | Beth S Block<br>[COR LD NTC]<br>[Term: 09/01/2005]<br>Callan, Koster, Brady & Brennan<br>740 Broad Street<br>PO Box 7520<br>Shrewsbury , NJ  07702<br>USA<br>(732) 345-9333<br><br>Steven Gerber<br>[COR LD NTC]<br>Adorno & Yoss, LLP<br>155 Willowbrook Boulevard<br>Wayne , NJ  07470<br>USA<br>(973) 256-9000<br>Email: Sgerber@adorno.com |
| Kk Mfg Co, Inc A Corporation of The State of Kanas<br>Defendant | Beth S Block<br>[COR LD NTC]<br>[Term: 09/01/2005]<br>Callan, Koster, Brady & Brennan<br>740 Broad Street<br>PO Box 7520<br>Shrewsbury , NJ  07702<br>USA<br>(732) 345-9333<br><br>Steven Gerber<br>[COR LD NTC]<br>Adorno & Yoss, LLP<br>155 Willowbrook Boulevard<br>Wayne , NJ  07470 |

USA
(973) 256-9000
Email: Sgerber@adorno.com

Steven Harris A Resident of Kansas
Counter Claimant

Beth S Block
[COR LD NTC]
[Term: 09/01/2005]
Callan, Koster, Brady & Brennan
740 Broad Street
PO Box 7520
Shrewsbury , NJ  07702
USA
(732) 345-9333

Steven Gerber
[COR LD NTC]
Adorno & Yoss, LLP
155 Willowbrook Boulevard
Wayne , NJ  07470
USA
(973) 256-9000
Email: Sgerber@adorno.com

Kk Mfg Co, Inc A Corporation of The State of Kanas
Counter Claimant

Beth S Block
[COR LD NTC]
[Term: 09/01/2005]
Callan, Koster, Brady & Brennan
740 Broad Street
PO Box 7520
Shrewsbury , NJ  07702
USA
(732) 345-9333

Steven Gerber
[COR LD NTC]
Adorno & Yoss, LLP
155 Willowbrook Boulevard
Wayne , NJ  07470
USA
(973) 256-9000
Email: Sgerber@adorno.com

Blue Heron Enterprises, Llc A New Jersey Limited Liability
Company
Counter Defendant

Ernest D Buff
[COR LD NTC]
Ernest D Buff & Associates, LLC
231 Somerville Road
Bedminster , NJ  07921
USA
(908) 901-0220
Fax: (908) 901-0330
Email: Ebuff@edbuff.com

G Richard Malgran
[COR LD NTC]
[Term: 04/15/2005]
170 Barbertown-Point Breeze Road
Frenchtown , NJ  08825
USA
(908) 996-0745

Harry W Eberle, III A Resident of New Jersey
Counter Defendant

Ernest D Buff
[COR LD NTC]
Ernest D Buff & Associates, LLC

231 Somerville Road
Bedminster , NJ  07921
USA
(908) 901-0220
Fax: (908) 901-0330
Email: Ebuff@edbuff.com

G Richard Malgran
[COR LD NTC]
[Term: 04/15/2005]
170 Barbertown-Point Breeze Road
Frenchtown , NJ  08825
USA
(908) 996-0745

| Date | # | Proceeding Text |
|------|---|-----------------|
| 12/08/2003 | 1 | COMPLAINT filed (FILING FEE $ 150.00 RECEIPT # 330754) (ck) Additional attachment(s) added on 1/13/2006 (ck, ). (Entered: 12/10/2003) |
| 12/10/2003 | 2 | NOTICE of Allocation and Assignment filed. (TRENTON - Judge STANLEY R. CHESLER - Magistrate Judge TONIANNE J. BONGIOVANNI) (NM) (ck) Additional attachment(s) added on 1/13/2006 (ck, ). (Entered: 12/10/2003) |
| 12/10/2003 | -- | SUMMONS issued for STEVEN HARRIS & KK MFG. CO., INC. (20 Days) (Mailed to Counsel) (ck) (Entered: 12/10/2003) |
| 01/22/2004 | 3 | NOTICE of Appearance by BETH S. BLOCK on behalf of STEVEN HARRIS, KK MFG. CO., INC. (ss, ) (Entered: 01/30/2004) |
| 02/18/2004 | 4 | ANSWER to Complaint with Jury Demand, COUNTERCLAIM against BLUE HERON ENTERPRISES, LLC, & HARRY W. EBERLE III by STEVEN HARRIS, & KK MFG. CO., INC..(ck, ) (Entered: 02/24/2004) |
| 03/10/2004 | 5 | ORDER Initial Conference set for 4/29/2004 11:00 AM in Trenton - Courtroom 6E before Magistrate Judge Tonianne J. Bongiovanni.. Signed by Judge Tonianne J. Bongiovanni on 3/10/04. (Attachments: # 1 ADR MEMO)(mr, ) (Entered: 03/10/2004) |
| 04/29/2004 | -- | Minute Entry for proceedings held before Judge Tonianne J. Bongiovanni : Initial Pretrial Conference held on 4/29/2004. Parties agree to ADR. Order for mediation to enter. (mr) (Entered: 04/29/2004) |
| 04/29/2004 | 6 | ORDER REFERRING CASE to Mediation Signed by Judge Tonianne J. Bongiovanni on 4/29/04. (ss, ) (Entered: 05/04/2004) |
| 05/28/2004 | 7 | LETTER ORDER DESIGNATING JUSTICE JAMES H. COLEMAN, JR. as mediator. Signed by Judge Ronald J. Hedges on 05/28/2004. (cc, ) (Entered: 05/28/2004) |
| 07/21/2004 | 8 | STIPULATION AND ORDER extending time for pltfs. to answer counterclaim to 7/20/04 Signed by Judge Tonianne J. Bongiovanni on 7/20/04. (ss, ) (Entered: 07/27/2004) |
| 07/21/2004 | 9 | ANSWER to Counterclaim by BLUE HERON ENTERPRISES, LLC, HARRY W. EBERLE III.(ss, ) (Entered: 07/27/2004) |
| 10/08/2004 | 10 | Substitution of Attorney - Attorney G. RICHARD MALGRAN for HARRY W. EBERLE; HARRY W. EBERLE; BLUE HERON ENTERPRISES, LLC and BLUE HERON ENTERPRISES, LLC added. Attorney KENNETH P. GLYNN terminated.. (mr) (Entered: 10/13/2004) |
| 10/21/2004 | 11 | ORDER staying Discovery pending non-binding Mediation. Signed by Judge Tonianne J. Bongiovanni on 10/21/04. (ms) (Entered: 10/25/2004) |
| 04/15/2005 | 12 | Substitution of Attorney - Added Attorney ERNEST D. BUFF for BLUE HERON ENTERPRISES, LLC & HARRY W. EBERLE, III; Terminated Attorney G. RICHARD MALGRAN. (Attachments: # 1 Certificate of Service)(ms) (Entered: 04/19/2005) |
| 05/31/2005 | -- | Minute Entry for proceedings held before Judge Tonianne J. Bongiovanni : Status Telephone Conference held on 5/31/2005. Status Telephone Conference set for 11/14/2005 10:30 AM before Magistrate Judge Tonianne J. Bongiovanni. (mr) (Entered: 05/31/2005) |
| 06/08/2005 | 13 | SCHEDULING ORDER: Status Telephone Conference set for 11/14/2005 10:30 AM before Magistrate Judge Tonianne J. Bongiovanni. Motions to Amend Pleadings due by 8/15/2005. Discovery due by 11/30/2005. Motions to Join Parties due by 8/15/2005. Dispositive motion to be served within 30 days of completion of discovery. Expert discovery schedule set. Final |

Pretrial Conference to be set by the Court.. Signed by Judge Tonianne J. Bongiovanni on 6/8/05. (Attachments: # 1 FORM OF FINAL PRETRIAL ORDER)(mr) (Entered: 06/08/2005)

| 09/01/2005 | 14 | Substitution of Attorney - Attorney STEVEN GERBER and STEVEN GERBER for STEVEN HARRIS; KK MFG. CO., INC.; STEVEN HARRIS and KK MFG. CO., INC. added. Attorney BETH S. BLOCK terminated.. (GERBER, STEVEN) (Entered: 09/01/2005) |
|---|---|---|
| 10/03/2005 | 15 | First MOTION to Amend/Correct 1 Complaint by HARRY W. EBERLE, III, BLUE HERON ENTERPRISES, LLC, BLUE HERON ENTERPRISES, LLC, HARRY W. EBERLE, III. (Attachments: # 1 Text of Proposed Order Proposed Order# 2 Certificate of Service # 3 Exhibit Exhibit A - Amended Complaint# 4 Exhibit Exhibit B - Redlined Amended Complaint# 5 Exhibit Exhibit C - Original Complaint# 6 Exhibit Exhibit D - Certification Supporting Motion)(BUFF, ERNEST) (Entered: 10/03/2005) |
| 10/12/2005 | 16 | MOTION for Leave to Appear Pro Hac Vice by STEVEN HARRIS, KK MFG. CO., INC., STEVEN HARRIS, KK MFG. CO., INC.. (Attachments: # 1 Affidavit Declaration of Steven Gerber in support of application for admission of Matthew Stavish pro hac vice# 2 Affidavit Declaration of Matthew Stavish in support of application for admission pro hac vice# 3 Exhibit A to Declaration of Matthew Stavish# 4 Letter to Clerk filing Consent Order to admit Matthew Stavish pro hac vice)(GERBER, STEVEN) (Entered: 10/12/2005) |
| 10/12/2005 | 17 | MOTION to Stay Pending Patent Reexamination by STEVEN HARRIS, KK MFG. CO., INC., STEVEN HARRIS, KK MFG. CO., INC.. (Attachments: # 1 Brief Defendants/counterclaimants memo of law in support of their motion for stay pending patent reexamination# 2 Order# 3 Certificate of Service of Steven Gerber# 4 Certification Dec of Matthew W. Stavish in Support of Def/countclaim Motion (Exhibits filed separately, to large to attach))(GERBER, STEVEN) (Entered: 10/12/2005) |
| 10/12/2005 | 18 | MOTION to Stay re 17 MOTION to Stay Pending Patent Reexamination Exhibit A1 to Dec of Matthew Stavish by STEVEN HARRIS, KK MFG. CO., INC., STEVEN HARRIS, KK MFG. CO., INC.. (GERBER, STEVEN) (Entered: 10/12/2005) |
| 10/12/2005 | 19 | MOTION to Stay re 17 MOTION to Stay Pending Patent Reexamination Exhibit A2 of Dec of Matthew Stavish by STEVEN HARRIS, KK MFG. CO., INC., STEVEN HARRIS, KK MFG. CO., INC.. (GERBER, STEVEN) (Entered: 10/12/2005) |
| 10/12/2005 | 20 | MOTION to Stay re 17 MOTION to Stay Pending Patent Reexamination Exhibits B, C and D to Dec of Matthew Stavish by STEVEN HARRIS, KK MFG. CO., INC., STEVEN HARRIS, KK MFG. CO., INC.. (Attachments: # 1 Exhibit Exhibit B to Dec of Matthew Stavish# 2 Exhibit Exhibit C to Dec of Matthew Stavish)(GERBER, STEVEN) (Entered: 10/12/2005) |
| 10/12/2005 | 21 | MOTION to Stay re 17 MOTION to Stay Pending Patent Reexamination Exhibit E to Dec of Matthew Stavish by STEVEN HARRIS, KK MFG. CO., INC., STEVEN HARRIS, KK MFG. CO., INC.. (GERBER, STEVEN) (Entered: 10/12/2005) |
| 10/13/2005 | -- | Set Deadlines as to 15 First MOTION to Amend/Correct 1 Complaint. Motion set for 11/7/2005 before Judge Stanley R. Chesler. (PLEASE NOTE THAT PURSUANT TO FED. R. CIV. P. 78 AND LOCAL RULE 7.1 (B)(4), NO ORAL ARGUMENT WILL BE HELD IN THIS MATTER AND PARTIES SHOULD NOT APPEAR UNLESS SPECIFICALLY DIRECTED TO DO SO BY THE COURT) (ss, ) (Entered: 10/13/2005) |
| 10/13/2005 | -- | Set Deadlines as to 17 MOTION to Stay Pending Patent Reexamination. Motion set for 11/7/2005 - before Judge Stanley R. Chesler. (PLEASE NOTE THAT PURSUANT TO FED. R. CIV. P. 78 AND LOCAL RULE 7.1 (B)(4), NO ORAL ARGUMENT WILL BE HELD IN THIS MATTER AND PARTIES SHOULD NOT APPEAR UNLESS SPECIFICALLY DIRECTED TO DO SO BY THE COURT) (ss, ) (Entered: 10/13/2005) |
| 10/13/2005 | -- | CLERKS OFFICE QUALITY CONTROL MESSAGE - The #'s 18,19,20&21 EXHIBITS, filed by S. GERBER on 10/12/2005 was submitted incorrectly as a MOTIONS. PLEASE RESUBMIT THE EXHIBITS BY 10/18/2005 USING EXHIBIT event. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (ss, ) (Entered: 10/13/2005) |
| 10/13/2005 | -- | CLERKS OFFICE QUALITY CONTROL MESSAGE - The #16 PROPOSED CONSENT ORDER submitted by S. GERBER on 10/12/2005 was submitted INCORRECTLY as a MOTION and must be executed by a Judicial Officer before filing. Please forward to the appropriate Judicial Officer in accordance with his/her preferred practice. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (ss, ) (Entered: 10/13/2005) |
| 10/17/2005 | 22 | Exhibit to Affidavit STEVEN HARRIS, KK MFG. CO., INC., STEVEN HARRIS, KK MFG. CO., INC. Re 17 Motion to Stay,. (Attachments: # 1 Exhibit A1 to Dec of M. Stavish# 2 Exhibit B to Dec of M. Stavish# 3 Exhibit C to Dec of M. Stavish# 4 Exhibit D to Dec of M. Stavish# 5 Exhibit E to Dec of M. Stavish)(GERBER, STEVEN) (Entered: 10/17/2005) |

| | | |
|---|---|---|
| 10/24/2005 | 23 | BRIEF in Opposition re 15 First MOTION to Amend/Correct 1 Complaint by Steven Gerber, Esq. filed by STEVEN HARRIS, KK MFG. CO., INC., STEVEN HARRIS, KK MFG. CO., INC.. (Attachments: # 1 Certification Dec of Matthew Stavish# 2 Exhibit A of Dec of M. Stavish# 3 Exhibit B to Dec. of M. Stavish# 4 Exhibit C to Dec of M. Stavish# 5 Exhibit D to Dec. of M. Stavish# 6 Exhibit E to Dec. of M. Stavish# 7 Exhibit F to Dec. of M. Stavish# 8 Exhibit G to Dec. of M. Stavish# 9 Exhibit G1 to Dec. of M. Stavish# 10 Certificate of Service)(GERBER, STEVEN) (Entered: 10/24/2005) |
| 10/24/2005 | 24 | BRIEF in Opposition re 17 MOTION to Stay Pending Patent Reexamination filed by HARRY W. EBERLE, III, BLUE HERON ENTERPRISES, LLC. (Attachments: # 1 Affidavit Buff Declaration# 2 Exhibit A to Buff Declaration# 3 Exhibit B to Buff Declaration# 4 Exhibit C to Buff Declaration# 5 Exhibit D to Buff Declaration# 6 Text of Proposed Order Denying Motion To Stay# 7 Certificate of Service)(BUFF, ERNEST) (Entered: 10/24/2005) |
| 10/24/2005 | 25 | AFFIDAVIT in Opposition re 17 MOTION to Stay Pending Patent Reexamination filed by HARRY W. EBERLE, III, BLUE HERON ENTERPRISES, LLC. (Attachments: # 1 Exhibit A to Buff Declaration# 2 Exhibit B to Buff Declaration# 3 Exhibit C to Buff Declaration# 4 Exhibit D to Buff Declaration)(BUFF, ERNEST) (Entered: 10/24/2005) |
| 10/25/2005 | -- | CLERKS OFFICE QUALITY CONTROL MESSAGE - The 24 AFFIDAVIT filed as an attachment to the Brief and 25 AFFIDAVIT of E. BUFF submitted by E. BUFF on 10/24/2005 did not contain a proper electronic signature (s/). PLEASE RESUBMIT THE DOCUMENT WITH THE PROPER ELECTRONIC SIGNATURE BY 10/28/2005. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (ss, ) (Entered: 10/25/2005) |
| 10/26/2005 | 26 | ORDER granting 16 Motion for Leave of MATTHEW STAVISH to Appear Pro Hac Vice on behalf of dfts. Signed by Judge Tonianne J. Bongiovanni on 10/24/2005. (ss, ) (Entered: 10/26/2005) |
| 10/26/2005 | 27 | AFFIDAVIT in Opposition re 17 MOTION to Stay Pending Patent Reexamination filed by HARRY W. EBERLE, III, BLUE HERON ENTERPRISES, LLC. (Attachments: # 1 Exhibit A to Buff Declaration# 2 Exhibit B to Buff Declaration# 3 Exhibit C to Buff Declaration# 4 Exhibit D to Buff Declaration)(BUFF, ERNEST) (Entered: 10/26/2005) |
| 10/27/2005 | -- | CLERKS OFFICE QUALITY CONTROL MESSAGE - The 27 DECLARATION filed by E. BUFF on 10/26/2005 was submitted incorrectly as a AFFIDAVIT. PLEASE RESUBMIT THE PLEADING BY 11/01/2005 USING DECLARATION. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (ss, ) (Entered: 10/27/2005) |
| 10/28/2005 | 28 | AFFIDAVIT in Opposition re 17 MOTION to Stay Pending Patent Reexamination , the Affidavit being a Declaration by Ernest D. Buff in support of the Opposition to MOTION to Stay Pending Patent Reexamination filed by HARRY W. EBERLE, III, BLUE HERON ENTERPRISES, LLC. (Attachments: # 1 Exhibit A to Buff Declaration# 2 Exhibit B to Buff Declaration# 3 Exhibit C to Buff Declaration# 4 Exhibit D to Buff Declaration)(BUFF, ERNEST) (Entered: 10/28/2005) |
| 10/28/2005 | 29 | REPLY to Response to Motion re 15 First MOTION to Amend/Correct 1 Complaint filed by HARRY W. EBERLE, III, BLUE HERON ENTERPRISES, LLC. (Attachments: # 1 Text of Proposed Order for Motion for Leave to File an Amended Complaint# 2 Certificate of Service of Ernest D. Buff) (BUFF, ERNEST) (Entered: 10/28/2005) |
| 10/31/2005 | 30 | PRETRIAL MEMORANDUM by HARRY W. EBERLE, III, BLUE HERON ENTERPRISES, LLC. (Attachments: # 1 Affidavit Affidavit Declaration of Ernest D. Buff in support of Plaintiffs' Brief on Claims Construction# 2 Exhibit A to Buff Declaration# 3 Exhibit B to Buff Declaration# 4 Exhibit C to Buff Declaration# 5 Certificate of Service of Ernest D. Buff)(BUFF, ERNEST) (Entered: 10/31/2005) |
| 10/31/2005 | 31 | REPLY to Response to Motion re 17 MOTION to Stay Pending Patent Reexamination by Steven Gerber, Esq. filed by STEVEN HARRIS, KK MFG. CO., INC., STEVEN HARRIS, KK MFG. CO., INC.. (Attachments: # 1 Certificate of Service of Steven Gerber, Esq.)(GERBER, STEVEN) (Entered: 10/31/2005) |
| 11/14/2005 | -- | Minute Entry for proceedings held before Judge Tonianne J. Bongiovanni : Status Telephone Conference held on 11/14/2005. (mr) (Entered: 11/15/2005) |
| 11/23/2005 | 32 | ORDER granting 15 Motion to Amend Complaint by 12/5/05. Signed by Judge Tonianne J. Bongiovanni on 11/23/05. (ms) (Entered: 11/23/2005) |
| 12/01/2005 | 33 | AMENDED COMPLAINT against STEVEN HARRIS, KK MFG. CO., INC., STEVEN HARRIS, KK MFG. CO., INC., filed by HARRY W. EBERLE, III, BLUE HERON ENTERPRISES, LLC, BLUE HERON ENTERPRISES, LLC, HARRY W. EBERLE, III. (Attachments: # 1 Certificate of Service)(BUFF, ERNEST) (Entered: 12/01/2005) |
| 12/08/2005 | 34 | LETTER OPINION & ORDER granting 17 Motion to Stay pending the PTO Reexamination . Signed |

by Judge Tonianne J. Bongiovanni on 12/7/05. (ck) (Entered: 12/08/2005)

| 12/08/2005 | 35 | STIPULATION & PROTECTIVE ORDER. Signed by Judge Tonianne J. Bongiovanni on 12/7/05. (ck ) (Entered: 12/08/2005) |
| 07/10/2006 | 36 | ORDER REASSIGNING CASE. Case reassigned to Judge Freda L. Wolfson for all further proceedings. Judge Stanley R. Chesler no longer assigned to case. Signed by Judge Garrett E. Brown, Jr. on 7/10/06.*(lk) (Entered: 07/12/2006) |
| 08/09/2006 | -- | Text Minute Entry for proceedings held before Judge Freda L. Wolfson : Telephone Conference held on 8/9/2006. (jg, ) (Entered: 08/09/2006) |
| 08/09/2006 | 37 | ORDER ADMINISTRATIVELY CLOSING CASE. Signed by Judge Freda L. Wolfson on 8/9/06. (ms) (Entered: 08/09/2006) |

Copyright © 2008 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

# US District Court Civil Docket

## U.S. District - New Jersey
## (Trenton)

## 3:03cv892

## Eberle, et al v. Pelc, et al

This case was retrieved from the court on Sunday, December 31, 2006

| | |
|---|---|
| **Date Filed:** 02/28/2003 | **Class Code:** 12BH, CLOSED |
| **Assigned To:** Judge Stanley R Chesler | **Closed:** yes |
| **Referred To:** Magistrate Judge John J Hughes | **Statute:** 15:1126 |
| **Nature of suit:** Patent (830) | **Jury Demand:** None |
| **Cause:** Patent Infringement | **Demand Amount:** $0 |
| **Lead Docket:** None | **NOS Description:** Patent |
| **Other Docket:** None | |
| **Jurisdiction:** Federal Question | |

| Litigants | Attorneys |
|---|---|
| Harry W Eberle, III A Resident of New Jersey<br>Plaintiff | Kenneth P Glynn<br>[COR LD NTC]<br>GLYNN & Associates, PC<br>24 Mine Street<br>Flemington , NJ  08822<br>USA<br>(908) 788-0077 |
| Blue Heron Enterprises, Llc A New Jersey Limited Liability Company<br>Plaintiff | Kenneth P Glynn<br>[COR LD NTC]<br>GLYNN & Associates, PC<br>24 Mine Street<br>Flemington , NJ  08822<br>USA<br>(908) 788-0077 |
| Robert J Pelc A Resident of New York<br>Defendant | |
| Original Ipe Clip Company, The A New York Company<br>Defendant | |
| Ipe Clip Company, The A New York Company<br>Defendant | |
| Advantage Lumber Company A New York Company<br>Defendant | |
| R&B Marketing Corporation A New York Corporation<br>Defendant | |

| Date | # | Proceeding Text |
|---|---|---|
| 02/28/2003 | 1 | COMPLAINT filed (FILING FEE $ 150.00 RECEIPT # 324073) (ck) (Entered: 02/28/2003) |

| 02/28/2003 | 2 | NOTICE of Allocation and Assignment filed. (TRENTON - Judge STANLEY R. CHESLER - Magistrate Judge JOHN J. HUGHES) (NM) (ck) (Entered: 02/28/2003) |
| 02/28/2003 | -- | SUMMONS issued for all dfts. (20 Days) (Mailed to Counsel) (ck) (Entered: 02/28/2003) |
| 04/14/2003 | 3 | RETURN OF SERVICE executed as to all dfts 3/22/03; Answer due on 4/11/03. (DS) (Entered: 04/17/2003) |
| 04/24/2003 | 4 | STIPULATION and ORDER, extending time and, setting answer due for 5/16/03 for dfts. (signed by Mag. Judge John J. Hughes) (NM) (ss) (Entered: 04/24/2003) |
| 05/29/2003 | 5 | STIPULATION and ORDER, setting answer due for 7/1/03 for dfts. (signed by Mag. Judge John J. Hughes) (NM) (ss) (Entered: 05/29/2003) |
| 07/16/2003 | 6 | STIPULATION and ORDER, extending time and, setting answer due for 9/1/03 for dfts. (signed by Mag. Judge John J. Hughes) (NM) (ss) (Entered: 07/16/2003) |
| 09/08/2003 | 7 | STIPULATION and ORDER, extending time and, setting answer due for 9/8/03 for dfts. (signed by Mag. Judge John J. Hughes) (NM) (ss) (Entered: 09/09/2003) |
| 09/12/2003 | 8 | STIPULATION and ORDER, extending time and, setting answer due for 10/8/03 for dfts. (signed by Mag. Judge John J. Hughes) (NM) (ss) (Entered: 09/16/2003) |
| 10/15/2003 | 9 | STIPULATION and ORDER, resetting answer due for 10/31/03 for all defts. (signed by Mag. Judge John J. Hughes) (NM) (SA) (Entered: 10/15/2003) |
| 11/13/2003 | 10 | STIPULATION and ORDER, extending time and setting answer due for 12/1/03 for dfts. (signed by Mag. Judge John J. Hughes)(NM) (ss) (Entered: 11/17/2003) |
| 11/15/2005 | 11 | Notice of Call for dismissal Pursuant to Rule 41.1(a) ret'ble in writing on12/9/2005 before Judge Stanley R. Chesler. (ce3) (Entered: 11/15/2005) |
| 12/16/2005 | 12 | ORDER DISMISSING CASE. Signed by Judge Stanley R. Chesler on 12/15/05. (ck) (Entered: 12/16/2005) |

Copyright © 2008 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

# LexisNexis® *Total Research System*

Switch Client ⋮ Preferences ⋮ Sign Off ⋮ ? Help

**My Lexis™** | **Search** | **Research Tasks** | **Get a Document** | **Shepard's®** | **Alerts** | **Counsel Selector** ▼ | History ⋮ 🖨

Source: <u>Command Searching</u> > **Utility, Design and Plant Patents** ⓘ
Terms: **patno=6402415** (<u>Edit Search</u> | <u>Suggest Terms for My Search</u>)

*186741 (09) 6402415 June 11, 2002*

## UNITED STATES PATENT AND TRADEMARK OFFICE GRANTED PATENT

### 6402415

<u>Get Drawing Sheet 1 of 3</u>
<u>Access PDF of Official Patent</u> *
<u>Check for Patent Family Report PDF availability</u> *

\* Note: A transactional charge will be incurred for downloading an
Official Patent or Patent Family Report. Your acceptance of this
charge occurs in a later step in your session. The transactional
charge for downloading is outside of customer subscriptions; it is not
included in any flat rate packages.

<u>Order Patent File History / Wrapper from REEDFAX®</u>
<u>Link to Claims Section</u>

June 11, 2002

Anchoring biscuit device

**REEXAM-LITIGATE:** August 8, 2005 - Reexamination requested August 8, 2005 by G. Steven
Harris, Overland Park, KS (Attny. Is: Matthew Stavish, Esq., Berenato White & Stavish,
Bethesda, MD), Reexamination No. 90/007,661 (O.G. October 11, 2005) Ex. Gp.: 3993

NOTICE OF LITIGATION

Eberle, et al v. Harris, et al, Filed December 8, 2003, D.C. New Jersey, Doc. No. 3:03cv5809

NOTICE OF LITIGATION

Eberle, et al v. Pelc, et al, Filed February 28, 2003, D.C. New Jersey, Doc. No. 3:03cv892

**APPL-NO:** 186741 (09)

**FILED-DATE:** November 5, 1998

**GRANTED-DATE:** June 11, 2002

**ASSIGNEE-AFTER-ISSUE:** December 10, 2002 - ASSIGNMENT OF ASSIGNORS INTEREST
(SEE DOCUMENT FOR DETAILS)., BLUE HERON ENTERPRISES, LLC 357 VERNOY
ROADCALIFON, NEW JERSEY, 07830, Reel and Frame Number: 013570/0151

**CORE TERMS:** biscuit, screw, beam, slot, joist, hole, groove, anchoring, joining,
attachment ...

IC-App-1124

Command Searching > **Patent Cases from Federal Courts and Administrative Materials** ⓘ

**Enter Search Terms**                                                    ? **Search Help**

◉ Terms and Connectors    ○ Natural Language    ○ Easy Search

| 6402415 or 6,402,415 |

Suggest Terms    🔍 **Search**
for My Search

☑ Check Spelling

| | **Search Conn** |
|---|---|
| and | and |
| or | or |
| w/N | withir |
| pre /N | prec |
| w/p | in sa |
| w/seg | in sa |
| w/s | in sa |
| and not | and r |
| > More Connect |

**Restrict by Document Segment:**

Select a document segment, enter search terms for the segment, then click Add.

| Select a Segment ▾ | | Add ↑ |

**How Do I...?**

> Use wildcards
for one or mo
search term?
> Restrict by do
> Restrict by da

Note: Segment availability differs between sources. Segments may not be applied consistently across sources.

**Restrict by Date:**

◉ No Date Restrictions    ○ From [        ] To [        ]    Date Formats...

📷 View

® LexisNexis®    About LexisNexis  | Terms & Conditions  | Contact Us
Copyright ©  2008 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

## No Documents Found

No documents were found for your search terms

**"6402415 or 6,402,415"**

---

Click "Save this search as an Alert" to schedule your search to run in the future.

- OR -

Click "Edit Search" to return to the search form and modify your search.

Suggestions:
- Check for spelling errors .
- Remove some search terms.
- Use more common search terms, such as those listed in "Suggested Words and Concepts"
- Use a less restrictive date range.

---



**LexisNexis®**

About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

## Command Searching > Patent, Trademark & Copyright Periodicals, Combined ⓘ

### Enter Search Terms

?    **Search Help**

◉ Terms and Connectors    ○ Natural Language    ○ Easy Search

6402415 or 6,402,415

Suggest Terms
for My Search    🔍 **Search**

Check Spelling

**Search Conn**

| and | and |
|---|---|
| or | or |
| w/N | within |
| pre /N | prec |
| w/p | in sa |
| w/seg | in sa |
| w/s | in sa |
| and not | and |

> More Connect

### Restrict by Document Segment:

Select a document segment, enter search terms for the segment, then click Add.

Select a Segment        Add ↑

**Note:** Segment availability differs between sources. Segments may not be applied consistently across sources.

**How Do I...?**

> Use wildcards
for one or mor
search term?
> Restrict by do
> Restrict by da

### Restrict by Date:

◉ No Date Restrictions    ○ From [      ] To [      ]    Date Formats...

📇 View

**LexisNexis®**    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

IC-App-1127

# No Documents Found

No documents were found for your search terms
**"6402415 or 6,402,415"**

---

Click "Save this search as an Alert" to schedule your search to run in the future.

- OR -

Click "Edit Search" to return to the search form and modify your search.

Suggestions:
- Check for spelling errors .
- Remove some search terms.
- Use more common search terms, such as those listed in "Suggested Words and Concepts"
- Use a less restrictive date range.

---



® **LexisNexis®**  About LexisNexis  |  Terms & Conditions  |  Contact Us
Copyright ©  2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

IC-App-1128

1. Omaha World-Herald (Nebraska), September 7, 2004, Tuesday, IOWA;MIDLANDS EDITION, Pg. 03B;, 693 words, Reluctant honoree among those recognized as local heroes Heroes in the Heartland Breakfast, Abe Winter

2. Power Engineering, November 1, 1999, No. 11, Vol. 103; Pg. 10 ; ISSN: 0032-5961, 478 words, IOU RANKS THIN., CHAMBERS, ANN
   ... 4      TXU                 14,736,000      **6,402,415** 5      UtiliCorp United  ...

3. Electric Light & Power, August, 1999, INDUSTRY REPORT; On Top 91 Investor - Owned Utilities; Pg. 13, 8028 words, Top 91 IOUs: The incredible shrinking universe, Michael T. Burr, Managing Editor
   ... 4 TXU **6,402,415** 42 ...

4. Sunset, March, 1988, Vol. 180 ; No. 3 ; Pg. 118; ISSN: 0039-5404, 902 words, "Leave well enough alone"; three main-event entrees; recipes
   ... Cookery (Lobsters) ; IAC **06402415**

5. Sunset, March, 1988, Vol. 180 ; No. 3 ; Pg. 118; ISSN: 0039-5404, 902 words, "Leave well enough alone"; three main-event entrees; recipes, IAC 06402415

Source:  <u>Command Searching</u> > **News, All (English, Full Text)** 
Terms:  **6402415 or 6,402,415** (<u>Edit Search</u> | <u>Suggest Terms for My Search</u>)
View:  Cite
Date/Time:  Wednesday, February 6, 2008 - 6:14 PM EST

**LexisNexis®**  <u>About LexisNexis</u>  | <u>Terms & Conditions</u>  | <u>Contact Us</u>
<u>Copyright</u> © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

IC-App-1129



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,661 | 08/08/2005 | 6402415 | 9003.001 | 1207 |

7590    02/13/2008

Kenneth P. Glynn
GLYNN & ASSOCIATES, PC
24 Mine Street
Flemington, NJ 08822

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 02/13/2008

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Matthew W. Stavish, Esq.
Berenato White & Stavish, LLC
6550 Rock Spring Drive, Suite 240
Bethesda, MD 20817

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/007,661*.

PATENT NO. *6402415*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

IC-App-1131

| | Control No. | Patent Under Reexamination |
|---|---|---|
| ***Notice of Intent to Issue Ex Parte Reexamination Certificate*** | 90/007,661 | 6402415 |
| | Examiner | Art Unit | |
| | Jeffrey R. Jastrzab | 3993 | |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

1. ☒ Prosecution on the merits is (or remains) closed in this *ex parte* reexamination proceeding. This proceeding is subject to reopening at the initiative of the Office or upon petition. *Cf.* 37 CFR 1.313(a). A Certificate will be issued in view of
   (a) ☒ Patent owner's communication(s) filed: <u>17 September 2007</u>.
   (b) ☐ Patent owner's late response filed: _____.
   (c) ☐ Patent owner's failure to file an appropriate response to the Office action mailed: _____.
   (d) ☐ Patent owner's failure to timely file an Appeal Brief (37 CFR 41.31).
   (e) ☐ Other: _____.

   Status of *Ex Parte* Reexamination:
   (f) Change in the Specification: ☐ Yes ☒ No
   (g) Change in the Drawing(s): ☐ Yes ☒ No
   (h) Status of the Claim(s):
      (1) Patent claim(s) confirmed: _____.
      (2) Patent claim(s) amended (including dependent on amended claim(s)): <u>*1-12*</u>
      (3) Patent claim(s) cancelled: _____.
      (4) Newly presented claim(s) patentable: <u>13-26</u>.
      (5) Newly presented cancelled claims: _____.

2. ☒ Note the attached statement of reasons for patentability and/or confirmation. Any comments considered necessary by patent owner regarding reasons for patentability and/or confirmation must be submitted promptly to avoid processing delays. Such submission(s) should be labeled: "Comments On Statement of Reasons for Patentability and/or Confirmation."

3. ☐ Note attached NOTICE OF REFERENCES CITED (PTO-892).

4. ☐ Note attached LIST OF REFERENCES CITED (PTO/SB/08).

5. ☐ The drawing correction request filed on _____ is: ☐ approved ☐ disapproved.

6. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
   a)☐ All   b)☐ Some*   c)☐ None   of the certified copies have
      ☐ been received.
      ☐ not been received.
      ☐ been filed in Application No. _____.
      ☐ been filed in reexamination Control No. _____.
      ☐ been received by the International Bureau in PCT Application No. _____.
   * Certified copies not received: _____.

7. ☐ Note attached Examiner's Amendment.

8. ☐ Note attached Interview Summary (PTO-474).

9. ☐ Other: _____.

cc: Requester (if third party requester)

U.S. Patent and Trademark Office
PTOL-469 (Rev.08-06)    Notice of Intent to Issue Ex Parte Reexamination Certificate    Part of Paper No 20080206

IC-App-1132

*Reexamination*

## STATEMENT OF REASONS FOR PATENTABILITY AND/OR CONFIRMATION

The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding:

The prior art of record fails to teach or reasonably suggest the claimed anchoring biscuit device for joining three boards wherein vertical support members extend perpendicularly downwardly from a top element in a vertical plane that is aligned with and directly under a center line of the top element and having an attachment orifice between the vertical support members in combination with the other claimed limitations (claims 1 and 14), or wherein a single support member extends perpendicularly downwardly from a top element in a vertical plane that is aligned with and directly under a center line of the top element and that is off-center from an attachment orifice in combination with the other claimed limitations (claims 10 and 20).

As to Weiland, the vertical support members (13a) are not located along the center line in a vertical plane that is aligned with and directly under the center line as now claimed.

As to Smith, the vertical support members (11) are not located along the center line in a vertical plane that is aligned with and directly under the center line as now claimed.

As to Heilmann, the arguments set forth on pages 41-50 of Patent Owner's response filed 9/17/0& are persuasive. The proposed modification of Heilmann would

IC-App-1133

destroy the reference if the spacing member were reduced in thickness as previously

suggested by the Examiner.

As to Hashida, there is only one vertical support member along the centerline,

since Weiland does not cure this defect, and would render Hashida inoperative as

pointed out in the arguments on pages 53-60, the combination of the two references

does not disclose the invention as now claimed, i.e. two vertical support members along

the centerline or one vertical support member off-center from the attachment orifice.

Any comments considered necessary by PATENT OWNER regarding the above

statement must be submitted promptly to avoid processing delays. Such submission by

the patent owner should be labeled: "Comments on Statement of Reasons for

Patentability and/or Confirmation" and will be placed in the reexamination file.

All correspondence relating to this *ex parte* reexamination proceeding should be directed as follows:

By **U.S. Postal Service Mail** to:

Mail Stop *Ex Parte* Reexam
ATTN: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

By FAX to: (571) 273-9900
Central Reexamination Unit

By hand to: Customer Service Window
Randolph Building
401 Dulany St.
Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

/Jeffrey R. Jastrzab/
Jeffrey R. Jastrzab
CRU Examiner
AU 3993
(571) 272-4947

Conferee /BMF/

Conferee _____

| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/007,661 | 6402415 |
| | Certificate Date | Certificate Number |
| | | C1 |

| Requester Correspondence Address: ☐ Patent Owner ☒ Third Party |
|---|
| Matthew W. Stavish, Esq.<br>Berenato White & Stavish LLC<br>6550 Rock Spring Drive, Suite 240<br>Bethesda, MD 20817 |

| LITIGATION REVIEW ☒ | AK | 2/7/08 |
|---|---|---|
| | (examiner initials) | (date) |
| Case Name | | Director Initials |
| Eberle, et al v. Harris, et al; 3:03cv5809; US Dist Ct - New Jersey  STAYED | | AlL for LM |
| Eberle, et al v. Pelc, et al; 3:03cv892; US Dist Ct - New Jersey | | |
| | | |
| | | |
| | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| TYPE OF PROCEEDING | NUMBER |
| 1.   NONE | |
| 2. | |
| 3. | |
| 4. | |

IC-App-1136

| **Application Number** | **Application/Control No.** | **Applicant(s)/Patent under Reexamination** | |
|---|---|---|---|
| | 90/007,661 | 6402415 | |
| | **Examiner** | **Art Unit** | |
| | Jeffrey R. Jastrzab | 3993 | |

**Issue Classification**



| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 90/007,661 | 6402415 |
| **Examiner** | **Art Unit** |
| Jeffrey R. Jastrzab | 3993 |

# ISSUE CLASSIFICATION

| ORIGINAL | | CROSS REFERENCE(S) | | | |
|---|---|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | |
| 403 | 231 | 403 | 232.1 | 408.1 | |
| **INTERNATIONAL CLASSIFICATION** | | 52 | 483.1 | | |

| B | 2 | 5 | G | 3/00 | |
|---|---|---|---|---|---|
| | | | | / | |
| | | | | / | |
| | | | | / | |
| | | | | / | |

| --------- | | |
|---|---|---|
| (Assistant Examiner) (Date) | /Jeffrey R. Jastrzab/  2/7/08 | **Total Claims Allowed: 26** |

A. Cashenton 2/12/08
(Legal Instruments Examiner)  (Date)

(Primary Examiner)  (Date)

| O.G. Print Claim(s) | O.G. Print Fig. |
|---|---|
| 1 | 1,2,3 |

| ☐ Claims renumbered in the same order as presented by applicant | ☐ CPA | ☐ T.D. | ☐ R.1.47 |

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | 31 | | 61 | | 91 | | 121 | | 151 | | 181 |
| 2 | 2 | | 32 | | 62 | | 92 | | 122 | | 152 | | 182 |
| 3 | 3 | | 33 | | 63 | | 93 | | 123 | | 153 | | 183 |
| 4 | 4 | | 34 | | 64 | | 94 | | 124 | | 154 | | 184 |
| 5 | 5 | | 35 | | 65 | | 95 | | 125 | | 155 | | 185 |
| 6 | 6 | | 36 | | 66 | | 96 | | 126 | | 156 | | 186 |
| 7 | 7 | | 37 | | 67 | | 97 | | 127 | | 157 | | 187 |
| 8 | 8 | | 38 | | 68 | | 98 | | 128 | | 158 | | 188 |
| 9 | 9 | | 39 | | 69 | | 99 | | 129 | | 159 | | 189 |
| 10 | 10 | | 40 | | 70 | | 100 | | 130 | | 160 | | 190 |
| 11 | 11 | | 41 | | 71 | | 101 | | 131 | | 161 | | 191 |
| 12 | 12 | | 42 | | 72 | | 102 | | 132 | | 162 | | 192 |
| 13 | 13 | | 43 | | 73 | | 103 | | 133 | | 163 | | 193 |
| 14 | 14 | | 44 | | 74 | | 104 | | 134 | | 164 | | 194 |
| 15 | 15 | | 45 | | 75 | | 105 | | 135 | | 165 | | 195 |
| 16 | 16 | | 46 | | 76 | | 106 | | 136 | | 166 | | 196 |
| 17 | 17 | | 47 | | 77 | | 107 | | 137 | | 167 | | 197 |
| 18 | 18 | | 48 | | 78 | | 108 | | 138 | | 168 | | 198 |
| 19 | 19 | | 49 | | 79 | | 109 | | 139 | | 169 | | 199 |
| 20 | 20 | | 50 | | 80 | | 110 | | 140 | | 170 | | 200 |
| 21 | 21 | | 51 | | 81 | | 111 | | 141 | | 171 | | 201 |
| 22 | 22 | | 52 | | 82 | | 112 | | 142 | | 172 | | 202 |
| 23 | 23 | | 53 | | 83 | | 113 | | 143 | | 173 | | 203 |
| 24 | 24 | | 54 | | 84 | | 114 | | 144 | | 174 | | 204 |
| 25 | 25 | | 55 | | 85 | | 115 | | 145 | | 175 | | 205 |
| 26 | 26 | | 56 | | 86 | | 116 | | 146 | | 176 | | 206 |
| | 27 | | 57 | | 87 | | 117 | | 147 | | 177 | | 207 |
| | 28 | | 58 | | 88 | | 118 | | 148 | | 178 | | 208 |
| | 29 | | 59 | | 89 | | 119 | | 149 | | 179 | | 209 |
| | 30 | | 60 | | 90 | | 120 | | 150 | | 180 | | 210 |

# Index of Claims

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 90/007,661 | 6402415 |
| **Examiner** | **Art Unit** |
| Jastrzab, J. | 3993 |

| | | | | |
|---|---|---|---|---|
| √ | Rejected | − | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
| = | Allowed | + | Restricted | I | Interference | O | Objected |

| Claim | | Date | | Claim | | Date | | Claim | | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 2/6/08 | | Final | Original | | | Final | Original | |
| 1 | 1 | = | | 51 | | | | 101 | | |
| 2 | 2 | | | 52 | | | | 102 | | |
| 3 | 3 | | | 53 | | | | 103 | | |
| 4 | 4 | | | 54 | | | | 104 | | |
| 5 | 5 | | | 55 | | | | 105 | | |
| 6 | 6 | | | 56 | | | | 106 | | |
| 7 | 7 | | | 57 | | | | 107 | | |
| 8 | 8 | | | 58 | | | | 108 | | |
| 9 | 9 | | | 59 | | | | 109 | | |
| 10 | 10 | | | 60 | | | | 110 | | |
| 11 | 11 | | | 61 | | | | 111 | | |
| 12 | 12 | | | 62 | | | | 112 | | |
| 13 | 13 | | | 63 | | | | 113 | | |
| 14 | 14 | | | 64 | | | | 114 | | |
| 15 | 15 | | | 65 | | | | 115 | | |
| 16 | 16 | | | 66 | | | | 116 | | |
| 17 | 17 | | | 67 | | | | 117 | | |
| 18 | 18 | | | 68 | | | | 118 | | |
| 19 | 19 | | | 69 | | | | 119 | | |
| 20 | 20 | | | 70 | | | | 120 | | |
| 21 | 21 | | | 71 | | | | 121 | | |
| 22 | 22 | | | 72 | | | | 122 | | |
| 23 | 23 | | | 73 | | | | 123 | | |
| 24 | 24 | | | 74 | | | | 124 | | |
| 25 | 25 | | | 75 | | | | 125 | | |
| 26 | 26 | = | | 76 | | | | 126 | | |
| | 27 | | | 77 | | | | 127 | | |
| | 28 | | | 78 | | | | 128 | | |
| | 29 | | | 79 | | | | 129 | | |
| | 30 | | | 80 | | | | 130 | | |
| | 31 | | | 81 | | | | 131 | | |
| | 32 | | | 82 | | | | 132 | | |
| | 33 | | | 83 | | | | 133 | | |
| | 34 | | | 84 | | | | 134 | | |
| | 35 | | | 85 | | | | 135 | | |
| | 36 | | | 86 | | | | 136 | | |
| | 37 | | | 87 | | | | 137 | | |
| | 38 | | | 88 | | | | 138 | | |
| | 39 | | | 89 | | | | 139 | | |
| | 40 | | | 90 | | | | 140 | | |
| | 41 | | | 91 | | | | 141 | | |
| | 42 | | | 92 | | | | 142 | | |
| | 43 | | | 93 | | | | 143 | | |
| | 44 | | | 94 | | | | 144 | | |
| | 45 | | | 95 | | | | 145 | | |
| | 46 | | | 96 | | | | 146 | | |
| | 47 | | | 97 | | | | 147 | | |
| | 48 | | | 98 | | | | 148 | | |
| | 49 | | | 99 | | | | 149 | | |
| | 50 | | | 100 | | | | 150 | | |

| Search Notes | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 90/007,661 | 6402415 |
| | **Examiner** | **Art Unit** | |
| | Jastrzab, J. | 3993 | |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | |
|---|---|---|
| | DATE | EXMR |
| checked patent file 6,402,415 | 2/6/2008 | AK |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |



(12) **United States Patent**
Eberle, III

(10) Patent No.: **US 6,402,415 B1**
(45) Date of Patent: **Jun. 11, 2002**

(54) **ANCHORING BISCUIT DEVICE**

(76) Inventor: **Harry W. Eberle, III**, 357 Vernoy Rd., Califon, NJ (US) 07830

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/186,741**

(22) Filed: **Nov. 5, 1998**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 08/811,898, filed on Mar. 5, 1997, now abandoned.

(51) Int. Cl.[7] .................................................. B25G 3/00
(52) U.S. Cl. ................. 403/231; 403/232.1; 403/408.1; 52/483.1
(58) Field of Search .................... 403/230, 231, 403/232.1, 294, 298, 401, 408.1; 52/408, 483.1, 506.05, 586.1, 586.2, 585.1, 772

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,184,080 A | 5/1916 | D'Arcy | |
| 2,332,081 A | 10/1943 | Hunt et al. | 20/91 |
| 2,362,252 A | 11/1944 | Ellinwood | 20/4 |
| 2,398,603 A | 4/1946 | Soderberg | 85/49 |
| 2,406,387 A | 8/1946 | Lank | 144/309 |
| 4,641,988 A | 2/1987 | Ganner | 403/245 |
| 4,682,458 A | 7/1987 | Sparrow | 52/309.8 |
| 5,004,027 A | 4/1991 | Legler et al. | 144/136 R |
| 5,071,280 A | * 12/1991 | Turner | 403/232.1 |
| 5,160,211 A | * 11/1992 | Gilb | 403/232.1 X |
| 5,182,891 A | 2/1993 | Slocum | 52/480 |
| 5,251,996 A | 10/1993 | Hiller et al. | 403/406.1 |
| 5,377,732 A | 1/1995 | Fujii et al. | 144/347 |
| 5,419,649 A | * 5/1995 | Gilb | 403/232.1 X |
| 5,458,433 A | 10/1995 | Stastny | 403/408.1 |
| 5,480,117 A | 1/1996 | Fleming, III | 248/231.9 |
| 5,529,428 A | 6/1996 | Bischof | 403/408.1 |
| 5,564,248 A | * 10/1996 | Callies | 403/232.1 X |
| 5,603,580 A | * 2/1997 | Leek et al. | 403/232.1 |
| 5,660,016 A | 8/1997 | Erwin et al. | 52/483.1 |

FOREIGN PATENT DOCUMENTS

DE     372483     * 3/1923     ................. 403/408

* cited by examiner

*Primary Examiner*—Bruce A. Lev
(74) *Attorney, Agent, or Firm*—Kenneth P. Glynn, Esq.

(57) **ABSTRACT**

An anchoring biscuit device for joining three boards. It includes, (a) a first substantially flat horizontal top element having a generally biscuit-shaped configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and, (c) an attachment orifice located at least on the top element for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated.

**12 Claims, 3 Drawing Sheets**







Fig. 4

Fig. 1

Fig. 2

Fig. 3

IC-App-1142



Fig. 7



Fig. 8



Fig. 5



Fig. 6

IC-App-1143



Fig. 10



Fig. 11



Fig. 9

IC-App-1144

# ANCHORING BISCUIT DEVICE

## REFERENCE TO RELATED CASE

This is a continuation-in-part of U.S. patent application Ser. No. 08/811,898, now abandoned filed on Mar. 5, 1997 entitled, "Anchoring Biscuit Device for Joining Two Adjacent Boards", by the same inventor herein.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention is directed to an improved biscuit for joining adjacent boards. More specifically, the invention is an anchoring biscuit device, as well an anchoring half biscuit device which has the ability for pre-setting distances between adjacent boards and attaching to at least one board by means in addition to the biscuit itself. The anchoring biscuit device physically joins two adjacent boards in the same plane to a third, supporting board. The anchoring half-biscuit device joins two adjacent boards at right angles to one another.

### 2. Information Disclosure Statement

The following patents are representative of the state of the art for wood joining devices, equipment and methods:

U.S. Pat. No. 1,184,080 to D'Arcy describes a structure of the class described, the combination of frame pieces disposed at an angle to each other and plate-like corner irons having angularly disposed flanges, said corner irons being arranged in opposed pairs on the sides of and secured to the ends of meeting frame pieces with their flanges engaging the inner edges thereof in overlapping telescoping relation to each other, the inner flanges having vertical nail slots therein and brads on their edges driven into the frame pieces, the outer flanges having nail perforations opposite the nail slots, there being nails disposed through the said perforations and slots and driven into the frame.

U.S. Pat. No. 2,332,081 to G. M. Hunt et al is directed to a wooden panel. It is described as a panel comprising wooden strips joined along their edges with glue, each strip having at least one groove in its edge matching groove in the edge of the adjoining strip, an asbestos millboard spline fitted in the matching grooves and bridging the joint between the strips, crossbands covering the strips on both sides of the panel, and veneers covering the crossbands.

U.S. Pat. No. 2,362,252 to Ellinwood describes a wall structure of the character described comprising a pair of adjacent wallboard panels having meeting edges, each of said panels being formed with a groove opening into its meeting edge, the groove in each panel providing an outer lip and an inner lip, said outer lips being in abutting relation, a joining strip permanently secured to the under surface of said outer lips, said inner lips being spaced, a T-shaped connecting member movably positioned in said groove and having a base in spaced relation to said inner lips, and means for anchoring said connecting member to a structural element.

U.S. Pat. No. 2,398,603 to Soderberg describes a joining staple, comprising a metal body having at least two portions extending at right angles to each other and at least two teeth carried upon each of said portions, each of said teeth consisting of a flat substantially rectangular body having a cutting edge extending substantially parallel to its body portion, the cutting edges of all of said teeth being located in one plane, each of said portions having another cutting edge extending between the teeth of that portion, the second mentioned cutting edges being also located in one plane.

U.S. Pat. No. 2,406,387 to Lank describes the method of constructing a plurality of wooden posts each of which has a connector element incorporated therein adjacent each end thereof which method comprises forming a plurality of longitudinally extending grooves in one side of each of a pair of wooden blanks from which the posts are to be formed, forming a transverse groove adjacent each end of said side of each of said blanks with the transverse grooves intersecting the longitudinal grooves, providing a pair of connector retaining members with a plurality of seats for receiving connector elements, the number and spacing of said seats in each of said connector retaining members conforming to the number and spacing of the longitudinal grooves in each of said blanks, placing connector elements in each of said seats, positioning said blanks with their grooved sides together and with said connector retaining members in said transverse grooves, bonding said blanks together, and severing the thus bonded assembly along longitudinal lines intermediate said longitudinal grooves.

U.S. Pat. No. 4,641,988 to Ganner is directed to a fitting for releasably joining two structural components. It is illustrated for releasably joining two structural components particularly plate-shaped structural components which extend at a right angle relative to one another, a fitting has a preferably cylindrical locking element which can be inserted either directly in a bore in the first structural component or it can be inserted indirectly in a housing, and a holding piece with a holding projection anchored in the second structural component. In the assembled position, the holding projection & abuts against one or two gripping surfaces of the locking element which gripping surfaces are of, for example, eccentric shape, and the holding projection is pulled toward the locking element when the locking element is turned. The holding piece is constructed plate-shaped and is insertable in a slot in the second structural component.

U.S. Pat. No. 4,682,458 to Sparrow describes a floor composed of parallel spaced beams having flanges and blocks of polystyrene foam which are laid on the flanges to bridge the gaps between the beams. Boards are laid on the polystyrene blocks, and are supported by the blocks, which form load-bearing members of the floor. The blocks may have flanged portions extending over the beams, so as to provide heat insulation.

U.S. Pat. No. 5,004,027 to Legler et al illustrates a biscuit joiner. It is described as a biscuit joiner for cutting semi-elliptical slots in opposing edges of workpieces which are to be joined along those edges includes a housing adapted to be mounted upon the quill of a multi-purpose woodworking tool, which housing encloses a rotary saw blade adapted to be attached to a spindle projecting from the quill on which the housing is mounted. A spring loaded guide projects from the front face of the housing and has a slot therethrough, so that when the front face of the guide is engaged by an edge of a workpiece to be slotted the guide can be pushed inwardly against spring pressure, allowing the rotary saw blade to be exposed and form a slot in the edge of the workpiece. Adjustable stops are provided on the guide so that a desired depth of cut will automatically be made after adjustment. An alternative construction of this biscuit joiner is especially adapted for use in conjunction with a conventional drill press, with the arbor which carries the saw blade being clamped in the chuck on the drive spindle of the drill motor.

U.S. Pat. No. 5,182,891 to Slocum describes a flooring construction which is provided having a unitary construction with a top layer providing a finished flooring surface and an

3

insulation layer adjacent the top layer. The flooring panel includes an upper portion and a lower portion. The upper portion has a larger dimension than the lower portion and extends outwardly beyond the lower portion. A recessed portion between the upper portion and the lower portion defines a channel. A plurality of interlock support elements having a vertical web and an upper horizontal flange are arranged so that the horizontal flange extends into the channel. The vertical web extends below the lower portion to raise the flooring.

U.S. Pat. No. 5,251,996 to Hiller et al describes a connecting element for connecting two parts generally in a connection plane has a first portion for connecting the element relative to a first of the parts and second portion for connecting the element relative to the second part. The second portion includes actuation members which on relative movement of the parts substantially along the connection plane urge the parts forcefully towards each other.

U.S. Pat. No. 5,377,732 to Fujii et al illustrates a wood joining structure and method thereof. It is described as a technique is provided for joining wood members. A plurality of slits are formed on the end portions of wood pieces desired to be joined, and the end portions are abutted with corresponding slits in alignment to form a common surface. Each of the abutted wood end portions is fixed by temporary fixing means to a desired joining state. Thereafter, an adhesive agent is applied into the interior surfaces of the slits. Connecting plates, e.g., made of a reinforced plastic material coated with the adhesive agent, are inserted into the aligned slits. The adhesive agent is then hardened.

U.S. Pat. No. 5,458,433 to Stastny explicates a biscuit and joint made using same. It is described as a biscuit having octagonal outer periphery is used to form a joint between first and second workpieces. The biscuit fits within arcuate slots formed in the workpieces, with glue placed in the slots and/or on the biscuit before the joint is put together. The biscuit is made of an anhydrous compressed wood.

U.S. Pat. No. 5,480,117 to Fleming, III describes a bracket for mounting a rotary lock member in the frame of a panel which is provided. The bracket is a preferably U-shaped body having a base and two legs extending therefrom. The inner dimension of the bracket is chosen to allow insertion of a rotary lock member therein. Panel engaging steps and protrusions are located on the outside surface of each leg for engaging the frame material. The legs of the bracket are biased inwardly towards one another, such that when a locking member is inserted therein, the legs are pressed outwardly, driving the protrusions into the frame material. A number of bores are located in the bracket to allow supplemental locking members to lock the bracket to the frame.

U.S. Pat. No. 5,529,428 to Bischof is directed to a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic. It is described as a metallic structural element for connecting workpieces consisting of wood, woodworking material or plastic, consisting of a lamellar part, which provides the non-positive connection with the first workpiece provided with a groove and a transverse hole, and a bolt-like part which, through screwing or pinning, realizes the non-positive connection with the second workpiece provided with a longitudinal hole. The lamellar part has, in the center, a hole which is at right angles to the plane of the lamella and is intended for fixing in the groove of the workpiece. Variants having a wing-like long or rectangular short lamellar part and a bolt-like part in the form of a conical wood screw, cylindrical screw, screw having a metal thread, threaded sleeve or pin. Accessories: screwing tool and drilling template.

4

U.S. Pat. No. 5,660,016 to Erwin et al describes an extruded plastic decking plank for mounting to an underlying support structure, the plank having a rigid foam core, a resilient outer plastic shell, and a clamping portion for securing the plank to the support structure. The top surface of the plank can be provided with a non-slip surface. The invention also includes an attachment system for securing such decking planks to a support structure by engaging the clamping portions of the decking planks onto clamps or hold down blocks which are secured onto the support structure, and which permit relative motion between the planks and the structure in the planks' lengthwise direction to prevent stress and buckling caused by uneven expansion.

Notwithstanding the prior art, the present invention is neither taught nor rendered obvious thereby.

## SUMMARY OF THE INVENTION

The present invention is an anchoring biscuit device for joining three boards. It includes, (a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and, (c) an attachment orifice located at least on the top element for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated.

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention should be more fully understood when the specification herein is taken in conjunction with the drawings appended hereto wherein:

FIG. 1 illustrates a top view of one preferred embodiment of the present invention anchoring biscuit device,

FIG. 2 illustrates a front view, and

FIG. 3 illustrates a side view thereof;

FIG. 4 shows a side view of the present invention device shown in FIGS. 1 through 3 but being attached to a joist and a first deck board and about to be attached to a second deck board where both deck boards are supported by that joist;

FIG. 5 shows a front view of an alternative embodiment present invention anchoring biscuit device;

FIGS. 6 and 7 show top views of alternative present invention anchoring biscuit devices;

FIG. 8 shows a partial side cut view of the device shown in FIG. 7 to illustrate the beveled cut of the screw hole;

FIG. 9 shows a side view of the present invention device shown in FIG. 7, but being attached to a joist and a first deck board and about to be attached to a second deck board where both deck boards are supported by that joist; and,

FIG. 10 and FIG. 11 show front views of alternative embodiment present invention anchoring biscuit devices having single vertical extended members.

## DETAILED DESCRIPTION OF THE PRESENT INVENTION

In FIG. 1, there is shown a top view of present invention anchor biscuit device 1. Device 1 includes a top element 3

having a flat top surface as shown, and a top view shape of a biscuit. Thus, it includes walls 5 and 7 in the shape of arcs having predetermined radius and predetermined arc lengths. In this case, they are perfectly symmetrical and have flat endwalls 9 and 11. Without exceeding the scope of the present invention, these biscuit shapes could be slightly modified, such as having slightly non-circular arcs or linear segments at angles approximating arcs.

Top element 3 also includes an attachment means, in this case, screw hole 13 located on center. This enables the user to nail or screw device 1 into a joist, as more fully described in conjunction with FIG. 4 below.

FIGS. 2 and 3 show front and end (right side) views, respectively of device 1 shown in FIG. 1. Thus, device 1 includes vertical support members 15 and 17 with a space therebetween to permit a screw or nail to pass through screw hole 13 into a joist or support board. Vertical support members 15 and 17 have a predetermined height so as to rest on a joist in such a way as to establish biscuit top element 3 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots corresponding thereto.

FIG. 4 shows present invention device 1 with identical parts identically numbered. Top element rear biscuit wall 5 is inserted into pre-cut biscuit slot 27 of horizontal beam 21, as shown. Screw 31 is inserted into screw hole 13 and into joist beam 25. This anchors device 1 to joist beam 25 and establishes the elevation of top element 3 so as to match with biscuit slot 27. Beam 23 will be placed atop joist 25 and adjacent to beam 21 by being slid into position with wall 7 fitting into slot 29 and the bottom of beam 23 resting on joist 25. By this method, device 1 attaches all three boards to one another as the biscuit aspects are typically tight-fitting. Thus, for example, decking boards may be attached without the need for nails or screws entering the beams from the top.

FIG. 5 shows an alternative embodiment present invention device 51 which has multiple screw holes 43, 53 and 55 located in a straight line on center of top element 47. It includes ends 41 and 49, and it has a plurality of vertical support members such as vertical support members 45 and 57, with spaces therebetween for screw or nail insertions. Device 51 is used in the same manner as device 1 described above with respect to FIG. 4.

FIGS. 6 and 7 show top views of alternative embodiment present invention anchoring biscuit devices 61 and 91 respectively. In FIG. 6, there is shown a top view of present invention anchor biscuit device 61. Device 61 includes a top element 63 having a flat top surface as shown, and a top view shape of a biscuit. Thus, it includes walls 65 and 67 in the shape of arcs having predetermined radius and predetermined arc lengths. In this case, they are perfectly symmetrical and have flat endwalls 69 and 71. Top element 63 also includes an attachment means, in this case, screw hole 73 located on center. Screw hole 73 has a bevel cut 75 at its top. This enables the user to nail or screw device 61 into a joist with the screw or nail being installed vertically, or, more preferably, at an angle.

In FIG. 7, there is shown a top view of present invention anchor biscuit device 91. Device 91 includes a top element 93 having a flat top surface as shown, and a top view shape of a biscuit. Thus, it includes walls 95 and 97 in the shape of arcs having predetermined radius and predetermined arc lengths. In this case, they are perfectly symmetrical and have flat endwalls 99 and 101. Top element 93 also includes an attachment means, screw hole 103 located on center. Note that screw hole 103 is elongated and has a beveled top 105.

This enables the user to nail or screw device 91 into a joist, either vertically or at an angle, as more fully described in conjunction with FIG. 8 below.

FIG. 8 shows a partial side cut view of device 91 of FIG. 7 to illustrate the beveled cut 105 of screw hole 103.

FIG. 9 shows present invention device 91 of FIG. 7 and the boards shown in FIG. 4, with identical parts identically numbered. Top element 93 at rear biscuit wall 95 is inserted into pre-cut biscuit slot 27 of horizontal beam 21, as shown. Screw 131 is inserted at about a 30° angle from vertical into beveled screw hole 103 and into horizontal beam 21 and joist beam 25. This anchors device 91 and horizontal beam 21 to joist beam 25 and support member 117 (and 115 not shown) maintains top element 93 in a horizontal position during screwing and to maintain its position with biscuit slot 27. Beam 23 will be placed atop joist 25 and adjacent to beam 21 by being slid into position with wall 97 fitting into slot 29 and the bottom of beam 23 resting on joist 25. By this method, device 91 attaches all three boards to one another as the biscuit aspects are typically tight-fitting. The steps are repeated along each joint beam in a deck and they are repeated for each next horizontal beam to assemble, e.g., a deck, platform, porch, etc.

FIG. 10 shows a front view of device 141. Thus, device 141 includes a single vertical support member 145 with a space cut out 143 to permit a screw or nail to pass through beveled screw hole 153 and through support member 145 into a joist or support board. Vertical support member 145 has a predetermined height so as to rest on the side of a beam into which device 141 may be inserted and, optionally, so as to rest on a joist in such a way as to establish biscuit top element 147 at a predetermined height from the joist for attachment of two adjacent boards thereto which have pre-cut biscuit slots corresponding thereto.

FIG. 11 shows a front view present invention of device 161, which includes a single off-center vertical support member 165 with a space underneath beveled screw hole 163 to permit a screw or nail to pass through screw hole 163 into a beam and/or joist or support board. Top 167 has opposite ends 169 and 171 as shown, with support member 165 biased to the left toward end 169, as shown. Top 163 may have a topography which would be the same as that shown in FIGS. 1, 6 or 7 above.

Obviously, numerous modifications and variations of the present invention are possible in light of the above teachings. It is therefore understood that within the scope of the appended claims, the invention may be practiced otherwise than as specifically described herein.

What is claimed is:

1. An anchoring biscuit device for joining three boards, which comprises:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, said top element having a center area between said opposite side walls in the shape of arcs;

(b) at least two substantially vertical support members attached to an underside of said top element at said center area of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joining two adjacent boards which have been pre-cut with biscuit receiving slots, two of said at least two vertical support members being substantially flat, being in the same plane and one of each being located on opposite sides of an attachment orifice; and,

(c) at least one attachment orifice located at least on said top element for attachment of said anchoring biscuit device to a support board for anchoring and support of said two adjacent boards.

2. The anchoring biscuit device of claim 1 wherein said attachment orifice is at least one screwhole located on said top element for screwing of said anchoring biscuit device to a support board.

3. The anchoring biscuit device of claim 2 wherein said screwhole has a bevelled top.

4. The anchoring biscuit device of claim 2 wherein said screwhole is non-circular and elongated.

5. The anchoring biscuit device of claim 1 wherein said attachment orifice has a bevelled top.

6..The anchoring biscuit device of claim 1 wherein said attachment orifice is non-circular and elongated.

7. The anchoring biscuit device of claim 1 wherein said top element and said vertical support member are unitarily formed.

8. The anchoring biscuit device of claim 1 wherein there are two vertical support members and one is located on each side of said attachment orifice.

9. The anchoring biscuit device of claim 8 wherein said top element and said two vertical support members are all unitarily formed.

10. An anchoring biscuit device for joining three boards, which comprises:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, said top element having a center area between said opposite side walls in the shape of arcs;

(b) at least one substantially vertical support member attached to an underside of said top element at said center area of said top element and extending downwardly therefrom for a predetermined length to maintain said top element in a predetermined position during use for joining two adjacent boards which have been precut with biscuit receiving slots, said at least one vertical support member being substantially flat; and,

(c) at least one attachment orifice located at least on said top element for attachment of said anchoring biscuit device to a support board for anchoring and support of said two adjacent boards;

wherein there is one substantially vertical support member which is located off-center and to one side of said attachment orifice.

11. The anchoring biscuit device of claim 10 wherein said attachment orifice has a bevelled top.

12. The anchoring biscuit device of claim 10 wherein said attachment orifice is non-circular and elongated.

* * * * *



US006402415C1

(12) **EX PARTE REEXAMINATION CERTIFICATE** (6264th)

## United States Patent
Eberle, III

(10) **Number:** US 6,402,415 C1
(45) **Certificate Issued:** Jun. 17, 2008

(54) **ANCHORING BISCUIT DEVICE**

(75) Inventor: **Harry W. Eberle, III**, Califon, NJ (US)

(73) Assignee: **Blue Heron Enterprises, LLC,** Califon, NJ (US)

**Reexamination Request:**
No. 90/007,661, Aug. 8, 2005

**Reexamination Certificate for:**
| | |
|---|---|
| Patent No.: | **6,402,415** |
| Issued: | **Jun. 11, 2002** |
| Appl. No.: | **09/186,741** |
| Filed: | **Nov. 5, 1998** |

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 08/811,898, filed on Mar. 5, 1997, now abandoned.

(51) **Int. Cl.**
*B25G 3/00* (2006.01)

(52) **U.S. Cl.** .................. **403/231**; 403/232.1; 403/408.1; 52/483.1

(58) **Field of Classification Search** .................. D8/382, D8/354, 349; D25/199; 403/230, 231, 232.1, 403/298, 294, 401, 408.1; 248/300, 309.1; 52/408, 483.1, 506.05, 586.1, 586.2, 585.1, 52/772

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

695,722 A 3/1902 Heilmann

1,714,738 A 5/1929 Smith
2,201,129 A 5/1940 Weiland
2,337,156 A 12/1943 Elmendorf
5,619,834 A 4/1997 Chen

FOREIGN PATENT DOCUMENTS

DE 372483 3/1923
JP 404371657 A * 12/1992

* cited by examiner

*Primary Examiner*—Jeffrey R. Jastrzab

(57) **ABSTRACT**

An anchoring biscuit device for joining three boards. It includes, (a) a first substantially flat horizontal top element having a generally biscuit-shaped configuration, (b) at least one substantially vertical support member attached to the underside of the top element and extending downwardly therefrom for a predetermined length for joinder of two adjacent boards which have been pre-cut with biscuit receiving slots, and, (c) an attachment orifice located at least on the top element for attachment of the anchoring biscuit device to a support board for anchoring and support of the two adjacent boards. In one preferred embodiment, a top bevel is included at the orifice to permit angled screwing at positions other than vertical positions. In other embodiments, the screw orifice will have an oval or elongated shape to likewise enable screwing at angles other than vertical. In yet another preferred embodiment, the orifice will both be beveled and elongated.



IC-App-1149

1

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

Matter enclosed in heavy brackets [ ] appeared in the
patent, but has been deleted and is no longer a part of the
patent; matter printed in italics indicates additions made
to the patent.

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

Claims 1, 2, 7, 8 and 10 are determined to be patentable
as amended.

Claims 3–6, 9, 11 and 12, dependent on an amended
claim, are determined to be patentable.

New claims 13–26 are added and determined to be
patentable.

1. An anchoring biscuit device for joining [three] *together
two adjacent* boards *and a support board, the adjacent
boards being in the same plane and having in their sides
pre-cut biscuit receiving slots,* [which comprises] *the
anchoring biscuit device comprising*:

(a) a first substantially flat horizontal top element having
a generally biscuit-shaped top view configuration
[with] *having* opposite side walls in the shape of arcs
from a top view, said arcs having predetermined radii
and arc lengths, *and opposite end walls,* said top
element having a center [area between said opposite
side walls in the shape of arcs] *line extending between
said end walls, and said respective side walls being
adapted to be fitted into said respective biscuit receiv-
ing slots of said adjacent boards*;

(b) at least two substantially vertical support members
attached to an underside of said top element [at] *along*
said center [area] *line* of said top element and extending
perpendicularly downwardly [therefrom] *from said top
element* for a predetermined length *in a vertical plane
that is aligned with, and directly under, said center line,
said predetermined length being adapted* to maintain
said top element in a predetermined position during use
for joining *said* two adjacent boards *together with, and
atop, said support board,* [which have been pre-cut
with biscuit receiving slots, two of] *all of* said at least
two vertical support members being substantially flat[,
being] *and in* [the same] *said vertical* plane [and one of
each being located on opposite sides of an attachment
orifice]; and,

(c) at least one attachment orifice located at least on said
top element for attachment of said anchoring biscuit
device to [a] *said* support board for anchoring and
support of said two adjacent boards, *said attachment
orifice being located between two of said vertical
support members.*

2. The anchoring biscuit device of claim 1 wherein said
attachment orifice is at least one screwhole located on said
top element for screwing of said anchoring biscuit device to
[a]*said* support board.

7. The anchoring biscuit device of claim 1 wherein said
top element and said vertical support [member] *members* are
unitarily formed.

2

8. The anchoring biscuit device of claim 1 wherein there
are *exactly* two vertical support members [and one is located
on each side of said attachment orifice].

10. An anchoring biscuit device for joining [three]
*together two adjacent* boards *and a support board, the
adjacent boards being in the same plane and having in their
sides pre-cut biscuit receiving slots,* [which comprises] *the
anchoring biscuit device comprising*:

(a) a first substantially flat horizontal top element having
a generally biscuit-shaped top view configuration with
opposite side walls in the shape of arcs from a top view,
said arcs having predetermined radii and arc lengths,
*and opposite end walls,* said top element having a
center [area between said opposite side walls in the
shape of arcs] *line extending between said end walls,
and said respective side walls being adapted to be fitted
into said respective biscuit receiving slots of said
adjacent boards*;

(b) at least one substantially vertical support member
attached to an underside of said top element [at] *along*
said center [area] *line* of said top element and extending
*perpendicularly* downwardly therefrom for a predeter-
mined length *in a vertical plane that is aligned with,
and directly under, said center line, said predetermined
length being adapted* to maintain said top element in a
predetermined position during use for joining *said* two
adjacent boards [which have been precut with biscuit
receiving slots] *together with, and atop, said support
board,* said at least one vertical support member being
substantially flat; and,

(c) at least one attachment orifice located at least on said
top element for attachment of said anchoring biscuit
device to a support board for anchoring and support of
said two adjacent boards; *and*

wherein [there is] *at least* one substantially vertical
support member [which] *is* located off-center and to
one side of said *at least one* attachment orifice.

*13. The anchoring biscuit device of claim 10 having
exactly one said vertical support member.*

*14. An anchoring biscuit device for joining together two
adjacent boards and a support board, the adjacent boards
being in the same plane and having in their sides pre-cut
biscuit receiving slots, the anchoring biscuit device com-
prising*:

*(a) a first substantially flat horizontal top element having
a generally biscuit-shaped top view configuration hav-
ing opposite side walls in the shape of arcs from a top
view, said arcs having predetermined radii and arc
lengths, and opposite end walls, said top element
having a center line extending between said end walls,
and said respective side walls being adapted to be fitted
into said respective biscuit receiving slots of said
adjacent boards;*

*(b) exactly two substantially vertical support members
attached to an underside of said top element along said
center line of said top element and extending perpen-
dicularly downwardly therefrom for a predetermined
length in a vertical plane that is aligned with, and
directly under, said center line, said predetermined
length being adapted to maintain said top element in a
predetermined position during use for joining said two
adjacent boards together with, and atop, said support
board, said vertical support members being substan-
tially flat and in said vertical plane; and*

*(c) at least one attachment orifice located on said top
element for attachment of said anchoring biscuit device*

to said support board for anchoring and support of said two adjacent boards, said attachment orifice being located between said vertical support members.

15. The anchoring biscuit device of claim 14 wherein said attachment orifice is at least one screwhole located on said top element for screwing of said anchoring biscuit device to said support board.

16. The anchoring biscuit device of claim 15 wherein said screwhole has a bevelled top.

17. The anchoring biscuit device of claim 15 wherein said screwhole is non-circular and elongated.

18. The anchoring biscuit device of claim 14 wherein said top element and said vertical support member are unitarily formed.

19. The anchoring biscuit device of claim 14, having exactly one said attachment orifice.

20. An anchoring biscuit device for joining together two adjacent boards and a support board, the adjacent boards being in the same plane and having in their sides pre-cut biscuit receiving slots, and wherein the anchoring biscuit device comprises:

(a) a first substantially flat horizontal top element having a generally biscuit-shaped top view configuration with opposite side walls in the shape of arcs from a top view, said arcs having predetermined radii and arc lengths, and opposite end walls, said top element having a center line extending between said end walls, and said respective side walls being adapted to be fitted into said respective biscuit receiving slots of said adjacent boards;

(b) exactly one substantially vertical support member attached to an underside of said top element along said center line of said top element and extending perpen-

dicularly downwardly therefrom for a predetermined length in a vertical plane that is aligned with, and directly under, said center line, said predetermined length being adapted to maintain said top element in a predetermined position during use for joining said two adjacent boards together with, and atop, said support board, said at least one vertical support member being substantially flat; and,

(c) at least one attachment orifice located at least on said top element for attachment of said anchoring biscuit device to a support board for anchoring and support of said two adjacent boards; and

wherein said substantially vertical support member is located off-center and to one side of said at least one attachment orifice.

21. The anchoring biscuit device of claim 20 wherein said attachment orifice is at least one screwhole located on said top element for screwing of said anchoring biscuit device to said support board.

22. The anchoring biscuit device of claim 21 wherein said screwhole has a bevelled top.

23. The anchoring biscuit device of claim 21 wherein said screwhole is non-circular and elongated.

24. The anchoring biscuit device of claim 20 wherein said top element and said vertical support member are unitarily formed.

25. The anchoring biscuit device of claim 20, having exactly one said attachment orifice.

26. The anchoring biscuit device of claim 25, wherein said attachment orifice is situated on said center line.

* * * * *